D. **CMS Feigned Ignorance of Retaliation**

80. Prior to initiating this lawsuit, Mrs. Porter, through her attorneys, provided written notice to the Department and CMS of their unlawful conduct in discharging her, and requested immediate action to rectify the matter. A copy of the July 14, 2003 letters to the Department and CMS are attached hereto as Exhibits A and B, respectively.

81. CMS responded to Mrs. Porter's demand letter by way of a letter faxed to Mrs. Porter's attorneys on July 29, 2003, a copy of which is attached hereto as Exhibit C. In that letter, CMS falsely claimed that it had no knowledge as to the reason the Department had barred Mrs. Porter from its premises. In fact, the CMS Health Services Administrator was present at the meeting on June 10, 2003 and listened to everything Ms. Mastrorilli said when she informed Mrs. Porter that she was terminated for having talked to an "outside agency."

E. **The Department Refused to Redress its Unlawful Treatment of Mrs. Porter**

82. The Department responded to Mrs. Porter's demand letter by claiming only that Mrs. Porter's allegations were "completely unfounded," a copy of which is attached hereto as Exhibit D. The Department also refused, in that letter, to provide a copy of Mrs. Porter's personnel file, to which she is entitled by state law. Although the Department's letter was dated July 22, 2003, it was not postmarked until well after that, and Mrs. Porter's attorneys did not receive the letter until on or after July 30, 2003.

83. This defiant attitude of the Department is consistent with its practice of responding to allegations, and even judicial and jury findings, of wrongdoing with bald assertions of denial or callous indifference. One egregious example of this defiant attitude of the Department involved its refusal to pay $5,000,000 to victims of another unlawful Department policy.

84. In 2001, the U.S. District Court for the District Court of Massachusetts granted summary judgment to a class of approximately 5400 women, finding that the Department and the City of Boston had violated Fourth Amendment and Equal Protection rights by enforcing a strip-search policy against thousands of women arrested often for petty offenses.

85. After summarily losing, the Department and the City of Boston entered into an agreement in July 2002 to make an aggregate payment of $10,000,000, to be borne equally between them.

86. Despite that agreement, the Department tried to renege on its written agreement to pay $5,000,000 by refusing to pay by the required deadline of November 29, 2002. The City of Boston paid its share of the settlement by the deadline. After refusing to pay its part of the settlement for months, the Department was held in contempt in April 2003 by the District Court, which also imposed a series of fines beginning at $3,000 per day, to increase by $1,000 per day for each week the settlement remained unpaid. Only after the District Court quashed the Department's stall tactics did the Department finally pay the $5,000,000 in May 2003.

## V. Defendant Cabral and Her Employees Have Defamed Mrs. Porter

87. Not content to willfully ignore her illegal conduct, Defendant Cabral has publicly lashed out against Mrs. Porter with defamatory statements, made by her personnel, upon information and belief, at her direction.

88. In response to media coverage of the Defendants' unlawful conduct towards Mrs. Porter, Defendant Cabral, upon information and belief, directed and/or caused her personnel (whose identities are not yet known, but will be determined in the course of this action) to issue a written statement to WCVB-TV, Channel 5 News on or about August 25, 2004.

89. That written statement included defamatory remarks about Mrs. Porter, including, for example, an assertion that Mrs. Porter had her own secret and unspecified "agenda." By referring to such an "agenda," Defendant Cabral and her employees intended to make people believe that Mrs. Porter is motivated not by justice, but by prejudice, personal animus and/or some other sinister or unlawful motive. Such implications and assertions are completely false. In fact, the only agenda of Mrs. Porter is to speak and seek the truth.

90. Defendant Cabral and her to-be-named employees knew or should have known that WCVB-TV, Channel 5 News would broadcast their defamatory statements. WCVB-TV, Channel 5 News did, in fact, broadcast the Defendants' denigrating statements about Mrs. Porter to thousands, if not millions, of viewers on its evening news program, both by verbally repeating the statement, and by displaying a copy of the libelous statement on its program.

91. The defamatory statements by Defendant Cabral and her employees have impugned Mrs. Porter's character and injured her reputation, by among other things, humiliating her in the eyes of the public, including those for and with whom she works, and making her appear to be a liar, and acting only to serve only her own interests.

## VI. Mrs. Porter's Quest for Justice and Vindication and Continued Exemplary Work

92. In direct contrast to, and in spite of, the Defendants' turning deaf ears on Mrs. Porter and backlash against her, Mrs. Porter has remained an exemplary employee devoted to the care of inmates. Prior to her abrupt discharge by CMS and the Department, Mrs. Porter had been approved by CMS to make a presentation on its behalf at a conference in Texas regarding medical services in correctional facilities. In early October 2003, while still dealing with the Defendants' failure to rectify her unlawful discharge, Mrs. Porter nonetheless traveled to the

Texas conference and made that presentation, during which she spoke positively about her experiences at the Department and CMS.

93. In addition, Mrs. Porter began working as a Nurse Practitioner at a different Massachusetts county correctional facility in October 2003. She took that position despite the significant personal sacrifices involved, including having to work a completely different shift from the one she held at the Department for several months, which prevented her from arriving safely at home until after 10:00 p.m.; having to endure a much longer commute than the one she had while working at the HOC; and having to perform some different duties than those she held at the HOC.

94. Because of her exemplary work experience, Mrs. Porter has since been hired and is working at a few other county facilities within Massachusetts, as well as at three Massachusetts Correctional Institutions. In the application and interview processes that Mrs. Porter underwent with respect to each of those employers, Mrs. Porter was forced to re-live the humiliation, denigration and emotional distress she has suffered arising from her unlawful discharge on June 10, 2003. She was forced to explain that the Defendants had barred her from the HOC premises, which placed her in the untenable position of having to try to defend herself for having been a law-abiding citizen and having cooperated with the FBI. Moreover, the emotional turmoil involved in having to so defend herself, and a fear of retaliation for her cooperation, prevented Mrs. Porter from applying for certain positions.

95. In short, Mrs. Porter has attempted in good faith – to no avail – to convince the Defendants to redress their wrongdoing. Moreover, Mrs. Porter has been publicly smeared and humiliated by the malicious defamatory statements unleashed at the direction of Defendant

Cabral and her employees. Accordingly, Mrs. Porter has been forced to file this action in order to vindicate her rights.

**COUNT I**
**(Violation of 42 U.S.C. § 1983)**
**(All Defendants)**

96. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1 through 95 of this Complaint as if expressly set forth herein.

97. Mrs. Porter exercised her clearly established right to free speech under the First Amendment by speaking with law enforcement officials during her tenure with the Department. The topics of her discussions were matters of public concern and included, but were not limited to, suspected inmate abuse, crimes and other unlawful conduct committed by Department personnel.

98. Because Mrs. Porter availed herself of the right to speak on matters of public concern, the Defendants discharged her.

99. In depriving Mrs. Porter of her clearly established constitutional rights, the Defendants acted under the color of state law, intentionally, with an evil motive, and with reckless and/or callous indifference.

100. The actions of the Defendants derived from the policies and/or established and widespread customs and practices known and sanctioned by all of the Defendants.

101. Defendant Cabral directly participated and/or acquiesced in violating Mrs. Porter's clearly established rights.

102. Mrs. Porter is entitled to compensatory and punitive damages, costs and attorneys' fees, and is entitled to injunctive and other equitable relief, all as a result of the Defendants' conduct.

**COUNT II**
**(Violation of M.G.L. 149, § 185)**
**(All Defendants)**

103. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1 through 102 of this Complaint as if expressly set forth herein.

104. The legislature of this Commonwealth enacted M.G.L. c. 149, § 185 in order to protect whistleblowers like Mrs. Porter who work for the Commonwealth, including any of agents or instrumentalities thereof, from retaliation for undertaking such good deeds as cooperating with law enforcement agencies.

105. In blatant violation of M.G.L. c. 149, § 185, the Defendants retaliated against Mrs. Porter because she reported conduct, practices and policies of Suffolk County and the Department (sanctioned by Defendant Cabral) and of CMS to law enforcement agencies, which she reasonably believed violated civil and criminal laws and/or posed a risk to public safety and health.

106. Although Mrs. Porter has afforded the Defendants ample time to rectify their wrongdoing, they have not done so. In fact, the government Defendants responded consistent with their historical treatment of ignoring individuals who pursue their rights, and have refused to even discuss their unlawful conduct. CMS has chosen to feign ignorance.

107. Mrs. Porter's injuries and damages arising from the Defendants' actions include, without limitation, treble lost wages and benefits, emotional distress, costs and attorneys' fees. Moreover, Mrs. Porter is entitled to reinstatement with full fringe benefits and seniority rights, and other equitable relief.

**COUNT III**
**(Breach of Contract)**
**(Suffolk County and Suffolk County Sheriff's Department)**

108. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1 through 107 of this Complaint as if expressly set forth herein.

109. The conduct as set forth above by Suffolk County and the Department breached their contract with Mrs. Porter under Policy S220 regarding her rights to, among other things, a hearing and due process before adverse action was taken against her.

110. As a result, Mrs. Porter has suffered injuries and damages including, but not limited to, lost wages, lost benefits and incidental damages.

**COUNT IV**
**(Breach of Contract)**
**(CMS)**

111. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1 through 110 of this Complaint as if expressly set forth herein.

112. The conduct as set forth above by CMS breached its contract with Mrs. Porter as set forth in the CMS Corrective Action Policy regarding her rights to, among other things, warnings, discussions and notice before adverse action was taken against her. CMS further breached its contract with Mrs. Porter to follow its requirements of obtaining the requisite manager approvals before effecting her termination, and to communicate the decision to Mrs. Porter.

113. CMS further breached its contract with Mrs. Porter by failing to rectify her having been banned by the Department from its premises.

114. As a result, Mrs. Porter has suffered injuries and damages including, but not limited to, lost wages, lost benefits and incidental damages.

**COUNT V**
**(Breach of Contract)**
**(Suffolk County, Suffolk County Sheriff's Department and CMS)**

115. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1 through 114 of this Complaint as if expressly set forth herein.

116. Suffolk County and/or the Department entered into a contract with CMS regarding the provision of healthcare services, and such contract was in effect at all times relevant to this action.

117. Upon information and belief, such contract contained promises by the parties thereto to, among other things, comply with laws applicable to the individuals working at the HOC through CMS.

118. As one of those employees, Mrs. Porter was an intended beneficiary of the contract.

119. By engaging in the conduct set forth herein, the Defendants who were parties to the contract breached their contractual obligation to act lawfully with respect to Mrs. Porter.

120. As a result, Mrs. Porter has suffered injuries and damages including, but not limited to, lost wages, lost benefits and incidental damages.

**COUNT VI**
**(Termination in Violation of Public Policy)**
**(Suffolk County, Suffolk County Sheriff's Department and CMS)**

121. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1through 120 of this Complaint as if expressly set forth herein.

122. As an upstanding citizen, Mrs. Porter performed good public deeds for several years by cooperating with law enforcement officials.

123. Mrs. Porter, however, was terminated by the Defendants because of that cooperation.

124. The Defendants' actions as described herein violated the public policy of this Commonwealth to encourage people to work with law enforcement officials. That public policy has been affirmed by the legislature and courts of this Commonwealth.

125. Mrs. Porter is entitled to compensatory and punitive damages, emotional distress damages, costs and attorneys' fees, arising from her termination in violation of public policy.

**COUNT VII**
**(Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I)**
**(All Defendants)**

126. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1through 125 of this Complaint as if expressly set forth herein.

127. By engaging in the conduct described in this Complaint, the Defendants interfered or attempted to interfere by threats, intimidation and/or coercion, with Mrs. Porter's exercise and enjoyment of rights secured by the constitutions and laws of the United States and of the Commonwealth of Massachusetts, including but not limited to her rights to free speech.

128. Mrs. Porter's injuries and damages arising from the Defendants' actions include, without limitation, lost wages and benefits, emotional distress, compensatory damages, costs and attorneys' fees. Moreover, Mrs. Porter is entitled to injunctive other equitable relief.

**COUNT VIII**
**(Intentional Infliction of Emotional Distress)**
**(CMS)**

129. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1through 128 of this Complaint as if expressly set forth herein.

130. CMS knowingly engaged in the above-described conduct toward Mrs. Porter. Such conduct was of an extreme and outrageous nature.

131. CMS intended to cause, or should have known that its conduct would cause, emotional distress to Ms. Porter.

132. As a result of such conduct, Mrs. Porter has suffered extreme emotional distress and injuries and damages including, but not limited to, compensatory damages, emotional distress, costs and attorneys' fees.

**COUNT IX**
**(Defamation)**
**(Defendant Cabral)**

133. Mrs. Porter incorporates by reference and realleges the allegations set forth in paragraphs 1through 132 of this Complaint as if expressly set forth herein.

134. The above-described statements unleashed, upon information and belief, at the direction of Sheriff Cabral through her employees regarding Mrs. Porter, including but not limited to, that Mrs. Porter has a secret "agenda," were defamatory.

135. Those statements were false and Defendant Cabral and her to-be-named employees involved in making the statements were intentionally at fault with respect to the publication of those statements. Moreover, such Defendants published the statements with malice, without any justification or privilege.

136. Defendant Cabral and her to-be-named employees knew that by making such defamatory remarks to the press, the press would broadcast their remarks to the public. In fact, Channel 5 News did broadcast the Defendants' false, denigrating statements about Mrs. Porter to thousands, if not millions, of viewers on its evening news program.

137. The Defendants' defamatory statements are capable of damaging Mrs. Porter's reputation in the community, and of prejudicing her profession. Indeed, that statement has impugned Mrs. Porter's character and injured her personal and professional reputation, by humiliating her in the eyes of the public, and making her appear to be a liar and out to serve only her own interests.

138. Mrs. Porter is entitled to compensatory damages, including but not limited to, those for the harm to her personal and professional reputations, mental suffering, and emotional distress, and special damages and/or harm caused by the defamation by Defendant Cabral and her to-be-named employees, and Mrs. Porter is also entitled to her costs and attorneys' fees.

**COUNT X**
**(Intentional Infliction of Emotional Distress)**
**(Defendant Cabral)**

139. Mrs. Porter incorporates by reference and realleges the allegations set forth paragraphs 1through 138 of this Complaint as if expressly set forth herein.

140. The above-described defamatory statements made with malice by to-be-named employees of Defendant Cabral's administration, upon information and belief, at the direction of Defendant Cabral, constituted conduct of an extreme and outrageous nature.

139. Defendant Cabral and her to-be-named employees intended to cause, or should have known that their conduct would cause, emotional distress to Ms. Porter.

140. As a result of such conduct, Mrs. Porter has suffered extreme emotional distress and injuries and damages and seeks remedies including, but not limited to, compensatory damages, emotional distress damages, costs and attorneys' fees.

**WHEREFORE**, Mrs. Porter requests that the Court:

a. Enter judgment against the Defendants on all counts asserted against them;

  b. Order the Defendants to issue a written, public apology to Mrs. Porter for their unlawful conduct;

  c. Enjoin the Defendants from continuing to engage in the illegal activities described herein;

  d. Reinstate Mrs. Porter to her prior positions with CMS and the Department;

  e. Bestow all rights and benefits of employment upon Mrs. Porter as if she had not been terminated and retaliated against, including, without limitation, back pay, front pay, seniority, benefits, and consequential damages in an amount to be determined at trial;

  f. Award treble damages pursuant to M.G.L. c. 149 § 185;

  g. Award compensatory damages, including but not limited to mental suffering and emotional distress damages, suffered by Mrs. Porter, as a result of Defendants' conduct described in this Complaint;

  h. Award special damages and/or harm suffered by Mrs. Porter as a result of the defamatory statements about her;

  i. Award punitive and exemplary damages in an amount of at least $2,000,000 or some other amount to be determined at trial;

j. Award attorneys' fees, costs and expert witness fees incurred in bringing this action; and

k. Award such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

**Sheila J. Porter,**

By her attorneys,

Joseph F. Savage, Jr. BBO #443030
Jennifer M. Goddard BBO #631144
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Oliver Street Tower
Boston, Massachusetts 02110
Phone: (617) 248-7000
Fax: (617) 248-7100

9771\1.2665118_7

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Sheila J. Porter

**DEFENDANTS**

Andrea Cabral, Suffolk County Sherrif's Department, Suffolk County, and Correctional Medical Services, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Suffolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Joseph F. Savage and Jennifer M. Goddard (617) 248-7000
Testa, Hurwitz & Thibeault, LLP
125 High Street, Boston, MA. 02110

ATTORNEYS (IF KNOWN)

04-11935DPW

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- HABEAS CORPUS:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

The Defendants discharged Mrs. Porter for having cooperated with the FBI regarding suspected unlawful conduct of the Defendants' personnel, in violation of 42 U.S.C. §1983 and other laws.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND** $ 2,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____ DOCKET NUMBER ____

DATE 9/3/04

SIGNATURE OF ATTORNEY OF RECORD [signature] Jennifer M. Goddard

FOR OFFICE USE ONLY

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Seila Porter V. Andrea Cabral

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

X II. 195, 368, (400), 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

YES ☐ NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

YES ☐ NO ☒

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES ☐ NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

YES ☐ NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

YES ☐ NO ☒

A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☐ WESTERN DIVISION ☐

B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☒ WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Joseph F. Savage and Jennifer M. Goddard

ADDRESS 125 High Street, Boston, MA. 02110

TELEPHONE NO. (617) 248-7000