**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SHEILA J. PORTER,**<br><br>      **Plaintiff,**<br><br>      vs.<br><br>**ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, SUFFOLK COUNTY, and CORRECTIONAL MEDICAL SERVICES, INC.,**<br><br>      **Defendants.** | **Civil Action No. 04-11935 DPW** |

**SHEILA PORTER'S OPPOSITION TO PARTIAL MOTION TO DISMISS OF DEFENDANTS ANDREA CABRAL,**
**SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY**

Plaintiff Sheila J. Porter ("Mrs. Porter") hereby opposes the Partial Motion to Dismiss (the "Motion") of Defendants Andrea Cabral ("Sheriff Cabral"), Suffolk County Sheriff's Department (the "Department") and Suffolk County (collectively, "Defendants"). Mrs. Porter, a sixty-three year-old grandmother who worked as a Nurse for more than thirty-five years, was unlawfully discharged from her position as a Nurse Practitioner assigned to the Suffolk County House of Corrections (the "HOC") in retaliation for her cooperation with an investigation by the Federal Bureau of Investigation (the "FBI") into the illegal activities of the Defendants. That retaliation occurred because Mrs. Porter was courageous enough to break the "Code of Silence" fostered by the Defendants among Department personnel to cover up unlawful conduct such as inmate abuse. In addition, Mrs. Porter was subjected to other unlawful treatment separate and apart from her retaliatory discharge, including defamation by Sheriff Cabral, deprivation of third-party contractual rights, and deprivation of economic relationships.

The Defendants have moved to dismiss the following claims[1]:

1. Sheriff Cabral has moved to dismiss Counts II (Violation of Massachusetts Whistleblower Act, M.G.L. c. 149, § 185), and VII (Violation of Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H and 11I);

2. Suffolk County has moved to dismiss Counts V (Breach of Contract), VI (Termination in Violation of Public Policy), and VII (Violation of Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I); and

3. Suffolk County Sheriff's Department has moved to dismiss all Counts against it: Counts I (Violation of 42 U.S.C. § 1983), II (Violation of Massachusetts Civil Rights Act, M.G.L. c. 149, § 185), III (Breach of Contract), V (Breach of Contract), VI (Termination in Violation of Public Policy), and VII (Violation of Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H and 11I).

By bringing their Motion to Dismiss, the Defendants are attempting to shirk liability for their illegal actions by relying unsuccessfully on tortured interpretations of statutes and legal precedent to improperly challenge Mrs. Porter's claims.[2] As set forth in detail below, Sheriff Cabral and her fellow government Defendants are the responsible parties (along with Correctional Medical Services, which has not filed a motion to dismiss any of the claims asserted against it[3]), and each must take responsibility for its unlawful conduct.

## RELEVANT FACTUAL BACKGROUND

### I.  MRS. PORTER PERFORMED IN AN EXEMPLARY MANNER FOR NINE YEARS PRIOR TO HER UNLAWFUL TERMINATION

Sheila Porter worked as a Nurse Practitioner for the Department for more than nine out of the thirty-five years she has been in the nursing profession, under Sheriff Cabral's direction and

---

[1] Defendants agree that the following claims set forth in the Complaint cannot be dismissed: (1) As against Sheriff Cabral: Counts I (Violation of 42 U.S.C. § 1983), IX (Defamation), and X (Intentional Infliction of Emotional Distress); (2) As against Suffolk County: Counts I (Violation of 42 U.S.C. § 1983), II (Violation of Massachusetts Whistleblower Act, M.G.L. c. 149, § 185), III (Breach of Contract).
[2] Mrs. Porter does not oppose the dismissal of Count VII against Suffolk County and the Department.
[3] The following claims are asserted against CMS: Counts I (Violation of 42 U.S.C. § 1983), II (Violation of Massachusetts Whistleblower Act, M.G.L. c. 149, § 185), IV (Breach of Contract), V (Breach of Contract), VI (Termination in Violation of Public Policy), and VIII (Intentional Infliction of Emotional Distress).

control since approximately November, 2002.  Complaint of Sheila Porter ("Complaint") at ¶¶8,13.  As stated in more detail in her Complaint, Mrs. Porter was an exemplary employee of the Defendants and Correctional Medical Services Inc. ("CMS")[4] (a provider of medical staff to correctional facilities such as the HOC).  Complaint at ¶15.  Mrs. Porter was commended for her work as a nursing professional at the Department, and was recognized for her heroic efforts in saving lives during her tenure there.  Complaint at ¶16.

## II. AS PART OF ITS ONGOING INVESTIGATION INTO THE DEPARTMENT, THE FBI REQUESTED THAT MRS. PORTER ACT AS A WHISTLEBLOWER

As a Nurse Practitioner, Mrs. Porter had direct contact with inmates and witnessed the effects of prisoner abuse first-hand, and her role as a caregiver made her a likely confidante for inmates.  Complaint at ¶20.  The FBI contacted Mrs. Porter at her home in approximately 1999 to solicit her cooperation with its investigation into the Department's operations.  Complaint at ¶33.  While Mrs. Porter had no obligation to alert any of the Defendants of her decision to cooperate with the FBI's investigation, Mrs. Porter did so.  Complaint at ¶34.  At no time was Mrs. Porter told that her cooperation violated any workplace policies.  Complaint at ¶35.

## III. MRS. PORTER PROVIDED VALUABLE INFORMATION TO THE FBI AS A WHISTLEBLOWER FOR FOUR YEARS

Mrs. Porter provided the FBI with information relating to its investigation for a period of approximately four years.  Complaint at ¶36.  Mrs. Porter relayed information about many instances of unlawful and criminal conduct, including the following: the Department's Code of Silence and policy of retaliation; sexual misconduct by male officers against female inmates; physical abuse of inmates by officers; drug use and dealing by personnel of the Sheriff's Department; and suspicious inmate deaths.  Complaint at ¶¶36.  In fact, Mrs. Porter was a particularly valued informant to the FBI, as she was one of the few individuals on the staff at the HOC who was courageous enough to speak out about these injustices.  Complaint at ¶37.  In addition to providing information about suspected illegal activity, Mrs. Porter also testified in

---

[4] Mrs. Porter was originally affiliated with Correctional Health Solutions, Inc., until CMS took over the provision of medical staff to the HOC.  As it has no impact on the legal issues presented, and for ease of reference, both Correctional Health Solutions, Inc. and CMS will be referred to as "CMS" throughout this Opposition.

legal proceedings related to the Department, both on behalf of and against the Department. Complaint at ¶¶45-47. Mrs. Porter also provided specific information to the Special Commission that contributed to its extensive report on the myriad problems within the Department. Complaint at ¶51.

## IV.   THE DEFENDANTS DISCHARGED MRS. PORTER IN RETALIATION FOR HER COOPERATION WITH THE FBI

Instead of commending Mrs. Porter for assisting law enforcement in eradicating grave violations of the law, Sheriff Cabral and the other Defendants victimized her for such laudable actions. In May of 2003, Mrs. Porter told FBI investigators about her observation of signs of physical abuse on an inmate Mrs. Porter knew to be an informant for the FBI. Complaint at ¶60. Soon thereafter, Mrs. Porter was aggressively interrogated by the Sheriff's Investigative Division ("SID") about her relationship with the FBI. At this meeting, the SID investigators never inquired as to the health or safety of the abused inmate who had cooperated with the FBI. Complaint at ¶61. It became apparent to Mrs. Porter that SID's main concern was whether or not she had broken the "Code of Silence" by talking to the FBI. Complaint at ¶61. Shortly after the SID interrogation about her communications with the FBI, Mrs. Porter was called into a meeting with a Deputy Superintendent of the Department and a CMS representative, and was told that she had violated Department Policy S220 by talking to an "outside agency." Complaint at ¶63. Without any further discussion, the Defendants permanently banned Mrs. Porter from their premises. The Defendants' retaliatory discharge of Mrs. Porter deprived her of her economic relationship with the Defendants and CMS. Complaint at ¶¶63-64, 72.

## V.   THE DEFENDANTS FURTHER SUBJECTED MRS. PORTER TO UNLAWFUL CONDUCT INDEPENDENT OF THE RETALIATORY DISCHARGE.

Compounding the injustice of the Defendants' retaliation against Mrs. Porter because she had cooperated with the FBI, the Defendants engaged in other illegal conduct towards her. For example, they deprived Mrs. Porter of her contractual rights under Department Policy S220 to notice and a hearing and other protections. Complaint at ¶¶108-10. In addition, Mrs. Porter was

deprived of her rights to be treated lawfully as a third-party beneficiary under the services contract between the Department and CMS. Complaint at ¶¶115-20.

Also, Sheriff Cabral defamed Mrs. Porter through the Sheriff's employees. In response to media coverage of the Defendants' unlawful conduct towards Mrs. Porter, on or about August 25, 2004, and shortly before Mrs. Porter filed this action, Sheriff Cabral directed her employees to release a written statement to WCVB-TV, Channel 5 News. That statement represented that Mrs. Porter had her own secret and unspecified "agenda," which insinuated that Mrs. Porter was acting from sinister motives. Complaint at ¶¶88-89. That statement was an attempt by Sheriff Cabral to coerce and intimidate Mrs. Porter to stop exercising Mrs. Porter's rights under the First Amendment and state law.

After Mrs. Porter filed this action, Sheriff Cabral made additional statements in a highly public arena defaming Mrs. Porter's character, again attempting to intimidate and coerce Mrs. Porter. Specifically, on or about September 8, 2004, in a debate between herself and Stephen Murphy in the last days of her campaign for re-election, Cabral stated that Mrs. Porter was not a whistleblower and that she had her own "agenda." Cabral's misrepresentations have further damaged Mrs. Porter's reputation and profession, and have caused her additional emotional distress. In light of this conduct by Sheriff Cabral, Mrs. Porter intends to amend her Complaint, with agreement of defense counsel or this Court's approval, to assert additional causes of action.

## ARGUMENT

**I.   MRS. PORTER HAS MET THE MINIMAL PLEADING BURDEN NECESSARY TO SUSTAIN HER CLAIMS**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must take well-pled factual allegations in the Complaint as true and must make all reasonable inferences in favor of Mrs. Porter. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Dismissal under Rule 12(b)(6) is not appropriate unless the Complaint, so viewed, presents no possible set of facts justifying recovery. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Accordingly, "[i]f under any theory the [C]omplaint is 'sufficient to state a cause of

action in accordance with the law, a motion to dismiss the [C]omplaint must be denied.'" Duncan v. Santaniello, 900 F. Supp. 547, 549 (D. Mass. 1995) (citing Knight v. Mills, 836 F.2d 659, 664 (1st Cir. 1987)).  As set forth in detail below, Mrs. Porter has surpassed this minimal pleading hurdle with respect to all of her claims, including those that the Defendants have moved to dismiss.

## II.     THE SHERIFF OF SUFFOLK COUNTY IS A PROPER PARTY UNDER M.G.L. c. 149, § 185

Sheriff Cabral attempts to hide her role in Mrs. Porter's illegal termination by arguing that she is not an "employer" within the meaning of M.G.L. c. 149, § 185, the Massachusetts Whistleblower Act (the "Whistleblower Act").  In fact, sheriffs have been sued under the Whistleblower Act.  See, e.g., Fuentes v. Hampden County Sheriff's Dept., et. al., CA No. 02-30173, 2004 U.S. Dist. LEXIS 12053, at *15 (D. Mass. June 25, 2004) (referencing the Report and Recommendation of the Magistrate Judge that the Sheriff remain a party under the Whistleblower Act, while dismissing such claim against all parties because the complaint failed to allege facts showing retaliation).

Contrary to Sheriff Cabral's assertion, the Whistleblower Act actually casts the definition of employer broadly, encompassing, "the Commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any *authority*, commission, board or *instrumentality* thereof."  M.G.L. c. 149, § 185(a)(2) (emphasis added).  As set forth in more detail below, Sheriff Cabral, in her official capacity, is both an authority and an instrumentality within the meaning of the Act, and therefore is subject to suit.

Sheriff Cabral fails to acknowledge that her position is specifically designated as having control over and supervision of the personnel working at the Suffolk County House of Correction.  See Gordon v. Sheriff of Suffolk County, 411 Mass. 238, 246 (1991) (finding that the Massachusetts legislature purposefully transferred control and supervision over HOC personnel "under the supervision of one person, the [Sheriff of Suffolk County]").  See also The

Massachusetts Fiscal Year 1992 Budget Appropriations Act, st. 1991, c. 138, §§ 356-363 and line item 8910-0030 (transferring control of HOC employees to the Sheriff of Suffolk County). As Sheriff of Suffolk County with the statutorily mandated control and supervision of personnel working at the HOC, Sheriff Cabral is both an authority and instrumentality of Suffolk County. Accordingly, Cabral is an "employer" within the meaning of the Whistleblower Act.

Even assuming, arguendo, that the statutory authority given to Sheriff Cabral does not definitively demonstrate that she is an "employer" within the meaning of the Whistleblower Act, this claim still should not be dismissed. Whether the Sheriff acts as an "instrumentality" or "authority" under the Act is a factual issue that is not ripe for dismissal at this juncture. Indeed, Sheriff Cabral relies upon Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 221 (D. Mass. 2002), aff'd, 362 F.3d 1 (1st Cir. 2004), for her argument -- a case that was actually decided at the *summary judgment* stage. The Court in Bennett recognized that "the intent of the [Whistleblower] statute [is] to add to, not subtract from, protections afforded workers subject to improper pressures." Id. Dismissing Count II against Sheriff Cabral before Mrs. Porter is able to engage in a factual inquiry during discovery to demonstrate that Cabral is an employer would completely undercut that legislative intent, by narrowing the protections afforded Mrs. Porter.

### III.    MRS. PORTER'S CLAIMS AGAINST SUFFOLK COUNTY ARE NOT SUBJECT TO WAIVER UNDER M.G.L. c. 149 § 185

Suffolk County[5] improperly attempts to dismiss legitimate claims against it at this early stage of the litigation by arguing that subsection (f) of the Whistleblower Act (the so-called "waiver provision"), somehow requires the dismissal now of Counts V (Breach of Third-Party Contract), VI (Termination in Violation of Public Policy) and VII (MCRA). Subsection (f) discusses waiver of certain claims in the event a plaintiff brings a Whistleblower Act claim. See M.G.L. c. 149, § 185; Motion to Dismiss at p. 4.

Contrary to Suffolk County's assertion that the "waiver" language in the Whistleblower Act "clearly" bars Mrs. Porter's claims under Counts V, VI and VII, the lone case cited by

---

[5] Mrs. Porter's arguments in this Section III apply equally to the Department and Sheriff Cabral.

Suffolk County in support of its argument expressly recognized that "[v]ery little decisional law has illuminated the meaning and scope of [the Whistleblower Act's] waiver provision since the statute's passage." Bennett, 230 F. Supp. 2d at 220.  Moreover, Bennett expressly recognized that the Whistleblower Act was "obviously designed to broaden protection to vulnerable workers."  Id. at 220-21.

      The County's interpretation of the Whistleblower Act would, in fact, narrow the protections available to plaintiffs, as it would prevent plaintiffs like Mrs. Porter from developing the factual record prior to the dismissal of factually viable claims.  Accordingly, dismissal of Counts V-VII at this preliminary stage of the litigation is premature and contradicts the intent behind the Act.  While Mrs. Porter has alleged, and intends to prove through discovery, that she was a common law employee of the Department and Suffolk County, see Complaint at ¶17, the Defendants have asserted numerous times in their Answer that Mrs. Porter was not an employee.  See, e.g., Answer at ¶¶8, 17.  Therefore, in the event that the Court at the summary judgment phase determines that Mrs. Porter was not an employee, Mrs. Porter may be unable to pursue her Whistleblower Act claims, and instead should be able to avail herself of her other causes of action.  In order to achieve efficacy of the Whistleblower Act's expanded protections, this Court should give Mrs. Porter the opportunity to engage in discovery in order to assess her likelihood of prevailing on her claims under the Whistleblower Act, as well as Counts V-VII.  The Court may then re-entertain any waiver arguments at the summary judgment stage.  Such a measure will not prejudice the Defendants in any manner, and in fact, will extend the protections to which Mrs. Porter is entitled.

      Even assuming, however, that Suffolk County were correct in its argument that Count VI (Termination in Violation of Public Policy) should, after discovery and the ability to develop facts, be dismissed, its argument for dismissal of Counts V (Breach of Contract) and Count VII (Violation of the Massachusetts Civil Rights Act), necessarily fails.  As stated by Suffolk County, the standard for waiver espoused by the lone case it cites is whether the challenged claims could be "adjudicated substantively" under the Whistleblower Act.  Bennett, 230

F.Supp.2d at 221 (interpreting the waiver provision of the Whistleblower Act at *summary judgment* as applying only to claims for the same conduct that "constituted the core retaliation for the whistleblowing"). As such, even under Bennett, claims involving conduct that is distinct from the specific adverse action that violated the Whistleblower Act -- in this case Mrs. Porter's retaliatory termination -- may be brought in conjunction with a claim under the Act.

The basis for Count V is independent and distinct from the core conduct that violated the Whistleblower Act -- the termination itself. Therefore, Count V cannot be adjudicated substantively under the Act. Mrs. Porter's claim in Count V for breach of contract relates to her position as an intended third-party beneficiary to the contract between the Department and CMS. Mrs. Porter asserts that Defendants breached that contract, which afforded her the right to be treated lawfully, by "engaging in the conduct set forth herein." Complaint at ¶119. The Complaint alleges unlawful conduct, separate from the discharge, such as failing to provide Mrs. Porter with procedural protections under Policy S220, coercive interrogation by SID, and defamation. Moreover, even assuming the facts underlying Count V were not distinct from the retaliatory discharge, Mrs. Porter's claims as a third party beneficiary, rather than as an employee, cannot be adjudicated substantively under the Whistleblower Act, see Bennett, 230 F. Supp. 2d at 221, because that Act does not contemplate third party beneficiary claims. Accordingly, Mrs. Porter may pursue both Count V and the Whistleblower Act claim.

Mrs. Porter's MCRA claim in Count VII also relates to conduct separate from the retaliatory discharge. See Complaint at ¶127 (referring to conduct "described in this Complaint"). That conduct includes, for example, Mrs. Porter's coercive interrogation by the SID investigators and the defamatory statements about Mrs. Porter. Those actions are independent of the retaliatory discharge and therefore, Count VII may be pursued along with the Whistleblower Act claims.

IV.  **MRS. PORTER HAS SUFFICIENTLY ALLEGED THREATS, INTIMIDATION OR COERCION BY DEFENDANT CABRAL TO STATE A VIABLE CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. c. 12, §11I**

Sheriff Cabral is incorrect in her contention that the MCRA count against her should be dismissed because the Complaint has not alleged threats, intimidation or coercion. Defendant Cabral misstates legal precedent when she posits that Mrs. Porter must allege a physical or potentially physical confrontation accompanied by a threat of harm to state a claim under the MCRA. See Motion to Dismiss at pp. 6-7. In fact, Defendant Cabral relies on some cases that are now no longer accurate precedent, in light of the Supreme Judicial Court's decision in Buster v. Moore. Inc., 438 Mass. 635 (2003), which case Defendant Cabral fails to cite. In Buster, 438 Mass. at 646, the SJC stated: "[W]e have recognized that coercion may take various forms, and ***we have not limited its scope to actual or attempted physical force***." (emphasis added). The SJC further held that "in certain circumstances, economic coercion, standing alone, may be actionable under the act." Id. at 648.

The Buster holding does not necessarily depart dramatically from prior cases on this issue, as many decisions have stated that a "physicality" aspect is not a requirement to state an MCRA claim. See, e.g., Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 396 n.11 (1996) (assuming "without deciding the point that coercion which does not involve force might violate the act"); Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 515 U.S. 868 (1994) ("[A]ctionable coercion is the application to another of such force, either physical ***or moral***, as to constrain him to do against his will something he would not have otherwise done")(emphasis included); Redgrave v. Boston Symphony Orchestra, 399 Mass. 93 (1987)(characterized by the Court in Buster as involving coercion where one party deprives another of rights due under a contract); Lecrenski Bros. Inc., 312 F. Supp.2d at 122 (holding that "economic coercion, at the very least, can be implied in the instant case"); Acciavatti v. Prof'l Servs. Group, Inc., 982 F. Supp. 69, 79 (D. Mass. 1997) ("The defendants fired [the plaintiff], thereby canceling a future economic relationship with him, because his speech negatively

impacted them. The defendants' retaliatory behavior, therefore, constitutes the requisite 'intimidation, threat, or coercion' under the MCRA").

As the Supreme Judicial Court noted in Buster, "the history of the struggle for civil rights…shows all too clearly that *economic pressure* may be deployed in any number of commercial settings in the absence of actual or threatened physical force to coerce individuals to forgo the exercise of their secured rights." Buster, 438 Mass. at 647 (emphasis added). It is clear, then, that economic or moral force alone may constitute sufficient coercion under the MCRA.

In the instant action, Mrs. Porter alleges several incidents in which she was economically and morally intimidated, threatened, and/or coerced by Defendant Cabral, and her First Amendment rights were violated. For example, at Sheriff Cabral's direction, Mrs. Porter was interrogated by SID officials who were trying to evaluate the extent of her cooperation and communication with the FBI. See Complaint at ¶61. In addition, Defendant Cabral deprived Mrs. Porter of her economic relationship with the Defendants, as well as with co-defendant CMS. Cabral also deprived Mrs. Porter of her rights under the contract of Policy S220 and as a third-party beneficiary under the services contract between the Defendants and CMS. See id. at ¶¶63-65, 68-73. Moreover, the decision to defame Mrs. Porter through a statement released to the press shortly after Mrs. Porter announced her intention to file this action demonstrates moral pressure and intimidation exerted on her in an attempt to stop her from exercising her First Amendment right to free speech.

Taken independently and collectively, these allegations more than sufficiently satisfy the liberal notice pleading standard required by Federal Rule 8(a), in asserting that Defendant Cabral "intimidated, threatened, and coerced" Mrs. Porter in violation of the MCRA. See Lecrenski Bros. Inc., 312 F. Supp.2d at 122-23. Defendant Cabral's attempt to rely on Hobson v. McLean Hosp. Corp., 402 Mass. 413 (1998), as the pleading standard for an MCRA claim is legally incorrect, given that this action is pending in Federal Court. See id. (rejecting Hobson and holding that "'state pleading requirements, so far as they are concerned with the degree of detail

to be alleged, are irrelevant in federal court even as to claims arising under state law.'")(quoting Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003)).

V. **THE SUFFOLK COUNTY SHERIFF'S DEPARTMENT IS A LEGAL ENTITY AND IS THUS A PROPER PARTY IN THIS SUIT**

The Department curiously alleges that it is not a legal entity, has no legal status and can neither sue nor be sued. However, the Department fails to acknowledge that it has been a party to several lawsuits in Massachusetts courts over the past few years, including at least one initiated by the Department. See, e.g., Connolly v. Suffolk County Sheriff's Dep't, 6 Mass. App. Ct. 187 (2004); Baron v. Hickey, Suffolk County Sheriff's Dep't, and Sheriff of Suffolk County, 292 F. Supp.2d 248 (D. Mass. 2003) (in which a jury award of $500,000 in damages against the Sheriff's Department was awarded to Mr. Baron); Suffolk County Sheriff's Dep't v. AFSCME Council 93, AFL-CIO, Local, 50 Mass. App. Ct. 473 (2001); Romanos v. Suffolk County Sheriff's Dep't, No. 94-00174, 1994 WL 879556 (Mass. Super. Ct. May 25, 1994). Moreover, a "legal entity" is defined as "[a]n entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations." See BLACK'S LAW DICTIONARY 894 (6th ed. 1990).

Given its activity in legal actions, the Sheriff's Department is a legal entity as that term is legally defined. Accordingly, the Department is a proper party to this suit.

**REQUEST FOR ORAL ARGUMENT**

Plaintiff Sheila Porter respectfully requests oral argument on Defendants' Partial Motion to Dismiss.

12

**WHEREFORE,** Plaintiff Sheila Porter respectfully requests that this Court deny the Partial Motion to Dismiss in its entirety with prejudice, award her fees and costs incurred in connection with this Opposition, and award all other relief this Court deems proper.

          **SHEILA J. PORTER,**

          By her attorneys,
          /s Maura M. Jakola
          Joseph F. Savage, Jr., BBO #443030
          Jennifer M. Goddard, BBO #631144
          Maura M. Jakola, BBO #654695
          Testa, Hurwitz & Thibeault, LLP
          125 High Street
          Boston, MA  02110
          (617) 248-7000

Dated:  October 26, 2004
9771\1.3129466v.2