# TESTA, HURWITZ & THIBEAULT, LLP
### ATTORNEYS AT LAW

OFFICE (617) 248-7000

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

FAX (617) 248-7100

Direct Dial (617) 248-7507

E-Mail savage@tht.com

July 14, 2003

**VIA FACSIMILE & FIRST CLASS MAIL**

Andrea J. Cabral, Sheriff
Suffolk County Sheriff's Department
20 Bradston Street
Boston, MA 02118

      Re:    Unlawful Treatment of Sheila Porter

Dear Sheriff Cabral:

      This office represents Sheila Porter; please direct all future communications regarding her to my attention.

      After nine years working as a Nurse Practitioner at the Suffolk County House of Corrections ("HOC"), Sheila Porter was abruptly terminated on June 10, 2003, in retaliation for cooperating with the FBI concerning illegalities committed by the HOC. The actions of the HOC and its representatives flagrantly violated the Massachusetts Whistleblower Statute, the Massachusetts Civil Rights Act, and 42 U.S.C. § 1983, and constitute a termination in violation of public policy, intentional interference with advantageous relationships, breach of contract and intentional infliction of emotional distress. Mrs. Porter has been significantly damaged by these actions and demands immediate redress of her injuries.

      In firing Mrs. Porter without any warning whatsoever, Maryellen Mastrorilli, a Deputy Superintendent of the HOC, summoned Mrs. Porter into a meeting on June 10, 2003 with the Health Services Administrator and cited "Policy S220" issued by the Suffolk County Sheriff's Department, which expressly applies to employees of the Department.[1] Ms. Mastrorilli accused Mrs. Porter of talking to an "outside agency," in purported violation of the Policy's provision regarding the Department's insistence that all employees keep Department matters -- apparently even criminal activities -- secret. Ms. Mastrorilli then threatened Mrs. Porter that she was forever barred from entering the HOC premises.

---

[1] The Department and the HOC (that is, Suffolk County) are joint employers of Mrs. Porter, along with Correctional Medical Services ("CMS"), the company that placed Mrs. Porter at the HOC. Any references herein to the Department or the HOC are deemed also to refer to Suffolk County.

2649257

TESTA, HURWITZ & THIBEAULT, LLP

Andrea J. Cabral, Sheriff
July 14, 2003
Page 2

While using the Policy against Mrs. Porter as grounds for her unlawful termination, the HOC deprived her of the due process protections to which she was entitled pursuant to that same Policy. Those protections afford Mrs. Porter the right to a hearing regarding the alleged policy offense, and the right to have the HOC prove by a preponderance of evidence that Mrs. Porter engaged in the alleged offense. The HOC's breach of its own Policy by failing to provide these procedural safeguards to Mrs. Porter demonstrates its true retaliatory motives.

Prior to her unlawful discharge, Mrs. Porter had faithfully and successfully served for nine years as Nurse Practitioner at the HOC. Over the course of her tenure, Mrs. Porter learned about numerous questionable and unlawful activities committed by HOC corrections officers and other personnel. Those activities have included, but are not limited to, corrections officers who have impregnated female inmates; the sexual abuse of inmates; the physical abuse of inmates; and other corrupt activities.

Mrs. Porter often became aware of highly relevant and important information regarding suspected abuses by corrections officers, in light of her involvement in the medical care of inmates. Mrs. Porter reported violations of law to the appropriate individuals at the HOC. Moreover, because she witnessed evidence of unlawful activities, Mrs. Porter has been subpoenaed and called to testify in court hearings, trials and depositions. Each and every time, Mrs. Porter testified truthfully and cooperated fully with enforcement officials' requests for information and assistance, including testimony on behalf of corrections officers.

In the course of her involvement in these various proceedings, the FBI requested that Mrs. Porter cooperate with the agency in its investigation into suspected unlawful activities by the HOC. Since the FBI enlisted her assistance five years ago, Mrs. Porter has communicated with the agency on a regular basis and has provided invaluable information, some of which led to criminal indictments of HOC personnel. Well aware of Mrs. Porter's history of law enforcement cooperation, which continued until just prior to her discharge, HOC management has consistently sent a message of indifference or worse in response to Mrs. Porter's good public deeds.

The retaliation suffered by Mrs. Porter and the prevailing attitude of HOC management that abuses should be covered up are consistent with the findings of the Report of the Special Commission on the Suffolk County Sheriff's Department issued in October 2002 (the "Report"). Appointed by the Governor in the fall of 2001 following public allegations of physical and sexual abuse of inmates, the Commission conducted an in-depth investigation into the Sheriff's Department. One of the key problems found by the Commission concerned retaliation. The Commission concluded in its Report that "[s]taff maintain a code of silence due to concern about retaliation," and urged "an aggressive attack on the code of silence that prevents staff members from reporting the misconduct of fellow staff members." The Commission further urged the Sheriff's Department to fully protect those who do come forward with information. In direct contravention of the Commission's urgings, however, the HOC has persisted in its unlawful code of silence and retaliatory pattern and practice.

2649257

TESTA, HURWITZ & THIBEAULT, LLP

Andrea J. Cabral, Sheriff
July 14, 2003
Page 3

   Indeed, it was that very code of silence that the HOC relied upon in terminating Mrs. Porter – Policy S220, which attempts to muzzle employees from discussing even criminal activities with anyone outside the Department. By expressly stating that Mrs. Porter had talked to an "outside agency," the HOC could not have been clearer that it discharged Mrs. Porter in retaliation for her refusal to be gagged by the Department's code of silence. This employment action and the Policy are unlawful for many reasons, including that they interfere with Mrs. Porter's First Amendment rights to engage in free speech on matters of public concern, and to report criminal activities to the authorities.

   While we would hope that those in law enforcement would meet the highest ethical and legal standards, the HOC has repeatedly failed to do so. To the contrary, the HOC has engaged in egregiously unlawful conduct towards Mrs. Porter. This conduct is all the more disturbing when viewed against the warnings and urgings of the Commission to cease all such activities.

   Because the HOC has thrown Mrs. Porter out on the street in retaliation for engaging in good public deeds, she now finds herself with the daunting task of securing a new job. Her prospects of finding other employment at her age and in this economy, however, are slim to none. She is 60 years old and has worked solely in correctional facilities since graduating from nurse practitioner school in 1989. Prior to that time, she was a nurse for more than 20 years. Her strong career record and her reputation have been smeared and sullied by the HOC. Moreover, Mrs. Porter has suffered emotionally in the wake of being unlawfully discharged.

   Mrs. Porter is prepared to vindicate her rights in court. In connection with her preparation, please provide me with a copy of Mrs. Porter's personnel file within five days. I have enclosed a signed authorization from Mrs. Porter permitting you to provide such documents to me.

   In an effort to avoid litigation, however, Mrs. Porter is willing to resolve her claims on the following terms:

1. Immediate reinstatement to her Nurse Practitioner position at the HOC, along with all fringe benefits, seniority and other rights;
2. Payment of her lost wages and benefits;
3. Payment of the attorneys' fees she has incurred and will incur as a result of the HOC's unlawful conduct;
4. Payment for her emotional distress damages;
5. Payment for the medical bills she has incurred in connection with her emotional distress;
6. Disciplinary action against all those responsible for Mrs. Porter's unlawful termination;

2649257

**Testa, Hurwitz & Thibeault, LLP**

Andrea J. Cabral, Sheriff
July 14, 2003
Page 4

    7.    Adequate monitoring of HOC supervisors and other personnel sufficient to eradicate the retaliatory environment;

    8.    Issuance of a strongly worded policy to all HOC management and employees prohibiting the code of silence and retaliatory acts; and

    9.    A public apology by the HOC for its wrongdoing.

If I do not receive a response from you within one week, Mrs. Porter will pursue all available remedies through litigation. I look forward to hearing from you.

Very truly yours,

*Joseph Savage (jms)*

Joseph F. Savage, Jr.

cc: Sheila Porter
     Jennifer M. Goddard, Esq.

2649257

## AUTHORIZATION TO RELEASE PERSONNEL FILES

      I, Sheila Porter, hereby authorize the Suffolk County House of Corrections, the Suffolk County Sheriff's Department and Suffolk County, to release any and all personnel records concerning me, which are maintained by any and all such entities and their employees and representatives, to my attorneys, Jennifer M. Goddard and Joseph Savage, at Testa, Hurwitz & Thibeault, LLP, 125 High Street, Boston, MA 02110. Those records are to include, but not be limited to, any performance appraisals or evaluations, notes, emails concerning me, information concerning my discharge, any warnings, compensation and benefits information, any reports or complaints made by me, and all other information whatsoever concerning me and/or my relationship with the Suffolk County House of Corrections, the Suffolk County Sheriff's Department and Suffolk County.

_____
Sheila Porter