# TESTA, HURWITZ & THIBEAULT, LLP

### ATTORNEYS AT LAW

OFFICE (617) 248-7000

125 HIGH STREET
BOSTON, MASSACHUSETTS 02110-2704

FAX (617) 248-7100

Direct Dial  (617) 248-7507

E-Mail  savage@tht.com

July 14, 2003

**VIA FACSIMILE & FIRST CLASS MAIL**

Sally Powers,
Senior Vice President, Human Resources
Correctional Medical Services, Inc.
12647 Olive Boulevard
St. Louis, MO  63141

      Re:    Unlawful Treatment of Sheila Porter

Dear Ms. Powers:

      This office represents Sheila Porter; please direct all future communications regarding her to my attention.

      After nine years working as a Nurse Practitioner at the Massachusetts Suffolk County House of Corrections ("HOC"), most recently through Correctional Medical Services, Inc. ("CMS"), Sheila Porter was abruptly terminated on June 10, 2003, in retaliation for cooperating with the FBI concerning illegalities committed by the HOC.  The actions of CMS and its representatives flagrantly violated the Massachusetts Civil Rights Act and constitute, among other things, a termination in violation of public policy, breach of contract, intentional interference with advantageous relationships, and negligent and intentional infliction of emotional distress.  Mrs. Porter has been significantly damaged by these actions and demands immediate redress of her injuries.

      In firing Mrs. Porter without any warning whatsoever, Maryellen Mastrorilli, a Deputy Superintendent of the HOC, summoned Mrs. Porter into a meeting on June 10, 2003 with the CMS Health Services Administrator and cited "Policy S220" issued by the Suffolk County Sheriff's Department, which expressly applies to employees of the Department.[1]  Ms. Mastrorilli accused Mrs. Porter of talking to an "outside agency," in purported violation of the Policy's provision regarding the Department's insistence that all employees keep Department matters -- apparently even criminal activities -- secret.  Ms. Mastrorilli then threatened Mrs. Porter that she was forever barred from entering the HOC premises.

---

[1] The Department and the HOC (that is, Suffolk County) are joint employers of Mrs. Porter, along with CMS.

TESTA, HURWITZ & THIBEAULT, LLP

Sally Powers,
Senior Vice President, Human Resources
July 14, 2003
Page 3

Had CMS complied with its contractual obligations to investigate before abruptly discharging Mrs. Porter, it would have learned the following information. Prior to her unlawful termination, Mrs. Porter had faithfully and successfully served for nine years as Nurse Practitioner at the HOC.[1] Over the course of her tenure, Mrs. Porter learned about numerous questionable and unlawful activities committed by HOC corrections officers and other personnel. Those activities have included, but are not limited to, corrections officers who have impregnated female inmates; the sexual abuse of inmates; the physical abuse of inmates; and other corrupt activities.

Mrs. Porter often became aware of highly relevant and important information regarding suspected abuses by corrections officers, in light of her involvement in the medical care of inmates. Mrs. Porter reported violations of law to the appropriate individuals at the HOC. Moreover, because she witnessed evidence of unlawful activities, Mrs. Porter has been subpoenaed and called to testify in court hearings, trials and depositions. Each and every time, Mrs. Porter testified truthfully and cooperated fully with enforcement officials' requests for information and assistance, including testimony on behalf of corrections officers.

In the course of her involvement in these various proceedings, the FBI requested that Mrs. Porter cooperate with the agency in its investigation into suspected unlawful activities by the HOC. Since the FBI enlisted her assistance five years ago, Mrs. Porter has communicated with the agency on a regular basis and has provided invaluable information, some of which led to criminal indictments of HOC personnel. Well aware of Mrs. Porter's history of law enforcement cooperation, which continued until just prior to her discharge, HOC management has consistently sent a message of indifference or worse in response to Mrs. Porter's good public deeds.

The retaliation suffered by Mrs. Porter at the hands of the HOC and CMS, and the prevailing attitude of HOC management that abuses should be covered up, are consistent with the findings of the Report of the Special Commission on the Suffolk County Sheriff's Department issued in October 2002 (the "Report"). Appointed by the Governor in the fall of 2001 following public allegations of physical and sexual abuse of inmates, the Commission conducted an in-depth investigation into the Sheriff's Department. One of the key problems found by the Commission concerned retaliation. The Commission concluded in its Report that "[s]taff maintain a code of silence due to concern about retaliation," and urged "an aggressive attack on the code of silence that prevents staff members from reporting the misconduct of fellow staff members." The Commission further urged the Sheriff's Department to fully protect those who do come forward with information. In direct contravention of the Commission's urgings, however, the HOC has persisted in its unlawful code of silence and retaliatory pattern and practice.

---

[1] Prior to her service with CMS, Mrs. Porter was employed by Correctional Healthcare Solutions, Inc. at the HOC.

TESTA, HURWITZ & THIBEAULT, LLP

Sally Powers,
Senior Vice President, Human Resources
July 14, 2003
Page 2

CMS took absolutely no action to intervene on Mrs. Porter's behalf or to investigate HOC's allegations. In fact CMS has never even bothered to inform Mrs. Porter that she was terminated, or to provide the reason for her termination. Instead, CMS simply sent Mrs. Porter a final check for final wages through June 10, 2003, and did so more than one week after Mrs. Porter's termination, in violation of M.G.L. ch. 149 § 148, which requires payment of final wages on the date of termination.

By terminating Mrs. Porter's employment without any warning, explanation or discussion with her, CMS breached several of its own policies. For example, CMS's Corrective Action Policy requires that, prior to terminating an employee, CMS must first provide a verbal warning, followed by a written warning, followed by follow-up conversations. In the event a termination is recommended after such steps are followed, two levels of management and the Human Resources Department must review and decide the matter. Moreover, the Area Human Resources Manager is to review a termination recommendation with the employee in order to obtain the employee's version of the relevant facts. Mrs. Porter had the contractual right to receive the procedural protections of the Corrective Action Policy and CMS breached all of those requirements when it discharged Mrs. Porter without any warning or discussions.

Nor can CMS claim that it terminated Mrs. Porter pursuant to the "Immediate Removal or Action" section of its Corrective Action Policy, because Mrs. Porter engaged in absolutely no misconduct, let alone "serious" misconduct. The reasons cited by the HOC were that she talked to an "outside agency." It is true that Mrs. Porter was cooperating with the FBI until just prior to her discharge regarding illegal acts committed by the HOC and its personnel. The information of unlawful activities that Mrs. Porter was providing to the FBI is in no manner confidential to the HOC, and Mrs. Porter has the absolute right, without fear of reprisal, to speak with a law enforcement agency such as the FBI in order to report criminal activities. In fact, Massachusetts has recognized the right to report illegalities to law enforcement agencies as a matter public policy. Mrs. Porter's termination violates that public policy.

Even assuming the "Immediate Removal or Action" Policy provisions applied -- which they do not -- CMS nonetheless failed to abide by all of its obligations under those provisions. Those Policy provisions require CMS to investigate and review any suspected act of serious misconduct, and to have the recommendation regarding the employee's status reviewed by two levels of management, as well as the Human Resources Department. Moreover, in a situation where the correctional institution bars access to an employee, which is exactly what occurred with respect to Mrs. Porter, CMS must "take aggressive action to resolve the situation as soon as practical." Finally, CMS must consider all relevant facts prior to taking any corrective action, including but not limited to prior performance and length of service. CMS afforded Mrs. Porter not one of these protections.

TESTA, HURWITZ & THIBEAULT, LLP

Sally Powers,
Senior Vice President, Human Resources
July 14, 2003
Page 4

Indeed, it was that very code of silence that the HOC relied upon in terminating Mrs. Porter – Policy S220, which attempts to muzzle employees from discussing information with anyone outside the Department. By expressly stating that Mrs. Porter had talked to an "outside agency," the HOC could not have been clearer that it discharged Mrs. Porter in retaliation for her refusal to be gagged by the Department's code of silence. This employment action and the Policy are unlawful for many reasons, including that they interfere with Mrs. Porter's First Amendment rights to engage in free speech on matters of public concern, and to report criminal activities to the authorities.

By rubber-stamping the HOC's actions towards Mrs. Porter, failing to follow its own Corrective Action policy, and terminating her employment for cooperating with the FBI, CMS demonstrated its own retaliatory motives. Moreover, CMS has exerted economic coercion over Mrs. Porter in interfering with her right to engage in free speech. CMS is equally culpable with the HOC with respect to the shocking treatment of Mrs. Porter.

Because CMS has thrown Mrs. Porter out on the street in retaliation for engaging in good public deeds, she now finds herself with the daunting task of securing a new job. Her prospects of finding other employment at her age and in this economy, however, are slim to none. She is 60 years old and has worked solely in correctional facilities since graduating from nurse practitioner school in 1989. Prior to that time, she was a nurse for more than 20 years. Her strong career record and her reputation have been smeared and sullied by CMS. Moreover, Mrs. Porter has suffered emotionally in the wake of being unlawfully discharged.

Mrs. Porter is prepared to vindicate her rights in court. In connection with her preparation, please provide me with a copy of Mrs. Porter's personnel file within five days. I have enclosed a signed authorization from Mrs. Porter permitting you to provide such documents to me.

In an effort to avoid litigation, however, Mrs. Porter is willing to resolve her claims on the following terms:

1.   Immediate reinstatement to employment with CMS and to her Nurse Practitioner position at the HOC, along with all fringe benefits, seniority and other rights;
2.   Payment of her lost wages and benefits;
3.   Payment of the attorneys' fees she has incurred and will incur as a result of the unlawful conduct of CMS;
4.   Payment for her emotional distress damages;
5.   Payment for the medical bills she has incurred in connection with her emotional distress;

TESTA, HURWITZ & THIBEAULT, LLP

Sally Powers,
Senior Vice President, Human Resources
July 14, 2003
Page 5

6.    Disciplinary action against all those responsible for Mrs. Porter's unlawful termination;

7.    Adequate monitoring of CMS management to ensure all policies are followed;

8.    Issuance of a strongly worded policy to CMS management prohibiting retaliatory acts; and

9.    An apology by CMS for its wrongdoing.

If I do not receive a response from you within one week, Mrs. Porter will pursue all available remedies through litigation.  I look forward to hearing from you.

Very truly yours,

Joseph F. Savage, Jr.

cc: Sheila Porter
    Jennifer M. Goddard, Esq.

2649258

## AUTHORIZATION TO RELEASE PERSONNEL FILES

I, Sheila Porter, hereby authorize Correctional Medical Services, Inc. ("CMS"), to release any and all personnel records concerning me, which are maintained by CMS and its employees and representatives, to my attorneys, Jennifer M. Goddard and Joseph Savage, at Testa, Hurwitz & Thibeault, LLP, 125 High Street, Boston, MA 02110. Those records are to include, but not be limited to, any performance appraisals or evaluations, notes, emails concerning me, information concerning my discharge, any warnings, compensation and benefits information, any reports or complaints made by me, and all other information whatsoever concerning me and/or my relationship with CMS, the Suffolk County House of Corrections, the Suffolk County Sheriff's Department and/or Suffolk County.

_____
Sheila Porter