UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,<br>    Plaintiff<br><br>    v.<br><br>ANDREA CABRAL, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>SUFFOLK COUNTY, and<br>CORRECTIONAL MEDICAL<br>SERVICES, INC.<br>    Defendants | Civil Action No. 04-11935-DPW |

**DEFENDANTS ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENA DUCES TECUM ISSUED TO THE SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE**

**I.    INTRODUCTION**

The Plaintiff is a former contract nurse practitioner employed by Defendant Correctional Medical Services, Inc. (CMS) at the Suffolk County House of Correction (HOC). She alleges in her amended complaint that the Defendants terminated her from her employment as a nurse practitioner at the HOC because she acted as an informant for the FBI. Specifically the Plaintiff asserts that the Defendants terminated her because she provided information to the FBI concerning suspected physical abuse of an inmate at the HOC.

The Plaintiff brought suit against Sheriff Andrea Cabral, Suffolk County Sheriff's Department, Suffolk County and Correctional Medical Services, Inc.

The claims against Sheriff Andrea Cabral are as follows: Count I, Violation of Federal Civil Rights; Count VII, Violation of State Civil Rights; Count IX, Defamation; Count X,

1

Intentional Infliction of Emotional Distress; and Count XI, Tortious Interference with Advantageous Relations.

The claims against the Suffolk County Sheriff's Department are as follows: Count I, Violation of Federal Civil Rights; Count II, Violation of State Whistleblower Statute; Count III, Breach of Contract; and Count V, Breach of Contract.

The claims against Suffolk County are as follows: Count I, Violation of Federal Civil Rights; Count II, Violation of State Whistleblower Statute; Count III, Breach of Contract; and Count V, Breach of Contract.

Counts IV and VIII relate exclusively to direct claims against Defendant Correctional Medical Services, Inc.

On June 8, 2005 the Plaintiff served a subpoena duces tecum on the Suffolk County District Attorney's Office seeking the personnel files for Andrea Cabral[1], Viktor Theiss[2], and Elizabeth Keeley.[3] (See subpoena attached hereto as Exhibt A). The Plaintiff has since withdrawn her request for the personnel files of Mr. Theiss and Ms. Keeley. She has also narrowed her request regarding Sheriff Cabral's personnel file to documents relating to her departure from the Suffolk County District Attorney's Office, including any documents related to a medical leave of absence that she may have sought prior to her departure and whether she made accusations of racism against her employer, Suffolk County District Attorney Daniel Conley, similar to the accusations of racism plaintiff's counsel (but not plaintiff) contends were made against the Plaintiff. According to Plaintiff's counsel, the documents in Defendant

---

[1] Prior to taking office as Suffolk County Sheriff in November 2002, Sheriff Cabral was employed by the Suffolk County District Attorney's Office from 1994 to 2002.

[2] Viktor Theiss is the Superintendent of the Training and Intelligence Division of the Suffolk County Sheriff's Department. During the relevant time period set forth in the Plaintiff's complaint he was the Deputy Superintendent of the Sheriff's Investigation Division. Mr. Theiss was employed by the Suffolk County District Attorney's Office from 1996 to 2002.

[3] Elizabeth Keeley is the Chief of Staff for the Suffolk County Sheriff's Department. Ms. Keeley was employed by the Suffolk County District Attorney's Office from 1992 to 2002.

Cabral's personnel file relating to her departure and a medical leave of absence are relevant to her credibility.  The Plaintiff also contends that documents in Defendant Cabral's personnel file concerning whether she accused her employer of racism is relevant to Count IX of the Amended Complaint, alleging Defamation.  The Plaintiff asserts that Sheriff Cabral has previously accused people of racism and that is relevant to her claim that Sheriff Cabral has accused her of racism in the Press Statement issued by the Suffolk County Sheriff's Department (Department) which stated, inter alia, "[Mrs. Porter] is clearly biased and has her own agenda for speaking out at this time." (See Affidavit of Ellen M. Caulo, attached hereto as Exhibit B; Press Statement, attached hereto as Exhibit C).   The Defendants have moved to quash the subpoena because the documents requested contain confidential and personal information that is exempt from disclosure under M.G.L. c. 4 § 7 and c. 214, § 1B. Further, the Plaintiff's request is not reasonably calculated to lead to the discovery of admissible evidence.

## II.     FACTS

In May 2003, Defendant Correctional Medical Services, Inc. (CMS) employed the Plaintiff as a nurse practitioner at the Suffolk County House of Correction (HOC).[4] CMS was the company that provided medical care for the inmates incarcerated at the Suffolk County House of Correction (HOC).   The contract negotiated between Suffolk County and CMS provided that the Suffolk County Sheriff's Department had the authority to bar any employee of CMS from the HOC.  The Suffolk County Sheriff's Department has in fact barred a number of CMS employees from the HOC.[5] The Plaintiff was aware that the Suffolk County Sheriff's Department had the

---

[4] Prior to working for CMS, the Plaintiff was employed by Correctional Healthcare Services, Inc. (CHS) as a nurse practitioner at the HOC.  She had been employed at the HOC from approximately 1994 to 2003.
[5] CHS held the contract for the provision of inmate medical care at the HOC prior to CMS.  Pursuant to that contract the Department also retained the right to bar CHS employees from the HOC.  During the period of time that CHS

right to bar her from the HOC.(Plaintiff's deposition at 77-79, attached as Exhibit D). On June 10, 2003 the Suffolk County Sheriff's Department barred the Plaintiff from the HOC.

The decision to bar the Plaintiff from the HOC arose out of an investigation into allegations made by an inmate at the HOC on May 19, 2003 that an unidentified correction officer had physically abused him. During the course of the investigation into those allegations it was learned that the inmate reported the assault to the Plaintiff on May 19, 2003 while she was on duty as a nurse practitioner and showed her the injuries he allegedly received. The Plaintiff did not, as required by her employment as a nurse practitioner, document her observations of those injuries and the inmate's statements concerning how he was injured in the inmate's medical records. Instead the Plaintiff informed her supervisor, Health Services Administrator Donna Jurdak[6], that an inmate in the infirmary was alleging that an officer had assaulted him and asked her to communicate that information to Department Deputy Superintendent Mary Ellen Mastrorelli. Subsequently, Deputy Superintendent Mastrorelli asked Ms. Jurdak to tell the Plaintiff to provide a confidential report concerning her observations of and communications with the inmate regarding his allegations. The Plaintiff did not produce a written response to this request until ten days later and instead of a confidential report she provided a medical progress note dated May 19, 2003, the date of her encounter with the inmate.

On May 22, 2003 the Plaintiff approached Sheriff's Investigation Division (SID) Investigator Brian Dacey in the infirmary where he was gathering information relative to his investigation into the inmate's allegations of abuse.[7] The Plaintiff informed Investigator Dacey

---

was providing medical services at the HOC, the Department had occasion to bar a number of CHS employees from the HOC.
[6] Donna Jurdak was employed by CMS as the Health Services Administrator at the HOC.
[7] The Plaintiff was not someone whom SID had initially intended to interview because the inmate's medical records did not indicate that she had made any observations of the inmate or had any information relevant to their investigation into the alleged assault.

4

that she had knowledge of the alleged assault on the inmate. The Plaintiff recounted her encounter with the inmate on May 19, 2003 describing the observations that she made of his injuries as well as his allegations that the injuries had been caused by an officer. The Plaintiff further indicated that she had written but not yet submitted a report of her encounter with the inmate.

On May 28, 2003 Investigator Dacey received a copy of a handwritten medical progress note authored by the Plaintiff dated May 19, 2003.[8] The Plaintiff was re-interviewed by Investigator Dacey and his partner Investigator Sonya Aleman on May 28, 2003 regarding the content of her May 19, 2003 report. After asking the Plaintiff to explain in detail her encounter with the inmate on May 19, 2003, Investigator Dacey then asked the Plaintiff if she knew when FBI agent Krista Snyder had been contacted regarding the inmate's allegations.[9] The Plaintiff responded that she had contacted Agent Snyder on May 19 or 20, 2003.

Defendant Sheriff Cabral was apprised of the investigation into the inmate's allegations and the Plaintiff's involvement in the matter. Based upon the fact that the Plaintiff had failed to document in the inmate's medical file her alleged observations of injuries he alleged were received at the hands of a correction officer and her failure to provide a confidential report in a timely manner, Sheriff Cabral made the decision to bar the Plaintiff from the HOC. The Plaintiff was notified of this decision on June 10, 2003.

On August 25, 2004, approximately thirteen months after she was barred from the HOC, the Boston Globe printed an interview with the Plaintiff in which she alleged that the Defendants had terminated her because she had provided information to the FBI concerning allegations of

---

[8] This is the same report that the Plaintiff provided to Deputy Superintendent Mastrorelli in response to her request for a confidential report.

[9] On May 21, 2003 FBI Agent Krista Snyder informed SID Investigator Stan Wojtkonski that an unidentified member of the medical staff at the HOC had called her on May 20, 2003 to report the assault of the inmate on May 19, 2003.

5

inmate abuse in May 2003. The article further indicated that the Plaintiff intended to file a civil suit against the Suffolk County Sheriff's Department and that Sheriff Cabral was engaged in a tight campaign for Suffolk County Sheriff with opponent Stephen Murphy before the September 14, 2003 primary election. In response to the Plaintiff's allegations in the Boston Globe the Suffolk County Sheriff's Department issued a Press Statement, which stated, inter alia, "[Mrs. Porter] is clearly biased and has her own agenda for speaking out at this time." (Exhibit C) In her deposition testimony, the Plaintiff stated that when she first saw that statement she didn't think of it as implying racial bias. (See Deposition of Sheila Porter Vol. 2 at 384-385, attached hereto as Exhibit E.) When asked specifically whether she thought the statement implied that she had a racial bias, the Plaintiff replied, "I don't know." (Exhibit E at 385, line 11-12).

### III.    ARGUMENT

**The Plaintiff Is Not Entitled To Documents Contained Within Defendant Cabral's Personnel File At The Suffolk County District Attorney's Office Because They Are Exempt From Disclosure Pursuant To The Public Records Law And They Are Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

The Public Records statute, M.G.L. c. 66, § 10 provides broad public access to various government records and documents in the possession of public officials. Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 430, 446 N.E. 2d 1051 (1983). While the statute broadly defines the category of governmental records to which the public must be allowed access, it also provides a number of specific exemptions. M.G.L. c. 4, § 7, twenty-sixth (a) through (f). Records falling within the scope of an exemption are protected from disclosure. General Laws c. 4, § 7, twenty-sixth (c) exempts from public disclosure two categories of records: first "personnel and medical files or information" and, second "other materials or data relating to a specifically named individual, the disclosure of which may constitute an

6

unwarranted invasion of personal privacy." Wakefield Teachers Association v. School Committee of Wakefield, 431 Mass. 792, 796, 731 N.E.2d 63 (2000). The term "personnel [file] or information" includes, at a minimum, employment applications, employee work evaluations, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee. Wakefield, supra at 798. "Information falling within the 'personnel and medical files or information' category is absolutely exempt from disclosure." Wakefield at 799; Globe Newspaper Co. supra at 434; M.G.L. c. 4, § 7, cl. 26(c).

The documents sought by the Plaintiff in the subpoena duces tecum served upon the Suffolk County District Attorney's Office clearly fall within the ambit of "personnel and medical files or information" and are therefore absolutely exempt from disclosure. Defendant Cabral's personnel file and any information contained therein pertaining to her work evaluations and job performance, disciplinary documentation, promotions and her departure from the District Attorney's Office are exempt from disclosure by the plain language of the statute. See Wakefield Teachers Assn. At 798. Any information contained within Defendant Cabral's personnel file regarding any request for a medical leave is, by definition, squarely within the exception set forth in the statute for "medical files or information", and therefore exempt from disclosure. See Globe Newspaper Co. at 434; M.G.L. c. 4, § 7 cl. 26 (c).

The Plaintiff contends that she is entitled to circumvent the clear dictates of the Public Records Law and obtain documents and information contained in Defendant Cabral's SCDAO personnel file on the theory that they are relevant to Defendant Cabral's credibility and to her defamation claim. In support of her contention, the Plaintiff offers nothing more than a suggestion that Andrea Cabral may have requested a medical leave of absence from the District Attorney's Office, and that she may have made statements in connection with that request for a

7

medical leave that are relevant to her credibility. (Affidavit of Ellen M. Caulo, attached as Exhibit B). She neither identifies these theoretical statements nor articulates how any statement made by Defendant Cabral in requesting a medical leave from her former employer, if it existed, is relevant to Defendant Cabral's credibility in the context of this litigation.

Furthermore, the Plaintiff's contention that documents contained within Defendant Cabral's personnel file are relevant to her claim of defamation is equally without merit. Without identifying what accusations of racism Defendant Cabral allegedly made against her former employer, the Plaintiff baldly asserts that she has previously accused people of racism and those instances are relevant to prove that she accused the Plaintiff of racism in her public statements about the Plaintiff. (Affidavit of Ellen M. Caulo, Attached as Exhibit B). In support of her contention that Defendant Cabral accused her of being a racist, the Plaintiff points to the word "bias" contained within the Press Statement issued by the Department in response to allegations made by the Plaintiff in a Boston Globe story. The Press Statement is devoid of any reference to race, racial animus, or prejudice nor has the Plaintiff identified any fact that would reasonably suggest that the issue of race has any relevance in the context of this litigation. The Plaintiff acknowledged in her deposition that the word "bias" does not necessarily mean racial prejudice. (Deposition of Sheila Porter, Vol. 2 at 422, attached as Exhibit E). She testified that when she first saw the statement, "[s]he is clearly biased and has her own agenda for speaking out at this time" (Exhibit E), she did not think that it implied that she had a racial bias. She further testified that she didn't know whether the statement implied that she had a racial bias. (Deposition of Sheila Porter, Vol. 2 at 385, Line 11-12, attached as Exhibit E).

The Plaintiff has failed to demonstrate that the documents and information sought from Defendant Cabral's personnel file is relevant to her claims or is reasonably calculated to lead to

8

the discovery of admissible evidence. Fed. R. Civ. P. 26 (b) (1). Rather the changing categories of information sought and the shifting theories of relevance suggest that the Plaintiff is simply engaging in a fishing expedition in the hope of discovering some information supportive of her claims. That is not a legitimate reason to order the production of confidential and personal information clearly exempt from the disclosure pursuant to M.G.L. c. 4, §7, cl. 26(c).

IV.  CONCLUSION

For all the foregoing reasons this Honorable Court should quash the subpoena duces tecum issued to the Suffolk County District Attorneys' Office for the personnel file of Andrea Cabral.

> Respectfully submitted for Defendants Andrea Cabral, Suffolk County Sheriff's Department, and Suffolk County
> By their attorney,
>
> /s/ Ellen M. Caulo
>
> Ellen M. Caulo
> BBO #545250
> Suffolk County Sheriff's Department
> 200 Nashua Street
> Boston, MA 02114
> (617) 989-6681

Date: June 16, 2005

**CERTIFICATION PURSUANT TO LOCAL R. 7.1**

I, Ellen M. Caulo hereby certify that I have conferred with Anita Bapooji, Esq., counsel for the Plaintiff, in an attempt to resolve the issues raised by this motion.