UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,<br>    Plaintiff<br><br>    v.<br><br>ANDREA CABRAL, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>SUFFOLK COUNTY, and<br>CORRECTIONAL MEDICAL<br>SERVICES, INC.<br>    Defendants | Civil Action No. 04-11935-DPW |

**DEFENDANTS ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL THE PRODUCTION OF TESTIMONY AND DOCUMENTS FROM THE FBI**

**I.    INTRODUCTION**

The Plaintiff is a former contract nurse practitioner employed by Defendant Correctional Medical Services, Inc. (CMS) at the Suffolk County House of Correction (HOC). She alleges that she was terminated from her position as a contract nurse practitioner at the HOC on June 10, 2003 because she provided information to the Federal Bureau of Investigation (FBI) concerning suspected physical abuse of an inmate at the HOC. The Plaintiff has brought claims against Andrea Cabral, Suffolk County Sheriff's Department, Suffolk County and CMS alleging, inter alia, violations of her federal civil rights, Massachusetts civil rights and the state Whistleblower statute.

In her amended complaint, the Plaintiff asserts that commencing in 1999 she began providing information to the FBI "regarding activities, practices and policies of Suffolk County and the Department that she reasonably believed violated the law and/or posed a risk to public

1

safety or public health." (Amended Complaint at ¶36). According to the Plaintiff's amended complaint, some of the information that she provided to the FBI included "sexual misconduct by officers against female inmates; inmate physical abuse by officers; drug use and dealing by Department personnel; the Department's Code of Silence and policy of retaliation; and suspicious inmate deaths." (Amended Complaint at ¶36). Additionally, the Plaintiff contends that in late 2002 at the request of the FBI she placed a recording device on an inmate at the HOC, and later removed the device and returned it to the FBI. (Amended Complaint at ¶43). This is the same inmate whose allegations of physical abuse the Plaintiff reported to the FBI in May 2003, which the Plaintiff contends resulted in the termination of her employment as a contract nurse practitioner at the HOC on June 10, 2003. Further, the Plaintiff has identified FBI Special Agents Maureen Robinson and Christa Snyder as having relevant knowledge about her cooperation with the FBI and the allegations set forth in her complaint.

On April 29, 2005 the Defendants issued a formal request to the FBI in accordance with *United States ex.rel. Touhy v. Ragen,* 340 U.S. 462 (1951) and pursuant to 28 C.F.R. §16.21 et. seq., seeking information and documents pertaining to the Plaintiff's cooperation with the FBI. (See Exhibit A, attached). That request was followed by the service of deposition subpoenas for Special Agents Maureen Robinson, Christa Snyder and the Keeper of the Records for the FBI issued pursuant to Fed.R.Civ.Pro. 45.[1] (Exhibit C, attached) On June 28, 2005 United States Attorney Michael Sullivan notified the Defendants that pursuant to 28 C.F.R. §16.26(b)(4) and Fed.R.Civ.P. 45(c)(3)(A)(iv) he refused to authorize the FBI to produce the requested

---

[1] On June 29, 2005 the Defendants issued a second formal request to the United States Attorney's Office seeking information and testimony of United States Attorney Michael Sullivan, and former Assistant United States Attorneys Stephen Huggard and Gerard Leone. That correspondence also referenced the prior request of April 29, 2005 and provided additional reasons for the production of testimony of Special Agents Robinson and Snyder. (Exhibit B, attached). Counsel for the Defendants had previously communicated those reasons to Assistant United States Attorney Anton Giedt in an effort to narrow the Defendants' request and achieve a mutually agreeable resolution. The United States Attorney issued a denial of this second request by letter dated June 29, 2005. The Defendants intend to challenge that action by filing a motion to compel.

information, either through the production of documents or the deposition of Special Agents Robinson and Snyder. (Exhibit D, attached). United States Attorney Sullivan did authorize the release of a one page, five-sentence affidavit by Special Agent Christa Snyder that sets forth minimal corroboration of the Plaintiff's role as a confidential informant. (See Exhibit E, attached)  Accordingly, the Defendants have filed this Motion to Compel.

## II.     FACTS

The Plaintiff was deposed on May 18 and 24, 2005. During her deposition, the Plaintiff testified that she was contacted by FBI Special Agent Maureen Robinson sometime in late 1999 or early 2000 and asked if she would provide information to the FBI concerning potentially illegal activities at the HOC and the Suffolk County Sheriff's Department (Department) (Plaintiff's Deposition Vol. 1, pg. 90, Exhibit F, attached). Shortly thereafter, the Plaintiff began providing information to Special Agents Robinson and Snyder concerning suspected physical abuse of inmates, sexual abuse of inmates and drug dealing. (Plaintiff's Deposition Vol. 1, pgs. 105-106, Exhibit F). By her own estimate, the Plaintiff provided information to the FBI forty to fifty times a year from late 1999 or early 2000 until she was barred from the HOC on June 10, 2003. (Plaintiff's Deposition Vol. 1, pgs. 153-154, Exhibit F). Each year that the Plaintiff was involved in providing information to the FBI, the Special Agents read to her from a document that contained a list of admonitions, "do's and don'ts", pertaining to her status as an informant. (Plaintiff's Deposition Vol. 1, pages 106-107, Exhibit F). According to the Plaintiff, she had a verbal agreement with the FBI that she would provide information to the Special Agents and they would protect her identity. (Plaintiff's Deposition Vol. 1., page 107, Exhibit F). During this period of time the FBI advised the Plaintiff that she should continue to comply with her obligation to report this same information to the Department's Sheriff's Investigative Division

(SID). The Special Agents never told the Plaintiff not to provide this same information to SID and the Plaintiff testified that she often did. (Plaintiff's Deposition Vol. 1, pgs. 108, 150-151, Exhibit F).

In or about October 2002 Special Agent Snyder asked the Plaintiff to place a recording device on HOC Inmate Rene Rosario for the purpose of recording issues of threats or abuse that Inmate Rosario alleged were happening at the HOC. (Plaintiff's Deposition, Vol. 1, pgs. 126-128, Exhibit F). The Plaintiff placed the recording device on Inmate Rosario in the Medical Unit at the HOC and then removed it and returned it to the Special Agents. (Plaintiff's Deposition, Vol. 1, pgs.128, 137, 149, Exhibit F). Prior to placing the recording device on the inmate, the FBI had the Plaintiff sign a release and advised her that an employee of the Department, Paul DeFazio, was to be her emergency contact. (Plaintiff's Deposition, Vol. 1, pgs. 134-135, 138, Exhibit F).

On or about May 19, 2003 the Plaintiff encountered Inmate Rene Rosario who was housed in a cell in the Medical Unit at the HOC. During this encounter Inmate Rosario informed the Plaintiff that he had been physically assaulted by an officer and showed her what he alleged were the injuries that he sustained in that assault.[2] On or about May 20, 2003 the Plaintiff phoned Special Agent Snyder and informed her of Inmate Rosario's allegations. (Plaintiff's Deposition, Vol. 1, pg. 234, Exhibit F). On or about May 21, 2003 Special Agent Snyder had a conversation with SID Investigator Stan Wojtkonski in which she informed him that a member of the medical staff at the HOC had phoned her last night (5/20/03) and reported that he/she had observed an examination of an inmate on May 19, 2003 by a person named "Beth." That person

---

[2] The Plaintiff testified that she did not conduct a physical examination of Inmate Rosario nor did she observe the physical examination that was conducted by Physicians Assistant (PA) Beth Bringola. (Plaintiff's Deposition, Vol. 1, pgs. 181, 200, 209, Exhibit F). Furthermore, the Plaintiff testified that she did not review the documentation of that physical exam that PA Bringola wrote in Inmate Rosario's medical record. (Plaintiff's Deposition, Vol. 1, pg. 210, Exhibit F) The Plaintiff made no entry in the inmate's medical record. (Plaintiff's Deposition, Vol. 1, pg. 195)

4

said that during the physical examination they observed bruising to Inmate Rosario's neck, chest and under his arms. (SID Incident Report by Investigator Stan Wojtkonski, dated 5/23/03, attached as Exhibit H). Special Agent Snyder declined to identify the medical staff member who provided this information but advised Investigator Wojtkonski that if SID investigators interviewed the medical staff they should be able to ascertain the person's identity. (Exhibit H).

On or about May 28, 2003 SID Investigators Brian Dacey and Sonya Aleman interviewed the Plaintiff regarding her knowledge of Inmate Rosario's allegations. At the end of her shift on May 28, 2003 the Plaintiff phoned Special agent Snyder to complain about the conduct of the SID investigators during her interview. (Plaintiff's Deposition, Vol. 2, pages 307-309, Exhibit G).

On June 10, 2003 Deputy Superintendent Mary Ellen Mastrorelli informed the Plaintiff that she was barred from the HOC. CMS Health Services Administrator Donna Jurdak was also present during this meeting. At approximately 6:15 p.m. when she was leaving the HOC the Plaintiff phoned Special Agent Snyder and informed her that she was barred from the HOC. (Plaintiff's Deposition, Vol. 2, pages 349-351, Exhibit G). Later that evening Special Agent Snyder phoned the Plaintiff to further discuss her barring from the HOC and to arrange a meeting with the Plaintiff the next morning at the Federal Courthouse. (Plaintiff's Deposition, Vol. 2, pages 352-353, Exhibit G).

On June 11, 2003 the Plaintiff met with Special Agents Snyder, Robinson, Assistant United States Attorney Stephen Huggard and two other individuals. During the meeting the Special Agents advised the Plaintiff that they believed that she had been illegally barred from the HOC and that she should retain an employment attorney. (Plaintiff's Deposition Vol. 2, page 357, Exhibit G). Additionally, a discussion ensued concerning the Plaintiff's personnel file and,

while the meeting continued, Special Agent Robinson left to go to the HOC to retrieve it. While she was at the HOC on June 11, 2003 Special Agent Robinson spoke with CMS Health Services Administrator Donna Jurdak. (Plaintiff's Deposition, Vol. 2, page 362-363, Exhibit G; Deposition of Donna Jurdak, pgs. 150, 152-153, attached as Exhibit I).

On or about August 25, 2004 the Boston Globe published an interview with the Plaintiff concerning, inter alia, her barring from the HOC and her involvement with the FBI. Prior to being interviewed by the Boston Globe the Plaintiff spoke with the FBI concerning the parameters of what she could divulge during the interview regarding her status as an informant with the FBI. (Plaintiff's Deposition, Vol. 2, page 369, Exhibit G).

### III.     ARGUMENT

The Department of Justice has promulgated regulations authorized by 5 U.S.C. §301 setting forth the procedures to be followed in response to demands for information in state and federal court proceedings from the Department of Justice and its employees. These regulations, codified at 28 C.F.R. 16.21 et.seq., provide for review of these demands by the responsible United States Attorney and then set forth procedures to be followed by the United States Attorney in considering such request. See 28 C.F.R. §§16.22(b); 16.24. These regulations "do not create an independent privilege" authorizing the Department of Justice to withhold information pursuant to a valid federal subpoena. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994).

Judicial review of a non-party final agency action, in this case the United States Attorney refusing to authorize the FBI to comply with deposition subpoenas, is governed by the Administrative Procedures Act, 5 U.S.C. § 706(2)(A).[3] *COMSAT Corp. v. National Science*

---

[3] The First Circuit has yet to rule definitively regarding whether the APA standard of review or the broad authority of the federal courts to resolve discovery disputes pursuant to Rules 26 and 45 of the Federal Rules of Civil

*Foundation*, 190 F.3d 269 (4th Cir. 1999); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 66 (D.D.C. 1998). The APA provides express waiver of the government's sovereign immunity from suit and specifically allows the federal courts to review final agency actions when the relief sought is other than money damages and there is a claim "that an agency or an officer or employee thereof acted or failed to act in an official capacity or under legal authority…." 5 U.S.C.A § 702. Section 702 of the APA does not require the filing of a separate, independent action in order to challenge an agency's refusal to comply with a third-party subpoena, but rather allows the enforcement of a third-party subpoena for discovery against the government through a motion to compel compliance. See *United States Environmental Protection Agency v. General Electric Company*, 197 F.3d 592, 599 (2d Cir. 1999). Upon review, the Court shall set aside a final agency action if it determines that the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. §706(2)(A). The party challenging the agency's refusal to comply with a deposition subpoena bears the burden of establishing that the agency's action was arbitrary, capricious, or an abuse of discretion and must make a strong showing that the testimony sought is necessary. *Bobreski v. U.S. Environmental Protection Agency*, 284 F.Supp. 67, 74 (D.D.C. 2003).

---

Procedure is the correct standard to employ in reviewing a non-party final agency action in refusing to comply with a subpoena. There is authority for both approaches in the Circuits. See *Exxon Shipping Co. v. United States Dep't of Interior,* 34 F.3d 774 (9th Cir. 1994) (Court declined to apply the APA and held that federal courts should apply the federal rules of discovery in ruling on discovery requests made against government agencies, regardless of whether government is a party to the underlying action); see also *United States Envtl. Protection Agency v. General Electric*, 212 F.3d 689 (2d Cir. 2000) (Court expressly declined to decide whether APA governed district court's evaluation of EPA's refusal to comply with third-party subpoena, noting that a plausible argument existed that 5 U.S.C. §706 is not necessarily the appropriate standard of review); but see *Comsat Corp. v. National Science Foundation,* 190 F.3d 269 (4th Cir. 1999) (When government is not a party to an action, the APA provides the sole avenue for review of an agency's refusal to permit employees to comply with subpoenas). It is the Defendants' position in the instant case that, regardless of the standard employed by this Court, the facts compel compliance with the subpoenas issued to the FBI and to Special Agents Robinson and Snyder because they were reasonably calculated to lead to the discovery of relevant and admissible evidence and further, the refusal of the United States Attorney to authorize the FBI and its agents to comply with those subpoenas was arbitrary and capricious and constituted an abuse of discretion.

The Court's scope of review is narrow and the Court may not substitute its judgment for that of the agency. Id. However, in undertaking its analysis, the reviewing Court "must consider whether the [agency's] decision was based upon a consideration of the relevant factors and whether there has been a clear error of judgment." Id., quoting *Marsh v. Or. Nat'l Res. Council*, 490 U.S. 360, 378 (1998). "At a minimum, the agency must have considered relevant data and articulated an explanation establishing a rational connection between the facts found and the choice made." *Brobeski*, Id.

In this case the United States Attorney based his refusal to authorize the FBI to produce documents and Special Agents Robinson and Snyder to testify primarily[4] on the language set forth in the *Touhy* regulations for the Department of Justice, 28 C.F.R. §16.26(b)(4) and (5). Specifically, the United States Attorney contends, "Release of this information would reveal confidential sources and investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." (Exhibit D). Upon consideration of the relevant facts in the context of 28 C.F.R. 16.21 et. seq., this Court should conclude that the United States Attorney has made a clear error in judgment and that his decision not to comply with the subpoenas was arbitrary, capricious, and an abuse of discretion. Accordingly this Court should set aside his decision and order that the FBI comply with the subpoenas.

The information and testimony in the possession of the FBI and Special Agents Robinson and Snyder is directly relevant to the Plaintiff's claims and critical to the Defendants' ability to refute those claims in the pending litigation. The Plaintiff characterizes herself as an informant

---

[4] The United States Attorney also cited Fed.R.Civ.P. 45(c)(3)(A)(iv) in contending that the subpoena requesting documents from the FBI was overly broad and compliance would subject the FBI to undue burden. (Exhibit D).

8

and whistleblower and asserts that Special Agent Robinson recruited her to provide information to the FBI. According to the Plaintiff, she has provided information to Special Agents Robinson and Snyder forty to fifty times a year from approximately 1999 to June 2003. The Plaintiff has refused to provide the specific information that she provided to the FBI, citing the Informer's Privilege. (Plaintiff's Deposition, Vol., 1, pg. 97, Exhibit F). The Defendants are unable to challenge the Plaintiff's assertion of her status as an informant and whistleblower without the information and testimony requested from the FBI and Special Agents Robinson and Snyder.[5] Additionally, the Plaintiff has contended that Special Agents Robinson and Snyder identified a Department employee, Paul DeFazio, as an emergency contact person when the Plaintiff placed a recording device on Inmate Rosario in November 2002. That uncorroborated assertion bolsters the Plaintiff's contention that the Defendants were aware of her cooperation with the FBI, thereby providing support for her claim that she was unlawfully barred from the HOC because of her cooperation with the FBI. The Defendants' ability to challenge this assertion is critical to their effective defense of the Plaintiff's claims. The testimony of Agents Robinson and Snyder is critical to that effort.

      Further, and perhaps most importantly, the Plaintiff's communications with Special Agents Snyder and Robinson from May 19, 2003 through June 11, 2003 are directly relevant to the Plaintiff's allegations set forth in her amended complaint and her credibility. The specific information communicated by the Plaintiff to Special Agent Snyder regarding Inmate Rosario's allegations of physical abuse is critical to an assessment of the Plaintiff's credibility and her claims that she was a whistleblower. The specific information communicated by the Plaintiff to Special Agent Snyder on or about May 28, 2003 regarding her interview by SID investigators

---

[5] Even if the Plaintiff were to provide the specific information that she provided to the FBI, the Defendants would still require documents from the FBI and the opportunity to depose Special Agents Robinson and Snyder in order to challenge her assertions.

9

Dacey and Aleman is critical to an assessment of her claim that her Massachusetts Civil Rights were violated by the investigators' conduct during that interview. The specific information communicated by the Plaintiff to Special Agent Snyder on June 10, 2003 and to Agents Snyder and Robinson on June 11, 2003 is critical to an assessment of her version of the facts and circumstances surrounding her barring from the HOC on June 10, 2003. This information is available from no other source but the Plaintiff and the FBI and Special Agents Snyder and Robinson. The Plaintiff has provided her version of those events. In order to adequately and effectively defend against the Plaintiff's claims it is imperative that the Defendants be provided with this information.[6]

The significance and importance of this information and testimony stands in stark contrast to the specious argument made by the United States Attorney that disclosure of this information and testimony would violate 28 C.F.R. 16.26(b)(4) and (5). Contrary to his contention that compliance with the subpoenas would result in the disclosure of an informant, the Plaintiff has already identified herself as a informant in her public statements made to the media (print and television), her filing of a federal lawsuit and in her deposition testimony. Nor is this a situation where the information and testimony requested would interfere with enforcement proceedings[7], or disclose investigative techniques and procedures the effectiveness of which would thereby by impaired. Rather the information and testimony sought, particularly from Special Agents Snyder and Robinson is in the nature of percipient fact witnesses. Their testimony concerning their conversations with the Plaintiff and the specific information communicated during the relevant time period does not involve the disclosure of investigative

---

[6] The production by the FBI of Special Agent Snyder's bare boned affidavit is insufficient in light of the compelling need demonstrated by the Defendants for this information and the lack of any real evidence that compliance with the subpoenas would violate 28 C.F.R. 16.26(b)(4) and (5).
[7] Notably the United States Attorney has not disclosed the existence of any enforcement proceedings arguably related to the information and testimony sought.

techniques and procedures or the identity of informants. Nor have the Defendants requested the identification of any informant not already disclosed. The testimony of Special Agents Robinson and Snyder concerning their communication with the Plaintiff is highly relevant and necessary to a full and fair adjudication of the allegations in the Plaintiff's complaint. This information is not available from any other source. The United States Attorney's refusal to authorize the FBI to comply with the subpoenas issued by the Defendants constitutes an abuse of discretion. Accordingly this Court should set aside the action taken by the United States Attorney and order that the FBI comply with the subpoenas.

### IV. Conclusion

For all the foregoing reasons the Defendants respectfully request that this Court set aside the decision of the United States Attorney and order the FBI to comply with the subpoenas for information, documents and testimony.

Respectfully submitted for Defendants Andrea Cabral, Suffolk County Sheriff's Department, and Suffolk County
By their attorney,

/s/ Ellen M. Caulo

Ellen M. Caulo
BBO #545250
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
(617) 989-6681

Date: July 15, 2005