UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,<br>    Plaintiff<br><br>    v.<br><br>ANDREA CABRAL, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>SUFFOLK COUNTY, and<br>CORRECTIONAL MEDICAL<br>SERVICES, INC.<br>    Defendants | Civil Action No. 04-11935-DPW |

### DEFENDANTS ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY'S MEMORANDUM IN OPPOSITION TO MOTION OF GLOBE NEWSPAPER COMPANY, INC. TO MODIFY PROTECTIVE ORDER

Defendants Andrea Cabral, Suffolk County Sheriff's Department and Suffolk County respectfully submit this opposition to the motion filed by the Globe Newspaper Company, Inc. ("the Globe") to modify the Protective Order issued by the Court on March 9, 2005 ("Protective Order"). In its motion, the Globe seeks to modify the Protective Order to permit public disclosure of deposition testimony given by witnesses concerning the Plaintiff's allegations. The Defendants assert that the Protective Order, which reflects the parties' agreement concerning the exchange of discovery in the instant litigation, is supported by good cause and was properly issued pursuant to Fed. R. Civ. P. 26(c) and was consistent with the Court's authority under Local Rule 26.1 (permitting parties to enter into stipulations to further the objective of cooperative discovery). Furthermore, the Protective Order does not infringe on a constitutional or common law right of access to court records or hearings, because the documents at issue: pre-trial

1

deposition testimony, are not judicial records but rather discovery material which has not been relied upon by the Court in adjudicating an important substantive right.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff is a former contract nurse practitioner employed by Defendant Correctional Medical Services, Inc. (CMS) at the Suffolk County House of Correction (HOC). She alleges in her amended complaint that the Defendants terminated her from her employment as a nurse practitioner at the HOC because she acted as an informant for the FBI. Specifically the Plaintiff asserts that the Defendants terminated her in retaliation for providing information to the FBI in May 2003 concerning suspected physical abuse of an inmate at the HOC.

CMS was the company that provided medical care for the inmates incarcerated at the Suffolk County House of Correction (HOC) in 2003. The contract negotiated between Suffolk County and CMS provided that the Suffolk County Sheriff's Department had the authority to bar any employee of CMS from the HOC. The Suffolk County Sheriff's Department has in fact barred a number of CMS employees from the HOC. On June 10, 2003 the Suffolk County Sheriff's Department barred the Plaintiff from the HOC.

The decision to bar the Plaintiff from the HOC arose out of an investigation into allegations made by an inmate at the HOC on May 19, 2003 that an unidentified correction officer had physically abused him. The inmate conveyed these allegations to an officer who was not involved in the alleged beating. The officer immediately reported the inmate's claims to the Sheriff's Investigation Division ("SID"), and SID immediately opened an investigation. During the course of the investigation into those allegations, it

was learned that the inmate reported the alleged assault to the Plaintiff on May 19, 2003 while she was on duty as a nurse practitioner and showed her the injuries he allegedly received.  The Plaintiff did not, as required by her employment as a nurse practitioner, document her observations of those injuries and the inmate's statements concerning how he was injured in the inmate's medical records.  Nor did the Plaintiff report the inmate's allegations to anyone in the Department as required by Department policy.

    Instead the Plaintiff informed her supervisor, CMS employee and Health Services Administrator Donna Jurdak, that an inmate in the infirmary was alleging that an officer had assaulted him and asked her to communicate that information to Department Deputy Superintendent Mary Ellen Mastrorelli.  Subsequently, Deputy Superintendent Mastrorelli requested that the Plaintiff submit a confidential report concerning her contact with the inmate.  The Plaintiff did not produce a response to this request until ten days later and instead of the confidential report requested she provided a handwritten Interdisciplinary Progress Note ("Medical Note") dated May 19, 2003, the date of her encounter with the inmate.

    Defendant Sheriff Cabral was apprised of SID's investigation into the inmate's allegations and the Plaintiff's involvement in the matter.  Based upon the Plaintiff's failure to document her observations of the inmate's physical condition in his medical record, her failure to report his allegations to the Department and, her failure to provide a confidential report in a timely manner as requested, Sheriff Cabral decided to revoke her security clearance and bar the Plaintiff from the HOC on June 10, 2003.  Barring is the standard mechanism for removing contract workers and volunteers from working at the HOC.  Unbeknownst to Sheriff Cabral, however, Porter was an FBI informant.

On August 25, 2004, approximately thirteen months after her security clearance was revoked and she was barred from the HOC, the Boston Globe printed an interview with the Plaintiff in which she alleged that the Defendants had terminated her because she had provided information to the FBI concerning allegations of inmate abuse in May 2003. The article further indicated that the Plaintiff intended to file a civil suit against the Suffolk County Sheriff's Department. In response to the Plaintiff's allegations in the Boston Globe the Suffolk County Sheriff's Department issued a Press Statement, which stated, inter alia, "Mrs. Porter was asked to leave the House of Correction because she violated Department regulations and contractual obligations. She is clearly biased and has her own agenda for speaking out at this time."

The Plaintiff commenced this action on September 3, 2004. In her amended complaint the Plaintiff alleged that the circumstances surrounding her barring from the HOC were being investigated by a federal grand jury and that such investigation has included grand jury testimony, including her own. (Amended Complaint, ¶ 66) The Globe reported on August 25, 2004 that the Plaintiff stated she had testified before a federal grand jury, which federal prosecutors informed her was convened to investigate her "termination". The Globe has reported in numerous articles, and most recently in an August 17, 2005 editorial (See Exhibit A, attached to the Globe's Memorandum in Support of Motion to Modify Protective Order), that the Suffolk County Sheriff's Department and Sheriff Cabral are the target of a federal grand jury probe investigating the circumstances surrounding the Plaintiff's barring. Notably, in its August 17, 2005 editorial the Globe wrote: "According to news reports, Cabral denied to a grand jury that

4

Porter was terminated for speaking with federal officials. Cabral is now reportedly the subject of a federal probe to determine whether she lied under oath, a serious charge."

On March 3, 2005, after conferring, the parties filed a Stipulation to Enter Protective Order, providing that the exchange of discovery between the parties would be governed by the terms and conditions of a proposed Protective Order. On March 9, 2005 the Court issued the Protective Order as agreed and stipulated to by the parties (Exhibit A, attached hereto) which provides in relevant part:

> 1. (b)   The following documents and information shall be deemed "Confidential Information" under this Order: (i) all medical-related documents relating to Inmate R.R.; (ii) all documents contained in Inmate R.R.'s institutional file from the Suffolk County House of Correction; (iii) all documents containing information protected by the CORI Statute, M.G.L. c. 6 §§ 167-178 et seq., (iv) all documents containing personnel information about current or former employees of the defendant; (v) all documents relating to the investigation performed in Inmate R.R.'s allegations; (vi) all statements taken under oath at any proceeding concerning the allegations in the complaint; (vii) all documents containing the Plaintiff's medical information; (viii) the Plaintiff's personnel file; and (ix) all documents containing the Plaintiff's prior testimony taken under oath at any proceeding.
>
> 2. (c)   A party may designate as "CONFIDENTIAL" the deposition or trial testimony of that party or of any third party by making a statement upon the record as to such designation prior to the conclusion of the deposition or trial, or by advising the adverse party in writing within fifteen days after receipt of the transcript. The court reporter or the parties shall stamp as "CONFIDENTIAL" any portion of any transcript so designated.

In accordance with the Protective Order, the parties have taken depositions and exchanged documents and information through written discovery.

## II.   ARGUMENT

### A.   THE PROTECTIVE ORDER WAS PROPERLY ISSUED PURSUANT TO RULE 26 (C) AND IS SUPPORTED BY GOOD CAUSE.

In <u>Seattle Times Co. v. Rinehart</u>, 467 U.S. 20, 104 S.Ct. 2199 (1984), the Supreme Court rejected the notion that judicial orders restricting a party's ability to disseminate information obtained through the civil discovery process must meet heightened scrutiny. Instead the Court held that protective orders issued in accordance with the "good cause" provision of Rule 26 (c) do not offend the First Amendment. 467 U. S. at 37; <u>Anderson</u> v. <u>Cryovac</u>, 805 F.2d 1, 7 (1986)(First Amendment scrutiny of protective orders "must be made in the framework of Rule 26 (c)'s requirement of good cause"). In reaching its decision, the Court noted that modern discovery rules are the product of legislative grace and that "a litigant has no First Amendment right of access to information made available only for purposes of trying his suit." <u>Seattle Times</u>, 467 U. S. at 32. Further, the Court pointed out that "pretrial depositions and interrogatories are not public components of a civil trial" and that discovery is not "a traditionally public source of information." <u>Id.</u> at 33. In light of the liberality of modern pretrial discovery permitted by Rule 26 (b)(1), the Court commented that protective orders also facilitate the important governmental interest in preventing abuse of the pretrial discovery process and accordingly, trial courts have "substantial latitude to fashion protective orders." <u>Id.</u> at 36.

In this case the Court pursuant to Fed.R.Civ.P. 26 (c) properly issued the Protective Order, as stipulated to by the parties and supported by good cause. The Protective Order was the product of a joint stipulation by the parties and reflected an agreement regarding the terms and conditions governing the exchange of pretrial discovery. At the time that the Protective Order was issued the Plaintiff's amended complaint and her allegations of retaliatory barring had already garnered significant

media attention. Further, and most importantly, the Plaintiff's amended complaint and the attendant media coverage discussed that a parallel federal grand jury investigation of her allegations was ongoing. The Protective Order is a critical safeguard to the parties' and in particular, the Defendants' right to a fair trial and impartial jury. The selective publication through the media of deposition testimony which would necessarily reveal the identity of persons who testified before the grand jury, the substance of their testimony and any related documentary evidence would result in significant prejudicial pretrial publicity and undermine the secrecy of the grand jury process. See In re Special Proceedings, 373 F.3d 37, 46 (1st Cir. 2004)(no general right of public access to the proceedings of a grand jury or to documents generated by those proceedings). Accordingly, the Protective Order is supported by good cause.

Although neither the Stipulation nor the Court's issuance of the Protective Order set forth the factual basis for the order, the Court was aware of the media attention (print and broadcast) that the Plaintiff's complaint had already generated as well as the likelihood that a parallel federal grand jury investigation of her allegations was ongoing. (Plaintiff's Amended Complaint ¶¶ 5, 66, 90-91 & 93). From this the Court could have readily inferred that good cause existed for the issuance of the Protective Order that restricted the parties' ability to disseminate discovery material identified as confidential. Subsequently the Court was apprised of additional facts and circumstances that supported the issuance of the Protective Order, although not directly identified as such. (See *Motion to Stay*, *Memorandum in Support of Motion to Stay* and *Affidavit of Ellen M. Caulo*, filed under seal on April 21, 2005) The absence of specific findings on the record supporting the issuance of the Protective Order in this case is not fatal. See, e.g., In re Special

Proceedings, supra at 45 (Court rejected claim that protective order issued upon joint motion of parties was unlawful for failing to make specific findings of necessity for order).

Additional reasons exist for the issuance of the Protective Order. The deposition testimony of witnesses in this matter includes discussions of internal investigations and investigative procedures, internal Department personnel policies and procedures, and personnel and medical information of specific individuals. While the Massachusetts Public Records statute, M.G.L. c. 66, § 10 provides broad public access to various government records and documents in the possession of public officials, it also provides a number of specific exceptions. M.G.L. c. 4, § 7, twenty-sixth (a) through (p). Records falling within the scope of an exemption are protected from disclosure. General Laws c. 4, § 7, twenty-sixth (b), (c), and (f) exempt from public disclosure material related solely to internal personnel rules and practices (b); personnel and medical information (c); and investigatory materials (f). The selective publication through the media of deposition testimony would necessarily reveal information and materials exempted from public disclosure by the Massachusetts Public Records statute. Accordingly good cause exists for the issuance of the Protective Order.

Contrary to the Globe's assertion, the Court does not have to find a "particular factual demonstration of potential harm to reputational or privacy interests" (Globe Memorandum at p. 8) in order to conclude that the Protective Order is supported by good cause. Neither Seattle Times nor any of the other cases cited by the Globe set forth specific criteria that must be met in order for the "good cause" standard of Rule 26 (c) to be satisfied. Rather, the trial court has broad discretion in making a determination

whether "good cause" exists for the imposition of a protective order and substantial latitude in fashioning the parameters of this discovery-management tool.  Seattle Times, 467 U.S. at 36; Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 788 (1988); Anderson v. Cryovac, 805 F.2d at 6-7.[1]

Good cause exists for the issuance of the Protective Order and the Globe's Motion to Modify the Protective Order should be denied.

### B. THERE IS NO RIGHT OF PUBLIC ACCESS TO PRETRIAL DISCOVERY MATERIAL.

While courts have recognized that there is a public right of access in general to court records or hearings, it is well settled that the public has no first amendment or common law right to discovery materials that have not been filed with the court or relied upon in adjudicating an important substantive right.  Unless documents obtained by parties through the discovery process become part of the judicial record, the public does not have a cognizable right to their access. See, e.g. United States v. Finneran, Crim. No. 05-10140-RGS (D. Mass. September 6, 2005) *Memorandum and Order on Intervenors' Motions To Intervene And To Vacate Or Modify Protective Order* ("Nor is there any right of public access to documents obtained through discovery that are not part of the judicial record"); In Re Boston Herald, Inc., 321 F.3d 174, 180 (1st Cir. 2003)("Both the constitutional and the common law rights of access have applied only to judicial documents"); Seattle Times v. Rhinehart, 467 U.S. 20, 33 ("[P]retrial depositions and interrogatories are not public components of a civil trial …restraints placed on

---

[1] Nor does the Globe cite any authority for its assertion that continued public filing of deposition excerpts by the parties in conjunction with discovery disputes further supports modification of the Protective Order because of the risk of "selective and potentially misleading accounts of the case." (Globe Memorandum at p. 11).  Not only is that not a relevant criterion for the Court to consider in evaluating the merits of the Globe's motion, but the risk, if any, of selective and misleading accounts of this case, which has been the subject of  "intense and prolonged controversy" (Globe Memorandum at p. 8) stems from the release to the public by the media of selected portions of deposition transcripts.

discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); Anderson v. Cryovac, Inc. 805 F.2d 1 (1986)(Constitutional and common law right of access to judicial records does not encompass discovery materials); see also, Public Citizen v. Liggett Group, 858 F.2d 775, 788 (1986)(Absent a claim under the federal rules, there is no general common law or first amendment right to inspect discovery materials.)

The Globe's Motion to Modify the Protective Order exclusively seeks access to discovery materials, specifically pretrial deposition testimony of witnesses concerning the Plaintiff's allegations, which are not part of the judicial record. Accordingly, since there is no public right of access to discovery materials the Globe's motion must be denied. Although, as the Globe correctly points out, excerpts from pretrial deposition testimony have been filed with the Court in support of Defendants' motions relating to discovery disputes, such filings do not transform them from discovery documents into judicial records. There is no right of public access to documents submitted to a court for its ruling on discovery motions. Anderson, supra at 13. "Materials submitted to a court for its consideration of a discovery motion are actually one step removed in public concern from the trial process than the discovery materials themselves, materials that the Supreme Court has said are not subject to the public's right of access." Id., citing Seattle Times, Co., 467 U.S. at 36-37. [2]

Furthermore, courts have also held that there is no public right of access to some types of judicial proceedings and documents associated with such proceedings. "The paradigmatic example is the grand jury, whose proceedings are conducted in secret." In

---

[2] This is consistent with Fed.R.Civ.P. 5(d) which provides that certain discovery requests and responses, including depositions and interrogatories, must not be filed until they are used in the proceeding or the court orders filing.

10

Re Boston Herald, Inc., 321 F.3d 174, 183 (2003).  In order for the grand jury system to function properly, the secrecy of its proceedings is paramount.  See Press-Enterprises Co. v. Superior Court, 478 U.S. 1, 9, 106 S.Ct. 2735 (1986), citing Douglas Oil Co. v. Petrol Stops N.W., 441 U.S. 211, 218, 99 S.Ct. 1667 (1979); Fed.R.Crim.P. 6(e)(establishing general rule of grand jury secrecy with enumerated narrow exceptions).  Indeed, the First Circuit concluded in In Re Boston Herald, Inc., that the "secrecy of the grand jury is so important that this court and others have found no right of access attaches to distinct hearing and documents because they could reveal secret grand jury information." 321 F.3d at 183.  Accordingly, as the release of the deposition testimony would necessarily reveal the identity of persons who testified before the grand jury, the substance of their testimony and any related documentary evidence, there is no public right of access to these materials and the Globe's motion must be denied.

## III.     CONCLUSION

This Court should deny the Globe's Motion to Modify the Protective Order because it was properly issued pursuant to Fed.R.Civ.P 26 (c) and is supported by good cause.  Further, the public has no constitutional or common law right of access to pretrial discovery material.

|  |  |
|---|---|
|  | Respectfully submitted<br>For Defendants Andrea Cabral,<br>Suffolk County Sheriff's Department and<br>Suffolk County<br>By their attorney, |
|  | /s/ Ellen M. Caulo<br>Ellen M. Caulo, BBO #545250<br>Suffolk County Sheriff's Department<br>200 Nashua Street<br>Boston, MA 02114 |
| September 15, 2005 | (617) 961-6681 |

11

Case 1:04-cv-11935-DPW    Document 76    Filed 09/15/2005    Page 12 of 12