UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11935DPW

|  |  |
|---|---|
| SHEILA J. PORTER, | ) |
| Plaintiff, | ) |
| v. | ) |
| ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, SUFFOLK COUNTY, and CORRECTIONAL MEDICAL SERVICES, INC., | ) |
| Defendants. | ) |

## DEFENDANT CORRECTIONAL MEDICAL SERVICES, INC.'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

1. The plaintiff, Sheila Porter, is a nurse practitioner living in Upton, Massachusetts. See Amended Complaint, ¶ 6, attached hereto as **Exhibit A**.

2. The defendant, Correctional Medical Services, Inc. ("CMS") is a private corporation headquartered in St. Louis that contracts with county sheriff's departments, county commissioners and state departments of correction to provide medical services, psychiatric services and dental services in correctional facilities all over the country. See Transcript of Deposition of Ann Mack, pp. 25, 28, attached hereto as **Exhibit B**. See Amended Complaint, ¶ 10, attached hereto as **Exhibit A**.

3. In January 2001, CMS entered into a contract with Suffolk County to provide medical services to inmates at the Suffolk County House of Corrections ("SCHOC") from January 1, 2001 until December 31, 2003. See Suffolk County/CMS Standard Contract and Comprehensive Health services agreement, attached hereto as **Exhibit C**.

4. Around the same time, the plaintiff was hired by CMS to work as a nurse practitioner at the SCHOC facility pursuant to CMS' contract with Suffolk County. See Transcript of

1

        Deposition of Sheila Porter, Vol. I, pp. 14, 16 attached hereto as **Exhibit D**; see also Transcript of Deposition of Ann Mack, pp. 52-53, attached hereto as **Exhibit B**.

5. Under this arrangement, the plaintiff was an employee of CMS. See Transcript of Deposition of Sheila Porter, Vol. II, p. 349, 382, attached hereto as **Exhibit E**.

6. The plaintiff was hired by CMS, trained by CMS, paid by CMS, supervised by CMS employees, and evaluated by CMS. CMS also provided the plaintiff with the Employee Success Guide, an employee manual that essentially guided all CMS employees with respect to the policies and procedures and terms and conditions of their employment with CMS. Furthermore, CMS maintained the plaintiff's personnel file, provided her with benefits and authorized the plaintiff's vacation time and sick days. See Transcript of Deposition of Sheila Porter, Vol. I, pp. 18, 19, 21, 23, 26, 29, 62-63, 82-83, attached hereto as **Exhibit D**. See Transcript of Deposition of Sheila Porter, Vol. II, pp. 407-408, 410, attached hereto as **Exhibit E**. See Transcript of Deposition of Donna Jurdak, pp. 15, 18, 24, attached hereto as **Exhibit F**.

7. Plaintiff's supervisor at the SCHOC was Donna Jurdak, the Health Services Administrator of the SCHOC and an employee of CMS. Donna Jurdak reported to Ann Mack, who was the Regional Administrator of CMS. See Transcript of Deposition of Donna Jurdak, pp. 15, 18, 24, attached hereto as **Exhibit F**.

8. The plaintiff had no employment relationship with Suffolk County, the Suffolk County Sheriff's Department ("Sheriff's Department") or Sheriff Andrea Cabral. See Transcript of Deposition of Ann Mack, pp. 33, 37, attached hereto as **Exhibit B**; Transcript of Deposition of Sheila Porter, Vol. I, p. 27, attached hereto as **Exhibit D.**

9. The Suffolk County Sheriff's Department did not hire the plaintiff, contribute to the plaintiff's 401(k) plan, pay the plaintiff's salary, or participate in evaluating the plaintiff's job performance or determining whether she would receive a pay raise. The plaintiff did not contact the Sheriff's Department when she wanted to take vacation time or a sick day. See Transcript of Deposition of Sheila Porter, Vol. I., pp. 18, 19, 22, 23, 27, 62-63, attached hereto as **Exhibit D.**

10. The only training with which the Suffolk County Sheriff's Department provided the plaintiff was with respect to security-related issues regarding working in a correctional environment. See Transcript of Deposition of Sheila Porter, Vol. I., pp. 32-35 attached hereto as **Exhibit D.**

11. The Sheriff's Department had no input in the medical decisions the plaintiff made with respect to inmates at the facility. Medical records for the inmates were kept by CMS, and the Sheriff's Department could only gain access to the records with an authorization. See Transcript of Deposition of Sheila Porter, Vol. I., pp. 41, 43 attached hereto as **Exhibit D.**

## CMS' EMPLOYEE SUCCESS GUIDE

12. During orientation, all new employees of CMS are provided with a copy of CMS' handbook, entitled the "Employee Success Guide." The Employee Success Guide ("Guide") informs new employees of specific employment policies, benefits, compensation policies and responsibilities related to their employment with CMS. See Transcript of Deposition of Ann Mack, pp. 191-192, 194, attached hereto as **Exhibit B**.

13. The plaintiff received a copy of the CMS Employee Success Guide at the commencement of her employment in January 2001 and a revised copy of CMS' Employee Success Guide in May 2002. See Transcript of Deposition of Sheila Porter, Vol. I, pp. 23, 82-83, attached hereto as **Exhibit D**; and Vol. II, pp. 407-408, attached hereto as **Exhibit E**; see also Acknowledgment Forms, attached hereto as **Exhibit G**. The plaintiff read the Employee Success Guide at some point during her employment. See Deposition of Sheila Porter, Vol. II, p. 408, attached hereto as **Exhibit E**.

14. The Acknowledgment form that the plaintiff signed regarding her receipt of the revised CMS Employee Success Guide, states in relevant part:

> "I hereby acknowledge receipt of the January 2002, CMS *Employee Success Guide*. I agree to familiarize myself with the Guide's contents. I realize that the Guide contains Company policies and procedures, but is not intended to be a complete and exhaustive explanation of those policies and procedures. I also understand that CMS reserves the right to change its policies and procedures as it decides necessary. I understand that this Guide does not constitute a contract of employment. I understand that I have the right to resign from employment at CMS at any time and for any reason, and that CMS has the same right to terminate my employment at any time, with or without cause." See Acknowledgment Form, dated May 22, 2002, attached hereto as **Exhibit G**.

15. The "Important Notice" in the front of the revised CMS Employee Success Guide states in relevant part:

> "This manual represents the most current personnel policies of Correctional Medical Services, Inc. … CMS retains the absolute right to modify or revise these policies based upon its professional and business concerns. These policies are only guidelines and information for employees and may or may not apply depending on the individual circumstances. The *Employee Success Guide* is not an employment contract and should not be construed as such. It is understood that either party may end the employment relationship with or without notice, and with or without cause at any time. CMS remains free, in it s sole discretion, to change or amend these policies, benefits, and contents at any time, with or without notice. No member of CMS management has the authority to enter into a contract of employment with any employee except as approved in writing by CMS' Division Presidents." See CMS' Employee Success Guide, Revised January 2002, p. 5, relevant portions of which are attached hereto as **Exhibit H**.

3

16. At some point during her employment, the plaintiff read the sentence in the "Important Notice" in the revised CMS Employee Success Guide which stated, "[t]he Employee Success Guide is not an employment contract and should not be construed as such." See Transcript of Deposition of Sheila Porter, Vol. II, p. 408, attached hereto as **Exhibit E**.

17. The "Corrective Action" policy contained within the revised CMS Employee Success Guide states in relevant part:

    "CMS has established a policy of progressive corrective action, where practical, to facilitate improvement in conduct and performance. … CMS reserves the prerogative to take progressive disciplinary action or to immediately terminate employment if appropriate under all circumstances." See CMS' Employee Success Guide, Revised January 2002, p. 17, relevant portions of which are attached hereto as **Exhibit H**.

18. The "Corrective Action" policy also contains a provision entitled "Institutional Action," which states in relevant part:

    "It must also be noted that the institution may temporarily or permanently withdraw access from anyone who works in or enters the institution. In the event of such withdrawal of access, CMS will attempt to resolve the situation as soon as practical. Loss if institution access normally results in termination of employment by CMS, as security clearance/access is a precondition of employment by CMS." See CMS' Employee Success Guide, Revised January 2002, p. 19, attached hereto as **Exhibit H**.

19. The "Institutional Action" provision is the only provision within the "Corrective Action" policy that applied in the plaintiff's case. See Transcript of Deposition of Ann Mack, pp. 213-214, 220, attached hereto as **Exhibit B**.

20. The plaintiff did not have a contract of employment with CMS. See Transcript of Deposition of Sheila Porter, Vol. II, p. 407-408, attached hereto as **Exhibit E**.

**SHERIFF'S DEPARTMENT'S RIGHT TO BAR CMS EMPLOYEES FROM THE SCHOC**

21. Operations at the SCHOC are overseen by the Sheriff's Department, whose responsibilities include preserving the safety of inmates and personnel at the SCHOC. See Amended Complaint, ¶ 7, attached hereto as **Exhibit A**.

22. CMS employees are required to comply with the Sheriff's Department's policies with regard to the SCHOC. See Transcript of Deposition of Donna Jurdak, p. 42, attached hereto as **Exhibit F**.

4

23. The plaintiff knew that she was required to comply with the Sheriff's Department's policies with regard to the SCHOC. See Transcript of Deposition of Sheila Porter, Vol. I. pp. 35-36, attached hereto as **Exhibit D**.

24. The Sheriff's Department retains the right to bar any CMS employee from the SCHOC facility at any time without consulting CMS before doing so. See Transcript of Deposition of Donna Jurdak, p. 80, attached hereto as **Exhibit F**; Transcript of Deposition of Ann Mack, p. 270, attached hereto as **Exhibit B**.

25. The plaintiff knew from the CMS Employee Success Guide and from seeing other employees get barred from the SCHOC that the Sheriff's Department retained the right to bar CMS employees from the SCHOC. The plaintiff also knew that she could be barred from the SCHOC for violating the SCHOC's institutional policies. See Transcript of Deposition of Sheila Porter, Vol. I, pp. 77-79, 84, attached hereto as **Exhibit D**.

### PLAINTIFF'S RELATIONSHIP WITH THE FBI

26. In late 1999, the plaintiff was contacted by the FBI and agreed to provide ongoing information to the FBI regarding allegations of sexual, physical and drug abuse within the SCHOC. See Transcript of Deposition of Sheila Porter, Vol. I, pp. 90, 94, 101, 103, attached hereto as **Exhibit D**.

27. The plaintiff continued to provide information to the FBI about the SCHOC over the course of the next four years. See Amended Complaint, ¶ 36, attached hereto as **Exhibit A**.

### PLAINTIFF'S BARRING FROM THE SCHOC

28. On June 10, 2003, Mary Ellen Mastrorilli, Deputy Superintendant of the Sheriff's Department, came into Donna Jurdak's office in the Health Services Unit in the SCHOC and told Jurdak that she needed to meet with Jurdak and the plaintiff. See Transcript of Deposition of Donna Jurdak, p. 131, attached hereto as **Exhibit F**.

29. Once Jurdak, the plaintiff and Mastrorilli were assembled in Jurdak's office, Mastrorilli notified the plaintiff that she had violated the Sheriff's Department's Policy S-220, which pertained to sharing confidential information with persons outside the agency. Mastrorilli then read portions of the Policy S-220 to the plaintiff. After reading portions of the policy, Mastrorilli notified the plaintiff that she was being barred from the SCHOC. See Transcript of Deposition of Donna Jurdak, pp, 133-135, attached hereto as **Exhibit F**. See Transcript of Deposition of Sheila Porter, Vol. II. 333-336, attached hereto as **Exhibit E**.

30. Jurdak was shocked by the news of the plaintiff's barring. Jurdak was not aware of the Sheriff's Department's decision to bar the plaintiff from the SCHOC until that day. See Transcript of Deposition of Donna Jurdak, pp. 131-137, attached hereto as **Exhibit F**;

       Transcript of Deposition of Sheila Porter, Vol. II, pp. 426-427, attached hereto as **Exhibit E**.

31. After the meeting, Jurdak stayed to talk with Mastrorilli and find out why the plaintiff had been barred. Mastrorilli told Jurdak that she wished she had more information, but the information she conveyed to the plaintiff was all that she had. Jurdak told Mastrorilli that she did not want to lose the plaintiff and that it would be a loss to the entire unit. See Transcript of Deposition of Donna Jurdak, pp. 136-137, attached hereto as **Exhibit F**.

32. Following this meeting, Jurdak contacted Ann Mack to notify her that the plaintiff had been barred from the SCHOC. Mack was equally surprised by the news of the plaintiff's barring. Mack told Jurdak that she would call Mastrorilli herself to see if she could figure out what was going on. See Transcript of Deposition of Donna Jurdak, pp. 139-140, attached hereto as **Exhibit F**. See Transcript of Deposition of Ann Mack, p. 99-102, attached hereto as **Exhibit B**.

33. Mack then called Mastrorilli to determine whether the barring was justified and whether it could be reversed. Mack asked Mastrorilli if they could talk about it, but Mastrorilli states that she could not talk about it and she could not change the decision. See Transcript of Deposition of Ann Mack, pp. 102-103, 114, 215-216 attached hereto as **Exhibit B**.

34. Mack then called Jurdak and told her that it did not look like they were going to be able to change matters, the plaintiff had been barred from the facility and there was nothing they could do about it. See Transcript of Deposition of Ann Mack, p. 103, attached hereto as **Exhibit B**.

### PLAINTIFF'S TERMINATION FROM CMS

35. CMS did not want to terminate the plaintiff because she was a good nurse practitioner. See Transcript of Deposition of Ann Mack, p. 135, attached hereto as **Exhibit B**; see also Transcript of Deposition of Donna Jurdak, p. 136, attached hereto as **Exhibit F.**

36. However, since the plaintiff was barred and could no longer enter or work at the SCHOC, Mack discussed the situation with Sterling Price, the Human Resources Director of CMS, and Price agreed that CMS had to terminate the plaintiff from the SCHOC.[1] Subsequently, Mack told Jurdak that the plaintiff had to be terminated and that Jurdak should communicate with the plaintiff about when she would receive her last check, information about Cobra and information about her 401(k). See Transcript of Deposition of Ann Mack, pp. 121-122, 125-127, 130, 136-137, 145-146, attached hereto as **Exhibit B.**

37. The day after the plaintiff was barred by the Sheriff's Department, Donna Jurdak terminated (or "ERF'd") the plaintiff from the payroll system for the SCHOC site. See

---

[1] The plaintiff acknowledges that she was terminated from CMS because she was barred by the Sheriff's Department. See Transcript of Deposition of Sheila Porter, Vol. II, pp. 348-349, attached hereto as **Exhibit E**.

6

Transcript of Deposition of Ann Mack, pp. 125, 136-137, attached hereto as **Exhibit B**; see also Transcript of Deposition of Donna Jurdak, pp. 179-181, 217-219, attached hereto as **Exhibit F**.

38. As a result of this action, on approximately June 17, 2003, the plaintiff received her final paycheck, which contained her wages through June 10, 2003 and the remainder of her earned unused vacation pay.[2] See Transcript of Deposition of Sheila Porter, pp. 431-434, attached hereto as **Exhibit E**; see also Transcript of Deposition of Donna Jurdak, p. 218, attached hereto as **Exhibit F.**

39. Shortly after the plaintiff was barred by the Sheriff's Department and terminated by CMS from CMS' SCHOC site, a series of conversations took place among the plaintiff, Jurdak, Mack, Sterling Price, the Human Resources Director of CMS, and the Health Services Administrators of the Essex and Franklin County facilities as to whether there was a position available for the plaintiff to take within another one of CMS' facilities in Massachusetts. See Transcript of Deposition of Ann Mack, pp. 123-130, attached hereto as **Exhibit B**.

40. The plaintiff spoke with Jurdak and inquired whether CMS had any nurse practitioner positions available at another facility. Jurdak told the plaintiff that she did not know and that she would look into it. See Transcript of Deposition of Sheila Porter, Vol. II, p. 431,

---

[2]CMS acknowledges that there is some ambiguity as to how the plaintiff's termination was actually processed. For instance, as a consequence of her barring and discussions with Jurdak, the plaintiff was aware that she no longer had a job with CMS at the SCHOC and that she had been terminated from the SCHOC payroll. The plaintiff contends, however, that she understood the receipt of her final paycheck to mean only that she had been terminated from the SCHOC facility, and not from CMS. As such plaintiff did not think she had been terminated by CMS until a week later when she received a letter from the company that provided 401(k) services to CMS stating that they heard she was moving on and that she needed to take action with respect to her 401(k) account. Plaintiff contends that she never received official notice of her termination. See Transcript of Deposition of Sheila Porter, pp. 431-434, attached hereto as **Exhibit E**. Jurdak also contends that she was not terminating the plaintiff's employment with CMS by terminating the plaintiff from the SCHOC payroll. She testified that she automatically terminates any employee that will no longer be working at the SCHOC from the SCHOC payroll, regardless of the circumstances surrounding that employee's departure. Jurdak contends that she was never told to terminate the plaintiff (which may explain why the plaintiff contends she never received official notice of same). According to Jurdak, she did not realize that the plaintiff had been terminated from CMS until approximately one month later, when Sterling Price called and advised her that she neglected to fill out a "Request for Termination" form on the same day she terminated the plaintiff from the payroll. Price requested that Jurdak date the "Request for Termination" form as effective June 10, 2003. Inexplicably, two versions of this "Request for Termination" were created, one in which Jurdak "recommends" that plaintiff be terminated and the other in which Jurdak states that the plaintiff has been terminated. Jurdak contends that she did not draft the former version, which was the version ultimately signed by Mack and Price. See Transcript of Deposition of Donna Jurdak, pp. 179-192, attached hereto as **Exhibit F**. Nevertheless, the foregoing ambiguity is irrelevant to the plaintiff's claims, which are not dependant on how the plaintiff's termination was actually processed. Both versions of the "Request for Termination" confirm that the reason the plaintiff was terminated from CMS was because she was barred from the SCHOC facility. Whether or not Jurdak actually recommended the plaintiff's termination, and whether the plaintiff was ever officially notified that she had been terminated is not controlling. Furthermore, in situations where an employee is terminated without having gone through the corrective action process, the actual filling out of the "Request for Termination" form and actual signing of the form by Mack and Price is "just a matter of paper process for the file." See Transcript of Deposition of Ann Mack, pp. 153-156, attached hereto as **Exhibit B**.

attached hereto as **Exhibit E**; Transcript of Deposition of Donna Jurdak, p. 199, attached hereto as **Exhibit F**.

41. Jurdak then asked Mack if CMS had any positions available for the plaintiff. Mack did not know of any available positions, but said she would look into it. See Transcript of Deposition of Donna Jurdak, pp. 199, 220-221, attached hereto as **Exhibit F**; Transcript of Deposition of Ann Mack, p. 84, attached hereto as **Exhibit B.**

42. Mack then spoke with the Health Services Administrators at the Essex and Franklin County Houses of Corrections, which were the two other locations in Massachusetts where CMS had contracts. Neither Eileen Mageary, the Health Services Administrator at the Essex County House of Corrections, nor Marilyn Morningstar, the Health Services Administrator at the Franklin County House of Corrections, had a nurse practitioner position available. See Transcript of Deposition of Ann Mack, p. 127-129, attached hereto as **Exhibit B**.[3]

43. Because CMS did not have any openings in any other CMS facility in Massachusetts and the plaintiff could no longer work at the SCHOC, CMS had no choice but to terminate the plaintiff's employment with CMS. See Transcript of Deposition of Ann Mack, pp. 129, 133, attached hereto as **Exhibit B**; Transcript of Deposition of Sheila Porter, Vol. II, p. 434, attached hereto as **Exhibit E**.

44. Suffolk County, the Sheriff's Department and Andrea Cabral played no role in the decision to terminate the plaintiff's employment with CMS. See Transcript of Deposition of Andrea Cabral, Vol. I, pp. 135-136, attached hereto as **Exhibit I**.

45. Prior to her barring by the Sheriff's Department, the plaintiff never felt threatened, intimidated or coerced by CMS. See Transcript of Deposition of Sheila Porter, Vol. II, p. 447, attached hereto as **Exhibit E.**

## PLAINTIFF'S REHIRING

46. In September 2003, a full-time nurse practitioner position became available at CMS' Essex County House of Corrections facility, and the position was offered to the plaintiff by Eileen Mageary, the CMS Heath Services Administrator for that facility. See Transcript of Deposition of Sheila Porter, Vol. II., pp. 436, 439, attached hereto as

---

[3] Throughout the discovery process, the plaintiff has tried to create a disputed issue of fact as to whether there were any open positions for her within CMS by stating that she would have accepted a position within CMS outside of the State of Massachusetts. The plaintiff contends that she would have accepted a position in Maine, Vermont, Rhode Island, New Hampshire or Connecticut. See Transcript of Deposition of Sheila Porter, Vol II., p. 451., attached hereto as **Exhibit E**. Even if this was somehow relevant to any of her claims, the plaintiff never indicated to Jurdak, or anyone else, that she would have been interested in a position with CMS outside of Massachusetts. See Transcript of Deposition of Donna Jurdak, p. 220., attached hereto as **Exhibit F**; Transcript of Deposition of Sheila Porter, Vol. II, p. 436, attached hereto as **Exhibit E**. As such, at the time the decision to terminate the plaintiff was made, Mack was under the impression that the plaintiff only would have accepted a nurse practitioner position in Massachusetts. See Transcript of Deposition of Ann Mack, p. 129, attached hereto as **Exhibit B**.

8

**Exhibit E**; Transcript of Deposition of Ann Mack, pp. 82-83, 222, attached hereto as **Exhibit B.**

47. Negotiation ensued because the position initially offered to the plaintiff was not acceptable to the plaintiff due to the hours required. The position required that she be at work Monday through Friday from 2pm – 10pm. Ultimately, an agreement was reached whereby the plaintiff would work Monday through Friday from 1pm - 9pm, and the plaintiff commenced working at the Essex County House of Corrections in October 2003. See Transcript of Deposition of Sheila Porter, Vol. II., pp. 436, 439, attached hereto as **Exhibit E**; Transcript of Deposition of Ann Mack, pp. 82-83, attached hereto as **Exhibit B**.

48. In March 2004, the plaintiff submitted a letter of resignation to CMS regarding her full-time position at the Essex County House of Corrections. She cited the fact that the Essex facility was too far away, she had to work too late at night, and the position was wearing on her health as reasons for her resignation  The plaintiff continues to be employed by CMS as a per diem nurse practitioner at the Essex facility. See Transcript of Deposition of Sheila Porter, Vol. II., pp. 440, 459, attached hereto as **Exhibit E**.

       The Defendant,
       CORRECTIONAL MEDICAL
       SERVICES, INC.,
       By its attorneys,


       ___/s/ Alexandra B. Harvey_____
       Alexandra B. Harvey, BBO # 548944
       Jennifer A. Norton, BBO # 658878
       ADLER, COHEN, HARVEY,
       WAKEMAN & GUEKGUEZIAN, LLP
       230 Congress Street
       Boston, MA  02110
       (617) 423-6674