*The Boston Globe, August 25, 2004*

Copyright 2004 Globe Newspaper Company
The Boston Globe

August 25, 2004, Wednesday THIRD EDITION

**SECTION:** METRO/REGION; Pg. B2

**LENGTH:** 955 words

**HEADLINE:** NURSE FIRED FROM JAIL JOB SPEAKS OUT
SAYS SHE HELPED FBI PROBE ALLEGED ABUSE OF INMATES

**BYLINE:** By Andrea Estes, Globe Staff

**BODY:**
A longtime nurse at the Suffolk County House of Correction says she was ordered off the property and later fired after Sheriff Andrea J. Cabral's administration discovered she was helping the FBI investigate allegations of inmate abuse at the troubled institution.

Sheila J. Porter, 61, who worked for a private company that provides medical services to the jail, said she was labeled persona non grata at the facility after she told the FBI in May 2003 that an inmate who had worn a recording device for the federal agency had been beaten and was in danger.

After Porter was banned from the facility, her employer, Correctional Medical Services Inc., fired her. Until then, her evaluations had been stellar, said her lawyers, Joseph F. Savage Jr. and Jennifer M. Goddard.

"They quoted a regulation that said you're not supposed to speak with an outside agency," said Porter, who spoke publicly yesterday for the first time since her termination in June 2003. "They said: 'At the close of this business day, you will no longer be welcome at the House of Correction.' The words are very well etched in my mind.

"I stood up and said 'OK, thank you' and walked out and packed up nine years of things," she said in an interview with the Globe, choking back tears. "I loved the job."

Just six months earlier, Cabral had been chosen by Governor Jane Swift to overhaul the department after allegations of abuse led her predecessor, Richard Rouse, to retire early. Cabral has frequently taken credit for restoring credibility to the department.

Three months after Porter was fired, the nurse said, she appeared before a criminal grand jury that she was told federal prosecutors had convened to investigate her termination. No charges have been filed.

Rouse, during whose tenure eight correctional officers were indicted and several civil suits filed, had cooperated with the FBI, announcing in 1999 that federal authorities were launching an investigation into alleged prisoner abuse. Porter said her supervisors knew she was aiding authorities.

Cabral yesterday declined to comment on Porter's allegations. The sheriff is locked in a campaign battle with Boston City Councilor Stephen J. Murphy before a Sept. 14 primary.

Said Cabral spokesman Steven Tompkins: "I don't know anything about a grand jury. The department has always cooperated with and worked with federal authorities on investigations and will continue to do so. Sheila was a contractor, not an employee of the department. Beyond that, I'm not going to comment further on **Sheila Porter**."

Samantha Martin, spokeswoman for US Attorney Michael J. Sullivan, would not comment on the grand jury investigation. FBI spokeswoman Gail Marcinkiewicz said she would not discuss whether Porter was an FBI informant.

Porter, who said she plans to file a civil suit against the sheriff's department, said she started providing information to the FBI in 1999 after an agent contacted her at home.

Through her work as a nurse practitioner on floors housing female inmates, she said, she had learned that a prisoner had become pregnant after a sexual encounter with one of her guards. She also discovered that other female prisoners had been sexually abused, she said.

"There were several episodes of probable abuse, physical abuse of inmates," said Porter, who is now working at two other correctional facilities. "With that, one has to be very careful. The inmate will always say it's a correction officer, and the correction officer will always say it was not. I had occasion to see people after such abuse, and I didn't make the judgment whether it was true or false. I just reported what I saw."

In addition to sexual and physical abuse, Porter said she reported evidence of drug trafficking and the "code of silence" that kept the abuse hidden. She testified in court and before the Stern Commission, which investigated the management of the Department in 2001.

Eight guards were indicted between May and July 2001 and charged with beating inmates and covering up the assaults. Four officers pleaded guilty, two were convicted, and two were acquitted.

Porter did not testify in those cases, but provided background information to authorities, her lawyers said.

Porter said that she continued to work for the FBI after Cabral took office in December 2002, but she declined to provide specific details.

"There are a lot of things that happened," she said. "I can't share them with you because the investigations are ongoing."

But the new administration was unaware of her involvement with the FBI until May 2003, she said. A prisoner who had worn a wire at Porter's request and was a witness in a federal case turned up at the infirmary with bruises on his chest and arm. She said he told her he had been beaten by a guard. Porter, who thought he had been removed from the facility for his protection, reported the abuse immediately. Ten days later, the inmate showed up again at the infirmary, this time with head injuries, she said. She reported the abuse again to jail personnel and to federal authorities, she said, urging agents to transfer him from the facility.

Within days after speaking to the FBI, Porter was called to the sheriff department's special investigations unit, where she was quizzed about her contact with the FBI, she said.

She was soon summoned to meet with a deputy superintendent of the jail, who read from the employee code of conduct, which bans contact with any "outside agency," and informed her that she was forever banned from the premises, she said.

**GRAPHIC:** PHOTO

**LOAD-DATE:** August 25, 2004

Form: All Guided Search Forms > News
Terms: ("sheila porter") (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Thursday, September 15, 2005 - 2:26 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.