```
                                          VOL: I
                                          PAGES: 1-201
                                          EXHIBITS: 1-7
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * *
SHEILA J. PORTER,              *
            Plaintiff          *
       -vs-                    *  Civil Action
ANDREA CABRAL; SUFFOLK COUNTY  *  No. 04-11935-DPW
SHERIFF'S DEPARTMENT; SUFFOLK  *
COUNTY and CORRECTIONAL MEDICAL*
SERVICES, INC.,                *
            Defendants         *
* * * * * * * * * * * * * * * *
```

   DEPOSITION OF ANDREA CABRAL, ESQUIRE, a witness called on behalf of the Plaintiff, in the above-captioned matter, said deposition being taken pursuant to the Federal Rules of Civil Procedure, before Patricia M. McLaughlin, a Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, on Friday, May 6, 2005, commencing at 9:40 a.m.

McLAUGHLIN & ASSOCIATES COURT REPORTERS
92 DEVIR STREET, SUITE 304
MALDEN, MASSACHUSETTS  02148
781.321.8922
WWW.E-STENOGRAPHER.COM

71

| | | |
|---|---|---|
| 1 | | issue concerning Miss Porter's conduct |
| 2 | | surrounding Mr. Rosario's allegation? |
| 3 | A | I recall a conversation with Elizabeth |
| 4 | | Keeley. |
| 5 | Q | Who is she? |
| 6 | A | She's the chief of staff. |
| 7 | Q | When was that conversation? |
| 8 | A | That was just before June 10th. I can't |
| 9 | | recall if it was a day before, two days |
| 10 | | before or even on June 10th, but it was |
| 11 | | within a very short time frame between |
| 12 | | June 10th. Maybe a day or two before. |
| 13 | Q | Was it an in-person meeting? |
| 14 | A | My recollection is that it was a telephone |
| 15 | | meeting, but our offices are right across the |
| 16 | | hall. And it would not have been unusual for |
| 17 | | one of us to stick our head in the door. |
| 18 | Q | Did anyone else participate in that meeting |
| 19 | | or phone call? |
| 20 | A | No. |
| 21 | Q | Did you have any contact with anyone on this |
| 22 | | topic, between the Victor Theiss meeting and |
| 23 | | whatever contact you had with Miss Keeley, |
| 24 | | which may be on or the day before June 10th? |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

1   A   No, not to my recollection.
2   Q   What were the circumstances under which this
3       issue was raised with you on either June 9th
4       or June 10th?
5   A   I received -- I believe it was a phone call
6       from Elizabeth Keeley. There were probably a
7       couple of other departmental matters that we
8       discussed, and she asked me what my response
9       was going to be to the issue involving Sheila
10      Porter. My recollection is that I sort of
11      spoke my thoughts out loud. I said she's the
12      nurse who did not document and used the
13      medical form in a confidential report, didn't
14      submit a confidential report, and I sort of
15      gave a litany. I said I believe that she
16      should be barred from the institution.
17  Q   Your memory is that Miss Keeley initiated the
18      call or the meeting?
19  A   That's my memory of it, yeah.
20  Q   She initiated with an inquiry as to what you,
21      Andrea Cabral's, response to the report about
22      Miss Porter was going to be?
23  A   She didn't initiate it that way.
24  Q   Just give us your best memory of what you

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

73

1  said to her and what she said to you.
2  A  It's not unusual for me to receive a phone
3     call from Elizabeth or to have a meeting with
4     Elizabeth where there are a list of things
5     that require my decision. It's not unusual
6     to go through that list: What are we going
7     to do here, what are we going to do here or
8     here. This was in -- this conversation to my
9     recollection was in the nature of that. This
10    was one of the dozens of decisions that were
11    probably made that day. In that
12    conversation, this was one of those things.
13 Q  As to that one of those things, what did she
14    say to you and what did you say to her?
15 A  My best memory is that she said to me either
16    what is your decision on Sheila Porter or
17    have you decided what the result is going to
18    be on Sheila Porter. I responded with sort
19    of articulating my recollection of what the
20    issues and the problems were and then giving
21    her my decision.
22 Q  If you could please just not summarize it for
23    me, but give me your best memory of what you
24    articulated the problems to be. Just tell me

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

74

|    |   |                                                                      |
|----|---|----------------------------------------------------------------------|
| 1  |   | what your best memory is what she said to you                        |
| 2  |   | and what you said to her.                                            |
| 3  | A | My best memory is, "She's the nurse that on                          |
| 4  |   | the Rene Rosario matter who did not document                         |
| 5  |   | her observations in the medical record. We                           |
| 6  |   | asked for a confidential report. We didn't                           |
| 7  |   | receive one until ten days later. The report                         |
| 8  |   | was backdated." I may or may not have                                |
| 9  |   | said -- actually articulated that it was done                        |
| 10 |   | on the medical record form. I believe                                |
| 11 |   | Elizabeth said yes or evidenced some                                 |
| 12 |   | agreement of what I said.                                            |
| 13 |   | My response was, "I believe she should                               |
| 14 |   | be barred," and I then said what is the                              |
| 15 |   | usual -- "how do we usually handle this," or                         |
| 16 |   | how is this handled," in other words, what is                        |
| 17 |   | the process.                                                         |
| 18 | Q | What did she say?                                                    |
| 19 | A | I believe she said that she would check and                          |
| 20 |   | get back to me. I don't have a memory that                           |
| 21 |   | she knew at the time exactly how it should                           |
| 22 |   | be. I'm not positive about that. I think                             |
| 23 |   | she said she had to get back to me. That's                           |
| 24 |   | my best memory.                                                      |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

1   whether or not -- I don't recall whether or
2   not she even got back to me.
3   Q   Give me a complete statement, if you would,
4   of the reasons why you concluded or decided
5   to give the order to bar Miss Porter.
6   A   She's a nurse working at the House of
7   Correction; pursuant to our contract with CMS
8   is told by an inmate that the inmate has been
9   abused and beaten by an officer, alleges that
10  there is physical evidence of those bruises.
11  The nurse does not document in the medical
12  record her observations of what was relayed
13  to her by the patient.
14  Upon our discovery that these
15  allegations have been made and our discovery
16  that she, in fact, was one of the first
17  people to whom the allegations had been
18  reported, we request a confidential report.
19  The confidential report is not submitted in a
20  timely manner.  It is received by us ten days
21  subsequent to it being requested.  It is not
22  in memo form to Deputy Superintendent
23  Mastrorilli, to whom the report should have
24  been addressed, from Sheila Porter.  It is on

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

| | | |
|---|---|---|
| 1 | | a medical record form, which has particular |
| 2 | | significance to me and it is dated on the |
| 3 | | date of the incident in the space reserved |
| 4 | | for the date as though that's when the |
| 5 | | treatment was rendered. |
| 6 | Q | Those are your entire reasons? |
| 7 | A | Those were my reasons. |
| 8 | Q | And it's your testimony that it had nothing |
| 9 | | to do with the fact that Miss Porter spoke to |
| 10 | | the FBI? |
| 11 | A | No. |
| 12 | Q | Did you understand or assuming these are your |
| 13 | | reasons -- |
| 14 | | MS. CAULO: Objection. She just |
| 15 | | testified that those were her reasons. |
| 16 | Q | What is it in the policies of the Sheriff's |
| 17 | | Department that makes any of these statements |
| 18 | | of reasons that you have given a basis under |
| 19 | | which someone can be barred from the |
| 20 | | facility? |
| 21 | A | If I can refer to Exhibit 1? |
| 22 | Q | Sure. |
| 23 | A | Just going through the policy, certainly |
| 24 | | under policy statements on Page 1, first, I |

1   A   I knew that Miss Porter had provided
2       information to an FBI agent. I did not know
3       that Miss Porter was an informant.
4   Q   I think I used the word, cooperated, with,
5       but you knew she had cooperated in terms of
6       wiring up Rene Rosario and you knew she had
7       provided information to the FBI. Is there
8       anything else you knew?
9   A   No, I knew that she had provided information
10      to the FBI, but it was not -- her wiring of
11      Rene Rosario was not significant to me. It's
12      not unusual in law enforcement to have a
13      medical person do something like that to make
14      sure that it can be done in a safe and
15      confidential area and to make sure no harm
16      comes to the person in the course of them
17      buying wired.
18          For all I knew, this was a one-time
19      provision of information with regard to his
20      allegations. It was not unusual at all to
21      me. We use nurses all the time to do various
22      things, to take samples and so forth in the
23      context of criminal investigations to that
24      they're done well.

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922