# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SHEILA PORTER, | ) |
|     Plaintiff | ) |
| | ) |
|     v. | ) |
| | )    Civil Action No. 04-11935-DPW |
| ANDREA CABRAL, SUFFOLK | ) |
| COUNTY SHERIFF'S DEPARTMENT, | ) |
| SUFFOLK COUNTY, and | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, INC. | ) |
|     Defendants | ) |

_____

## MEMORANDUM IN SUPPORT OF DEFENDANTS ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The Plaintiff is a former contract nurse practitioner employed by Defendant Correctional Medical Services, Inc. ("CMS") at the Suffolk County House of Correction ("HOC").  CMS was the company that provided medical care for the inmates incarcerated at the HOC in 2003. The contract negotiated between Suffolk County and CMS provided that the Suffolk County Sheriff's Department ("SCSD") had the authority to bar any employee of CMS from the HOC.

On May 19, 2003 an inmate at the HOC, Rene Rosario, alleged that a correction officer had physically assaulted him.  The Sheriff's Investigation Division ("SID") immediately commenced an investigation into the inmate's allegations.  During the course of the investigation it was learned that on May 19, 2003 Inmate Rosario had also informed the Plaintiff about the alleged assault and that she had made specific

1

observations of his alleged injuries.  However, the Plaintiff did not document Inmate Rosario's medical record with her observations of his physical condition.  Further, when directed by a SCSD Deputy Superintendent to submit a confidential incident report concerning her encounter with Inmate Rosario, the Plaintiff did not do so in a timely manner and the document that she provided – handwritten Interdisciplinary Progress Notes - appeared to be a medical note, but was not included in the medical records.

The Plaintiff notified Federal Bureau of Investigation ("FBI") Special Agent Christa Snyder ("Agent Snyder") about Inmate Rosario's allegations on or about May 20, 2003.  Between approximately May 21, 2003 and May 23, 2003 investigators from SID had several conversations with Agent Snyder concerning the status of their investigation and the fact that Agent Snyder had received information from an unidentified individual at the HOC regarding Inmate Rosario's allegations.  On May 28, 2003 SID investigators interviewed the Plaintiff concerning the Interdisciplinary Progress Notes regarding her encounter with Inmate Rosario, which they had just received.  During this interview the Plaintiff acknowledged that she had contacted Agent Snyder on or about May 20, 2003 and provided her with information regarding Inmate Rosario's allegations.  SID closed its investigation into Inmate Rosario's allegations on or about June 4, 2003 after concluding that his allegations of physical abuse could not be sustained.

After SID concluded its investigation, Sheriff Cabral was apprised of the results of the investigation.  She was also informed that the Plaintiff had failed to document Inmate Rosario's medical records and failed to provide a confidential report in a timely manner after having been directed to do so.  Based upon the Plaintiff's failure to document her observations of the Inmate Rosario's physical condition in his medical

record and her failure to provide a confidential report concerning her encounter with the inmate in a timely manner as requested, Sheriff Cabral decided to revoke her security clearance and bar the Plaintiff from the HOC on June 10, 2003. Barring is the standard mechanism for removing contract workers and volunteers from working at the HOC.

The Plaintiff alleges in her Amended Complaint that the Suffolk Defendants illegally barred her from the HOC on June 10, 2003 in retaliation for providing information to the FBI in May 2003 concerning the suspected physical abuse of Inmate Rosario at the HOC.

The Plaintiff has brought suit against Sheriff Andrea Cabral (in her official capacity), Suffolk County Sheriff's Department, Suffolk County and Correctional Medical Services, Inc.

The Amended Complaint contains eleven counts[1]: Count I (alleged violation of 42 U.S.C., § 1983) against all Defendants; Count II (alleged violation of State Whistleblower Statute, c. 149, § 185) against defendants Suffolk County Sheriff's Department and Suffolk County; Count III (Breach of Contract) against Defendants Suffolk County Sheriff's Department and Suffolk County; Count V (Breach of Contract) against Defendants Suffolk County, Suffolk County Sheriff's Department and CMS; Count VI (Termination in Violation of Public Policy) against Defendants Suffolk County, Suffolk County Sheriff's Department and CMS[2]; Count VII (Violation of Massachusetts Civil Rights Act, c. 12,§§ 11H and 11I) against Defendant Sheriff Cabral and CMS; Count IX (Defamation) against Defendant Sheriff Cabral; Count X (Intentional Infliction

---

[1] Counts IV and VIII relate exclusively to direct claims against Defendant Correctional Medical Services, Inc. and are not addressed in the instant motion and supporting memorandum.
[2] Upon the Suffolk Defendants' Motion to Dismiss Plaintiff's Amended Complaint, the Plaintiff voluntarily dismissed Count VI as to the Suffolk Defendants.

of Emotional Distress) against Defendant Sheriff Cabral; and Count XI (Tortious

Interference with Advantageous Relations) against Defendant Sheriff Cabral.

The Suffolk Defendants contend that no genuine issues of material fact exist as to

all Counts and that accordingly the Suffolk Defendants are entitled to judgment as a

matter of law.

## II.    **FACTS**

Defendants rely on the *Defendants' Statement of Undisputed Material Facts*

*Pursuant to Local Rule 56.1*, as well as documents that are filed therewith.

## III.    **ARGUMENT**

A party is entitled to summary judgment when, after reviewing all the facts and

reasonable inferences there from in the light most favorable to the non-moving party, the

court determines that no genuine issues of material fact remain and that the moving party

is entitled to judgment as a matter of law. See Fed. R.Civ. P. 56(c); <u>Putnam v. Town of

Saugus</u>, 365 F.Supp.2d 151, 166 (D.Mass. 2005).  A "genuine issue of fact is one that a

reasonable jury, on the record before the court, could resolve in favor of either party."

"A fact is material when it 'might affect the outcome of the suit under governing law.'"

<u>Putnam v. Saugus</u>, 365 at 166.  As the moving party in this case, the Defendants can meet

their burden by demonstrating the absence of evidence to support the Plaintiff's case or

by producing evidence to disprove an element of the Plaintiff's case.  <u>Id.</u> Thereafter, as

the non-moving party, the Plaintiff must "go beyond the pleadings and by [its] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file

designate specific facts showing there is a material issue for trial." <u>Id.</u>

"Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Maldonado-Denis, 23 F.3d 576, 581, (1st. Cir. 1994), quoting Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993).  Moreover, merely discrediting the moving party's testimony is not normally sufficient to defeat the mover's motion for summary judgment; instead, the non-mover must submit affirmative evidence.  First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968).

**A.    THE PLAINTIFF IS UNABLE TO DEMONSTRATE THE NECESSARY CAUSAL LINK  BETWEEN ANY PROTECTED ACTIVITY AND AN ADVERSE EMPLOYMENT ACTION. SUMMARY JUDGMENT MUST THEREFORE BE GRANTED TO ALL DEFENDANTS ON COUNT O PF THE COMPLAINT – HER FIRST AMENDMENT CLAIM.**

The Plaintiff, a trained nurse practitioner, while in the medical unit at the HOC made specific observations of Inmate Rosario's alleged injuries yet failed to document Inmate Rosario's medical record with her observations of his physical condition.  Further, when directed by a SCSD Deputy Superintendent to submit a confidential incident report concerning her encounter with Inmate Rosario, the Plaintiff did not do so in a timely manner and the document that she eventually provided – handwritten Interdisciplinary Progress Notes- appeared to be a medical note.  Based upon the Plaintiff's failure to document her observations of Inmate Rosario's physical condition in his medical record and her failure to provide a confidential report concerning her encounter with the inmate in a timely manner as requested, Sheriff Cabral decided to revoke her security clearance and bar the plaintiff from the HOC.  Barring is the standard mechanism for removing contract workers from working at the HOC.  Plaintiff alleges in Count I of her Amended Complaint that she was "discharged" because she spoke to law enforcement on matters of

"public concern", including "suspected inmate abuse, crimes and other unlawful conduct committed by Department personnel" thereby violating her First Amendment rights to free speech.

In order to succeed on a claim of retaliation under the First Amendment, the plaintiff must be able to establish that: (1) he spoke on a matter of public concern (Connick v. Myers, 461 U. S. 138, 147-48, 103 S.Ct. 1684 (1983)); (2) the public's interest outweighs the government's interest in promoting efficient performance of the public service (Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731 (1968)); and (3) the protected activity was a substantial factor in an adverse employment decision (Mt. Healthy City School Dist. Bd. Educ. v. Doyle., 429 U.S. 274, 287, 97 S.Ct. 568 (1977). See also Mijos v. Swift, 358 F.3d 91, 102-08 (1st Cir. 2004); Mullin v. Town of Fairhaven, 284 F.3d 31, 37 – 38 (1st Cir. 2002); Vazquez-Valentin v. Santiago-Diaz, 385 f.3d 23, 30 (1st Cir. 2004); Putnam v. Town of Saugus, 365 F.Supp.2d 151, 167 (D.Mass. 2005).

Assuming for purposes of this argument only that the Plaintiff provided information to the FBI on matters of public concern thereby satisfying the first prong of the analysis, summary judgment should be granted to all Defendants because the Plaintiff cannot satisfy the second and third prong of this analysis.

The Plaintiff was required to comply with SCSD policies by virtue of a contract between her employer, CMS and the SCSD. Plaintiff not only failed to comply with those policies she failed in her duties as a nurse practitioner by not recording in the medical records her observations of an inmates alleged physical abuse. There is a very strong interest in enforcing the policies of the Suffolk County Sheriff's Department

relative to timely reporting of alleged misconduct.  See, e.g. <u>Watson v. Department of Justice</u>, 64 F. 3d 1524, 1530 (Fed.Cir. 1995); <u>City of Boston v. Boston Police Patrolmen's Ass'n</u>, 443 Mass. 813, 824 N.E. 2d 855 (2005).  Sheriff Cabral made numerous changes to the Department during her transition into the office beginning November 29, 2002.  She overhauled the way correctional staff were hired, trained, promoted, as well as the way allegations of misconduct were investigated.  The improvements she made to the Sheriff's Investigation Division would be undermined, however, if individuals with a responsibility to report things were not held accountable for failing to do so.  The plaintiff had an obligation to make an immediate entry in Mr. Rosario's medical file, and to submit a timely report to the Department when instructed. The plaintiff failed to do these things, and her barring from the institution was consistent with the Sheriff's significant interest in enforcing the Department's policies relative to the reporting and investigating of allegations of staff misconduct.

Neither Sheriff Cabral nor the SCSD curtailed the speech of the Plaintiff.  In fact, the Sheriff's decision to bar the Plaintiff came several weeks after she spoke with Agent Snyder and the basis of her decision did not include the fact that the plaintiff spoke with the FBI.  Even assuming that the Defendants attempted to "curtail" the Plaintiff's speech, the Sheriff's interest in promoting the efficient performance of her duties and that of her Department, specifically the care and custody of inmates outweighs the public's interest in hearing the speech.

The Plaintiff, in addition to not being unable to meet the requirements of the second prong, Defendants argue she cannot satisfy the third prong of the test, namely that her protected activity was a substantial factor in an adverse employment action against

her. The leading case in this area is the Mt. Healthy case cited above. This case involved an untenured school teacher whose employment contract was not renewed by a school district, allegedly because he had engaged in protected speech (making a telephone call to a local radio station concerning a school policy – dress code). Under *Mt. Healthy*, Plaintiff cannot avoid the consequences of her failure to comply with the policies of the Department and failure to make notation is the inmate's medical record. Mt. Healthy, 429 U.S. at 285 – 86 (an employee who engaged in protected conduct ought not be able to prevent his employer from assessing his performance record and reaching an employment decision on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision). The Court specifically stated

> A rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. …

Mt. Healthy City School Dist. Bd. Educ., 429 U.S. at 285.

Where the record establishes that the Plaintiff was barred for legitimate reasons, and not because she communicated with the FBI, and where the record establishes that the Sheriff would have taken the same action (i.e. to bar her) regardless of the protected activity, the plaintiff's claims under 42 U.S.C. § 1983 based on the First Amendment must be dismissed.

1. **The Plaintiff Is Unable To Demonstrate That The Suffolk County Or The Suffolk County Sheriff's Department Is The Moving Force Behind Any Alleged Constitutional Deprivation.**

To prevail on a claim against a municipality under 42 U.S.C. § 1983, Plaintiff must show she was deprived of her constitutional rights through the application of an unambiguous official custom or policy.  Manarite v. City of Springfield, 957 F2d 953 (1st Cir. 1992), cert. denied, 113 S.Ct.113 (1992).  She must show that Suffolk County was a "moving force" behind the deprivation of the Plaintiff's constitutional rights.  Kentucky v. Graham, 473 U.S. 159, 173 (1985).  It is not enough to allege that the employees of the entity were the cause of the injury.   The United States Supreme Court has established that municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for their employees' actions unless such actions were pursuant to official municipal policy and caused a constitutional tort.  Monell, 436 U.S. 658 (1978), City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985), Jett v. Dallas Independent School District, 491 U.S. 701 (1989), City of Canton v. Harris, 489 U.S. 378 (1989).

To determine whether a custom or policy is in place for purposes of finding municipal liability, two requirements must be met:  "First, the custom or practice must be attributable to the municipality.  In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.  Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights."  Bordanaro v. McLeod, 871 F2d 1151, 1156 (1st. Cir. 1989) (Internal citations omitted).

In this case the Plaintiff cannot establish the essential elements to make out a claim for municipal liability and therefore the Defendants are entitled to judgment as a matter of law.

2. <u>**Defendant Andrea J. Cabral Is Immune From Personal Liability Pursuant To The Doctrine Of Qualified Immunity.**</u>

Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. <u>Mitchell v. Forsyth</u> 472 U.S. 511, 526  (1985).  The privilege is an immunity from suit, not merely a defense to liability. <u>Id</u>. The immunity may only be overcome by a showing that an official participated personally in depriving the plaintiff of a clearly established constitutional right.  See, <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 91 (1st Cir.1994).

The threshold inquiry in determining a qualified immunity defense is whether or not a constitutional violation occurred. <u>Santana v Calderon</u>, 342 F. 3d 18, 29 (1st Cir. 2003) *citing* <u>Saucier v Katz</u>, 533 U.S.194, (2001). Defendants contend in the instant case that there was no constitutional violation. The Defendant Andrea J. Cabral is entitled to qualified immunity however, even if the Court were to find a constitutional violation.

An official cannot be stripped of protection when the actions taken were reasonable, even if mistaken.  "*[L]aw enforcement officials will in some cases reasonably but mistakenly conclude* that [their conduct] is [constitutional] and … that … *those officials* –like other officials who act in ways they reasonably believe to be lawful – *should not be held personally liable*." <u>Hegarty v. Somerset County</u>, 53 F.3d 1367, 1373 (1st. Cir. 1995), citing, <u>Anderson v. Creighton</u>, 483 U.S.635, 641 (1987); <u>Burns v. Loranger</u>, 907 F.2d 233, 237(1st Cir.1990).  In determining whether there is a qualified immunity defense, "the court should ask whether the agents acted reasonably under settled law in the circumstances." <u>St. Hilaire v. City of Laconia</u>, 71 F.3d 20, 24 (1st. Cir. 1995) *cert denied*, 518 U.S. 1017 (1996), *citing*, <u>Hunter v. Bryant</u> 502 U.S. 224, 228 (1991). The Court in <u>St. Hilaire</u> went on to identify two prongs of the basic qualified

immunity analysis; first whether the constitutional right was "clearly established" at the time of the alleged violation; second the court must ask whether "a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right" Id.  Here, Sheriff Cabral, a newly appointed official was acting in what she considered the best interests of the inmate in her care.

Actions are to be measured by a standard of objective legal reasonableness in light of the legal rules that were established at the time [they] were taken.  St. Hilaire, at 24 *citing*, Anderson v. Creighton, 483 U.S. 635, 639 (1987). Additionally, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." See, Joyce v. Town of Tewksbury 112 F.3d 19, 22 (1st Cir. 1997), citing Malley v. Briggs, 475 U.S. 335, 341 (1986).

A fundamental justification for the qualified immunity defense is that public employees are free to perform discretionary functions without fear of punitive litigation except when they fairly can anticipate that their conduct will give rise to liability for damages. Savard v. Rhode Island, 338 F. 3d 23, 28 (1st Cir. 2003). Additionally, qualified immunity exists not only to protect public officials from money damages, but also to also prevent the distraction from their official duties, prevent the cost of litigation and the deterrence of able-bodied people from public service. Guzman-Rivera v. Rivera Cruz,  98 F. 3d 664, 665 (1st Cir. 1996) *citing* Harlow v. Fitzgerald ,457 U.S. 800, 816 (1982). Here Sheriff Cabral decision to bar Mrs. Porter from the institution was a reasonable exercise of her authority as Sheriff. Since she did not know that Porter was acting as an informant for the FBI at the time she made her decision, she had no basis to believe her actions were anything but appropriate.

Sheriff Cabral should be granted judgment as a matter as she is immune from

personal liability due to the doctrine of qualified immunity.

**B.**     **THE PLAINTIFF CANNOT ESTABLISH THAT SHE WAS AN
EMPLOYEE OF SUFFOLK COUNTY OR THE SUFFOLK COUNTY
SHERIFF'S DEPARTMENT FOR PURPOSES OF THE STATE
WHISTLEBLOWER ACT.  SUMMARY JUDGMENT SHOULD
THEREFORE BE GRANTED TO THE DEFENDANTS ON COUNT II OF
HER AMENDED COMPLAINT.**

In Count II of her complaint, the Plaintiff alleges that Suffolk County and the

Suffolk County Sheriff's Department (SCSD) violated her rights under the Massachusetts

State Whistleblower statute by barring her from the HOC in retaliation for providing

information to the FBI concerning the alleged physical abuse of inmate Rene Rosario.

Because the Plaintiff cannot establish that she was an employee of Suffolk County or the

SCSD for purposes of the State Whistleblower Statute her claim must fail.

Under the State Whistleblower Statute a public employer is prohibited from

taking retaliatory action against its employees for engaging in certain protected conduct.

The State Whistleblower Statute confines liability to "employers", as defined in the

statute. Bennett v. City of Holyoke, 230 F.Supp. 207, 221 (2002) (plain language of

whistleblower statute confined liability to employer and precluded claims against

individual employees); Orell v. UMass Memorial Medical Center, Inc., 203 F.Supp.2d 52

(D.Mass. 2002) (consulting firm which contracted with state employer was not plaintiff's

employer for purposes of whistleblower statute). The statute further provides that only

those individuals, who qualify as **employees,** as that term is specifically and narrowly

defined, are protected under the statute. Pursuant to M.G.L. c. 149, § 185 (a)(1) an

employee is defined as:

> *any individual who performs services for and under the control and direction of an employer for wages or other remuneration.* M.G.L. c. 149, § 185 (a)(1).

The summary judgment record is devoid of any facts that would establish that the Plaintiff was an employee of Suffolk County and the SCSD.

The undisputed facts clearly establish that the Plaintiff was exclusively and at all times the employee of Correctional Medical Services, Inc. ("CMS"), a private company that provided health care services at the Suffolk County House of Correction (HOC) pursuant to a contract with Suffolk County. CMS hired the Plaintiff as a nurse practitioner, maintained her personnel file, evaluated her work performance, paid her salary, contributed to her 401(k) plan, and provided her with benefits. CMS exercised exclusive direction and control over the Plaintiff's hours, work schedule, and assignments at the HOC. CMS employees - the Health Services Administrator and the Medical Director, supervised the Plaintiff at all times in the performance of her responsibilities as a nurse practitioner. Indeed, by every measure the Plaintiff was an employee of CMS during the period of time that CMS was the medical provider at the HOC,[3] and not Suffolk County and the SCSD.

Further, the factual record clearly establishes that CMS, through its on-site Health Services Administrator, had total responsibility for the coordination and provision of

---

[3] It is also self-evident that CMS, as a private company, is not a public employer as that term is defined by c. 149, § 185. The plain language of the statute enumerates several public entities considered to be employers within the meaning of the statute but does not contain any terms indicating an intention to impose liability on private companies who contract with a public entity. Further, and contrary to what the Plaintiff asserts in her complaint, the statute imposes liability on **agencies** of the Commonwealth, not **agents** and the term **instrumentality thereof** refers exclusively to "any authority, commission, [or] board". CMS is not the Commonwealth or an agency or political subdivision of the Commonwealth. Nor is it an authority, commission, board or instrumentality thereof. The only legal relationship that existed between Suffolk County, the Suffolk County Sheriff's Department and CMS in 2003 was purely contractual – pursuant to a contract with Suffolk County, CMS provided health care services at the HOC, a facility run by the Suffolk County Sheriff's Department.

health care services at the HOC. CMS interviewed, hired and compensated the staff necessary to provide the full range of health care services at the HOC in accordance with National Commission on Correctional Health Care (NCCHC) standards. CMS was responsible for purchasing all the supplies necessary for the daily provision of health care services. Decisions regarding the specific medical care and treatment provided to the inmates, including the mechanisms for delivering that care and treatment, were exclusively within the purview of CMS without input from Suffolk County and the SCSD. Indeed, on a daily basis, the SCSD's role with respect to the provision of health care services at the HOC and Mrs. Porter's responsibilities as a nurse practitioner was limited to providing security and escort to the medical staff and inmates.[4]

To the extent that the Plaintiff's claim under the State Whistleblower Statute is based on the theory that Suffolk County and the SCSD and CMS were her joint employers, it too must fail. The summary judgment record is devoid of any facts that would establish that Suffolk County and the SCSD possessed "sufficient control" over the Plaintiff's work as a nurse practitioner at the HOC in order to qualify as joint employers with CMS. See Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894 (1964)(Court defined joint employer as a company possessing "sufficient control over the work of the employees" of another company). A finding of joint employment status is based upon a factual determination "that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 n.4 (6th

---

[4] The SCSD also provided space within the institution for the Health Services Unit to operate and some large pieces of medical equipment.

Cir. 1997), quoting from <u>NLRB v. Browning-Ferris Indus. of Pa., Inc.</u>, 691 F.2d 1117,

1123 (3rd Cir. 1982).

      The First Circuit has recognized that, under certain circumstances, where an

entity, by contracting with an employer, acquires control over the employment conditions

of the employer's workers, that entity becomes liable as a 'joint employer' under anti-

discrimination law. <u>Orell</u>., 203 F. Supp. 2d 52, 62-63 (D.Mass.2002), citing <u>Rivas v.

Federacion de Asociaciones Pecuarias de Puerto Rico</u>, 929 F.2d 814, 820, n. 17 (1st

Cir.1991) (mill operator not a joint employer in age discrimination case even though it

"retained control over setting the time that its ships were to be unloaded, [and] may have

had some work-site disciplinary authority over the [workers'] foremen").

      In <u>Orell,</u> the plaintiff, a disabled state employee, brought suit against her

employer's consulting firm that had contracted one of its workers to the employer to act

as an interim director over the employee's work department.  In her lawsuit the plaintiff

alleged, inter alia, that her termination was in violation of the whistleblower provision of

the Federal False Claims Act and the state whistleblower statute.  Critical to the

plaintiff's whistleblower claims was her contention that the consulting firm was a "joint

employer".   The Court identified several factors to be considered in evaluating whether

an entity is a joint employer:

     1)  *[whether it] supervises the employee's day to day activities,*

     2)  *[whether it] has the authority to hire or fire employees,*

     3)  *[whether it] promulgates work rules and conditions of employment, and*

     4)  *[whether it] issues operating instruction.*  <u>Orell</u>, 203 F.Supp. at 62.

Utilizing these factors, the Court concluded that the facts as set forth in her complaint did not support the Plaintiff's contention that the consulting firm was a joint employer because it "did not supervise the plaintiff's day to day activities, hire or fire employees, control work assignments, issue operating instructions or conduct any other activities commonly performed by employers" Id.  Accordingly the Court dismissed her discrimination and whistleblower claims.

The analysis the Orell Court utilized to determine that the consulting firm was not a joint employer applies equally in this case.  Suffolk County and the Suffolk County Sheriff's Department were not joint employers of the Plaintiff because they did not supervise the Plaintiff's day to day activities as a nurse practitioner, control her work assignments, issue instructions pertaining to her work as a nurse practitioner, hire or fire CMS employees or conduct any other activities commonly performed by employers. The record is clear that the Health Services Administrator and the Medical Director – both CMS employees - supervised the Plaintiff's day-to-day activities and responsibilities as a nurse practitioner, not Suffolk County and the Suffolk County Sheriff's Department. The Plaintiff's work assignments, daily work schedule and hours were controlled exclusively by CMS, without input from either Suffolk County or the SCSD.  Suffolk County and the SCSD did not hire the CMS employees who worked at the HOC nor did they possess the authority fire them.  The terms and conditions of the Plaintiff's employment were dictated by CMS and set forth in the CMS Employee Success Guide.

The fact that the Plaintiff was required by virtue of the contract between CMS and Suffolk County, to comply with SCSD policies does not transform the Department into a joint employer. The only relationship between the Plaintiff and Suffolk County and

the Suffolk County Sheriff's Department was that the Department operated her work site – the HOC. That fact is insufficient to establish a joint employment relationship. See Orell, 203 F. Supp. at 62-63.

Since the Plaintiff cannot establish that she was an employee of Suffolk County and the Suffolk County Sheriff's Department pursuant to the Massachusetts Whistleblower Statute, the Defendants are entitled to summary judgment as a matter of law.

**C.     THE PLAINTIFF DID NOT HAVE ANY LEGALLY ENFORCEABLE RIGHTS UNDER POLICY S220 BECAUSE SHE WAS NOT AN EMPLOYEE OF SUFFOLK COUNTY AND THE SUFFOLK COUNTY SHERIFF'S DEPARTMENT.   SUMMARY JUDGMENT SHOULD THEREFORE BE GRANTED TO THE DEFENDANTS ON COUNT III OF HER COMPLAINT – BREACH OF CONTRACT.**

In Count III of her complaint, the Plaintiff alleges that Suffolk County and the Suffolk County Sheriff's Department (SCSD) breached their contract with her under Policy S220 because she was not provided with a hearing or other due process before she was barred from the HOC. The Defendants are entitled to summary judgment because the Plaintiff was not an employee of Suffolk County and the Suffolk County Sheriff's Department and therefore was not entitled to a hearing or other due process pursuant to Policy S220.

First, as discussed more fully above, the Plaintiff was at all times, solely and exclusively, an employee of CMS. The provisions of the CMS Employee Success Guide provided to her by her employer, CMS, established the terms and conditions of that employment relationship. The Plaintiff had no employment relationship with Suffolk County and the SCSD. Rather she was a contract nurse practitioner working at the HOC

pursuant to the terms of a contract negotiated between her employer, CMS, and Suffolk County. Further, there was no employment relationship between CMS and Suffolk County – it was purely a contract to provide services. That contract required that CMS employees, like all other contractors, vendors, volunteers and interns, working at the HOC comply with Department policies. While the contract for services negotiated between CMS and Suffolk County required CMS employees to comply with SCSD policies, it did not confer upon CMS employees the same rights and privileges afforded SCSD employees. More specifically, the contract negotiated between CMS and Suffolk County did not confer upon CMS employees a right to a hearing or any sort of process prior to being barred.

Indeed, if the Plaintiff was entitled to any process it was only that provided in the CMS Employee Success Guide. The SCSD did not terminate the Plaintiff. Her employer, CMS, terminated her. The Employee Success Guide provides:

> *It must also be noted that the institution may temporarily or permanently withdraw access from anyone who works in or enters the institution. In the event of such withdrawal of access, CMS will attempt to resolve the situation as soon as practical. Loss of institution access **normally** results in termination of employment by CMS, as security clearance/ access is a precondition of employment by CMS. (Exhibit 19, pg. 19)*

If CMS is successful in resolving the situation or if they have another placement for the barred employee, that employee will not be terminated. Once the Plaintiff was barred from the HOC, the only process to which she was entitled was to have CMS attempt to resolve the situation or to find another placement for her.

Nor is there any factual basis from which to conclude that the Plaintiff had an objectively reasonable belief that the provisions of S220 constituted a legally binding and enforceable contract delineating the terms and conditions of her employment. See O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 691-692 (1996)(Under certain circumstances, employee manuals or policies may form the basis for an **employee's** claim that an express or implied employment contract existed)(emphasis added).   The right to a hearing articulated in Policy S220[5] is exclusively conferred upon employees. Policy S220 II. Offenses provides in relevant part:

> If it is determined that, by a preponderance of the evidence presented either at a formal hearing convened by the Sheriff or an informal hearing conducted by the Superintendent or his designee, an **employee** has committed any one of the following offenses, he/she is subject to **discipline**, up to and including **termination**.

The process that is contemplated by the plain language of this section of S220 arises in the context of imposing **discipline** upon **employees** of the SCSD.  In this case it is undisputed that the SCSD's authority to impose discipline individuals for violations of SCSD policies was limited to its employees.  The SCSD could not and did not discipline or terminate contract workers.

The Plaintiff was a contract worker, not an employee of Suffolk County and the SCSD.   Accordingly, Suffolk County and the SCSD were not contractually bound to provide the Plaintiff, a contract worker, with a hearing and due process pursuant to S220.

---

[5] During her deposition the Plaintiff could not recall if the SCSD ever provided her with a copy of Policy S220, the very policy upon which she bases her breach of contract claim.  Other than her own personal belief, she could not identify any provision within S220 that supported her contention that the SCSD was contractually obligated to provide her, a contract worker, with a hearing before she was barred.

The Defendants are entitled to judgment as a matter of law on Count III of the Plaintiff's Amended Complaint.

**D.    THE PLAINTIFF CANNOT ESTABLISH THAT SHE WAS A THIRD PARTY BENEFICIARY TO THE CONTRACT BETWEEN SUFFOLK COUNTY AND CMS FOR THE PROVISION OF HEALTH SERVICES AT THE HOC.  THEREFORE SUMMARY JUDGMENT MUST BE GRANTED TO THE DEFENDANTS ON COUNT V OF HER COMPLAINT – BREACH OF CONTRACT**

In Count V of her complaint, the Plaintiff alleges that the contract between Suffolk County and CMS for the provision of health care services at the HOC obligated the parties to the contract to "comply with laws applicable to the individuals working at the HOC through CMS[6]." (Plaintiff's Amended Complaint at ¶ 124).  Therefore, as a CMS employee and nurse practitioner working at the HOC, the Plaintiff contends that she was a third party beneficiary to that contract.  As such, the Plaintiff alleges that the Defendants failure to provide her with a hearing under S220 prior to barring her constituted a breach of their contractual obligations under the contract with CMS with respect to her.  The record does not support the Plaintiff's contention that she was a third-party beneficiary of the contract between Suffolk County and CMS.  Further, as set forth above, S220 did not confer any contractual rights upon the Plaintiff such that she was legally entitled to a hearing prior to being barred.  Accordingly the Defendants are entitled to summary judgment.

A third party is an intended beneficiary of a contract if:

> Recognition of a right to performance in the beneficiary is
> appropriate to effectuate the intention of the parties to the

---

[6] The Plaintiff does not articulate what those laws are or specifically where in the contract such a promise by the Parties is contained.

contract and either (a) the performance of the promise will
satisfy the obligation of the promisee to pay money to the
beneficiary; or (b) the circumstances indicate that the promisee
intends to give the beneficiary the benefit of the promised
performance.  Orell, 203 F.Supp. at 67-68, quoting Flattery v. Gregory, et

al., 397 Mass 143, 148-149 (1986).   In this case the contract negotiated between Suffolk

County and CMS was exclusively for the provision of health care services at the HOC.

The intention of the Parties to the contract was the effectuation of comprehensive and

professional health care to the inmates incarcerated at the HOC. The contract did not

create an employment relationship between Suffolk County and CMS.  The Plaintiff was

not a party to the contract.[7]  There is nothing in the record or language of the contract

itself to support a claim that its purpose was to benefit the Plaintiff.  Orell, supra at 68.

        Further, the clear and unambiguous language of the contract provides that the

SCSD retains the unilateral right to bar any CMS employee from the HOC.  Pursuant to

the contract, decisions made by the SCSD to revoke the security clearance of a CMS

employee are final and not subject to arbitration.  There is nothing in the contract which

suggests, much less obligates, that the SCSD provide CMS employees with a hearing or

any type of process prior to making the decision to bar. There is nothing in the contract

between CMS and Suffolk County to support the Plaintiff's claim that she had a right to

performance under that contract.  See Orell, supra at 68.

---

[7] Indeed, the Plaintiff did not have a contract of employment with Suffolk County and the SCSD or CMS.
Further, Suffolk County did not have a contractual obligation under its contract with CMS to compensate
the Plaintiff for her work at the HOC. See Orell, supra at 67-68.

Because the Plaintiff cannot establish that she had a contractual relationship with the Defendants or was an intended third party beneficiary of the contract between CMS and Suffolk County, her claims in Count V must fail.

E.    **SHERIFF CABRAL IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VII OF THE PLAINTIFF'S CLAIM BROUGHT UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT  BECAUSE LIABILITY CANNOT BE BASED ON THE THEORY OF RESPONDEAT SUPERIOR AND THERE IS NO EVIDENCE THAT SHERIFF CABRAL ENGAGED IN ANY CONDUCT THAT COULD BE CONSTRUED AS THREATS, INTIMIDATION OR COERCION**

In Count VII of her complaint the Plaintiff alleges that Sheriff Cabral violated her rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I (MCRA) by directing SID investigators to question her about her communication with the FBI and threatening her with the loss of employment if she did not answer their questions.  The Plaintiff further alleges that public statements made by Sheriff Cabral more than one year after the Plaintiff was barred and in response to the Plaintiff's own public statements also constituted violations of her Massachusetts Civil Rights.  The summary judgment record is devoid of any evidence that Sheriff Cabral engaged in any conduct that could be construed as threats, intimidation or coercion under the MCRA.  Furthermore, liability under the MCRA cannot be based upon the theory of respondeat superior.   Therefore Sheriff Cabral is entitled to judgment as a matter of law.

To establish a claim under the MCRA, a plaintiff must allege that "(1) her exercise or enjoyment of rights secured by the Constitution or laws of the United States, or rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with and (2) that the interference or attempted interference was by **threat, intimidation or coercion**." (emphasis added).  M.G.L. c. 12,

§ 11H, 11I.  See also, <u>Sarvis v. Boston Safe Deposit and</u> <u>Trust Co</u>., 47 Mass. App. Ct. 86

(1999); <u>Appleton v. Town of Hudson, et al</u>, 397 Mass. 812 (1986). A threat, intimidation

or coercion is an essential element to a claim under the MCRA.  <u>Broderick v. Roache</u>,

803 F.Supp. 480, 485 (D. Mass. 1992) (citing <u>Layne v</u>. <u>Superintendent, Massachusetts</u>

<u>Correctional Institution</u>, 406 Mass. 156, 158 (1989)).  "Conclusory allegations,

amounting to a summarization of M.G.L. c. 12 § 11I fail to state a claim." <u>Hobson v.</u>

<u>McLean Hosp. Corp</u>., 402 Mass. 413, 417 (1988); <u>Flesner v. Technical Communications</u>

<u>Corp</u>., 410 Mass. 805, 818 (1991).

    The Plaintiff's claim under the MCRA against Sheriff Cabral fails as a matter of

law because she cannot establish any conduct by Sheriff Cabral that could be considered

a threat, intimidation or coercion.  <u>Bally v. Northeastern University</u>, 403 Mass. 713, 717

(1989).  See also, <u>Bell v. Mazza</u>, 394 Mass. 176, 182-83 (1985). To prevail on her claim,

the Plaintiff must establish that Sheriff Cabral did "something akin to duress which

cause[d] the victim to relinquish her rights." <u>Broderick</u>, 803 F.Supp. at 485, <u>quoting</u>

<u>Butler v. RMS Technologies, Inc</u>., 741 F.Supp. 1008, 1011 (D.Mass. 1990).  The

Supreme Judicial Court has defined threats, intimidation, and coercion as follows:

> "Threat" in this context involves the intentional exertion of pressure to make
> another fearful or apprehensive of injury or harm.  "Intimidation" involves putting
> in fear for the purpose of compelling or deterring conduct.  [We accept] a
> definition of coercion from Webster's New International Dictionary at 519 (2d ed.
> 1959):  "the application to another of such force, either physical or moral, as to
> constrain him to do against his will something he would not otherwise have
> done."  <u>Bennett v. City of Holyoke</u>, 230 F.Supp. 207,228 (2002) quoting from

<u>Planned Parenthood League of Mass., Inc. v. Blake</u>, 417 Mass. 467, 474 <u>cert. denied</u>,

513 U.S. 868 (1994).  Actionable coercion is the "application to another of such force,

either physical or moral, as to constrain him to do against his will something he would

not have otherwise done". See <u>Planned Parenthood.</u>, <u>supra</u>. It is "the active domination

of another's will." <u>Planned Parenthood</u>, <u>supra,</u> quoting <u>Delaney v. Chief of Police of</u>

<u>Wareham</u>, 27 Mass. App. Ct. 398, 409 (1989). In certain circumstances economic

coercion, standing alone, may be actionable under the MCRA. See <u>Buster v. Moore</u>, 438

Mass. 635, 638 (2003); <u>Redgrave v. Boston Symphony Orchestra, Inc.</u> 399 Mass. 93

(1987) (coercion may be found where one party deprives another of rights due under a

contract).

Here, there is no evidence, nor will the Plaintiff be able to produce any, to support

her claim that Sheriff Cabral directed or instructed Investigators Dacey and Aleman to

question her concerning her contact with the FBI.[8] She had no contact with Investigators

Dacey and Aleman regarding the investigation while it was proceeding or upon its

conclusion. Sheriff Cabral did not speak with Investigator Dacey or consult with him

prior to making her decision to bar the Plaintiff from the HOC.  In the absence of any

evidence directly linking Sheriff Cabral[9] to Investigator Dacey's questioning of the

Plaintiff, her claim under the MCRA must fail.

At the close of their second interview with the Plaintiff, Investigator Dacey, out of

curiosity, asked the Plaintiff is she knew when FBI Special Agent Christa Snyder was

contacted.  Investigator Dacey was not directed or instructed by Sheriff Cabral to

question the Plaintiff regarding her contact with the FBI.  Investigator Dacey was not

---

[8] Indeed at her deposition, the Plaintiff herself was unable to articulate any factual basis for her claim that Sheriff Cabral directed Investigator Dacey to question her about her contact with the FBI other than the fact that she was the Sheriff.

[9] To the extent the Plaintiff claims that Sheriff Cabral's decision to bar the Plaintiff from the HOC, made almost two weeks after the alleged coercive interview, is an extension of that conduct, it too must fail. As set forth more fully above, the Plaintiff is unable to establish the requisite nexus between the actions of Investigator Dacey and Sheriff Cabral's decision to bar her. Moreover, the evidence clearly establishes that the Sheriff, in barring the Plaintiff, took the action that she was entitled to take pursuant to the terms of the contract between Suffolk County and CMS.

directed or instructed by anyone in SID to question the Plaintiff regarding her contact with the FBI.

The record is clear that Sheriff Cabral had absolutely no involvement in the investigation by SID into the allegations made by Inmate Rosario.  The record is equally clear that Sheriff Cabral had absolutely no knowledge of Inmate Rosario's allegations of physical abuse, the corresponding SID investigation into those allegations and the identification of the investigators conducting the investigation until the investigation was concluded.  SID closed its investigation on or about June 4, 2003 after concluding that Inmate Rosario's allegations of physical abuse could not be sustained.  It was at that point that Deputy Superintendent Theiss advised the Sheriff of the results of the investigation. He also informed Sheriff Cabral that during the course of the investigation it was learned that the Plaintiff had failed to document Inmate Rosario's medical records and failed to provide a confidential report in a timely manner after being requested to do so. Prior to that point in time Sheriff Cabral was not even aware of the existence of an investigation into Inmate Rosario's allegations much less that the Plaintiff had relevant information about those allegations.

To the extent that the Plaintiff is claiming that the actions of Investigator Dacey and Aleman, in the absence of any evidence that they were directed by Sheriff Cabral, is sufficient to impose liability on Sheriff Cabral under the MCRA, it too must fail because she cannot be held vicariously liable under the doctrine of respondeat superior for the alleged actions of her employees.  The courts have consistently held that the doctrine of respondeat superior does not apply to an action brought under the MCRA.  See, Raymond v. City of Worcester, 142 F.Supp. 2d.145, 148-149 (D. Mass. 2001) ("municipalities

cannot be sued under the Massachusetts Civil Right Act" and "the MCRA does not permit vicarious liability claims against municipalities."); Chaabouni v. City of Boston, 133 F.Supp. 2d 93, 103 (D. Mass. 2001); French v. United Parcel Service, 2 F. Supp. 2d 128, 133 (D. Mass. 1998); Broderick, 803 F.Supp. at 484; Vicarelli v. Business Intern, Inc., 973 F.Supp. 241 (D. Mass. 1997); Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass. 1996).

Furthermore, the Massachusetts Appeals Court has held that a municipality is not a "person" within the meaning of the MCRA, and that claims brought against the municipality under this statute were properly dismissed.  Howcraft v. City of Peabody, 51 Mass.App.Ct. 573 (2001).  See also, Metivier v. Town of Grafton, 148 F.Supp. 2d 98, 102 (D.Mass. 2001)(citing Howcraft, supra, for holding that municipality is not a person covered by the MCRA).

Accordingly, Sheriff Cabral is entitled to summary judgment as a matter of law on Count VII of the Plaintiff's complaint.

E.    **PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A DEFAMATION CLAIM AND THEREFORE SHERIFF CABRAL IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

In order to prove her claim for defamation, Plaintiff must prove that the alleged statements made by Sheriff Cabral are defamatory and false. Dulgarian v. Stone, 420 Mass 843, 847, 652 N.E. 2d 603, 606 (1995). The plaintiff must establish "the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss" Dragonos v. School Committee of Melrose, 64 Mass. App. Ct 429 437, 833 N,E. 2d 679 (2005) *citing* White v. Blue Cross

& Blue Shield of Mass., Inc., 442 Mass. 64,66, 809 N.E. 2d 1034 (2004).  The Plaintiff is

unable to sustain her burden with regard to any statements attributed to Sheriff Cabral.

      The threshold inquiry is whether the statement is susceptible to a defamatory

meaning and such determination is a question for the Court. Nolan v. Krajcik,  2005 WL

2082911 (2005). The interpretation requires the court to examine the statement in its

totality in the context of which it was uttered or published. Foley v. Lowell Sun

Publishing Co., 404 Mass. 9, 11,533 N.E.2d 196 (1989). The Court must consider all the

words used, not merely a particular phrase or sentence. Id.

      Here, Plaintiff initiated the publicity pertaining to her intent to file the instant

lawsuit. She granted an interview to the Boston Globe reporter in August 2004. She

further appeared on television. She brought herself into the public domain and reported

that she was fired from the House of Correction because she provided information to the

FBI. Given the timing of the disclosure, over a year after the event in question, and three

weeks before the primary election, the Sheriff's response was reasonable, appropriate,

and lawful.

      The major element in a defamation claim is falsity. A statement cannot be

defamatory if it is essentially true. Jones v. Taibbi, 400 Mass 786, 794, 512 N.E.2d 260,

266 (1987). Here the statements contained in the Press Statement issued by the SCSD in

response to the Plaintiff's allegations of wrongdoing by Sheriff Cabral, made on the eve

of an election, were true and/or opinion and protected speech. The statement: "Mrs.

Porter was employed by Correctional Medical Services and was fired by them for reason

that known to Ms. Porter and CMS", is true.  The statement:  "Mrs. Porter was asked to

leave the House of Correction because she violated Department regulations and

contractual obligations", is also true. Finally, the statement: "Mrs. Porter was clearly biased and has her own agenda for speaking out at this time", is a statement of opinion. Indeed, the Plaintiff herself acknowledged that when she first became aware of the Press Statement she did not interpret the sentence, "Mrs. Porter is clearly biased", as indicating that she was racially biased.  In fact the Plaintiff acknowledged that the term bias has several meanings and does not necessarily mean racial bias.

Only matters that are provable as false are actionable on a defamation claim. Veilleaux v. National Broadcasting Co., 206 F.3d 92, 108 (1st Cir. 2000). Hyperbole and expressions of opinion are unprovable as facts and are constitutionally protected. Id. Clearly, given the timing of the publicity surrounding Plaintiff's claims, the opinion of the Sheriff was supported by the underlying facts. Such a statement is not provable as false and thus protected. Mrs. Porter cannot prove the essential elements of her claim with regard to the press release issued subsequent to her bringing the issue into the public domain on the eve of election.

Any statements Sheriff Cabral made during the televised debate with her political opponent were protected speech and not defamatory. Mrs. Porter was never mentioned by name. Likewise the statements in the Boston Globe Magazine did not identify Mrs. Porter by name. Further, those statements cannot be attributed to Sheriff Cabral. If the statements in question lack clear identification of the person referred to, there can be no defamation. See, Bennett v. City of Holyoke, 230 F. Supp 2d 207, 230  (D. Mass. 2002) citing McCallum v. Labie, 145 Mass. 234, 13 N.E. 899, 901-902 (1887). To be defamatory, the statement must hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair her standing in the community. Grande & Sons, Inc. v.

Chace, 333 Mass. 166, 129 N.E. 2d 898, 899 (1955). If the alleged person is not identified as in the instant case, the "community" has no party to ridicule or hold in contempt.

Moreover, none of the statements identified by the Plaintiff as defamatory have held her up to contempt, hatred, scorn or ridicule.  Nor have they impaired her standing in the community or damaged her professional reputation.

Since the Plaintiff cannot establish the essential elements of a defamation claim under Massachusetts' law, Sheriff Cabral is entitled to judgment as a matter of law.

**F.     PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND THEREFORE SHERIFF CABRAL IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT X OF THE PLAINTIFF'S AMENDED COMPLAINT.**

In order to prove her claim for intentional infliction of emotional distress, the Plaintiff must prove that  (1) Sheriff Cabral, by making the statements attributed to her concerning the Plaintiff, intended to cause the Plaintiff emotional distress or knew that such statements would in fact cause the Plaintiff emotional distress; (2) Sheriff Cabral's conduct in making the statements was extreme and outrageous, well beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) Sheriff Cabral's actions were the cause of the Plaintiff's distress; and (4) the Plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it.  Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 228 (2002), citing Agis v. Howard Johnson, Co., 371 Mass. 140, 318-319 (1976).  In order to establish the "outrageous" element of her claim, the Plaintiff must demonstrate that the conduct of Sheriff Cabral was of "a high order of reckless ruthlessness or deliberate malevolence."

Conway v. Smerling, 37 Mass. App. Ct.1, 8 (1994)(conduct alleged – the investigation and reporting to police of a suspected crime committed by the Plaintiff founded upon a reasonable apprehension of objective facts – was not extreme or outrageous conduct sufficient to support claim).

The Plaintiff is unable to sustain her burden with respect to the conduct of Sheriff Cabral.  Indeed, nothing approaching the requisite appalling and shocking conduct occurred in this case. See Conway, supra at 8. Here, the statements contained in the Press Statement issued by the SCSD were a measured response to the very public accusations of illegal misconduct leveled by the Plaintiff against a public official.  They did not vilify or shame the Plaintiff.  See Conway, supra at 8. Similarly, any statements made by Sheriff Cabral during the televised debate with her political opponent or contained in the Boston Globe Magazine hardly meet the level of "reckless ruthlessness or deliberate malevolence" necessary to sustain a claim. Agis v. Howard Johnson, Co., 371 Mass. 140, 318-319 (1976).

Furthermore, as set forth more fully above, there is absolutely no evidence to support the Plaintiff's claim that Sheriff Cabral directed the SID investigators to question the Plaintiff regarding her contact with the FBI.   She had no contact with Investigators Dacey and Aleman regarding the investigation while it was proceeding or upon its conclusion. Sheriff Cabral did not speak with Investigator Dacey or consult with him prior to making her decision to bar the Plaintiff from the HOC.   In the absence of any evidence directly linking Sheriff Cabral to Investigator Dacey's questioning of the Plaintiff, her claim based on that conduct must fail.

Since the Plaintiff cannot establish the essential elements of a claim or intentional infliction of emotional distress under Massachusetts' law, Sheriff Cabral is entitled to judgment as a matter of law.

**G.     PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A CLAIM OF TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONS AND THEREFORE SHERIFF CABRAL IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

In order to prove her claim for tortious interference with advantageous business relations, the Plaintiff must prove that (1) she had a contract or advantageous business relationship with her employer, (2) the defendant knowingly induced the employer to break that contract or relationship, (3) the defendant's interference, in addition to being intentional, was improper in motive or means, and (4) the plaintiff was harmed by the defendant's actions. Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001). Where the claim is asserted against an individual official of the employer, the plaintiff is required to show, as "to improper motive or means," that "actual malice" was the controlling factor in the alleged interference.  Implied malice is not sufficient.  Id., Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664 (1981).  In this context, the requisite malice has been defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" of the employer. Boothby v. Texon, Inc. 414 Mass. 468, 487 (1993).

Here, there is no evidence that the actions of Sheriff Cabral in barring the Plaintiff from the HOC was motivated by "spiteful, malignant purpose, unrelated to the legitimate [public] interest of the employer".  See Boothby, supra at 487. An essential element of a claim of interference with advantageous business relationships is that the defendant acted without lawful cause.  Conway v. Smerling, 37 Mass.App.Ct. 1, 7 (1994).  In this case,

Sheriff Cabral lawfully exercised her rights under the contract between Suffolk County and CMS to revoke the Plaintiff's security clearance and bar her from the HOC.  Sheriff Cabral made the decision to bar the Plaintiff because of her egregious violations of Department policies and her contractual obligations as a nurse practitioner working at the HOC.  Specifically the Plaintiff failed to document her observations of the physical condition of an inmate, who had just reported to her that he had been physically assaulted by a corrections officer, in the inmate's medical records.  This was a fundamental failure of her obligations as a nurse practitioner at the HOC and the contractual obligations imposed upon her by her employment with CMS.

Further, when directed to provide a confidential written report of her encounter with the inmate the Plaintiff failed to comply with that directive in a timely manner, and the report that was ultimately submitted was written on a medical record form and dated as if that was the date that the treatment was rendered. However, no treatment was provided.[10]  Based upon the totality of the Plaintiff's conduct Sheriff Cabral was well within her rights pursuant to the contract with CMS to bar the Plaintiff.  Further, as the Sheriff of Suffolk County and therefore the individual ultimately responsible for the care and custody of inmates incarcerated at the HOC, the Sheriff's decision to bar the Plaintiff was entirely consistent with the legitimate interests of the SCSD.  See Boothby v. Texon, Inc. 414 Mass. 468, 487 (1993).  The record is entirely devoid of any evidence that Sheriff Cabral was motivated by anything other than her rights and obligations as the Sheriff of Suffolk County.

---

[10] In fact the Plaintiff did not inform the other medical professionals who conducted examinations and assessments of Inmate Rosario after his arrival in the Medical Housing Unit on May 19, 2003 about her specific observations of his physical condition.

Nor can the Plaintiff establish that she had a she had a contract or advantageous business relationship with CMS and that Sheriff Cabral knowingly induced CMS to break that contract or relationship[11]. The Plaintiff did not have a contract of employment with CMS. Further, the CMS Employee Success Guide provided that the SCSD had the right to unilaterally bar CMS employees from the HOC. The Success Guide further provided that if an employee was barred, they may be terminated by CMS if another position was not available. That is precisely what happened in this case. CMS terminated the Plaintiff not because she was barred from the HOC but because they had no position for her at any of their sites. CMS's action in terminating the Plaintiff from their employee was consistent with their rights as set forth in the Employee Success Guide. Moreover, there is absolutely no evidence that Sheriff Cabral had any intentional role in the decision of CMS to terminate the Plaintiff.

Because the Plaintiff cannot satisfy the elements of a claim for tortuous interference with advantageous business relations, Sheriff Cabral is entitled to judgment as a matter of law on Count X of her Amended Complaint.

## IV.    CONCLUSION

For all the foregoing reasons, the Defendants Sheriff Andrea Cabral, Suffolk County and the Suffolk County Sheriff's Department respectfully request that this Honorable Court grant their Motion For Summary Judgment.

### Local Rule 7.1 Certification

---

[11] Sheriff Cabral did not speak with anyone at CMS prior to making the decision to bar the Plaintiff.

I hereby certify that I conferred with counsel for the Plaintiff in an attempt to narrow the issues raised by Defendants' Motion for Summary Judgment.

/s/ Ellen M. Caulo
Ellen M. Caulo

Respectfully submitted
For all DEFENDANTS
By their attorney

/s/ Ellen M. Caulo
Ellen M. Caulo
BBO #545250
Deputy General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114

Date:   October 17, 2005