UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| V. | ) Civil Action No. 04-11935-DPW |
| | ) |
| ANDREA CABRAL, SUFFOLK | ) |
| COUNTY SHERIFF'S DEPARTMENT, | ) |
| SUFFOLK COUNTY, and | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, INC. | ) |
| | ) |
| Defendants | ) |

**SHEILA PORTER'S MOTION TO COMPEL DISCOVERY FROM ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY**

Plaintiff Sheila Porter ("Mrs. Porter") asks this Court to compel Andrea Cabral ("Ms. Cabral"), the Suffolk County Sheriff's Department ("SCSD"), and Suffolk County (collectively, "Suffolk Defendants") to provide Mrs. Porter with documents and information that are relevant and important to her claims.

**PRELIMINARY STATEMENT**

Mrs. Porter, a nurse practitioner with nine years of experience at the Suffolk County House of Corrections ("HOC"), was barred from the HOC on June 10, 2003. The stated reason for the barring was that Mrs. Porter informed an outside agency (the FBI) about her concerns that a FBI informant (inmate Rene Rosario) had been beaten. *See, e.g.*, Deposition of Mary Ellen Mastrorilli, June 27, 2005 ("Mastrorilli dep."), pp. 30-37 (attached as Exhibit ("Ex.") 1 to the

Declaration of David S. Schumacher);[1] *see also* Deposition of Donna Jurdak, June 20, 2005 ("Jurdak dep."), at 133 (Ex. 2). Faced with a lawsuit concerning the circumstances surrounding Mrs. Porter's barring, the defendants now claim that Mrs. Porter—who acted as a FBI informant for four years, reporting on potential criminal violations at the HOC—was barred not because she spoke with the FBI, but rather because of a variety of issues related to her reporting of the Rosario incident. *See, e.g.,* Deposition of Andrea Cabral, May 9, 2005 and June 24, 2005 ("Cabral dep.") at 86-87 (Ex. 3).

It is apparent that the current reasons for Mrs. Porter's barring provided by SCSD employees are a mere pretext, advanced now in order to avoid the plainly unconstitutional reasons given to Mrs. Porter when she was barred. In order to test the veracity of these reasons, Mrs. Porter served the Suffolk Defendants with discovery requests bearing directly on the two critical issues in the case: the reasons for Mrs. Porter's barring and the credibility of the defendants. *See* Mrs. Porter's Second Request for Production of Documents (Ex. 4); Mrs. Porter's Second Set of Interrogatories (Ex. 5); Letter From David Schumacher to Ellen Caulo, August 25, 2005 (Ex. 6). The Suffolk Defendants have flatly refused to comply with a number of these requests. *See* Response to Second Request for Production of Documents (Ex. 7); Response to Second Set of Interrogatories (Ex. 8); Letter from Ellen Caulo to David Schumacher, September 7, 2005 ("September 7, 2005 letter") (Ex. 9). Mrs. Porter has no choice but to seek the Court's intervention to compel the Suffolk Defendants to comply with their discovery obligations.

---

[1] All exhibits referenced herein are attached to the Schumacher Declaration.

## FACTUAL BACKGROUND

On May 19, 2003, Rene Rosario, an inmate at the HOC, told Mrs. Porter that he had been abused by a corrections officer. *See* Deposition of Sheila Porter, May 18 and 26, ("Porter dep.") p. 177 (Ex. 10). Mrs. Porter was familiar with Mr. Rosario from an earlier incident in approximately November 2002, when she placed a recording device on Mr. Rosario (and later removed it) in connection with a FBI investigation. *Id.* pp. 125-126. He showed Mrs. Porter injuries and requested that she contact FBI Agent Christa Snyder. *Id.* Mrs. Porter immediately informed her supervisor, Donna Jurdak, of this incident. *Id.*, p. 215. Ms. Jurdak, in turn, contacted Deputy Superintendent Maryellen Mastrorilli. *See* Jurdak dep., pp. 92-93, 96-98 (Ex. 2). Ms. Mastrorilli requested that Mrs. Porter send her a report detailing her observations. *See* Mastrorilli dep., p. 12 (Ex. 1). Mrs. Porter began writing a report that day—May 19, 2003—and submitted the report to Ms. Jurdak shortly thereafter. *See* Porter dep., pp. 226-229 (Ex. 10). Ms. Jurdak left this report with Ms. Mastrorilli's secretary. *See* Jurdak dep., p. 109 (Ex. 2). While the report was written on an "Interdisciplinary Progress Notes" form, Ms. Mastrorilli accepted the document as the report she requested. *See* Mastrorilli dep., p. 53 (Ex. 1).

After reporting the incident to Ms. Jurdak, Mrs. Porter contacted Agent Snyder and related what Mr. Rosario told her. *See* Porter dep., p. 234 (Ex. 10). After speaking with Mrs. Porter, Agent Snyder spoke with Sheriff's Investigative Division ("SID") officials about the Rosario allegations. *See* SID Incident Report, dated May 23, 2003 (Ex. 11). While Agent Snyder did not disclose the source of her information, SID officials immediately suspected it was Mrs. Porter. *See* SID Memorandum to File, dated May 29, 2003 ("May 29th Memo") (Ex. 12).

3

On May 28, 2003, Mrs. Porter was interviewed for a second time by SID investigators. *Id.* During this second interview, which Mrs. Porter described as threatening and uncomfortable, Mrs. Porter admitted under intense questioning that she had spoken with Agent Snyder. *See* Porter dep., pp. 295-296 (Ex. 10). On June 10, 2003, Mrs. Porter was called into Ms. Jurdak's office for a meeting with Deputy Superintendent Mastrorilli. *See* Mastrorilli dep., p. 34 (Ex. 1). Ms. Mastrorilli informed Mrs. Porter that she was barred from the facility effective immediately because she disclosed confidential SCSD information to an outside agency—the FBI. *Id.*

## DISCOVERY REQUESTS AT ISSUE

While a large number of the Suffolk Defendants' discovery responses have been deficient, Mrs. Porter has selected only the most relevant discovery requests for the purposes of this Motion. Of course, under Rules 26(b)(1) and 37(a)(2)(B), the Court has wide discretion in controlling discovery. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993).

### I.   Requests Related to Reporting

As discussed above, the Suffolk Defendants claim that Mrs. Porter was barred because of the form, content and timeliness of her reporting of the May 19, 2003 Rene Rosario incident. *See* Cabral dep., pp. 86-87 (Ex. 3). In order to determine whether Mrs. Porter and others at the HOC previously filed reports with SID in a similar manner as the May 19, 2003 report without being disciplined in any way, she served documents requests and interrogatories on the Suffolk Defendants seeking information related to the reporting practices of Mrs. Porter and other HOC employees and contract workers. The Suffolk Defendants have refused to comply with these requests.

A.   **Documents Authored by Mrs. Porter in SID's Possession**[2]

Mrs. Porter requested any documents authored by Mrs. Porter in SID's possession. *See* Request No. 57 (Ex. 4). In response, the Suffolk Defendants objected and improperly attempted to shift the burden on Mrs. Porter to "recall specific instances in which she provided reports." *See* Response No. 57 (Ex. 7). The Suffolk Defendants also claim that this request is unduly burdensome. *See* September 7, 2005 letter (Ex. 9). These objections are specious. It is the Suffolk Defendants who put the propriety of Mrs. Porter's reporting at issue in this case. Mrs. Porter is entitled to discovery of other reports she has filed with SID to show that her reporting of the May 19, 2003 incident was entirely consistent with her reporting during her nine-year tenure at the HOC. Moreover, the Suffolk Defendants overestimate the breadth of this task. SID Chief Theiss estimated that only five or six case summaries are prepared each month on pending SID investigations. *See* Deposition of Viktor Theiss, p. 29 (Ex. 13). In short, the Suffolk Defendants have put Mrs. Porter's reporting front and center in this case. They should be required to produce all of her reports in their possession.

B.   **Incident Reports Filed by Others in a Similar Fashion as Mrs. Porter**

Ms. Cabral testified that one reason for Mrs. Porter barring was that she believed that the May 19, 2003 report was "backdated." *See* Cabral dep., pp. 86-87 (Ex. 3). As described above, Mrs. Porter began writing this report on May 19th and gave it to Ms. Jurdak within a couple of days. Evidence uncovered during discovery has revealed that HOC employees and contractors routinely file reports subsequent to the date listed on the report without being disciplined.

---

[2]   Counsel for the Suffolk Defendants has recently informed counsel for Mrs. Porter that they are attempting to gather documents responsive to this request. Three-and-a-half months have elapsed since Mrs. Porter served this request and, to date, no documents have been produced.

Indeed, <u>in the Rosario investigation itself</u>, SID investigator Brian Dacey testified that he added information to a report <u>after</u> the filing date that appeared on the report. *See* Deposition of Brian Dacey, June 16, 2005, p. 49 (Ex. 14).

In order to confirm her belief that she was improperly singled out for this routine practice, Mrs. Porter served a document request seeking any incident reports that were dated before the report was completed or otherwise contained inaccurate or multiple dates. *See* Request No. 71 (Ex. 4). Notwithstanding the obvious relevance of these documents, the Suffolk Defendants objected and refused to produce responsive documents. *See* Response to Request No. 71 (Ex. 7); Sept. 7, 2005 letter (Ex. 9). The Court should require the Suffolk Defendants to produce these documents.

    C.    **Explanation of SCSD Computer's Dating Procedure**

At least two memos produced by the SCSD contained dates that were later than the alleged date on which the document was written—precisely the conduct that the SCSD says contributed to Mrs. Porter's barring. First, the SCSD produced a memorandum written by Ms. Cabral that was dated November 6, 2003, even though she testified that it was written on June 18, 2003. *See* Memo to File Written by Andrea Cabral (Ex. 15). Second, the SCSD produced a memorandum written by Mr. Dacey that was dated June 5, 2003, even though Mr. Dacey testified that it was written on May 22nd. *See* Memo to Rosario File From Brian Dacey (Ex. 16). Thus, it appears that SCSD employees routinely "backdate" documents in the same fashion as Mrs. Porter is alleged to have, and are not disciplined for this practice. Both Ms. Cabral and Mr. Dacey testified that the date discrepancy is explained by a device on their computers that automatically affixes the date of printing—rather than the initial date that the document is

drafted—on the document. *See* Cabral dep., p. 275 (Ex. 3); *see* Dacey dep., p. 80 (Ex. 14).[3]

In order to determine if this testimony is accurate, Mrs. Porter served an interrogatory seeking an explanation of precisely how computers at the SCSD operate in the manner suggested by Ms. Cabral and Mrs. Dacey. *See* Interrogatory No. 1 (continuously 19)[4] (Ex. 5). Mrs. Porter also requested an inspection of Ms. Cabral's computer to determine if her testimony was accurate. *See* Request No. 79 (Ex. 4). The Suffolk Defendants refused to allow the inspection and responded to the interrogatory by stating that "it is [Sheriff Cabral]'s understanding that it is an option within Microsoft Word that inserted the current date (November 6, 2003) in the header."[5] Response to Interrogatory No. 19 (Ex. 8). This response is insufficient. The request does not seek Sheriff Cabral's or Mr. Dacey's "understanding," but rather an explanation as to how—and whether—the computers function in a way consistent with Ms. Cabral's and Mr. Dacey's testimony. The Court should order the Suffolk Defendants to provide a complete response to Interrogatory No. 1 (19) and allow Mrs. Porter to inspect Ms. Cabral's computer.

### D. Filing Reports on Interdisciplinary Progress Notes Forms[6]

Another reason given for Mrs. Porter's barring was that she filed her May 19, 2003 report on "Interdisciplinary Progress Notes" paper rather than on an official SID Incident Report form. *See* Cabral dep. pp. 103-04 (Ex. 3). Mrs. Porter requested that the Suffolk Defendants admit

---

[3] It should be noted that the later dates appear in <u>different</u> places on these two documents—in the header portion of Ms. Cabral's memo and in the date field in Mr. Dacey's memo.

[4] The Second Set of Interrogatories began the numbering sequence anew. To guard against confusion, references to these interrogatories also include the number where the interrogatory falls in the overall sequence. Thus the first interrogatory from the second set is also "continuously" No. 19.

[5] A similar response was provided for Mr. Dacey.

[6] Counsel for the Suffolk Defendants has informed counsel for Mrs. Porter that she is also attempting to respond to this request. Again, Mrs. Porter has no choice but to include this request in the instant Motion until the request has been complied with in full.

that, in fact, prior to May 2003, SID received incident reports from Mrs. Porter and others on Interdisciplinary Progress Notes paper. *See* Mrs. Porter's Request for Admissions (Ex. 17), Nos. 3, 5, 6. The Suffolk Defendants refused to admit or deny these facts, insisting that Mrs. Porter provide "the name of a specific SID investigation pursuant to which the reports were submitted." *See* Response to Request for Admissions (Ex. 18), Nos. 3, 5, 6. As described above, this objection improperly attempts to shift the burden to Mrs. Porter. It is the SCSD, not Mrs. Porter, that is in possession of this information, which is highly relevant to the defenses asserted by SCSD witnesses in this case.

## II.    Code of Silence Documents

Mrs. Porter's § 1983 claim against Suffolk County and the SCSD requires that she prove the existence of an unconstitutional practice. *See Baron v. Suffolk County Sheriff's Department*, 402 F.3d 225 (1st Cir. 2005) (holding that a code of silence existed at the HOC). One of the unconstitutional practices at issue in this case is the Code of Silence that prevents staff members from reporting the misconduct of fellow staff members. *Id.* Indeed, the Report of the Special Commission on the Suffolk County Sheriff's Department ("Stern Commission") urged an "aggressive attack on the code of silence that prevents staff members from reporting the misconduct of fellow staff members." *See* Stern Commission Report, p. 9 (Ex. 19).

Mrs. Porter requested any documents related to investigations conducted by the FBI concerning the HOC. *See* First Request for Production of Documents, No. 8 (Ex. 20). The HOC has been the subject of a number of highly-publicized investigations in recent years, including an investigation that led to the prosecution of several HOC guards for abusing an inmate. *See* Latour, F., "Two Guards Acquitted in Beatings," *Boston Globe*, April 1, 2003, p. B1 (Ex. 21).

Even after Mrs. Porter agreed to limit her request to any documents that the SCSD provided to the FBI that shed light on the code of silence, as described by the Stern Commission, the Suffolk Defendants still refused to provide any such documents. These documents should be produced.

### III. Policy Review Committee Notes

Subsequent to Mrs. Porter's barring, the SCSD substantially revised Policy S-220 such that employees or contractors today are permitted to report wrongdoing to outside law enforcement authorities rather than the SCSD if they have a reasonable belief that internal reporting may lead to retaliation. *See* Policy S-220, dated April 2005 (Ex. 22). Policy S-220 was updated, at least in part, due to the episode concerning Mrs. Porter. *See* Keeley dep., p. 153 (Ex. 23). According to Chief of Staff Keeley, all changes to Policy S-220, and any other SCSD policies, are made by the Policy Review Committee. *Id.*, p. 151. Moreover, Ms. Keeley testified that "we keep notes of our Policy Review meetings." *Id.*, p. 156. The Suffolk Defendants refused to produce notes made by the Policy Review Committee. *See* Response to Request No. 63 (Ex. 7). Even after Mrs. Porter limited her request to notes regarding revisions to Policy S-220, the Suffolk Defendants flatly objected. *See* September 7, 2005 letter, p. 4 (Ex. 9). These documents should be produced.[7]

### IV. Documents Related to Ms. Cabral's Credibility

As discussed above, a crucial issue in this case is whether Ms. Cabral's testimony regarding the reasons for Mrs. Porter's barring is truthful. Indeed, Ms. Cabral has crafted a defense in this case that pits her version of why Mrs. Porter was barred against Mrs. Porter's—

---

[7] It should be noted that, despite Ms. Keeley's representation that substantive changes to Policy S-220 would not have been made "without discussion," *see* Keeley dep. at 156 (Ex. 18), counsel claims that there are no minutes related to the applicable changes to Policy S-220. *See* September 7th letter at 3-4 (Ex. 9).

9

even though <u>every</u> witness who was present for the barring supports Mrs. Porter's version of events. It turns out that Ms. Cabral has engaged in acts of dishonesty in the past. Mrs. Porter served discovery requests related to two such incidents. First, she requested any documents related to defaults by Ms. Cabral on her student loans. *See* Request No. 49 (Ex. 4). It is undisputed that Ms. Cabral defaulted on her student loans from Boston College and Suffolk Law School. *See* Y. Abraham, "Suffolk Sheriff Was in Default on School Loans," *Boston Globe*, May 22, 2003, p. B4 (Ex. 24). Second, Mrs. Porter sought any written campaign material used by Sheriff Cabral in the 2004 election. *See* Request No. 50 (Ex. 4). On at least two occasions Ms. Cabral's campaign improperly used public employees to benefit her campaign, resulting in fines imposed by the Office of Campaign Finance. *See* A. Donlan, "Cabral Keeps Paying for Finance Blunders," *Boston Herald*, August 12, 2004, p. 25 (Ex. 25).

The Suffolk Defendants refused to produce documents responsive to these requests, primarily on relevance grounds. But Mrs. Porter is entitled to discovery "regarding any matter, not privileged, that is relevant to" her claims. Fed. R. Civ. P. 26(b)(1). Even if the evidence may not be admissible at trial, discovery must be had as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Relevancy is to be <u>broadly construed</u> at the discovery stage of litigation and a request for discovery should be considered relevant if there is <u>any possibility</u> that the information sought may be relevant to the subject matter of the action." *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 10 (D. Mass. 1990) (emphasis added).

These documents are relevant to cast doubt on Ms. Cabral's honesty. In addition, they are relevant to Mrs. Porter's claims for punitive damages. The SCSD has a history of refusing to meet its legal obligations—in some cases, even after court orders. One example is the SCSD's

refusal to pay a settlement in a strip-search class action until it was subject to a daily fine. *See, e.g.*, Latour, F., "U.S. Judge Fines Suffolk Sheriff's Office; Women Are Owed $5M in Settlement," *Boston Globe*, April 5, 2003, p. B3 (Ex. 26). Similarly, here, the SCSD is requiring Mrs. Porter to go to court to vindicate her good name. The evidence at trial will demonstrate that punitive damages are in order to deter this type of conduct in the future. To the extent that Ms. Cabral has failed to meet her legal obligations in the past—and only met them after court orders—that information is directly relevant to Mrs. Porter's punitive damage claims.

## CONCLUSION

For the foregoing reasons, Mrs. Porter requests that her Motion to Compel be granted and the Suffolk Defendants produce documents responsive to Requests 8, 49, 50, 57, 63, 71, 79 and provide complete responses to Interrogatory 1 (continuously 19) and Requests for Admission 3, 5 and 6. A draft Order is attached.

Respectfully Submitted,

SHEILA J. PORTER

By her attorneys,

*/s/ David Schumacher*
Joseph F. Savage Jr. (BBO #443030)
David S. Schumacher (BBO #647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617.570.1000

Dated: November 11, 2005

LIBA/1582875.2