# EXHIBIT 21

1                                          VOL:  I
                                       PAGES: 1-202
2                                      EXHIBITS: 1-6

3

4

5              UNITED STATES DISTRICT COURT

6          FOR THE DISTRICT OF MASSACHUSETTS

7    * * * * * * * * * * * * * * * *
     SHEILA J. PORTER,              *
8              Plaintiff            *
          -vs-                      *   Civil Action
9    ANDREA CABRAL; SUFFOLK COUNTY  *   No. 04-11935-DPW
     SHERIFF'S DEPARTMENT; SUFFOLK  *
10   COUNTY and CORRECTIONAL MEDICAL *
     SERVICES, INC.,                *
11             Defendants           *
     * * * * * * * * * * * * * * * *

12     CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

13

14      DEPOSITION OF ELIZABETH KEELEY, ESQUIRE, a
     witness called on behalf of the Plaintiff, in the
15   above-captioned matter, said deposition being
     taken pursuant to the Federal Rules of
16   Civil Procedure, before Patricia M.
     McLaughlin, a Certified Shorthand Reporter and
17   Notary Public in and for the Commonwealth of
     Massachusetts, at the offices of Goodwin Procter
18   LLP, Exchange Place, Boston, Massachusetts, on
     Wednesday, May 11, 2005, commencing at 10:08 a.m.

19

20

21       McLAUGHLIN & ASSOCIATES COURT REPORTERS
              92 DEVIR STREET, SUITE 304
22          MALDEN, MASSACHUSETTS   02148
                   781.321.8922
23             WWW.E-STENOGRAPHER.COM

24

43

1          Superintendent Mary Ellen Mastrorilli.

2     Q    Your conversation with the Sheriff, was that

3          a telephone call or a meeting?

4     A    My recollection, it was in person, in her

5          office.

6     Q    Was anybody else in the room?

7     A    No.

8     Q    Tell me everything you remember about that

9          conversation.

10    A    My recollection is the Sheriff had come in to

11         the office, and I had an opportunity to speak

12         to her about some matters.  At some point --

13         I don't know whether I raised it or she

14         raised it, but we were discussing

15         Nurse Porter.  I gave her my opinion or I

16         related to her the facts and circumstances

17         that I understood about her involvement in

18         the Rene Rosario matter, and the Sheriff

19         asked me a question about what's the

20         procedure or process for barment?

21              My memory is that I said to her the

22         contract worker is called in, is informed

23         that they are going to be barred from the

24         facility, and that a written is notice is

48

1   Q   Did you learn at any time that she had had a

2       meeting with Donna Jurdak on May 19th, 2003?

3           MS. CAULO:  Objection.  Facts not

4       established.  You may answer.

5   A   I'm sorry.  Ask the question again.  Did I

6       ever learn that Mary Ellen Mastrorilli had a

7       meeting with Donna Jurdak?

8   Q   Did you learn at any time that

9       Miss Mastrorilli had a conversation with

10      Miss Jurdak on May 19th, 2003, concerning

11      Miss Porter's observations?

12          MS. CAULO:  Same objection.

13  A   Recently, I was told that that may have

14      happened, but during the pendency of the Rene

15      Rosario investigation, I was not aware.

16  Q   How did you learn that recently?

17  A   I was asked -- I don't know or was I shown

18      something?  Somebody asked me whether or not

19      I was aware that Donna Jurdak had told

20      Mary Ellen Mastrorilli that Sheila Porter had

21      told her something about Rene Rosario.

22  Q   What did Miss Mastrorilli tell you concerning

23      what she had expected with regard to

24      Mrs. Porter's report?

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

49

```
 1      A    What she had expected?  I don't recall
 2           anything.
 3      Q    Did she tell you that she had requested a
 4           report from Miss Porter?
 5      A    My memory is that the report was requested by
 6           SID.  There may have been a request made by
 7           Mary Ellen, but I understood this report
 8           being filed in the context of the SID
 9           investigation.
10      Q    When you say the report was requested by SID,
11           which person would have requested the report?
12      A    Whoever was conducting the investigation
13           for -- and I don't know which person would
14           have asked for the report.  I just assumed
15           that we had asked for the report, we, SID;
16           someone in SID had asked for the report.
17      Q    Do you have personal knowledge that SID
18           requested a report from Mrs. Porter?
19      A    Do I?
20      Q    Yes.
21      A    No.
22      Q    Do you have personal knowledge -- and I
23           apologize if this has been asked already --
24           whether or not Miss Mastrorilli requested a
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

51

```
1              circumstances of Miss Porter's involvement in

2              the Rosario matter as you understood them; is

3              that correct?

4       A      Correct.

5       Q      What did you relay to her?  What were the

6              facts and circumstances as you understood

7              them at that point?

8       A      I understood that Nurse Porter had made

9              observations of Rene Rosario while he was in

10             the infirmary and had reported something

11             about that encounter to the FIB but that she

12             had failed to document the medical file; that

13             she had not timely filed a report as required

14             and requested; that the report contained

15             information about injuries that were

16             inconsistent with what other medical

17             personnel had described and what other people

18             involved in the investigation had described

19             were visible on Rene Rosario.  That's what I

20             recall talking to the Sheriff about

21             specifically about the investigation.

22                  I'm trying to think if there is anything

23             else.  I don't remember whether or not -- I

24             don't remember right now whether or not I
```

52

1     also spoke to the Sheriff at that time about

2     information that I had learned towards the

3     end of the investigation.  It was actually

4     the last bit of information that I heard, but

5     in my mind was significant, and that was that

6     Rene Rosario had in his conversations with

7     people, officers, maybe investigators -- but

8     I think it was officers -- not only talked

9     about his being an informant for the FBI but

10    spoke of Nurse Porter.  I recall hearing

11    something to the effect that he spoke

12    publicly to people about her cooperation with

13    the FBI; that she had either wired him or

14    that she was wired on occasion or she was

15    cooperating with the FBI.

16         It was that piece of information that

17    was significant to me in terms of bringing

18    the subject of barment to the Sheriff's

19    attention.

20    Q    So your purpose in relating these facts and

21         circumstances to Sheriff Cabral was based on

22         this last piece of information that you

23         described?

24              MS. CAULO:   Objection.

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

```
 1    A    No, that's why I'm saying I'm not sure that I

 2         spoke to the Sheriff about it.  I just know

 3         that, when it came to my attention, that that

 4         information came to my attention about what

 5         Rene Rosario was saying, even though I knew

 6         at that point he was not a credible reporter

 7         and I didn't know that what he was saying was

 8         true, but that if it was heard by people,

 9         that it would put Nurse Porter's personal

10         safety at issue.

11              Because I don't recall when the

12         conversation with the Sheriff -- whether she

13         initiated the discussion about Nurse Porter

14         or I did, in my memory what sort of advanced

15         the decision-making process as to what to do,

16         that piece of information was important.

17    Q    So you don't recall whether you initially

18         brought up Nurse Porter during this

19         conversation or whether are the Sheriff did?

20    A    I don't.  I honestly don't.

21    Q    When the topic came up, just to be clear,

22         what was the purpose for discussing Nurse

23         Practitioner Porter at that time?

24    A    Because of the serious nature of the
```

54

```
 1              violations to decide what action would be

 2              taken.

 3       Q      I believe you testified before that you had

 4              an opinion about what action should be taken;

 5              is that right?

 6       A      Yes.

 7       Q      What was your opinion?

 8       A      My opinion was that we should bar her from

 9              the facility.

10       Q      And you related that to Sheriff Cabral?

11       A      Yes.

12       Q      Did you tell her what that opinion was based

13              on?

14       A      I told her it was based on what I had just

15              related and the concerns that a nurse would

16              not document a medical file; that that was

17              for me pretty egregious; that not documenting

18              something contemporaneous with what you hear

19              or see is pretty significant, particularly in

20              light of the context of an investigation into

21              allegations of officer misconduct or

22              excessive force or intentional abuse.

23       Q      Was this the first time that Sheriff Cabral

24              was made aware of Mrs. Porter's involvement
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

62

1      flipped through some more pages, and I

2      remember telling her her failure to file a

3      timely report, her failure to document a

4      medical file.  And I remember that -- again,

5      I'm not sure of the order, but it was failure

6      to document a medical file, failure to file a

7      timely report.

8           I may have mentioned that her failure to

9      file a report -- my memory is that I said

10     this:  That failure to file a report

11     interfered with an ongoing investigation;

12     that her report was inconsistent with other

13     reports of what people claim to have seen in

14     terms of injuries to Rene Rosario, so that it

15     was not a credible report.

16          I remember hesitating, because I wasn't

17     sure whether I wanted to say this, but I

18     remember pausing.  And I said, "And you can

19     share with her that because Rene Rosario has

20     been talking about his role as an informant

21     and he has mentioned her name in the context

22     of cooperating with the FBI, that the

23     department could not assure her personal

24     safety."

63

1    Q    These were all factors that you related to

2        Miss Mastrorilli during this conversation?

3    A    Yes, that's my memory of what I said to her.

4    Q    Did you instruct her to relate this

5        information to Mrs. Porter as the reasons for

6        her barring?

7    A    I don't think I said "now tell her exactly

8        what I just told you," but she asked me what

9        the reasons were that she could give and

10       that's what I told her.

11    Q    And these are all included in the reasons

12       that could be related to Miss Porter?

13    A    Correct.

14    Q    Do you know if Miss Mastrorilli, in fact, did

15       relay this information to Mrs. Porter?

16    A    I don't know what she said to her.

17    Q    Did you have any follow-up conversations with

18       Miss Mastrorilli?

19    A    I recall having one.

20    Q    What happened during that follow-up

21       conversation?

22    A    It was maybe a week or two later.  It was

23       after the meeting at the U.S. Attorney's

24       Office.  I know that.  I asked her,

71

1    you had given her as to why she should be

2    barred?

3      MS. CAULO: Objection.

4 A  Did she have different reasons?

5 Q  Other than the reasons that you provided for

6    Sheriff Cabral, did Sheriff Cabral

7    communicate any other reasons why she should

8    be barred?

9      MS. CAULO: Objection.

10 A  As I previously answered, I don't recall what

11    she said specifically about the reasons to

12    bar.  I recall the conversation in which I

13    related to her about what I understood about

14    Nurse Porter's involvement that she had some

15    acknowledgement or she recognized knowing

16    some of this information, but I don't recall

17    which of the reasons -- I don't recall which

18    of the factors that I presented to her she

19    identified as the reasons.

20 Q  All I'm trying to determine is whether there

21    were any additional reasons other than those

22    that you identified to her as to why

23    Sheriff Cabral barred her.

24      MS. CAULO: Objection.

73

1    Q    One reason was the sharing of confidential

2          communications outside the department?

3    A   Yes.

4    Q    Another was her failure to file a report in a

5          timely manner?

6    A   Correct.

7    Q    Another was her failure to document

8          Mr. Rosario's medical file?

9    A   Correct.

10   Q    Another was that her failure to file a timely

11        report interfered with an ongoing SID

12        investigation?

13   A   Correct.

14   Q    Another was that her report contained

15        information that was inconsistent with other

16        information that was gained during the

17        investigation?

18   A   Correct.

19   Q    And another was the fact that Mr. Rosario had

20        been speaking about Mrs. Porter's involvement

21        in work he had done for the FBI and so you

22        had concerns for her personal safety?

23   A   Yes.

24          MS. CAULO:  Objection.  I think

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

98

1          But it was a report of.

2     Q    The form of the report that an individual is

3          supposed to use, is that addressed in

4          Policy S220?

5     A    I don't know that it's specifically

6          addressed, but it is addressed in terms of

7          training for staff and what they should be

8          submitting.

9     Q    Where it is addressed in training?

10    A    It's addressed in the academy.  It's

11         addressed in in-service training.  It's

12         addressed in the orientation.

13    Q    With respect to Nurse Practitioner Porter,

14         which part of her training would that be

15         addressed in?

16    A    I can't be certain.  I don't know how long

17         she had worked at the department, but at some

18         point she received an orientation where she

19         was provided policies.  I don't know that she

20         specifically got the training, but it was

21         part of it, when a report is expected, what

22         type of form, letterhead, whatever you should

23         use.

24    Q    In your mind, the type of form that she used,

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

99

1           that didn't play a role in her barring, did

2           it?

3    A    No, no.

4    Q    Subsection A says, "Unless specifically

5           authorized otherwise, these reports must be

6           submitted promptly, but no later than the end

7           of the employee's shift."  It's your

8           testimony that she violated this section of

9           Section L, Subsection A?

10   A    Yes.

11   Q    B says, "Report is to be submitted to the

12          employee's immediate supervisor unless

13          instructed otherwise by the investigating

14          official or department policy."  How did she

15          violate Subsection B?

16              MS. CAULO:  Objection.

17              MR. SCHUMACHER:  What's the basis of the

18          objection?

19              MS. CAULO:  I don't think that

20          Miss Keeley has testified that she

21          specifically violated Subsection B.

22              MR. SCHUMACHER:  I think she did.

23              MS. CAULO:  Why don't we ask her.

24              MR. SCHUMACHER:  I already have.

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

1     Q   Miss Keeley, did Miss Porter violate

2         Subsection B?

3     A   Yes, because she didn't report to her

4         immediate supervisor within the time frame

5         required.

6     Q   B doesn't say anything about the time frame,

7         does it?

8     A   I don't read these in the exclusion of the

9         other paragraphs.  I read them in

10        conjunction.

11    Q   You have already testified that she did

12        violate Subsection A, which clearly addresses

13        time frame, correct?

14    A   Correct.

15    Q   But would you agree that Subsection B doesn't

16        address a time frame in which a report should

17        be submitted?

18    A   No, it just addresses the person she's

19        supposed to report it to within that time.

20    Q   Who was the person that Mrs. Porter was

21        supposed to submit her report to?

22    A   A strict reading of that would be her

23        supervisor, Donna Jurdak.

24    Q   Is it your understanding that Mrs. Porter

102

1           mind; is that fair to say?

2                MS. CAULO:   Objection.

3      A    The totality of the circumstances, her

4           failure to file a report in a timely manner,

5           which is required, her failure to turn in a

6           written report to her supervisor within that

7           time frame, I read that to mean she violated

8           those sections of the policy.

9      Q    But you haven't identified anything within

10          Subsection B that you knew that Mrs. Porter

11          violated; is that fair to say?

12     A    I'm reading A and B together.  It tells you

13          the time frame, and it tells you the person.

14          And neither of those -- those weren't done.

15     Q    You've described you know how the time frame

16          wasn't done.  How do you know that it wasn't

17          given to the correct person?

18     A    Well, again, my memory is that she was

19          asked -- it was my understanding that she was

20          asked to provide a report by SID.  So she

21          didn't provide a report to SID.  It was my

22          understanding it came from someone else to

23          SID.

24     Q    Is that based on information you received

103

1          from Viktor Theiss?

2   A   It's based on my memory, yes.

3   Q   So Viktor Theiss told you that SID had

4          requested a report from Mrs. Porter?

5   A   I don't know that Viktor Theiss specifically

6          told me that.  Given the information he had

7          told me, I understood that SID had requested

8          a report from her.

9   Q   So you assumed that SID had requested a

10         report?

11           MS. CAULO:  Objection.  The witness has

12         answered.

13   A   Based on the information I had, yes.

14   Q   But you don't recall Viktor Theiss

15         specifically saying that to you?

16   A   No, I don't have a recollection that he

17         specifically said SID asked for a report.  I

18         have a memory that I was told SID is waiting

19         for a report from Nurse Porter.  I understood

20         that it had not been received for a

21         considerable period of time.

22   Q   Did you know that Miss Mastrorilli had

23         requested a report from Miss Porter?

24   A   My memory is that she was waiting for a

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

111

| | | |
|---|---|---|
| 1 | A | Was I aware of that then? |
| 2 | Q | Are you aware of it now? |
| 3 | A | I have been told that that's what's been |
| 4 | | said, but I was not aware of it then. |
| 5 | Q | Who told you that that's been said? |
| 6 | A | It's come up in conversation. I don't |
| 7 | | remember specifically when or who told me. |
| 8 | Q | But at the time that the determination was |
| 9 | | made to bar Mrs. Porter, you didn't have any |
| 10 | | understanding of that? |
| 11 | A | My memory is that I did not know -- I don't |
| 12 | | even know that she did, but I don't recall |
| 13 | | knowing that she had reported this to |
| 14 | | Donna Jurdak. |
| 15 | Q | Do you have any reason to doubt that she |
| 16 | | immediately reported it to Donna Jurdak? |
| 17 | | MS. CAULO: Objection. |
| 18 | A | I have no knowledge. |
| 19 | Q | Are you aware that Donna Jurdak immediately |
| 20 | | reported the information that she received |
| 21 | | from Mrs. Porter to Mary Ellen Mastrorilli on |
| 22 | | the day that Mrs. Porter spoke with |
| 23 | | Mr. Rosario? |
| 24 | | MS. CAULO: Objection. |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

112

| | | |
|---|---|---|
| 1 | A | I don't know that. |
| 2 | Q | Did you know it at the time that you were |
| 3 | | considering whether or not to bar |
| 4 | | Mrs. Porter? |
| 5 | A | My memory is that I didn't know that. |
| 6 | Q | Have you learned that at any time since? |
| 7 | A | Yes. |
| 8 | Q | Within the same sets of conversations that |
| 9 | | you described earlier? |
| 10 | A | Yes. |
| 11 | Q | When was Mrs. -- was Mrs. Porter interviewed |
| 12 | | by SID concerning the Rosario matter? |
| 13 | A | My understanding is, yes, she was interviewed |
| 14 | | after her report was submitted. |
| 15 | Q | Was that the first time that she was |
| 16 | | interviewed? |
| 17 | A | To my knowledge, yes. |
| 18 | Q | So she wasn't interviewed until nine or ten |
| 19 | | days afterwards? |
| 20 | A | That's my memory of what I knew, yes. |
| 21 | | MR. SCHUMACHER:  Could you mark this, |
| 22 | | please. |
| 23 | | (Document marked Exhibit No. 2.) |
| 24 | | BY MR. SCHUMACHER: |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

139

1        discipline.  We didn't can't say you're

2        suspended for three days without pay.  We

3        don't pay them, the contract workers.

4  Q  Do you have the ability to instruct their

5        supervisors to speak with them about their

6        conduct?

7  A  Yes, on occasion, that's what's happened.  If

8        a person acts in a way, not in conformance of

9        the department's policies or rules or

10       regulations or there is a situation that

11       requires some intervention or intermediate

12       sanctions, absolutely.

13  Q  Or they can receive a written warning?

14       MS. CAULO:  Objection.

15  A  Yes, depending upon the circumstances.

16       "Please don't leave your toolbox open like

17       that in the hallway where inmates can come

18       and get it."

19  Q  If an employee of the department had done

20       precisely what you believe Mrs. Porter did in

21       this situation, what procedures would have

22       been followed with respect to that employee?

23       MS. CAULO:  Objection.

24  A  The person would have been put out without

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

142

1   A   No.

2   Q   Are you aware if anybody in the House of

3       Corrections did?

4   A   Yes.

5   Q   What do you know about that?

6   A   My understanding is that General Counsel --

7           MS. CAULO:  Objection to the extent that

8       anything is covered by the attorney-client

9       privilege.

10          THE WITNESS:  My understanding is that

11      General Counsel, Anne Powers, spoke to

12      someone at CMS.

13  Q   Do you know if anyone else spoke to CMS

14      concerning Mrs. Porter's barring?

15  A   No, I'm not aware of.

16  Q   Do you know if Miss Mastrorilli did, for

17      instance?

18  A   I don't know.

19  Q   Are you aware of any department employees who

20      have been terminated for engaging in the

21      conduct that you believe Mrs. Porter engaged

22      in?

23          MS. CAULO:  Objection.

24  A   The specific conduct that she engaged in?

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

143

1    Q   Yes.

2    A   No.

3    Q   Are you aware of any contract employees who

4         have been barred from the facility for

5         engaging in the conduct that Mrs. Porter

6         engaged in?

7            MS. CAULO:  Objection.

8    A   I'm not aware of any employee or contract

9         employee engaging in the conduct that I

10       understand she engaged in.

11    Q   So then it follows that you are not aware of

12       any that have been barred or terminated?

13    A   Correct.

14          MR. SCHUMACHER:  Mark this as an

15       exhibit, please.

16         (Document marked Exhibit No. 4.)

17       BY MR. SCHUMACHER:

18    Q   I'm handing you what's been marked as

19       Exhibit No. 4, Miss Keeley.  Take a second to

20       look at that.  Have you ever seen this

21       document before?

22    A   No.

23    Q   I'll represent to you that this was a

24       document that was produced to us by the

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

153

1    Q    Was the revision of Policy S220 related in

2         any way to the incident surrounding

3         Mr. Rosario and Mrs. Porter?

4    A    We had -- I would have to say, yes, there was

5         some connection, and we considered what

6         occurred during that investigation and the

7         conduct of Nurse Porter and our looking at

8         certain sections of the policy.

9    Q    Did you conclude that the policy should be

10        changed in part because of what transpired

11        with respect to Miss Porter?

12             MS. CAULO:   Objection.

13   A    I think we agreed that there needed to be

14        more clarification in certain sections of the

15        policy.   We removed other areas.   We edited

16        so that it was clear to employees the

17        expectations.   Yes, I'd have to say so there

18        would be more clarification to employees,

19        people that work for the department.

20   Q    Which areas needed clarification?

21   A    The one area concerning confidential

22        communications.

23   Q    Did any other areas in your mind need

24        clarification?

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

176

```
 1    Q    Do you know whether or not the criminal

 2         investigation is still ongoing?

 3    A    I think it is, yes.

 4    Q    Are you familiar with a statement that was

 5         released to the press on August 25th, 2004,

 6         concerning Mrs. Porter that was released on

 7         behalf of the Sheriff's Department?

 8    A    I know of a statement we made.  I'm not

 9         exactly sure that's the date, but we did

10         release a statement in August of 2004.

11    Q    Did you have any role in drafting that

12         statement?

13    A    Yes.

14    Q    How would you describe your role?

15    A    How did I do it?

16    Q    What was your role?  Did you physically draft

17         the statement?

18    A    I went to my computer and typed it on the

19         screen.

20    Q    You drafted the statement?

21    A    I did.

22    Q    Did you receive input from anybody to

23         determine what should go into that statement?

24    A    Yes.
```

177

1    Q    Who did you speak to?

2    A    Before I started typing, there was a meeting

3         with myself, the Sheriff, General Counsel,

4         Anne Powers, and off and on, Steve Tomkins

5         was in the room.

6    Q    What about Viktor Theiss?  Was he involved in

7         the drafting of the statement?

8    A    I don't believe so, no.  I don't recall him

9         being involved.

10            MR. SCHUMACHER:  Can you mark that.

11            (Document marked Exhibit No. 6.)

12        BY MR. SCHUMACHER:

13    Q    I'm handing you what's been marked as

14         Exhibit 6.  Do you recognize this document?

15    A    Yes.

16    Q    Is this the press statement that you drafted

17         that we were just discussing?

18    A    Yes.

19    Q    Under No. 2, it reads, "Mrs. Porter was asked

20         to leave the House of Correction because she

21         violated department regulations and

22         contractual obligations."  The department

23         regulations that you were referring to, are

24         those the ones that we have discussed today

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

# EXHIBIT 22

220 violations - terminated

| ID | Type | Level | Quarter | Date | Comment |
|---|---|---|---|---|---|
| 5758 | Discipline | Terminated | 1Q99 | 2/8/1999 | TERMINATED PLEAD GUILTY AND B ASSAULT AND BATTERY WITH A DANGEROUS WEAPON SENTENCED TO 2 YEARS H.O.C. THE COURT SUSPENDED SENTENCE, PROBATION FOR 2 YEARS. |
| 5763 | Discipline | Terminated | 3Q99 | 7/16/1999 | TERMINATED FOR CONDUCT ON APRIL 15, 1999. ARRESTED FOR ASSAULT AND BATTERY WITH A DANGEROUS WEAPON; YOU STRUCK A MAN IN THE FACE WITH A MOTORCYCLE HELMET. |
| 827 | Discipline | Terminated | 3Q99 | 8/18/1999 | THEFT AND CASHING OF ANOTHER EMPLOYEE'S CHECK. |
| 5723 | Discipline | Terminated | 3Q99 | 8/27/1999 | RELATIONS WITH AN INMATE. |
| 5682 | Discipline | Terminated | 3Q99 | 8/27/1999 | MAP VIOLATIONS. |
| 5793 | Discipline | Terminated | 3Q99 | 8/27/1999 | INPROPRIATE RELATIONSHIP WITH AN INMATE |
| 5362 | Discipline | Terminated | 3Q99 | 8/27/1999 | TERMINATED / INTIMATE CONTACT WITH AN INMATE |
| 5108 | Discipline | Terminated | 3Q99 | 9/8/1999 | TERMINATED FOR CHRONIC INSUBORDINATE, DISCOURTEOUS AND UNPROFESSIONAL CONDUCT TOWARDS SUPERVISORS |
| 5350 | Discipline | Terminated | 3Q99 | 9/13/1999 | FAILURE TO RETURN TO WORK AFTER LEAVE OF ABSENCE. |
| 53035 | Discipline | Terminated | 4Q99 | 10/20/1999 | TERMINATED / INTIMATE CONTACT WITH AN INMATE |
| 55500 | Discipline | Terminated | 4Q99 | 12/2/1999 | SUSPENDED FOR CONDUCT UNBECOMING OF AN OFFICER, ASSAULTING AN INMATE,FAILURE TO FILE TIMELY REPORT FILING FALSE MISLEADING REPORTS |
| 53236 | Discipline | Terminated | 4Q99 | 12/29/1999 | TERMINATED AS A RESULT OF INCIDENT INVOLVING INMATE ON 10-16-99. WITNESSED ASSAULT ON INMATE, FAILED TO FILE TIMELY REPORT, PROVIDED FALSE INFO TO SID, FAILED TO PROPERLY MAINTAIN LOGBOOK. |
| 53181 | Discipline | Terminated | 2Q00 | 4/3/2000 | |
| 55314 | Discipline | Terminated | 2Q00 | 4/21/2000 | DRUG VIOLATIONS. |
| 53341 | Discipline | Terminated | 2Q00 | 7/14/2000 | DRUG VIOLATIONS. |
| 55748 | Discipline | Terminated | 2Q00 | 7/28/2000 | TERMINATED FOR IMPROPER RELATIONSHIP WITH AN INMATE |
| 74157 | Discipline | Terminated | 3Q00 | 9/14/2000 | PROBATIONARY EMPLOYEE |
| 56239 | Discipline | Terminated | 3Q00 | 9/27/2000 | VIOLATION OF 3/31/00 AGREEMENT: ARRIVED AT WORK INTOXICATED ON SEPTEMBER 1, 2000. |
| 55562 | Discipline | Terminated | 4Q00 | 10/23/2000 | TERMINATION - VIOLATION OF POLICY S220 CONVICTION OF A FELONY CRIME. |
| 76111 | Discipline | Terminated | 1Q01 | 1/30/2001 | TERMINATED DURING PROBATIONARY PERIOD |
| 77466 | Discipline | Terminated | 1Q01 | 2/14/2001 | TERMINATED DURING PROBATIONARY PERIOD |
| 56866 | Discipline | Terminated | 1Q01 | 3/20/2001 | ABANDONMENT OF POSITION |
| 57444 | Discipline | Terminated | 1Q01 | 3/23/2001 | TERMINATED FOR ACTIONS ON 1/21/01. VIOLATED POLICY S220: .03; .04(H)(1); .04(H)(11); .04(H)(15); .04(H)(16); .05(A)(16); .05(A)(2)(B); .05(A)(14)(B) AND .05(A)(15)(A). |
| 75521 | Discipline | Terminated | 1Q01 | 4/6/2001 | |
| 77363 | Discipline | Terminated | 2Q01 | 4/13/2001 | PROBATIONARY EMPLOYEE |
| 80162 | Discipline | Terminated | 2Q01 | 5/17/2001 | TERMINATED DURING PROBATIONARY PERIOD |
| 76077 | Discipline | Terminated | 3Q01 | 7/12/2001 | FAILED DRUG TEST |
| 76381 | Discipline | Terminated | 3Q01 | 10/15/2001 | |
| 54287 | Discipline | Terminated | 2Q01 | 11/21/2001 | Outcome of 11/7/01 hearing. Violated policy S220 sections: 05(A)(1)(a); .05(A)(7)(a); .05(A)(9)(a); .05(12)(h) to wit: S220.04(B)(4). |

001153

220 violations - terminated

| ID | Type | Level | Qtr | Date | Comments |
|---|---|---|---|---|---|
| 57241 | Discipline | Terminated | 4Q01 | 12/7/2001 | TERMINATED AS OF 12/7/01 VIOLATED POLICY S220 AND S239 |
| 53227 | Discipline | Terminated | 4Q01 | 1/4/2002 | Violated agreement dated 11/5/01 by being absent on 11/11/01, 11/20/01 and 11/21/01. |
| 81802 | Discipline | Terminated | 1Q02 | 2/1/2002 | |
| 57225 | Discipline | Terminated | 1Q02 | 2/27/2002 | VIOLATED POLICY S220 |
| 53345 | Discipline | Terminated | 1Q02 | 2/27/2002 | |
| 58571 | Discipline | Terminated | 1Q02 | 3/15/2002 | Probation employee. |
| 82924 | Discipline | Terminated | 2Q02 | 4/18/2002 | FAILED DRUG TEST |
| 50305 | Discipline | Terminated | 2Q02 | 5/16/2002 | ABANDONMENT OF POSITION AND VIOLATIONS OF POLICY 5-211 (AWOL). |
| 55031 | Discipline | Terminated | 2Q02 | 5/31/2002 | TERMINATED FOR OFF-DUTY OFFENSE ON 4/11/02. DRUG TASK FORCE ARRESTED YOU FOR POSSESSION WITH INTENT TO DISTRIBUTE CLASS D SUBSTANCE. |
| 54849 | Discipline | Terminated | 2Q02 | 7/9/2002 | VIOLATED POLICY S220 ASSAULTING AN INMATE |
| 67066 | Discipline | Terminated | 3Q02 | 8/12/2002 | SECOND VIOLATION OF DRUG TESTING POLICY. |
| 82900 | Discipline | Terminated | 3Q02 | 8/15/2002 | TERMINATED DURING PROBATIONARY PERIOD |
| 82895 | Discipline | Terminated | 3Q02 | 9/30/2002 | TERMINATED DURING PROBATIONARY PERIOD |
| 54874 | Discipline | Terminated | 4Q02 | 11/27/2002 | |
| 54509 | Discipline | Terminated | 4Q02 | 12/3/2002 | FAILED SECOND DRUG TEST |
| 88280 | Discipline | Terminated | 1Q03 | 1/9/2003 | TERMINATED DURING PROBATIONARY PERIOD. |
| 56504 | Discipline | Terminated | 1Q02 | 1/27/2003 | ARREST IN PEABODY |
| 74606 | Discipline | Terminated | 1q03 | 1/28/2003 | FAILURE TO TAKE DRUG TEST |
| 83764 | Discipline | Terminated | 01Q03 | 1/31/2003 | TERMINATED DURING PROBATIONARY PERIOD. |
| 57598 | Discipline | Terminated | 4Q03 | 2/4/2003 | TERMINATED FOR CAUSE AS A RESULT OF INCIDENT ON 12/21/02. YOU PROVIDED CONTRABAND TO AN INMATE AND FILED A FALSE REPORT. |
| 53930 | Discipline | Terminated | 1Q03 | 3/12/2003 | TERMINATED FOR PLEADING GUILTY IN CRIMINAL CASE. |
| 55478 | Discipline | Terminated | 1Q03 | 3/13/2003 | TERMINATED FOR CAUSE EFFECTIVE 3/13/03. |
| 56827 | Discipline | Terminated | 1q03 | 4/9/2003 | TRAFFICKING COCAINE |
| 52815 | Discipline | Terminated | 1q03 | 4/22/2003 | ON MARCH 31, 2003 YOU WERE CONVICTED ON FOUR CRIMINAL COUNTS IN FEDERAL COURT - DEPRIVATION OF RIGHTS, CONSPIRACY, OBSTRUCTION OF JUSTICE AND PERJURY. THESE ARE ALL VIOLATIONS OF S220. |
| 85774 | Discipline | Terminated | 2Q03 | 4/28/2003 | TERMINATED FOR ADMITTING BRINGING CONTRABAND INCLUDING HEROIN INTO DETAINEES AT THE JAIL. PROBATIONARY EMPLOYEE. |
| 55690 | Discipline | Terminated | 2Q03 | 5/8/2003 | 2ND VIOLATION OF DRUG TEST |
| 55256 | Discipline | Terminated | 2Q03 | 6/11/2003 | VIOLATION OS POLICY S220 SUSPENSION AND HEARING |
| 54007 | Discipline | Terminated | 2Q03 | 7/15/2003 | LIED TO SID, LIED TO FBI |
| 55288 | Discipline | Terminated | 3Q03 | 8/1/2003 | UNPROFESSIONAL CONDUCT TOWARDS STAFF |
| 83756 | Discipline | Terminated | 3Q03 | 9/3/2003 | providing false information on the job application - hearing was rescheduled for 10/24/03. |
| 54141 | Discipline | Terminated | 3Q03 | 11/14/2003 | ON OCTOBER 14, YOU WERE ARRESTED FOR DOMESTIC ASSAULT AND BATTERY |
| 55035 | Discipline | Terminated | 4Q03 | 12/15/2003 | |
| 55497 | Discipline | Terminated | 4Q03 | 12/17/2003 | |
| 54294 | Discipline | Terminated | 1Q04 | 2/6/2004 | |
| 81044 | Discipline | Terminated | 1Q04 | 2/11/2004 | |

001154

220 violations - terminated

| ID | Type | Level | Quarter | Date | Comment |
|---|---|---|---|---|---|
| 54010 | Discipline | Terminated | 1Q04 | 3/12/2004 | Repeated incidents of domestic violence |
| 96050 | Discipline | Terminated | 1Q05 | 1/5/2005 | Failure to meet training academy standards |
| 75464 | Discipline | Terminated | 1Q05 | 2/18/2005 | Valid arrest, and actions towards State Police officers |
| 54123 | Discipline | Terminated | 2Q05 | 4/19/2005 | Valid arrest, and threatening another person with a weapon |
| 53304 | Discipline | Terminated | 2Q05 | 5/2/2005 | Forging another employee's signature on invoices that were not the Department's responsibility |

Page 3

001155

220 violations - not terminated

| ID | Type | Level | Class | Date Received | Comment |
|---|---|---|---|---|---|
| 54423 | Discipline | Two Day | 1Q99 | 1/13/1999 | VIOLATION OF POLICY S501 SECURITY AND CONTROL AND S220    EMPLOYEE GENERAL CONDUCT. |
| 55035 | Discipline | Two Day | 1Q99 | 1/13/1999 | VIOLATED POLICIES :S501 AND S220.00. |
| 56508 | Discipline | Two Day | 1Q99 | 1/13/1999 | VIOLATED POLICIES:S501 AND S220.00. |
| 56297 | Discipline | Two Day | 1Q99 | 1/13/1999 | VIOLATED POLICIES S501 AND S220.00. |
| 52707 | Discipline | Written | 1Q99 | 1/13/1999 | VIOLATED POLICY #S220.05 A(10&B) INACCURATE REPRESENTATON OF TIME AND UNPROFESSIONAL CONDUCT. |
| 55060 | Discipline | Written | 1Q99 | 1/20/1999 | FAILURE TO ATTEND SCHEDULED TRAINING |
| 56150 | Discipline | 30 Day | 2Q96 | 2/2/1999 | AGREEMENT / VIOLATION OF POLICIES  S-220.07,S-220.12,S-220.15(2)(A),S-220.15(2)(B),AND  S-220.15(2)(D);FOUND ACQUITTED IN SUFFOLK SUP. COURT |
| 5352 | Discipline | 3/6 Day | 1Q99 | 2/9/1999 | ARBITRATOR'S AWARD / 3/6 DAY SUSPENSION EFFECTIVE AUGUST  22, 1997-FEBRUARY  3,  1999- INEXCUSABLE CONDUCT AUGUST 16, 1997 TOWARD AN INMATE |
| 92 | Discipline | Written | 1Q99 | 2/18/1999 | SUSPENDED PENDING INVESTIGATION OF VIOLATION OF POLICY    S-220. |
| 53696 | Discipline | Five Day | 1Q97 | 2/27/1999 | VIOLATION OF POLICY S220.15(10)(D) SLEEPING ON DUTY.AND    POLICY'S S21.10, HOSPITAL DETAILS. |
| 53187 | Discipline | Written | 1Q99 | 3/3/1999 | FAILURE TO SUPERVISE JANITORIAL STAFF PROPERLY-STAFF    COMPLAINING ABOUT LACK OF CLEANLINESS IN THE WORK         AREA--AFTER MEMO FROM CAPT.SCADUTO NOTHING HAD CHANGED |
| 55762 | Discipline | 30 Day | 1Q99 | 3/5/1999 | AGREEMENT / VIOLATED POLICY S-220.  ACTIONS ALLOWED IMPROPER RELEASE OF WRONG INMATE AND HOLDING OF CORRECT INMATE. |
| 56103 | Discipline | One Day | 1Q99 | 3/5/1999 | VIOLATION OF POLICY S-220.06 AND S220.15.         YOU WILL BE SUSPENDED MARCH 10,1999. |
| 55960 | Discipline | One Day | 1Q99 | 3/5/1999 | VIOLATION OF POLICIES S220.06 AND S220.15. YOU WILL BE    SUSPENDED ON MARCH 9,1999. BOTH YOU AND THE UNION AGREE TO  THIS AND SHALL NOT GRIEVE IT. |
| 54874 | Discipline | Oral | 1Q99 | 3/5/1999 | AT ROLL CALL-OUT OF UNIFORM WITH SHIRT OUT, AND UNBUTTONED   AND TIE OFF, AFTER BEING TOLD TO GET DRESSED, STILL FAILED   TO ATTACH NECKTIE, COUNSELED BEFORE ON SAME ISSUE 1/20/99 |
| 54484 | Discipline | Written | 1Q99 | 3/10/1999 | ALL 3 SECURITY GATES OPEN AT ONE TIME-POST ORDERS STATE    "AT NO TIME ARE 3 GATES TO BE OPEN SIMULTANEOUSLY" |
| 53584 | Discipline | Three Day | 1Q99 | 3/11/1999 | 3 DAY SUSPENSION WITHOUT PAY BEGINNING MARCH 11, 1999 A   PROBATIONARY PERIOD WILL OF ONE YEAR WILL BE SERVED ALSO    BEGINNING MARCH 11, 1999 |
| 53385 | Discipline | One Day | 1Q99 | 3/11/1999 | VIOLATED  POLICY  S220.15-CONDUCT UNBECOMING OF AN OFFICER    AND  DISRESPECT  AND INSUBORDINATION TO A SUPERIOR OFFICER.   SUSPENSION DATE MARCH 12,1999. |
| 52707 | Discipline | One Day | 1Q99 | 3/15/1999 | VIOLATION OF S220.15. ON FEB.10,1999 YOU GOT INTO A VERBAL   EXCHANGE WITH NURSE EDWARDS. YOU BECAME ANGRY AND BEGAN     USING PROFANITY AND NAME CALLING TOWARDS NURSE EDWARDS. |
| 56700 | Discipline | Three Day | 1Q99 | 3/16/1999 | IMPROPERLY ENTERED ROOM OF AN INMATE.VIOLATION OF POLICY    S220.15. YOU WILL BE SUSPENDED ON MARCH 24, APRIL 7, AND     APRIL 29. |
| 52923 | Discipline | Three Day | 2Q98 | 3/22/1999 | ON 6/8/98 YOU DID NOT WRITE A REPORT ABOUT THE INCIDENT ON  THE BOOKING ELEVATOR UNTIL 3 DAYS LATER. YOU ALSO FAILED TO  WRITE ABOUT THE INJURIES SUSTAINED BY THE INMATE. |
| 57366 | Discipline | Written | 2Q99 | 4/7/1999 | VIOLATED POLICY S220.12-IMPRPOPER COMMUNICATION WITH AN      INMATE  AND  FAILURE TO FILE A TIMELY REPORT. |

Page 1

001156

220 violations - not terminated

| ID | Type | Level | Qt | Comments |
|---|---|---|---|---|
| 56542 | Discipline | One Day | 2Q99 | 4/8/1999 VIOLATED POLICY S220.05 A1(A) & A6(A) CONDUCT UNBECOMING OF AN OFFICER AND DISRESPECT OR INSUBORDINATION OF A SUPERIOR OFFICER. |
| 54238 | Discipline | Oral | 2Q99 | 4/8/1999 FOR REFUSAL TO WEAR NECKTIE. |
| 53674 | Discipline | Written | 2Q99 | 4/18/1999 VIOLATED POLICY S220.04 (E)(2) FOSTERING DISCONTENT OF AN EMPLOYEE. AND S220.05 (7)(C) DISCOURTESY,DISRESPECT OR INSOLENCE TO A DEPARTMENTAL EMPLOYEE. |
| 52924 | Discipline | Written | 2Q99 | 4/21/1999 VIOLATED POLICY S220.09 & S501.04 BY HAVING BOTH SALLYPORT DOORS OPEN AT THE SAME TIME. |
| 55762 | Discipline | Written | 2Q99 | 4/21/1999 VIOLATED POLICY S220.09 & S501.04 BY HAVING BOTH SALLYPORT DOORS OPEN AT THE SAME TIME. |
| 5375 | Discipline | One Day | 2Q99 | 4/21/1999 |
| 53619 | Discipline | Written | 2Q99 | 4/21/1999 VIOLATED POLICY S220.09 AND S501.04 BY HAVING BOTH SALLYPORT DOORS OPEN AT THE SAME TIME. |
| 54163 | Discipline | Written | 2Q99 | 4/26/1999 VIOLATED POLICY S220.05-WATCHING TV WHILE ON DUTY. |
| 55256 | Discipline | Written | 2Q99 | 4/27/1999 VIOLATED POLICY S220.06-FOSTERING DISCONTENT BETWEEN EMPLOYEES. |
| 52628 | Discipline | Probation | 1Q99 | 4/30/1999 APPROVED 7/W0 1/1882S-2/17/99. ONE VIOLATION OF MAP DURING THIS PROBATIONARY PERIOD SHALL RESULT IN A 10 DAY/SUSP & A 2ND IN TERMINATION |
| 55072 | Discipline | Agreement | 2Q99 | 5/7/1999 FAILURE TO COMPLETE REQUIREMENTS OF BASIC TRAINING PROGRAM. SUBJECT TO DISCHARGE W/O RECOURSE PRIOR TO THE END OF PROBATION ON 4/15/99-PROBATIONARY PERIOD EXTENDED UNTIL BASIC TRAINING APPROX 6/14/99 |
| 57146 | Discipline | Probation extension | 2Q99 | 5/7/1999 NEEDS TO COMPLETE BASIC TRAINING PROGRAM OR SUBJECT TO DISCHARGE PRIOR TO END OF PROBATION 4/15/99.TRAINING SCHEDULED APPROX. 6/14/99 |
| 54985 | Discipline | Five Day | 2Q99 | 5/12/1999 SLEEPING ON DUTY-5 DAY SUSPENSION W/O PAY EFFECTIVE 5/18/99 1 YEAR PROBATIONARY PERIOD TO BE SERVED |
| 54985 | Discipline | Five Day | 1Q99 | 5/18/1999 SUSPENDED FOR 5 DAYS WITHOUT PAY AND ORDERED TO BE PRESENT AT DEPARTMENTAL HEARING SCHEDULED 3/22/99 AT 1:00 PM IN THE CONFERENCE ROOM OF BUILDING 2 |
| 53674 | Discipline | Written | 2Q99 | 5/18/1999 YOU VIOLATED POLICY S220.05(7)(C),YOU DID NOT FOLLOW THE RIGHT CHAIN OF COMMAND. |
| 52691 | Discipline | Written | 2Q99 | 5/20/1999 VIOLATED POLICY S220.06 AND S220.15(4)(B). |
| 5108 | Discipline | One Day | 2Q92 | 6/2/1999 FAILURE TO ATTEND A STAFF MEETING. |
| 54348 | Discipline | One Day | 2Q99 | 6/2/1999 VIOLATED POLICY S220.05(A)(6)(A) DISRESPECT OR INSUBORDINATION TO A SUPERIOR OFFICER. |
| 56533 | Discipline | Agreement | 2Q99 | 6/9/1999 FAILED TO COMPLETE REQUIREMENTS OF BASIC TRAINING. THEREFORE, PROBATIONARY PERIOD WAS EXTENDED UNTIL THE END OF THE NEXT TRAINING WHICH WILL BEGIN ON 6-21-99. |
| 52320 | Discipline | Written | 2Q99 | 6/23/1999 CONDUCT ON 4/15/99 WHILE ASSIGNED TO 1-10-1 UNIT HAD A DISAGREEMENT WITH C/O RICHARD POWERS |
| 53035 | Discipline | Written | 2Q99 | 6/23/1999 DISAGREEMENT WITH C/O DEYANIRA FELIZ WHILE ASSIGNED TO UNIT 1-10-3 AND 1-10-1 UNITS RESPECTIVELY.THIS TOOK PLACE ON APRIL 15, 1999 |
| 53035 | Discipline | 10 Day | 2Q99 | 6/25/1999 VIOLATED POLICY S220.01,.07,.15(1)(A),.15(2)(B)BETWEEN JANUARY AND MARCH OF 1996-SUSPENSION TO BE SERVED 6/28-7/2,1999 & 8/2-8/6,1999 |
| 53502 | Discipline | One Day | 2Q99 | 6/28/1999 W/O PAY-DISCIPLINED FOR REMARKS MADE IN THE PRESENCE OF CASEWORKER ALTHEA ANDREWS-REFERENCES MADE TO JEFFERSONS AND MBTA |
| 53297 | Discipline | Written | 2Q99 | 6/30/1999 VIOLATION OF POLICY REPORTS/FAILURE TO SUPERVISE 6/25,1999 MAN DOWN CALLED FROM BLDG. 4, NO ATTEMPT WAS MADE TO MAKE OUT REPORTS OR GET A REPORT FROM THE 4+2 OFFICER |

001157

220 violations - not terminated

| ID | Type | Level | Code | Date | Comments |
|---|---|---|---|---|---|
| 54802 | Discipline | Agreement | 2099 | 6/30/1999 | PROBATION / SUBJECT TO DISCHARGE W/O RECOURSE PRIOR TO 7/21/1999 - PROBATIONARY PERIOD EXTENDED UNTIL BASIC TRAINING COMPLETED SUCCESSFULLY |
| 56157 | Discipline | Five Day | 2099 | 6/30/1999 | "SIX DAY"(NOT FIVE) SUSPENSION AS A REULT OF ARREST ON  6/30/99 AND FAILURE TO REPORT ARREST. |
| 54294 | Discipline | Oral | 3099 | 7/6/1999 | FAILURE TO MAKE SURE CELLS WERE KEPT ACCORDING TO UNIT  POLICY |
| 55497 | Discipline | Oral | 2099 | 7/6/1999 | ON JULY 6TH, 1999 YOU FAILED TO MAKE SURE THAT THE CELLS   WERE KEPT ACCORDING TO UNIT POLICY. |
| 53231 | Discipline | Written | 4096 | 7/11/1999 | FAILED TO COMPLY WITH DEPARTMENT POLICY -GRABBED AN     INMATE'S CHIN AND ENGAGED IN A LOUD INTERACTION WITH HIM -  UNNECESSARY SITUATION,COULD HAVE FOLLOWED PROCEDURE |
| 54634 | Discipline | One Day | 3099 | 7/14/1999 | VIOLATION OF POLICIES S220.10(A) AND S220.10(B). |
| 55932 | Discipline | Oral | 3099 | 7/23/1999 | VIOLATION OF POLICY S220.9 - S220-.14 |
| 55866 | Discipline | Two Day | 2099 | 7/27/1999 | TWO DAY. ON JULY 21,1999 WHILE IN THE COMPANY OF OTHERS YOU MADE A COMMENT ABOUT A SUPERIOR OFFICER. YOU VIOLATED    POLICY S220.06 AND S220.15(2)(B). |
| 5793 | Discipline | Five Day | 3099 | 7/30/1999 | CONDUCT UNBECOMING AN OFFICER |
| 5362 | Discipline | Five Day | 3099 | 7/30/1999 | CONDUCT UNBECOMING AN OFFICER |
| 54874 | Discipline | Oral | 3099 | 8/3/1999 | FAILURE TO SUBMIT WRITTEN REPORT TO SHIFT COMMANDER |
| 56239 | Discipline | Oral | 3099 | 8/9/1999 | SMOKING A CIGARETTE IN UNIT 4-4 ON 8/8/99 AT APPROXIMATELY 12:46 A.M. |
| 5723 | Discipline | Five Day | 3099 | 8/13/1999 | SUPENDED 5 DAYS WITHOUT PAY, PENDING A HEARING TO BE HELD   WEDNESDAY AUGUST 18, 1999 AT 10AM |
| 55633 | Discipline | Three Day | | 8/24/1999 | AGREEMENT / FOR WEARING FIREARM & CARRYING SECOND FIREARM (UNLOADED) THROUGH SALLYPORT. SERVED AUGUST 3, 4 & 7, 1999. |
| 56515 | Discipline | Written | 3099 | 8/25/1999 | |
| 52631 | Discipline | Written | 3099 | 8/30/1999 | PERTAINS TO ACTIONS ON 8/22/99-DISRESPECT TO A SUPERIOR OFFICER-MADE DERROGATORY STATEMENTS IN REFERENCE TO CAPTAIN ERTHA-S220.05AI(1A),S220.05A6(A),S220.04E(1(. |
| 53341 | Discipline | Five Day | 3099 | 9/11/1999 | SUSPENSION AS A RESULT OF ACTIONS ON JULY 21, 1999. |
| 53297 | Discipline | Oral | 3099 | 9/17/1999 | FAILURE TO COMPLY WITH DEPT POLICY ON 9/17/99. |
| 56103 | Discipline | Written | 3099 | 9/21/1999 | VIOLATED POLICY S220.15(6). TOOK A DEPARTMENT VEHICLE HOME AFTER A DETAIL |
| 55272 | Discipline | Oral | 3099 | 9/24/1999 | FAILURE TO COMPLY TO DEPT.'S POLICY REGARDING LOGBOOK        PROCEDURE ON SEPT. 7,8,13,14, AND 15, 1999. |
| 55726 | Discipline | Oral | | 9/24/1999 | NEGLECTED TO ENSURE THAT PROPER ROUTINE ENTRIES WERE       RECORDED IN A PROFESSIONAL MANNER IN THE UNIT 192 LOG-BOOK. |
| 53616 | Discipline | One Day | 3099 | 9/28/1999 | AGREEMENT - EMPLOYEE MADE NUMEROUS INAPPROPRIATE ENTRIES IN THE LOGBOOK FOR THE 1-9-2 UNIT DURING MONTH OF SEPTEMBER 1999. |
| 55759 | Discipline | Agreement | | 10/1/1999 | FAILURE TO COMPLETE BASIC TRAINING. PROBATIONARY PERIOD IS EXTENDED UNTIL HE COMPLETES BASIC TRAINING, WHICH HAS NOT   BEEN SCHEDULED YET. |
| 55048 | Discipline | Three Day | 3Q99 | 10/1/1999 | PASSED THROUGH SALLYPORT WHILE WEARING FIREARM AND CARRYING SECOND FIREARM (UNLOADED) IN CASE. |
| 54238 | Discipline | Oral | 4099 | 10/5/1999 | FAILED TO COMPLY WITH A DIRECT REQUEST TO CONFORM TO DEPT.    POLICY BY NOT WEARING A NECKTIE. |
| 55799 | Discipline | Three Day | 4099 | 10/7/1999 | VIOLATED POLICY S220.15(10(F) VIOLATION OF COMMOM SENSE AND SAFETY RULES. |

Page 3

001158

220 violations - not terminated

| ID | Type | | Qtr | Date | Description |
|---|---|---|---|---|---|
| 53349 | Discipline | Three Day | 4Q99 | 10/7/1999 | VIOLATED POLICY S220.05(11)(D) SLEEPING ON DUTY. ON 10/4/99 YOU FOUND SLEEPING IN THE CAFETERIA AT 8:45 P.M. BY YOUR SUPERVISOR.SUSPENDED 10/4/99 FOR THREE DAYS. |
| 53203 | Discipline | Oral | 4Q99 | 10/14/1999 | NEGLECTED TO ENSURE THAT PROPER ROUTINE ENTRIES BE LOGGED AND ENTERED INTO UNIT LOGBOOK. REFUSED TO SIGN. |
| 54983 | Discipline | Oral | 4Q99 | 10/14/1999 | NEGLECTED TO ENSURE THAT PROPER ROUTINE ENTRIES BE LOGGED AND ENTERED INTO THE UNIT LOGBOOK. |
| 55528 | Discipline | Two Day | 4Q99 | 10/14/1999 | VIOLATION OF POLCY S-220,FAILURE TO TIMELY REPORT AN INCIDENT. YOU ARE SUSPENDED FOR TWO DAYS OCTOBER 16, AND 17 |
| 55256 | Discipline | Oral | 4Q99 | 10/14/1999 | VIOLATED POLICY S220.09-HAVING BOTH SALLYPORT DOORS OPEN AT THE SAME TIME. |
| 55367 | Discipline | Five Day | 4Q99 | 10/14/1999 | VIOLATION OF POLICY S-220.ARRESTED ON SEPTEMBER 18, 1999. SUSPENSION EFFECTIVE OCT.14,1999. SETTLEMENT WITH UNION AND SUFFOLK COUNTY SHERIFF'S DEPT. |
| 56433 | Discipline | Oral | 4Q99 | 10/17/1999 | FAILED TO KEEP UNIT LOG BOOK UP TO DATE. FAILED TO HAVE SUFFICIENT LIGHTING IN LIVING UNIT. |
| 54572 | Discipline | Oral | 4Q99 | 10/21/1999 | FAILED TO PERFORM A DAILY CELL INSPECTION AS REQUIRED TO. |
| 55049 | Discipline | Oral | 4Q99 | 10/21/1999 | FAILED TO PERFORM A DAILY CELL INSPECTION AS REQUIRED TO. |
| 53989 | Discipline | Oral | 4Q99 | 10/21/1999 | BY LETTING BOTH DOORS SALLY-PORT TO INSTITUTION. |
| 56139 | Discipline | Written | 4Q99 | 10/23/1999 | DISOBEYING A DIRECT ORDER AND INSUBORDINATION TO A SUPERIOR OFFICER. |
| 56549 | Discipline | Oral | 4Q92 | 10/26/1999 | VIOLATED OF POST ORDER H9708 SECT. 3A. OFFICERS WILL NOT EAT, DRINK WHILE IN OPERATIONS. |
| 53076 | Discipline | Hearing | 2Q99 | 11/1/1999 | EFFECTIVE IMMEDIATELY YOU ARE SUSPENDED W/O PAY PENDING A DISCIPLINARY HEARING. YOU VIOLATED POLICIES S220.01.03, .15(1)(A), .15(2)(A), .15(2)(C)AND .15(4)(A). HEARING |
| 57357 | Discipline | Five Day | 4Q99 | 11/3/1999 | INAPPROPRIATE & OFFENSIVE STATEMENTS DURING AN AA MEETING IN THE 3-4 UNIT VIOLATING POLICIES S.2208-S.238.NOTIFICATION OF SENSITIVITY TRAINING TO BE SCHEDULED BY CAPT.SCADUTO |
| 53992 | Discipline | Three Day | 4Q99 | 11/8/1999 | INAPPROPRIATE AND EXTREMELY OFFENSIVE CONDUCT IN VIOLATION OF DEPARTMENT POLICIES S-220, S-238-SUSPENSION TO BE SERVED NOVEMBER 15, 16, 17, 1999. |
| 54238 | Discipline | Written | 4Q99 | 11/9/1999 | |
| 53187 | Discipline | Written | 4Q99 | 11/9/1999 | ON 10-2-99 YOU FAILED TO COMPLY WITH POLICY # S220.01, .15(6) AND .15(10)(A). YOU NEGLECTED YOUR REGULAR DUTIES WITHOUT AUTHORIZATION. |
| 55808 | Discipline | One Day | 4Q99 | 11/9/1999 | VIOLATED POLCY'S-S220-FOSTERING DISCONTENT AMONG FELLOW EMPLOYEES. |
| 50161 | Discipline | Five Day | 3Q99 | 11/16/1999 | COMMITTED THE CRIME OF AFFARY AND ARRESTED AND CHARGED WITH CRIME BY BOSTON POLICE. |
| 54210 | Discipline | Oral | 4Q99 | 11/18/1999 | FAILED TO PROPERLY SIGN YOURSELF OUT OF THE MEDICAL UNIT IN THE LOG BOOK WHEN YOU WENT ON SHCEDULED LUNCH BREAK. |
| 56762 | Discipline | Oral | 4Q99 | 11/19/1999 | YOU FAILED TO PROPERLY DOCUMENT YOUR 4:00 A.M. COUNT OF INMATES. |
| 57625 | Discipline | 30 Day | 4Q99 | 12/1/1999 | SUSPENDED FOR FAILURE TO PROPERLY INVESTIGATE AND FILE REPORTS,FILING FALSE OR MISLEADING REPORTS. |
| 53696 | Discipline | Hearing | 4Q99 | 12/2/1999 | SUSPENDED PENDING A HEARING FOR ASSAULTING AN INMATE,FAILURE TO FILE TIMELY REPORT ON USE OF FORCE, FILING A MISLEADING REPORT. |
| 54815 | Discipline | Written | 4Q99 | 12/8/1999 | ON SEPT.25,1999 YOU FAILED TO ACCOUNT FOR RADIO # 1160. YOU ACKNOWLEDGED RECEIPT OF THE RADIO FROM CAPTAIN BOLLES PRIOR TO DEPARTING FOR AN OUTSIDE DETAIL. |
| 56515 | Discipline | Oral | 4Q99 | 12/13/1999 | VIOLATION OF S-220.09 |
| 56542 | Discipline | Five Day | 4Q99 | 12/13/1999 | SUSPENDED FOR CONDUCT UNBECOMING OF AN OFFICER. |

001159

220 violations - not terminated

| ID | Type | Level | Qtr | Description |
|---|---|---|---|---|
| 57223 | Discipline | Oral | 4Q99 | 12/22/1999 VIOLATION OF POLICY S-220-OFFENSE 1B-UNPROFESSIONAL CONDUCT AND OFFENSE 6A- DISRESPECT TO A SUPERIOR. |
| 53696 | Discipline | Suspended | 4Q99 | 12/29/1999 SUSPENDED AS A RESULT OF INCIDENT INVOLVING INMATE ON 10-16-99. |
| 57625 | Discipline | Demoted | 4Q99 | 12/29/1999 DEMOTED FROM JO-4 TO JO-2 AS A RESULT OF INCIDENT INVOLVING INMATE ON 10-16-99. |
| 56783 | Discipline | Oral | 1Q00 | 1/1/2000 REFUSED TO SIGN |
| 53781 | Discipline | Written | 1Q00 | 1/7/2000 FAILURE TO RETURN KEYS ASSIGNED TO HIM. FAILURE TO REPORT    THE LOSS PROMOTLY TO SUPERVISOR. |
| 55812 | Discipline | Three Day | 1Q00 | 1/14/2000 YOU ARE SUSPENDED 3 DAYS EFFECTIVE 1/20/2000. YOU REFUSED A DIRECT ORDER FROM LT.O'CONNOR TO COUNT THE 4-4 UNIT. YOU    ONLY DID SO WHEN ESCORTED BY HIM. |
| 55812 | Discipline | Written | 1Q00 | 1/19/2000 ON DECEMBER 31, 1999, YOU WERE READING A BOOK IN FRONT OF TELEVISION WHILE SUPERVISORS WERE TOURING THE UNIT |
| 56325 | Discipline | Written | 1Q00 | 1/28/2000 UNSECURED SALLYPORT AND UNIT DOOR |
| 54796 | Discipline | Oral | 1Q00 | 1/30/2000 DID NOT HAVE TIE ON WHILE ON DUTY |
| 56060 | Discipline | Three Day | 1Q00 | 1/31/2000 Agreement on 8/16/01.    ACTED IN AN EXTREMELY UNPROFESSIONAL AND INSUBORDINATE MANNER. ON JAN.14,2000 YOU RAISED YOUR VOICE AND TWICE    STATED YOU DIDN'T "FREAKING UNDERSTAND". |
| 53969 | Discipline | 10 Day | 1Q00 | 3/3/2000 AGREEMENT / ARRESETED ON FEBRUARY 22,2000. |
| 53181 | Discipline | Three Day | 1Q00 | 3/10/2000 VIOLATION OF S220.01;.07;.15(1)(B) AND .15(10)(F)    INCIDENT DATED 2/19/00. |
| 53297 | Discipline | Oral | 1Q00 | 3/11/2000 |
| 50228 | Discipline | 60 Day | 3Q99 | 3/15/2000 AGREEMENT AND PROBATION - VIOLATION S220.    FAILURE TO NOTIFY SPECIAL SHERIFF OF HIS INVOLVEMENT WITH LAW ENFORCEMENT, CONVICTION AND COURT ORDERED PROBATION FOR ASSUALT AND BATTERY AND OUT. WILL ALSO SERVE 18 MONTH PROBATIONARY PERIOD. |
| 54874 | Discipline | Written | 1Q00 | 3/15/2000 VIOLATION OF POLICY S220.9 AND 501.04. COURT YARD GATE    UNSECURED, INMATE INSIDE A SECURED AREA |
| 52776 | Discipline | One Day | 1Q00 | 3/16/2000 FAILED TO CORRDCTLY RECORD THE CIVIL CAPTAS FOR INMATE SHEERS TO ENSURE INMATE WAS HELD FOR SUFFOLK COUNTY PROBATE AND FAMILY COURT. AS A RESULT OF THIS ERROR, INMATE WAS RELEASED DESPITE THE FACT HE SHOULD HAVE BEEN HELD. (REDUCED FROM 3-DAY TO 1-DAY BY |
| 54186 | Discipline | Written | 1Q00 | 3/16/2000 VIOLATION OF POLICY S220.01 AND S220.15(1) |
| 56594 | Discipline | Written | 1Q00 | 3/20/2000 UNPROFESSIONAL CONDUCT 3/1/00. VIOLATED POLICY S220.06;.15(1)(B); &.15(4)©. |
| 52736 | Discipline | Oral | 1Q00 | 3/25/2000 YOU WERE OBSERVED SMOKING IN THE MAIN LOBBY OF THE    INSTITUTION. |
| 56239 | Discipline | Five Day | 2Q00 | 3/30/2000 REPORTED FOR DUTY INTOXICATED. |
| 55900 | Discipline | Written | 2Q00 | 4/14/2000 VIOLATION OF POLICY S220.01,.06, .07 AND .15 |
| 53912 | Discipline | Oral | 2Q00 | 4/14/2000 |
| 55314 | Discipline | Written | 2Q00 | 4/14/2000 NOTICE OF SUSPENSION & DISCIPLINARY HEARING (VIOLATING    DEPT POLICY S-200 AS A RESULT OF YOUR CONDUCT WHICH LEFT TO    YOUR ARREST ON JUNE 17, 1999 |
| 53469 | Discipline | Written | 2Q00 | 4/14/2000 VIOLATION OF POLICY S220.01;.06;.07 AND .15(1)(A). YELLING    AND FIGHTING WITH FELLOW OFFICER. |
| 55562 | Discipline | Written | 2Q00 | 4/14/2000 PLACED ON ADMINISTRATIVE LEAVE WITH PAY. |

001160

220 violations - not terminated

| ID | Type | Level | Qtr | Date Received | Spec Content |
|---|---|---|---|---|---|
| 53187 | Discipline | Demoted | 2Q00 | 5/18/2000 | WAS DEMOTED FROM RC-13A TO RC-9. HE ALSO RECEIVED A FIVE DAY SUSPENSION WITHOUT PAY FOR INCIDENT ON 5/4/00. |
| 53187 | Discipline | Five Day | 2Q00 | 5/18/2000 | DEMOTION AND PROBATION / FROM RC-13A TO RC-9. PROBATION 5-18-00 - 5-18-01 VIOLATED POLICY S-220. MR.PORTER IS ALSO ON PROBATION FOR ONE YEAR. |
| 53231 | Discipline | Three Day | 2Q00 | 5/22/2000 | GAVE INMATES 1 HOUR OF UNSCHEDULED TIME. |
| 56827 | Discipline | Oral | 2Q00 | 5/24/2000 | FAILED TO ENSURE SALLYPORT DOORS REMAINED SECURE. |
| 56866 | Discipline | Five Day | 2Q00 | 5/26/2000 | PATTERN OF CONDUCT EXHIBITING INSUBORDINATE OR DISRESPECTFUL BEHAVIOR TOWARD SUPERIOR OFFICER. |
| 56866 | Discipline | Hearing | 2Q00 | 6/26/2000 | DISCIPLINARY HEARING ON 6-29-00. THE HEARING IS TO DECIDE WHETHER THERE IS JUST CAUSE TO DISCIPLINE YOU FOR ALLEGELY DRIVING A SUFFOLK COUNTY VEHICLE W/O A VALID LICENSE. |
| 56694 | Discipline | Written | 2Q00 | 6/30/2000 | FAILURE TO REPORT INCIDENT WITH LAW ENFORCEMENT OFFICIAL TO THE SPECIAL SHERIFF. |
| 54123 | Discipline | Oral | 2Q00 | 6/30/2000 | FAILED TO FILE A REPORT REGARDING INCIDENT WITH LAW ENFORCEMENT OFFICIALS. |
| 55497 | Discipline | Oral | 2Q00 | 6/30/2000 | FAILED TO FILE A REPORT REGARDING INCIDENT WITH LAW ENFORCEMNT OFFICIAL. |
| 54150 | Discipline | Oral | 2Q00 | 7/1/2000 | FAILURE TO REPORT TO THE SPECIAL SHERIFF HIS INVOLVEMENT WITH LAW ENFORCEMENT. |
| 54699 | Discipline | Oral | 2Q00 | 7/1/2000 | FAILURE TO REPORT TO THE SPECIAL SHERIFF HIS INVOLVEMENT WITH LAW ENFORCEMENT. |
| 54345 | Discipline | Oral | 2Q00 | 7/3/2000 | FAILURE TO REPORT TO THE SPECIAL SHERIFF HIS INVOLVEMENT WITH LAW ENFORCEMENT. |
| 54874 | Discipline | Written | 2Q01 | 7/3/2000 | |
| 57055 | Discipline | Oral | 2Q00 | 7/4/2000 | YOU VIOLATED POLICY S220. SPECIFICALLY YOU VIOLATED S220.03 WHICH STATES ALL EMPLOYEES MUST REPORT ANY INVOLVEMENT WITH LAW ENFORCEMENT OFFICIALS TO THE SPECIAL SHERIFF. |
| 55497 | Discipline | Oral | 2Q00 | 7/11/2000 | VIOLATED S220.03 FAILURE TO REPORT INVOLVEMENT WITH LAW ENFORCEMENT. |
| 55184 | Discipline | Oral | 2Q00 | 7/12/2000 | VLATION OF S220.03, FAILURE TO REPORT INVOLVEMENT WITH LAW ENFORCEMENT. |
| 53340 | Discipline | Written | 3Q08 | 7/14/2000 | VIOLATION OF POLICY S-220 EMPLOYEE GENERAL CONDUCT FOR INCIDENT ON 7/20/98. |
| 54143 | Discipline | Oral | 2Q00 | 7/18/2000 | USED COMPUTER IN CASEWORKER'S OFFICE. |
| 53601 | Discipline | Oral | 2Q00 | 7/18/2000 | VIOLATED POLICY S220.06-USED CASEWORKER'S COMPUTER. |
| 55827 | Discipline | Oral | 3Q00 | 7/19/2000 | RECEIVED AN ORAL WARNING TAKING AN EXTENED LUNCH PERIOD. |
| 74844 | Discipline | Written | 2Q00 | 7/21/2000 | 5/12/00 violated policy S224.03 and S220.15(01)(a) |
| 929 | Discipline | Written | 2Q00 | 7/21/2000 | VIOLATION OF POLICY S220.15 AND S224.03 |
| 53240 | Discipline | Oral | 3Q00 | 8/2/2000 | FAILED TO COMPLETE PROBATIONARY PERIOD. PROBATION EXTENDED UNTIL TRAINING IS COMPLETED. |
| 57116 | Discipline | Written | 3Q00 | 8/4/2000 | IMPROPER USE OF DEPARTMENT PROPERTY. |
| 55368 | Discipline | One Day | 3Q00 | 8/4/2000 | USED OFFENSIVE LANGUAGE DURING A LECTURE. |
| 53264 | Discipline | Five Day | 3Q00 | 8/4/2000 | CHARGED WITH SEXUAL HARASSMENT. VIOLATED POLICY S220, AND POLICY S239. |
| 53240 | Discipline | Written | 4Q99 | 8/8/2000 | SIGNED AGREEMENT TO COMPLETE NEXT BASIC TRAINING.FAILURE TO DO SO WILL RESULT IN IMMEDIATE TERMINATION. |
| 53505 | Discipline | Oral | 3Q00 | 8/9/2000 | DISRUPTIVE DURING A BRIEFING. |
| 54105 | Discipline | Five Day | 3Q00 | 8/24/2000 | OBSERVED SLEEPING IN A CASEWORKER'S OFFICE. |
| 54956 | Discipline | Written | 3Q00 | 8/24/2000 | FAILED TO REPORT ARREST TO THE SPECIAL SHERIFF |
| 53231 | Discipline | Five Day | 3Q00 | 8/25/2000 | UNPROFESSIONAL CONDUCT TOWARDS A SUPERVISOR. YOU VIOLATED POLICY S220.05(A)AND (B). THIS OCCURRED ON 7/21/2000 OUTSIDE THE INSTITUTION. |

001161

220 violations - not terminated

| ID | Type | Level | Code | Date | Comment |
|---|---|---|---|---|---|
| 54815 | Discipline | Five Day | 3Q00 | 8/29/2000 | ON AUG.20,2000 YOU WERE OBSERVED SLEEPING AT THE CONTROL   PANEL IN THE MEDICAL UNIT WHEN THE BUILDING CAPTAIN MADE   HIS ROUNDS. THE PERIMETER DOORS WERE UNSECURED. |
| 52675 | Discipline | Written | 4Q99 | 9/12/2000 | FAILED TO ATTEND TRAINING, AWOL RESCINDED. |
| 53469 | Discipline | Oral | 2Q00 | 9/19/2000 | AGREEMENT - ARGUING WITH ANOTHER STAFF MEMBER IN THE PRESENCE OF INMATES |
| 57223 | Discipline | Oral | 3Q00 | 10/6/2000 | VIOLATION OF S-220 ON AUGUST 24, 2000. |
| 56060 | Discipline | Written | 3Q00 | 10/13/2000 | ON SEPT.6,2000, YOU FAILED TO NOTIFY AN INMATE THAT HIS BROTHER HAD DIED.  ALTHOUGH YOU ATTEMPTED TO CARRY OUT THIS  ORDER BY POSTING A NOTE FOR THE CHAPLAIN. |
| 54163 | Discipline | Five Day | 4Q00 | 10/14/2000 | 10/23 AND 10/25/00 VIOLATED POLCIES S220.03. LEFT    SCREWDRIVERS IN GYM AT THE JAIL. |
| 52707 | Discipline | Written | 3Q00 | 10/20/2000 | VIOLATION OF POLICY S220.  FAILURE TO PROPERLY QUALIFY A   POTENIALY DANGEROUS INMATE |
| 55426 | Discipline | Written | 4Q00 | 10/31/2000 | VIOLATION OF POLICY S220 SECTION H PAR. ONE. |
| 53370 | Discipline | Oral | 4Q95 | 11/3/2000 | 11/22/95 |
| 53624 | Discipline | Written | 2Q00 | 11/3/2000 | |
| 56888 | Discipline | Oral | 2Q94 | 11/9/2000 | DISCIPLINE AS OF 6/29/94 |
| 56866 | Discipline | 45 Day | 4Q00 | 11/27/2000 | 45 DAY SUSPENSION STARTING 11/28/00 AS A RESULT OF A HEARING FOR DRIVING WITHOUT A LICENSE AND CHELSEA COURT APPEARANCE.VIOLATION POLICY S220.02, S220.03, S220.15(2)(1) |
| 55188 | Discipline | One Day | 4Q00 | 12/6/2000 | OCTOBER 31, 2000, FAILURE TO FILE TIMELY REPORTS AND E. SUSPENDED 12/11/00. |
| 54617 | Discipline | One Day | 4Q00 | 12/6/2000 | OCTOBER 31, 2000, FAILURE TO FILE TIMELY REPORTS AND USE  OF FORCE VIOLATIONS.  SUSPENDED 12/5/00. |
| 55898 | Discipline | One Day | 4Q00 | 12/6/2000 | OCTOBER   31,  2000,  FAILURE  TO  FILE  TIMELY  REPORTS  AND  USE  OF  FORCE  VIOLATIONS.  SUSPENDED 12/08/00. |
| 57055 | Discipline | One Day | 4Q00 | 12/6/2000 | OCTOBER 31, 2000 INCIDENT, FAILURE TO FILE TIMELY REPORTS    (S-220) AND USE OF FORCE (S-505).  SUSPENDED 12/06/00. |
| 55591 | Discipline | Written | 4Q00 | 12/6/2000 | FAILURE TO OBEY LAWFUL VERBAL OR WRITTEN ORDERS OF S    SUPERIOR (S220.12F). |
| 55327 | Discipline | Three Day | 4Q00 | 12/6/2000 | OCTOBER 31, 2000, FAILURE TO FILE TIMELY "USE OF FORCE"    REPORT, OR AN INCIDENT REPORT.  YOU VIOLATED POLICY S-220.  YOU WILL BE SUSPENDED ON DEC.15, 16, AND 17. |
| 53809 | Discipline | Oral | 4Q00 | 12/12/2000 | Violation of policy S220.04(E) |
| 55627 | Discipline | 30 Day | 4Q00 | 12/13/2000 | SUSPENSION / THIRTY WORKING DAY SUSPENSION DUE TO INCIDENT ON 10/31/00.   VIOLATION OF POLICY S220 AND S505 |
| 56426 | Discipline | Five Day | 4Q00 | 1/5/2001 | ON DECEMBER 5, 2000 YOU ADMITTED TO SMOKING IN THE BATHROOM IN THE 3-2 UNIT.  VIOLATION OF POLICIES S735.04, .05A(1) AND S220.04t AND .05A(3). |
| 53607 | Discipline | Agreement | 1Q01 | 1/12/2001 | EMPLOYEE ALLOWED TO SUBSTITUTE CREDIT TIME INSTEAD OF SICK FOR 1/22/2000(RE: JURY DUTY) |
| 76381 | Discipline | Oral | 1Q01 | 1/22/2001 | VIOLATED POLICY S220.04 H.15. & 16. ALSO L 1. & 2 ON 1/18/01 |
| 54294 | Discipline | Written | 4Q00 | 1/24/2001 | VIOLATION ON 11/14/00. VIOLATED POLICY S220, EMPLOYEE    GENERAL CONDUCT. MOTOR VEHICLE VIOLATION RESULTING IN   ARREST. REPORT MISLEADING & DATE MISSTATED. |
| 56291 | Discipline | Oral | 1Q01 | 2/4/2001 | FAILED TO LOG IN AND OUT FOR LUNCH ON 2/4/01 |
| 52736 | Discipline | Oral | 1Q01 | 2/4/2001 | ON 2/4/01 YOU FAILED TO LOG IN AND OUT FOR LUNCH |
| 54659 | Discipline | Oral | 1Q01 | 2/4/2001 | 4/2/01 FAILED TO SIGN IN AND OUT FOR LUNCH |
| 52736 | Discipline | Five Day | 4Q00 | 2/7/2001 | FAILURE TO SUBMIT TIMELY AND COMPLETED REPORTS AS REQUESTED  PERTAINING TO INCIDENT ON 11/23/00.(CONTRABAND AND    UNPROFESSIONAL BEHAVIOR). |

001162

220 violations - not terminated

| ID | Type | Level | Code | Date | Description |
|---|---|---|---|---|---|
| 52736 | Discipline | Five Day | 4Q00 | 2/8/2001 | SMOKING WITHIN THE FACILITY ON 11/23/00. ALSO, UNPROFESSIONAL BEHAVIOR TOWARDS STAFF. GRABBED A PAYCHECK FROM RECEPTIONISTS HAND ON 1/5/01. |
| 54956 | Discipline | Three Day | 1Q01 | 2/26/2001 | VIOLATED POLICY S220 ON 2/15/01 - FIRE SAFETY |
| 57056 | Discipline | Oral | 1Q01 | 2/27/2001 | ON 2/27/01 YOU VIOLATED POLICY S220 H(10) KEY CONTROL & S220 )(1) EQUIPMENT |
| 57241 | Discipline | Written | 1Q01 | 2/27/2001 | VIOLATED POLICY S220 - FAILURE TO SUPERVISE SUBORDINATES & NEGLECT/DERELICTION OF DUTY |
| 57417 | Discipline | One Day | 1Q01 | 3/2/2001 | VIOLATED POLICY S220, S220.07, S220.15(10)(C) AND S220.15 (1)(A). |
| 56515 | Discipline | 6 mos | 4Q00 | 3/7/2001 | VIOLATED POLICY S220.05(1A)CONDUCT UNBECOMING; S220.05(2B) FALSE/MISLEADING REPORTS; S220.05(11) NEGLIGENT USE, OF CTY PROPERTY; S220.05(15) NEGLECT OR DERELICTION OF DUTY. SIX MONTH SUSPENSION 1/27/01 - 7/27/01 |
| 75803 | Discipline | Written | 1Q01 | 3/9/2001 | ON 3/5/01 YOU VIOLATED POLICY S220 - NEGLECT OR DERELICTION OF DUTY |
| 50287 | Discipline | One Day | 1Q01 | 3/21/2001 | ON 2/21/01 VIOLATED POLICY S220.04K(4), S220.05A(1)(A) S220.05A(12)(D) & S220.05(12)(F). |
| 55247 | Discipline | One Day | 1Q01 | 3/21/2001 | ON 2/21/01 YOU VIOLATED POLICY S220.04K(4), S220.05A(1)(A), S220.05A(12)(D) AND S220.05(12)(F) |
| 53176 | Discipline | Two Day | 1Q01 | 3/21/2001 | ON 2/21/01 YOU VIOLATED POLICY S220.04K(4), S220.05A(1)(A), S220.05A(12)(D) AND S220.05(12)(F). |
| 56101 | Discipline | One Day | 1Q01 | 3/21/2001 | ON 2/07/01 YOU VIOLATED POLICY S220 - PROFANE & DEROGATORY LANGUAGE. |
| 76381 | Discipline | Written | 1Q01 | 3/30/2001 | VIOLATED POLICY S220.04 SECT. F.1 & .05 SECT. A&B |
| 75151 | Discipline | Three Day | 1Q01 | 3/30/2001 | POOR PERFORMANCE AND NEGLECT OF DUTY. SUSPENSION SERVED 4/6, 4/18 AND 4/19/01 |
| 53871 | Discipline | Written | 1Q01 | 4/3/2001 | VIOLATED POLICY S220.05(12)(B) & S220.05 (12)(E) ON 3/10/01 |
| 57241 | Discipline | One Day | 1Q01 | 4/3/2001 | VIOLATED POLICY S220.05(A)(2)(B) ON 3/10/01 |
| 56104 | Discipline | Written | 1Q01 | 4/5/2001 | VIOLATED POLICY S220.04 ON 3/27/01 |
| 57020 | Discipline | Written | 2Q01 | 4/12/2001 | VIOLATED POLICY 220 H (6) & 220 I (2) CONTRABAND & CONTROL - SECURITY & CUSTODY ON 4/05/01 |
| 55792 | Discipline | Written | 2Q01 | 4/12/2001 | VIOLATED POLICY 220 H(6) & 220 I(2) CONTRABAND & CONTROL - SECURITY & CUSTODY ON 4/5/01 |
| 50305 | Discipline | Oral | 2Q01 | 4/20/2001 | VIOLATION OF POLICY S220 Sec 05 and 22Y secB |
| 50305 | Discipline | Oral | 2Q01 | 4/20/2001 | VIOLATION OF POLICY 220. SECT.05 & 224 SECT. B |
| 56056 | Discipline | One Day | 2Q01 | 4/30/2001 | VIOLATED POLICY S220 ON 4/20/01, INSUBORDINATION. |
| 51277 | Discipline | Oral | 2Q01 | 4/30/2001 | VIOLATED S501.04, UNSECURED SALLYPORT/UNIT DOOR. |
| 57620 | Discipline | One Day | 2Q01 | 5/7/2001 | ON 4/23/01 VIOLATED POLICY S220.15 (10)(A) NEGLECT OR DERELICTION OF DUTY; (10)(B) INEFFICIENCY. |
| 56223 | Discipline | One Day | 1Q01 | 5/10/2001 | 3/2/01 VIOLATED POLICY S220.04K(4), S220.05A(1)(A), S220.05A(12)(B), & S220.05(12)(F) |
| 54293 | Discipline | Two Day | 1Q01 | 5/11/2001 | 3/9/01 VIOLATED POLICY S220.05(2)(B), S220.05(1)(A). |
| 53656 | Discipline | One Day | 1Q01 | 5/11/2001 | 3/2/01 VIOLATED POLICY S220.04K(4), S220.05A(1)(A), S220.05A(12)(B), & S220.05(12)(F). |
| 72886 | Discipline | One Day | 1Q01 | 5/14/2001 | 3/2/01 VIOLATED POLICY S220.04K(4), S220.05A(1)(A), S220.05A(12)(B), & S220.05(12)(F). |
| 56316 | Discipline | One Day | 1Q01 | 5/14/2001 | 2/21/01 VIOLATED POLICY S220.04E(3), S220.05A(1)(A), S220.05A(11) & S220.05(12)(B). |
| 54617 | Discipline | Suspended | 2Q01 | 5/16/2001 | INDEFINITELY WITHOUT PAY |
| 53930 | Discipline | Suspended | 2Q01 | 5/16/2001 | INDEFINITELY WITHOUT PAY. |
| 54293 | Discipline | Suspended | 2Q01 | 5/16/2001 | INDEFINITELY WITHOUT PAY. |
| 54247 | Discipline | Suspended | 2Q01 | 5/16/2001 | INDEFINITELY WITHOUT PAY. |
| 56807 | Discipline | Oral | 2Q01 | 5/29/2001 | VIOLATED DEPARTMENT'S POLICY REGARDING:SALLYPORTS. ALLOWED TWO DOORS TO BE OPENED AT THE SAME TIME. |
| 57603 | Discipline | 60 Day | 2Q01 | 6/15/2001 | VIOLATED POLICIES S220, ALSO SERVING A 60 DAY SUSPENSION AS OF MAY 25, 2001 |
| 57603 | Discipline | Demoted | 2Q01 | 6/15/2001 | VIOLATED POLICIES S220, ALSO SERVING A 60 DAY SUSPENSION AS OF MAY 25, 2001 |

001163

220 violations - not terminated

| ID | Type | Level | Qtr | Date | Comment |
|---|---|---|---|---|---|
| 53912 | Discipline | Three Day | 2Q01 | 6/20/2001 | SUBMITTAL OF 2 MILEADING OR FALSE REPORTS PERTAINING TO A COMMENT REGARDING A CLIENT AS OCC |
| 56130 | Discipline | One Day | 2Q01 | 6/20/2001 | FILING FALSE REPORTS |
| 55553 | Discipline | Three Day | 2Q01 | 6/22/2001 | FAILURE TO PROPERLY MAINTAIN TOOLS |
| 56060 | Discipline | Two Day | 2Q01 | 6/25/2001 | VIOLATION POLICY S220 FAILURE TO INFORM INMATE OF MOTHER'S DEATH |
| 54899 | Discipline | Oral | 2Q01 | 6/26/2001 | FAILED TO FOLLOW INSTRUCTION, KEEPING UNIT LIGHTS ON |
| 53775 | Discipline | Three Day | 2Q01 | 6/29/2001 | VIOLATION OF POLICY S220.04, .05 SUSPENSION TO BE SERVED IMMEDIATELY |
| 54167 | Discipline | Written | 2Q01 | 6/29/2001 | USE OF DEPARTMENT VEHICLE WITH AUTHORIZATION |
| 56716 | Discipline | Written | 2Q01 | 6/29/2001 | VIOLATED POLICY S220.04 NEGATIVE AND DEGRADING FASHION ABOUT FELLOW CO-WORKERS |
| 55762 | Discipline | Admin. Leave | 2Q01 | 7/2/2001 | UNTIL FURTHER NOTICE, ADMINISTRATIVE LEAVE WITH PAY - Ultimately suspended for 6 months |
| 53775 | Discipline | Admin. Leave | 3Q01 | 7/2/2001 | ADMINISTRATIVE LEAVE WITH PAY - Ultimately suspended for 6 months |
| 54636 | Discipline | Admin. Leave | 3Q01 | 7/2/2001 | UNTIL FURTHER NOTICE, ADMINISTRATIVE LEAVE WITH PAY |
| 57225 | Discipline | Admin. Leave | 3Q01 | 7/2/2001 | UNTIL FURTHER NOTICE, ADMINISTRATIVE LEAVE WITH PAY |
| 53156 | Discipline | Oral | 2Q01 | 7/3/2001 | ON 5/23/01 YOU WERE AWOL FOR AN HOUR |
| 54874 | Discipline | Written | 2Q01 | 7/3/2001 | ABSENT FROM POST WITHOUT AUTHORIZATION |
| 55898 | Discipline | One Day | 2Q01 | 7/5/2001 | VIOLATED POLICY S220.04(H)(19) AND 12(H). SUSPENSION TO BE SERVED 7/8/01. |
| 53304 | Discipline | Oral | 2Q01 | 7/13/2001 | ABSENT WITHOUT LEAVE FROM WORKSTATION DURING NORMAL BUSINESS HOURS |
| 75295 | Discipline | One Day | 2Q01 | 7/13/2001 | REFUSAL OF A DRAFT ON MAY 27, 2001 |
| 54656 | Discipline | Oral | 2Q01 | 7/17/2001 | LEFT ASSIGNED AREA AT 3:15, SCHEDULED TO WORK UNTIL 3:30 |
| 55247 | Discipline | One Day | 2Q01 | 7/17/2001 | ON 4/25/01 YOU VIOLATED POLICY S220.05(A)(1)(B), S220.05(A)(12)(B) |
| 55827 | Discipline | Oral | 2Q01 | 7/17/2001 | LEFT ASSIGNED AREA AT 3:15, SCHEDULED TO WORK UNTIL 3:30 |
| 56544 | Discipline | Admin. Leave | 3Q01 | 7/27/2001 | Administrative leave with pay effective immediately. Re outcome of Dept. of Justice proceedings re actions on 4/15/99. |
| 53809 | Discipline | One Day | 2Q01 | 7/30/2001 | Violation of policy S220.05(A)(b) |
| 79467 | Discipline | Oral | 2Q01 | 7/30/2001 | Violation of policies S-482 & S-220 on 6/29/01 and 7/2/01 |
| 54874 | Discipline | Oral | 3Q01 | 8/9/2001 | uniform attire and general conduct |
| 55188 | Discipline | One Day | 3Q01 | 8/10/2001 | 7/29/01 violated policy S220.05(A),8(a) |
| 53045 | Discipline | Hearing | 1Q01 | 8/13/2001 | Scheduled for 8/17/01. Violation of policy S-220,05(A)(1)(a),.05(A)(2)(b),.05(A)(12)(n), to wit:S122.05(B)(1) & (2), on 2/2/01. |
| 76381 | Discipline | One Day | 3Q01 | 8/14/2001 | 8/1/01 violated policy S220.04(H)(15) and (16); S220.05(A)(14)(a). |
| 57241 | Discipline | Admin. Leave | 3Q01 | 8/14/2001 | Administrative leave with pay effective immediately, pending investigation. - Ultimately terminated |
| 54699 | Discipline | Four Day | 3Q01 | 8/20/2001 | 4 DAY SUSPENSION FAILURE TO SUPERVISE UNIT SUSPENSED ON 8/21; 8/22; 8/23; 8/26 |
| 55967 | Discipline | Four Day | 3Q01 | 8/20/2001 | 4 DAY SUSPENSION FAILED TO PROPERLY SUPERVISE UNIT.,SUSPENSION SERVED ON 8/22; 8/23; 8/25; 8/26 |
| 53836 | Discipline | One Day | 3Q01 | 8/21/2001 | FAILED TO DO PROPER CELL INSPECTION SUSPENSION SERVED ON 9/8/01 |
| 52788 | Discipline | One Day | 3Q01 | 8/21/2001 | FAILED TO DO PROPER CELL INSPECTION SUSPENSION SERVED ON 8/28/01 |
| 76381 | Discipline | Three Day | 3Q01 | 8/22/2001 | On 8/10/01 violated policy S220.04(H)(15) and (16); S220.05(A)(14)(a).Suspension served 8/23, 8/24, and |
| 56688 | Discipline | Written | 1Q01 | 8/24/2001 | Violation of policy S122 and S220 for incident on 2/1/01. |

Page 9

001164

220 violations - not terminated

| ID | Type | Level | Code | Date | Comments |
|---|---|---|---|---|---|
| 53045 | Discipline | Demoted | 1Q01 | 8/27/2001 | 2/1/01 violated policy S22.05(A)(12)(b); S220.05(A)(1)(a); S220.05(A)(2)(b). On 6/27/01 violated policy S220.05(A)(15)(b). Demoted to corporal (JO-2) Four day suspension. |
| 54094 | Discipline | 10 Day | 1Q01 | 8/28/2001 | Suspended with pay 8/29, 8/30, 8/31, 9/01/01; without pay 9/2,9/4,9/5,9/6,9/7/01 pending hearing 9/7/01. On 2/2/01 you violated policy S220.05(A)(1)(a), .05(A)(2)(b), .05(A)(12)(d). |
| 76381 | Discipline | Admin. Leave | 3Q01 | 9/13/2001 | Administrative leave with pay pending investigation of arrest on 9/7/01. - Ultimately resigned. |
| 54636 | Discipline | 4 Month | 3Q01 | 9/14/2001 | SUSPENDED BEGINNING 9/11/01 FOR FOUR MONTHS (CALENDAR DAYS) POLICY 220: |
| 57113 | Discipline | Written | 3Q01 | 9/23/2001 | AS A RESULT OF YOUR ACTIONS IN JULY 2001. PROVIDED A REPORT AND MADE STATEMENTS THAT WERE UNCLEAR AND INCOMPLETE REPORT WHICH HAMPERED AN SID INVESTIGATION. ALSO IMPROPERLY INVOLVED AN INMATE BY HAVING HIM ATTEST TO YOUR REPORT. |
| 57625 | Discipline | Two Day | 3Q01 | 9/27/2001 | 7/13/01 violated policy S220.05(B)(a) and S220.05(12)(f) |
| 54503 | Discipline | One Day | 3Q01 | 10/3/2001 | On 9/17/01 while on suspension, you worked OT, which is against company policy. |
| 53775 | Discipline | 6 mos | 3Q01 | 10/5/2001 | Results of hearing on 9/17/01. Six month suspension, without pay, starting 9/11/01. Actions on 6/13/01 |
| 74989 | Discipline | Written | 3Q01 | 10/5/2001 | Violated policy S220.05(A)(1)(a) on 8/2/01 |
| 72886 | Discipline | Admin. Leave | 4Q01 | 10/18/2001 | Administrative leave with pay, effective imediately until outcome of investigation. |
| 54094 | Discipline | Two Day | 4Q01 | 11/2/2001 | 10/28/01 violated policy S220.05(B)(a) - insubordination. |
| 81864 | Discipline | Written | 4Q01 | 11/15/2001 | VIOLATION OF POLICY S220 |
| 54874 | Discipline | Five Day | 4Q01 | 11/20/2001 | SEXUAL HARASSMENT |
| 54833 | Discipline | One Day | 4Q01 | 11/27/2001 | 11/19/01 violated policy S220.05(15)(a) and S220.05(15)(b) |
| 56213 | Discipline | One Day | 4Q01 | 11/28/2001 | 11/14/01 violated policy S220.05(10)(b) and S220.04(E)(1 and 2). |
| 57235 | Discipline | One Day | 4Q01 | 12/4/2001 | WILLFUL DAMAGE TO COUNTY PROPERTY(Restitution required). |
| 56060 | Discipline | Admin. Leave | 4Q01 | 12/4/2001 | Effective immediately, pending outcome of investigation into your actions. |
| 53564 | Discipline | Written | 4Q01 | 12/7/2001 | On 12/4/01 you violated policy S220 (employee conduct and S501 (Security and control). |
| 56183 | Discipline | Written | 4Q01 | 12/7/2001 | On 12/04/01 you violated policy S220, Employee General Conduct and S501, Security and Control. |
| 55256 | Discipline | Written | 4Q01 | 12/13/2001 | On 12/6/01 violated policy S220 Employee General Conduct & S501 Security & Control. |
| 55709 | Discipline | Written | 4Q01 | 12/19/2001 | ENTERED UNIT 6-1 WHILE INMATES WERE OUT EVEN THOUGH YOU WERE ON LIGHT DUTY STATUS. EXERCISED POOR JUDGEMENT BY GOING INTO UNIT, ORDERING AN INMATE INTO HIS CELL AND THEN ESCORTING HIM WHEN HE REFUSED TO GO. |
| 55709 | Discipline | Written | 4Q01 | 12/19/2001 | On 10/10/01 violated policy S220.05(A)(1)(a) conduct unbecoming an officer. |
| 55827 | Discipline | Two Day | 4Q01 | 12/20/2001 | 11/8/01 and 11/28/01 violated policy S220.05 A(1)(b); S-239 (sexual harassment) and S220.05(2)(b) |
| 53431 | Discipline | One Day | 4Q01 | 12/26/2001 | INCIDENT ON 12/14/01. HANDED WEAPON TO A UNIFORMED SECURITY GUARD IN DOORWAY OF CONTROL ROOM AT SUFFOLK SUPERIOR COURT. VIOLATED POLICY S-508(05)(B)(4) AND S-220(05)A(1)(b). SUSPENDED ON 12/27/01 |
| 53183 | Discipline | One Day | 4Q01 | 12/26/2001 | ACTIONS ON 12/7/01 AND 12/11/01. ACCEPTED SUBPOENA FROM DA'S OFFICE TO PRODUCE RECORDS IN COURT ON 12/7/01, BUT CALLED IN SICK AND FAILED TO NOTIFY ANYONE ABOUT SUBPOENA. ALSO INFORMED TO TESTIFY IN COURT ON 12/11/01 AND FAILED TO SHOW OR HAVE SOMEONE T |
| 53340 | Discipline | Written | 4Q01 | 12/31/2001 | UNPROFESSIONAL CONDUCT. ON 12/11/01 YOU ENGAGED IN A DIALOGUE WHICH AGITATED INMATES WHILE WAITING FOR A GUEST SPEAKER. TOOK ANOTHER EMPLOYEE 10 MINUTES TO CALM THEM DOWN. THIS IS NOT THE FIRST TIME YOU ENGAGED IN THIS BEHAVIOR. |
| 54063 | Discipline | Oral | 4Q01 | 1/9/2002 | On 12/29/01 , 1/4/02 and 1/5/02 failed to insure that central control staff loged all supervisors in and out of units on the 10th and 11th floors in bldg. One. |

Page 10

001165

220 violations - not terminated

| ID | Type | Level | Qtr | Date | Comments |
|---|---|---|---|---|---|
| 56856 | Discipline | One Day | 4Q01 | 1/10/2002 | 10/14/01 violated policy S220 failure to investigate or report "loud banging". Failure to write report on said |
| 56060 | Discipline | Admin No Pay | 4Q01 | 1/10/2002 | Effective 1/10/02 suspended WITHOUT PAY pending outcome of hearing scheduled for 1/23/02.Agreement/ Resigned effective 3/7/02. |
| 53998 | Discipline | One Day | 4Q01 | 1/10/2002 | On 10/14/01 violated policy S220 failure to investigate and report "loud banging". Also did not write report of said incident. |
| 77441 | Discipline | 10 Day | 4Q01 | 1/15/2002 | violated policy s220 |
| 54672 | Discipline | Three Day | 4Q01 | 1/18/2002 | 12/26/01 violated policy S220.05(1)(a) Conduct unbecoming and S220.05(15)(d) Sleeping on duty |
| 52691 | Discipline | Admin No Pay | 1Q02 | 1/22/2002 | Failed drug test. |
| 77489 | Discipline | One Day | 1Q02 | 2/5/2002 | 1/12/02 violated policy S220.05(12)(f) refused to obey a direct order from a superior officer. |
| 54899 | Discipline | Admin. Leave | 1Q02 | 3/5/2002 | ADMINISTRATIVE LEAVE WITH PAY UNTIL FURTHER NOTICE |
| 82900 | Discipline | Oral | 1Q02 | 3/7/2002 | On 2/28/02 violated policy S220.(K)(1) & (3). |
| 54815 | Discipline | Two Day | 4Q01 | 3/7/2002 | 10/19/01 violated policy S220 failing to report a delay in transporting female inmate. Also failed to submit written report that same inmate suffered an injury during transporting. |
| 54441 | Discipline | Oral | 1Q02 | 3/8/2002 | LEFT UNIT WITHOUT PERMISSION. |
| 55060 | Discipline | Two Day | 4Q01 | 3/14/2002 | 10/19/01 violated policy S220 and policy S530.04(3). |
| 77496 | Discipline | Written | 1Q02 | 3/14/2002 | Violated policy S220.04 I(2);K(1). |
| 56834 | Discipline | Written | 1Q02 | 3/26/2002 | 3/24/02 violated policy S220.04(H)(1) Security and S220.05(A)(15)(a) Neglect or dereliction of |
| 53169 | Discipline | Written | 1Q02 | 4/8/2002 | 3/12/02 violated policy S220 - engaging in amusement activities during the course of your shift. |
| 55031 | Discipline | Admin Leave with pa | 2Q01 | 4/12/2002 | EFFECTIVE 4/12/02 |
| 56350 | Discipline | Three Day | 2Q01 | 4/17/2002 | Beginning 4/18/01 thru 6/4/01 violated policies S220.05(A)(a)(b) Unprofessional conduct and S220.05(A)(2)(b) submission of a misleading, incorrect or false report. |
| 53830 | Discipline | Three Day | 1Q02 | 4/19/2002 | On 3/24/02 violated policy S-220(11)(Y)(2) - neglect or dereliction of duty and S2501(II)(B)(1)(a) & (b) |
| 57113 | Discipline | Written | 1Q02 | 4/19/2002 | VIOLATION OF S220. USING CELL PHONE WITHIN INSTITUTION |
| 54849 | Discipline | Hearing | 2Q02 | 4/24/2002 | Suspended without pay until hearing 4/30/02. |
| 53168 | Discipline | Hearing | 2Q02 | 4/29/2002 | |
| 53932 | Discipline | Five Day | 1Q02 | 5/2/2002 | VIOLATION OF POLICY S220 |
| 57523 | Discipline | Five Day | 1Q02 | 5/2/2002 | VIOLATED POLICY S220 |
| 53564 | Discipline | Written | 2Q02 | 5/2/2002 | AS A RESULT OF YOUR OFFENSIVE STATEMENT MADE ON APRIL 28,2000, YOU VIOLATED POLICIES S-220 AND S-239. DISCIPLINE LEVEL CHANGED FROM 3 DAY SUSPENSION TO WRITTEN WARNING PER ARBITRATOR'S DECISION |
| 53758 | Discipline | 10 Day | 2Q02 | 5/17/2002 | VIOLATED POLICY S220 |
| 52910 | Discipline | Written | 2Q02 | 5/17/2002 | VIOLATION OF POLICY S220.05 |
| 55488 | Discipline | Written | 2Q02 | 5/17/2002 | VIOLATION OF POLICY S220.05 |
| 55784 | Discipline | One Day | 2Q02 | 5/24/2002 | LEFT FACILITY EARLY, VIOLATED POLICY S220 |
| 52745 | Discipline | Oral | 2Q02 | 5/29/2002 | FAILURE TO MAINTAIN AN UPDATED LOGBOOK |
| 54843 | Discipline | One Day | 2Q02 | 5/30/2002 | VIOLATED POLICY S220 PLACING BUMPER STICKERS ON COWORKERS VEHICLES |
| 54300 | Discipline | Five Day | 2Q02 | 5/31/2002 | VIOLATION OF POLICY S220 ACTIONS ON MAY 17, 2002 ASSAULTIVE CONDUCT AGAINST ANOTHER EMPLOYEE |
| 55808 | Discipline | Written | 2Q02 | 6/12/2002 | FAILURE TO PROPERLY DISPENSE MEDICATION AND FAILURE TO PROPERLY REMEDY THIS SITUATION. |

Page 11

001166

220 violations - not terminated

| id | Type | Level | Qtr | Date Issued | Comments |
|---|---|---|---|---|---|
| 53049 | Discipline | One Day | 2Q02 | 6/20/2002 | VIOLATED POLICY S220 |
| 54496 | Discipline | Two Day | 2Q02 | 6/20/2002 | VIOLATED POLISY S220 |
| 53182 | Discipline | One Day | 2Q02 | 7/1/2002 | VIOLATED POLICY S220 SUSPENSION TO BE SERVED 7/12/02 |
| 52776 | Discipline | One Day | 2Q02 | 7/11/2002 | VIOLATED POLICY S220 SUSPENSION TO BE SERVED 7/12/02 |
| 56822 | Discipline | One Day | 2Q02 | 7/12/2002 | VIOLATING STAFFING POLICY |
| 56868 | Discipline | Three Day | 2Q02 | 7/16/2002 | VIOLATED POLICY S220 |
| 53168 | Discipline | 90 Day | 2Q02 | 7/18/2002 | 3 MONTH SUSPENSION EFFECTIVE SINCE SUSPENSION NOTICE ON 4/29/02. RETURN TO WORK 7/29/02 |
| 53168 | Discipline | Demoted | 2Q02 | 7/18/2002 | DEMOTED TO CO-1 |
| 67066 | Discipline | Admin No Pay | 3Q02 | 7/24/2002 | SECOND VIOLATION OF DRUG POLICY. ADMIN LEAVE WITHOUT PAY PENDING RESULT OF SAFETY-NET TEST. |
| 74604 | Discipline | 90 Day | 3Q02 | 8/4/2002 | Agreement - Suspended from 4/26/02 to 7/26/02 for your actions relative to incident on 10/29/01 in the 3-1 unit at HOC. Failure to report significant incident, conduct unbecoming an officer, and submission of a false or misleading report. |
| 52736 | Discipline | Two Day | 3Q02 | 8/6/2002 | USE OF CELL PHONE IN INSTITUTION |
| 54503 | Discipline | 20 Day | 3Q02 | 8/6/2002 | AGREEMENT - SLEEPING ON DUTY WHILE GUARDING AN INMATE AT BETH ISRAEL DEACONESS HOSPITAL ON 11-7 SHIFT ON JUNE 26 AND JUNE 22, 2002. SUSPENDED 8/7 - 9/1. |
| 53656 | Discipline | Hearing | 3Q02 | 8/6/2002 | SUSPENDED PENDING A HEARING ON 8/13/02. SLEEPING ON DUTY WHILE GUARDING AN INMATE AT BETH ISRAEL DEACONESS HOSPITAL ON 11-7 SHIFT ON 6/27/02. |
| 56339 | Discipline | Written | 3Q02 | 8/27/2002 | ABSENCE WITHOUT AUTHORIZATION FROM WORK. TOOK VACATION WEEK EVEN THOUGH YOU HAD NO VACATION TIME ON THE BOOKS DUE TO FMLA LEAVE. |
| 52735 | Discipline | Written | 3Q02 | 8/29/2002 | ON 8/20/02 YOU FAILED TO ENSURE THAT ONE GATE AT THE VEHICLE TRAP WAS SECURED BEFORE OPENING THE SECOND GATE. BREACH OF SECURITY. |
| 77292 | Discipline | One Day | 3Q02 | 9/5/2002 | ON AUGUST 30, 2002, YOU WERE OBSERVED READING A NEWSPAPER WHILE ON DUTY IN THE 2-3 UNIT. VIOLATED POLICY S-220 J(4)(A). |
| 54441 | Discipline | One Day | 3Q02 | 9/6/2002 | UNPROFESSIONAL CONDUCT. YOU DIRECTED PROFANITY TOWARDS AN INMATE IN A UNIT WHO WAS ALREADY VISIBLY AGITATED, THEREBY CONTRIBUTING TO AN EXTREMELY VOLATILE SITUATION. SUSPENDED 9/9/02. |
| 80445 | Discipline | Admin Leave with pay | 3Q02 | 9/11/2002 | PLACED ON ADMINISTRATIVE LEAVE WITH PAY UNTIL FURTHER NOTICE PENDING THE OUTCOME OF A DEPARTMENTAL INVESTIGATION INTO YOUR RECENT INVOLVEMENT ON 9/10/02 AND THE CRIMINAL CHARGES PENDING AGAINST YOU. |
| 56477 | Discipline | Admin No Pay | 3Q02 | 9/13/2002 | VIOLATION OF DRUG TESTING POLICY PENDING RESULTS OF SAFETY NET TEST |
| 55199 | Discipline | Three Day | 3Q02 | 9/16/2002 | INSUBORDINATION TO A SUPERIOR OFFICE, FAILURE TO RETURN TO INFIRMARY FRONT DESK, INCOMPLETE MAINTENANCE OF LOGBOOK AND LACK OF ROUNDS DURING SHIFT. |
| 80445 | Discipline | Admin No Pay | 3Q02 | 9/30/2002 | ADMINISTRATIVE LEAVE WITHOUT PAY PENDING THE OUTCOME OF YOUR CRIMINAL CASE. |
| 54874 | Discipline | Three Day | 2Q02 | 10/2/2002 | VIOLATION OF S-220. ON 4/18/02 YOU TESTIFIED AT A PAROLE BOARD HEARING FOR A STATE INMATE. YOU GAVE TESTIMONY AT THIS HEARING IN FULL UNIFORM AND LEFT YOUR ASSIGNED SHIFT FALSELY CLAIMING TO BE SICK TO DO SO. |
| 53304 | Discipline | One Day | 4Q02 | 10/4/2002 | ABUSE OF FMLA AND VIOLATION OF POLICY S220. ABSENCE ON 9/18/02 WAS APPROVED UNDER FMLA, BUT YOU ENGAGED IN NON-APPROVED ACTIVITY THAT DAY. ALSO FAILURE TO COMPLETE ASSIGNMENTS AND FILE RECORDS APPROPRIATELY. |

001167

-220 violations - not terminated

| ID | Type | Level | | Date | Description |
|---|---|---|---|---|---|
| 56557 | Discipline | Three Day | 3Q02 | 10/4/2002 | UNACCEPTABLE BEHAVIOR TOWARD DEPARTMENT EMPLOYEES |
| 54874 | Discipline | Written | 4Q02 | 10/9/2002 | VIOLATION OF S-220. ON 10/9/02 YOU INTRODUCED FOOD ITEMS THROUGH THE SALLYPORT AREA. YOU WERE ALSO RELIEVED OF DUTY FOR 4 HOURS WITHOUT PAY. |
| 53502 | Discipline | Written | 3Q02 | 10/16/2002 | MISSING KEYS |
| 54874 | Discipline | Admin with pay | 3Q02 | 10/16/2002 | |
| 56544 | Discipline | admin leave | 3Q02 | 10/21/2002 | Administrative leave without pay pending outcome of your criminal case |
| 54294 | Discipline | Admin No Pay | 4Q02 | 10/23/2002 | PENDING RESOLUTION OF CRIMINAL PROCEEDINGS |
| 52745 | Discipline | Oral | 4Q02 | 10/27/2002 | FAILURE TO MAINTAIN UNIT LOGBOOK |
| 56504 | Discipline | Oral | 4Q02 | 10/27/2002 | FAILURE TO MAINTAIN UNIT LOGBOOK |
| 52781 | Discipline | 30 Day | 4Q02 | 10/30/2002 | VIOLATION OF POLICY S220, ABANDONMENT OF POST |
| 57035 | Discipline | Written | 4Q02 | 11/5/2002 | FAILURE TO CONDUCT AN OVERCROWDING SESSION |
| 57366 | Discipline | One Day | 4Q02 | 11/8/2002 | ON 11/3/02, YOU REFUSED A DRAFT TO WORK THE 7-3 SHIFT, WHICH IS A VIOLATION OF S220.05 (8)(a). |
| 57366 | Discipline | One Day | 4Q02 | 11/8/2002 | VIOLATION OF S220 |
| 55812 | Discipline | One Day | 4Q02 | 11/8/2002 | REFUSED A DRAFT ON 11/3/02 |
| 56504 | Discipline | Admin No Pay | 4Q02 | 11/15/2002 | ADMIN NO PAY EFFECTIVE IMMEDIATELY. |
| 55278 | Discipline | Hearing | 4Q02 | 11/18/2002 | SUSPENDED PENDING DEPT HEARING AS A RESULT OF A CRIMINAL COMPLAINT LODGED AGAINST YOU FOR THREATS, SUBMITTING A FALSE REPORT TO SID AND DATING A FORMER INMATE. HEARING SCHEDULED FOR 11/22/02. |
| 54509 | Discipline | Admin No Pay | 4Q02 | 11/20/2002 | FAILED ANNUAL DRUG TEST |
| 83478 | Discipline | Oral | 4Q02 | 11/23/2002 | VIOLATED POLICY S220 EMPLOYEE GENERAL CONDUCT. |
| 55478 | Discipline | Admin with pay | 4Q02 | 11/27/2002 | UNTIL FURTHER NOTICE |
| 52897 | Discipline | Written | 4Q01 | 12/4/2002 | On 12/4/01 violated policy S220.04(H)(14) and S220.05(A)(12)(h) |
| 57598 | Discipline | Five Day | 4Q02 | 12/5/2002 | INTRODUCING CONTRABAND (A METAL FORK) INTO AN INMATE HOUSING UNIT. SUSPENSION TO BE SERVED 12/9, 12/10, 12/13, 12/14 &12/15 |
| 53362 | Discipline | Admin with pay | 4Q02 | 12/5/2002 | ADMINISTRATIVE LEAVE WITH PAY UNTIL FURTHER NOTICE |
| 54834 | Discipline | Admin with pay | 4Q02 | 12/5/2002 | ADMINISTRATIVE LEAVE WITH PAY UNTIL FURTHER NOTICE FROM DEPARTMENT |
| 55736 | Discipline | Oral | 4Q02 | 12/16/2002 | FAILURE TO LOG A FIREARM INTO THE HOC ARMORY ON 12/4/02. VIOLATION POLICY S508. |
| 56827 | Discipline | Admin with pay | 4Q02 | 12/19/2002 | EFFECTIVE IMMEDIATELY. |
| 57582 | Discipline | 30 Day | | 12/20/2002 | On 12/4/02 YOU WERE ASSIGNED AS THE TRAP CONTROL OFFICER. DURING INSPECTION OF FOOT LOCKER REVEALED UNIFORMS, GYM BAG AND PORNOGRAPHIC MATERIALS WHICH YOU CLAIMED OWNERSHIP. YOU ALSO HAD A KNIFE INSIDE SECURE PERIMETER. |
| 53362 | Discipline | 30 Day | 4Q02 | 12/23/2002 | AGREEMENT FROM HEARING HELD ON 12/20/02. VIOLATION OF POLICIES S-220 AND S-508. LEFT A LOADED .38 CALIBER WEAPON UNSECURED INSIDE A DESK DRAWER. ALSO OBSERVED OPENING BOTH SALLYPORT GATES AT THE SAME TIME AND ALLOWING MULTIPLE VEHICLES IN THE AREA AT T |
| 54834 | Discipline | 90 Day | 1Q03 | 1/6/2003 | HEARING SCHEDULED FOR JANUARY 10, 2003 |
| 55278 | Discipline | 60 Day | 1Q03 | 1/10/2003 | AGREEMENT - ACCEPTS SUSPENSION FROM 11/18/02 TO 1/10/03 AND AGREES TO TERMINATE INTIMATE RELATIONSHIP WITH FORMER INMATE |
| 81855 | Discipline | Hearing | 1Q03 | 1/17/2003 | Suspended without pay pending hearing 1/24/03. (RESIGNED EFFECTIVE 1/22/03) Violated policy S220.1-A-1; S220.J-5-b; S220II-N-1; and S220 II-R. |

001168

220 violations - not terminated

| ID | Type | Level | Qtr | Date Received | Comment |
|---|---|---|---|---|---|
| 55023 | Discipline | Suspended | 4Q02 | 1/21/2003 | FAILED DRUG TEST |
| 56888 | Discipline | Two Day | 1Q03 | 1/22/2003 | AGREEMENT - INTRODUCED CONTRABAND (UNAUTHORIZED FOOD ITEMS) INTO 1-11-2 UNIT, FAILED TO PROPERLY MAINTAIN UNIT LOG BOOK, AND ALLOWED CERTAIN INMATES TO REMAIN OUT OF THEIR CELLS FOR UNAUTHORIZED PURPOSES. |
| 52736 | Discipline | Five Day | 1Q03 | 1/22/2003 | AGREEMENT - SUSPENDED FOR INTRODUCING CONTRABAND (UNAUTHORIZED FOOD ITEMS) INTO 1-11-2 AND PROVIDING THEM TO INMATES, AND FOR FAILURE TO PROPERLY SUPERVISE AS A SUBORDINATE OFFICER INAPPROPRIATELY ALLOWED INMATES OUT OF THEIR CELLS DURING THE 11-7 SHIFT |
| 50622 | Discipline | Written | 1Q03 | 1/24/2003 | Insubordination and poor performance. |
| 75462 | Discipline | Hearing | 1Q03 | 1/24/2003 | SUSPENSION AND HEARING ON 1/29/03 (EMPLOYEE RESIGNED ON 1/28/03 TO AVOID HEARING) |
| 53545 | Discipline | Written | 1Q03 | 1/28/2003 | FAILURE TO PROVIDE WRITTEN REPORT ON THE USE OF K-9 |
| 56098 | Discipline | One Day | 4Q02 | 1/29/2003 | Violated policy S220.6.L1 sec.A,B & L5, failure to report in a timely manner to supervison on 10/6/02. |
| 76222 | Discipline | Written | 4Q02 | 1/29/2003 | Violated policy S220.6.6-1 Sec. C failure to maintain log book on 10/6/02. |
| 53527 | Discipline | Admin No Pay | 1Q03 | 1/29/2003 | PENDING RESOLUTION OF CRIMINAL PROCEEDINGS |
| 55785 | Discipline | Written | 4Q02 | 1/29/2003 | Violated policy S220.6.L1 sec.A,B & L.S.  Failure to report in a timely manner to supervisor,, 10/6/02. |
| 55755 | Discipline | Three. Day | 1q03 | 1/30/2003 | DIRECTED PROFANITY AND VULGARITY TOWARDS A SUPERIOR |
| 53527 | Discipline | Agreement | 1Q03 | 2/25/2003 | AGREE TO RETURN TO WORK PENDING A FINAL DISPOSITION OF HER CRIMINAL CASE |
| 55199 | Discipline | Oral | 1Q03 | 2/26/2003 | FAILING TO SUPERVISE |
| 55707 | Discipline | Five Day | 1Q03 | 2/28/2003 | SUSPENDED 3/10 THROUGH 3/14 ABANDONED POST |
| 54456 | Discipline | Written | 1Q03 | 3/5/2003 | VIOLATION OF POLICY S220 |
| 55896 | Discipline | Written | 1Q03 | 3/5/2003 | ON THURSDAY, FEBRUARY 27, 2003, YOU ISSUED OC PEPPER AGENT WHICH ENTERED THE SECURE PERIMETER WITHOUT NOTIFYING SHIFT COMMANDER OR GETTING HIS APPROVAL. |
| 57020 | Discipline | One Day | 1Q03 | 3/7/2003 | INTRODUCING CONTRABAND (CIGARETTES) ONE DAY SUSPENSION |
| 54007 | Discipline | Admin with pay | 1Q03 | 3/7/2003 | DEPUTY SHERIFF STATUS HAS BEEN RESCINDED |
| 55385 | Discipline | Oral | 1Q03 | 3/10/2003 | FAILURE TO PERFORM DUTIES AS BOOKING OFFICER |
| 52759 | Discipline | Written | 1Q03 | 3/10/2003 | FAILURE TO PERFORM DUTIES AS SUPERVISOR |
| 54833 | Discipline | Written | 1Q03 | 3/10/2003 | FAILURE TO PERFORM DUTIES AS SUPERVISOR |
| 85789 | Discipline | Written | 1Q03 | 3/14/2003 | FAILURE TO ATTEND TRAINING |
| 55219 | Discipline | Written | 1Q03 | 3/18/2003 | S220 |
| 53103 | Discipline | Admin with pay | 1Q03 | 3/18/2003 | |
| 55310 | Discipline | Oral | 1Q03 | 3/18/2003 | S220 |
| 83096 | Discipline | Written | 1Q03 | 3/20/2003 | VIOLATED POLICY S220 ON 3/18/03. |
| 50161 | Discipline | Admin with pay | 1Q03 | 3/21/2003 | |
| 54441 | Discipline | Written | 1Q03 | 3/26/2003 | FAILURE TO CONDUCT OFFICE HOURS AND FAILING TO CONTACT SUPERVISOR REQUESTING TO FOREGO OFFICE HOURS.  ALSO FAILED TO ADHERE TO DIRECTIVES AND PROCEDURES  FOR TAKING BREAKS BY TAKING ADDITIONAL BREAK ON 3/10/03 |
| 53696 | Discipline | Admin with pay | 2Q03 | 4/3/2003 | ADMINISTRATIVE LEAVE WITH PAY PENDING REVIEW OF THE COURT TRANSCRIPT FROM TRIAL. |
| 54617 | Discipline | Admin with pay | 2Q03 | 4/3/2003 | ADMINISTRATIVE LEAVE WITH PAY PENDING REVIEW OF THE COURT TRANSCRIPT FROM TRIAL. |

Page 14

220 violations - not terminated

| ID | Type | Level | Qtr | Date Received | Comment |
|---|---|---|---|---|---|
| 56837 | Discipline | Hearing | 2Q03 | 4/7/2003 | ON MARCH 19, 2003 YOUR RESPONSE TO CAPT HARLAND'S LOG-BOOK INQUIRIES WERE INSUBORDINATE AND PROFANE. YOU ALSO LEFT THE BUILDING INSTEAD OF REPORTING TO CENTRAL CONTROL, THEREBY FAILING TO COMPLETE YOUR SHIFT. VIOLATION OF UNIT LOGS, CONDUCT UNBECOMING, |
| 50161 | Discipline | Hearing | 1Q03 | 4/9/2003 | DISTRIBUTING HEROIN AND MARIJUANA |
| 53527 | Discipline | 10 Day | 2Q03 | 4/11/2003 | VIOLATING AGREEMENT |
| 54003 | Discipline | Three Day | 1Q03 | 4/12/2003 | NEGLIGENT IN YOUR DUTY |
| 82923 | Discipline | Written | 1Q03 | 4/17/2003 | VIOLATEION OF POLICY S220 |
| 52950 | Discipline | Written | 1Q03 | 4/18/2003 | NEGLECT/DERELICTION OF DUTY |
| 56253 | Discipline | Written | 1Q03 | 4/19/2003 | S220 CONDUCT UNBECOMING |
| 54007 | Discipline | Admin_No Pay | 1Q03 | 4/22/2003 | HEARING SCHEDULED FOR 5/2/03 |
| 55496 | Discipline | Five Day | 1Q03 | 4/29/2003 | INVOLVEMENT WITH MALDEN DISTRICT COURT |
| 56837 | Discipline | 20 Day | 2Q03 | 4/30/2003 | CONDUCT UNBECOMING |
| 55563 | Discipline | Written | 2Q03 | 5/1/2003 | USE OFF FORCE |
| 74604 | Discipline | Written | 2Q03 | 5/20/2003 | UNSECURE DOOR 5/11/2003 |
| 54503 | Discipline | AGREEMENT | 2Q03 | 5/22/2003 | 3 DAY SUSPENSION 5/24, 5/25 & 6/3 |
| 53274 | Discipline | Written | 2Q03 | 5/22/2003 | GIVING HALLMARK CARDS TO AN INMATE |
| 54956 | Discipline | One Day | 2Q03 | 5/23/2003 | VIOLATED S220 ONE DAY SUSPENSION |
| 53207 | Discipline | Three Day | 2Q03 | 5/30/2003 | REFUSED DRAFT SUSPENSION TO BE SERVED 5/30, 5/31, 6/1 |
| 54119 | Discipline | Oral | 2Q03 | 6/1/2003 | |
| 53505 | Discipline | One Day | 2Q03 | 6/18/2003 | HIRING OVERTIME |
| 53412 | Discipline | One Day | 2Q03 | 6/19/2003 | ON 6/10/03, YOU VIOLATED POLICIES S220 AND S500 WHEN YOU PURPOSELY DISREGARDED SERGEANT VARGAS'S ORDER AND CONDUCTED THE 3PM INMATE COUNT EARLY. YOU WERE ALSO DISRESPECTFUL TOWARDS HIM. SUSPENSION WILL BE SERVED ON 6/21/03. |
| 57366 | DISCIPLINE | 15 Day | 2Q03 | 7/10/2003 | OPENLY DISRESPECTFUL TO TWO SHIFT COMMANDERS |
| 55497 | DISCIPLINE | Admin with pay | 3Q03 | 7/17/2003 | |
| 53674 | DISCIPLINE | One Day | 2Q03 | 7/24/2003 | REFUSED A DRAFT ON 7/19/03 |
| 54617 | DISCIPLINE | Hearing | 2Q03 | 7/28/2003 | VIOLATING POLICY S220 |
| 52808 | DISCIPLINE | Written | 3Q03 | 8/15/2003 | ON JUNE 29, 2003 YOU LEFT YOU POST IN THE 2-3/2-4 CONTROL BOOTH TO RESPOND TO AN AN ALL AVAILABLE ALARM WHILE SOME OF THE INMATES WERE STILL OUT OF THEIR CELLS. |
| 54010 | DISCIPLINE | Five Day | 3Q03 | 8/20/2003 | DISREPECT TO SUPERIORS |
| 54010 | DISCIPLINE | Five Day | 3Q03 | 8/20/2003 | POSSESSION OF CELL PHONE |
| 54621 | DISCIPLINE | Oral | 3Q03 | 8/25/2003 | YOU LEFT YOUR POST IN THE 4-1 CONTROL BOOTH |
| 52753 | DISCIPLINE | Hearing | 3Q03 | 9/5/2003 | SUSPENDED PENDING DISCIPLINARY HEARING FOR ACTIONS AT THE BACK GATE ON 7/29/03. YOU ALLOWED UNAUTHORIZED ENTRANCE INTO INSTITUTION, FAILED TO PROPERLY CLEAR INDIVIDUAL, SUBMITTED FALSE REPORTS, ABONDONED YOUR POST AND POSSESSED AN UNAUTHORIZED CELL PHONE |
| 57366 | DISCIPLINE | Three Day | 3Q03 | 9/10/2003 | refusing a draft |
| 55363 | DISCIPLINE | Five Day | 3Q03 | 9/19/2003 | smoking cigarettes |
| 52950 | DISCIPLINE | One Day | 3Q03 | 9/25/2003 | curdled eggs |

Page 15

001170

220 violations - not terminated

| ID | Type | Level | Qtr | Date | Description |
|---|---|---|---|---|---|
| 81864 | DISCIPLINE | Oral | 3Q03 | 9/25/2003 | severe shortage of manicotti |
| 90360 | DISCIPLINE | One Day | 3Q03 | 9/25/2003 | |
| 52753 | DISCIPLINE | Suspended | 3Q03 | 9/26/2003 | 90 DAY SUSPENSION |
| 55311 | DISCIPLINE | Five Day | 4Q03 | 10/8/2003 | fighting in lot b |
| 55734 | DISCIPLINE | Five Day | 4Q03 | 10/8/2003 | fighting in lot b |
| 56503 | DISCIPLINE | Admin with pay | 3Q03 | 10/21/2003 | |
| 50666 | DISCIPLINE | Oral | 4Q03 | 11/1/2003 | SHIRT TIE UNBUTTONED |
| 54010 | DISCIPLINE | Hearing | 4Q03 | 11/6/2003 | HEARING SCHEDULED FOR 11/13/03 |
| 51483 | DISCIPLINE | One Day | 4Q03 | 11/10/2003 | POSSESION OF CELL PHONE |
| 53758 | DISCIPLINE | One Day | 4Q03 | 11/14/2003 | VIOLATION OF POLICY S-220   YOU BROUGHT A SPEED LOADER AND SIX ROUNDS OF AMMUNITION INTO THE SECURE PERIMETER |
| 56665 | DISCIPLINE | One Day | 4Q03 | 11/17/2003 | LEAVING ASSIGNED POST |
| 55642 | DISCIPLINE | Oral | 4Q03 | 11/17/2003 | FAILURE TO OBEY LAWFUL ORDER OF SUPERIOR |
| 53016 | DISCIPLINE | One Day | 4Q03 | 11/20/2003 | FAILING TO REPORT LOST KEY |
| 54167 | DISCIPLINE | One Day | 4Q03 | 11/20/2003 | FAILURE TO REPORT LOST KEY |
| 55767 | DISCIPLINE | One Day | 4Q03 | 11/20/2003 | DID NOT REPORT A LOST KEY |
| 83394 | DISCIPLINE | One Day | 4Q03 | 11/20/2003 | FAILURE TO REPORT LOST KEY |
| 12212 | DISCIPLINE | Five Day | 4Q03 | 11/22/2003 | YOU BROUGHT A CELL PHONE INTO THE FACILITY |
| 84322 | DISCIPLINE | Hearing | 4Q03 | 11/26/2003 | VIOLATION OF POLICY S220 & S501 |
| 55834 | DISCIPLINE | Five Day | 4Q03 | 12/19/2003 | ALLOWING INMATE TO ESCAPE |
| 54441 | DISCIPLINE | Written | 4Q03 | 12/19/2003 | FAILING TO SUBMIT DETAILED REPORT |
| 55184 | DISCIPLINE | Oral | 4Q03 | 12/29/2003 | CHANGING THE INSTITUTIONAL CLOCK WITHOUT AUTHORITY |
| 55189 | DISCIPLINE | 10 Day | 1Q04 | 1/2/2004 | AGREEMENT.  SLEEPING ON DUTY ON DECEMBER 5, 2003. |
| 57493 | DISCIPLINE | Hearing | 1Q04 | 1/12/2004 | |
| 77421 | Discipline | Oral | 1Q04 | 1/12/2004 | SALLYPORT DOORS WERE NOT SECURED |
| 55007 | DISCIPLINE | Oral | 4Q03 | 1/16/2004 | FAILURE TO FOLLOW CHAIN OF COMMAND |
| 55558 | DISCIPLINE | 20 Day | 1Q04 | 1/22/2004 | SUSPENDED FOR ACTIONS ON 10/7/03 IN THE 4-2 UNIT.  YOU SUBMITTED A FALSE REPORT WHICH COULD HAVE LED TO ERRONEOUS DISCIPLINE AND POSSIBLE CRIMINAL CHARGES AGAINST A DETAINEE. |
| 55558 | Discipline | 20 Day | 1Q04 | 1/22/2004 | ACTIONS ON 10/7/03, AND SUBMITTING A FALSE REPORT |
| 54834 | DISCIPLINE | Oral | 1Q04 | 1/28/2004 | CHANGIN INSTITUTIONAL SCHEDULE WITHOUT AUTHORITY |
| 83794 | DISCIPLINE | Written | 1Q04 | 1/29/2004 | ALTERCATION OUTSIDE OF WORK ON 1/5/04 WHICH INVOLVED INJURY TO YOURSELF AND ANOTHER PARTY, POLICE BEING CALLED AND POLICE REPORTS BEING FILED.  ALSO FILED MISLEADING AND INACCURATE REPORT ON INCIDENT. |
| 53791 | DISCIPLINE | 10 Day | 1Q04 | 2/2/2004 | AGREEMENT.  10 DAY SUSPENSION AND PROBATION FOR 2 YEARS.  EMPLOYEE OBTAINED INMATES INFORMATION AND RELEASED IT TO HIS BROTHER-IN-LAW. |
| 56657 | DISCIPLINE | 45 Day | 4Q03 | 2/2/2004 | YOU FAILED TO ROUTINELY PATROL YOUR BUILDING THROUGHOUT YOUR SHIFT ON 11/26/03.  ALSO FAILED TO ENSURE SERGEANT ALSO MADE FREQUENT VISITS.  YOU ARE HEREBY SUSPENDED FROM 12/15/03 - 1/25/04. |
| 57493 | DISCIPLINE | 45 Day | 1Q04 | 2/6/2004 | |

001171

220 violations - not terminated

| ID | Type | Level | Qtr | Date Received | Comments |
|---|---|---|---|---|---|
| 55563 | Discipline | 25 DAY | 1Q04 | 2/7/2004 | |
| 54994 | DISCIPLINE | Hearing | 1Q04 | 2/10/2004 | ACTIONS ON 11/26/03 AND 1/17/04. FAILURE TO SUPERVISE SUBORDINATES AND NEGLECT OR DERELICTION OF DUTY. |
| 56467 | Discipline | Three Day | 2Q04 | 3/1/2004 | IMPROPERLY ALLOWING AN INMATE TO GO OUT TO REC WITHOUT RESTRAINTS |
| 54994 | Discipline | 15 Day | 1Q04 | 3/2/2004 | |
| 56856 | Discipline | 15 Day | 2Q04 | 4/26/2004 | |
| 55199 | Discipline | One Day | 2Q04 | 4/28/2004 | |
| 52965 | Discipline | Five Day | 2Q04 | 4/30/2004 | |
| 56888 | Discipline | Five Day | 2Q04 | 4/30/2004 | |
| 57146 | Discipline | One Day | 2Q04 | 5/4/2004 | FAILURE TO FOLLOW A LAWFUL ORDER |
| 85772 | Discipline | Three Day | 2Q04 | 5/16/2004 | POSSESSION OF A CELL PHONE, DVD PLAYER AND TWO MOVIES |
| 55215 | Discipline | Oral | 2Q04 | 5/19/2004 | INMATES' ROOMS WERE NOT IN ORDER |
| 55471 | Discipline | Oral | 2Q04 | 5/19/2004 | INMATES' ROOMS WERE NOT IN ORDER |
| 56515 | Discipline | Five Day | 2Q04 | 5/21/2004 | UNAUTHORIZED USE OF A LAPTOP |
| 76113 | Discipline | One Day | 2Q04 | 6/15/2004 | FAILURE TO REMOVE CAR FROM RAMP |
| 56467 | Discipline | One Day | 2Q04 | 6/16/2004 | USE OF CELL PHONE IN FACILITY |
| 54802 | Discipline | One Day | 3Q04 | 7/1/2004 | REFUSING A DRAFT |
| 57010 | Discipline | Written | 3Q04 | 7/8/2004 | ALLOWED OFFICERS TO ENTER THE REAR GATE |
| 56972 | Discipline | Written | 3Q04 | 7/12/2004 | FAILURE TO PERFORM INVENTORY OF SUPPLY CLOSET |
| 52736 | Discipline | Demoted | 3Q04 | 8/17/2004 | |
| 54685 | Discipline | Five Day | 3Q04 | 9/15/2004 | |
| 77292 | Discipline | Five Day | 3Q04 | 9/15/2004 | |
| 83793 | Discipline | One Day | 3Q04 | 10/2/2004 | |
| 56625 | Discipline | Written | 4Q04 | 10/8/2004 | FAILURE TO USE PROPER DISCRETION IN DISPUTE WITH MEDICAL STAFF EMPLOYEE |
| 83079 | Discipline | Written | 3Q04 | 10/12/2004 | SALLYPORT DOORS UNSECURED |
| 55898 | Discipline | Three Day | 3Q04 | 10/18/2004 | FAILURE TO PAT DOWN INMATE WHO HAD A KNIFE ON HIM |
| 52680 | Discipline | Five Day | 3Q04 | 10/18/2004 | ALLOWED A KITCHEN WORKER TO BORROW POCKET KNIFE |
| 56212 | Discipline | Two Day | 4Q04 | 10/21/2004 | FAILURE TO PROPERLY AND EXPEDIENTLY ACCESS AN INMATE'S CONDITION THAT THREATENED HIS LIFE |
| 83146 | Discipline | One Day | 4Q04 | 10/26/2004 | |
| 54063 | Discipline | One Day | 4Q04 | 11/5/2004 | REFUSING A DRAFT |
| 57080 | Discipline | 10 Day | 4Q04 | 12/7/2004 | AGREEMENT |
| 53590 | Discipline | 10 Day | 4Q04 | 12/21/2004 | |
| 54541 | Discipline | Written | 1Q05 | 1/18/2005 | |
| 52949 | Discipline | Three Day | 1Q05 | 1/19/2005 | |
| 53627 | Discipline | Three Day | 1Q05 | 1/25/2005 | |
| 67615 | Discipline | Written | 1Q05 | 1/28/2005 | WEARING A HAT IN THE FACILITY |
| 56665 | Discipline | One Day | 1Q05 | 2/1/2005 | |
| 92268 | Discipline | One Day | 1Q05 | 2/1/2005 | |

001172

220 violations - not terminated

| ID | Type | Level | Quar | Date Received | Comment |
|---|---|---|---|---|---|
| 93826 | Discipline | One Day | 1Q05 | 2/1/2005 | FAILURE TO PERFORM A COUNT OF DETAINEES BEING TRANSPORTED BACK TO UNIT |
| 83098 | Discipline | One Day | 1Q05 | 2/1/2005 | |
| 55043 | Discipline | 15 Day | 1Q04 | 2/9/2005 | PROVIDING SYSTEM ACCESS TO UNAUTHORIZED EMPLOYEE |
| 53770 | Discipline | One Day | 1Q05 | 2/15/2005 | FAILURE TO PASS ON INFORMATION REGARDING AN INMATE |
| 53191 | Discipline | One Day | 1Q05 | 2/16/2005 | BROUGHT CELL PHONE INTO FACILITY |
| 55956 | Discipline | Written | 1Q05 | 2/22/2005 | DISRESPECT TO A DEPARTMENT EMPLOYEE |
| 74602 | Discipline | Oral | 1Q05 | 3/6/2005 | FAILURE TO MAINTAIN LOG BOOK |
| 56594 | Discipline | One Day | 1Q05 | 3/8/2005 | IMPROPER USE OF E-MAIL AND INMATE TRACKING SYSTEM |
| 56594 | Discipline | Three Day | 1Q05 | 3/8/2005 | UNPROFESSIONAL CONDUCT AND DISRESPECT TOWARDS A SUPERVISOR |
| 80447 | Discipline | AGREEMENT | 1Q05 | 3/21/2005 | RESTITUTION ON DETAIL BOX |
| 52948 | Discipline | Two Day | 1Q05 | 3/25/2005 | INSUBORDINATION |
| 56817 | Discipline | Written | 1Q05 | 3/25/2005 | FAILURE TO PROPERLY SUPERVISE SUBORDINATES |
| 77309 | Discipline | Five Day | 2Q05 | 4/13/2005 | UNAUTHORIZED USE OF CELL PHONE IN FACILITY |
| 53986 | DISCIPLINE | One Day | 1Q05 | 5/3/2005 | OBSERVED CO-WORKER SLEEPING |

Page 18

001173

# EXHIBIT 23

*File*

**Suffolk County Sheriff's Department**
**Custody Assessment and**
**Program Services Division**
**20 Bradston Street**
**Boston, MA 02118**
**617-635-1000 x6502**

# Memo

**To:**    Front Lobby

**From:** Mary Ellen Mastrorilli, Deputy Superintendent

**Date:** 2/26/2003

**Re:**    Barred from Entering the Facility

---

CMS employee Nurse Chuck Theall is no longer allowed into the facility. If
he attempts to enter, please consider his actions trespassing and follow
standing operating procedures governing such circumstances. Thank you.

CC:    Special Sheriff Bradley
       Deputy Supt. Lockhart
       SID
       Shift Commanders
       Anne Rabbit, Assistant Health Services Director

000762



*F.le*

# *Suffolk County  Sheriff's Department*

| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**



**To:**   Mary Ellen Mastrorilli, Deputy Superintendent

**From:**  Vincent A. Morrison, Assistant Deputy Superintendent

**Date:**  February 26, 2003

**Re:**    Nurse Chuck Theall

Mam,

On Tuesday, February 25, 2003, at 1510 hours, I did report to the front lobby to interview nurse Chuck Theall. I then introduced myself, and summoned nurse Theall to an area over by the lockers where there were no people. I informed Mr. Theall that I had heard that he had been in possession of a "stun gun" inside the Institution, up in the Infirmary to be exact. I then asked him if he had brought a "stun gun" into the Institution. His answer was "no". I then asked him if he owned a "stun gun". His reply was "yes I do". I then asked him if he was using a locker in the front lobby, and he informed that he was using one. I asked him if he minded opening his locker for me, and he stated he didn't mind and opened it. There was no "stun gun" in there. I then advised Mr. Theall that I was taking him at his word that he had not introduced a "stun gun" into the Institution, but that this matter would be further investigated. Mr. Theall was then authorized by me to report to work in Medical.

Respectfully submitted,

*Vincent A. Morrison*

Cc: Viktor Theiss

000763

**Suffolk County
Sheriff's Department**

# Memo

**To:**   Pauline Sweeney, Health Services Administrator

**From:** Deputy Superintendent Gerard J. Horgan

**CC:**

**Date:** 12/07/99

**Re:**   Nurse Richard Goodman

---

After conferring with the Sheriff's Investigation Division about an investigation regarding Nurse Richard Goodman, The Department has decided to ban Nurse Goodman from the facility.

If you have any questions regarding this matter, please do not hesitate to contact me.

000754

October 13, 1999

To: Sheriff Richard J. Rouse
     Special Sheriff Brian Byrnes
     Superintendent John R. Haack

From: Deputy Sheriff Neville C. Arthur

Re: **Case #99/HC/064 ALLEGATIONS**

STATUS: Open and Unclear

    (S) **Nurse Richard Goodman**


    (V) **Inmate Karen Passinisi**


Enclosed is a copy of an Investigation Report regarding the above captioned matter.

        Respectfully Submitted,


        Neville C. Arthur
        Deputy Sheriff/Investigator
        Sheriff's Investigation Division


cc: District Attorney's Special Investigation Unit
    Boston Police Sexual Assault Unit
    file

000996

Please be advised that on 8/17/99, Maureen Stanton, Assistant General Counsel and this reporting investigator met with former Inmate Karen Passinisi to sign an affidavit. During the meeting, Ms. Passinisi informed us that when she was incarcerated in the 1-10-2 unit at House of Correction, a male nurse with a black mustache who hangs around with Officer Parise pulled her into the exam room, took off his pants, exposed his penis to her, grabbed her by the head and attempted to have her give him a "blow job". Inmate Passinisi claimed that she refused the nurse and exited the room. Ms. Passinisi stated that she didn't know the nurse's name but could identify him through a photograph.

On 8/26/99, Attorney James McDonough and this reporting investigator met with Ms. Passinisi for the purpose of identifying the nurse through a photo array. Ms. Passinisi was shown 7 photographs which were compiled of individuals from the Medical and Investigation Departments. Ms. Passinisi, without any hesitation selected Nurse Richard Goodman. At that time, she was asked if was she was positive that the person she selected was the nurse in the alleged incident. Ms. Passinisi replied, "I'm 100% percent sure". A copy of the photo array is attached hereto.

On 8/27/99, Nurse Goodman was informed of the allegations and interviewed in the SID Office. Mr. Goodman stated he was familiar with Ms. Karen Passinisi being an inmate housed in the 1-10-2 unit. Mr. Goodman stated whenever he was in the 1-10-2 unit he would speak with Ms. Passinisi and Inmate Bernadine Mederios regarding various things. At that time, Mr. Goodman stated that he recalled an incident that occurred in the 1-10-2 exam room with Ms. Passinisi sometime during 1998.

Mr. Goodman related that he went to the 10th floor exam room in search of some "things" that were missing from the 2nd floor infirmary. He stated that he retrieved the 1-10-2 exam room key from Nurse Sheila Porter's Office (2nd floor) and went to the 1-10-2 unit. Once in the unit, unlocked the exam room door, entered the room leaving the door ajar and began searching for "hydrogen peroxide and alcohol swaps". At that time, he stated that Ms. Passinisi entered the exam room and asked him for some hydrogen peroxide. He claimed he informed Ms. Passinisi that she couldn't have it because it was contraband and for her to exit the exam room. He claimed that Ms. Passinisi exited the exam room and returned to her cell without any further incident.

At that time, Mr. Goodman was questioned regarding the incident. I asked Mr. Goodman if this is the first time Ms. Passinisi asked him for any medical supplies. He replied, "I'm not sure, but she might of asked for some aspirins or band aids in the past". I asked him if he has ever given Ms. Passinisi a bottle of peroxide. Mr. Goodman replied, "no". Mr. Goodman was then asked if he reported this incident to his supervisor or the 1-10-2 unit officer. He stated that he has not reported this incident to date and felt that it "didn't have to be taken to the next level". He was asked if he has ever written Ms. Passinisi up for any infractions. Mr. Goodman replied, "no".

Mr. Goodman was then asked if Ms. Passinisi was on his medication list to receive medication from the med cart. He stated that he wasn't sure, but he believed she didn't received

meds. He then claimed that he was under the impression that he has only given her aspirin in the past.

Mr. Goodman was asked if he has ever gone and check for supplies in the exam room prior to this incident. He stated, "no", that was his first time. He was asked if he knew who stocked the 1-10-2 exam room. He replied, he wasn't sure but believed it was Sheila Porter. I asked him how he gained entry to the exam room. He stated the exam room is usually locked and has to be accessed by a key. He claimed that he retrieved the key from Sheila Porter's office, went directly the 1-10-2 unit and unlocked the exam room. I then asked him if he was escorted to exam room by the unit officer. Mr. Goodman stated that he wasn't sure, but doesn't believes so.

At that time, he was asked to explain what occurred once he reached the infirmary section of the 1-10-2 unit. Mr. Goodman related that after he unlocked the exam room, he notice Ms. Passinisi exiting one of the infirmary cells, possibly cell #17. As he entered the exam room, she entered behind him and asked him for some peroxide. He claims that he told her she couldn't have it and for her to return to her cell. At that time, he claimed that Ms. Passinisi exited without any further incident.

I then proceeded to question him about his conversations with Ms. Passinisi and Ms. Mederios. He stated that it wasn't unusual for him to speak with Ms. Mederios and Ms. Passinisi when he was in the unit (1-10-2). He stated that he would just exchange pleasantries with Mederios and Passinisi as they would discuss their background with him. He stated that prior to this incident, there conversations has always been positive.

I asked Mr. Goodman if he has ever gone to "visit " Ms. Passinisi or Ms. Mederios in the 1-10-2 unit. He replied, "no", not specifically. He stated there have been occasions were he has gone to the 1-10-2 unit to visit an officer(s) assigned there. I asked him if Ms. Passinisi ever made any sexual advances toward him or spoke to him inappropriately. He replied, "never".

He was then asked why would Ms. Passinisi make these allegations against now. He stated that it was possibly due to the allegations made against Officer Parise by another female inmate (Ellen Wilson). Mr. Goodman then stated that maybe Ms. Passinisi conspired with the other female inmate, because he was friends with Officer Parise. This concluded my interview with Nurse Goodman. Attached is a copy of his report.

On 9/2/99, I conducted an interview with Nurse Sheila Porter in the S.I.D. Office. regarding this incident. According to Nurse Porter, the 1-10-2 exam room is accessed by a key that is stored in the infirmary med room. Any nurse with access to the med room could access the key. She stated that she doesn't recall observing Mr. Goodman access the exam room key. In regards to supplies in the exam room, Nurse Porter stated that it was the responsibility of the nurse with the "top of the tower" assignment to stock the exam room. Nurse Porter stated that she didn't recall anyone beside herself and Nurse Michelle Evans doing inventory in the exam room.

C00398

She stated that there are no medications except for ointments and creams stored in the exam room. The medication is stored in the infirmary in the med room. She stated that most of the supplies that were kept in the exam room were for "gyn care". Nusre Porter then stated that the "only supplies" a nurse may need from the exam room would be "urine dip sticks, pregnancy tests or the Doppler". She stated that "at no time would a nurse need hydrogen peroxide from the clinic", back up supplies are kept in the supply closet in the 2nd floor infirmary.

Nurse Porter then stated that on more than one occasion she has witnessed Nurse Goodman in the women's unit when he wasn't assigned there. On two other occasions, she has observed Nurse Goodman in the 1-10-1 unit speaking with Officers Richard Powers and Robert Parise. She further stated that at no time did she observed any inappropriate behavior between Nurse Goodman and Ms. Passinisi. This concluded my interview with Nurse Porter. A copy of her report is attached hereto.

Ms. Passinisi was reinterviewed regarding her allegations. Ms. Passinisi related she was standing near her cell (#17) when Nurse Goodman enter the rear of the 1-10-2 unit. She stated that she was showing Nurse Goodman that her hair roots looked horrible from a bad hair coloring job. At that time, she claimed that Nurse Goodman offered her a bottle of peroxide if she followed him to the exam room. As they entered the exam room, she claimed that Nurse Goodman started telling her how pretty she was, closed the door behind him and handed her a bottle of peroxide. Ms. Passinisi then stated she turned around to placed the bottle in her pants. When she turned back around, she noticed Mr. Goodman had unzipped his pants and pulled out his penis. She claimed that she asked Nurse Goodman jokingly, "what do I have to do, blow you for the peroxide".

At that time, she claimed that Nurse Goodman grabbed her by the back of her head and pushed her down towards his exposed penis. He then inserted his penis in her mouth and continued to hold her by the back of her head. She stated that Nurse Goodman ejaculated in her mouth forcing her to sallow his semen by not allowing her to back off his penis. She claimed that she started gagging, exited the exam room with the bottle of peroxide and returned to her cell. She further stated that she was embarrassed about the incident and didn't come forward with the allegations unit she heard that Inmate Ellen Wilson came forward with her allegations. This concluded my interview with Ms. Passinisi.

On 9/21/99, Inmates Anna Turavani and Rita Harris were interviewed in the SID Office regarding Ms. Passinisi's allegations. According to Inmate Turavani she was cellmates with Ms. Passinisi in cell #17 from 10/17/98 - 11/20/98. She stated that while they were cellmates, she observed Nurse Goodman speaking with Ms. Passinisi at their cell door (cell #17) on several occasions. She claimed that when Nurse Goodman would leave the 1-10-2 unit through the rear door, Ms. Passinisi would summons him to the cell door. While at the cell door, she claimed that Nurse Goodman and Ms. Passinisi would engage in sexual nature conversations. Inmate Turavani stated that she definitely remembered hearing Ms. Passinisi informing Nurse Goodman that she "gave good head". She claimed that she doesn't recall what Nurse Goodman said after Ms. Passinisi made that comment, but seems to think that he just laugh. Inmate Turavani stated that

beside the dirty conversations, they (Goodman & Passinisi) would discuss Ms. Passinisi's life prior to her incarceration (1998) and her boyfriend "Johnny".

Inmate Turavani further stated that she has never observed Ms. Passinisi and Nurse Goodman in the 1-10-2 exam room. She claimed that Ms. Passinisi never informed her of any sexual misconduct by Nurse Goodman. However, she stated that Ms. Passinisi wouldn't tell her "anything" because Ms. Passinisi didn't trust her. Inmate Turavani stated that all the information she has acquired was from first hand experiences.

Prior to concluding the interview, Inmate Turavani was asked if she has observed Nurse Goodman speaking with Inmate Bernadine Mederios. She replied "yes", on several occasions. She further stated that Inmate Mederios didn't inform her of contents of the conversations due to an on going feud between her and Inmate Mederios and another inmate. A copy of Inmate Turavani's booking sheet is attached hereto.

According to Inmate Rita Harris, she was residing in cell #18 when Ms. Passinisi was cellmates with Anna Turavani, Maria Desimone and Christine Bastille in cell #17. Inmate Harris stated that she has never witnessed Nurse Goodman speaking with Ms. Passinisi. Inmate Harris was asked if she has observed Nurse Goodmen speaking with Inmate Bernadine Mederios. Inmate Harris replied, "no, I haven't". This concluded my interview. A copy of Inmate Harris' booking sheet is attached hereto.

Please note that Inmate Harris was assigned to the 1-10-2 unit cell #18 from 5/6/98 - 12/16/98. A copy of Inmate Harris' cell assignment and booking sheet is attached hereto.

On the same above date, this reporting investigator conducted a telephonic interview with former Inmate Bernadine Mederios regarding Ms. Passinisi's allegations. Ms. Mederios stated that when she was housed in the 1-10-2 unit cell 19, she observed Ms. Passinisi walk into the exam room with Nurse Goodman. Once she was inside, she witnessed Nurse Goodman close the exam room door. Ms. Mederios stated that Ms. Passinisi was in the exam room with Nurse Goodman for approximately 5 -10 minutes.

Ms. Mederios was questioned if she observed Nurse Goodman speaking with Ms. Passinisi prior to the alleged incident. She replied, "yes", on several occasions I observed Nurse Goodman speaking with Ms. Passinisi in her doorway.

Ms. Mederios was asked if she had any conversations with Nurse Goodman. She stated "no, that's Karen and them". She was asked if Nurse Goodman has ever referred to her as "goomba". Ms. Mederios stated "no". This concluded my interview with Ms. Mederios.

The records indicate that Ms. Mederios was assigned to the 1-10-2 unit cell #19 from 8/26/98 - 10/20/98. A copy of Ms. Mederios' housing assignment and booking sheet is attached hereto.

On 9/22/99, Inmate Beverly Hooker was interviewed regarding Ms. Passinisi's allegations at M.C.I. Framingham.  According to Inmate Hooker, she was housed in the 1-10-2 unit cell #18 when this alleged incident occurred.  She stated that she has witnessed Nurse Goodman speaking with Ms. Passinisi on numerous occasions when he was distribution medication within the unit. Inmate Hooker stated that it appear that Nurse Goodman and Ms. Passinisi "knew each other from the streets" based on how they were speaking to each other.  Inmate Hooker then stated that on one occasion she observed Nurse Goodman standing outside of Ms. Passinisi's cell (#17) and heard him talking to Ms. Passinisi and her cellmates.  She stated that she couldn't hear exactly what Nurse Goodman said, but Ms. Passinisi and cellmates found it amusing.  Inmate Hooker stated that she never witnessed Ms. Passinisi and Nurse Goodman in the exam room.  Inmate Hooker was questioned if she witnessed Ms. Passinisi with a bottle of hydrogen peroxide.  She stated "no", but was informed that Ms. Passinisi had a "hook up" with someone in the infirmary and had has received a bottle in the past.

Inmate Hooker was asked if she has witnessed Nurse Goodman speaking with Ms. Bernadine Mederios while she was assigned to the 1-10-2 unit.  She stated that on numerous occasions she has observed Nurse Goodman speaking with Ms. Mederios throughout the unit. Inmate Hooker stated that she was under the impression that Nurse Goodman also knew Ms. Mederios from the streets.  She stated that she never observed Nurse Goodman inside of Ms. Mederios' cell, but she has witnessed him outside her cell door numerous times.  She then stated that she over heard some of the conversations between Nurse Goodman and Ms. Mederios.  She claimed that Nurse Goodman would inquire about Ms. Mederios possible sexual activity with the female inmates.  Nurse Goodman would then relay the information he received to Inmate Steven Morrello, who was Ms. Mederios' husband also incarcerated at the House of Correction.

Records indicate that Inmate Beverly Hooker was housed in the 1-10-2 unit cell #18 from 9/8/98 - 1/10/99.  A copy of Inmate Hooker's housing assignment and booking sheet is attached hereto.

On 9/23/99, this reporting investigator spoke with Sgt. Henshaw of the Boston Police Sexual Assault Unit.  Sgt. Henshaw stated that she had interviewed Ms. Passinisi on 9/22/99 and that Ms. Passinisi related the some information that I had received.  Sgt. Henshaw also stated that she was going to generate several reports that included a 1.1 incident report and will turn them over to the District Attorney's Office.  A copy of the 1.1 incident report is attached hereto.

Please be advised that an attempt to contact and interview the following former inmates Maria Desimione, Christine Bastille, Elizabeth Thistle and Donna Giangrande. were unsuccessful due to them not leaving a correct forwarding address.  Copies of these former inmates booking card are attached hereto.

Conclusion:
This reporting investigator strongly believes that Nurse Richard Goodman did act inappropriately and unprofessionally with former Inmates Karen Passinisi by engaging in conversations that were not relative to his duties as a nurse.  I also believe that Nurse Goodman did have former Inmate Passinisi in the exam room with the door closed.  It is ambiguous what exactly occurred in the

exam room during October of 1998. However, it is extremely clear that Nurse Goodman had "no reason" to be in the 1-10-2 exam room looking for supplies and with former Inmate Passinisi with out reporting the incident. This reporting investigator recommends that due to the case remaining open and unclear that Nurse Goodman remained barred from the House of Correction indefinitely.

001002



# *Suffolk County Sheriff's Department*



| | |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**

February 16, 2005

John Hewit-Morey
Health Service Administrator
Correction Medical Services
South Bay House of Correction

Dear HSA Hewitt-Morey,

This letter serves as notice that RN Anne Rabbitt was barred from the Suffolk County House of Correction for three days for her actions on February 9, 2005 and for being disingenuous during the course of an internal investigation thereafter.

On that date, Nurse Rabbitt, against standard practice, housed an inmate in the medical unit and failed to notify the medical director. Nurse Rabbitt also failed to document any information related to her decision and interaction with the inmate. During the course of the investigation, Nurse Rabbitt was not truthful in her statements about her attempts to contact the medical director, nor did she properly explain her failure to contact the HSA. She was given repeated opportunities to correctly report her actions. She failed to do so. Her failure to accurately report her actions caused a continuation of an investigation that resulted in a disruption to the operation of the facility.

Nurse Rabbitt was barred from the facility February 14-16, 2005.

Any future unprofessional behavior such as this will result in her being permanently banned from the Suffolk County House of Correction.

Sincerely,

*Gerald Walsh*

Gerald Walsh
Deputy Superintendent

cc:    Elizabeth Keeley, Chief of Staff
       Gerard Horgan, Superintendent
       Steve Jacobs, Deputy Superintendent
       Julie White, Assistant Deputy Superintendent

001065

03/02/2013 17:40 FAX





# Suffolk County Sheriff's Department

| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF

April 29th, 2005

**To:**     Front Lobby
            Central Control

**From:**   Gerald Walsh, Deputy Superintendent

**Date:**   April 29th, 2005

**Subj:**   Barred from Entrance

Effective immediately Nurse Stacy Watson is not allowed to enter the facility.
Thank you for your attention to this matter.

cc:  Elizabeth Keeley, Chief of Staff
     Gerard J. Horgan, Superintendent
     Steve Jacobs, Deputy Superintendent
     Julie White, ADS
     Shift Commanders

001137

To: Gerry Walsh, Deputy Superintendent.

From: Michael Powers, Captain

Date: April 27, 2005

Re: LPN Stacey Watson

Sir,

On Wednesday April 27, 2005 I was informed by Sgt. Bernis that Officer Peter Daly assigned to the clinic area, witnessed LPN Stacey Watson pass contraband to inmate ██████████ #███████. Please refer to the reports submitted by staff.

Respectfully Submitted

Michael Powers, Captain #4

001138

# EXHIBIT 24



# Suffolk County Sheriff's Department



| Jail | House of Correction |
|---|---|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**

February 16, 2005

John Hewit-Morey
Health Service Administrator
Correction Medical Services
South Bay House of Correction

Dear HSA Hewitt-Morey,

This letter serves as notice that RN Anne Rabbitt was barred from the Suffolk County House of Correction for three days for her actions on February 9, 2005 and for being disingenuous during the course of an internal investigation thereafter.

On that date, Nurse Rabbitt, against standard practice, housed an inmate in the medical unit and failed to notify the medical director. Nurse Rabbitt also failed to document any information related to her decision and interaction with the inmate. During the course of the investigation, Nurse Rabbitt was not truthful in her statements about her attempts to contact the medical director, nor did she properly explain her failure to contact the HSA. She was given repeated opportunities to correctly report her actions. She failed to do so. Her failure to accurately report her actions caused a continuation of an investigation that resulted in a disruption to the operation of the facility.

Nurse Rabbitt was barred from the facility February 14-16, 2005.

Any future unprofessional behavior such as this will result in her being permanently banned from the Suffolk County House of Correction.

Sincerely,

Gerald Walsh

Gerald Walsh
Deputy Superintendent

cc:   Elizabeth Keeley, Chief of Staff
       Gerard Horgan, Superintendent
       Steve Jacobs, Deputy Superintendent
       Julie White, Assistant Deputy Superintendent

001065

# EXHIBIT 25

# Suffolk County Sheriff's Department

Page 1 of ▮

## Sheriff's Investigation Division (SID)

## Incident Report

| | | | |
|---|---|---|---|
| SID Incident #: | 03H002 | Reporting Investigator: | Brian Dacey |
| Date of Incident: | May 28, 2003 | Type of Incident: | Alleged Assault |
| Time of Incident: | Before 1:00 p.m. | Investigation # (if any): | |
| Incident Location:<br>(HOC, NSJ, or Other) | H.O.C. | Date Report Filed: | June 3, 2003 |

**Unit or Street Address:**

1-4-2 unit

**Other SID Investigators Involved:**

Sonya Aleman

**SCSD Staff Members Involved:**

Unidentified C/O; Physician's Assistant Beth Bringola; Nurse Andrea Mackie; Collette Perreault, LICSW; Nurse Kimberly Foley; Nurse Practitioner Sheila Porter

**Inmates Involved:**

Inmate R▮▮ ▮▮▮▮▮

**Narrative**

On Thursday, May 29, 2003, at approximately 3:25 p.m., Investigator Sonya Aleman and I responded to the Infirmary to investigate inmate R▮▮ ▮▮▮▮▮'s allegation that he had been assaulted.

R▮▮▮▮ reports that on Wednesday, May 28, 2003, sometime before 1:00 p.m., a correction officer assaulted him. He unnecessarily used him by placing his boot on his forehead. R▮▮▮▮ specified that he was not kicked, but the action of the officer removing his boot from his forehead scratched him.

We observed a scratch on his forehead that appeared to have scabbed over.   There was no bruising or swelling present at the time of our investigation with him.   End of report.

Investigator Aleman has read and reviewed the above report. She has found it to be a true and accurate summary of events.

| | |
|---|---|
| Reporting Investigator's Signature | Date |
| | |
| Supervisor's Name and Signature | Date |

000659

**To:** Sheriffs Investigation Division

**From:** Deputy Keith J. Storlazzi

**Date :** May 21, 2003

**Re:** Inmate R█████ ████████ (# ████████)


On Monday May 19, 2003, I Deputy Keith J. Storlazzi was assigned to Sert # 2, building # 1 with Officer Janine Handrahan. At approximately 11:50pm, we were contacted via radio by Central Operations to report to the 1-4-2 unit to escort inmate R████ ██████ (# ████████) to the infirmary where he was being placed on Medical Observation Status.


Upon arrival to the unit, building Supervisor Lt. Scott McDonald ordered myself and my partner Officer Handrahan to escort Inmate R█████, who currently was in cell # 8, to the rear of the infirmary. Inmate R█████ was placed in restraints and cooperatively escorted by my partner along with building Supervisor Lt. McDonald. Inmate R█████ was moved to cell # 9 where restraints were removed. Inmate was searched for contraband at that time. Inmate R█████'s property was removed and confiscated due to his status and he was secured inside cell # 9 with no further incident.

#560

Deputy Keith J. Storlazzi (# 560)

**000686**



# *Suffolk County Sheriff's Department*



Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

ANDREA J. CABRAL
SHERIFF

TO: S.I.D.
FROM: C/O J. Hanrahan
RE: I/m R█████ ██████ #█████████
DATE: 5/20/03

ON MONDAY MAY 19, 2003 while
Assigned to SERT 2 with C/O Sturlazzi was called
via radio by Central Control to report to Unit
1-4-2 cell #8 to escort I/m R█████ ██████ #████████
to the rear of the infirmary to be placed on M.O.A
Status per medical. At Approximately 12:51 pm myself &
my Partner C/O Sturlazzi Arrived Along with LT. S. McDonn
At this time I/m R█████ was handcuffed (hands behind
back) and transported to the infirmary by myself,
█████ Sturlazzi & LT. McDonnnd to cell #9 and placed on
M.O.A. with no further incident. At no time
████ Captain C. Scobey Present during or After this
was completed. JH

Sincerely,

_[signature]_
#569

000688

# Suffolk County Sheriff's Department



**ANDREA J. CABRAL**
SHERIFF

| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**EXHIBIT**
Thesis
7
5/29/04 tm

TO: S.I.D

FROM: CAPTAIN CHARLES SCOBY

DATE: MAY 25,2003

RE: INMATE R██████ █████ # ███████ ALLEGED ALLEGATIONS ABOUT BEING PLACED
IN BODY BAG.

TO WHOM IT MAY CONCERN

ON MONDAY MAY 19,2003 AT APPROXIMATELY 1:35 PM, I CAPTAIN SCOBY AS THE 7-3

SHIFT COMMANDER WAS DOING ROUNDS IN THE REAR OF THE INFIRMARY. I

WAS INFORMED BY OFFICER M. DEANGELIS, THE UNIT OFFICER THAT HE HAD A

INMATE THAT WAS ON M.O.A STATUS BY THE NAME OF INMATE R████ █████ #████████

HOUSED IN CELL #09.

I THEN WALKED OVER TO THE CELL AND SAID" WHATS UP?" TO THE INMATE AND

RECEIVED NO REPLY. THEREFORE, I WALKED AWAY. AT NO TIME DID I SAY ANYTHING

ABOUT PUTTING HIM IN A BODY BAG.

RESPECTFULLY SUBMITTED.

*Capt. Chas Scoby #21*

CAPTAIN CHARLES SCOBY #21.

000690