UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, SUFFOLK COUNTY, and CORRECTIONAL MEDICAL SERVICES<br><br>        Defendant. | Civil Action No.04-11935-DPW |

**SHEILA PORTER'S OPPOSITION TO THE SUFFOLK DEFENDANTS' MOTION TO COMPEL DISCOVERY AND CROSS-MOTION FOR PROTECTIVE ORDER**

Plaintiff Sheila J. Porter ("Mrs. Porter") hereby submits her Opposition to Andrea Cabral, Suffolk County Sheriff's Department and Suffolk County's ("Suffolk Defendants") Motion to Compel Testimony From the Plaintiff and, pursuant to Fed. R. Civ. P. 26(c), submits a Cross-Motion for a Protective Order to prevent her from answering harassing and irrelevant deposition questions that could jeopardize the personal safety of Mrs. Porter and others.

**BACKGROUND**

Mrs. Porter's civil rights claims against the Suffolk Defendants and Correctional Medical Services, Inc. ("CMS") will turn on the reasons why she was barred from the Suffolk County House of Corrections ("HOC") and terminated from CMS. Mrs. Porter has provided overwhelming evidence that she was barred and terminated because she made allegations of inmate abuse to the Federal Bureau of Investigation ("FBI") on May 19, 2003 and that this barring was consistent with the Code of Silence that existed within the Suffolk County Sheriff's

1

Department ("SCSD").  *See* Mrs. Porter's Opposition to Suffolk Defendants' Motion for Summary Judgment ("Opp. to MSJ"), pp. 8-32.

To defend these claims, the Suffolk Defendants are seeking to present evidence that Mrs. Porter was barred for other reasons.  The Suffolk Defendants have also inquired about Mrs. Porter's communications with the FBI concerning the May 2003 allegations of inmate abuse—questions to which Mrs. Porter has provided comprehensive responses. Mrs. Porter even provided exhaustive responses to questions concerning her four-year relationship with the FBI as a confidential informant, even though this information is not directly or indirectly relevant to this lawsuit.

But the Suffolk Defendants now seek the specific names and incidents that Mrs. Porter disclosed to the FBI during the four years that she was a confidential informant.  This information has absolutely nothing to do with the May 2003 incident, the SCSD's decision to bar her, or any other claim or defense in this case.  On the other hand, disclosure of this information could imperil the safety of Mrs. Porter and others, compromise the privacy rights of others who are cooperating with the FBI, and jeopardize the public's interest in prison safety.

It is apparent that the Suffolk Defendants are not seeking this information for any valid purpose.  Rather, not content with barring Mrs. Porter and publicly defaming her, the Suffolk Defendants continue, pursuant to the Code of Silence, to retaliate against her for revealing allegations of inmate abuse to the FBI.  Because the Motion to Compel is a thinly-veiled attempt to harass Mrs. Porter and seeks information that has nothing to do with this case, the Motion to Compel should be denied and a Protective Order should issue preventing Mrs. Porter from answering the deposition questions at issue.

**ARGUMENT**

I.  **A PROTECTIVE ORDER SHOULD ISSUE TO PROTECT MRS. PORTER FROM ANSWERING QUESTIONS RELATED TO HER FBI COMMUNICATIONS BECAUSE THE BURDEN OF REVEALING THE SPECIFIC MATTERS SHE DISCLOSED TO THE FBI OUTWEIGHS ANY POTENTIAL BENEFIT**

At her deposition, which covered two days and 460 pages, Mrs. Porter provided the defendants with 115 pages of testimony concerning (1) her initial contacts with the FBI; (2) the FBI agents she spoke with; (3) how frequently she spoke with the agents; (4) the manner and location of her FBI contacts; (5) the general topics she discussed with the FBI during her four-year tenure as an informant; (6) the specific communications she had with the FBI in November 2002 when she cooperated in an investigation by placing a recording device on an inmate; (7) the specific communications she had with the FBI in May and June 2003 concerning the inmate's allegations of abuse and Mrs. Porter's interactions with SID; and (8) the specific communications she had with the FBI and Office of the United States Attorney ("USAO") subsequent to her barring.  *See* Deposition of Sheila Porter, May 18 and 26, 2005 ("Porter dep."), pp. 88-165, 234-37, 266-67, 306-15, 349-58, 360-62, 369, 375-79, 418-19 (Attached as Exhibit ("Ex.") 1 to the Declaration of David S. Schumacher ("Schumacher Decl.")).  Mrs. Porter has also provided substantive information regarding her relationship with the FBI and the USAO in her interrogatory responses.  *See* Plaintiff's Responses and Objections to Interrogatories of Suffolk Defendants, Nos. 1-4 (Ex. 2).

The only questions that Mrs. Porter refused to answer were those aimed at discovering the names of SCSD employees and inmates that Mrs. Porter revealed to the FBI prior to the May 2003 abuse allegations.  For instance, Mrs. Porter was asked "What was that conversation you

3

had with F.B.I. Agent Robinson [during their initial meeting in 1999]?" *See* Porter dep., p. 96.

Mrs. Porter was also asked the following questions:

> Q. What information -- what did you discuss; what information did [Agent Robinson] ask you to provide -- let me -- in this first meeting in the parking lot at South Bay, what did she ask you to provide?
>
> A. Information concerning specific allegations of physical abuse that they had.
>
> Q   And what were those allegations?
>
> A   They were allegations of physical abuse at the hands of corrections officers, and I cannot give you the names.
>
> * * * *
>
> Q   Did [Agent Robinson] provide you with the names of inmates who had made allegations concerning these officers?
>
> A   Yes.
>
> Q   Were you familiar with those inmates?
>
> A   Some.
>
> Q   Who are they?

Porter dep., pp. 96-101 (Ex. 1).  Mrs. Porter refused to disclose the names of the individuals she discussed with the FBI based on the informer's privilege and relevance. *Id.*, pp. 97-98.

While the Suffolk Defendants claim that Mrs. Porter may not assert the informer's privilege, *see Roviaro v. United States*, 353 U.S. 53, 59 ((1957), the Court need not address this issue because, as discussed below, the discovery should not be had pursuant to Fed. R. Civ. P. 26(b)(2).  *See Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (even if informer's

4

privilege does not apply, court must still balance the burdens and benefits of the discovery request under Rule 26(b)(2)).[1]

While a party may generally obtain discovery on any relevant, nonprivileged matter, discovery may be limited if the Court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2); *see also Gill*, 399 F.3d at 400.

In addition, the Court has the authority to may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c). In so doing, the Court may order "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4). *See Gill*, 399 F.3d at 402 (balancing discovery request under good cause standard of Rule 26(c)). This rule leaves the decision whether to issue a protective order within the sound discretion of the District Court. *See Poliquin v. Garden Way*, 989 F.2d 527, 532 (1st Cir. 1993).

### A. Answering the Deposition Questions Would Be a Substantial Burden on Mrs. Porter

In this case, the Rule 26(b)(2) balance tips overwhelmingly in Mrs. Porter's favor. The burdens of responding to the deposition questions at issue here are substantial. First, disclosure of the identities of the alleged perpetrators and victims of abuse risks the personal safety of Mrs. Porter and others by exposing them to potential retaliation. *See* Declaration of Sheila Porter

---

[1] Indeed, the Suffolk Defendants spend the majority of the motion focusing on the informer's privilege before devoting only a half-page to arguing that the information is relevant. *See* Motion, p. 6. But the Suffolk

5

("Porter Decl."), ¶¶ 3-7 (Ex. 3). This is more than mere conjecture. For instance, on one investigation where Mrs. Porter cooperated with the FBI, two other cooperating individuals suffered serious physical harm that she believes was connected to their cooperation. *Id.*, ¶ 4. Mrs. Porter is fearful that she or others close to her might also be harmed if this investigation, and her role in it, is publicly revealed. *Id.*

In addition, individuals within the SCSD have a history of retaliating against people who report the misconduct of SCSD employees. *Id.*, ¶ 5. Mrs. Porter witnessed retaliation against others who spoke out about abuses or problems at the SCSD, including Deyanira Feliz and Bruce Baron. *Id.*; *see also* Opp. to MSJ, pp. 23-32 (discussing Code of Silence at SCSD). Mrs. Porter also personally experienced retaliation when, immediately after she testified in a criminal trial against a SCSD employee, approximately $2,000 of damage was inflicted on her car while it was parked at the HOC. *See* Porter Decl., ¶ 6 (Ex. 3). Her fears are particularly acute because some individuals who she provided information to the FBI about are still with the SCSD. *Id.*, ¶ 7.

Indeed, top SCSD officials have admitted that Mrs. Porter and others who cooperate with the FBI risk retaliation. The SCSD Chief of Staff testified that she was concerned that "the department could not assure [Mrs. Porter's] personal safety" once it was revealed within the Department that she had cooperated with the FBI, to the point that this was a reason she believed justified Mrs. Porter's barring from the HOC. *See* Deposition of Elizabeth Keeley, p. 53 (Ex. 4). Similarly, the Chief of the Sheriff's Investigative Division ("SID") testified that he was concerned that some officers might retaliate against an inmate who revealed that he was an informant for the FBI. *See* Deposition of Viktor Theiss, pp. 42-43 (Ex. 5).

---

Defendants do not attempt to balance the burdens and benefits of the proposed discovery, as is required by Rule 26(b)(2) and discussed immediately below.

6

Protecting the safety of others and preventing retaliation constitutes good cause for issuing a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26-27, 37 (1984) (holding that an affidavit indicating that members of a religious group had been threatened, had been attacked, and faced additional harassment and reprisals if their identities were disclosed was sufficient to establish good cause to issue a protective order); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) ("It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection."); *Zwack v. Kraus Bros. & Co.*, 237 F.2d 255, 260 (2d Cir. 1956) (holding that a plaintiff did not have to answer deposition questions about whether he and his brother, who still lived in Hungary, bribed Communist Party Officials in Hungary because the interest of protecting the safety of plaintiff's brother against retaliation by Communist Officials outweighed the needs for the information).

A second reason that these communications should not be disclosed is that such disclosure would undermine the privacy of victims and cooperators. Safeguarding the privacy of individuals for various reasons constitutes good cause for issuing a protective order. *See Gill*, 399 F.3d at 402-03 (reversing a District Court's denial of a motion for a protective order and remanding for consideration of the benefit of the protective order to the cooperator's privacy); *Charlie and Nadine H. v. Whitman*, 213 F.R.D. 240, 252 (D.N.J. 2003) (issuing protective order preventing disclosure of "highly sensitive information"—the names of abused children—in action against child welfare agency); *see also Bradway v. Am. Nat'l Red Cross*, 132 F.R.D. 78, 80 (N.D. Ga. 1990) (issuing protective order protecting Red Cross from revealing identities of blood donors in action by AIDS victim).

Finally, a protective order would promote the public's interest in prison safety and in obtaining cooperation to further this goal. In *Gill*, the target of an investigation into the use of illegal performance enhancing substances on thoroughbred racehorses sought to discover the identities of individuals who cooperated in the investigation. The First Circuit ruled that the District Court erred in failing to consider the public's interest "in law enforcement and the fairness and integrity of the thoroughbred racing industry" and the importance of obtaining cooperation to further these goals. *See Gill*, 399 F.3d at 396. The case against disclosure in the present case is, if anything, even more compelling than in *Gill*, because of the profound public interest in preventing retaliation against those who cooperate with law enforcement.[2]

### B.    There is No Benefit to Publicly Revealing Matters That Mrs. Porter Has Discussed With the FBI That Are Completely Unrelated to this Case

In contrast to the substantial burden that these deposition questions impose on Mrs. Porter and others, the benefit to the Suffolk Defendants would be less than marginal. The Suffolk Defendants first claim that they need this information "[i]n order to assess the Plaintiff's characterization of herself as a whistleblower and informant for the FBI." *See* Motion, p. 2. But Mrs. Porter's status as a FBI informant has been confirmed <u>by the FBI</u>. *See* Affidavit of Christa Snyder, ¶ 1 (Ex. 6) ("Beginning in 1999, Sheila Porter provided information to the FBI, on a confidential basis, about events at the Suffolk County House of Corrections (HOC)." Thus, the Suffolk Defendants already have this information.[3]

Next, the Suffolk Defendants claim that they need this information to test Mrs. Porter's credibility on the "frequency" and "accuracy" on her communications with the FBI, as well as

---

[2] Moreover, the cooperation in the present case was with the FBI, not with a private regulatory agency. *Id*. at 402.

[3] Moreover, there is no dispute that Mrs. Porter was told that she was barred because she spoke with the FBI, *see* Opp. to MSJ, pp. 11-12. Thus, whether or not Mrs. Porter actually was a FBI informant (she was) is not relevant to Mrs. Porter's civil rights claims.

8

whether she "reported the same information to the Sheriff's Department." But the "frequency" and "accuracy" of Mrs. Porter's communications with the FBI prior to May 2003 has absolutely nothing to do with the claims and defenses in this case. Similarly, whether or not Mrs. Porter reported these instances of abuse to the SCSD—and she testified that she <u>always</u> reported any incidents she witnessed firsthand to the SCSD—has nothing to do with the reasons why Mrs. Porter was barred from the HOC in June 2003. In any event, the infinitesimal utility this information would have for the Suffolk Defendants is far outweighed by the strong private interests in safeguarding against retaliation, maintaining the privacy of inmates and cooperators, and the public interest in prison safety described above.

In short, Mrs. Porter has provided the defendants with exhaustive testimony concerning her communications with the FBI that are relevant to this case, and more. But deposition questions concerning the specific names and topics she discussed with the FBI <u>before</u> the May 2003 allegations of inmate abuse are harassing, utterly irrelevant to this case and would elicit information that could jeopardize the safety of Mrs. Porter and others.

## **CONCLUSION**

For the foregoing reasons, Mrs. Porter respectfully requests that the Court deny the Suffolk Defendants' Motion to Compel and issue a Protective Order preventing her from answering deposition questions that would reveal the specific names and topics she discussed the FBI before May 19, 2003.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

*/s/ David S. Schumacher*
Joseph F. Savage Jr. (BBO #443030)
David S. Schumacher (BBO #647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Dated: November 15, 2005

### CERTIFICATION UNDER LOCAL RULE 7.1 AND LOCAL RULE 37.1

I, David S. Schumacher, hereby certify that counsel for Sheila Porter conferred with counsel for the Suffolk Defendants in a good faith attempt to resolve or narrow the issues in this cross-motion prior to its filing.

Dated: November 15, 2005      */s/ David S. Schumacher*
                              David S. Schumacher

LIBA/1644991.1