# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,                 )<br>    Plaintiff               )<br>            V.             )<br>ANDREA CABRAL, SUFFOLK     )<br>COUNTY SHERIFF'S DEPARTMENT,  )<br>SUFFOLK COUNTY, and       )<br>CORRECTIONAL MEDICAL     )<br>SERVICES, INC.           )<br>    Defendants          ) | Civil Action No. 04-11935-DPW |

## PLAINTIFF'S RESPONSES AND OBJECTIONS
## TO INTERROGATORIES OF DEFENDANTS ANDREA CABRAL,
## <u>SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY</u>

Plaintiff Sheila J. Porter ("Mrs. Porter") hereby submits the following responses and objections to the Interrogatories of Defendants Andrea Cabral, Suffolk County Sheriff's Department and Suffolk County (the "Interrogatories"). The responses set forth below are based on information presently known by Mrs. Porter and Mrs. Porter reserves the right to supplement, amend, or correct these responses in light of information later obtained through discovery or otherwise.

## <u>GENERAL OBJECTIONS</u>

1.      Mrs. Porter objects generally to the Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege.

2.      Mrs. Porter objects generally to the Interrogatories to the extent they purport to impose obligations upon Mrs. Porter exceeding those set forth in Federal Rules of Civil Procedure and/or the Local Rules for the United States District Court for the District of Massachusetts.

3.      Mrs. Porter objects generally to the Interrogatories to the extent they are vague, overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence.

4.      Mrs. Porter objects generally to the Interrogatories to the extent they seek information already in the possession of Defendants.

5.      Mrs. Porter objects generally to the Interrogatories to the extent they call for information that is available from public sources or which can be more readily obtained from other sources that are equally available to Defendants as they are to Mrs. Porter.

6.      Mrs. Porter objects generally to the Interrogatories to the extent they call for the disclosure of information without any date or time restriction.

7.      Mrs. Porter objects generally to the Interrogatories to the extent they call for disclosure of specific information provided to the FBI, inasmuch as such disclosures may jeopardize the safety of Mrs. Porter and/or individuals who are the subjects of these disclosures.

8.      Mrs. Porter expressly incorporates these General Objections by reference into each of the individual responses below.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Please describe fully the circumstance surrounding your involvement with the FBI, including:

    a.    when and how it began and ended;

    b.    whether an informant contract(s) or agreement(s) was executed by you and the FBI and the exact location of said contract(s) or agreement(s);

    c.    whether you received any compensation for providing information to the FBI, and if so how much, when and how received;

    d.    whether you were assigned to a specific FBI agent or agents;

    e.    the specific FBI agents and employees with whom you communicated during the time you worked at the Suffolk County House of Correction (HOC);

f.   each instance in which you have provided information to the FBI while working at the HOC;

g.   the specific information provided to the FBI;

h.   the specific manner or means by which you provided the information; and

i.   each instance in which you have testified at the request of the FBI while you were working at the HOC.

**Response No. 1:**

Mrs. Porter objects to Interrogatory No. 1 on the grounds that it is vague, overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Mrs. Porter further objects to Interrogatory No. 1 on the ground that disclosure of specific information provided to the FBI may jeopardize the safety of Mrs. Porter and/or individuals who are the subjects of these disclosures. Subject to these objections, and to the General Objections above, Mrs. Porter states as follows:

Mrs. Porter was initially contacted by FBI agent Maureen Robinson in 1999 or 2000. After notifying CMS employees that she had been contacted, Mrs. Porter agreed to periodically discuss with the FBI possible illegal activities at the Suffolk County House of Corrections. During the initial encounter, she was asked about various problems that had appeared in the media during the previous few months, including reports of sexual abuse of female inmates and physical abuse of male inmates. Other subjects of their discussions over the years have included possible civil rights violations and drug trafficking within the facility. Besides Ms. Robinson, Mrs. Porter has spoken with FBI employees Krista Snyder, Julia Cowley and Kevin Constantine, among others. The FBI has never asked Mrs. Porter to provide testimony on its behalf. Mrs. Porter never entered into an "informant contract or agreement." Mrs. Porter never received any compensation from the FBI. Mrs. Porter transmitted information to the FBI via phone calls and

3

face-to-face meetings.

**Interrogatory No. 2:**

Please identify each and every individual whom you informed about your involvement with the FBI while you were working at the HOC, for each named individual include:

     (i)     specific dates when this information was communicated;
     (ii)    how this information was communicated;
     (iii)   for all oral communications please identify the recipient of the information; and
     (iv)   for all written communications please identify the recipient of the information and the specific location of any copies of said communication.

**Response No. 2:**

Mrs. Porter objects to Interrogatory No. 2 on the grounds that it is vague, overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Mrs. Porter further objects to Interrogatory No. 2 to the extent that disclosure of the information requested may jeopardize the safety of Mrs. Porter and/or individuals who are the subjects of these disclosures. Subject to these objections, and to the General Objections above, Mrs. Porter refers Defendants to her Response to Interrogatory No. 1.

**Interrogatory No. 3:**

Please identify all individuals working at the HOC (presently or formerly) whom you know were aware of your relationship with the FBI prior to your being barred from the HOC, and indicate for each the basis for that awareness (e.g., through a direct statement by you or someone else, etc.)

**Response No. 3:**

Mrs. Porter objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Mrs. Porter further objects to Interrogatory No. 3 to the extent that disclosure of the information requested may jeopardize the safety of Mrs. Porter and/or individuals who are the subjects of these disclosures. Mrs. Porter further objects to Interrogatory No. 3 on the ground that it requires a

speculative response.  Mrs. Porter further objects to Interrogatory No. 3 on the ground that it is

premature, inasmuch as she is awaiting complete responses to her discovery requests.  Subject to

these objections, and to the General Objections above, Mrs. Porter states that HOC employees

who were aware of her disclosures with the FBI include Paul DeFazio, who was referred to Mrs.

Porter by the FBI, and Steve Jacobs, with whom Mrs. Porter had conversations about her

disclosures.

**Interrogatory No. 4:**

Please describe fully the circumstances surrounding your involvement with the United States
Attorney's Office, including:

    i.    when and how it began and whether it is ongoing;
    ii.    the specific Assistant United States Attorneys and their agents or
        representatives with whom you have communicated;
    iii.    whether the communications were oral or written;
    iv.    if written the specific location of copies of the written communications
        and if produced on a computer or generated by email the specific location
        of the computer utilized;
    v.    the specific information conveyed in those communications;
    vi.    whether you met with those Assistant United States Attorneys and their
        agents or representatives and all persons present during said meetings;
    vii.    the specific information provided during those meetings;
    viii.    whether you have met with United States Attorney Michael J. Sullivan;
    ix.    the specific dates of said meeting or meetings with United States Attorney
        Michael Sullivan and the identity of all persons present during said
        meeting; and
    x.    the substance of your conversation with United States Attorney Michael
        Sullivan.

**Response No. 4:**

    Mrs. Porter objects to Interrogatory No. 4 on the grounds that it is overbroad, unduly

burdensome, and not calculated to lead to the discovery of admissible evidence.  Subject to this

objection, and to the General Objections above, Mrs. Porter states as follows: on the day

following her barring from the HOC, FBI agents Robinson and Snyder arranged a meeting with

Ms. Porter and Assistant U.S. Attorney Steve Huggard. In addition to Robinson, Snyder and

Huggard, there was an additional FBI agent and two individuals from the U.S. Attorney's Office

present. The substance of the meeting included the events surrounding the barring of Mrs. Porter

from the HOC and inmate RR. In addition, Mrs. Porter had two meetings with Steve Huggard

concerning her grand jury testimony regarding her barring. Mrs. Porter met once with Michael

Sullivan. AUSA John McNeil was present for this meeting, as well as counsel. The substance of

this meeting concerned the events surrounding the barring of Mrs. Porter from the HOC.

**Interrogatory No. 5**

Please describe each and every instance in which you have testified in a civil or criminal
court proceeding, deposition, arbitration or before a federal or state grand jury, stating as to each
such instance:

      i.    the date on which you testified;
     ii.    the forum (specific court or grand jury) in which you testified;
   iii.    at whose request you testified;
   iv.    the docket number and caption of each case in which you testified; and
    v.    a narrative of your testimony.

**Response No. 5**

Mrs. Porter objects to Interrogatory No. 5 on the grounds that it is overbroad, unduly

burdensome and not calculated to lead to the discovery of admissible evidence. Mrs. Porter

further objects to Interrogatory No. 5 to the extent that the information sought is in the public

domain. Subject to these objections, and to the General Objections above, Mrs. Porter states that

she has testified in the following proceedings:

- *Don Deuitch et al v. Upton Board of Appeals*, Mass. Superior Court (Worcester), No.
  5188, February 7, 1973, regarding land use in Upton, MA.

- *Feliz v. Suffolk County House of Corrections*, Mass. Commission Against
  Discrimination, #99-131745, March 31, 2000, deposition concerning events in the
  female units at the Suffolk County House of Corrections. Deposition noticed by Ms.
  Feliz;

6

- *Commonwealth v. Powers*, Roxbury District Court (date unknown), show-cause hearing regarding alleged assault on Deyanira Feliz by Richard Powers;

- *Commonwealth v. David Mojica*, Roxbury District Court, #99-CV-04997G, show-cause hearing, September 11, 2001, regarding alleged rape of inmate Maria Perez;

- Roxbury District Court, show-cause hearing on behalf of corrections officer regarding alleged abuse of inmate Kenneth Rennick (date unknown).

- Federal grand jury, September 16, 2003, concerning events related to Mrs. Porter's termination from Suffolk County House of Corrections.

- Newton District Court, testimony regarding the condition of a female involved in a motor vehicle accident; Mrs. Porter had observed the woman while she was driving to work (name of case and date unknown).

**Interrogatory No. 6:**

Please state each and every job you have had in the preceding ten (10) years, up to and including the present date, stating as to each such job:

     i.    the dates of your employment;
    ii.   the name and address of your employer;
   iii.  the existence of any employment contract or agreement and the location of said employment contract or agreement;
    iv.   your job title;
    v.    a description of your job responsibilities;
    vi.   your hourly, weekly or monthly rate of compensation;
   vii.  the average number of hours per week you worked; and
  viii.  the reason for leaving each job.

**Response No. 6:**

Mrs. Porter objects to Interrogatory No. 6 on the grounds that it is overly broad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Objections above, Mrs. Porter states as follows:

- August 1994 through December 2000: nurse practitioner at Correctional Healthcare Solutions, 200 Highpoint Drive, Chalfont, PA, assigned to the Suffolk County House of Corrections. Compensated at rate of $27.50 per hour. Hired part-time initially,

moved to full-time within a year. Left this job when CHS' contract with Suffolk County was not renewed.

- January 2001 through June 10, 2003: nurse practitioner for defendant CMS assigned to the Suffolk County House of Corrections. Compensated at rate of $32.50 per hour. Barred from the House of Corrections on June 10, 2003 and apparently terminated by CMS shortly thereafter.

- October 2003 through present: nurse practitioner for defendant CMS assigned to the Essex County Correctional Facility. Compensated at rate of $34.48 per hour and worked full-time through February 28, 2004. Since February 28, 2004, has worked approximately eight hours per week as a per diem nurse practitioner.

- April 2004 through present: nurse practitioner for UMass Correctional Health, 1 Research Drive, Westborough, MA 01581 at MCI-Cedar Junction, Walpole, MA. Compensated at rate of $37.50 for 24 hours per week.

Further answering, Mrs. Porter directs defendant to the resumes included in her document production accompanying her Response to Defendant's Request for Production of Documents.

**Interrogatory No. 7**

Please state each and every fact upon which you base your allegations in ¶17 of your Amended Complaint that the Defendants "[Suffolk County Sheriff's] Department and CMS were common law and joint employers of Mrs. Porter", including:

    i. how the Suffolk County Sheriffs Department dictated the hours and days you worked,

    ii. how the Suffolk County Sheriffs Department dictated the manner in which you performed your responsibilities;

    iii. how the Suffolk County Sheriffs Department dictated the manner in which you were permitted to interact with inmates; and

    iv. how the Suffolk County Sheriff's Department dictated the times that you were permitted to see inmates.

**Response No. 7:**

Mrs. Porter objects to Interrogatory No. 7 on the ground that it seeks information already in the possession of Defendants. Mrs. Porter further objects to Interrogatory No. 7 on the grounds that it is vague, overbroad and unduly burdensome. Subject to these objections, and to the

General Objections above, Mrs. Porter states that the HOC controlled Mrs. Porter's job

responsibilities in a myriadad ways. A few examples of the HOC's control over Mrs. Porter

include the following:

- She was required to adhere to HOC internal guidelines including the HOC Employee Code of Conduct;

- The hours and days that she worked was dictated by the contract entered into between the HOC and CMS;

- Her treatment of inmates was subject to the cooperation and/or approval of corrections officers and/or their supervisors on virtually a daily basis;

- Her daily schedule was set by the HOC;

- Her access to inmates was controlled in a number of ways—for instance, the time and location where she could treat inmates was often dictated by the HOC, and often she was required to wait until corrections officer or SERT team members were present.

- The HOC retained the power to bar any employee from its facility and did, in fact, bar Mrs. Porter from the HOC.

**Interrogatory No. 8:**

Please describe fully the circumstances surrounding your interaction with the inmate referenced in ¶57 of your Amended Complaint including:

    i.    what cell was the inmate housed in;
    ii.   the distance between you and the inmate when you spoke;
   iii.   the specific time of day that the interaction took place;
   iv.   the identity of each and every individual present in the infirmary during the interaction;
    v.   the specific observations you made of the inmate's physical condition; and
   vi.   the conversation that you had with the inmate, detailing the statements he made to you and the statements you made to him.

**Response No. 8:**

Mrs. Porter objects to Interrogatory No. 8 to the extent that the information sought is in

the possession of defendants. Mrs. Porter further objects to Interrogatory No. 8 on the ground that

it is premature, inasmuch as Mrs. Porter has served discovery requests on defendants and is awaiting complete responses. Mrs. Porter further objects to Interrogatory No. 8 on the ground that certain of the subparts are not calculated to lead to the discovery of admissible information.

Subject to these objections, and to the General Objections above, Mrs. Porter states as follows: on May 19, 2003, Mrs. Porter became aware that an inmate, RR, was being transferred to the infirmary on MOA status. Mrs. Porter was acquainted with RR from a previous incarceration in November 2002, when, at the request of the FBI, she worked with RR to gather information with respect to a federal investigation of another corrections facility. On May 19, 2003, after RR was transferred to the infirmary, he called out to Mrs. Porter as she walked by his cell on her way to the ladies room. Mrs. Porter does not recall what his cell number was. RR showed Mrs. Porter bruises on his upper arm and chest that he said were caused by a corrections officer. RR said that he claimed that he was suicidal so that he could be transferred to the relative safety of the infirmary. Because of her previous involvement with RR, Mrs. Porter did not want to call attention to this visit, so she did not conduct an examination of RR (on-duty physician assistant Beth Bringola did). Mrs. Porter does not recall the names of other corrections officers present in the infirmary at this time.

Mrs. Porter immediately reported the incident to mental health employee Gayle Bartley and Donna Jurdak. In addition, Mrs. Porter immediately prepared and completed a SID Incident Report related to RR's allegations. She intended to give this report to Ms. Jurdak to deliver directly to Mary Ellen Mastrorilli, but Ms. Jurdak was in a meeting so Mrs. Porter took the report home that night. Mrs. Porter believes that either she or Ms. Jurdak were not at work on May 20, 2003, so she was unable to submit the report on that date. On or about May 21, 2003, Mrs. Porter gave the report to Ms. Jurdak, who left it with Ms. Mastrorilli's secretary. Mrs. Porter also

contacted FBI agent Krista Snyder about this incident on May 19, 2003.

On May 22, 2003, Mrs. Porter was interviewed by SID investigators about the incident. On May 28, 2003, Mrs. Porter was interviewed a second time by SID investigators about the incident. During this second interview, Mrs. Porter felt intimidated by the nature of the investigators' questions. Mrs. Porter was asked if she had contacted the FBI regarding the incident. She admitted that she had. Mrs. Porter also reported this meeting to Ms. Snyder.

On May 29, 2003, Mrs. Porter again walked by RR in his cell. RR showed Mrs. Porter a laceration on his forehead. He claimed that, on the previous night, a corrections officer came into his cell, pushed him on the ground and placed his boot on RR's forehead. Mrs. Porter did not conduct an examination of RR. Mrs. Porter related this information to SID investigators on May 29, 2003. She also reported the incident to Ms. Snyder.

On or about June 10, 2003, Mrs. Porter was summonsed to Ms. Jurdak's office. Ms. Jurdak was there, along with Deputy Superintendent Maryellen Mastrorilli. Ms. Mastrorilli informed Mrs. Porter that she was barred from the Suffolk County House of Corrections, effective immediately, because she spoke with an outside agency. Mastrorilli read Suffolk County House of Corrections Regulation 220 to Mrs. Porter and claimed that she had violated the provision contained therein regarding communications with an outside agency. Ms. Porter collected her belongings and left the facility.

**Interrogatory No. 9:**

Please identify each and every individual to whom you reported your observations of the inmate in the infirmary referenced in ¶57 of your Amended Complaint including:

    i.    for each individual the specific date and time that you reported your observations;
    ii.   the specific manner or means by which you made each report;
   iii.  if made by a written report, the specific location of the original report, and if the specific location of the original report is unknown the identity of the person(s) to whom you gave the original report and when.

    iv.    the specific information communicated; and

    v.    whether you recorded your observations of and communications with the inmate in the inmate's medical progress notes and if so when.

**Response No. 9:**

Mrs. Porter objects to Interrogatory No. 9 to the extent that the information sought is in the possession of defendants. Mrs. Porter further objects to Interrogatory No. 9 on the ground that it is premature, inasmuch as Mrs. Porter has served discovery requests on defendants and is awaiting complete responses. Mrs. Porter further objects to Interrogatory No. 9 on the ground that certain of the subparts are not calculated to lead to the discovery of admissible information. Subject to these objections, and to the General Objetions above, Mrs. Porter refers Defendants to her response to Interrogatory No. 8.

**Interrogatory No. 10**

Please describe fully the circumstances surrounding your interaction with the inmate referenced in ¶59 of your Amended Complaint including:

    i.    what cell was the inmate housed in;

    ii.    the distance between you and the inmate when you spoke;

    iii.    the specific time of day that the interaction took place;

    iv.    the identity of each and every individual present in the infirmary during the interaction;

    v.    the specific observations you made of the inmate's physical condition; and

    vi.    the conversation that you had with the inmate, detailing the statements he made to you and the statements you made to him.

**Response No. 10:**

Mrs. Porter objects to Interrogatory No. 10 to the extent that the information sought is in the possession of defendants. Mrs. Porter further objects to Interrogatory No. 10 on the ground that it is premature, inasmuch as Mrs. Porter has served discovery requests on defendants and is awaiting complete responses. Mrs. Porter further objects to Interrogatory No. 10 on the ground that certain of the subparts are not calculated to lead to the discovery of admissible information.

Subject to these objections, and to the General Objetions above, Mrs. Porter refers Defendants to her response to Interrogatory No. 8.

### Interrogatory No. 11

Please identity each and every individual to whom you reported the "suspected inmate abuse" referenced in ¶59 of your Amended Complaint including:

    i.    the date and time of said report;
    ii.    the specific manner or means by which you made each report;
    iii.    if made by a written report, the specific location of the original report, and if the specific location of the original report is unknown the identity of the person(s) to whom you gave the original report and when
    iv.    the content of said report; and
    v.    d. [*sic*] whether you recorded your observations of and communications with the inmate in the inmate's medical progress notes and if so when.

### Response No. 11:

Mrs. Porter objects to Interrogatory No. 11 to the extent that the information sought is in the possession of defendants. Mrs. Porter further objects to Interrogatory No. 11 on the ground that certain of the subparts are not calculated to lead to the discovery of admissible information. Subject to these objections, and to the General Objetions above, Mrs. Porter refers Defendants to her response to Interrogatory No. 8.

### Interrogatory No. 12

Please specify and describe in detail who authored the "written report" referred to in ¶58 of your Amended Complaint, when and where was it prepared, who requested that it be written, when was it produced to Department Personnel, all persons to whom you provided the report, the specific location of the original report, and, if the specific location of the original report is unknown, the identification of the person(s) to whom you gave the original report and when.

### Response No. 12:

Mrs. Porter objects to Interrogatory No. 12 to the extent that the information sought is in the possession of defendants. Mrs. Porter further objects to Interrogatory No. 12 on the ground that certain of the subparts are not calculated to lead to the discovery of admissible information.

Subject to these objections, and to the General Objetions above, Mrs. Porter refers Defendants to

her response to Interrogatory No. 8.

**Interrogatory No. 13**

Please state each and every alleged defamatory statement, whether written or oral, that you allege Defendant Cabral has made about Mrs. Porter and the basis for your claim that they are defamatory.

**Response No. 13:**

Mrs. Porter objects to Interrogatory No. 13 on the ground that it is premature, inasmuch as

she is awaiting complete responses to her discovery requests.  Subject to this objection, and to the

General Objections above, Mrs. Porter states that Defendant Cabral's defamatory statements

regarding Mrs. Porter include the following: (i) a written statement to WCVB Channel 5 that Mrs.

Porter had her own secret and unspecified "agenda"; (ii) a statement during a televised debate on

the "Greater Boston" television program on or about September 8, 2004 that Mrs. Porter was not

a whistleblower and that Mrs. Porter "clearly had" her "own agenda"; (iii) a statement through

Defendant Cabral's spokesman appearing in an article in the October 29, 2004 edition of The

Boston Globe Magazine that Mrs. Porter's "allegations were 100 percent ridiculous…[t]hat's why

you haven't seen any follow up [after the election]"; (iv) a repetition of Defendant Cabral's prior

statement that Mrs. Porter was not a whistleblower appearing in an article in the December 26,

2004 edition of The Boston Globe Magazine.

These statements were all published via print or electronic media.  All of these statements

were demonstrably false.  Defendant Cabral did not have a privilege to make such statements, and

the statements caused damage to Mrs. Porter's reputation.

**Interrogatory No. 14:**

Please describe fully all the circumstance surrounding your interview with Boston Globe

14

reporter Andrea Estes that was printed in the Boston Globe on or about August 24, 2004 including:

    i.    how the interview was arranged;

    ii.    the identity of the person or persons who arranged the interview;

    iii.    the identity of all persons present for the interview;

    iv.    the identification and specific location of all documents provided by you or your representatives to the interviewer and/or the Boston Globe;

    v.    the identification and specific location of all documents and materials reviewed by you in preparation for the interview; and

    vi.    whether the interview was recorded, filmed or photographed.

**Response No. 14:**

       Mrs. Porter objects to Interrogatory No. 14 on the grounds that it is not calculated to lead to the discovery of admissible evidence. Mrs. Porter further objects to Interrogatory No. 14 to the extent it calls for information that is available from public sources or which can be more readily obtained from other sources that are equally available to Defendants as they are to Mrs. Porter. Subject to these objections, and to the General Objections above, Mrs. Porter states as follows: Mrs. Porter's counsel was contacted by the reporter to arrange for the interview. The interview was conducted via conference call. The photograph was taken later at Mrs. Porter's home. No documents were provided to the interviewer and/or the Boston Globe and Mrs. Porter reviewed no documents to prepare for the interview. Mrs. Porter is unaware whether or not the interview was recorded.

**Interrogatory No. 15**

       Please describe fully all the circumstances surrounding your interview with WCVB Channel Five reporter Janet Wu that aired on or about August 25, 2004 including:

    i.    how the interview was arranged;

    ii.    the identity of the person or persons who arranged the interview;

    iii.    the identity of all persons present for the interview;

    iv.    the identification and specific location of all documents provided by you or your representatives to the interviewer and/or Channel Five;

    v.    the identification and specific location of all documents and materials reviewed by you in preparation for the interview;

vi.    whether any portion of the interview was conducted off camera; and

vii.    whether you or your representatives were provided with a copy of the recorded interview.

## Response No. 15:

Mrs. Porter objects to Interrogatory No. 15 on the grounds that it is not calculated to lead to the discovery of admissible evidence. Mrs. Porter further objects to Interrogatory No. 15 to the extent it calls for information that is available from public sources or which can be more readily obtained from other sources that are equally available to Defendants as they are to Mrs. Porter. Subject to these objections, and to the General Objections above, Mrs. Porter states as follows: Mrs. Porter was contacted initially by Janet Wu via telephone, but the interview was conducted by Liz Brunner. The interview was conducted at the television studio. A number of people were present in the large studio, but the only people present related to the interview were Ms. Brunner, Mrs. Porter and counsel for Mrs. Porter. The interview was conducted on camera. No documents were provided to Channel Five. The only portion of the interview conducted off-camera related to logistics for the interview. Neither Mrs. Porter nor her representatives were provided a copy of the interview.

## Interrogatory No. 16

Please state the following if you have sought or received any form of treatment, counseling or therapy as a result of the allegations contained in your Amended Complaint:

i.    the name and address of each therapist, counselor or doctor;

ii.    all occasions on which counseling or therapy was either sought or received;

iii.    any and all diagnoses of your condition;

iv.    the cost of said counseling or therapy to date; and

v.    whether any individual suggested that you should receive counseling or therapy, and if so, the identity of all such individuals, the specific dates when such suggestions were made, and the specific content of each such suggestion.

16

**Response No. 16:**

Mrs. Porter objects to Interrogatory No. 16 on the grounds that it is overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Subject to these objections, and to the General Objections above, Mrs. Porter states as follows: Mrs. Porter only relented to seek counseling after being urged by family and friends on multiple occasions to do so. At the time, Mrs. Porter was having difficulty sleeping and could not tell her story without crying. She was upset, angry and hurt yet still had to deal with her day-to-day obligations such as providing care for her ailing mother and husband at the time that she was subjected to the events described in the Amended Complaint. Mrs. Porter initially met with two counsellors but was told they would not see her because they were frightened off by the events described in the Amended Complaint. Finally Mrs. Porter was treated by Dr. Harvey Kraslow in Worcester, MA. She had approximately 8-10 sessions with Dr. Kraslow. Dr. Kraslow instructed her to resume therapy if her problems return. Mrs. Porter has suffered additional medical problems due to Defendants' conduct, including bilateral pneumonia. Her treating physician is Emmet Clemente in Milford, MA. The cost of these medical expenses were covered by insurance, although Mrs. Porter paid a co-payment.

**Interrogatory No. 17:**

If you sought or received counseling or therapy of any kind during the five years before the dates of the allegations made in your Amended Complaint, please state the following:

    i.    the names and address of each therapist, counselor or doctor;
    ii.   all occasions on which counseling or therapy was either sought or received; and
   iii.   any and all diagnoses of your condition.

**Response No. 17:**

Mrs. Porter objects to Interrogatory No. 17 on the grounds that it is overbroad, unduly

17

burdensome and not calculated to lead to the discovery of admissible evidence.  Subject to these

objections, and to the General Objections above, Mrs. Porter states that she did not seek or receive

counseling or therapy of any kind during the five years before the dates of the allegations made in

the Amended Complaint.

**Interrogatory No. 18:**

Identify each person you intend to call to testify at trial and for each such person, please state what you anticipate to be the substance of said person's testimony at trial.

**Response No. 18:**

Mrs. Porter objects to Interrogatory No. 18 on the ground that it is premature.  Mrs. Porter

will identify her witnesses in connection with the applicable deadlins established by the Court in

this matter.

**Interrogatory No. 19:**

For each person whom you or your attorney expect to call as an expert witness at the time of trial, please state:

     i.     his/her full name, residential and business address, occupation and field of expertise;

    ii.    the subject matter to which he/she is expected to testify;

   iii.    the substance of the facts to which he/she is expected to testify;

    iv.    the substance of the opinions he/she is expected to give; and

    v.    a summary of the grounds for each opinion.

**Response No. 19:**

Mrs. Porter objects to Interrogatory No. 19 on the ground that it is premature.  Mrs. Porter

will supplement her response to this Interrogatory in connection with the expert discovery

schedule in this matter.

**Interrogatory No. 20:**

Please provide a complete, itemized account of all economic losses and expenses that you claim were incurred by you as a result of the allegations contained in your Amended Complaint.

**Response No. 20:**

Subject to the General Objections above, Mrs. Porter states that her losses and expenses incurred as a result of defendants' actions include, but are not limited to, the following: four months of back pay, trebled pursuant to M.G.L. c. 149 § 185; the lost value of 401(k) plan contributions from Mrs. Porter and employer contributions as well as the lost enhanced value of the 401(k) plan; compensatory damages for the mental suffering and emotional distress caused by defendants; expenses related to Mrs. Porter's job search after she was terminated; expenses related to the more than 60 additional miles she is forced to travel with her current position with CMS; at least eight counseling sessions; expenses related to medical problems suffered in connection with this incident including bilateral pneumonia and its aftereffects; punitive damages; and attorneys' fees.

Respectfully Submitted,

SHEILA J. PORTER,

By her attorneys,

Joseph F. Savage, Jr. (BBO #443030)
David S. Schumacher (BBO #647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

Dated: March 23, 2005

19

## <u>VERIFICATION</u>

I hereby state that the answers contained in the foregoing document are true and correct to the best of my information and belief. To the extent the responses are not based on personal knowledge, they are based upon reasonable investigation of records in my possession, custody or control and upon information collected and made available to me by others.

*Sheila J. Porter*

Sheila J. Porter

Dated: March 21, 2005

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHEILA J. PORTER

Plaintiff,

v.

ANDREA CABRAL, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, SUFFOLK
COUNTY and CORRECTIONAL MEDICAL
SERVICES, INC.

Defendants.

Civil Action No. 04-11935-DPW

## DECLARATION OF SHEILA PORTER

I, Sheila Porter, hereby declare and state under the pains and penalties of perjury that the following is true and correct:

1.      My name is Sheila Porter.  I make this Declaration of my own personal knowledge.

2.      In 1999 I was approached by the Federal Bureau of Investigation ("FBI") and asked to provide them with information concerning possible criminal activity at the Suffolk County House of Corrections ("HOC").  Between 1999 and June 2003 I provided information to the FBI periodically on these topics.

3.      If I have to publicly disclose the specific information that I provided to the FBI, I am fearful that there will be retaliation against me and/or my family as well as the victims of the possible unlawful activity.

4.      For instance, on one investigation where I cooperated with the FBI, two other cooperating individuals suffered serious physical harm that I believe was connected to their

cooperation. I am fearful that I or others close to me might also be harmed if this investigation, and my role in it, is publicly revealed.

5.    Individuals within the Suffolk County Sheriff's Department ("SCSD") have a history of retaliating against people who report the misconduct of SCSD employees. For instance, I witnessed retaliation against others who spoke out about abuses or problems at the SCSD, including Deyanira Feliz and Bruce Baron.

6.    I have personally experienced retaliation for reporting others' misconduct. Immediately after I testified in a criminal trial against a SCSD employee, approximately $2,000 of damage was inflicted on my car while it was parked at the HOC. Numerous portions of the car were smashed with a tire iron, which was found at the scene.

7.    My fears are particularly acute because some of the individuals who I provided information to the FBI about are still with the SCSD.

8.    I also believe that, if I am required to publicly disclose this information, people will be less likely to report misconduct within the HOC, and elsewhere, to law enforcement authorities.

I declare under the pains and penalties of perjury that the foregoing is true and correct. Executed on November 15, 2005.

/s/ Sheila Porter
Sheila Porter

# EXHIBIT 4

```
 1                                          VOL:  I
                                         PAGES: 1-202
 2                                       EXHIBITS: 1-6

 3

 4

                       UNITED STATES DISTRICT COURT
 5
                    FOR THE DISTRICT OF MASSACHUSETTS
 6
        * * * * * * * * * * * * * * * *
 7      SHEILA J. PORTER,               *
                       Plaintiff        *
 8           -vs-                       *   Civil Action
        ANDREA CABRAL; SUFFOLK COUNTY   *   No. 04-11935-DPW
 9      SHERIFF'S DEPARTMENT; SUFFOLK   *
        COUNTY and CORRECTIONAL MEDICAL *
10      SERVICES, INC.,                 *
                       Defendants       *
11      * * * * * * * * * * * * * * * *

12        CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

13

14          DEPOSITION OF ELIZABETH KEELEY, ESQUIRE, a
        witness called on behalf of the Plaintiff, in the
15      above-captioned matter, said deposition being
        taken pursuant to the Federal Rules of
16      Civil Procedure, before Patricia M.
        McLaughlin, a Certified Shorthand Reporter and
17      Notary Public in and for the Commonwealth of
        Massachusetts, at the offices of Goodwin Procter
18      LLP, Exchange Place, Boston, Massachusetts, on
        Wednesday, May 11, 2005, commencing at 10:08 a.m.

19

20

21          McLAUGHLIN & ASSOCIATES COURT REPORTERS
                    92 DEVIR STREET, SUITE 304
22             MALDEN, MASSACHUSETTS   02148
                        781.321.8922
23             WWW.E-STENOGRAPHER.COM

24
```

53

1   A   No, that's why I'm saying I'm not sure that I

2       spoke to the Sheriff about it.  I just know

3       that, when it came to my attention, that that

4       information came to my attention about what

5       Rene Rosario was saying, even though I knew

6       at that point he was not a credible reporter

7       and I didn't know that what he was saying was

8       true, but that if it was heard by people,

9       that it would put Nurse Porter's personal

10      safety at issue.

11          Because I don't recall when the

12      conversation with the Sheriff -- whether she

13      initiated the discussion about Nurse Porter

14      or I did, in my memory what sort of advanced

15      the decision-making process as to what to do,

16      that piece of information was important.

17   Q   So you don't recall whether you initially

18      brought up Nurse Porter during this

19      conversation or whether are the Sheriff did?

20   A   I don't.  I honestly don't.

21   Q   When the topic came up, just to be clear,

22      what was the purpose for discussing Nurse

23      Practitioner Porter at that time?

24   A   Because of the serious nature of the

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

# EXHIBIT 5

1
                                     VOL:  I
                               PAGES: 1-247

2
                           EXHIBITS: 1-7

3

4
         UNITED STATES DISTRICT COURT

5
       FOR THE DISTRICT OF MASSACHUSETTS

6
 * * * * * * * * * * * * * * * *
SHEILA J. PORTER,          *

7
           Plaintiff   *
    -vs-           *  Civil Action

8
ANDREA CABRAL; SUFFOLK COUNTY *  No. 04-11935-DPW
SHERIFF'S DEPARTMENT; SUFFOLK *

9
COUNTY and CORRECTIONAL MEDICAL *
SERVICES, INC.,         *

10
         Defendants  *
 * * * * * * * * * * * * * * * *

11

12
  CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

13

14
    DEPOSITION OF VIKTOR THEISS, ESQUIRE, a witness
called on behalf of the Plaintiff, in the
above-captioned matter, said deposition being

15
taken pursuant to the Federal Rules of
Civil Procedure, before Patricia M.

16
McLaughlin, a Certified Shorthand Reporter and
Notary Public in and for the Commonwealth of

17
Massachusetts, at the offices of Goodwin Procter
LLP, Exchange Place, Boston, Massachusetts, on

18
Tuesday, May 24, 2005, commencing at 10:05 a.m.

19

20

21

22
    McLAUGHLIN & ASSOCIATES COURT REPORTERS
        92 DEVIR STREET, SUITE 304

23
     MALDEN, MASSACHUSETTS  02148
         781.321.8922

24
       WWW.E-STENOGRAPHER.COM

42

1    Q    At the time you didn't have concerns about

2         his personal safety?

3            MS. CAULO:  Objection as to what time

4         frame.

5            MR. SCHUMACHER:  The time frame we have

6         been talking about for the last ten minutes,

7         which was May and June of 2003.

8    A    No, I didn't have any serious concerns for

9         his safety.

10    Q    Did you have any concerns for his safety?

11    A    Yes, in the sense that the more he talked

12         about working with the FBI, the more he made

13         allegations that were not sustainable, that

14         there might be a risk to him that someone

15         would retaliate against him.  That's why we

16         try not to have inmates housed that testify

17         against staff, et cetera.

18            Did I have an actual concrete concern?

19         No.  Did I have a person that was going to

20         harm him?  No.  For caution's sake or

21         safety's sake, I think it's a wiser course to

22         have somebody housed elsewhere.  You just

23         avoid the problems all together, because I

24         don't have the ability to police the actions

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

43

1           of every individual officer on a 24-hour

2           basis.  It's not like we can be everywhere at

3           all times.  It's safer to have a person just

4           out of the department.

5      Q    In addition to the resources that SID had to

6           expend on this guy, you had concerns about

7           his personal safety?

8      A    Generic concern, yes.  Again, not a specific

9           concern.  There wasn't specific officers

10          identified that were targeting him, but yes,

11          a generic concern for his safety as someone

12          who had cooperated and testified.

13     Q    Indeed, you did make efforts to have him

14          transferred, correct?

15     A    Yes, I did.

16     Q    What were those efforts?

17     A    I contacted Krista Snyder and asked for her

18          assistance, because since he had cooperated

19          with them and they might have resources that

20          we wouldn't, it was not easy to transfer

21          Rosario within the county system.  He had

22          been previously transferred to a number of

23          institutions, sentenced to a number of

24          institutions and not had an easy time.

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

# EXHIBIT 6

## AFFIDAVIT

I, Christa J. Snyder, aver the following to be true and correct to the best of my knowledge:

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI), currently assigned to the Boston Division;

2.      Beginning in 1999, Sheila Porter provided information to the FBI, on a confidential basis, about events at the Suffolk County House of Corrections (HOC);

3.      Sheila Porter was providing this information as of the date of her dismissal from HOC;

4.      On May 20, 2003, and one or more other dates, Sheila Porter provided information to the FBI about events at HOC;

5.      On or about May 29, 2003, Sheila Porter provided information to the FBI about her having been questioned by Sheriff's investigators regarding her previously having provided information to the FBI.

I declare the foregoing is true to the best of my knowledge.  Signed under pains and penalties of perjury, this _9_ day of _June_, 2005.

Christa J. Snyder
Special Agent
Federal Bureau of Investigation
Boston, Massachusetts

SP 218