
EXHIBIT A

```
                                            VOL: I
                                            PAGES: 1-201
                                            EXHIBITS: 1-7


            UNITED STATES DISTRICT COURT

        FOR THE DISTRICT OF MASSACHUSETTS


    * * * * * * * * * * * * * * * *
    SHEILA J. PORTER,             *
              Plaintiff           *
         -vs-                     *  Civil Action
    ANDREA CABRAL; SUFFOLK COUNTY *  No. 04-11935-DPW
    SHERIFF'S DEPARTMENT; SUFFOLK *
    COUNTY and CORRECTIONAL MEDICAL *
    SERVICES, INC.,               *
              Defendants          *
    * * * * * * * * * * * * * * * *
```

    DEPOSITION OF ANDREA CABRAL, ESQUIRE, a witness called on behalf of the Plaintiff, in the above-captioned matter, said deposition being taken pursuant to the Federal Rules of Civil Procedure, before Patricia M. McLaughlin, a Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, on Friday, May 6, 2005, commencing at 9:40 a.m.


            McLAUGHLIN & ASSOCIATES COURT REPORTERS
                92 DEVIR STREET, SUITE 304
                MALDEN, MASSACHUSETTS  02148
                        781.321.8922
                   WWW.E-STENOGRAPHER.COM

```
                                              VOL:      II
                                              PAGES: 202-397
                                              EXHIBITS:  8-12


            UNITED STATES DISTRICT COURT

         FOR THE DISTRICT OF MASSACHUSETTS



    * * * * * * * * * * * * * * * *
    SHEILA J. PORTER,             *
               Plaintiff          *
          -vs-                    *   Civil Action
    ANDREA CABRAL; SUFFOLK COUNTY *   No. 04-11935-DPW
    SHERIFF'S DEPARTMENT; SUFFOLK *
    COUNTY and CORRECTIONAL MEDICAL *
    SERVICES, INC.,               *
               Defendants         *
    * * * * * * * * * * * * * * * *


    CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER


         CONTINUED DEPOSITION OF ANDREA CABRAL, ESQUIRE,
    a witness called on behalf of the Plaintiff, in the
    above-captioned matter, said deposition being
    taken pursuant to the Federal Rules of
    Civil Procedure, before Patricia M.
    McLaughlin, a Certified Shorthand Reporter and
    Notary Public in and for the Commonwealth of
    Massachusetts, at the offices of Goodwin Procter
    LLP, Exchange Place, Boston, Massachusetts, on
    Friday, June 24, 2005, commencing at 10:10 a.m.



              McLAUGHLIN & ASSOCIATES COURT REPORTERS
                   92 DEVIR STREET, SUITE 304
                  MALDEN, MASSACHUSETTS  02148
                         781.321.8922
                    WWW.E-STENOGRAPHER.COM
```

86

```
 1         whether or not -- I don't recall whether or
 2         not she even got back to me.
 3    Q    Give me a complete statement, if you would,
 4         of the reasons why you concluded or decided
 5         to give the order to bar Miss Porter.
 6    A    She's a nurse working at the House of
 7         Correction; pursuant to our contract with CMS
 8         is told by an inmate that the inmate has been
 9         abused and beaten by an officer, alleges that
10         there is physical evidence of those bruises.
11         The nurse does not document in the medical
12         record her observations of what was relayed
13         to her by the patient.
14              Upon our discovery that these
15         allegations have been made and our discovery
16         that she, in fact, was one of the first
17         people to whom the allegations had been
18         reported, we request a confidential report.
19         The confidential report is not submitted in a
20         timely manner.  It is received by us ten days
21         subsequent to it being requested.  It is not
22         in memo form to Deputy Superintendent
23         Mastrorilli, to whom the report should have
24         been addressed, from Sheila Porter.  It is on
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

87

```
 1         a medical record form, which has particular
 2         significance to me and it is dated on the
 3         date of the incident in the space reserved
 4         for the date as though that's when the
 5         treatment was rendered.
 6    Q    Those are your entire reasons?
 7    A    Those were my reasons.
 8    Q    And it's your testimony that it had nothing
 9         to do with the fact that Miss Porter spoke to
10         the FBI?
11    A    No.
12    Q    Did you understand or assuming these are your
13         reasons --
14              MS. CAULO:  Objection.  She just
15         testified that those were her reasons.
16    Q    What is it in the policies of the Sheriff's
17         Department that makes any of these statements
18         of reasons that you have given a basis under
19         which someone can be barred from the
20         facility?
21    A    If I can refer to Exhibit 1?
22    Q    Sure.
23    A    Just going through the policy, certainly
24         under policy statements on Page 1, first, I
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

229

| | | |
|---|---|---|
| 1 | | memory of it? |
| 2 | A | I believe that was who I was speaking of, and |
| 3 | | it was clear to me that U.S. Attorney |
| 4 | | Sullivan was also speaking about |
| 5 | | Nurse Porter. |
| 6 | Q | In the second paragraph of Exhibit 8, you |
| 7 | | start with a reference to the June 16th |
| 8 | | meeting.  If you go to Exhibit 6, the third |
| 9 | | paragraph at the bottom of Page 1, the last |
| 10 | | two lines talk about that you answered, |
| 11 | | "Truthfully and unequivocally that |
| 12 | | Sheila Porter's assignment to the department |
| 13 | | was not cancelled because she provided |
| 14 | | information to the FBI or your office. |
| 15 | | Indeed, we had a candid and substantive |
| 16 | | discussion regarding the actual and |
| 17 | | appropriate reasons for that cancellation." |
| 18 | | Did I read that correctly? |
| 19 | A | You did. |
| 20 | Q | What were the actual and appropriate reasons |
| 21 | | that were expressed in the June 16th meeting |
| 22 | | to Mr. Sullivan and others as to the reason |
| 23 | | for cancelling Miss Porter's ability to come |
| 24 | | into the facility? |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

230

1   A   They were in a shorter, more concise version,
2       what I previously testified to as to my
3       reasons for barring her.  There was also --
4         I remember that Elizabeth Keeley spoke.
5       I think Viktor Theiss also spoke as well.
6       The sum and substance of it was that there
7       was no documentation in the medical record;
8       that a report wasn't given to us in a timely
9       manner.  What we received was not a
10      confidential report.  There was an issue
11      about the backdating of the report.  There
12      was additional conversation around some of
13      the other things that concerned us, the
14      subsequent appearance of Maureen Robinson at
15      the facility the next day.
16        And it was all happening -- this
17      conversation was all happening sort of at the
18      same time.  So there were a number of things
19      that were said.  I remembered it as a candid
20      and substantive discussion, but I don't have
21      an exact recollection as to what everyone
22      said and what everyone responded and what the
23      questions were.
24   Q   Are the reasons that you gave to Mr. Sullivan

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

231

```
 1        and the others at this meeting for
 2        Miss Porter's barring different in any way to
 3        the reasons that you indicated in your prior
 4        testimony of why you made the decision to bar
 5        her?
 6    A   I don't recall them as being different.
 7    Q   So you believe you gave both no fewer and no
 8        larger number of reasons to Mr. Sullivan than
 9        you've given in your testimony here as for
10        your reason for barring Miss Porter?
11            MS. CAULO:  Objection.
12    A   I could not say that.  I could not say that.
13        I don't have a specific recollection -- I
14        need to put this in context.  When we go to a
15        meeting with the U.S. Attorney, the first
16        assistant and the SAC, Ken Kaiser, we go to
17        this meeting believing that the
18        conversation -- or I should say that I went
19        to this meeting believing that we were going
20        to have a conversation about how to improve
21        the relationship between the U.S. Attorney's
22        Office, the FBI and the Sheriff's Department,
23        because historically that relationship had
24        not been good.
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

277

```
 1            campaign was forced to pay fines to the
 2            Office of Campaign and Political Finance?
 3                 MS. CAULO:  Objection.
 4    A       There may have been.
 5    Q       What incidents are you aware of?
 6    A       I'm aware of a -- what is the name of it?
 7            What are they called?  Dear friend card, a
 8            dear friend card that was sent out.  A dear
 9            friend card is essentially a card that people
10            who support the campaign send to friends and
11            neighbors encouraging them to vote for a
12            particular candidate.
13                 I didn't prepare or create the dear
14            friend card.  I'm aware that it was sent out.
15            In a bottom corner, it contained standard
16            language indicating if you wanted to
17            volunteer for the campaign or if you wanted
18            to contribute to the campaign, call or log
19            onto the website or something of that nature.
20                 Some of the people who sent out dear
21            friend cards were public employees, and
22            ultimately, the Office of Campaign Finance
23            essentially said that that could be
24            interpreted as a solicitation for money by
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

278

1  public employees. And we actually -- I'm not
2  sure actually who brought it to their
3  attention, but I remember distinctly that my
4  campaign manager called to inquire about it.
5  We spoke with them, and they determined what
6  the appropriate relief was. And we abided by
7  that.
8  Q  And the relief was a fine for violating
9  Section 13 of the Mass. General Laws,
10 Chapter 55?
11 A  Right. But that goes to my campaign,
12 Mr. Savage, not me.
13 Q  And you were aware of the dear friend cards
14 going out when they went out?
15    MS. CAULO: Objection.
16 A  I was aware when they went out. I was not
17 aware of everything that was contained in
18 them. I had seen an early draft. I had
19 perused an early draft. They went out in the
20 regular course as they do in campaigns.
21 Q  Did the early drafts contain the information
22 that violated the law?
23    MS. CAULO: Objection.
24 A  I clearly didn't see it. Had I seen it, I

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

279

```
 1        probably would have spoken up and said should
 2        this be here, but I didn't see it.
 3    Q   I'm wondering whether it contained it?
 4    A   I don't know.  If I didn't see it, I couldn't
 5        tell you whether or not it contained it.
 6    Q   Was there another incident where your
 7        campaign was fined for breaking the law?
 8            MS. CAULO:  Objection.
 9    A   I object to your characterization of breaking
10        the law.  There might have been a second
11        incident.  I don't have a recollection of
12        what it is.
13    Q   Do you have a recollection of an incident of
14        where a sheriff's employee was moving
15        furniture from the Sheriff's Department to
16        your campaign offices in violation of the
17        law?
18            MS. CAULO:  Objection.
19    A   I have a recollection that a Sheriff's
20        Department employee instructed another to
21        drop off surplused furniture and that that
22        was unknown to me when it happened.  When I
23        found out that it happened, I suspended the
24        employee for two weeks.
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

292

```
 1       U.S. Attorney's Office is disclosing
 2       confidential information like that, I think
 3       it would be extremely improper.
 4           THE WITNESS:  I would like to also add
 5       for the record that an application to the
 6       U.S. Attorney's Office, I am aware, is
 7       completely confidential in all of its
 8       particulars and that I am very surprised that
 9       Mr. Savage has this information.
10           MR. SAVAGE:  Mr. Savage has asked
11       questions.  Mr. Savage doesn't have
12       information.
13           THE WITNESS:  I want the record to
14       reflect that Mr. Savage clearly has
15       information related to very specific and very
16       particular details of my application to the
17       U.S. Attorney's Office.
18       BY MR. SAVAGE:
19   Q   And you violated the statements on your
20       student loan applications that indicate that
21       you would repay the money, right?
22           MS. CAULO:  Objection.
23   A   Mr. Savage, at the time that I applied for
24       the loans, I promised to pay them, which all
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

293

```
 1       people who apply for the loans promise to do.
 2       At some point I was unable to repay them.  I
 3       defaulted on them.  As they should have, the
 4       people involved brought lawsuits in order to
 5       get the money back, because I simply didn't
 6       have it.  I didn't contest those lawsuits,
 7       and I repaid all of those loans.
 8   Q   When did your tenure end at the Suffolk
 9       County District Attorney's Office?
10           MS. CAULO:  Objection.  Asked and
11       answered at the first day of her deposition.
12   A   Sometime in 2002, in April, I think.
13   Q   And did you resign that position?
14   A   I did.
15   Q   Did you have accrued leave at the time you
16       left that position?
17   A   I did.
18   Q   Did you receive it as a lump sum payment or
19       how was that handled?
20   A   I was paid for the time, but I was paid for
21       the time over a period of time.
22   Q   Is that the typical way in which it was
23       handled?
24           MS. CAULO:  Objection.
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922