**EXHIBIT B**

```
                                            VOL:  I
                                         PAGES: 1-202
                                       EXHIBITS: 1-6
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * *

SHEILA J. PORTER,
        Plaintiff
   -vs-
ANDREA CABRAL; SUFFOLK COUNTY    Civil Action
SHERIFF'S DEPARTMENT; SUFFOLK    No. 04-11935-DPW
COUNTY and CORRECTIONAL MEDICAL
SERVICES, INC.,
        Defendants

* * * * * * * * * * * * * * * *

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

    DEPOSITION OF ELIZABETH KEELEY, ESQUIRE, a witness called on behalf of the Plaintiff, in the above-captioned matter, said deposition being taken pursuant to the Federal Rules of Civil Procedure, before Patricia M. McLaughlin, a Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, on Wednesday, May 11, 2005, commencing at 10:08 a.m.

McLAUGHLIN & ASSOCIATES COURT REPORTERS
92 DEVIR STREET, SUITE 304
MALDEN, MASSACHUSETTS 02148
781.321.8922
WWW.E-STENOGRAPHER.COM

61

```
 1            called Mary Ellen Mastrorilli back.
 2      Q     What transpired during your conversation with
 3            Miss Powers?
 4                 MS. CAULO:  Objection.  Attorney client.
 5      Q     The purpose of your conversation with
 6            Miss Powers, was she relating legal advice to
 7            you at that time?
 8                 MS. CAULO:  Objection.
 9      A     Yes.
10      Q     After you looked at S220, did you contact
11            Miss Mastrorilli again?
12      A     Yes, I had it open in front of me.  My memory
13            is I picked up the phone, and I called Mary
14            Ellen.  And I told her the reasons that she
15            could give or share with Sheila Porter.
16      Q     What were those reasons?
17      A     The reasons, as I recall, were she was -- you
18            can tell her she's being barred for
19            violations of S220.  I remember that I was
20            flipping through S220 and Section C, which
21            has to do with -- confidential communications
22            was first, so I may have mentioned that
23            first; that she had communicated confidential
24            inmate information outside the department.  I
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

62

1   flipped through some more pages, and I
2   remember telling her her failure to file a
3   timely report, her failure to document a
4   medical file. And I remember that -- again,
5   I'm not sure of the order, but it was failure
6   to document a medical file, failure to file a
7   timely report.
8       I may have mentioned that her failure to
9   file a report -- my memory is that I said
10  this: That failure to file a report
11  interfered with an ongoing investigation;
12  that her report was inconsistent with other
13  reports of what people claim to have seen in
14  terms of injuries to Rene Rosario, so that it
15  was not a credible report.
16      I remember hesitating, because I wasn't
17  sure whether I wanted to say this, but I
18  remember pausing. And I said, "And you can
19  share with her that because Rene Rosario has
20  been talking about his role as an informant
21  and he has mentioned her name in the context
22  of cooperating with the FBI, that the
23  department could not assure her personal
24  safety."

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

63

| | | |
|---|---|---|
| 1 | Q | These were all factors that you related to |
| 2 | | Miss Mastrorilli during this conversation? |
| 3 | A | Yes, that's my memory of what I said to her. |
| 4 | Q | Did you instruct her to relate this |
| 5 | | information to Mrs. Porter as the reasons for |
| 6 | | her barring? |
| 7 | A | I don't think I said "now tell her exactly |
| 8 | | what I just told you," but she asked me what |
| 9 | | the reasons were that she could give and |
| 10 | | that's what I told her. |
| 11 | Q | And these are all included in the reasons |
| 12 | | that could be related to Miss Porter? |
| 13 | A | Correct. |
| 14 | Q | Do you know if Miss Mastrorilli, in fact, did |
| 15 | | relay this information to Mrs. Porter? |
| 16 | A | I don't know what she said to her. |
| 17 | Q | Did you have any follow-up conversations with |
| 18 | | Miss Mastrorilli? |
| 19 | A | I recall having one. |
| 20 | Q | What happened during that follow-up |
| 21 | | conversation? |
| 22 | A | It was maybe a week or two later.  It was |
| 23 | | after the meeting at the U.S. Attorney's |
| 24 | | Office.  I know that.  I asked her, |

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

64

```
 1              "Mary Ellen, did you write down the reasons
 2              that I gave you?"  She said no.  That was the
 3              one and only conversation I have had with
 4              Mary Ellen Mastrorilli about this since.
 5      Q       Did you talk about anything else during this
 6              final conversation other than whether she
 7              documented the reasons that you had provided
 8              for her?
 9      A       I don't recall, but I think that was the
10              extent of the conversation.
11      Q       If I have this right, I've counted four
12              communications with Miss Mastrorilli on or
13              after June 10th.  The first was when you
14              called her to tell her to bar Sheila Porter?
15      A       Yes.
16      Q       The second was when Miss Mastrorilli called
17              you back to say that Miss Porter wanted to
18              know the reasons why she was barred, and you
19              said you'd get back to her?
20      A       Correct.
21      Q       The third was when you called her back after
22              speaking with General Counsel and reviewing
23              S220.
24              MS. CAULO:  I object.  I'm sorry.
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922