UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,<br>    Plaintiff<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>SUFFOLK COUNTY, and<br>CORRECTIONAL MEDICAL<br>SERVICES, INC.<br>    Defendants | )<br>)<br>)<br>)<br>)   Civil Action No. 04-11935-DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF OF DEFENDANTS ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    THE PLAINTIFF WAS NOT BARRED FROM THE HOC BECAUSE SHE COMMUNICATED WITH THE FBI.**

In her opposition to Defendants' Motion for Summary Judgment, the Plaintiff distorts the summary judgment record in an effort to create the impression that a material factual dispute exists as to whether the Plaintiff was barred from the HOC because she communicated with the FBI.  Her argument is without merit.

The Plaintiff's assertions that there is no contemporaneous evidence in the record to support the Defendants' position and that Sheriff Cabral's reasons for barring the Plaintiff are post-hoc rationalization manufactured to cover up unconstitutional conduct completely misstates the record. Sheriff Cabral made the decision to bar the Plaintiff from the HOC because the Plaintiff failed to document her observations of Inmate Rosario's physical condition in his medical record, failed to submit a confidential report of her encounter with Inmate Rosario in a timely manner as requested, and the document that was submitted ten days later was written on Interdisciplinary Progress Notes, appeared to be a medical note and it was dated the date of the

1

incident as though that was the date that treatment was rendered. (Deposition of Andrea J. Cabral pgs. 86-87, attached as Exhibit 25 to Defendants' Motion for Summary Judgment).  As early as June 16, 2003, merely six days after the Plaintiff was barred and more than one year before she filed the instant lawsuit, Sheriff Cabral publicly articulated her reasons for barring the Plaintiff in a meeting with the United States Attorney and members of his staff. Documents created soon after this meeting and memorializing what transpired during it were produced to the Plaintiff during discovery. (See Cabral Memo to File, dated June 18, 2003 and Letter to US Attorney Michael Sullivan, dated July 22, 2003 attached as Exhibits C and D).  During the meeting United States Attorney Sullivan and his staff began to question the Sheriff and her staff[1] regarding why the Plaintiff was barred from the HOC and revealed for the first time that the Plaintiff was an FBI informant. Despite the unexpected nature of this inquiry[2], Sheriff Cabral and her staff informed the United States Attorney that the Plaintiff was barred from the HOC because she violated Department policy and her obligations as a nurse practitioner pertaining to her interaction with inmate Rene Rosario on or about May 19, 2003. (Deposition of Andrea Cabral, pgs. 229-231 attached as Exhibit B; Cabral Memo to File, dated June 18, 2003 and Letter to US Attorney Michael Sullivan, dated July 22, 2003 attached as Exhibits C and D).

Furthermore, the record is clear that Sheriff Cabral had absolutely no involvement in the investigation by SID into the allegations made by Inmate Rosario.  Sheriff Cabral first became aware of SID's investigation into Inmate Rosario's allegations and the Plaintiff's involvement in that investigation after it was concluded, on or about June 4,

---

[1] Chief of Staff Elizabeth Keeley and Deputy Superintendent Viktor Theiss accompanied Sheriff Cabral to this meeting.

[2] First Assistant United States Attorney Gerard Leone requested the meeting on June 12, 2003 for the purpose of discussing the relationship between the Suffolk County Sheriff's Department and the United States Attorney's Office.  Neither Sheriff Cabral nor her staff was aware that the circumstances surrounding the Plaintiff's barring from the HOC were to be discussed. (Deposition of Elizabeth Keeley, pgs. 166-167 attached as Exhibit A).

2003. She had no contact with Investigators Dacey and Aleman regarding the investigation while it was proceeding or upon its conclusion. No one, including Sheriff Cabral, directed or instructed Investigators Dacey and Aleman to question the Plaintiff concerning her contact with the FBI. The Plaintiff's assertion that SID Investigator Steve Jacobs, "instructed Dacey to attempt to elicit a confession from Mrs. Porter that she contacted the FBI" (Plaintiff's Opposition to Defendants' Motion for Summary Judgment at pg. 10) completely mischaracterizes the evidence. Investigator Dacey testified unequivocally that Investigator Jacobs did not instruct him to question the Plaintiff regarding her contact with the FBI and that he only decided to ask her in order to satisfy his curiosity. (Deposition of Brian Dacey, p.123 attached as Exhibit 20 to Defendants' Motion for Summary Judgment).

The Plaintiff contends that Sheriff Cabral's stated reasons for barring the Plaintiff were pretextual because other SCSD individuals have testified to their understanding of why the Plaintiff was barred and because no other contract workers or SCSD employees were barred or terminated for similar "alleged clerical errors in their paperwork." (Plaintiff's Opposition to Defendants' Motion for Summary Judgment p. 14). The Plaintiff's argument is without merit. First, Sheriff Cabral is the only SCSD official who made the decision to bar the Plaintiff.[3] What other individuals may have said concerning the reasons for the Plaintiff's barring is completely irrelevant. The Plaintiff has not proffered any evidence to dispute the fact that from the moment that she made the decision to bar the Plaintiff, Sheriff Cabral has consistently articulated the reasons for that decision, none of which involved the Plaintiff's communication with the FBI.

---

[3] The Plaintiff's suggestion that Chief of Staff Keeley **and** Sheriff Cabral decided to bar the Plaintiff mischaracterizes the evidence. Ms. Keeley testified unequivocally that Sheriff Cabral made the decision to bar the Plaintiff and that she merely communicated that decision to Deputy Superintendent Mastrorilli. (Deposition of Elizabeth Keeley pg. 42-43 attached as Exhibit A).

3

Additionally, and contrary to the Plaintiff's assertion, the totality of the reasons for her barring were not confined to the fact that she provided a written account of her encounter with Inmate Rosario on Interdisciplinary Progress Notes instead of a confidential incident report as requested. The Plaintiff was barred from the HOC because she did not fulfill a basic obligation of her role as a nurse practitioner: document her observations of an inmate's physical condition regarding his allegations that he was physically assaulted by a corrections officer in the inmate's medical records.[4] Further, when directed by a Deputy Superintendent to submit a confidential incident report regarding her encounter with the inmate, she did not comply until ten days later.[5] The document that was ultimately submitted appeared to be a medical note dated the date of the encounter, but no medical note was placed in inmate Rosario's medical records documenting the Plaintiff's observations of Inmate Rosario's physical condition on that date.[6]

Furthermore, it is inapposite to compare discipline imposed on SCSD employees with the determination to bar the Plaintiff; a contract worker employed by CMS and assigned to work at the HOC. She was not a member of any union at the HOC nor was she covered by the terms of any collective bargaining agreement. Union members are entitled to the protections of the just cause provision in their respective collective bargaining agreements concerning the imposition of

---

[4] The Plaintiff's assertion that "the only person qualified to determine whether Mrs. Porter had [a responsibility to document Inmate Rosario's medical records] concluded that she did not" (Plaintiff's Opposition to Defendant's Motion for Summary Judgment p. 16) is based upon a reference to an unidentified individual in correspondence from Assistant United States Attorney McNeil to Walter B. Prince, Esq.. It is inadmissible and irrelevant evidence that should not be considered by this Court and will be the subject of the Defendants' Motion to Strike.

[5] The Plaintiff's reliance on the testimony of Deputy Superintendent Mastrorilli for the proposition that the timing and form of the Plaintiff's reporting was insignificant and not sufficiently serious to warrant barring is misplaced. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment p. 14, 17) In her deposition testimony, Ms. Mastrorilli acknowledged that she did not have the authority to bar any contract worker from the HOC. (Deposition of Maryellen Mastrorilli p. 23 attached as Exhibit F) Accordingly her opinion on what conduct warranted barring and under what circumstances a contract worker should be barred is completely irrelevant.

[6] There is no evidence to support the Plaintiff's assertion that Sheriff Cabral "backdated" a memorandum or that the Defendants have not provided an explanation for why a different date appears in the header of that memorandum. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment p. 19, fn. 8). In fact the Defendants provided an explanation to the Plaintiff during discovery in their Supplementary Answers to Plaintiff's Second Request for Interrogatories.

discipline. In this case, because the Plaintiff was a contract worker, Sheriff Cabral was not constrained by the dictates of just cause and the grievance and arbitration process in taking the action that she believed was appropriate in light of the Plaintiff's conduct.

Accordingly, it is inapposite to compare discipline imposed on union members for violations of S220 related to reporting with the barring of the Plaintiff because they are not similarly situated. Furthermore, disciplinary decisions made by previous Sheriffs in prior administrations have no relevance to Sheriff Cabral's determination that the Plaintiff's conduct warranted barring. Therefore it is inappropriate to use them to evaluate her decision to bar the Plaintiff in this instance.

## II.    SUFFOLK COUNTY IS NOT LIABLE FOR THE DEPRIVATION OF THE PLAINTIFF'S RIGHTS.

In her Opposition to Defendants' Motion for Summary Judgment, the Plaintiff contends that Suffolk County is liable for the deprivation of Plaintiff's rights because of an unconstitutional custom or practice that "punished individuals who reported employee misconduct or spoke out against SCSD officials". (Plaintiff's Opposition to Defendants Motion for Summary Judgment p. 23) The Plaintiff's argument, which is based in large part on inadmissible hearsay, is completely without merit.[7]

The Plaintiff's unsupported allegations in her complaint notwithstanding, nowhere in her deposition testimony or her interrogatory answers does she assert that her failure to document her observations of Inmate Rosario's physical condition in his medical records, failure to report his allegations of abuse to SID and failure to timely submit a report of her encounter with Inmate

---

[7] The Plaintiff's Opposition to the Defendants' Motion for Summary Judgment relies significantly on inadmissible hearsay, including the Stern Commission Report, Civil Complaints from unrelated lawsuits (Davis v. Suffolk County et al; Micheleman v. Suffolk County et al.; Feliz v. Suffolk County House of Correction), post arbitration briefs submitted on behalf of the Suffolk County Sheriff's Department in unrelated labor disputes, and an Affidavit of the Plaintiff created after her deposition was taken and on the eve of summary judgment. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment pgs. 24-30; Exhibits 30-33, 35-40 attached to Plaintiff's Opposition) The Defendants are moving to strike these exhibits from the summary judgment record.

5

Rosario when requested to do so by a Deputy Superintendent were due to the existence of an undefined Code of Silence or her fear of retaliation.   Indeed it is only long after her deposition was taken and on the eve of summary judgment that the Plaintiff asserts that she personally suffered retaliation for reporting on the misconduct of a SCSD employee (Declaration of Sheila J. Porter ¶ 32-33).[8]  Moreover those statements are directly contradicted by documents produced by the Plaintiff during discovery.  Documents bate stamped SP 183-184, which appear to be portions of a handwritten letter authored by the Plaintiff, clearly indicate that damage to the Plaintiff's car occurred on or about May 25. (See Exhibit G attached hereto) The hearing[9] that the Plaintiff alleges she testified at occurred on June 19, 2001, almost four weeks after her car was damaged. (See Exhibit H attached hereto)  Finally, no tire iron was found at the scene but rather the mechanic who examined her car suggested a tire iron or hammer may have caused the damage. The Plaintiff's statements in her Declaration, which are contradicted by the evidence and in conflict with her sworn deposition testimony are insufficient to support her claim for claim against Suffolk County based upon municipal liability.

Further, the Stern Commission, which reported on the status of the Department as it existed under former Sheriff Richard Rouse, recounted what they found to be a "code of silence that prevents staff members from reporting on the misconduct of fellow staff members." Nowhere in their lengthy report does the Stern Commission opine that a Code of Silence exists at the Suffolk County Sheriff's Department manifested by the Department's retaliation against its employees or contract workers for reporting the misconduct of employees.  Indeed the Stern

---

[8] As stated previously the Plaintiff's Declaration should be stricken from the record. See Colantuoni v. Calcagni, 1994 WL 727552 (1st Cir. 1994).

[9] The Plaintiff did not testify at a criminal trial against a SCSD employee.  It was a show cause hearing convened to determine if a criminal complaint sought by one SCSD correction officer should issue against another.  The Plaintiff did not witness the alleged misconduct of the employee underlying the allegations in the criminal complaint. Further the Plaintiff's characterization of the individual against whom she testified as a SCSD official is erroneous; he was a correction officer.

6

Commission noted that the Department took swift action in responding to the allegations of physical abuse and sexual misconduct by terminating the officers involved. (See Stern Commission Report at p. 9). The findings of the Stern Commission are inadmissible hearsay and completely irrelevant to the Plaintiff's claims. Accordingly it is insufficient to support the Plaintiff's claim against Suffolk County based upon municipal liability.

Finally, the Plaintiff's reliance on unrelated civil complaints, excerpts from unrelated deposition testimony, and excerpts from unrelated post-arbitration briefs is entirely inappropriate in opposing a motion for summary judgment.[10] (Plaintiff's Opposition to Defendants' Motion for Summary Judgment pgs. 24-30; Exhibits 30–33, 35–40 attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment). The vast majority of these materials refer to incidents that occurred during a prior administration in the Sheriff's Department and thus are irrelevant to the Plaintiff's cause of action. The unproven allegations contained in the complaints filed by former employees of the SCSD during Sheriff Cabral's administration are irrelevant and insufficient to defeat the Defendants' Motion for Summary Judgment. In particular, the Plaintiff relies on the unrelated civil complaint filed by former jail officer Paul Davis against Suffolk County, <u>Davis v. Suffolk County, et al</u>, No. 04-11851WGY and an affidavit of Mr. Davis filed in that action. The Plaintiff fails to inform the Court however, that the Defendants' Motion for Summary Judgment was allowed in that case and Mr. Davis's lawsuit against Suffolk County was dismissed on October 27, 2005, prior to the Plaintiff's filing her Opposition to Defendants' Motion for Summary Judgment. Unproven and unsubstantiated allegations in unrelated civil complaints are insufficient to defeat the Defendants' Motion for Summary Judgment. Additionally, the Plaintiff offers no authority for her assertion that arguments and statements contained in post-arbitration briefs are binding admissions of the

---

[10] As stated previously, the Defendants are moving to strike this material from the summary judgment record.

7

SCSD. Accordingly, this Court should not consider any of this evidence in ruling on the Defendants' Motion for Summary Judgment.

The Plaintiff has completely failed to establish a material factual dispute regarding whether there was a custom or practice of Suffolk County that caused the deprivation of the Plaintiff's rights. Therefore, summary judgment should be granted to the Defendants on Count I of her Complaint.

### III.  THE PLAINTIFF WAS NOT AN EMPLOYEE OF SUFFOLK COUNTY.

In her opposition to Defendants' Motion for Summary Judgment, the Plaintiff distorts the summary judgment record in an effort to create the impression that a material factual dispute exists as to whether the Plaintiff was an employee of Suffolk County. " A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." Holyoke Visiting Nurses Association v. NLRB, 11 F.3d 302, 306 (1st. Cir. 1993); Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st. Cir. 1995). In Holyoke, a non-profit healthcare organization that provided in home nursing services and hospice care was determined to be a joint employer of nurses supplied to it on a daily basis by a contract nursing agency. In upholding the NLRB's determination that substantial evidence of a joint employment relationship existed, the Court noted that Holyoke possessed the right to reject any nurses referred to it by the contract nursing agency and assumed supervision over the nurses referred to it by the agency. Holyoke, 11 F.3d at 30. Specifically, the referred nurses reported to the Holyoke office where Holyoke employees provided them with supplies, the days assignment and specific information about the patient they were to care for and directions to the patients home. Holyoke, supra. If issues surrounding the patient's care arose during the day the referred nurses

were instructed to seek guidance from Holyoke supervisors. Finally, at the conclusion of the day's assignment, the referred nurses returned to the Holyoke office to complete a written report on their patients. Id.

Utilizing some of the factors identified by the Court in Holyoke, the Plaintiff attempts to shape the facts in this case in a transparent attempt to fit within the factual construct of Holyoke and persuade this Court that Suffolk County exerted significant control over the Plaintiff and her work as a nurse practitioner at the HOC such that it was her joint employer. The Plaintiff's argument as set forth in her Opposition to the Defendants' Motion for Summary Judgment is completely without merit.

First, unlike the factual circumstances present in Holyoke, CMS did not simply supply healthcare workers to the HOC; it provided the healthcare and the requisite professional medical staff to administer that healthcare to the inmates incarcerated at the HOC pursuant to a contract with Suffolk County. It is undisputed that CMS hired and maintained the staff necessary to meets its contractual obligations to provide comprehensive healthcare services to the inmates incarcerated at the HOC. That Suffolk County contracted with CMS for specific staffing levels and required CMS employees to meet minimal professional qualifications hardly establishes that it retained the authority to hire or fire CMS employees.[11] Neither does the fact that it performed background checks on all contract workers and vendors working at the HOC and retained the right to bar any such individuals from the HOC and, in fact, did so in this instance.[12]

Second, the Plaintiff's contention that "there is a genuine issue of material fact concerning the amount of day-to-day supervision that the SCSD maintained over Mrs. Porter"

---

[11] In her deposition the Plaintiff acknowledged that the Suffolk County Sheriff's Department did not hire her. (Deposition of Sheila J. Porter, p. 27 Exhibit 11 to Defendants' Motion for Summary Judgment).

[12] The Plaintiff cannot credibly argue that because a correctional facility performs a background check on all contract workers as part of its central mission of care and custody of the inmates committed to its facility it becomes a joint employer of that contract worker.

9

(Plaintiff's Opposition to Defendants' Motion for Summary Judgment at p. 38) is extremely misleading.  Of course Mrs. Porter and all of the other CMS employees "worked exclusively at the HOC", that is where the contract for healthcare services between CMS and Suffolk County was to be performed.  Further the fact that the Plaintiff punched a time card maintained by CMS at the HOC and received her paycheck issued by CMS at the HOC[13] does not create a genuine issue of material fact concerning the amount of supervision that the SCSD maintained over Mrs. Porter. (Plaintiff's Exhibit No. 47 at pg. 27, attached to her Opposition to Defendants' Motion for Summary Judgment)  The Plaintiff's contention that because she was required to wear a SCSD issued identification card, as were all contract workers and vendors, it is evidence of a joint employment relationship is particularly dubious given that contract workers and vendors wore yellow identification cards to distinguish them from Department employees who wore white identification cards. (Deposition of Gerard Horgan, pg. 156 Exhibit 10 attached to Defendants' Motion for Summary Judgment).

Furthermore, the record clearly and unmistakably demonstrates that the SCSD had absolutely no input into the day to day medical decisions made by the Plaintiff with respect to her care of inmates incarcerated at the HOC.[14]  The contract bestows upon CMS exclusive control over the medical care of inmates at the HOC. (Plaintiff's Exhibit No. 41, attached to her Opposition to Defendants' Motion for Summary Judgment) The Plaintiff consulted exclusively with the CMS Director of Medicine concerning the medical treatment of inmates, not the SCSD. (Deposition of Sheila J. Porter, p. 41 Exhibit 11, attached to Defendants' Motion for Summary

---

[13] Notably, the Plaintiff, as all CMS employees, could have elected to have her paycheck directly deposited thereby obviating the need for CMS to distribute it to her at the HOC. (Plaintiff's Exhibit No. 47 at pg. 29)  The SCSD did not require the Plaintiff to punch a time clock.

[14] The Plaintiff's unsupported statements in her Declaration notwithstanding (see Exhibit 1 to her Opposition to the Defendants' Motion for Summary Judgment), during two days of deposition the Plaintiff clearly indicated that the SCSD had no input in the medical treatment that she provided to the inmates. (Deposition of Sheila J. Porter, pgs. 40- 42  Exhibit 11 attached to Defendants' Motion for Summary Judgment) Further the Defendants' are moving to strike the Plaintiff's Declaration and other exhibits from the summary judgment record.

Judgment).[15] Although the SCSD provided some large pieces of medical equipment such as an x-ray and dialysis machine, there is no evidence in the record, that the Plaintiff utilized those machines in the performance of her duties as a nurse practitioner. Indeed it is undisputed that, unlike in Holyoke, CMS provided all of the supplies necessary for the daily delivery of healthcare services. (Deposition of Gerard Horgan, pg. 158-159, Exhibit 10, attached to Defendants' Motion for Summary Judgment).

Third, contrary to the Plaintiff's assertion, the summary judgment record is void of any substantial evidence to establish that the Defendants promulgated the Plaintiff's work rules, assignments and conditions of employment. At most the Defendants provided the Plaintiff and all CMS employees with some minimal orientation to working in a corrections environment, training on security measures, a tour of the facility and required them to comply with institutional policies. (Deposition of Gerard Horgan pgs. 148-152 attached hereto as Exhibit E). Given the fact that CMS employees were providing medical care to incarcerated inmates in the unique environment of a correctional facility that hardly qualifies as promulgating work rules and conditions of employment.

The Plaintiff's assertion that the SCSD dictated her daily schedule is also misleading. Which inmates the Plaintiff would see and treat on any given day was dictated by the sick call list that was triaged and then administered by CMS employees. (Deposition of Donna Jurdak, pgs. 68, 70 attached as Exhibit 15 to Defendants' Motion for Summary Judgment; Deposition of Gerard Horgan, pg. 157 attached as Exhibit 10 to Defendants' Motion for Summary Judgment).

---

[15] In another transparent attempt to shape the facts in the summary judgment record to fit within the circumstances of Holyoke, the Plaintiff states in her Declaration and for the first time, that the inmates considered her to be an employee of the HOC. Regardless of the fact that the Holyoke clients' perception of the referred nurses' employment status was not a determinative factor in the Court's decision, it strains credulity to equate the people in Holyoke who retained the services of the Holyoke Visiting Nurse Assn. for in home nursing care with incarcerated inmates at the HOC who were provided medical care by employees of which ever company had the contract with Suffolk County at the time of their incarceration.

11

The only limitations imposed by the SCSD regarding when CMS employees could treat inmates were based on security considerations. Further, the evidence completely contradicts the Plaintiff's assertions in her Declaration (Declaration of Sheila J. Porter, ¶ 25) that the SCSD assigned her to treat female inmates and insisted that females be treated on a separate floor from the clinic. It was the Plaintiff who advocated that a female clinic be established on a floor where the female inmates were housed in order to facilitate their access to care. The SCSD implemented the Plaintiff's suggestion by allowing CMS to create a female clinic utilizing office space on the floor where the female inmates were housed. (Deposition of Gerard Horgan, pgs 55-56, attached hereto as Exhibit F). The Plaintiff voluntarily undertook the primary responsibility to care for the female inmates in that clinic. (Deposition of Gerard Horgan, pgs. 55-56, attached hereto as Exhibit E; Deposition of Ann Mack p.52 attached as Exhibit 3 to Plaintiff's Opposition to Defendants Motion for Summary Judgment).

Finally, the Plaintiff's assertion that the Defendants' maintained the records she needed to perform her job responsibilities is also misleading. While inmates' medical records are kept at the HOC they are maintained by the medical provider, CMS in this instance, who retains exclusive possession, custody and control of said records. (Deposition of Sheila J. Porter p. 43 Exhibit 11 to Defendants' Motion for Summary Judgment; Deposition of Gerard Horgan, p. 160, attached hereto as Exhibit E)  Further, although a copy of the Plaintiff's personnel file was located at the HOC it was maintained by and in the exclusive control of CMS.[16] (Porter Deposition, pg. 19 attached as Exhibit 11 to Defendants' Motion for Summary Judgment).

Moreover, although public policy does favor a broad interpretation of the term "employer" in order to "further the congressional objective of affording equality of employment opportunity", Orell v. UMass Memorial Med. Ctr., 203 F. Supp. 2d 52 (D.Mass. 2002); Carparts

---

[16] The SCSD did not require that CMS maintain personnel files of their employees at the HOC.

12

Distrib. Center, Inc. v. Automotive Wholesaler's Assoc. of New England, Ins. 37 F.3d 12, 17 (1st. Cir. 1994), its application to the facts of the instant case is inapposite. To credit the Plaintiff's argument that the SCSD was her joint employer on the facts of this case would expand the concept of "joint employment" beyond what the case law supports and transform every contracted worker in every correctional facility into a joint employee. Further, if this Court determines that Plaintiff's is an employee of Suffolk County, she and all other CMS employees would be entitled to immunity under the provisions of the Massachusetts Tort Claims Act, (MTCA) Mass. Gen. L. ch. 258 §1 et. al. Such a result is clearly against public policy and the purpose and intent of the MTCA. There is no dispute that CMS is a for- profit corporation that contracted with Suffolk County to provide medical services to inmates confined at the HOC. As the employer of Mrs. Porter, CMS would be vicariously liable for her acts or omissions in providing medical treatment at the HOC. *See generally*, Holenleitner v. Quorum Health Resources, Inc., 435 Mass. 424, 758 N.E. 616 (2001). A determination that Mrs. Porter was an employee of Suffolk County would necessarily grant her and all CMS employees immunity for negligent acts and limit the recovery for any person aggrieved by medical malpractice of CMS staff to the one hundred thousand dollar ($100,000) cap imposed on judgments by the statute. Mass. Gen. L. ch. 259 §2. Such a result would clearly be in contravention of the intent and purpose of ch. 258.

In her Opposition to the Defendants' Motion for Summary Judgment the Plaintiff has completely failed to establish a material factual dispute regarding her employment status and therefore summary judgment should be granted to the Defendants on Count II of her Complaint.

**IV.   THE PLAINTIFF WAS NOT ENTITLED TO A HEARING PURSUANT TO POLICY S220.**

As set forth above, the Plaintiff has completely failed to demonstrate that there is

a disputed issue of material fact concerning whether she was a joint employee of both CMS and Suffolk County. Indeed, the summary judgment record clearly establishes that the Plaintiff was solely and exclusively the employee of CMS. See Section III, supra. Accordingly, she was not entitled to a hearing pursuant to S220, a right exclusively conferred upon employees of Suffolk County working at the SCSD, prior to being barred.

First, and contrary to the Plaintiff's assertion, the reasons for the Plaintiff's barring were not confined to her violations of Policy S220. The Sheriff revoked the Plaintiff's security clearance and barred her from the HOC because she failed to document her observations of Inmate Rosario's physical condition in his medical record, failed to provide a confidential report in a timely manner as requested, and the document that was submitted was written on Interdisciplinary Progress Notes, appeared to be a medical note and it was dated the date of her encounter with the inmate as though that was the date the treatment was rendered. (Deposition of Andrea J. Cabral, pg. 86-87, Exhibit 25 to Defendants Motion for Summary Judgment). Even if the reasons for the Plaintiff's barring were confined to her violations of S220, that fact alone would not require that she be provided with a hearing pursuant to the provisions of S220. As discussed more fully above, the fact that the SCSD as a correctional facility with the statutorily mandated obligation for the care and custody of inmates incarcerated at the HOC required all contractors, including the Plaintiff, to comply with institutional policies in furtherance of that obligation, did not transform the Plaintiff into an employee or confer upon her any rights set forth in those policies. See Section III, supra.

Furthermore, the Plaintiff never negotiated the terms of any of the institutional policies of the SCSD.[17] The Plaintiff has not identified any facts in her Opposition to the Defendants' Motion for Summary Judgment to support her contention that Policy S220 created contractual obligations on behalf of the SCSD to provide her with a hearing. Indeed, it is undisputed that no contract worker or vendor was ever provided with a hearing pursuant to S220 prior to being barred from the HOC. (Affidavit of Gerard Horgan, Exhibit 7 to Defendants' Motion for Summary Judgment). There is no provision in the contract with CMS that requires the SCSD to provide CMS employees with a hearing prior to exercising its right to bar. Finally, the Plaintiff acknowledged that she could be barred by the SCSD at any time. (See Deposition testimony of Sheila Porter taken March 21, 2000, attached as Exhibit 1 to Defendants' Motion for Summary Judgment).

There are no material facts in dispute and therefore the Defendants are entitled to Summary Judgment on Count III of the Plaintiff's complaint.

## V.    THE PLAINTIFF WAS NOT A THIRD PARTY BENEFICIARY OF THE CONTRACT BETWEEN CMS AND SUFFOLK COUNTY.

In her Opposition to the Defendants' Motion for Summary Judgment the Plaintiff fails to identify any language or specific provisions in the contract between CMS and Suffolk County that clearly and definitely demonstrate that the parties intended the Plaintiff to be a third party beneficiary of that contract. Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc. 412 F. 3d 215, 230 (1st.Cir. 2005); Miller v. Mooney, 431 Mass. 57 (2000). Instead, the Plaintiff contends that because CMS promised to staff "2.4" full-time nurse practitioner positions at the HOC in its response to

---

[17] Indeed in her Opposition to the Defendants Motion for Summary Judgment the Plaintiff disputes that she was required to comply with the institutional policies of the SCSD, including S220, the very policy upon which she bases her claim that she was entitled to a hearing. (Plaintiff's Response to Defendants' Statement of Undisputed Facts, No. 3).

15

Suffolk County's RFP and Mrs. Porter was already working at the HOC as a nurse practitioner for her then employer CHS, the contract clearly intended to benefit Mrs. Porter.[18] (Plaintiff's Opposition to Defendants' Motion for Summary Judgment at p. 45).

This completely ignores the facts that the Plaintiff is not identified by name in the contract and the staffing grid submitted by CMS in its response to Suffolk County's RFP included only the titles of the positions to be filled, i.e. Health Administrator, RN, LPN, Physician etc., not the specific personnel who would fill them. (Exhibit 43 p. 6 attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment). Indeed the Plaintiff acknowledged in her deposition that who CMS employed to fill the positions identified in the staffing grid was exclusively within the purview of CMS and not the product of negotiation with Suffolk County. She further acknowledged that there was nothing in the contract that provided that Sheila Porter was to work a particular shift. (Deposition of Sheila J. Porter, p. 72-73 Exhibit 11 to Defendants' Motion for Summary Judgment). There is nothing in the language of the contract between CMS and Suffolk County to indicate that the Plaintiff was intended to be a third party beneficiary of the contract for the provision of healthcare services at the HOC.[19] "The mere fact that [the Plaintiff] would likely benefit from such an agreement does not, by itself, show that [the Plaintiff] was an intended rather than an incidental beneficiary." Massachusetts Eye & Ear Infirmary, 412 F.3d at 230, citing Miller, 431 Mass. 57 (2000).

---

[18] Contrary to the Plaintiff's assertion, Ann Mack's personal belief that the Plaintiff should be hired by CMS was not a contractual guarantee that the Plaintiff would continue to work at the HOC for CMS. Regardless of whether Ms. Mack advocated for the Plaintiff to be hired by CMS, the contract contains no language or provisions that could be reasonably construed as intending to specifically benefit the Plaintiff.

[19] The Plaintiff's assertion that the guiding principles that CMS follows in developing and managing its personnel, which were included in its response to the RFP, reflected the parties' intent that procedures utilized for disciplining and terminating employees were to benefit the development and management of employees is entirely speculative and lacks credibility. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment at p. 45).

The Plaintiff has failed to demonstrate the existence of a material factual dispute And therefore the Defendants are entitled to summary judgment on Count V of the Plaintiff's complaint.

## VI. SHERIFF CABRAL DID NOT VIOLATE THE PLAINTIFF'S RIGHTS UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.

In her Opposition to the Defendants' Motion for Summary Judgment the Plaintiff has failed to produce any evidence to support her contention that Sheriff Cabral violated her rights when SID investigators Brian Dacey and Sonya Aleman interviewed her on May 28, 2003. At the time that the Plaintiff was interviewed by SID on May 28, 2003 there is no evidence that Sheriff Cabral was aware of SID's investigation into Inmate Rosario's allegations of abuse much less "suspicious" that the Plaintiff had contacted the FBI to report Rosario's allegations of abuse. Indeed the evidence clearly establishes that Sheriff Cabral first became aware of SID's investigation into Inmate Rosario's allegations and the Plaintiff's involvement in that investigation after it was concluded, on or about June 4, 2003. Further, it was SID investigators Dacey and Aleman, not Sheriff Cabral, who asked the Plaintiff to come to the SID offices on May 28, 2003 for a follow up interview. Contrary to the Plaintiff's assertion, there is no evidence that Sheriff Cabral was on notice of what the Plaintiff characterizes as a "threatening interrogation" by SID.

The Plaintiff has also proffered no evidence that Sheriff Cabral engaged in any conduct that could be construed as threats, intimidation or coercion prior to revoking the Plaintiff's security clearance and barring her on June 10, 2003. Instead the Plaintiff alleges that Sheriff Cabral interfered with her First Amendment rights to free speech through economic coercion by barring her from the HOC. However, as described above

in Sections III and IV supra, the Plaintiff was not a joint employee of the SCSD nor did she have any contractual relationship with the SCSD, and therefore had no secured right in future work as a nurse practitioner at the HOC. See <u>Willits v. Roman Catholic Archbishop of Boston</u>, 411 Mass. 202, 210 (1991) (no economic coercion where school did not renew teacher's yearly employment contract because school exercised its discretion under terms of employment that it chose to offer its teachers and "[t]here was no improper interference by the defendant with a secured right").  Here, where the HOC was simply a work site for the Plaintiff as an employee of CMS, there is no actionable claim for economic coercion.  Further, there is no evidence, that Sheriff Cabral's singular action in barring the Plaintiff on June 10, 2003 was part of any scheme of harassment designed to interfere with the Plaintiff's constitutional rights of free speech.

Finally, the Plaintiff's invective aside ("Ms. Cabral…repeatedly smeared Mrs. Porter. Ms. Cabral's bottom line is that Mrs. Porter is…a liar with an agenda."), she has not introduced any evidence to establish that the only public statements about the Plaintiff attributed to Sheriff Cabral, made fifteen months after her barring from the HOC and in response to the Plaintiff's public allegations of illegal conduct constituted interference with her First Amendment rights by threats, intimidation or coercion under the MCRA.   Accordingly the Defendants are entitled to summary judgment on Count VII of the Plaintiff's complaint.

                                        Respectfully submitted
                                        For all DEFENDANTS
                                        By their attorney

                                        <u>/s/ Ellen M. Caulo</u>
                                        Ellen M. Caulo, BBO #545250
                                        Deputy General Counsel
                                        Suffolk County Sheriff's Department
                                        200 Nashua Street
November 28, 2005                     Boston, MA 02114