


## Suffolk County Sheriff's Department

**ANDREA J. CABRAL**
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

July 22, 2003

**HAND DELIVERED**

Michael Sullivan
United States Attorney
United States Courthouse
Suite 9200
One Courthouse Way
Boston, MA 02210

FILE COPY

Dear U.S. Attorney Sullivan,

  It is with great regret that I now feel compelled to follow up our conversation on June 19th and subsequent events with this letter. I must preface my remarks by affirming what you already know. I have nothing but the highest regard for you personally and professionally and that nothing in recent events or this letter affects that sentiment. However, I remain deeply troubled by what transpired during our June 18, 2003 meeting, certain aspects of our subsequent telephone conversation and, most recently, correspondence and other communications received from AUSA Steve Huggard.

  Prior to scheduling that June meeting, I was informed that its purpose would be to discuss ways to strengthen the historically strained relationship between the U.S. Attorney's office and the Sheriff's Department. I therefore thought it prudent to have Elizabeth Keeley, my Chief of Staff and Viktor Theiss, the Director of the Sheriff's Investigative Division, accompany me. You attended the meeting in the company of Gerard Leone, your First Assistant, FBI Agent Ken Kaiser, AUSA Steve Huggard and one other representative from your office.

  My initial surprise at discovering that the meeting specifically related to wrongful termination allegations made by CMS Nurse Sheila Porter was surpassed only by my subsequent shock at Steve Huggard's heated disclosure – more than halfway through the meeting – that he had targeted this Department for criminal investigation regarding those allegations. We attended this meeting in good faith and, despite feeling somewhat blindsided by its real purpose, answered truthfully and unequivocally that Sheila Porter's assignment to the Department was **not** cancelled because she provided information to the FBI and your office. Indeed, we had a candid and substantive discussion regarding the actual and appropriate reasons for that cancellation.

001054

It was only after we set forth those reasons and, in the context of a discussion regarding FBI Agent Maureen Robinson's visit to the House of Correction accompanied by Ms. Porter, that Steve Huggard angrily disclosed that he had already targeted the Department for criminal investigation into Ms. Porter's allegations. The procedural impropriety presented by these circumstances was again, shocking and, as I mentioned in our conversation on June 19th, only compounded by AUSA Huggard's condescending and unprofessional tone. Still, we continued the discussion and I recounted the numerous and very specific steps I had taken in the six months since my appointment to eliminate corruption and misconduct within the Department, not the least of which was to welcome collaboration with and assistance from other law enforcement agencies. I am puzzled now, as I was then, as to why there seems to be little credibility attributed to the goals of this new administration or the fact that these efforts are being spearheaded by two former state prosecutors (Viktor Theiss and I) and one former state and federal prosecutor (Elizabeth Keeley). Specifically, I reference FBI Agent Kaiser's odd (and baseless) comment about understanding my natural inclination to "protect the Department" and AUSA Huggard's reference to this office as a "bad Department" that I "inherited".

I expressed these concerns to you in our June 19th conversation and candidly asked if there was more going on in this matter than I was aware. You responded that there was not. I asked you directly if protection of Sheila Porter's status and credibility as an FBI informant was the real issue and you confirmed that it was. You also indicated that there might be requests to interview other department staff regarding this matter and asked if that would be alright with me. I responded that it was fine with me, but that I could not force an employee's cooperation. You then stated that it was possible that employees who did not agree to be interviewed could face a federal grand jury.

It would be unprecedented in my 15 years' experience as an attorney and former prosecutor for federal law enforcement to use grand jury proceedings to bolster an informant's credibility. I have little choice but to view it this way because your response to my direct question eliminates the possibility that this is an investigation of a credible allegation of excessive force against inmate ▮▮▮▮▮▮. According to correspondence and a demand letter received on July 15th from private attorney and former Public Corruption Chief Joseph Savage, who currently represents her, Ms. Porter has been providing "valuable information" to the Bureau, "some of which led to criminal indictments of HOC personnel" for the past "five years". If true, I realize that substantial prior reliance on Ms. Porter's credibility makes it quite difficult for the Bureau or your office to decline anything less than zealous pursuit of her current complaint, but that fact hardly mitigates my concerns.

Finally, there is the recent correspondence from AUSA Huggard. I have attached his letters, dated June 27, 2003 and July 9, 2003. In our meeting, AUSA Huggard made specific reference, orally and by gesture, to the relevant provision in his copy of the Federal Digest, to Title 18, Section 1513 of the Federal Code. His letter dated June 27th confirms that he is indeed conducting an investigation relative to what he believes may be a criminal violation of this section. He has clearly moved beyond additional interviews and is now requesting documents.

We were surprised to receive this correspondence and Chief of Staff Keeley telephoned First Assistant Leone to express our ongoing concerns and ask if he was aware of AUSA

001055

Case 1:04-cv-11935-DPW    Document 147-5    Filed 11/28/2005    Page 3 of 3

Huggard's actions. He was not and indicated that he would speak directly to AUSA Huggard. Immediately after that conversation, AUSA Huggard called Department General Counsel Anne Powers and left a voice mail message for her. As referenced, he also had the letter dated July 9, 2003 hand delivered to her that day and sent it by regular mail as well.

While it appears that First Assistant Leone may have misunderstood Chief Keeley with regard to the types of documents being requested – existing versus those which might be generated to recount the details of past action; and this is easily attributable to his apparent surprise at learning of the request – it is the second paragraph of the letter that troubles me. AUSA Huggard asks that communications on this matter be confined to him and the General Counsel. Leaving aside the presumptuousness of a request that seeks to bar direct communication between my Chief Keeley and First Assistant Leone, and by extrapolation, you and I, this confirms my belief that AUSA Huggard has indeed targeted this Department.

As I stated in our meeting, I am confident that this Department acted professionally, responsibly and in consonance with both state and federal law with regard to this matter. I have significant concerns regarding the circumstances and purpose of this investigation. In addition to what is detailed above, I am also concerned that AUSA Huggard's perspective may be affected by a prior interaction between our offices wherein I candidly expressed displeasure with some unilateral decisions that, in my view, compromised a lengthy, labor-intensive, joint investigation.

Again, I regret having to write this letter, but these unusual circumstances leave me no choice. I would welcome the opportunity to speak with you further regarding this matter.

Very truly yours,

Andrea J. Cabral
Suffolk County Sheriff

001056