UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>      Plaintiff,<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, SUFFOLK COUNTY, and CORRECTIONAL MEDICAL SERVICES<br><br>      Defendant. | Civil Action No.04-11935-DPW |

**SHEILA PORTER'S OPPOSITION TO CORRECTIONAL MEDICAL SERVICES, INC.'S MOTION TO STRIKE DECLARATION OF SHEILA PORTER**

Plaintiff Sheila J. Porter ("Mrs. Porter") hereby submits her Opposition to Correctional Medical Services, Inc.'s ("CMS") Motion to Strike Declaration of Sheila Porter Submitted in Support of Plaintiff's Opposition to CMS' Motion for Summary Judgment.

**INTRODUCTION**

CMS seeks to strike four of the 33 paragraphs contained in Mrs. Porter's Declaration: paragraphs 24, 26, 27 and 28.[1] It must be pointed out that none of the facts in the challenged paragraphs are related to Mrs. Porter's claims against CMS. As CMS admits, these facts are most relevant to Mrs. Porter's argument that she was a joint employee of both CMS and the Suffolk County Sheriff's Department ("SCSD"). But none of Mrs. Porter's claims against CMS

---

[1] While CMS initially asks the Court to strike the entire declaration, it only mentions these four paragraphs in its argument (characterizing them as "especially egregious examples"). *See* Motion, p. 3. Since the argument is baseless as to these four paragraphs, and CMS gives no explanation of what is conceivably inappropriate about the rest of Mrs. Porter's Declaration, the remaining 29 paragraphs of the declaration are not at issue here.

1

hinge on her employment status.[2]  Thus, even if all four challenged paragraphs were stricken from Mrs. Porter's Declaration—and they should not be, as described below—CMS would still not be entitled to summary judgment because numerous fact issues would remain.

On the merits, CMS does not present a persuasive case that any portion of Mrs. Porter's declaration should be stricken. CMS complains about four relatively minor facts in the declaration that provide additional support for Mrs. Porter's claim that she was a joint employee of both CMS and the SCSD. But the information contained therein is not in conflict at all with her earlier testimony. The motion should be denied in its entirety.

## ARGUMENT[3]

The Motion should also be denied on its merits. A party opposing summary judgment may submit affidavits to show that there are genuine issues of material fact and that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An affidavit must be made on personal knowledge, set forth admissible facts and must show that the affiant is competent to testify as to the matters stated in the affidavit. *See* Fed. R. Civ. P. 56(e). The paragraphs that are the subject of CMS' motion are not challenged on these grounds. Rather, CMS seeks to strike the four paragraphs based on the "sham affidavit" rule. This rule was adopted in the First Circuit in *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1 (1st Cir. 1994), a products liability action involving injuries sustained from a fall due to an allegedly

---

[2]  On the other hand, Mrs. Porter's status as a joint employee of both the SCSD and CMS is relevant to her claims against the Suffolk Defendants, including her claims under the Massachusetts Whistleblower Statute and for breach of contract.

[3]  As an initial matter, the Motion should be denied because CMS failed to confer with counsel prior to filing its Motion. Local Rule 7.1(A)(2) states: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." CMS' motion does not contain such a certification, nor could it because CMS failed to confer with counsel for Mrs. Porter prior to filing the Motion. The Motion should be denied on this basis alone. *See Hasbro v. Serafino*, 168 F.R.D. 99, 101 (D. Mass 1996); *see also Cobb v. Supreme Judicial Court*, 334 F. Supp. 2d 60, 62 (D. Mass 2004); *Abrazinski v. Dubois*, 876 F. Supp. 313 (D. Mass 1995).

defective ladder. In *Colantuoni*, the plaintiff submitted an affidavit claiming that at all times that he used the ladder he "believed it was safe to use [] and [] had no knowledge, at that time, of its propensity to slip." *Colantuoni*, 44 F.3d at 5. This statement was in stark contrast to the plaintiff's deposition testimony, where he admitted that he was aware that, in fact, it was likely <u>unsafe</u> to use the ladder in question. *Id.*, 44 F.3d at 4. Under these circumstances, the First Circuit struck the allegations in the affidavit, announcing the sensible principle that "[w]hen an interested witness has given <u>clear answers</u> to <u>unambiguous questions</u>, he cannot create a conflict and resist summary judgment with an affidavit that is <u>clearly contradictory</u>, but does not give a satisfactory explanation of why the testimony is changed." *Id.* at 5 (emphasis added). *See also Colburn v. Parker Hannifin/Nichols Portland Div.*, 2005 WL 3080925, *11 n.3 (1st Cir. Nov. 18, 2005) (striking section of affidavit in employment retaliation action where plaintiff claimed that he could do certain activities when he had a migraine, directly contradicting deposition testimony that a migraine prevented him from engaging in any activities).

  Thus, averments in an affidavit submitted in opposition to a motion for summary judgment need only be stricken if they are <u>clearly contradictory</u> to <u>clear answers</u> given at a previous deposition in response to <u>unambiguous questions</u>. *See Colantuoni*, at 5. On the other hand, where there is no contradiction between the affidavit and the deposition, the subsequent affidavit is perfectly valid. *See, e.g., Patterson v. Dolan*, 2001 WL 1154592, *3 (D. Me. Oct. 1, 2001); *see Hinkley v. Baker*, 122 F.Supp.2d 57, 59 n.1 (D. Me. 2000). Moreover, nothing prevents a plaintiff from augmenting, explaining or amplifying deposition testimony by providing additional facts in an affidavit opposing summary judgment. *See Gillen v. Fallon Ambulance Service*, 283 F.3d 11, 26 (1st Cir. 2002); *see also Patterson*, 2001 WL at *3 (refusing to strike averments that were not discussed at the deposition); *Hinkley*, 122 F. Supp.2d at 59 n.1

3

(same).  This is especially so where "the party was not previously asked sufficiently precise questions to elicit the amplification or explanation."  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  Finally, when the fact averred in the affidavit is supported by additional evidence, there is little concern that the affidavit is a "sham."  *See Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000).

None of the paragraphs challenged by CMS are covered by the sham affidavit rule.

**1.   Paragraph 24**

In ¶ 24 of her Declaration, Mrs. Porter states as follows:

> The SCSD did have input on the medical care that could be provided to an inmate.  For example, we were sometimes told not to use certain bandages if it was believed that the inmate was a suicide risk.  As another example, if there was a security concern with the inmate, we would be instructed not to treat the inmate with certain ointments or petroleum or Ben Gay, all of which could be used to harass correctional officers.

Declaration of Sheila Porter ("Porter Decl."), ¶ 24.  At her deposition, Mrs. Porter was asked a few specific questions about medical care; in particular: who makes the decision to send an inmate to a hospital, who makes the diagnosis regarding an inmate's health, who decides what diagnostic testing to perform, and who determines when a specialist needs to be consulted.  *See* Deposition of Sheila Porter ("Porter dep.") , pp. 40-42 (attached to Declaration of David S. Schumacher ("Schumacher Decl."), Ex. 1).

But Mrs. Porter was never asked if the SCSD had <u>any</u> input with regard to providing medical care to an inmate—she was only asked a few particular questions touching on discrete issues related to medical care.  Certainly the four areas Mrs. Porter was asked about do not constitute the universe of "input" that the SCSD might have with regard to medical care.  In response to the SCSD's incorrect argument in its summary judgment motion that the SCSD had

4

no role in providing medical care to inmates, Mrs. Porter provided additional information in her declaration regarding the SCSD's input in this area. Far from contradicting or even explaining testimony previously given, the statements in ¶ 24 were simply not elicited at the deposition and should not be stricken. *See Gillen*, 283 F.3d at 26; *Rule*, 85 F.3d at 1011.[4]

**2.  Paragraph 26**

Paragraph 26 of Mrs. Porter's declaration states as follows:

> While I was formally evaluated by CMS supervisors, my performance was informally monitored and evaluated by SCSD officials, such as Deputy Superintendent Mastrorilli and Superintendent Horgan. I received commendations for my performance from the SCSD on more than one occasion.

Porter Decl., ¶ 26. At her deposition, Mrs. Porter was asked a series of questions about her formal evaluations with CMS. *See* Porter dep., pp 21-23 (Schumacher Decl. Ex. 1). CMS claims that ¶ 26 of Mrs. Porter's declaration directly contradicts this deposition testimony; in particular, Mrs. Porter's response of "no" to the question "Did any member of the Suffolk County Sheriff's Department participate in your evaluation?" *Id.*, p. 22.

But Mrs. Porter does not dispute, and her declaration clearly states, that she "was formally evaluated by CMS supervisors." Mrs. Porter does not claim that any member of the SCSD participated in her formal CMS evaluation; instead, she merely makes the additional point, which was not asked at the deposition, that her performance was <u>informally</u> monitored and evaluated by SCSD personnel. Thus, paragraph 26 contains additional information that is not in conflict with her deposition testimony. *See Gillen*, 283 F.3d at 26); *Hinkley*, 122 F. Supp.2d at 59 n.1. Moreover, this paragraph should not be stricken because it is supported by additional evidence cited in Mrs. Porter's summary judgment oppositions, including Superintendent

---

[4] Moreover, at the deposition itself, Mrs. Porter clearly stated that the SCSD <u>was</u> involved in providing medical care, in the area of administering drug tests to the inmates. *See* Porter dep., p. 42.

5

Horgan's testimony that Mrs. Porter "was a good nurse practitioner. She's someone who provided good care to the inmates." *See* Deposition of Gerard Horgan, p. 55 (attached as Ex. 4 to Mrs. Porter's Opposition to the Suffolk Defendants' Motion for Summary Judgment). *See Palazzo*, 232 F.3d at 43.

### 3. Paragraph 27

Next, CMS nitpicks the eight words contained in paragraph 27 of Mrs. Porter's declaration: "[m]y personnel file was maintained at the HOC." *See* Porter decl., ¶ 27 (emphasis added). CMS claims that this sentence conflicts with her deposition testimony, where Mrs. Porter stated that her personnel file was maintained by CMS "[i]n a file cabinet in the administrative assistant's office" at the HOC. *See* Porter dep., p. 19 (Schumacher Decl., Ex. 1). There is no contradiction here. To show that she was jointly employed, Mrs. Porter raised the undisputed fact that her personnel file was physically located "at the HOC" rather than, for example, at a CMS corporate office. Indeed, nobody disputes that Mrs. Porter returned to the HOC the day after she was barred for the sole purpose of retrieving a copy of her personnel file. *See* Porter decl., ¶ 20. There is no contradiction at all between ¶ 27 and Mrs. Porter's deposition testimony; thus, the paragraph should not be stricken. *See Patterson*, 2001 WL 1154592 at *3.

### 4. Paragraph 28

Finally, ¶ 28 of Mrs. Porter's declaration states as follows:

> The SCSD conducted training programs for medical staff on issues besides security. For instance, there were occasional programs regarding diseases such as tuberculosis or AIDS. In addition, Department of Public Health Officials were occasionally brought in to put on seminars and programs.

Porter decl., ¶ 28. In her deposition, Mrs. Porter was asked about the training she received at the HOC. Mrs. Porter testified that she received training from the SCSD in a number of areas,

6

including report writing, security, CPR, a general orientation of the HOC, and the procedures for administering sick calls.[5] *See* Porter dep., pp. 31-35 (Schumacher Decl., Ex. 1). At the close of this line of questioning, the following exchange occurred:

> Q. Any other training?
>
> MR. SAVAGE: In addition to the other things she told you?
>
> Q Yes.
>
> A. I was trained there on -- on more than one occasion. It was at least a day long each time, and I'm really not sure.
>
> Q. OK
>
> A. It was nine years worth of training."

Porter dep., p. 35.

It is evident from this exchange that, while Mrs. Porter was doing her best to respond to the questions, she was "not sure" if she had provided a comprehensive account of all of the training that she received from the SCSD during her nine-year tenure at the HOC. *Id.* However, in response to the defendants' arguments in their summary judgment motions that the <u>only</u> training offered by the SCSD was limited to security-related issues—a characterization clearly at odds with the record—Mrs. Porter recalled two additional examples of trainings provided on health-related issues. *See* Porter decl., ¶ 28. These statements do not contradict the other examples of training she provided at her deposition; rather, they expand on the answers she provided at the time. *See Gillen*, 283 F.3d at 26; *see Rule*, 85 F.3d at 1011. The declaration in no way contradicts clear answers to unambiguous questions. *See Colantuoni* at 5. These additions to her testimony, which are consistent with her deposition, are entirely different than

---

[5] CMS incorrectly states in its Motion that Mrs. Porter testified that the training she received from the SCSD on report-writing "specifically had to do with security-related concerns." Motion, p. 4. Mrs. Porter clearly testified that she was trained in report-writing <u>and</u> in security-related concerns (as well as in CPR). *See* Porter dep., p. 35 (Schumacher Decl., Ex. 1).

the situation in *Colantuoni*, where the plaintiff's declaration was directly contradictory to clear testimony relating to the crucial issue in that case.

## CONCLUSION

The four challenged paragraphs are entirely consistent with Mrs. Porter's prior testimony and merely provide additional information that was not elicited at her deposition. The Motion to Strike should be denied in its entirety.

        Respectfully Submitted,

        SHEILA J. PORTER,

        By her attorneys,

        */s/ David S. Schumacher*
        Joseph F. Savage, Jr. (BBO #443030)
        David S. Schumacher (BBO #647917)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, Massachusetts 02109-2881
        (617) 570-1000

Dated: December 9, 2005

LIBA/1654152.1