UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, SUFFOLK COUNTY, and CORRECTIONAL MEDICAL SERVICES<br><br>    Defendant. | Civil Action No.04-11935-DPW |

**SHEILA PORTER'S OPPOSITION TO SUFFOLK DEFENDANTS' MOTION TO STRIKE MATERIALS INCLUDED IN PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Sheila J. Porter ("Mrs. Porter") hereby submits her Opposition to the Suffolk Defendants' Motion to Strike Materials Included in Mrs. Porter's Opposition to the Suffolk Defendants' Motion for Summary Judgment.

**INTRODUCTION**

The Suffolk Defendants move to strike several pieces of evidence from the summary judgment record, including approximately half of Mrs. Porter's Declaration and 10 additional documents. *See* Motion to Strike ("Motion"), pp. 1-2. While there is no basis to strike any of the materials cited by the Suffolk Defendants, it must be noted that, even if all of the materials were stricken from the record, there would still be numerous issues of material fact that would preclude granting summary judgment in favor of the Suffolk Defendants. For instance, many of the challenged documents relate to Mrs. Porter's claim that Suffolk County was liable for the deprivation of her civil rights under § 1983. Even without these documents, however, summary

1

judgment would still be inappropriate based on the *Baron* decision and the deposition testimony from this case, neither of which are challenged by the Motion, confirming that a Code of Silence existed at the HOC which caused Mrs. Porter's barring. *See* Opposition to Suffolk Defendants' Motion for Summary Judgment, pp. 24, 30-31. Thus, while the Suffolk Defendants' Motion is entirely without merit, it has no bearing on the outcome of the summary judgment briefing before the Court.

## ARGUMENT[1]

**I.    Mrs. Porter's Declaration Should Not be Stricken Because it Does Not Contradict Her Deposition Testimony and is Based on Personal Knowledge.**

The Suffolk Defendants seek to strike 14 full paragraphs of Mrs. Porter's Declaration on various grounds, mostly invoking the sham affidavit rule. A party opposing summary judgment may submit affidavits to show that there are genuine issues of material fact and that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An affidavit must be made on personal knowledge, set forth admissible facts and must show that the affiant is competent to testify as to the matters stated in the affidavit. *See* Fed. R. Civ. P. 56(e). The sham affidavit rule was adopted in the First Circuit in *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1 (1st Cir. 1994), a products liability action involving injuries sustained from a fall due to an allegedly defective ladder. In *Colantuoni*, the plaintiff submitted an affidavit claiming that at all times that he used the ladder he "believed it was safe to use [] and [] had no knowledge, at that time, of its propensity to slip." *Colantuoni*, 44 F.3d at 5. This statement was in stark contrast to

---

[1] As an initial matter, the Motion should be denied because the Suffolk Defendants failed to confer with counsel prior to filing its Motion. Local Rule 7.1(A)(2) states: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." The Suffolk Defendants' motion does not contain such a certification, nor could it because the Suffolk Defendants failed to confer with counsel for Mrs. Porter prior to filing the Motion. The Motion should be denied on this basis alone. *See Hasbro v. Serafino*, 168 F.R.D. 99, 101 (D. Mass 1996); *see also Cobb v. Supreme Judicial Court*, 334 F. Supp. 2d 60, 62 (D. Mass 2004); *Abrazinski v. Dubois*, 876 F. Supp. 313 (D. Mass 1995).

the plaintiff's deposition testimony, where he admitted that he was aware that, in fact, it was likely <u>unsafe</u> to use the ladder in question. *Id.*, 44 F.3d at 4. Under these circumstances, the First Circuit struck the allegations in the affidavit, announcing the sensible principle that "[w]hen an interested witness has given <u>clear answers</u> to <u>unambiguous questions</u>, he cannot create a conflict and resist summary judgment with an affidavit that is <u>clearly contradictory</u>, but does not give a satisfactory explanation of why the testimony is changed." *Id.* at 5 (emphasis added). *See also Colburn v. Parker Hannifin/Nichols Portland Div.*, 2005 WL 3080925, *11 n.3 (1st Cir. Nov. 18, 2005) (striking section of affidavit in employment retaliation action where plaintiff claimed that he could do certain activities when he had a migraine, directly contradicting deposition testimony that a migraine prevented him from engaging in any activities).

Thus, averments in an affidavit submitted in opposition to a motion for summary judgment need only be stricken if they are <u>clearly contradictory</u> to <u>clear answers</u> given at a previous deposition in response to <u>unambiguous questions</u>. *See Colantuoni*, at 5. On the other hand, where there is no contradiction between the affidavit and the deposition, the subsequent affidavit is perfectly valid. *See, e.g., Patterson v. Dolan*, 2001 WL 1154592, *3 (D. Me. Oct. 1, 2001); *see Hinkley v. Baker*, 122 F.Supp.2d 57, 59 n.1 (D. Me. 2000). Moreover, nothing prevents a plaintiff from augmenting, explaining or amplifying deposition testimony by providing additional facts in an affidavit opposing summary judgment. *See Gillen v. Fallon Ambulance Service*, 283 F.3d 11, 26 (1st Cir. 2002); *see also Patterson*, 2001 WL at *3 (refusing to strike averments that were not discussed at the deposition); *Hinkley*, 122 F. Supp.2d at 59 n.1 (same). This is especially so where "the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Finally, when the fact averred in the affidavit is supported by additional evidence,

3

there is little concern that the affidavit is a "sham."  *See Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000).

None of paragraphs challenged under the sham affidavit rule conflict at all with Mrs. Porter's deposition testimony.  First the Suffolk Defendants object to ¶ 6, which states as follows: "I believe that it was known among various people within the Suffolk County Sheriff's Department ("SCSD") that I had an ongoing relationship with the FBI and that Mr. Rosario and I cooperated with the FBI during the November 2002 incident."  Contrary to the Suffolk Defendants claim, ¶ 6 does not conflict with Mrs. Porter's deposition at all.  The exchange began on page 117 of her deposition, which the Suffolk Defendants do not attach to their Motion.  Mrs. Porter was asked if she told anyone at the SCSD that the FBI had contacted her "in the latter part of 1999 through the calendar year of 2000 . . ."  *See* Deposition of Sheila Porter ("Porter dep."), pp. 117-18 (attached to Declaration of David Schumacher ("Schumacher Decl."), Ex. 1).  Mrs. Porter responded that, at this time, she spoke with Steve Jacobs, who was an investigator with the Sheriff's Investigative Division ("SID").  *Id.*, pp. 118-19.  Mrs. Porter was then asked "[w]ho was the next person that you told from the Suffolk County Sheriff's Department that you were providing information to the F.B.I., whether informally or formally?"  *Id.*, p. 120.  Mrs. Porter responded that she spoke with SID investigator Paul DeFazio in 2002.  *Id.*  Mrs. Porter later reiterated that the "next person -- well, the person that knew" was Mr. DeFazio.  *Id.*, p. 124.  Mrs. Porter was <u>never</u> asked if she told anyone <u>else</u> at the SCSD that she was cooperating with the FBI.  Nor was she asked if she believed that others at the SCSD knew, regardless of whether she told them or not.  Thus, ¶ 6 does not conflict with any portion of her prior testimony but, rather, adds additional information that was not elicited at the deposition.  It should not be stricken.  *See  Gillen*, 283 F.3d at 26); *Rule*, 85 F.3d at 1011.

4

The Suffolk Defendants next object to the following two sentences within ¶ 7: "Mr. Rosario asked me to communicate that he had been abused to FBI Agent Christa Snyder, who he had worked with previously and who was one of my primary contacts at the FBI . . . He had asked to be transferred out of the HOC."[2] The Suffolk Defendants claim that these sentences are objectionable because Mrs. Porter did not include this information at her deposition. Motion, p. 3. Tellingly, the Suffolk Defendants do not provide any citations to portions of the deposition for the Court to evaluate this baseless claim. For this reason alone ¶ 7 should not be stricken. Nor does it contradict any of Mrs. Porter's prior testimony. The questions regarding Mrs. Porter's interactions with Mr. Rosario focused almost exclusively on the observations that she made of his injuries, rather than the content of Mr. Rosario's statements. Moreover, while Mrs. Porter was asked <u>when</u> she contacted Agent Snyder and <u>what</u> she told her, she was not asked <u>why</u> she reported the Rosario allegations to the FBI. *See* Porter dep., p. 234 (Schumacher decl., Ex. 1). Thus, Mrs. Porter's explanation in ¶ 7 that she contacted Agent Snyder upon Mr. Rosario's request does not contradict any portion of her deposition and should not be stricken.

The Suffolk Defendants also seek to strike ¶¶ 10 and 11. Paragraph 10 states as follows:

> I immediately reported my encounter to Gayle Bartley, a mental health professional in the medical unit. I told Ms. Bartley that, while Mr. Rosario would claim that he was hearing voices to attempt suicide, she should ask Mr. Rosario about other issues going on related to his cooperation with law enforcement against corrections officers.

Porter Decl., ¶ 10. At her deposition, in response to being asked what she told Ms. Bartley, Mrs. Porter testified that: "I told her that he had told me he wasn't hearing voices; that <u>there were some other issues going on</u>; and that there were some physical issues going on; and that that was not the whole story, so..." *See* Porter dep., p. 205 (emphasis added) (Schumacher Decl., Ex. 1);

---

[2] The remainder of ¶ 7 is not challenged by the Suffolk Defendants.

5

*see id.* ("he had some other issues on the unit"). This testimony is entirely consistent with ¶ 10, and Mrs. Porter merely adds additional information to her earlier statement that was not previously elicited. *See Rule*, 85 F.3d at 1011. Paragraph 10 should not be stricken.

Paragraph 11 states as follows: "I next reported this encounter to my supervisor, Donna Jurdak. In addition, I told Ms. Jurdak that I did not believe that Mr. Rosario should have been transferred back to the HOC, where he previously cooperated with the FBI on a well-publicized investigation and trial of inmate abuse." Porter Decl., ¶ 11. The SCSD claims that the second sentence in ¶ 11 is inconsistent with Mrs. Porter's deposition. But Mrs. Porter testified that part of what she told Ms. Jurdak was "[t]hat Rene was back and I didn't understand why he was back . . ." Porter dep., p. 223. Moreover, Mrs. Porter testified that she was surprised that Mr. Rosario had been transferred back to the HOC because "[h]e was transferred from the House of Correction after the incident with the wire, and I did not expect to see him there again." *Id.*, p. 171. Thus, Mrs. Porter's statements in ¶ 11 are entirely consistent with her prior testimony and should not be stricken. There is also additional evidence in the record supporting this averment. *See* Deposition of Donna Jurdak, p. 93 (Schumacher Decl., Ex. 2). (testifying that Mrs. Porter had communicated to her that "he shouldn't have been at the facility, that he was at risk for being harmed."). *See Palazzo*, 232 F.3d at 43.

The Suffolk Defendants move to strike the statements contained in ¶ 12 where Mrs. Porter relates her concerns about SID conducting a thorough investigation and that she intended SID to review her report. But in her deposition Mrs. Porter testified at length as to why she wanted to directly report her encounter to a SCSD deputy superintendent, rather than SID. For instance, she mentioned the tension between SID and the FBI and Mr. Rosario's history of testifying against SCSD witnesses in a criminal trial. *See* Porter dep., pp. 216-19. Moreover,

6

Mrs. Porter never testified that SID should not review her report at all; rather, she stated that she wanted to first report her encounter to upper SCSD management due to Mr. Rosario's and her own history of cooperating with the FBI. *Id.* Thus, the statements in ¶12 are not at all inconsistent with Mrs. Porter's deposition testimony and should not be stricken.

Next, the Suffolk Defendants invoke the sham affidavit rule in moving to strike six entire paragraphs of Mrs. Porter's Declaration, ¶¶ 23-26 and 28-29. Mrs. Porter addresses ¶¶ 24, 26 and 28 in her Opposition to CMS' Motion to Strike and incorporates those arguments by reference herein. As to the remainder of these paragraphs, the Suffolk Defendants confusingly claim that ¶¶ 23 and 29 should be stricken not under the sham affidavit rule but because "Porter does not articulate any facts demonstrating that the information contained therein is based upon personal knowledge." Motion, p. 4. This argument misses the mark. In ¶ 23, which relates to the SCSD's ability to impose discipline on contract workers short of barring, Mrs. Porter states that "I personally witnessed these forms of discipline while I was at the HOC." Similarly, ¶ 29 recites Mrs. Porter's belief "that the inmates considered me to be an employee of the HOC" and her affirmative recollection that no inmate ever referred to her as an independent contractor, rather than as a SCSD employee. This is prototypical testimony based on personal knowledge. Moreover, an affidavit based on personal knowledge is admissible even if it does not cite additional evidence; objections to such statements go towards their weight, not their admissibility. *See Hanley v. Adam*, 1998 WL 560282, *4 (N.D.Ill. 1998) (refusing to strike portions of affidavit that do not cite additional evidence); *see also Weiss v. Mentor Graphics Corp.*, 1999 WL 985141, *23 (D.Or. Oct. 6, 1999) (declaration based on personal observations is admissible and objections go to weight, not admissibility, of evidence).

Paragraph 25 of Mrs. Porter's Declaration provides as follows:

7

> The SCSD also controlled our work schedule. There were only certain hours in the day that we could treat inmates. Each morning upon arrival at the HOC, I would review the patient list and charts of inmates that I would see that day. I worked according to hours set forth by the HOC regarding sick call and physical examinations. I was assigned to treat female inmates. The SCSD insisted that female inmates be seen on a separate floor instead of in the standard medical unit. The SCSD also determined which days and times I could go to that separate floor, and the SCSD provided an officer to staff the clinic on the women's floor.

Porter Decl., ¶ 25. The Suffolk Defendants claim that this paragraph directly contradicts her deposition testimony. Not so. The following exchange occurred at Mrs. Porter's deposition:

> Q. How did the Suffolk County Sheriff's Department dictate the hours and days that you worked at the Suffolk County House of Correction between January of 2001 and June of 2003?
>
> A. Suffolk County determined what time sick call would start and stop, which inmates could come down for sick call at what time, whether or not someone -- an inmate could be seen in the health service unit or in the female facility.
>
> Q. I'm sorry, when or what?
>
> A. Well, we only saw girls, but when we could use the exam room, when we could see people in the female facility, or when the women came downstairs. Whether or not we could bring someone who was in a segregation unit to the health service unit, how private the conversations were going to be.

Porter dep., p. 59 (Schumacher decl., Ex. 1). Paragraph 26 is fully consistent—indeed, almost identical—to this testimony. Finally, the Suffolk Defendants' citation to Superintendent Horgan's testimony has no bearing on whether Mrs. Porter's declaration contradicts her <u>own</u> deposition testimony. *See Colantuoni* at 5.

The Suffolk Defendants seek to strike ¶ 31, which states:

> By claiming that I was biased and had an agenda, I believe that Sheriff Cabral and the SCSD were implying that I was racially

8

> biased. While the words "bias" and "agenda," standing alone, may
> have different meanings, when used together, I believe they are
> meant to convey that I was a racist.

Porter Decl., ¶ 31. This paragraph does not directly contradict Mrs. Porter's deposition testimony. First, Mrs. Porter testified in her deposition that, after speaking with friends and family who heard these defamatory statements, she <u>did</u> believe that they were meant to imply that Mrs. Porter was a racist. *See* Porter dep., pp. 383-85. Second, even though Mrs. Porter testified at her deposition that the word "biased" can have different meanings, she clearly states in ¶ 31 that, when used in connection with "agenda," the phrase has racial connotations. Thus, Mrs. Porter was merely amplifying and explaining her deposition testimony, which did not provide clear answers to unambiguous questions, and hence should not be stricken. *Gillen* at 26.

Finally, the Suffolk Defendants seek to strike ¶¶ 32 and 33 on the ground that they are not based on personal knowledge. Again, the Suffolk Defendants confuse a piece of evidence's weight with its admissibility. In ¶ 32, Mrs. Porter states her belief that a Code of Silence exists at the HOC, recites that she "personally saw retaliation" against other SCSD employees who spoke out against the SCSD, and described an incident against her personally that she believes was an act of retaliation for speaking out against a SCSD corrections officer. Clearly these statements are indeed based on Mrs. Porter's personal knowledge. *See Weiss*, 1999 WL at * 23.

## II. The Stern Commission Report is Admissible Under the Public Records Exception to the Hearsay Rule.

Next, the Suffolk Defendants move to strike the Report of the Special Commission on the Suffolk County Sheriff's Department ("Stern Commission Report") (attached to Mrs. Porter's Opposition to Suffolk Defendants' Motion for Summary Judgment, Ex. 30). The Suffolk Defendants have previously made this argument to this Court and lost. The court in *Baron* relied on the Stern Commission Report under Rule 803(8)(C) in denying a motion for summary

9

judgment filed by the SCSD, stating that "the Stern Report does lend great weight to plaintiff's argument of a custom or policy condoning a code of silence . . .". *See Baron v. Hickey*, 242 F. Supp. 2d 66, 76 (D. Mass. 2003) (Saris, J.). This ruling is not surprising because "admissibility of evidence of this sort is generally favored . . . Reports such as those issued by the Commission [investigating the Suffolk County (NY) District Attorney's Office and police department] are presumed to be admissible in the first instance." *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991). For the same reasons this Court should deny the Suffolk Defendant's Motion to Strike the Stern Commission Report.[3]

Moreover, the Report is admissible because it is a public record, a recognized exception to the hearsay rule. Fed. R. Evid. 803(8) provides as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness.

The Stern Commission Report satisfies Rule 803(8)(C) because it is (1) a report of a public office or agency, (2) setting forth factual findings resulting from an investigation made pursuant to authority granted by law, and (3) is trustworthy.

First, the Suffolk Defendants claim, without a shred of authority, that the Stern Commission was not a "public office or agency." On the contrary, reports released by an independent body made within authority granted by law is a public report. *See Cunningham v.*

---

[3] The *Baron* court also refused to allow the Report to be admitted at trial on authenticity, rather than hearsay, grounds. *See Baron*, 292 F.Supp. 2d 248, 256 n.5 (2003). That issue is not currently before the Court.

*Gates*, 229 F.2d 1271, n. 19 (9th Cir. 1993) (affirming admission of Christopher Commission Report, an independent task force which investigated the Los Angeles Police Department); *see Perrin v. Anderson*, 784 F.2d 1040, 1046-47 (10th Cir. 1986) (report of shooting review board, "a properly constituted body of the Department of Public Safety" under state statutory law, was properly admitted); *Jenkins v. Whittaker Corp*, 7895 F.2d 720, 726 n.15 (9th Cir. 1986) (Rule 803(8)(C) requires only that report be authorized, not mandated, by law). Here, the Report states on page 1 as follows: "In the fall of 2001, at the request of Suffolk County Sheriff Richard Rouse, Governor Jane Swift appointed the Special Commission to investigate and report on the operations and management of the Suffolk County Sheriff's Department . . ." The Stern Commission was clearly a public office or agency.

Second, it cannot seriously be argued that the Report does not contain factual findings. The Suffolk Defendants' precise argument that it is inadmissible because it contains opinions was rejected by the Supreme Court in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988). At issue in *Rainey* was the admissibility of a JAG investigative report of an airplane crash that killed a Navy flight instructor and student. The Supreme Court held that the entire report, including its conclusions and opinions, were admissible. *Id.* at 163. In so doing, the Court stated that district courts should take "a broad approach to admissibility under Rule 803(8)(C)." *Id.* at 170; *see also Lubanksi v. Coleco Industries, Inc.*, 929 F.2d 42, 45 (1st 1991) (endorsing "broad interpretation" approach to determine if a report contains factual findings).

Here, the portions of the Stern Commission Report relied upon by Mrs. Porter—those concluding that a Code of Silence exists at the HOC—are conclusions based on factual investigation. *See* Stern Commission Report, pp. 3-4 (describing the exhaustive methodology of the investigation, which included scores of interviews with SCSD employees, inmates, outside

11

agencies and a review of numerous documents). These conclusions are admissible under *Rainey*; *see also Gentile v. County of Suffolk*, 129 F.R.D. 435, 449-50 (E.D.N.Y. 1990), *aff'd*, 926 F.2d 142 (2nd 1991) (conclusions contained in report of commission investigating Suffolk County (NY) District Attorney's Office and police department were admissible because they were based on factual findings).

Third, the Report is trustworthy. To determine trustworthiness, most courts look to the four elements included in the Advisory Committee Notes to FRE 803(8)(C): (1) the timeliness of the investigation, (2) the investigator's skill and experience, (3) whether the procedures for hearings were sufficient,[4] and (4) evidence of bias, as when reports are prepared with a view to possible litigation. *See, e.g.*, *Sabel v. Mead Johnson & Co.*, 737 F.Supp. 135, 142 (D. Mass. 1990). As defendants acknowledge, they have the burden of establishing that the report is inadmissible. Motion at 6; *Coleman v. Home Depot*, 306 F.3d 1333, 1341 (3rd Cir. 2002).

The first factor weighs in favor of admissibility. Timeliness focuses on two issues: how recent were the events at the time of the report was drafted, and is the document timely with respect to the allegations of the party seeking its introduction. *Gentile*, 129 F.R.D. 450. The Suffolk Defendants attack the latter notion of timeliness, claiming that the Report is not trustworthy because it was focused on events predating the Cabral administration. Motion, p. 7. But the events underlying Mrs. Porter's barring occurred only seven months after the Report was issued. This is not a situation where the events of the report predated the events underlying the lawsuit by multiple years. *See Carson v. Lewis*, 35 F.Supp. 2d 250, 268 (S.D.N.Y. 1999) (excluding admission of investigative report that predated events of lawsuit by six years). In

---

[4] While the Stern Commission met regularly and conducted numerous interviews, its charge did not include holding public hearings. But this is not fatal to admissibility of a public record where there is other indicia of trustworthiness. *See Baker v. Elcona Homes*, 588 F. 2d 551, 558 (6th Cir. 1978). Moreover, the Report is

*Gentile*, the court admitted the report, which was similar to the report here, even though the report postdated the events underlying the lawsuit by several years. *See Gentile* at 451.

Moreover, the unconstitutional custom that resulted in Mrs. Porter's barring had been in place at the SCSD for years. Indeed, passage of time is not a factor that helps the Suffolk Defendants when they have offered no evidence that the SCSD did anything to "aggressive[ly] attack [] the code of silence that prevents staff members from reporting the misconduct of fellow staff members." Stern Commission Report, p. 10.[5] The Report is primarily offered to support Mrs. Porter's § 1983 claim against Suffolk County, not Ms. Cabral. There is no evidence that the personnel within the SCSD changed appreciably in the few months after the Report issued.

The Report also easily satisfies the second factor (skill and experience). As the *Sabel* court stated, "it is proper to presume that the official has the skill and expertise to perform the tasks assigned to him by law, and . . . it is the burden of the party opposing admission to establish through specific facts that the official lacks such skill." *Sabel*, 737 F. Supp. at 143 (denying challenge to the qualifications of a high-ranking DEA official). The defendants do not satisfy this burden. The Stern Commission members had impeccable credentials: it was chaired by a former US Attorney and included a former Superior Court Justice, a former chief of the DOJ National Institute of Corrections Jail Center, a former Assistant US Attorney, a local Clerk-Magistrate, a psychiatric social worker, and a lawyer who was a former Boston finance commissioner. This panel is obviously qualified to investigate a law enforcement department.

---

reliable even without a formal hearing because numerous SCSD witnesses were interviewed and allowed to present their position on the investigation. *See U.S. v. AT&T*, 498 F. Supp. 353, 365 (D.D.C. 1980).

[5] As the Supreme Court has held, "a § 1983 cause of action is as available for the first victim of a policy or custom that would forseeably and avoidably cause an individual to be subjected to deprivation of a constitutional right as it is for the second and subsequent victims." *Oklahoma City v. Tuttle*, 471 U.S. 808, 832 (1985).

*See Gentile*, 129 F.R.D. at 452 (expertise factor easily satisfied where commission was chaired by former U.S. Attorney and included lawyers and dean of law school).

Finally, there is absolutely no evidence that the Stern Commission members were biased in any way or that the report was prepared with a view to possible litigation. The Suffolk Defendants' conclusory allegations that the Report shows an "obvious bias" against the Sheriff's Department is completely unsupported. Ms. Cabral purported to use this supposedly biased Report and used it as a "blueprint" for her administration. *See* Deposition of Andrea Cabral, p. 309 (Schumacher Decl., Ex. 3). Moreover, as described above, the methodology used by the Commission demonstrates a meticulous, thorough, utterly unbiased investigation. *See* Stern Commission Report, pp. 3-4.

A weighing of these factors clearly demonstrates the trustworthiness of the Stern Commission Report. Similar independent commissions investigating wrongdoing at law enforcement agencies have routinely been admitted. *See Gentile*, 129 F.R.D. 435 (independent New York Commission investigated district attorney's office and police department); *see also Cunningham v. Gates*, 229 F.2d 1271, n.19 (9th Cir. 1993) (independent task force investigating Los Angeles Police Department). Defendants have not satisfied their burden of demonstrating untrustworthiness; thus, the document is admissible.[6]

---

[6] The cases cited by the Suffolk Defendants in this district have no bearing on the admissibility of the Stern Commission Report. The *Britton* case does not even mention Rule 803(8)(C) and did, in fact, rely on the St. Clair Report in denying the defendants' motion to dismiss. *Britton v. Maloney*, 901 F. Supp. 444, 452 (D. Mass. 1995). Citation to the *Aleves* case is even more misleading, because the court there ruled that it "need not and do not rule at this time on the potential admissibility of any part of the St. Clair Report as evidence at trial" and deferred resolution of its admissibility until a later date. *Alves v. Lemoure*, 794 F.Supp. 34, 35 (D. Mass. 1992). Finally, the *McGrath* court struck the St. Clair Report not because it was hearsay but because it had not been cited in the complaint. *McGrath v. MacDonald*, 853 F. Supp. 1, 2-3 (D. Mass. 1994). In a footnote the court quoted from another case which had ruled that the St. Clair Report was hearsay, but it does not provide sufficient detail on that court's ruling—indeed, it does not even provide the case name or citation—to be applicable here.

As to the "self-critical analysis privilege," it simply has no bearing on the admissibility of the Stern Commission Report. This privilege is only invoked by a party resisting a discovery request. *See Whittingham v. Amherst College*, 164 F.R.D. 124 (D. Mass. 1995). The Suffolk Defendants do not point to a single case that has refused to admit a public report into evidence based on this privilege. Moreover, the SCSD was not "self-evaluating" anything; the Stern Commission was an independent commission that was appointed upon the request of the Suffolk County Sheriff. *See* Stern Commission Report, p. 1.

**III.   The Channel 5 Transcript Is Not Hearsay Because it is Not Being Admitted for its Truth.**

Plaintiffs attempt to strike Exhibit 44, a transcript of a report that aired on WCVB Channel 5 which repeated Ms. Cabral's defamatory statements towards Mrs. Porter. This transcript is admissible because Mrs. Porter does not seek to introduce it for its truth; to the contrary, the purpose is to show that the statements were made by Ms. Cabral. Plaintiff will also prove that the statements were defamatory and untrue. Mrs. Porter did not, as the Channel 5 transcript states (reproducing Ms. Cabral's press statement), violate any rules, regulations or contractual provisions of the SCSD or CMS, nor is she biased or that has an agenda. To adopt the defendants' rule, no defamation victim could ever show that a statement was defamatory. Because this evidence is not being introduced for the truth of the matter asserted, it is not hearsay and is admissible. Fed. R. Evid. 801(c).[7]

---

[7] *Stearns v. Dion*, 2005 WL 217037 (D. Me. 2005) has no application to the admissibility of the Channel 5 transcript. The plaintiff in *Stearns* did not have a defamation claim and was not attempting to introduce a media source of any kind. The court there refused to admit a list the plaintiff compiled regarding other incidents of inmate abuse. This has nothing whatsoever to do with the admissibility question here.

15

## IV. The Nonprosecution Letter From AUSA McNeil is Admissible Under the Public Records and Reports Exception to the Hearsay Rule.

Defendants assert in a conclusory fashion that Exhibit 17, a letter from AUSA John McNeil to Ms. Cabral's lawyer notifying him that his client will not be indicted, is inadmissible hearsay. To the contrary, this letter is also admissible under the Public Records and Reports exception to the hearsay rule, which the Suffolk Defendants do not address.

Numerous courts in this circuit and elsewhere have held that reports of U.S. Attorneys regarding the results of their investigations are admissible under FRE 803(8)(C). *See United States v. Tobin*, 28 F. Supp.2d 674, 677 n. 4 (D. Mass. 1998) (noting that a litigant in a civil fraud action could rely on the pre-sentence report submitted by the United States Attorney); *United States v. Welborn*, 49 F. Supp.2d 597, 605 (N.D. Ill. 1999) (holding that a litigant could rely on a pre-sentence report prepared by a United States Attorney).

Here, the United States Attorney clearly is a public official. *See Welborn*, 49 F. Supp.2d at 605. Moreover, as in *Welborn*, the United States Attorney's investigation of Sheriff Cabral was made pursuant to the prosecutor's legal authority and the nonprosecution letter was a "record, report or statement" setting forth factual findings resulting from that investigation. *See id*. Moreover, the factual findings set forth in the letter are admissible, including the "factually based conclusions or opinions made by the preparer of the report based on disputed evidence." *Id*. *See also Rainey* at 170; *United States v. Peitz*, 01-CR-852, 2002 WL 31101681 *5 (N.D. Ill. Sept. 20, 2002) (holding that an SEC no action letter from a civil action, which stated that there was no evidence that the defendant participated in a scheme to defraud investors, was excluded from the hearsay rule in the criminal trial of the defendant).

Finally, as described above, the Suffolk Defendants do not even attempt to satisfy their burden of proving that the letter is inadmissible based on a lack of trustworthiness. The

16

nonprosecution letter was timely, it was the product of an investigation by skilled investigators, it followed numerous grand jury hearings, and it cannot be argued that the investigators were biased; indeed, the USAO chose not to indict Ms. Cabral or anyone else within the SCSD. In short, the letter is admissible under the public record exception to the hearsay rule.[8]

**V.      The Materials From the *Feliz, Davis* and *Michelman* Cases May Be Considered on Summary Judgment.**

Defendants argument that that the Civil Complaints filed in *Feliz v. Suffolk County House of Corrections*; *Davis v. Suffolk County*; and *Michelman v. Suffolk County* are hearsay lacks merit. As an initial matter, Defendants ignore the fact that the complaint in *Feliz* was a <u>verified</u> complaint, and that verified complaints are the functional equivalent of sworn affidavits, which are permitted under Rule 56. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991) (considering verified complaint at summary judgment). Moreover, the complaints are not hearsay because they are not offered for the truth of the matters asserted, but to show that Sheriff Cabral, and the County, had constructive knowledge (*i.e.* they should have known) that employees were being retaliated against for exercising their First Amendment rights. One of the main reasons that Mrs. Porter introduces evidence of the code of silence is to establish that the Defendants were deliberately indifferent to the retaliation being carried out by Corrections Officers. That several terminated employees filed civil complaints alleging retaliation shows, or at a minimum raises a genuine issue of material fact, that Sheriff Cabral and the County were on notice and were deliberately indifferent to the retaliation occurring at the HOC. *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 346 (1st Cir. 1998) (holding that complaints were

---

[8]  The defendants also argue, without citation to authority, that the letter is inadmissible because Mrs. Porter did not submit Attorney Prince's response to the McNeil letter. Defendants could have included Attorney Prince's letter in their Motion for Summary Judgment but did not. Even if they had, at a minimum, any dispute between these two letters would be an issue for the jury to resolve.

17

admissible as non-hearsay because they were offered to show that the defendant was on notice, not for the truth of the matter asserted in the complaints).

The oral interview of Ms. Feliz is not subject to the hearsay rule because it is former testimony under FRE 804(b)(1). Although called an oral interview, this had all the hallmarks of a deposition: Ms. Feliz was under oath, SCSD counsel was there to cross-examine, and a court reporter created a transcript of the interview. *See* Exhibit 36. Moreover, Ms. Feliz' claim for retaliation was similar to Mrs. Porter's claim that the Code of Silence at the SCSD resulted in her barring; thus, the SCSD had a similar motive to develop her testimony by cross-examination. Thus, the oral interview is admissible.

Finally, the Paul Davis affidavit (Exhibit 38) is admissible under *Sheinkopf*. Contrary to the Suffolk Defendants' claim, Mr. Davis' affidavit was based on personal knowledge, and nowhere does he state that it was based on information and belief. *See* Ex. 38.

## VI. Testimony of Former Superintendent Richard Feeney and Former Deputy Superintendent Marie Lockhart is Admissible as an Admission of a Party Opponent

Defendants claim that the admissions of former Superintendent Richard Feeney and former Deputy Superintendent Marie Lockhart are not binding on the County because they retired prior to the appointment of Sheriff Cabral. While Defendants cite FRE 801(d)(2), they fail to acknowledge that, under this rule, a "statement that is offered against a party and is . . .(D) a statement by a party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship" is not hearsay. FRE 801(d)(2); *see also Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094-95 (1st Cir. 1995). Defendants do not dispute that Superintendent Feeney and Deputy Superintendent Lockhart were employees of Suffolk County at the time of their testimony. Nor do they dispute that the testimony concerned a matter within the scope of their employment—namely that a code of silence exists at facilities

under their jurisdiction. Therefore, the testimony of Superintendent Feeney and Deputy Superintendent Lockhart is an admission attributable to Suffolk County, and thus is not hearsay.

**VII.    Agent Snyder's Memo is Admissible as a Public Record.**

The Suffolk Defendants seek to strike exhibit 19, a memorandum prepared by FBI Agent Christa Snyder concerning her communications with SCSD employees about the Rosario allegations. Defendants spend precisely one sentence arguing that this memo is inadmissible hearsay. Again, the Suffolk Defendants ignore FRE 803(8). First, the memorandum is admissible under FRE 803(8)(A) because it is a record of a public agency setting for the activities of the agency. Internal documents detailing the routine functions of an office or agency are presumptively admissible. *See United States v. Union Nacional de Trabajadores*, 576 F.2d 388, 390-91 (1st 1978) (admitting copy of marshal's return to prove that injunction was served on defendants); *See also Alexander v. Estepp*, 95 F.3d 312, 314 (4th Cir. 1996) (county's registry of applicants for firefighter position was a public record under 803(8)(A)). The Snyder memo merely reports the facts of her encounter with SCSD employees concerning the Rosario investigation—it does not draw conclusions or evaluate anything.

The memo is also admissible under Rule 803(8)(C) because it sets forth factual findings resulting from an investigation made pursuant to authority granted by law. The memo indicates that, upon learning of the Rosario allegations, Agent Snyder contacted the SCSD to investigate his allegations. The memo recounts her conversations with SCSD employees about the investigation. Even if the Suffolk Defendants attempted to satisfy their burden of showing that the memo is untrustworthy, they could not, because the memo was timely, was created by a skilled investigator and there is no evidence of bias. *See Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986) (admitting FBI reports in

civil action under Rule 803(8)(C)); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, 2003 WL 22909160, *5 (S.D.N.Y. 2003) (admitting interview reports prepared by FBI agents).[9]

**VIII.   Briefs Submitted by SCSD Attorneys are Also Party Admissions.**

Finally, the SCSD moves to strike exhibits 31-33, which are briefs submitted by the SCSD in other proceedings. The Suffolk Defendants claim, without citation to authority, that the briefs are inadmissible hearsay because they are "arguments of counsel." These statements are not hearsay because they are admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(A)-(D). *See U.S. v. Kattar*, 840 F.2d 118, 130-31 (1st Cir. 1988) (legal briefs submitted by DOJ were party admissions and thus not hearsay); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("Counsel's statement of fact constituted an admission of a party. It was made in a legal brief filed with the court subject to the penalty of sanctions. There can be little dispute, therefore, that defendants' counsel was acting in an authorized capacity when making the assertion.").

## CONCLUSION

For the foregoing reasons, the Suffolk Defendants' Motion to Strike should be denied.

Respectfully Submitted,

SHEILA J. PORTER,

By her attorneys,

*/s/ David S. Schumacher*
Joseph F. Savage, Jr. (BBO #443030)
David S. Schumacher (BBO #647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

Dated: December 9, 2005                                                                                                     LIBA/1654606.1

---

[9] The statements of the SCSD employees within the memo are not hearsay because they are admissions of a party-opponent. *See* Fed. R. Evid. 801(d)(2).