UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA J. PORTER,<br>    *Plaintiff*<br><br>*v.*<br><br>ANDREA J. CABRAL; SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT;<br>and<br>SUFFOLK COUNTY,<br>    *Defendant* | DOCKET NO.<br>**04-11935-DPW** |

**DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF ALLEGED NEGATIVE
CONDUCT OF THE PRIOR ADMINISTRATION**

Now come the Defendants, Andrea J. Cabral, Suffolk County and the Suffolk County Sheriff's Department and move this Honorable Court *in limine* to preclude the Plaintiff, Sheila J. Porter from introducing evidence of alleged negative conduct of the prior administration of the Suffolk County Sheriff's Department. In support thereof, the Defendant states as follows:

It is clear from the Joint Pre-Trial Memorandum and the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment that the Plaintiff intends to introduce various forms of evidence at the trial of this matter that purportedly demonstrate prior alleged negative conduct of the prior administration of the Suffolk County Sheriff's Department under the former Sheriff, Richard Rouse. Specifically, it appears that the Plaintiff will seek to introduce into evidence:

  (1) The Report of the Stern Commission;
  (2) references to an alleged "Code of Silence";
  (3) references to pleadings, testimony and/or depositions in the <u>Bruce Baron v. Daniel Hickey, et al</u> civil action (including portions of the Feeney Deposition);
  (4) references to pleadings, testimony and/or depositions in the <u>Feliz v. Suffolk County House of Corrections</u> civil action; and
  (5) Post-Hearing briefs filed on behalf of the Suffolk County Sheriff in labor arbitration briefs;
  (6) Boston Globe article(s) related to the Baron verdict;
  (7) Portions of the Lockhart deposition related to the civil action <u>Jane Doe v. Rouse</u>, et al.

For the succeeding reasons, the Plaintiff should be precluded from the introduction of any item in the foregoing list because (1) they are hearsay for which there is no exception under the Federal Rules of Evidence, (2) they are irrelevant to the issues in controversy in the case at bar, and (3) any probative value for which they allegedly contain is greatly outweighed by the unfair prejudice towards the Defendant.

A. <u>The Plaintiff's Evidence of Alleged Prior Bad Acts of the Former Administration of the Suffolk County Sheriff's Department Under Sheriff Richard Rouse is Hearsay For Which There is No Exception.</u>

  It is clear that the above evidence that the Plaintiff intends on introducing into the trial of this matter is inadmissible hearsay. Fed.R.Evid. 802. The Plaintiff will seek to introduce this evidence for the truth of the matter asserted within each document. Accordingly, unless hearsay falls within a clearly defined exception, it must be excluded. Fed.R.Evid. 803.

  During the fall of 2001, at the request of the former Sheriff, Richard J. Rouse, Governor Swift appointed the Special Commission to investigate and report on the operations and management of the Suffolk County Sheriff's Department. The Stern Report, which was issued during October 2002, consists of the evaluations, opinions and recommendations of the Commission provided to facilitate the efficient operation of the

2

Sheriff's Department in the future. It is apparent that the Plaintiff seeks to introduce the Report to offer evidence of the truth of the assertions contained within the Report. The jury should not consider the Report because it is unreliable hearsay which does not fall within any of the exceptions delineated within Fed.R.Evid. 803.

### 1. *The Stern Commission Report is not Excepted Hearsay Under Fed.R.Evid. 803(8)(c)*

The Stern Commission Report does not fall within the hearsay exception of Fed.R.Evid. 803(8)(c) because the Report is not a public record and it does not possess the trustworthiness as required by the Rule. Rule 803(8)(c) states in part:

> (8) Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth…
>
> (c) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In the case at bar, the Commission cannot be construed as a "public offices" or "agency" as required by the exception. The members of the Commission were a group of individuals selected by Governor Swift for the sole purpose of evaluating the operation of the Department. Additionally, the Report was initiated at the request of the Sheriff and therefore was not conducted "pursuant to authority granted by law" in the traditional sense. Further, in order to be included in the exception, it must be determined that the report contains factual findings based on factual investigation. Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1888). The Executive Summary of the Report states in part: "The Commission hopes that its findings and recommendations will provide the Governor with information useful to her appointment decision and will assist the new Sheriff in taking

steps necessary to transform the Jail and HOC in to model institutions." The Report does not set forth factual findings, but rather a compilation of opinions, deductions, and conclusions based upon information gather from a variety of unidentified sources.

Furthermore, the Report lacks the requisite trustworthiness for admissibility contemplated by Rule 803(8)(c). Factors to be considered in determining trustworthiness include: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. Id. At 168 n.11. In light of the four factors adopted by the Court in Beech Aircraft, it is clear that the Stern Report lacks the required trustworthiness.

The timeliness of the Report demonstrates its untrustworthiness. The Commission was established during the fall of 2001 and issued its Report during October of 2002. Although the report refers to data from FY2001 it does not specify a time frame of review. Further, the Report concerns the operations and management of the Suffolk County Sheriff's Department as it existed under the administration of the former Sheriff Richard J. Rouse. Accordingly, the Report does not even address the relevant time period of the allegations in the Plaintiff's complaint.

The Commission's skill and experience also weighs in favor of excluding the Report. The Report is unique in the respect that it was prepared by a Commission that consisted of members with no particular experience in operations of law enforcement, corrections facilities or preparations for factual reports for the Government. There was no prototype or formula to be followed in preparation of the Report, in contract to other government agency reports that would allow for admissibility. For example: factual

4

reports from the USDA – <u>Reynolds v. Giuliani</u>, 1999 WL 33027, (D.Mass); JAG report – <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153 (1988); United States Coast Guard Report- <u>Puerto Rico Ports Authority v. M/V Manhattan Prince</u>, 897 F.2d 1, (1st Cir 1990); Report of the <u>New Hampshire Liquor Commission-Brennan v. Horsefeathers, Inc</u>., 2002 WL 13495089 (D.N.H). The commission's lack of expertise in producing a document of this nature is an additional reason that the Report lacks the indicia of trustworthiness as contemplated by the Rule.

The third factor to be considered further weighs in favor of excluding the Report. The Commission did not hold hearings to issuing its Report.  The inherent safeguards of a hearing, including the opportunity to question and cross-examine witnesses, contribute to the trustworthiness of a final fact finding report.  Those safeguards were noticeably absent from the Commission's Report.  Further, the Commission does not identify the individuals who offered information that formed the basis for the Commission's findings.

The fourth and final factor in determining the trustworthiness of the Report is an examination of any potential bias.  The methodology of the investigation in this case demonstrates an obvious bias against the Sheriff and the Sheriff's Department.  The Commission spoke to and relied upon information provided by a variety of individuals, many of whom were predisposed to relay only negative information about the Sheriff personally, and the Department.  These individuals included attorneys with litigation pending against the Department as well as inmates presently and/or formerly incarcerated.  A report based upon interviews with people with litigation pending against the Department and inmates will clearly paint a negative and unfair picture of the Sheriff's Department.

The Court has addressed a similar issue concerning the admissibility of a Report pertaining to the Boston Police Department authored by the St. Clair Commission. (The St. Clair Report). The St. Clair Report was issued in the early 1990s under circumstances similar to the issuance of the Stern Commission Report. The St. Clair Commission was convened at the request of Boston Mayor Flynn, in response to public criticism and media coverage of the Boston Police Department's investigation into the murder of Carol Dimati Stewart by her husband Charles Stewart. The St. Clair Report chronicled what it determined to be deficiencies within the Boston Police Department. In subsequent civil rights lawsuits brought against the City of Boston and the Boston Police Department, the St. Clair Report was deemed inadmissible. See Britton v. Maloney, 901 F. Supp. 444, 452 (D. Mass 1995). In Alves v. Lemours, 794 F. Supp 34, (D.Mass 1992), the Court ordered all references to the St. Clair Report stricken from the Complaint upon Motion from the Defendant. McGrath v. MacDonald, 853 F.Supp 1, 2 n.3 (D.Mass. 1994) reads in part:

> "Regarding these broad conclusions, the district judge stated that, if used to prove 'a City policy of inadequate police training…[the St. Clair Report] in and of itself would provide a prima facie case against the [City] in every case no matter how frivolous…" Further, the district judge found the report "constituted inadmissible hearsay" and "lacks the requisite objective guarantees of trustworthiness" for summary judgment purposes".

In Wetherill v. University of Chicago, 518 F.Supp 1387, (DN.D.Ill 1981), the Court addressed the admissibility of a report authored by an "ad hoc task force" commissioned by the Surgeon General to study the effects of diethylstilbestrol (DES). The task force was comprised of a group of doctors and experts employed with the Federal Government. A large group of consultants participated actively in preparing the

6

final report. The Plaintiff sought admission of the task force's report. The Court declined to admit the report and found that it was not the sort of neutral fact-finding investigation conducted by a government agency that is contemplated by Rule 803(8)(c). Id. At 1391. The Court was troubled by the presence of interested parties on the consulting staff and the lack of any representatives from the pharmaceutical industry. Id. At 1390-1391. The Wetherill Court also noted that a report "is still inadmissible if the "sources of information or other circumstances indicate lack of trustworthiness."" Id. At 1390. Clearly, a source is untrustworthy if they have a pecuniary interest in a lawsuit, or they harbor animosity against the institution that incarcerated them.

In the case at bar, the Special Commission convened at the request of Sheriff Rouse and did not include a member of the Suffolk County Sheriff's Department. Moreover, the Commission relied upon the opinions and information sought from parties with a potential predisposition against the Department and Sheriff Rouse. As in Wetherill, the Report produced by the Commission was not the type of neutral fact-finding report contemplated under the Rule and should be excluded. *See also*, Ariza v. City of New York, 139 F.3d 132 (2nd Cir. 1998)(Report entitled "Police Corruption and Culture: A Focus Group Methodology", that summarized discussions and made recommendations regarding future department behavior, held not the type of factual investigatory report contemplated by the Rule 803(8)(c).)

   2.   *Materials from the Baron and Feliz Cases are Hearsay Which Must Be Excluded*

The Plaintiff claims that the materials from these former suits are not subject to the hearsay rule because they are not being offered for the truth of the matter asserted.

7

Rather, the Plaintiff has argued that these materials are offered to show that Sheriff Cabral had constructive knowledge of a practice of retaliation at the Department. This argument is without merit because (1) the alleged conduct occurred in a prior administration years prior to Sheriff Cabral assuming office; and (2) there is no evidence that Sheriff Cabral was aware of and acquiesced in this purported practice of retaliation.

The only issue in the case at bar is the conduct of Sheriff Cabral in her decision to revoke the Plaintiff's security clearance and bar her from the facility. The Plaintiff has offered no evidence that anybody but the Sheriff made the decision to bar the Plaintiff. In fact, all evidence has revealed that it was solely the Sheriff's decision to bar Ms. Porter. Accordingly, there is no "constructive knowledge" theory in order to impute action by the Sheriff.

Moreover, there is no evidence in the record that Sheriff Cabral was aware of this purported practice of retaliation by staff members on fellow staff members, much less acquiesced in such a practice. Clearly, these materials have no probative value related to the question whether the Sheriff violated the Plaintiff's First Amendment rights when she decided to bar the Plaintiff. Since these materials do not have any probative value unrelated to the truth of the matter asserted within them, they are nothing more than garden-variety hearsay and must be excluded.

> ### *3.      Testimony of Richard Feeney and Marie Lockhart is Hearsay and Is Not an Admission of a Party Opponent Pursuant to Fed.R.Evid 801(d)(2)*

The testimony of former Superintendent Richard Feeney and former Deputy Superintendent Marie Lockhart are not excluded from hearsay pursuant to Fed.R.Evid. 801(d)(2). The rule provides in part:

8

> (d) Statements Which Are Not Hearsay.  A statement is not hearsay if-…
> …(2) Admission by Party-Opponent. The statement is offered against a party and is…(C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship…

Fed.R.Evid. 801(d).  The Plaintiff intends to offer this testimony in order to establish that there is a "Code of Silence" that exists at the Department whereby employees of the Department were retaliated against for reporting misconduct.  However, the Plaintiff has not provided a scintilla of evidence that, to the extent this practice existed under a prior administration, it continues under the Cabral administration.  Further, in this case where it is the Sheriff who engaged in the alleged retaliatory action, the Plaintiff has not offered any evidence to demonstrate that the management of the Suffolk County Sheriff's Department condones or participates in this purported practice of retaliation.  Further, the testimony in question was not offered during the administration of Sheriff, Cabral, a party to the instant action.  The rule requires that a statement will not be hearsay if (1) it is offered by a person authorized *by the party*, or (2) if the statement is made by the *party's agent or servant...made during the existence of the relationship*.  Since the testimony of Feeney and Lockhart do not satisfy either prong of the rule, they are not removed from hearsay and must be excluded.

B.     <u>The Plaintiff's Evidence of Alleged Prior Bad Acts of the Former Administration of the Suffolk County Sheriff's Department Under Sheriff Richard Rouse is Irrelevant to Any Issue in the Case at Bar.</u>

The Plaintiff seeks to introduce evidence from the prior administration of the Suffolk County Sheriff's Department as evidence of the conduct, policy and procedures

9

under the current administration led by Sheriff Cabral which existed during the facts alleged in the Plaintiff's complaint.  This evidence, in the form of The Stern Report (which analyzed information and date prior to the year 2001), testimony and depositional transcripts from prior unrelated proceedings, newspaper reports, post-hearing briefs in labor arbitration proceedings, and references to an alleged "Code of Silence" are irrelevant to the issues in the case at bar and should be excluded from evidence. Fed.R.Evid. 402.

Further, at most the Stern Commission, which reported on the status of the Department as it existed under former Sheriff Richard Rouse, reported on what they found to be a "code of silence that prevents staff members from reporting on the misconduct of fellow staff members." Nowhere in their lengthy report does the Stern Commission opine that a Code of Silence exists at the Suffolk County Sheriff's Department manifested by the Department's retaliation against its employees for reporting the misconduct of fellow employees.  Indeed the Stern Commission noted that the Department took swift action in responding to the allegations of physical abuse and sexual misconduct by terminating the officers involved.

It is well established that "[e]vidence which has no probative value with respect to any issue, including credibility, is not admissible and the trial judge has the function and duty to exclude such evidence from the consideration of the jury". U.S. v. Higgins, 362 F.2d 462 (7th Cir. 1966).  The above evidence has no tendency to prove any material element as to the conduct and policy of the Suffolk County Sheriff's Department under the administration of Sheriff Cabral.

An attempt to tie the alleged conduct of the Rouse administration to that of the current administration with documents related to the prior era would be too attenuated, unfair and would taint the jury into believing that they are one in the same. Further, newspaper reports about incidents that took place in prior administrations also have no probative value to the issue related to the Sheriff's basis for barring the Plaintiff. Accordingly, these allegations should be excluded from evidence.

### 1. *The Stern Report is Irrelevant to the State of The Suffolk County Sheriff's Department Under the Cabral Administration.*

The Stern Commission Report should be excluded from evidence pursuant to Fed.R.Evid. 402 because it is irrelevant to the issues in the instant action. The Stern Report relates to evaluations, opinions and recommendations of the Commission designed to facilitate the efficient Department operation in the future. Ironically, the Department under the leadership of Sheriff Cabral is that future. The evaluations and opinions contained in the Report have no bearing and provide no insight into the Department under the Cabral administration.

The relevance of the Report related to the operations of the Department ended when it was published. The Commission used interviews and inspections as the basis and underpinning of its opinions. The foundation of this underpinning changed when the Report was introduced and Sheriff Cabral was appointed. To assume that the Department has been frozen-in-time from the Rouse Administration to the Cabral Administration would defy logic and reality. It is clear that the Report, based on the findings of the Rouse Administration has no relevance to the Department under Sheriff Cabral's leadership and her decision to bar the Plaintiff from the facility.

  *2. The Transcripts of Testimony of Feeney and Lockhart are Irrelevant to the Issue of Whether there was a Practice of Retaliation By Management At Any Point in Time, and Are Irrelevant as to Any Aspect Under the Cabral Administration.*

  The transcripts of the Feeney and Lockhart materials should not only be excluded as hearsay, but they are also irrelevant to the issue in this action. The sole issue related to liability is the basis for the Sheriff's decision to bar the Plaintiff from the facility. The materials in question suggest, at most, reluctance by some staff to report the misconduct of other staff and the possibility of peer-to-peer retaliation. These materials offer no evidence that there was a practice whereby management retaliated against employees. In the case at bar, the alleged retaliation was a decision by the Sheriff. These materials offer no probative value as to the Sheriff's decision-making process to bar the Plaintiff. To further highlight the level of attenuation of the Plaintiff's argument in trying to introduce these materials, it should be noted that the testimony in question concerns the prior administration of the Department under Sheriff Rouse. Even if the testimony concerned a management practice of the Rouse administration, which it clearly does not, it cannot be argued that Sheriff Cabral adopted such a practice. The evidence revealed has shown that the only person who made the decision to bar the Plaintiff was the Sheriff herself, and related to that decision, these materials offer no probative value. Accordingly, the transcripts of Feeney and Lockhart should not be admissible under Fed.R.Evid. 402.

  *3. The Materials from Baron and Feliz are Irrelevant to the Issue Whether there was a Practice of Retaliation By Management At Any Point in Time, and Are Irrelevant as to Any Aspect Under the Cabral Administration.*

  As argued above, the Plaintiff appears to be offering these materials not for the truth of the matter asserted, but rather to show constructive knowledge on the part of the Sheriff that an alleged past practice of retaliation by employees existed. Constructive

knowledge of an alleged past practice under the Rouse administration is irrelevant to the issue in the instant action. The Sheriff herself was the sole decision-maker related to the barring of the Plaintiff, and the Plaintiff has offered no evidence to the contrary. Since there is no issue as to whether the Sheriff stood silent while the Plaintiff was barred, her "constructive knowledge" is irrelevant. Further, the constructive knowledge that the Plaintiff offers in these materials only concerns allegations of retaliation by other employees and not by management. Therefore, even if the Sheriff was not the decision-maker related to the barring of the Plaintiff (which it is undisputed that she was the sole decision-maker), there would be no constructive knowledge of retaliation by any other decision-maker in the Department. Accordingly, these materials offer no probative value and should be excluded from evidence pursuant to Fed.R.Evid. 402.

C.  <u>The Alleged Probative Value of Plaintiff's Evidence of Alleged Prior Bad Acts of the Former Administration of the Suffolk County Sheriff's Department Under Sheriff Richard Rouse is Outweighed By the Unfair Prejudice to the Defendants.</u>

Even if the Stern Report, testimony and depositional transcripts from prior unrelated proceedings, newspaper reports, post-hearing briefs in labor arbitration proceedings, and references to an alleged "Code of Silence" were deemed relevant, the prejudice that it would cause the Defendant clearly outweighs any probative value that they may have. Although a party may offer evidence that is rationally relevant, that does not inevitably make the evidence admissible. <u>U.S. v. Costello</u>, 221 F.2d 668 (2d Cir 1955).

The phrase "Code of Silence" implies a Department sanctioned code of conduct. There has been no evidence offered in this case that points to a practice of retaliation by the management of the Department against employees for speaking out about an illegal

13

incident or practice. To allow the use of the phrase "Code of Silence" in the trial of this action will unfairly and impermissibly taint the jury. The probative value of the phrase itself is clearly outweighed by the prejudicial effect against the Defendants.

The sum of the materials that the Plaintiff seeks to introduce into evidence that is the subject of this Motion offers little to no probative value related to the issues in this case. In contrast to their negligible probative value, these materials abound in potential prejudice. The evidence proffered by the Plaintiff will only serve to portray Sheriff Cabral and her administration in a negative light using the specter of misconduct that occurred under the Rouse Administration. None of the facts related to the Plaintiff's barring from the facility took place during the Rouse administration. The Plaintiff cannot be permitted to utilize allegations of misconduct of prior administrations in order to prove that the current administration violated her rights. The Plaintiff's argument that these materials contain probative value is clearly outweighed by the significant danger in prejudicing the Defendants in the mind of the jury. Accordingly, all of the materials that the Defendant references in this Motion should be excluded pursuant to Fed.R.Evid. 403.

D.    The Stern Report is Inadmissible Because of the Self-Critical Analysis Privilege.

Fed. R. Evid. 501 provides that "[t]he privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." One such privilege is the self-critical analysis privilege. The privilege has been accepted in the First Circuit. See, O'Connor v. Chrysler Corp. 86 F.R.D. 211 (D. Mass. 1980); Whittingham v. Amherst College, 164 F.R.D. 124 (D. Mass. 1995). Bredice v. Doctors Hospital, Inc, 50 F.R.D. 249 (D.D.C. 1970), aff'd 479 F. 2d 920

(D.D.Cir.1973) was the first federal case to recognize the common-law self- critical analysis privilege. *Paved with Good Intentions: The Use of Internal Evaluations of Law Enforcement Agencies in Civil Lawsuits*, 41 Fed. B. News & J. 364 (1994).  While generally the privilege is asserted with regard to discovery matters, the underlying basis of the privilege is relevant here. The privilege is based upon the concern that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations.  Id.   There is a strong public policy in favor of encouraging law enforcement agencies to cooperate fully with investigative committees such as the Commission. Law enforcement agencies that seek to re-evaluate past practices or improve operations for the public good must be allowed to encourage frank and open discussion. Protection under the self-critical analysis privilege would assure that constructive assessments and unadulterated opinions would not be suppressed or tempered by concerns of civil liability exposure. Public policy considerations in excluding the Report outweigh any value to the Plaintiff's cause of action in this case.

WHEREFORE, the Defendants move that this honorable Court EXLUDE from evidence:

- a. The Stern Commission Report
- b. Post-Hearing briefs filed on behalf of the Suffolk County Sheriff in labor arbitration briefs;
- c. Portions of the Feeney Trial Testimony;
- d. Portions of the Lockhart Deposition;
- e. References to the phrase "Code of Silence";
- f. references to pleadings, testimony and/or depositions in the Bruce Baron v. Daniel Hickey, et al civil action (including portions of the Feeney Deposition);
- g. references to pleadings, testimony and/or depositions in the Feliz v. Suffolk County House of Corrections civil action; and
- h. Boston Globe article(s) related to the Baron verdict;

|  |  |
|---|---|
|  | Respectfully Submitted,<br>For the Defendants<br>By their Attorney<br><br>/s/ Ellen M. Caulo<br>Ellen M. Caulo<br>B.B.O. # 545250<br>Deputy General Counsel<br>Suffolk County Sheriff's Department<br>200 Nashua Street<br>Boston, MA  02114 |
| Date:    December 30, 2005 | (617) 961- 6681 |