# EXHIBIT A

```
00001
 1                    VOL: I
                   PAGES: 1-295
 2                 EXHIBITS: 1-15

 3

 4       UNITED STATES DISTRICT COURT

 5       FOR THE DISTRICT OF MASSACHUSETTS

 6   * * * * * * * * * * * * * * *
     SHEILA J. PORTER,            *
 7        Plaintiff    *
         -vs-          *  Civil Action
 8   ANDREA CABRAL; SUFFOLK COUNTY  *  No. 04-11935-DPW
     SHERIFF'S DEPARTMENT; SUFFOLK  *
 9   COUNTY and CORRECTIONAL MEDICAL *
     SERVICES, INC.,             *
10        Defendants   *
     * * * * * * * * * * * * * * *
11

12

13
        DEPOSITION OF ANN MACK, a witness
14   called on behalf of the Plaintiff, in the
     above-captioned matter, said deposition being
15   taken pursuant to the Federal Rules of
     Civil Procedure, before Patricia M.
16   McLaughlin, a Certified Shorthand Reporter and
     Notary Public in and for the Commonwealth of
17   Massachusetts, at the offices of Goodwin Procter
     LLP, Exchange Place, Boston, Massachusetts, on
18   Tuesday, May 3, 2005, commencing at 10:05 a.m.

19

20

21
         McLAUGHLIN & ASSOCIATES COURT REPORTERS
22           92 DEVIR STREET, SUITE 304
             MALDEN, MASSACHUSETTS 02148
23              781.321.8922
             WWW.E-STENOGRAPHER.COM
24
```

```
00279
 1   on a partner's desk, I can't do anything
 2   about that. I tried to do the best I could
 3   to get it to you in plenty of time for you to
 4   review it before the deposition, and that
 5   will be our position.
 6       If you have any further discovery
 7   issues, we can certainly try to work it out
 8   on paper rather than having to bring this
 9   witness back.
10           CROSS-EXAMINATION
11   BY MS. CAULO:
12 Q My name is Ellen Caulo, Deputy General
13   Counsel. I'm here representing Sheriff
14   Andrea Cabral, Suffolk County Sheriff's
15   Department and Suffolk County.
16       What is the obligation of CMS medical
17   staff to document encounters with inmates?
18       MS. HARVEY: Objection. Beyond the
19   scope. Go ahead.
20 A Staff are required and instructed on inmate
21   encounters they are to provide documentation
22   on the progress note forms. It's supposed to
23   be dated and timed and clearly outline
24   through the subjective information, objective
```

00280
1   findings, any assessment that they identify

2   in a plan. It should really be provided on

3   the progress note.

4 Q  That's the reference to the acronym, SOAP,

5   that list?

6 A  Yes.

7 Q  Mr. Schumacher had introduced Exhibit No. 12

8   which is a progress note, which you

9   identified. Is that the document that you

10  just referred to that a CMS medical employee

11  should utilize to document encounters with

12  inmates?

13 A  Medical encounters with inmates, yes.

14 Q  Should all encounters with inmates be

15  documented?

16 A  We really encourage all encounters. There

17  are circumstances when an inmate comes up and

18  he asks for when his medication is going to

19  be, when he'll start on his new medication,

20  they wouldn't document that. But if someone

21  gets involved in evaluating a patient and

22  there is an assessment that is made, then

23  they need to document through that SOAP

24  format their findings.

00281
1  Q   Would you expect that an encounter that
2      included conversations between a CMS medical
3      staff person and an inmate relating to
4      injuries that an inmate allegedly sustained
5      perhaps at the hand of an officer, would that
6      be something that you would expect would be
7      recorded and documented in an
8      interdisciplinary progress note?
9          MS. HARVEY: Objection. Scope.
10 A   I think the expectation would be that that
11     would be documented on a progress note and an
12     incident report to the county.
13 Q   Let me just ask you further about the
14     interdisciplinary progress note. Once a CMS
15     medical staff person records what you have
16     just described, where does this document go?
17 A   In the inmate's health record.
18 Q   Who maintains that?
19 A   We do.
20 Q   We being CMS?
21 A   Yes.
22 Q   Who has access to them?
23 A   That's when the confidentiality standard goes
24     into play, and health services staff only.

00282

1  Q  They're maintained by CMS?

2  A  And on a need-to-know basis, the Sheriff's

3     Department may have access, in conjunction

4     with the administrator or health services

5     staff.

6  Q  When you say in conjunction with the HSA, the

7     health services administrator, a request

8     would be put through the HSA to access to an

9     inmate's medical record?

10 A  Yes.

11 Q  You just mentioned, Miss Mack, an incident

12    report. Is that different from the document

13    that you have just identified as Exhibit

14    No. 12?

15 A  It would be.

16 Q  Is an incident report form a form generated

17    by the correctional facility or by CMS?

18 A  Most often the correctional facility.

19 Q  And the kinds of things that would be

20    included in an incident report as compared to

21    a progress note?

22 A  A staff injury, it might be an incident

23    related to staff or a problem staff had with

24    correctional officers, something identified

00283
1   on inmate evaluation that would be perceived
2   as inappropriate or excessive.
3       Incident reports could be a minor
4   observation of a minor altercation in the
5   unit. There is a host of things, but it's
6   more related to the securities side of
7   things.
8 Q  If an inmate reported to a CMS medical staff
9   person that he or she had been assaulted by
10  an officer, would you expect that the CMS
11  medical staff person would record that in
12  addition to the progress note in an incident
13  report?
14      MS. HARVEY: Objection. Scope.
15 A  We would expect that an incident report be
16  completed so that we would be certain that
17  this problem that we had identified was
18  communicated to corrections in a written
19  format. It would also be verbally reported
20  and communicated to the administrator.
21 Q  In this case, that would be Donna Jurdak --
22 A  Yes.
23 Q  -- the health services administrator in this
24  particular incident?

00284
1  A   Yes, and she would review and be privy to any
2      incident reports that were completed at that
3      jail.
4  Q   Would a failure to document injuries to an
5      inmate in an inmate's medical record, would
6      that be something for which discipline may be
7      imposed on a CMS employee?
8          MS. HARVEY: Objection. Scope.
9  Q   Did you understand my question?
10 A   Clinicians have a requirement to document
11     clinical findings if they evaluate a patient.
12     Those findings need to be noted in the health
13     record. If a patient was seen at 4 o'clock
14     in the afternoon with reported injuries, that
15     encounter needs to be documented, because he
16     could come down two hours later and have
17     subsequent problems, and from a clinical
18     perspective, it could be a big problem if
19     that previous note was not entered.
20 Q   What if information is communicated without
21     an examination?
22         MS. HARVEY: Objection. Scope.
23 A   It depends on the circumstances. Some
24     information is significant, and it's really a

00285

1    clinical judgment call. Anything in regards

2    to the inmate's health and well-being needs

3    to be documented.

4  Q  If an inmate in this case, Rene Rosario, told

5    the plaintiff, Ms. Porter, that he had been

6    assaulted by an officer and showed her

7    injuries through the window of a cell door,

8    would you have expected that that would have

9    been recorded in Mr. Rosario, the inmate's,

10   medical files?

11      MS. HARVEY: Objection. Scope.

12 A  Yes.

13 Q  Even if an examination was not conducted by

14   Mrs. Porter?

15 A  Even if there wasn't a hands-on examination,

16   what was observed, whether it was abrasions,

17   bruises, discoloration, swelling, that needed

18   to be documented, if, in fact, that's what

19   was observed.

20 Q  And a failure to do something like that or a

21   failure to do that, would that behavior for

22   which discipline may be imposed by CMS?

23      MS. HARVEY: Objection.

24 A  Lack of documentation may be considered a

00286

1  circumstance around enforcing corrective

2  action, employing the disciplinary process.

3 Q  Perhaps lastly, if the CMS employee shared

4  confidential medical information about an

5  inmate with persons other than CMS medical

6  staff, would that be perhaps grounds for

7  discipline?

8 A  Clearly, clinicians understand the

9  responsibility around patient confidentiality

10  and the reporting of information outside of

11  health services, and in essence, if someone's

12  health or anything in regards to their

13  physical findings was communicated outside of

14  health services, that violates the standard

15  around confidentiality of care that's in our

16  policies and procedures, which is specific to

17  inmate healthcare, and would be a violation

18  of policy and maybe grounds for discipline.

19 Q  One further question. Documenting the

20  encounters as we have just discussed between

21  CMS medical staff and an inmate, should that

22  be done contemporaneously with the encounter

23  or shortly thereafter?

24    MS. HARVEY: Objection.

00287

1  A   Yeah, as soon as possible after the incident.

2      Again, based on the scenario that I gave

3      previously, if there was an incident where we

4      felt that injuries were sustained and there

5      was some abnormal findings on observation, if

6      those weren't documented and the provider

7      that came on evenings came and took the

8      record and had no knowledge that -- now, this

9      patient is unconscious and had no knowledge

10     that this patient was involved in an alleged

11     altercation or whatever, that could clearly

12     impact the outcome of that patient's care.

13     So timeliness in documenting is important.

14        MS. CAULO: Nothing further.

15            CROSS-EXAMINATION

16     BY MS. HARVEY:

17 Q   I'm going to follow up with two questions

18     just for clarification. You were shown

19     Exhibit 2, which is the CHS evaluations.

20     Would you expects the CHS evaluations to be

21     in CMS's personnel file for Sheila Porter?

22 A   No, they shouldn't be.

23 Q   Why not?

24 A   Because evaluations are -- all information

# EXHIBIT B

```
00001
 1                    VOL: I
                   PAGES: 1-201
 2                  EXHIBITS: 1-7

 3

 4    UNITED STATES DISTRICT COURT

 5    FOR THE DISTRICT OF MASSACHUSETTS

 6

 7  * * * * * * * * * * * * * * * *
    SHEILA J. PORTER,          *
 8         Plaintiff    *
       -vs-          * Civil Action
 9  ANDREA CABRAL; SUFFOLK COUNTY  * No. 04-11935-DPW
    SHERIFF'S DEPARTMENT; SUFFOLK  *
10  COUNTY and CORRECTIONAL MEDICAL *
    SERVICES, INC.,        *
11         Defendants   *
    * * * * * * * * * * * * * * * *
12

13

14
      DEPOSITION OF ANDREA CABRAL, ESQUIRE, a witness
15  called on behalf of the Plaintiff, in the
    above-captioned matter, said deposition being
16  taken pursuant to the Federal Rules of
    Civil Procedure, before Patricia M.
17  McLaughlin, a Certified Shorthand Reporter and
    Notary Public in and for the Commonwealth of
18  Massachusetts, at the offices of Goodwin Procter
    LLP, Exchange Place, Boston, Massachusetts, on
19  Friday, May 6, 2005, commencing at 9:40 a.m.

20

21
        McLAUGHLIN & ASSOCIATES COURT REPORTERS
22         92 DEVIR STREET, SUITE 304
         MALDEN, MASSACHUSETTS  02148
23            781.321.8922
            WWW.E-STENOGRAPHER.COM
24
```

00103
1    had written out the information. It wasn't
2    that it had -- it wasn't a standard form, but
3    using a medical records form versus any other
4    format of communication was significant to
5    me.
6  Q  And where is that policy written?
7  A  There is no policy here --
8  Q  When you say here, what do you mean?
9  A  There is no policy in S220 that goes to a
10   medical person or specifically a nurse's
11   obligation to document in the medical record
12   observations related to potentially treatable
13   injuries or harmful injuries to an inmate.
14       I'm talking about my understanding of
15   what the use of a medical record is, how it
16   is properly used and how a person who is in
17   the medical profession for years would know
18   that that form would be used.
19 Q  You're saying that the use of a medical
20   record form -- by that, I assume you mean the
21   interdisciplinary progress notes form?
22 A  Yes.
23 Q  The use of that form for any other purpose
24   than progress notes as to a patient violates