UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHEILA PORTER

        Plaintiff,

  v.

ANDREA CABRAL, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, and SUFFOLK
COUNTY

        Defendants.

Civil Action No.04-11935-DPW

**PLAINTIFF SHEILA PORTER'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM RELITIGATING THE EXISTENCE OF A RETALIATORY CUSTOM**

In *Baron v. Suffolk County Sheriff's Department*, the 1st Circuit held that defendant Suffolk County Sheriff's Department ("SCSD") had an unconstitutional policy of retaliating against individuals for exercising their First Amendment rights in September 1998. 402 F.3d 225, 236-42 (1st Cir. 2005). This ruling collaterally estoppes defendants from relitigating this issue in the present case.

Under "the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). Thus, in order to establish that collateral estoppel applies, a party asserting collateral estoppel must show that (1) the party against whom collateral estoppel is sought to be asserted was a party to the prior litigation, or was in privity with a party to the prior litigation; (2) the issue sought to be precluded is the same as that involved in the prior

action; (3) the issue was actually litigated; (4) the issue was determined by a valid and binding final judgment; and (5) the determination of the issue was essential to the judgment. *See id.*; *Stoehr v. Mohamed*, 244 F.3d 206, 208 (1st Cir. 2001); *Town of Seabrook v. New Hampshire*, 738 F.2d 10, 11 (1st Cir. 1984).[1]

In the present case, SCSD was a party to *Baron*; indeed it was the first named defendant. *See* 402 F.3d at 225. Moreover, the prior decision against SCSD is binding on the County. *See Trustee of Stigmatine Fathers, Inc. v. Sec. of Admin. and Fin.*, 369 Mass. 562, 566-67 (1976) (holding that a decision against one state agency has preclusive effect on another state agency if the first agency had authority to represent the interests of the state). Similarly, Sheriff Cabral is bound by the *Baron* decision because she is in privity with the SCSD. As the Court of Appeals for the First Circuit states "[n]or does it matter [for preclusion purposes] that the present action adds two named state officials who were not parties in the previous action." *Town of Seabrook*, 738 F.2d at 11 (holding that there is privity between a government agency and its employees for preclusion purposes).

Turning to the second element, the issue sought to be precluded in the present action is the same as the issue involved in *Baron*. As in *Baron*, Mrs. Porter claims that SCSD is liable for the deprivation of her constitutional rights because SCSD had a custom of retaliating against those who exercised their First Amendment rights. *See Baron*, 402 F.3d at 236-42.[2] Third, the issue of whether a municipal custom of retaliating against individuals for exercising their First Amendment rights was actually litigated. *See id.* Fourth, there was a final determination by a valid and binding final judgment. *See id.* Finally, the determination of this issue was essential to

---

[1] To the extent *Stoehr* suggests that there must be an identity of the parties in order to apply collateral estoppel, such a reading would be inconsistent with *Mendoza*, which explicitly states that the Supreme Court has "abandon[ed] the requirement of mutuality of parties" for collateral estoppel purposes. 464 U.S. at 158.
[2] Unlike in *Baron*, Mrs. Porter also asserts liability based on an unconstitutional policy.

the judgment in *Baron* because the only basis that Baron offered for holding SCSD liable was the existence of this unconstitutional custom.

That *Baron* was constructively discharged in September 1998, *see Baron v. Suffolk County Sheriff's Department*, 242 F. Supp.2d 66, 71 (D. Mass. 2003), while Mrs. Porter was terminated in June 2003, does not alter the conclusion that the prior litigation involved the same issue that is presented in the present litigation. In order to understand why this is so, it is crucial to understand the precise issue at question in the present case. Unlike a municipal policy, which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom up. *See Baron*, 402 F.3d at 236. Since policies are adopted by policymakers, they automatically are attributable to the municipality, but customs must be attributed to municipality because they develop from the lower-levels of an organization. *See id*. Therefore, a plaintiff seeking to hold a municipal liability on the basis of a custom must show that the custom "is so <u>well settled</u> and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (emphasis added). Thus, the issue of whether a retaliatory custom existed in September 1998 is relevant to the present case because Mrs. Porter must show that the retaliatory custom is sufficiently "well settled" that the policymakers knew or should have known of its existence. Indeed, contrary to diminishing its relevance, the long pedigree of this evidence renders it particularly relevant because this pedigree establishes that the custom was very well settled. The more well settled the custom was, the stronger the argument that the defendants knew or should have known about it.[3]

---

[3] That there was a civil jury concluding that such a custom existed in *Baron* at about the same time Mrs. Porter was barred only strengthens the point that policymakers knew or should have known about the retaliatory custom.

3

It should be noted that Mrs. Porter will not rely solely on *Baron* to prove a custom. Rather, she will show that the retaliatory custom, which *Baron* preclusively establishes existed in in 1998, continued through Mrs. Porter's termination. This will be established by the Sern Commission Report, which was issued on October 15, 2002. Moreover, the defendants have repeatedly admitted that a code of silence exists in various arbitration briefs, and numerous present and former SCSD employees—namely Richard Feeney, Deyanira Feliz, and Marie Lockhart—have testified as to the code of silence's continued exists. In addition, Viktor Theiss and Elizabeth Keeley will testify that the safety of informants could not be assured in 2003. Finally, Mrs. Porter and Ms. Jurdak will testify as to the continued existence of a retaliatory custom.

In sum, since the length of time that a custom has been in existence is relevant to the issue of whether the municipality may be held liable based on actual or constructive knowledge of that custom, the issue of whether there was a retaliatory custom in September 1998—the same issue decided in *Baron*—also is involved in the present case. As a result, the doctrine of collateral estoppel applies.

## CONCLUSION

WHEREFORE, plaintiff Sheila Porter requests that defendants be precluded from relitigating the issue of whether a retaliatory custom existed in September 1998.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

*/s/ Joseph F. Savage, Jr.*
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Dated: December 30, 2005

### CERTIFICATION UNDER LOCAL RULE 7.1

I, David S. Schumacher, hereby certify that counsel for Sheila Porter conferred with counsel for the Suffolk Defendants in a good faith attempt to resolve or narrow the issues in this motion prior to its filing.

Dated: December 30, 2005                               */s/ David S. Schumacher*
                                                                          David S. Schumacher