# EXHIBIT A

1

VOL:   II
PAGES: 202-397
EXHIBITS:   8-12

2

3

4

UNITED STATES DISTRICT COURT

5

FOR THE DISTRICT OF MASSACHUSETTS

6

7

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*
SHEILA J. PORTER,                        \*

8

               Plaintiff       \*
    -vs-                                 \*   Civil Action

9

ANDREA CABRAL; SUFFOLK COUNTY      \*   No. 04-11935-DPW
SHERIFF'S DEPARTMENT; SUFFOLK      \*

10

COUNTY and CORRECTIONAL MEDICAL    \*
SERVICES, INC.,                          \*

11

             Defendants         \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

12

13

<u>CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER</u>

14

15

    CONTINUED DEPOSITION OF ANDREA CABRAL, ESQUIRE,
a witness called on behalf of the Plaintiff, in the
above-captioned matter, said deposition being

16

taken pursuant to the Federal Rules of
Civil Procedure, before Patricia M.

17

McLaughlin, a Certified Shorthand Reporter and
Notary Public in and for the Commonwealth of

18

Massachusetts, at the offices of Goodwin Procter
LLP, Exchange Place, Boston, Massachusetts, on

19

Friday, June 24, 2005, commencing at 10:10 a.m.

20

21

McLAUGHLIN & ASSOCIATES COURT REPORTERS

22

92 DEVIR STREET, SUITE 304
MALDEN, MASSACHUSETTS  02148

23

781.321.8922
WWW.E-STENOGRAPHER.COM

24

1              MS. CAULO:  Objection.

2    A    My opinion as to whether or not it was

3         appropriate is irrelevant to ultimately the

4         jury's verdict and the Court of Appeal's

5         verdict.  Clearly, no one should be subjected

6         to any conduct that they find offensive in a

7         workplace.

8    Q    My question is:  Did you view the conduct to

9         which Mr. Baron was subjected to be

10        appropriate?

11             MS. CAULO:  Objection.  Sheriff Cabral

12        has just answered that question.

13             MR. SAVAGE:  She actually just did not

14        answer that question, which is why I asked

15        it.

16   A    There seems to be some difference of opinion

17        as to what he was actually subjected to.

18        Your question really is do you agree that the

19        jury found that he was subjected to

20        particular kinds of conduct, and if you agree

21        to that, do you think it was inappropriate.

22             From what I understand the actual

23        conduct to be, there were certainly some

24        things that Mr. Baron was subjected to that

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

308

1              were offensive conduct, but I can't answer

2              that I'm accepting that what Mr. Baron put

3              forward as what happened to him is what

4              actually happened.

5         Q    When you took over as sheriff, did you cause

6              anything to be done to investigate the merits

7              of Mr. Baron's case?

8         A    Mr. Baron's case was already in litigation on

9              that very issue when I became Sheriff.

10        Q    I understand.

11        A    No, it was already in litigation.

12        Q    Did you adopt a position as Sheriff that you

13             would just continue the department's stance

14             in all litigations that were already

15             underway?

16             MS. CAULO:  Objection.

17        A    That's not what I testified to, and the

18             answer to that is no.

19        Q    So you had some separate evaluation in the

20             Baron matter and concluded that the

21             department's approach was correct?

22             MS. CAULO:  Objection.

23        A    No, I didn't have a separate evaluation.  I

24             have a General Counsel's Division, and I rely

# EXHIBIT B

## PRESS STATEMENT

The Suffolk County Sheriff's Department issues the following statement in response to the allegations made by a former contract worker in a Boston Globe story.

1. The Sheriff's Department did not fire Ms. Porter. She was employed by Correctional Medical Services and was fired by them for reasons that are known to Ms. Porter and CMS.
2. Ms. Porter was asked to leave the House of Correction because she violated Department regulations and contractual obligations. She is clearly biased and has her own agenda for speaking out at this time.
3. Sheriff Cabral's administration has worked cooperatively and effectively with local, state, and federal authorities on a number of investigations and continues to do so. It would be inappropriate for the Department to comment on any pending investigations.
4. Since November 2002, the Sheriff's Department has thoroughly investigated every complaint filed by an inmate, and has proactively investigated wrongdoing by officers that has resulted in 34 officers being terminated and dozens disciplined.
5. Sheriff Cabral has addressed and remedied the concerns raised in the Stern Commission report. She has installed video recording on cameras throughout the HOC, established an off site training academy that to date has trained 70 new correctional officers, expanded the training curriculum and conducted specialized training for over 200 veteran officers. The Department also successfully partnered with Boston Police and the Secret Service during the recent DNC.

Contact Director of Communications
Steve Tompkins
617-828-5134

000991

# EXHIBIT C

Sheriff Andrea J. Cabral

# COMMON GROUND

November 2003

A Year in Review
December 2002 - October 2003

### Suffolk County Sheriff's Department
### Sheriff Andrea J. Cabral

Introduction . . . . . . . . . . . . . . . . . . . . . . . . .1
Statement of Purpose . . . . . . . . . . . . . . . . . .2
Department Facilities . . . . . . . . . . . . . . . . . .5
General Counsel . . . . . . . . . . . . . . . . . . . . .7
Training . . . . . . . . . . . . . . . . . . . . . . . . . . .7
SID . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
Communications . . . . . . . . . . . . . . . . . . . . .9
Facility Operations . . . . . . . . . . . . . . . . . . .11
Labor Relations . . . . . . . . . . . . . . . . . . . . .12
Modular Units . . . . . . . . . . . . . . . . . . . . . .12
Hiring/Promotions . . . . . . . . . . . . . . . . . . .13
Department Policies . . . . . . . . . . . . . . . . . .14
Budget . . . . . . . . . . . . . . . . . . . . . . . . . . .14
Conclusion . . . . . . . . . . . . . . . . . . . . . . . .15

## INTRODUCTION:

On November 29, 2002, I was sworn in as the 30th High Sheriff of Suffolk County. Approximately six weeks before my appointment, the Sheriff's Department was the subject of a highly critical report, released after a year-long study of the Department.

The Stern Commission, headed by former United States Attorney Donald K. Stern, was appointed by former Governor Jane Swift, at the request of former Suffolk County Sheriff Richard Rouse, in the wake of numerous media reports detailing allegations of inmate abuse, political patronage, lack of leadership and mismanagement. Its 77 pages contained more than 75 separate recommendations, including a call for strong, competent leadership, new and improved training for correctional officers, an end to politically motivated hiring and promotions and consistent implementation of Department policies and procedures.

The report also found that the new 300-bed modular unit constructed at the Suffolk County House of Correction was unfit for its intended use of housing female offenders. The Commission suggested the Department find another use for the $14 million building.

Among the key factors contributing to the Department's management woes, was the lack of prior law enforcement or corrections experience of its two top managers, notwithstanding the substantial correctional experience of other managerial staff. The report's recommendations were meant to help Governor Swift appoint a new sheriff, but the Commission also hoped it's findings would also become a blueprint for change in the 300-year-old Department.

Of the nearly 3,500 Sheriff's Departments in the country, Suffolk County is the 37th largest. With a staff of 1,100 and an $87 million budget, it is also the Commonwealth's largest. I am responsible for the management and operation of the Nashua Street Jail, the South Bay House of Correction, the Adult Male Offender Program, the Women's Resource Center and the McGrath and Brooke House halfway house programs. The Department's average daily inmate and pre-trial detainee population is approximately 2000.

After nearly 11 months in office, I have undertaken a review of my administration's efforts to respond to the Stern Commission Report. With this "report card," I hope to establish a level of public accountability that will restore external faith in the Department and maintain the positive momentum that has already significantly improved management, operations and staff morale. While this review highlights the credentials and work of staff managers, it is important to note that our remarkable progress would not be possible without the equally exemplary work of the hundreds of dedicated employees at the Suffolk County Sheriff's Department.

Sheriff Andrea J. Cabral

001080

## THE FIRST 100 DAYS:

Before taking office, Sheriff Cabral requested a full operational audit of the Sheriff's Department by the state Department of Corrections. State Commissioner Michael Maloney sent a team of 16 auditors to review and assess the secure facilities at the Nashua Street Jail and the Suffolk County House of Correction. The audit was performed within the first 90 days and remains a guide for continuing improvements in operations and maintenance.

Shortly after taking office, Sheriff Cabral named a Transition Team to review the various non-security department divisions, e.g., Training and Special Operations, the Sheriff's Investigative Division, Inmate Programs and Services and the Civil Process Division. Transition Team members included Sheriff Frank Cousins[1], Peter Forman[2], Ricky Quiroga[3], Reverend Ray Hammond[4], Carole Higgins[5] and Lieutenant Albert Pierce[6].

During the previous administration, the Sheriff maintained an office on the ground floor of the Suffolk County Courthouse in Pemberton Square. The Stern Commission noted that the off-site office contributed to negative staff perception of a hands-off management style. Sheriff Cabral immediately vacated that space and relocated the office to the House of Correction. Her visibility and inclusive style keep her informed and enable her to better understand the needs of the Department.

Following completion of the audit, the work of the Transition Team and numerous personal informational interviews with staff, Sheriff Cabral created a Statement of Purpose to define and clearly articulate the administration's goals and priorities.

## THE SUFFOLK COUNTY SHERIFF'S DEPARTMENT STATEMENT OF PURPOSE:

"The Sheriff's Department is mandated to maintain safe and secure custody and control of inmates and pre-trial detainees and enhance public safety by working to effectively reduce offender recidivism".

Our External Goal:

To enforce the laws of the Commonwealth and to serve and protect the citizens of Suffolk County by:

- Meeting and exceeding state and national corrections standards for all Department operations; and
- Becoming an accessible public resource by identifying shared goals between the Sheriff's Department and Suffolk County's communities and working to achieve them

Our Internal Goal:

To build a strong, united, professional organization, dedicated to achieving the external goal, through:

- Consistent, high quality training and support for all staff;
- Merit-based promotions based upon objective evaluation of job performance; and
- Increased diversity and appreciation for its internal and external benefit to the Department.

Diversity Mission Statement:

Understanding the need for diversity in the workplace and the essential role it plays in our ability to serve the public interest is a priority for the Suffolk County Sheriff's Department. The process by which we learn to appreciate the value of internal diversity and its external impact on the communities we serve should be driven by one guiding principle: "Our differences are also our strengths".

---

[1] Essex County Sheriff

[2] Former Plymouth County Sheriff and Executive Secretary for Administration and Finance

[3] Executive Director of *Latinas y Ninas* and *Alianza Hispania*

[4] Co-Founder of the 10-Point Coalition

[5] Former Undersecretary for the Executive Office of Public Safety and former Superintendent at the Essex County Sheriff's Department

[6] MIT Police Department and former Massachusetts State Trooper

001081

## SHERIFF ANDREA J. CABRAL

A career public servant, Sheriff Cabral's experience in the criminal justice system began 16 years ago as a staff attorney at the Suffolk County Sheriff's Department at the Charles Street Jail. In 1987, she became an assistant district attorney in the Middlesex County District Attorney's Office under former District Attorney Scott Harshbarger. From 1987-1991, she prosecuted over 300 district court felonies and misdemeanors, supervised the Cambridge District Court and Jury-of-Six Session before being promoted to Middlesex Superior Court.

From 1991-1993, Sheriff Cabral was an assistant attorney general in both the Torts Division of the Attorney General's Government Bureau and the Civil Rights Division of the Public Protection Bureau. In the Torts Division, Sheriff Cabral represented the Commonwealth in a wide variety of Superior Court civil matters, ranging from personal injury cases to intentional torts and civil rights violations. In the Civil Rights Division, Sheriff Cabral sought civil injunctions on behalf of hate crime victims, affirmatively investigated six cases of alleged police misconduct and submitted reports of her findings to the Attorney General.

In 1993, Sheriff Cabral joined the Suffolk County District Attorney's Office under former District Attorney Ralph C. Martin III. From 1993-1994, she was director of the Roxbury District Court Family Violence Project. As director, she prosecuted domestic violence felony and misdemeanor cases (including Suffolk County's first stalking case) and established new administrative policies and procedures for the case management and prosecution of such cases in the Roxbury District Court.

In March 1994, Sheriff Cabral was promoted and became chief of the first Domestic Violence Unit at the Suffolk County District Attorney's Office. In addition to maintaining her own major felony caseload, she was responsible for the supervision, training and evaluation of district and superior court staff in the prosecution of domestic violence cases. She developed and conducted domestic violence trainings for state and local police departments throughout the Commonwealth and authored the state's first legal training manual on domestic violence and M.G.L. c. 209A.

In 1998, Sheriff Cabral was promoted to Chief of District Courts and Community Prosecutions. As a member of the Executive Staff, she effectively developed policy, staff supervision, training, case management and administration in Suffolk County's eight district courts and the Boston Municipal Court. Sheriff Cabral was also responsible for the general supervision of all district court community prosecution programs, which included Safe Neighborhood Initiatives in Chelsea, East Boston, Dorchester and the Grove Hall section of Roxbury.

District Attorney Martin also named Sheriff Cabral Civil Rights Point Prosecutor for the District Attorney's Office. In that capacity, she also supervised the prosecution of all hate crime prosecutions and civil rights training, working closely with the Boston Police Department's Community Disorders Unit, the Boston Police Training Academy, the Attorney General's Office and numerous other state and local law enforcement agencies.

In 2003, Sheriff Cabral received the New England Women's Leadership Award for Courage, the Pioneer Award from the Massachusetts Minority Police Officers Association and was named a Lawyer of the Year by Massachusetts Lawyer's Weekly.

From her first day in office, Sheriff Cabral has worked diligently to bring integrity, fiscal responsibility, competence and diversity to the Sheriff's Department. Her senior management team members – a strong combination of new and retained staff – are all knowledgeable, experienced law enforcement and corrections professionals committed to the Department's progress and to serving the Suffolk County community.

001082

## ELIZABETH KEELEY, ESQ., CHIEF OF STAFF

As noted by the Stern Commission, among the key factors contributing to the Department's management/leadership problems, was the lack of prior law enforcement or corrections experience of its two top managers. As her top policy advisor and Chief of Staff, Sheriff Cabral named Elizabeth Keeley, a career prosecutor with 20 years of distinguished public service in the criminal justice system.

As First Assistant District Attorney from 1997 to 2002, Elizabeth Keeley was Ralph Martin's chief executive during the development of the Suffolk County District Attorney's Office into a nationally recognized model for innovative prosecution and community initiatives. As part of the so-called "Boston Strategy," Elizabeth represented the office in unprecedented partnerships with the Mayor's Office, the Attorney General's Office, the 10-Point Coalition and other state local and national constituencies. The result of these collaborations was the creation of Safe Neighborhood Initiatives in four high crime Suffolk County neighborhoods. Juvenile and violent crime significantly decreased during this period, neighborhood residents enjoyed increased safety and creative community intervention and prevention programs were established.

Elizabeth was responsible for the day-to-day operation of that office's 300 member staff and $14 million budget, with direct oversight of payroll, human resources, facilities operations and 20 managers. She also presided over the modernization of office computer and information technology, including development of a new case management and tracking system, comprehensive internet/intranet use policies and security protocols.

Appointed by Governor Jane Swift to the position of Acting District Attorney following Ralph Martin's departure in 2002, Elizabeth implemented a preemptive plan she created in 2001 to meet an anticipated 5 percent budget cut in FY02. As a result, the office deficit was decreased by $750,000.

Elizabeth was also an assistant district attorney with the Middlesex County District Attorney's Office for seven years and an Assistant United States Attorney for two years. She has prosecuted hundreds of state and federal felony cases. A graduate of Boston College and Suffolk University Law School, she has lectured in several legal forums at Harvard Law School, Boston College Law School, Massachusetts Continuing Legal Education and the Massachusetts Bar Association. She has served as legal commentator and consultant for CNN and WGBH and was named one of the Top Ten Women Lawyers in 1997 by Massachusetts Lawyers Weekly.

As Chief of Staff, Elizabeth has general oversight of all Department operations and divisions. She reports directly to the Sheriff.

## DEPARTMENT FACILITIES

During the previous administration, one superintendent managed both the House of Correction and Jail. Though it commended the previous superintendent (who retired on November 29, 2002) for an admirable job under very difficult circumstances, the Stern Commission concluded that the facilities' different populations and different needs required a superintendent for each.

## SUFFOLK COUNTY HOUSE OF CORRECTION
## SUPERINTENDENT PATRICK BRADLEY, SPECIAL SHERIFF

Sheriff Cabral retained Pat Bradley as Superintendent of the House of Correction. He had been promoted to this position by her predecessor just before her arrival, following the retirement of Richard Feeney, who had previously served as superintendent of both the House of Correction and the Nashua Street Jail.

Superintendent Bradley has 20 years experience in the corrections field. He began as a corrections officer in the Norfolk County Sheriff's Department in 1983 and was promoted to Assistant Director of Operations two years later. Over the next six years, his outstanding job performance led to further promotions; first to Director of Operations and then to Deputy Superintendent of Personnel and Professional Standards. He concluded his 16-year career in Norfolk County as Superintendent of Community Corrections where he managed four satellite facilities, developed the first female offender unit in Norfolk County and helped establish the Quincy Community Corrections Center.

Superintendent Bradley joined the Suffolk County Sheriff's Department in 1999 as Deputy Superintendent of Institutional Community Based Programs. At that time, the Sheriff's Department was beginning to establish its own Community Corrections and needed an experienced, committed corrections professional to build it. He became the Department's first Superintendent of Community Corrections. With his leadership and ability to collaborate with the Trial Court, the Women's Resource Center, Adult Male Community Corrections Program and the Youthful Offender Program were all established.

Superintendent Bradley also collaborated with the Boston Police Department, the United States Attorney's Office, the District Attorney's Office, the Parole Board and faith-based organizations to create the Boston Re-Entry Initiative, a first of its kind re-entry program for serious offenders.

Superintendent Bradley accepted his current position at a time of great transition and upheaval in the Department. He stabilized House of Correction operations by establishing himself as a solid, reliable manager, with a visible, hands-on supervisory style. He designed and implemented the merger of the House of Corrections with Community Corrections, which fully integrated Community Corrections and inmate re-entry into the custody continuum.

This month, Superintendent Bradley received the Community Policing Award Award, presented by the International Chiefs of Police for his innovative collaboration with the Massachusetts Parole Board on a parole re-entry program.

## NASHUA STREET JAIL
## SUPERINTENDENT GERARD HORGAN, ESQ.

When Sheriff Cabral took office in November of 2002, Gerard Horgan was Deputy Superintendent at the Suffolk County House of Correction, where he supervised management, uniform, civilian and program staff in a facility that housed over 1,500 male and female inmates. He was responsible for management of inmate classification, medical services, social services, education, recreation, booking, property, inmate grievances, inmate disciplinary boards and inmate records. At that time, he had amassed 16 years experience in corrections - all of it at the Suffolk County Sheriff's Department – and had worked his way up from his first position as Assistant Director of Personnel at the former Charles Street Jail in 1987.

The breadth of Superintendent Horgan's experience and knowledge of operations Department-wide exceeds that of any other manager. During his 17 years with the Department, he has served as Personnel Director and Deputy Superintendent of Support Services at the Nashua Street Jail and Deputy Superintendent of Program Services and Custody Assessment at the House of Correction. After reviewing his qualifications, outstanding job performance record and noting his excellent reputation within the Department, Sheriff Cabral promoted him to Superintendent of the Nashua Street Jail in January of 2003.

As Nashua Street's Chief Operating Officer, Superintendent Horgan is responsible for a pre-trial facility that processes 12,000 detainees annually. An efficient and productive manager, his reputation for respectful, effective problem solving has contributed immeasurably to increased cooperation and significant tension reduction between labor and management. He has streamlined and improved procedures in Detainee Booking and Classification and closely monitors use of force and disciplinary reports as well as inmate grievances in order to improve proper management oversight.

Superintendent Horgan is also an instructor in the Department's in-service training academy and is a member of the Policy Review Committee. He is a graduate of Northeastern University and obtained his Juris Doctor degree from Suffolk University School of Law in 1993.

## COMMUNITY CORRECTIONS
## SUPERINTENDENT MARY ELLEN MASTRORILLI

Though not mentioned in the Stern Commission report, significant changes in the Community Corrections Division are noteworthy. Mary Ellen Mastrorilli came to the Suffolk County Sheriff's Department from the Norfolk County Sheriff's Department where she was Grants Manager for 4 years. Before joining Norfolk County, she was a corrections officer for 17 years with the Massachusetts Department of Correction, where she worked her way up from entry-level corrections officer to Deputy Superintendent and Facility Administrator. She holds a Master's Degree in Public Administration from Northeastern University and is currently enrolled in Northeastern's Doctoral Program for Law, Policy and Society.

At the time of Sheriff's Cabral's appointment, Superintendent Mastrorilli was the Program Director of the Women's Resource Center. The Women's Resource Center is a first of its kind community Corrections Program for female offenders in the Commonwealth, funded by partnership with the Trial Court Office of Community Corrections. Under her leadership, the Women's Resource Center became a statewide model for positive programming and offender accountability.

Because of her substantial experience in standard and community corrections, Sheriff Cabral promoted Mastrorilli to Superintendent. She re-organized the division and streamlined its budget with no sacrifice of program quality. This year, the Community Corrections Division, in partnership with the South End Health Center and Project Place, applied for and received a $1.3 million grant from the Department of Education to develop and implement an innovative life skill and job placement program for female offenders re-entering the community from the House of Correction.

001085

## OFFICE OF THE GENERAL COUNSEL
## ANNE P. POWERS, ESQ. – GENERAL COUNSEL

The Office of the General Counsel represents the Sheriff's Department in all legal matters, including negligence and intentional torts, review of all contract and lease language, Workman's Compensation matters, grievances and disciplinary proceedings. In her assessment of this Division, Sheriff Cabral discovered that over time, staff duties and responsibilities had become overreaching and burdensome. For example, it was the responsibility of the General Counsel to review and sign off on all Department policies. Both the General Counsel and staff attorneys were regularly called upon to review and render opinions on administrative, non-legal matters.

The Division's internal and courtroom effectiveness was diminished by the extra-legal workload, a less-than positive working relationship with SID investigators and the absence of trial experience by any of the attorneys except the General Counsel. This was particularly problematic as Sheriff Cabral inherited a Department facing a number of significant lawsuits, many of which required substantial additional investigation in preparation for trial. The Sheriff recognized a need to streamline the duties and responsibilities of General Counsel attorneys and provide practical trial training and education.

Following the departure of four attorneys, Sheriff Cabral replaced three. She hired Anne P. Powers as General Counsel. An attorney since 1989, Anne's legal background and experience uniquely qualify her to lead the Department's legal office. She was an assistant attorney general for 12 years, beginning in the Torts Division, where she represented the Commonwealth and various state agencies in a wide variety of civil lawsuits.

She then investigated and prosecuted narcotics and so called "white collar" offenses – including larceny, securities fraud and political corruption - for four years in the Criminal Bureau. She concluded her tenure there in the Fair Labor and Business Practices Division, where she spent nearly six years, first as a line prosecutor in the Medicaid Fraud Control Unit, and later for three years as Deputy Chief of that Division. As Deputy Chief, she was responsible for oversight and management of all Division staff, oversight of all cases in litigation, pre-litigation investigations and direct supervision of all assistant attorneys general.

General Counsel Powers also spent two years in the Middlesex County District Attorney's Office Special Prosecutions Unit. There, she utilized investigative grand juries and search warrants to conduct direct investigations of large scale larceny schemes, embezzlement, arson, insurance fraud, environmental and narcotics offenses for Superior Court indictment and prosecution.

To assist the General Counsel in training and re-focusing retained staff attorneys, Sheriff Cabral hired two other former prosecutors. One, a former district court prosecutor who prepared and tried hundreds of cases in Dorchester District Court and the other, a seasoned Superior Court prosecutor with eight years experience in clinical instruction of trial prosecutors.

## TRAINING AND SPECIAL OPERATIONS DIVISION
## DEPUTY SUPERINTENDENT MARTIN MICHELMAN

The Stern Commission Report cited serious deficiencies in the Department's training policies and implementation. At the time of the report, staff received only 24 hours of yearly in-service training - far below the 40-hour per year standard set by the American Correctional Association (ACA). In order to receive accreditation, correctional facilities across the country must meet all ACA criteria. In addition, under past practices, new recruits were working in units, shadowing veteran officers before receiving any training at all on policies and procedures.

Sheriff Cabral has revamped the Training Division, first by promoting Martin Michelman to Director of Training and Special Operations. Deputy Superintendent Michelman came to the Sheriff's Department in 1991 as a Training Officer. He became Training Supervisor in 1998 and was promoted to Deputy Superintendent in July of 2003. He has also been Training Coordinator for the Criminal Justice Training Council since 1983.

Deputy Superintendent Michelman's expertise in Use of Force, Defensive Tactics, Firearms and Physical Training has been sought nation-wide by a variety of state and federal agencies. He has trained the State Police at the Texas

Department of Public Safety, United States Customs Service personnel in Washington, DC, Military Police in the United States Marine Corps, the Maryland Police Corps, the New York State Police and staff at the New Jersey Attorney General's Office.

Under his leadership, recruits now undergo 225 hours of training before they begin work in the units. As part of their 5-week training course, they receive physical training, learn everyday defensive tactics and learn policies and procedures that include the use of force continuum, sexual harassment, general conduct, firearm safety and handling, CPR, suicide prevention, fire safety, evacuation plans, courtroom testimony, ethics and professionalism, inmate education, interpersonal communications, CORI and inmate rights and responsibilities. In a significant departure from previous administrations, no cadet will work the units until they have graduated from Academy Training.

The Sheriff has also entered into an agreement with the state's Division of Capital Asset Management to turn the former interim police station in Chelsea into a fully equipped, professional training academy, the first in Suffolk County's history. The 9,500 square foot, off-site facility – which had been scheduled for demolition – will provide the Department with a level of security and privacy that was previously missing. With this new training complex, the Department will not only conduct training for new recruits, but will provide regular mandatory in-service and supervisory training to bring the Department into compliance with ACA standards. The Department expects to occupy this new facility sometime next month.

Under Sheriff Cabral, the Training Division will become a much more integral part of daily operations. In the first year of employment for a new recruit, the training staff will not only provide the initial instruction, but will monitor the employee during their probationary year, observing if the employee is adhering to the policies and procedures he or she learned in basic training. Trainers will also become part of the evaluation process and may play a role in promotion recommendations.

This year, the Suffolk County and Essex County Sheriff's Departments merged their recruit training classes for the first time. The class merger was not only a cost effective combination of resources, but also represented a significant step in building a professional bond between correctional officers from different counties. The training took place at the Suffolk County House of Correction and resulted in a graduating class of 44. A formal ceremony, the first in Suffolk County's history, was held at Bunker Hill Community College.

## SHERIFF'S INVESTIGATIVE DIVISION (SID)
## DEPUTY SUPERINTENDENT VIKTOR THEISS, ESQ.

While the Stern Commission agreed that the Sheriff's Investigative Division (SID) had begun to improve with the hiring of two top investigators and the establishment of new policies, it expressed concern that the SID investigators were poorly trained and the division itself not equipped with the resources it needed to enhance its investigative capabilities. In addition, investigators were overburdened with routine matters or issues more appropriately handled by shift commanders, leaving them unable to competently and consistently investigate cases involving serious inmate or officer misconduct.

In March of 2003, Sheriff Cabral hired Viktor Theiss to be Chief of the Sheriff's Investigative Division. Deputy Superintendent Theiss is a seasoned former prosecutor and former Deputy Chief of District Courts and Community Prosecutions in the Suffolk County District Attorney's Office. As Deputy Chief, he was responsible for assisting in the supervision of 52 prosecutors in Suffolk County's eight district courts, plus the Boston Municipal Court. He reviewed and coordinated all appeals of district court rulings and developed a system of uniform arraignment practices and policies in addition to maintaining a combined district and superior court caseload of his own.

A skilled investigator and trainer, Deputy Superintendent Theiss authored a training manual on pre-trial motions and conducted a corresponding annual training for the Massachusetts District Attorney's Association. He has also trained the Boston Police and the Boston University Police in domestic violence law and criminal prosecution, report writing, evidence gathering and search and seizure law.

001087

DS Theiss recruited well-trained, experienced investigators from the District Attorney's Office and Department of Social Services to replace departed staff. Following an evaluation by the Transition Team, the Sheriff also retained a number of existing SID staff. In order to fully understand training standards and enable them to fairly evaluate the propriety of officer conduct in any given situation, Sheriff Cabral required all SID investigators to undergo full academy training, including use of force, report writing, CPR, handcuffing techniques, firearms training and defensive tactics. SID investigators received more training in 2003 than all the training combined over the past decade.

Under previous administrations, SID was the clearinghouse for every reported infraction, from minor policy and inmate disciplinary violations to serious criminal misconduct allegations against inmates, officers and civilian staff. The excessive workload made it nearly impossible to properly prioritize cases and effectively manage investigation time.

Sheriff Cabral changed that. Direct supervisors now handle minor disciplinary matters, which previously accounted for a full third of SID's workload. Reshaping the roles and responsibilities of SID significantly reduced response time for more egregious cases. Before this reform, investigation of a serious case could take up to nine months to complete. The delay often made internal discipline meaningless and ineffective. Arbitrators frequently cited delay and inadequate investigation as the basis for reversing, in whole or in part, the Department's disciplinary decisions. In criminal cases, the delay meant that the District Attorney's Office often received stale information, which was detrimental to successful prosecution. Investigations are now completed in three to four weeks. Internal discipline is conducted in a timely manner and fresh evidence is provided to the district attorney for timely prosecution of cases.

The Department has also invested in industry-standard digital capability for audio and visual recording that will enable assistant district attorneys and police officers to develop better cases for prosecution or defense. With additional training and the installation of a new inmate telephone system, SID investigators are able to significantly develop information that helps to thwart crimes inside and outside the facilities.

All SID Investigators are sworn Deputy Sheriffs. As such, they have the authority to make arrests once they have gathered sufficient evidence to establish probable cause. Improved fingerprinting capabilities at the Nashua Street Jail now enable them to book arrestees at the facility.

Since January 1, 2003, SID has investigated and made arrests of 29 inmates, civilians and officers. Four officers have been arrested and charged with introduction of contraband into the facilities and possession of controlled substances. Twenty-five inmates and civilians connected to inmates have been arrested on various charges ranging from introduction of contraband, assault and battery on officers and other inmates, destruction of property and prostitution.

## COMMUNICATIONS AND EXTERNAL AFFAIRS
## DIRECTOR STEVEN TOMPKINS

While not an area addressed by the Stern Commission, Sheriff Cabral has merged and re-organized two separate divisions, combining the Office of Communications with the Community Affairs and Project Development Division.

The Communications and External Affairs Division oversees all community outreach efforts on behalf of the Sheriff's Department. The goal of this division is to develop healthy media relations, increase community accessibility and deliver the Sheriff's public safety message. Director Steve Tompkins has more than 20 years experience in communications, marketing, promotions, media production and public affairs, most recently as Director of Marketing and Public Affairs for the Dimock Community Health Center. Before working at Dimock, he spent ten years at AT&T/Media One/Continental Cablevision where he produced scores of television programs, public service announcements and industrial packages. While at AT&T, he also served as a member of the communications cadre for the Federal Emergency Management Agency (FEMA) where he was a field producer for the agency's internal television network and press liaison for FEMA's New England Region.

Communications and External Affairs redesigned the Department's public web site – www.scsdma.org - and its intranet site to increase content and make both user-friendly. To better reflect Sheriff Cabral's mission and message, the Department newsletter has also been redesigned and renamed Common Ground. Early next year, the Department will produce a monthly cable television show that highlights its different divisions and role in state and local government.

One external affairs goal is to counteract the perception among many youthful offenders that incarceration is an acceptable or even desirable part of life. JailBrake is an educational program for middle, high school and college students that teaches what it's like to be incarcerated, but also provides a glimpse into the life of the ex-offender. The Department offers tours and collaborates with community, civic and social organizations to provide outreach programs for youth. Sheriff Cabral visits as many schools as she can, delivering a message of empowerment and self-esteem. In an effort to communicate this message as broadly as possible, the Sheriff's Department has teamed up with MTV and its "True Life" series to produce a reality-based television documentary about young offenders in jail. Taped at the House of Correction in October 2003, the production is scheduled to air this December.

In collaboration with the Department's Educational Division, Communications and External Affairs is also creating a certificate program for offenders to increase their chances of obtaining employment once they are released.

The Common Ground Institute, a 501(c)(3), created by the Sheriff's Department will provide classroom and practical instruction to inmates in keyboard applications, carpentry, printing, landscaping and custodial maintenance. Inmates will be placed in "real work" situations similar to work experience they would likely find in the community. As the participants demonstrate the competencies acquired through this program, their level of expertise will be assessed, measured and recorded. Each inmate who completes the classroom component and demonstrates practical competencies will receive a certificate of completion that can be provided to potential employers.

The Shining Star Program is also in development. This will be an umbrella program through which the Sheriff's Department can collaborate with agencies like the Big Brothers and Big Sisters Association, the Boys and Girls Club and Girl Scouts with Incarcerated Mothers to help provide services and mentoring to children of incarcerated parents. In October, the Sheriff's Department at the House of Correction hosted the Reverend Wilson Goode, former mayor of Philadelphia and the Amachi Program. Amachi is a national program that matches the children of incarcerated parents with Big Brothers and Big Sisters. Following presentations by Rev. Goode, the Sheriff and Amachi staff, male and female inmates were invited to enroll their children in the program. Amachi received 174 completed sign-up forms representing 165 children of incarcerated parents who could be matched with Big Brothers or Big Sisters.

## COMMUNITY PROGRAMS AND VICTIM SERVICES
## DIANE COFFEY, CHIEF

Community Programs and Victim Services is a subdivision of Communications and External Affairs. While efforts are made to rehabilitate offenders and give them the skills to be productive citizens in the community, Sheriff Cabral has also expanded and enhanced services to the victims of crimes. As a former prosecutor, she is acutely aware of the pain, fear and other significant trauma they experience.

Despite its size and the service needs of considerable numbers of victims created by Suffolk County offenders, no previous administration ever established a Victim Services Unit whereby outreach, CORI clearances, parole hearing/release date information, counseling and other service referrals could be provided by a single, competently staffed division.

This year, the Department applied for and was awarded a Victim of Crime Act (VOCA) grant to help establish the Unit, which will coordinate victim notification regarding the status of incarcerated inmates. Since any change in an inmate's status can be complex and traumatic for victims, this new unit will establish working relationships with community-based agencies, hospitals, schools, police departments and state agencies so that advocates can provide accurate information, relevant support and timely service referrals.

The Division Chief, Diane Coffey, is a paralegal, career victim advocate and was appointed this year to be a member of the Judicial Nominating Commission by Governor Mitt Romney. Before joining the Sheriff's Department, she was the Director of Advocacy and Community Relations for the Safe Havens Interfaith Partnership Against Domestic Violence.

Chief Coffey was also Deputy Chief of the Suffolk County District Attorney's Office Victim-Witness Program from 1996 to 2002 and was then promoted to Chief of that program. She and Sheriff Cabral created that office's Domestic Violence Unit in 1994, where she was the senior, supervising victim advocate for eight years. While at the District Attorney's Office, she and Sheriff Cabral conducted team domestic violence trainings for police, prosecutors and advocates statewide.

From 1991 to 1993, Chief Coffey was a victim advocate with the Attorney General's Victim Compensation and Assistance Bureau and a victim-witness advocate with the Middlesex County District Attorney's Office from 1989 to 1991.

## OPERATIONS AND FACILITIES MANAGEMENT
## DEBORAH DRISCOLL, CHIEF

The Nashua Street Jail and the Suffolk County House of Correction are less than 13 years old and represent modern custody and control facilities. Despite new construction, constant use, capacity populations and poor prior management of repairs and maintenance have caused premature wear and tear on both structures.

Sheriff Cabral hired Deborah Driscoll as the new Director of Operations and Planning. She assumes roles previously held by a superintendent and deputy superintendent. As the former Chief of Operations at the Suffolk County District Attorney's Office and a veteran employee of 22 years, she was responsible for the daily operations at 11 locations for 300 employees. She supervised the construction of four floors of office space at the District Attorney's Office, coordinated the installation of computer servers and equipment in the main and satellite offices and managed office security controls.

Since coming on board in January of 2003, Chief Driscoll has worked closely with the state's Division of Capital & Asset Management (DCAM) to repair and replace vital security controls that were not properly maintained. For the past five years, the fire alarm panels at the House of Correction were in dire need of an upgrade. When Sheriff Cabral arrived, the facility was in danger of being shut down for non-compliance with state regulations. Through Chief Driscoll's hard work, DCAM has agreed to fund the replacement and upgrade of the system. When the work is completed by the end of this year, the system will be up to code and will include additional smoke detectors.

Other maintenance problems have plagued both buildings for the past several years. At the Nashua Street Jail, sewage overflows were a routine occurrence. To remedy the situation, the Department, in cooperation with DCAM, will install two "Muffin Monsters" – wastewater-pumping units which reduce solids in waste and ease its passage through the sewerage system. Chief Driscoll was also able to secure substantial funding for repair of the House of Correction roof following years of neglect, which caused significant water infiltration damage to the structure.

Over time, the constant use of all facilities has resulted in needed repairs of elevators, shower stalls, windows, roofs and water and electrical systems. Unfortunately, the Department had no preventative maintenance program that would address minor repairs before they became major repairs. In July, Sheriff Cabral authorized a cost-effective preventative maintenance schedule that will save money and significantly reduce the need for costly repairs and replacement.

Sheriff Cabral has effectively managed the Department's capital assets. These improvements, e.g., reduction or elimination of costly fines imposed by the MWRA, replacement of the fire alarm system, installation of better sewage systems and repair of facility roofs, will save the Department hundreds of thousands of dollars.

001030

# EXHIBIT D

```
 1                                    VOL:  I
                                   PAGES: 1-247
 2                                 EXHIBITS: 1-7

 3

 4              UNITED STATES DISTRICT COURT

 5           FOR THE DISTRICT OF MASSACHUSETTS

 6     * * * * * * * * * * * * * * * *
       SHEILA J. PORTER,               *
 7                     Plaintiff       *
               -vs-                    *   Civil Action
 8     ANDREA CABRAL; SUFFOLK COUNTY   *   No. 04-11935-DPW
       SHERIFF'S DEPARTMENT; SUFFOLK   *
 9     COUNTY and CORRECTIONAL MEDICAL *
       SERVICES, INC.,                 *
10                     Defendants      *
       * * * * * * * * * * * * * * * *

11

12      CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

13

           DEPOSITION OF VIKTOR THEISS, ESQUIRE, a witness
14     called on behalf of the Plaintiff, in the
       above-captioned matter, said deposition being
15     taken pursuant to the Federal Rules of
       Civil Procedure, before Patricia M.
16     McLaughlin, a Certified Shorthand Reporter and
       Notary Public in and for the Commonwealth of
17     Massachusetts, at the offices of Goodwin Procter
       LLP, Exchange Place, Boston, Massachusetts, on
18     Tuesday, May 24, 2005, commencing at 10:05 a.m.

19

20

21

22          McLAUGHLIN & ASSOCIATES COURT REPORTERS
                  92 DEVIR STREET, SUITE 304
23               MALDEN, MASSACHUSETTS  02148
                        781.321.8922
24                 WWW.E-STENOGRAPHER.COM
```

231

1    me as this pervasively negative atmosphere

2    where there was a whole separate world going

3    on that we had no knowledge about and that

4    people would come in and clam up and say I'm

5    not saying anything about this.

6        When we did interviews with officers,

7    they would respond to our questions.  We

8    developed a pretty decent relationship with

9    the union, worked out questioning, and we

10   were getting responses.  It was more like

11   people would answer what you were asking, and

12   if you kind of had your ducks in a row and

13   you had done some homework, people would tell

14   you where they were, what they were doing and

15   what they saw to a pretty decent extent.

16       Would I say it was a hundred percent,

17   where they were giving us everything we asked

18   for?  No.  But it wasn't like in the movies.

19   It wasn't that big a code of silence.  Was it

20   an open atmosphere where officers would run

21   down and tell SID or their captains

22   everything?  No.

23   Q    What do you understand the phrase, code of

24        silence to mean?

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

232

```
 1   A    It means that when people see something or
 2        are aware of something, they won't say
 3        anything at any cost.  When asked, they
 4        deny.
 5   Q    Do you understand that the Stern Commission
 6        report addressed the code of silence that
 7        they believed was present at that time?
 8   A    I do.  I wouldn't deny that there was
 9        something there, but again, I don't feel it
10        was a pervasively evil atmosphere.  I think
11        much of the Stern Commission was accurate,
12        but much of it was inaccurate.  The people
13        that came to evaluate didn't a significant
14        amount of time.  They didn't work the blocks.
15        So it wasn't as bad in some ways, but I'm not
16        going to lie and say that there was nothing
17        there.
18   Q    Do you believe that a piece of the Stern
19        Commission report was not accurate?
20            MS. HARVEY:  Objection.
21            MS. CAULO:  Objection.
22   A    I just answered that there was some accuracy
23        to it.  To say that there was a pervasive
24        code of silence, my opinion when I came on
```

McLAUGHLIN & ASSOCIATES COURT REPORTERS-781.321.8922

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER,               )<br>           ,       )<br>    Plaintiff          )<br>                )<br>      V.           )<br>                )<br>ANDREA CABRAL, SUFFOLK   )<br>COUNTY SHERIFF'S DEPARTMENT, )<br>SUFFOLK COUNTY, and     )<br>CORRECTIONAL MEDICAL    )<br>SERVICES, INC.         )<br>                )<br>    Defendants        ) | Civil Action No. 04-11935-DPW |

## DECLARATION OF DAVID S. SCHUMACHER

I, David S. Schumacher, depose and state the following:

1.     I am an attorney with the law firm Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, 02109, and a member in good standing of the bar of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.

2.     Goodwin Procter is counsel to Plaintiff Sheila Porter ("Mrs. Porter") in the above-captioned proceeding. I submit this Declaration in support of Mrs. Porter's Opposition to Defendants' Motion *in Limine* to Exclude Evidence of Alleged Negative Conduct of the Prior Administration.

3.     As soon as the Court announced that this case would go to trial on January 9, 2006, I contacted Jim Brady, counsel for Deyanara Feliz, to inquire about her availability for trial. Mr. Brady informed me that Ms. Feliz would be out of the country for the month of January visiting family. Mr. Brady stated that, were she available, Ms. Feliz would have willingly testified in the instant trial.

Signed under the penalties of perjury this 3rd day of January, 2006.


/s/ David Schumacher
David S. Schumacher