UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>    Plaintiff,<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, and SUFFOLK COUNTY<br><br>    Defendants. | Civil Action No.04-11935-DPW |

# PLAINTIFF SHEILA PORTER'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE

Bifurcation is inappropriate in the present case because there is a substantial overlap of issues and evidence. Therefore, bifurcation would not be conductive to expeditious and economical resolution of this case. Moreover, the prejudice to Sheriff Cabral in her individual capacity, if any, of a joint trial will be minimal and easily cured with a limiting instruction to the jury.

Bifurcation would be pointless because the issues in this case are intertwined such that there is a substantial overlap in evidence. If there were separate phases of the trial for the claims against Sheriff Cabral in her individual capacity on the one hand and the claims against Sheriff Cabral in her official capacity, Suffolk County Sheriff's Department ("SCSD"), and Suffolk County on the other hand, the central issue at both trials would be whether there was a constitutional deprivation and whether Sheriff Cabral knew or should have known of any deprivation. All of the evidence admissible at one trial would be admissible at the other. Since, as defendants concede, Sheriff Cabral had final decision-making authority for several months,

LIBA/1662557.1

evidence of her knowledge will be relevant to both the claims against her in her individual capacity, as well as the claims against Sheriff Cabral in her official capacity, SCSD, and the County.

In other words, Sheriff Cabral links the claims against her in her individual capacity and the claims against her in her official capacity, against SCSD, and the County in the sense that her actual or constructive knowledge establishes both her deliberate indifference for supervisor liability purposes and a custom or practice for municipal liability purposes.[1] When Mrs. Porter raised her claim of retaliation publicly, Sheriff Cabral responded to the individual allegations of retaliation by stating that she had implemented the Stern Commission report, thus acknowledging that she was aware that there was a general problem with retaliation that she claimed to have cured. It will be for the jury to decide whether Sheriff Cabral eliminated this practice or continued it. Sheriff Cabral's lieutenants indicate that the custom of retaliation still existed to a degree during the Cabral administration. Viktor Theiss testified at his deposition that, when he arrived at SID, several months into the Cabral administration, people would not come forward to volunteer information. Deposition of Viktor Theiss sworn to on May 24, 2005, 230:12-23 (Exh. B). Similarly, when asked whether Mrs. Porter had a reasonable fear of retaliation, Mr. Theiss testified that "I'd say that would be a point of conversation. It's an issue. I'm not saying whether she did or didn't." *Id.* at 222:17-20. Mr. Theiss also testified that retaliation is "an essential element to a code of silence." *Id.* at 237:14-15. Elizabeth Keeley

---

[1] While Mrs. Porter agrees that Sheriff Cabral's actual or constructive knowledge of a retaliatory custom or practice is the link that binds the municipal defendants, she disagrees with the implication that only her conduct can establish a constitutional deprivation. Defendants' argument confuses the constitutional deprivation element of Mrs. Porter's claim and the supervisor/municipal liability elements of her claim. A constitutional deprivation can occur even if Sheriff Cabral did not personally retaliate against Mrs. Porter, if anyone acting under color of state law took adverse action against Mrs. Porter in retaliation for her exercising her First Amendment rights. This could be Sheriff Cabral or her lieutenants. Then the issue becomes whether Sheriff Cabral and/or the municipal defendants are responsible for that deprivation because they acted deliberately indifferent, or there was a policy or custom that was responsible for the retaliation. As to this element, Sheriff Cabral's actual or constructive knowledge of the retaliatory practice

2

testified that she barred Mrs. Porter in part to protect her from retaliation and said generally that, "[m]y impression was that someone who was known as an informant in a correctional facility, their personal safety could not be assured. It's like being a snitch." Deposition of Elizabeth Keeley sworn to on May 11, 2005, 17:10-16 (Exh. C). *See id.* at 50:22-53:10; 62:16-24; 132:11-15. Again, the extent to which Sheriff Cabral sought to eliminate or implement the custom is central to the trial.

As a result of this intertwining of issues, the same witnesses and documents would be used at both trials. In particular, since Sheriff Cabral's actual or constructive knowledge goes to establishing both supervisory and municipal liability, the evidence that defendants claim goes to whether there was a custom or practice, namely exhibits TT through BBB, also goes to establishing Mrs. Porter's deliberate indifference claim against Sheriff Cabral. Two elements of a deliberate indifference claim are that there was a grave risk of harm to constitutional rights and actual or constructive knowledge of that risk. *See Camillo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998). Evidence of a history of retaliating against those who exercise their First Amendment rights, even if this occurred during the prior administration, establishes that there was a grave risk that Mrs. Porter would be retaliated against for exercising her First Amendment rights, and the fact that such retaliation was so extensive demonstrates that Sheriff Cabral knew or should have known about this risk. That she cited her implementing the Stern Commission Report in response to Mrs. Porter's claim of retaliation reflects that she knows of the risk. Indeed, a civil jury was finding that there was widespread retaliation against those who exercised their First Amendment rights in *Baron* (exhibits ZZ through BBB) at almost the exact same time that Sheriff Cabral was deciding to terminate Mrs. Porter. Thus, if the trial was bifurcated, this evidence would be relevant to both trials. Not time is saved or prejudice eliminated under the

will be key in establishing both her liability and municipal liability.

3

LIBA/1662557.1

circumstances.

Recognizing that there usually is substantial overlap of issues and evidence between claims against an official in their individual capacity on the one hand, and claims against the official in their official capacity and the municipality, Courts routinely deny motions to bifurcate trials. *See Rossignol v. Voorhaar*, 99-CV-3302, 2000 WL 309277 (D. Md. Feb. 29, 2000) (unreported decision); *Nessel v. City of Northlake*, 93C6176, 1994 WL 685508 (N.D. Ill. Dec. 5, 1994) (unreported decision).

In *Rossignol*, the Court denied a motion to bifurcate in a Section 1983 case based on a violation of the First Amendment on the grounds that "[b]ifurcation is not appropriate where, as here, the issues sought to be tried separately are inextricably intertwined such that there would be substantial overlap of witnesses and documentary evidence in the event of separate trials." 2000 WL 309277 at *2. Similarly, in *Nessel*, the Court denied a motion to bifurcate a trial between the claims against officials in their individual capacities on the one hand and the claims against the officials in their official capacities and a municipality on the other hand on the ground that the evidence presented at the two trials would "overlap[]." 1994 WL 685508 at *2. Moreover, while the Court noted that the official's individual capacity suit might suffer some prejudice from custom and practice evidence introduced in support of the claims against the officials in their official capacities and the municipality, the Court concluded that such prejudice could be cured by an instruction, and in any event was outweighed by the efficiency gains of a joint trial. *See id.*

It should be noted that a motion for bifurcation is part of the Suffolk County defendants' standard playbook. In *Baron v. Suffolk County Sheriff's Department*, defendant SCSD made a similar motion to bifurcate. *See* Docket Sheet Entry # 47 (Exh. A). The *Baron* Court denied the

4

motion. *See Baron* Docket Sheet Entry Dated 3/31/2003 (Exh. A). As in *Baron*, *Rossignol*, and *Nessel*, defendants' motion to bifurcate the trial in the present case should be denied.

Aside from the factual issue that bifurcation will result in no efficiencies and is not needed to address undue prejudice, the premise of defendants' motion for bifurcation is flawed. First, they argue that bifurcation would address a single issue that could dispose of the case. The problem is that, while the issue of whether there was a constitutional violation could dispose of the entire case, the defendants do not seek bifurcate proof solely on the issue of whether there was a constitutional violation. Rather, the defendants seek a separate determination on whether Sheriff Cabral is liable in her individual capacity. The two issues are not coextensive. Given Sheriff Cabral's assertion of qualified immunity, the jury could find that Sheriff Cabral is not liable, even though it might think that there was a constitutional violation. As the *Nessel* Court states:

> If the individual defendant[] successfully mounts a defense of qualified immunity—essentially arguing that [she] committed constitutional violations in good faith—the [county] may still be liable. This is true because the qualified immunity defense is available to individuals but not to governmental bodies. As a result, if the trial were bifurcated, evidence pertaining to the conduct of the individual defendant[] would necessarily have to be presented twice, regardless of the outcome of the first trial.

1994 WL 685508. Therefore, even if a jury found Sheriff Cabral was not liable in her individual capacity, the jury would have to proceed to consider the other claims because the jury could have relied on qualified immunity to find in favor of Sheriff Cabral in her individual capacity. This would result in a waste of judicial resources.[2] Moreover, as discussed above, the evidence that

---

[2] Defendants' citation to *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) is inapposite. While the District Court in that case bifurcated the trial, that issue was not raised on appeal. Thus, the issue was not before the Court and there was no analysis of whether such bifurcation was appropriate. Rather the issue before the Court was, having bifurcated the trial, whether the District Court properly dismissed the claims against the City after the jury found in favor of the official in his individual capacity. The Court found that such dismissal was proper. But there is a crucial difference between *Heller* on the one hand, and the present case and *Nessel* on the other hand. In *Heller*, "the jury was not charged on any affirmative defense such as good faith which might have been availed of by the

5

would be introduced to prove the claims against Sheriff Cabral in her official capacity, SCSD, and the County, including the evidence of prior retaliations, also would be relevant and admitted in the case against Sheriff Cabral. Therefore, bifurcation would not result in any efficiency gains by narrowing the issues.

Second, defendants claim that failure to bifurcate will prejudice the claim against Sheriff Cabral in her individual capacity. Unlike in *Nessel*, the claim against Sheriff Cabral in her individual capacity will not be prejudiced by custom and practice evidence because the evidence of past retaliation is relevant to Mrs. Porter's deliberate indifference claim against Sheriff Cabral in her individual capacity as well. Thus, it is not unfairly prejudicial. In any event, as *Nessel* notes, and prejudice can be cured with a limiting instruction. *See* 1994 WL 685508 at *2.

## CONCLUSION

WHEREFORE: Defendants' motion to bifurcate the trial should be denied.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

/s/ Joseph F. Savage, Jr.
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: January 3, 2006

---

individual police officer." *Id.* at 798-99. Here, as in *Nessel*, defendants are insisting on raising a qualified immunity defense. Moreover, in *Heller*, the only theory under which the City was liable was for the official's conduct. *See id.* at 799. As discus above, here the County also is liable for the custom of retaliation against subordinates, which caused Sheriff Cabral's subordinates to recommend barring.

6

LIBA/1662557.1