# EXHIBIT A

**United States District Court**
**District of Massachusetts (Boston)**
**CIVIL DOCKET FOR CASE #: 1:01-cv-10143-PBS**

Baron v. Hickey, et al
Assigned to: Judge Patti B. Saris
Referred to:
Demand: $0
Lead Docket: None
Related Cases: None
Case in other court: None
Cause: 28:1441 Notice of Removal

Date Filed: 01/25/01
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Bruce Baron**

represented by **Carolyn Conway**
DiMento & Sullivan
7 Faneuil Marketplace
Boston, MA 02109-1649
523-2345
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Daniel Hickey,** *Suffolk County Sheriff's*
*Department*

represented by **Douglas I. Louison**
Merrick, Louison & Costello
67 Batterymarch Street
Boston, MA 02110
617-439-0305
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen M. Cawley**
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
617-989-6680
Fax : 617-989-6693
Email: Kathy_Cawley@scsdma.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen C. Pfaff**
Merrick, Louison & Costello
Suite 3
67 Batterymarch Street
Boston, MA 02110
617-439-0305
Fax : 617-439-0325
Email: spfaff@merricklc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sheriff of Suffolk County**

represented by **Kathleen M. Cawley**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Suffolk County Sheriff's Department**

represented by **Kathleen M. Cawley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**
———————————————

**Daniel Hickey**

represented by **Douglas I. Louison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen C. Pfaff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**
———————————————

**Sheriff of Suffolk County**

**Cross Claimant**
———————————————

**Daniel Hickey**

represented by **Douglas I. Louison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen M. Cawley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen C. Pfaff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**
———————————————

**Bruce Baron**

represented by **Carolyn Conway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|-------------|---|-------------|
|             |   |             |

| 01/25/2001 | 1 | Notice of Removal filed. Received from: Suffolk Superior Court; State Court Docket #: 01-0067. Assigned to: Honorable Patti B. Saris Receipt #: 28315 Amount: $ 150.00. Fee status: pd (pc) (Entered: 01/25/2001) |
|---|---|---|
| 01/30/2001 | 2 | State Court Record, copy of Notice of Removal sent to State Court, filed. (pc) (Entered: 01/30/2001) |
| 01/31/2001 | 3 | Consent of removal (pc) (Entered: 02/02/2001) |
| 02/14/2001 | 4 | Motion by Daniel Hickey to extend time to March 9, 2001 to respond to complaint , filed, c/s. (pc) (Entered: 02/14/2001) |
| 02/14/2001 | | Judge Patti B. Saris. Endorsed Order entered granting [4-1] motion to extend time to March 9, 2001 to respond to complaint. [EOD Date 2/14/01], cc/cl. (pc) (Entered: 02/14/2001) |
| 03/08/2001 | 5 | Motion by Daniel Hickey to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6) , filed, c/s. (pc) (Entered: 03/08/2001) |
| 03/08/2001 | 6 | Memorandum by Daniel Hickey in support of [5-1] motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6), filed, c/s. (pc) (Entered: 03/08/2001) |
| 03/12/2001 | 7 | Answer to complaint; jury demand by Daniel Hickey and cross-claim against Sheriff of Suffolk, filed, c/s. (pc) (Entered: 03/12/2001) |
| 03/13/2001 | 8 | Judge Patti B. Saris. Notice of Scheduling conference: set scheduling conference for 3:15 on 4/26/01 , cc/cl. (pc) (Entered: 03/13/2001) |
| 03/13/2001 | 9 | Judge Patti B. Saris. Procedural Order entered re: Initial Scheduling Conference. [EOD Date 3/13/01], cc/cl. (pc) (Entered: 03/13/2001) |
| 03/16/2001 | 10 | Motion by Bruce Baron to extend time to April 13, 2001 to file response to Defendants' Suffolk County Sheriff's Department and Sheriff of Suffolk County's Motion to Dismiss Pursuant to Federal R. Civ. P. 12.(b)(6) , filed, c/s. (pc) (Entered: 03/16/2001) |
| 03/22/2001 | | Judge Patti B. Saris. Endorsed Order entered granting [10-1] motion to extend time to April 13, 2001 to file response to Defendants' Suffolk County Sheriff's Department and Sheriff of Suffolk County's Motion to Dismiss Pursuant to Federal R. Civ. P. 12.(b)(6). [EOD Date 3/22/01], cc/cl. (pc) (Entered: 03/22/2001) |
| 04/12/2001 | 11 | Response by Bruce Baron in opposition to [5-1] motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6), filed, c/s. (pc) (Entered: 04/16/2001) |
| 04/12/2001 | 12 | Memorandum by Bruce Baron in support of [11-1] opposition response to motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), filed, c/s. (pc) (Entered: 04/16/2001) |
| 06/12/2001 | 13 | Judge Patti B. Saris . Notice of Hearing/conference: set scheduling conference for 2:15 7/19/01 . cc/cl (fmr) (Entered: 06/12/2001) |
| 06/12/2001 | 14 | Judge Patti B. Saris . Procedural Order entered re: Initial Scheduling Conference . [EOD Date 6/12/01] cc/cl (fmr) (Entered: 06/12/2001) |
| 06/13/2001 | | Judge Patti B. Saris. Endorsed Order entered granting [5-1] motion to dismiss pursuant to |

|  |  | Fed.R.Civ.P. 12 (b)(6). "Allowed with respect to count Six (Intentional Infliction of Emotional Distress) against the sheriff and the county, otherwise denied."[EOD Date 6/18/01], cc/cl. (pc) (Entered: 06/18/2001) |
|---|---|---|
| 07/11/2001 | 15 | Notice of appearance of attorney for Daniel Hickey, Sheriff of Suffolk by Kathleen M. Cawley, filed. (pc) (Entered: 07/12/2001) |
| 07/18/2001 | 16 | Joint statement by Bruce Baron, Daniel Hickey, Sheriff of Suffolk, re: Local Rule 16, filed. (pc) (Entered: 07/18/2001) |
| 07/19/2001 |  | Scheduling conference held. (pc) (Entered: 07/19/2001) |
| 07/19/2001 | 17 | Judge Patti B. Saris. Clerk's Notes: re: Scheduling Conference held, court adopts 16.1 joint statement as the case scheduling order, fact discovery deadline; 12/31/01, summary judgment motions filing deadline: 1/31/02, oppositions to summary judgment motions filing deadline: 2/23/02, case to be referred to ADR program: Fall, 2001, set motion filing deadline for 2/23/02, set discovery due for 12/31/01 Court Reporter: (pc) (Entered: 07/19/2001) |
| 07/19/2001 | 18 | Judge Patti B. Saris. Scheduling Order entered setting 12/31/01 for discovery deadline. [EOD Date 7/19/01], cc/cl. (pc) (Entered: 07/19/2001) |
| 07/19/2001 | 19 | Judge Patti B. Saris. Order of reference entered for Alternative Dispute Resolution. Referred to: Senior Judges for: Mediation, civil rights (pc) (Entered: 07/19/2001) |
| 10/10/2001 | 20 | Notice of assignment of ADR Provider issued. Assigned to: Judge Skinner for: Mediation (pc) (Entered: 10/10/2001) |
| 10/22/2001 | 21 | Answer by Daniel Hickey, Sheriff of Suffolk to complaint; jury demand, filed. (pc) (Entered: 10/22/2001) |
| 10/23/2001 | 22 | Report by Walter J Skinner of Alternative Dispute Resolution proceedings. The case was: not settled. Further efforts to settle this case at this time are, in my judgment unlikely to be productive. (pc) (Entered: 10/24/2001) |
| 10/24/2001 |  | Case no longer referred to ADR. (pc) (Entered: 10/24/2001) |
| 01/30/2002 | 23 | Joint motion by Bruce Baron, Daniel Hickey, Sheriff of Suffolk to extend Scheduling order to establish the folowing dates; discovery-5/31/02, S/J motions-6/28/02, oppositions to S/J motions by 7/19/02, filed. (ms) (Entered: 01/30/2002) |
| 01/31/2002 |  | Judge Patti B. Saris. Endorsed Order entered granting [23-1] joint motion to extend Scheduling order to establish the folowing dates; discovery-5/31/02, S/J motions-6/28/02, oppositions to S/J motions by 7/19/02, set discovery due for 5/31/02, set S/J motion filing deadline for 6/28/02, Response to S/J motion ddl-7/19/02 .cc/cl [EOD Date 2/1/02] (ms) (Entered: 02/01/2002) |
| 06/17/2002 | 24 | Second Joint motion by Bruce Baron, Daniel Hickey to extend scheduling order, filed. . (ms) (Entered: 06/19/2002) |
| 07/01/2002 |  | Judge Patti B. Saris. Endorsed Order entered denying [24-1] joint motion to extend scheduling order, The parties may have an extra 2 weeks to file motions for S/J and oppositions. reset motion filing deadline for 7/12/02, Response to S/J motion due 8/2/02 |

| | | cc/cl. [EOD Date 7/2/02] (ms) (Entered: 07/02/2002) |
|---|---|---|
| 07/12/2002 | 29 | Motion by Sheriff of Suffolk, Suffolk County Sher for summary judgment , filed. (ms) (Entered: 07/15/2002) |
| 07/12/2002 | 30 | Statement of undisputed Facts by Sheriff of Suffolk, Suffolk County Sher re: [29-1] motion for summary judgment filed. (ms) (Entered: 07/15/2002) |
| 07/12/2002 | 31 | Memorandum by Sheriff of Suffolk, Suffolk County Sher in support of [30-1] statement, [29-1] motion for summary judgment, filed. (ms) (Entered: 07/15/2002) |
| 08/01/2002 | 32 | Response by Bruce Baron in opposition to [29-1] motion for summary judgment , filed. (ms) (Entered: 08/02/2002) |
| 08/01/2002 | 33 | Memorandum by Bruce Baron in support of [32-1] opposition response to motion for Summary Judgement, filed. (ms) (Entered: 08/02/2002) |
| 08/06/2002 | 34 | Judge Patti B. Saris. Notice of motion hearing: Motion hearing set for 3:15 10/17/02 for [29-1] motion for summary judgment . cc/cl (ms) (Entered: 08/06/2002) |
| 08/07/2002 | 35 | Motion by Sheriff of Suffolk for leave to file reply to pltfs opposition to defts motion for S/J , filed. (ms) (Entered: 08/07/2002) |
| 08/09/2002 | 36 | Judge Patti B. Saris. Notice of Hearing/conference: Motion hearing set for 2:00 10/31/02 for [29-1] motion for summary judgment . cc/cl (ms) (Entered: 08/12/2002) |
| 08/12/2002 | 37 | Response by Bruce Baron in opposition to [35-1] motion for leave to file reply to pltfs opposition to defts motion for S/J, filed. c/s (ms) (Entered: 08/13/2002) |
| 10/31/2002 | | Motion hearing re: [29-1] motion for summary judgment Motion hearing held (ms) (Entered: 11/18/2002) |
| 10/31/2002 | 40 | Judge Patti B. Saris. Clerk's Notes: re: Motion hearing Court hears argument of counsel. Parties to supplement within 2 weeks. Parties to then file replies within one week therefrom. [29-1] motion for summary judgment taken under advisement Court Reporter: Marie Cloonan (ms) (Entered: 11/18/2002) |
| 11/13/2002 | 38 | Motion by Bruce Baron To supplement opposition to deft's motion for S/J , filed. (ms) (Entered: 11/14/2002) |
| 11/14/2002 | 39 | Response by Daniel Hickey, Sheriff of Suffolk in opposition to [32-1] opposition response, filed. (ms) (Entered: 11/18/2002) |
| 11/21/2002 | 41 | Reply by Bruce Baron to Pltfs [39-1] opposition response to pltfs opposition to defts motion for S/J, filed. (ms) (Entered: 11/22/2002) |
| 11/21/2002 | 42 | Response by Daniel Hickey, Sheriff of Suffolk in opposition to [38-1] motion To supplement opposition to deft's motion for S/J, filed. (ms) (Entered: 11/22/2002) |
| 12/03/2002 | 43 | Motion by Daniel Hickey, Sheriff of Suffolk to strike [41-1] references in reply , filed. (ms) (Entered: 12/04/2002) |
| | | |

| Date | No. | Description |
|---|---|---|
| 01/22/2003 | | Terminated document:[35-1] motion for leave to file reply to pltfs opposition to defts motion for S/J Requested by rca. (rca) (Entered: 01/22/2003) |
| 01/31/2003 | 44 | Judge Patti B. Saris . Memorandum and Order entered. After hearing, the [29-1] motion for summary judgment is allowed in part and denied in part. The motion for S/J by the county is ALLOWED with respect to the Mass civil Rights act claim, but DENIED with respect to the remaining claims. The Sheriffs motion for Summary Judgement on the ground of qualified immunity is ALLOWED. cc/cl [EOD Date 2/4/03] (ms) (Entered: 02/04/2003) |
| 02/06/2003 | 45 | Judge Patti B. Saris. Notice of Final pretrial conference and Jury trial: set pretrial conference for 2:00 4/28/03 , set Jury trial for 9:00 5/5/03 cc/cl. (ms) (Entered: 02/06/2003) |
| 02/06/2003 | 46 | Judge Patti B. Saris. Pretrial Order entered. Jury Trial -5/5/03 at 9:00; Final pretrial cnf- 4/28/03 at 2:00; expert disclosures by 2/27/03; Pretrial disclosures by 3/28/03; Objections to pretrial disclosures by 4/11/03; Joint pretrial memorandum by 4/21/03; file/serve proposed jury instr., motions in lim, witness/exhibit list by 4/14/03; file/serve oppositions to motions by 4/21/03; trial briefs by 4/28/03. cc/cl [EOD.Date 2/6/03] (ms) (Entered: 02/06/2003) |
| 03/12/2003 | 47 | Motion by Daniel Hickey, Sheriff of Suffolk to bifurcate , filed. (ms) (Entered: 03/12/2003) |
| 03/12/2003 | 48 | Memorandum by Daniel Hickey, Sheriff of Suffolk in support of [47-1] motion to bifurcate , filed. (ms) (Entered: 03/12/2003) |
| 03/21/2003 | 49 | Response by Bruce Baron in opposition to [47-1] motion to bifurcate, filed. (ms) (Entered: 03/24/2003) |
| 03/24/2003 | | Judge Patti B. Saris. Endorsed Order entered denying [47-1] motion to bifurcate. cc/cl [EOD Date 3/26/03] (ms) (Entered: 03/26/2003) |
| 03/26/2003 | 50 | Judge Patti B. Saris. Notice of Rescheduled final pretrial conference: reset pretrial conference for 3:30 4/29/03 cc/cl. (ms) (Entered: 03/26/2003) |
| 03/26/2003 | 51 | Joint motion by Bruce Baron, Daniel Hickey, Sheriff of Suffolk to continue trial date , filed. (ms) (Entered: 03/27/2003) |
| 03/26/2003 | 52 | Affidavit of Kathleen M. Cawley, re: [51-1] joint motion to continue trial date, filed. (ms) (Entered: 03/27/2003) |
| 03/28/2003 | 53 | Pretrial disclosure pursuant to Rule 26(a)(3) by Sheriff of Suffolk filed. (ms) (Entered: 03/31/2003) |
| 03/31/2003 | | Judge Patti B. Saris. Endorsed Order entered denying [51-1] joint motion to continue trial date. Denied, However, if you are on trial before Judge O'Toole, I will move it to the next week. cc/cl [EOD Date 4/1/03] (ms) (Entered: 04/01/2003) |
| 03/31/2003 | 54 | Pretrial disclosure pursuant to Rule 26(a)(3) by Bruce Baron filed. (ms) (Entered: 04/02/2003) |
| 04/09/2003 | 55 | Objection by Bruce Baron re: Evidence in Defts Pretrial Disclosure, filed. (ms) (Entered: 04/09/2003) |
| 04/10/2003 | 56 | Objection by Sheriff of Suffolk re: [54-1] Pltfs pretrial disclosure, filed. (ms) (Entered: |

| | | 04/10/2003) |
|---|---|---|
| 04/14/2003 | 57 | Proposed Jury instructions by Bruce Baron , filed. (ms) (Entered: 04/14/2003) |
| 04/14/2003 | 58 | Proposed voir dire questions by Bruce Baron , filed. (ms) (Entered: 04/14/2003) |
| 04/14/2003 | 59 | Motion by Bruce Baron in limine , filed. (ms) (Entered: 04/14/2003) |
| 04/14/2003 | 60 | Witness/exhibit list by Bruce Baron , filed. (ms) (Entered: 04/14/2003) |
| 04/14/2003 | 63 | Proposed voir dire questions by Suffolk County Sher , filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 64 | Motion by Suffolk County Sher in limine to exclude the introduction of the stern commission report , filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 65 | Motion by Suffolk County Sher in limine to allow questioning of the pltf regarding allegation of sexual misconduct , filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 66 | Motion by Suffolk County Sher in limine to admit evidence of allegations of misconduct by the pltf , filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 67 | Witness/exhibit list by Suffolk County Sher, filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 68 | Pretrial disclosure pursuant to Rule 26(a)(3) by Suffolk County Sher filed. (ms) (Entered: 04/15/2003) |
| 04/14/2003 | 69 | Memorandum by Suffolk County Sher in support of [59-1] motion in limine, filed. (ms) (Entered: 04/15/2003) |
| 04/15/2003 | 61 | Judge Patti B. Saris. Notice of rescheduled jury trial: reset Jury trial for 9:00 5/12/03 . The final pretrial conference remains as scheduled for 4/29/03 at 3:30. cc/cl (ms) (Entered: 04/15/2003) |
| 04/15/2003 | 62 | Proposed Jury instructions by Suffolk County Sher , filed. (ms) (Entered: 04/15/2003) |
| 04/18/2003 | 70 | Assented To Motion by Daniel Hickey to continue trial , filed. (ms) (Entered: 04/18/2003) |
| 04/18/2003 | 71 | Motion by Daniel Hickey To conduct Pltfs deposition , filed. (ms) (Entered: 04/18/2003) |
| 04/21/2003 | 72 | Response by Suffolk County Sher in opposition to [57-1] instructions jury , filed. (ms) (Entered: 04/22/2003) |
| 04/21/2003 | 73 | Joint memorandum by Bruce Baron, Daniel Hickey, Sheriff of Suffolk re: pretrial, filed. (ms) (Entered: 04/22/2003) |
| 04/21/2003 | 74 | Motion by Bruce Baron to amend complaint , filed. (ms) (Entered: 04/22/2003) |
| 04/21/2003 | 75 | Response by Bruce Baron in opposition to [66-1] motion in limine to admit evidence of allegations of misconduct by pltf, filed. (ms) (Entered: 04/22/2003) |

| 04/21/2003 | 76 | Response by Bruce Baron in opposition to [71-1] motion To conduct Pltfs deposition , filed. (ms) (Entered: 04/22/2003) |
|---|---|---|
| 04/24/2003 | | Judge Patti B. Saris. Endorsed Order entered denying [70-1] motion to continue trial. Denied as untimely, also, there are two attys for Mr. Hickey. cc/cl [EOD Date 4/24/03] (ms) (Entered: 04/24/2003) |
| 04/25/2003 | 77 | Proposed Jury instructions by Daniel Hickey, filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 78 | Witness/exhibit list by Daniel Hickey, filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 79 | Pretrial disclosure pursuant to Rule 26(a)(3) by Daniel Hickey filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 80 | Motion by Daniel Hickey in limine to admit evidence of allegations of misconduct , filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 81 | Motion by Daniel Hickey in limine to allow questioning of the pltfs regarding allegations of sexual misconduct , filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 82 | Motion by Daniel Hickey in limine to exclude the introduction of the Stearn Commission Report , filed. (ms) (Entered: 04/25/2003) |
| 04/25/2003 | 83 | Proposed voir dire questions by Daniel Hickey , filed. (ms) (Entered: 04/25/2003) |
| 04/29/2003 | | Pre-trial conference held. (ms) (Entered: 04/30/2003) |
| 04/29/2003 | 84 | Judge Patti B. Saris. Clerk's Notes: re: Final pretrial cnf; Pltfs counsel informs the court that the case will go forward to trial. Court discusses with counsel various evidentiary issues. Court Reporter: Lee Marzilli (ms) (Entered: 04/30/2003) |
| 05/01/2003 | | Terminated document: [38-1] motion To supplement opposition to deft's motion for S/J. Requested by rca. (rca) (Entered: 05/01/2003) |
| 05/01/2003 | | Terminated document: [43-1] motion to strike [41-1] references in reply Requested by rca. (rca) (Entered: 05/01/2003) |
| 05/06/2003 | 85 | Trial Brief by Daniel Hickey, Sheriff of Suffolk, filed. (ms) (Entered: 05/07/2003) |
| 05/08/2003 | 86 | Trial Brief by Bruce Baron, filed. (ms) (Entered: 05/09/2003) |
| 05/08/2003 | 87 | Answer by Daniel Hickey to amended complaint, filed.; jury demand (ms) (Entered: 05/09/2003) |
| 05/08/2003 | 87 | Crossclaim by Daniel Hickey against Bruce Baron, filed. (ms) (Entered: 05/09/2003) |
| 05/08/2003 | 88 | Trial brief by Daniel Hickey, filed. (ms) (Entered: 05/09/2003) |
| 05/08/2003 | | Judge Patti B. Saris. Endorsed Order entered denying [71-1] motion To conduct Pltfs deposition. cc/cl [EOD Date 5/9/03] (ms) (Entered: 05/09/2003) |

| 05/12/2003 | | Jury trial held. day 1 (ms) (Entered: 05/13/2003) |
|---|---|---|
| 05/12/2003 | 89 | Judge Patti B. Saris. Clerk's Notes; re: Jury Trial; Voir dire held; Jury empaneled. Jury sworn; Judge gives preliminary instructions to jury; Counsel make opening arguments. pltfs present its case. Court recesses at 1:00 for lunch; resumes; court recesses at 3:45 Court Reporter: Lee Marzilli (ms) (Entered: 05/13/2003) |
| 05/13/2003 | | Jury trial held day 2. (ms) (Entered: 05/13/2003) |
| 05/13/2003 | 90 | Judge Patti B. Saris. Clerk's Notes: re: jury trial Court Reporter: Lee Marzilli (ms) (Entered: 05/13/2003) |
| 05/14/2003 | | Jury trial held . (ms) (Entered: 05/15/2003) |
| 05/14/2003 | 91 | Judge Patti B. Saris. Clerk's Notes: re: Jury Trial;Day 3. Court recesses at 12:55pm; After jury is dismissed for the day, Court hears argument of various dispositive motions. Court makes rulings on the record in open court. Court Reporter: Janet Konarski (ms) (Entered: 05/15/2003) |
| 05/14/2003 | 97 | MOTION for Judgment as a Matter of Law at the close of Pltfs case by Daniel Hickey. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/14/2003 | 98 | MOTION for Directed Verdict by Sheriff of Suffolk County.(Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | 92 | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris : Jury Trial completed on 5/15/2003. see imaged clerk note (Court Reporter Janet Konarski.) (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | 93 | SPECIAL JURY VERDICT in favor of Plaintiff, Baron against Deft, Hickey, suffolk County. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | 94 | Jury trial Witness List. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | 95 | Jury trial Exhibit List. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | 96 | STIPULATION re: documents submitted to Investigator by Bruce Baron, Daniel Hickey, Sheriff of Suffolk County. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | | Judge Patti B. Saris : Electronic ORDER entered re: 97 Motion for Judgment as a Matter of Law; The claims of assault and battery and defamation are time-barred. Otherwise denied (Simeone, Maria) (Entered: 05/20/2003) |
| 05/15/2003 | | Judge Patti B. Saris : Electronic ORDER entered re: 99 Motion for Directed Verdict. Denied, with respect to the common law claim. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/16/2003 | 100 | Judge Patti B. Saris : ORDER entered JUDGMENT in favor of Deft, Hickey against Pltf, Baron(Simeone, Maria) (Entered: 05/20/2003) |
| 05/20/2003 | 99 | MOTION for Directed Verdict by Suffolk County Sheriff's Department.(Simeone, Maria) (Entered: 05/20/2003) |

| 05/27/2003 | 101 | MOTION for New Trial by Suffolk County Sheriff's Department.(Simeone, Maria) (Entered: 05/29/2003) |
|---|---|---|
| 05/27/2003 | 102 | MOTION for Remittitur of damages or in the alternative a new trial by Suffolk County Sheriff's Department.(Simeone, Maria) (Entered: 05/29/2003) |
| 05/27/2003 | 103 | MOTION for Judgment as a Matter of Law by Suffolk County Sheriff's Department. (Simeone, Maria) (Entered: 05/29/2003) |
| 05/27/2003 | 104 | MOTION for Leave to File memorandum in excess of 20 pages by Suffolk County Sheriff's Department.(Simeone, Maria) (Entered: 05/29/2003) |
| 05/27/2003 | 105 | MEMORANDUM in Support re 103 MOTION for Judgment as a Matter of Law, 101 MOTION for New Trial, 102 MOTION Remittitur of damages or in the alternative a new trial filed by Suffolk County Sheriff's Department. (Simeone, Maria) (Entered: 05/29/2003) |
| 05/27/2003 | 106 | CERTIFICATE OF CONSULTATION re 103 MOTION for Judgment as a Matter of Law, 104 MOTION for Leave to File, 105 Memorandum in Support of Motion, 101 MOTION for New Trial, 102 MOTION Remittitur of damages or in the alternative a new trial by Kathleen M. Cawley on behalf of Suffolk County Sheriff's Department. (Simeone, Maria) (Entered: 05/29/2003) |
| 05/27/2003 | 107 | MOTION for Attorney Fees and costs by Bruce Baron.(Simeone, Maria) (Entered: 05/29/2003) |
| 05/28/2003 | 108 | Corrected AFFIDAVIT of Francis J. Dimento, Jr.. (Simeone, Maria) (Entered: 05/29/2003) |
| 05/30/2003 | | Judge Patti B. Saris : Electronic ORDER entered granting 104 Motion for Leave to File memorandum in excess of 20 pages (Simeone, Maria) (Entered: 05/30/2003) |
| 06/02/2003 | 109 | Judge Patti B. Saris : ORDER entered. Order of Costs entered for Attorney Francis J. DiMento, Jr. in the amount of $859.55. (Alba, Robert) (Entered: 06/02/2003) |
| 06/05/2003 | | Judge Patti B. Saris : ORDER entered granting re 104 MOTION for Leave to File memorandum filed by Suffolk County Sheriff's Department(Simeone, Maria) (Entered: 06/05/2003) |
| 06/10/2003 | 110 | MEMORANDUM in Opposition re 102 MOTION Remittitur of damages or in the alternative a new trial filed by Bruce Baron. (Simeone, Maria) (Entered: 06/12/2003) |
| 06/10/2003 | 111 | MEMORANDUM OF LAW in support of opposition by Bruce Baron to 110 Memorandum in Opposition to Motion. (Simeone, Maria) (Entered: 06/12/2003) |
| 06/17/2003 | 112 | MEMORANDUM in Opposition re 107 MOTION for Attorney Fees filed by Suffolk County Sheriff's Department. (Simeone, Maria) (Entered: 06/18/2003) |
| 11/05/2003 | 113 | Judge Patti B. Saris : ORDER entered MEMORANDUM AND ORDER. For the forgoing reasons, the defts motions 103 motion for judgement 102 motion for damages 101 motion for new trial are denied.(Simeone, Maria) (Entered: 11/06/2003) |
| 11/06/2003 | | Civil Case Terminated. (Simeone, Maria) (Entered: 11/06/2003) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/13/2003 16:49:37 | | | |
| PACER Login: | th0015 | Client Code: | 9771/1 |
| Description: | Docket Report | Case Number: | 1:01-cv-10143-PBS |
| Billable Pages: | 6 | Cost: | 0.42 |

# EXHIBIT B

1                                  VOL: I
                                   PAGES: 1-247
2                                  EXHIBITS: 1-7

3

4                  UNITED STATES DISTRICT COURT

5              FOR THE DISTRICT OF MASSACHUSETTS

6       * * * * * * * * * * * * * * * * *
        SHEILA J. PORTER,              *
7                      Plaintiff       *
                 -vs-                  *   Civil Action
8       ANDREA CABRAL; SUFFOLK COUNTY  *   No. 04-11935-DPW
        SHERIFF'S DEPARTMENT; SUFFOLK  *
9       COUNTY and CORRECTIONAL MEDICAL *
        SERVICES, INC.,                *
10                     Defendants      *
        * * * * * * * * * * * * * * * *
11

12       CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

13

14          DEPOSITION OF VIKTOR THEISS, ESQUIRE, a witness
        called on behalf of the Plaintiff, in the
15       above-captioned matter, said deposition being
        taken pursuant to the Federal Rules of
16       Civil Procedure, before Patricia M.
        McLaughlin, a Certified Shorthand Reporter and
17       Notary Public in and for the Commonwealth of
        Massachusetts, at the offices of Goodwin Procter
18       LLP, Exchange Place, Boston, Massachusetts, on
        Tuesday, May 24, 2005, commencing at 10:05 a.m.

19

20

21

22          McLAUGHLIN & ASSOCIATES COURT REPORTERS
                   92 DEVIR STREET, SUITE 304
23               MALDEN, MASSACHUSETTS 02148
                        781.321.8922
24                  WWW.E-STENOGRAPHER.COM

---

1       APPEARANCES:

2       DAVID S. SCHUMACHER, ESQUIRE

3              and

4       JOSEPH F. SAVAGE, JR., ESQUIRE

5       GOODWIN PROCTER LLP

6       Exchange Place

7       Boston, Massachusetts 02109

8              On behalf of the Plaintiff

9       ELLEN CAULO, ESQUIRE

10      GENERAL COUNSEL

11      Suffolk County Sheriff's Department

12      200 Nashua Street

13      Boston, Massachusetts 02114

14          On behalf of the Defendants,

15          Andrea Cabral, Suffolk County

16          Sheriff's Department and Suffolk

17          County

18      ALEXANDRA B. HARVEY, ESQUIRE

19      ADLER, COHEN, HARVEY, WAKEMAN & GUEKGUEZIAN

20      230 Congress Street

21      Boston, Massachusetts 02110

            On behalf of the Defendant,

            Correctional Medical Services, Inc.

---

                    I N D E X

1   WITNESS         DIRECT   CROSS   REDIRECT   RECROSS

2   VIKTOR THEISS, ESQUIRE

3   By Mr. Schumacher    5

---

| No. | Exhibit | Page |
|-----|---------|------|
| 1 | Memorandum dated June 10, 2003 | 98 |
| 2 | Memorandum dated June 2, 2003 | 46 |
| 3 | Case Summary | 98 |
| 4 | Memorandum dated May 23, 2003 | 103 |
| 5 | E-Mail dated June 11, 2003 | 183 |
| 6 | Memorandum dated May 23, 2003 | 195 |
| 7 | Memorandum dated May 25, 2003 | 200 |

229

```
 1        Sullivan, Gerry Leone and someone else.  I
 2    have no idea who.
 3  Q   The U.S. Attorney was there?
 4  A   Yes.
 5  Q   His first assistant was there?
 6  A   Yes.
 7  Q   Sheriff Cabral was there?
 8  A   Yes.
 9  Q   Various other people were there?
10  A   Yes.
11  Q   And you don't recall anything about this
12    meeting?
13        MS. CAULO:  Objection.
14        MS. HARVEY:  Objection.
15  A   I recall what the topic was about.  I recall
16    Huggard opening up a criminal statute book.
17    I was a pretty small player at that meeting,
18    and the shock of being told we were criminals
19    was pretty huge concerning that that's not
20    what we were told why we were going there
21    for.
22  Q   Were you told that the meeting was going to
23    be for a specific purpose?
24  A   It was related to me that the meeting was to
```

230

```
 1    be about enhancing the relationship between
 2    our two departments.
 3  Q   Who relayed that to you?
 4  A   I can't recall who.  It probably would have
 5    been the Chief of Staff.
 6  Q   Did you participate in any other meetings
 7    with members of the U.S. Attorney's Office or
 8    the FBI --
 9  A   No.
10  Q   -- concerning Mrs. Porter's barring?
11  A   No.
12  Q   When you arrived at the House of Corrections
13    in February, 2003, was there a code of
14    silence at the House of Corrections?
15        MS. CAULO:  Objection.
16  A   Yes and no.
17  Q   Can you explain?
18  A   Yes, in the sense that if you're asking do
19    people come and volunteer and tell us what's
20    going on in the units?  No.  There is not a
21    lot of people running forward to tell us on a
22    daily basis what transpires, both officers
23    and inmates alike.
24        No, in the sense that it didn't strike
```

231

```
 1    me as this pervasively negative atmosphere
 2    where there was a whole separate world going
 3    on that we had no knowledge about and that
 4    people would come in and clam up and say I'm
 5    not saying anything about this.
 6        When we did interviews with officers,
 7    they would respond to our questions.  We
 8    developed a pretty decent relationship with
 9    the union, worked out questioning, and we
10    were getting responses.  It was more like
11    people would answer what you were asking, and
12    if you kind of had your ducks in a row and
13    you had done some homework, people would tell
14    you where they were, what they were doing and
15    what they saw to a pretty decent extent.
16        Would I say it was a hundred percent,
17    where they were giving us everything we asked
18    for?  No.  But it wasn't like in the movies.
19    It wasn't that big a code of silence.  Was it
20    an open atmosphere where officers would run
21    down and tell SID or their captains
22    everything?  No.
23  Q   What do you understand the phrase, code of
24    silence to mean?
```

232

```
 1  A   It means that when people see something or
 2    are aware of something, they won't say
 3    anything at any cost.  When asked, they
 4    deny.
 5  Q   Do you understand that the Stern Commission
 6    report addressed the code of silence that
 7    they believed was present at that time?
 8  A   I do.  I wouldn't deny that there was
 9    something there, but again, I don't feel it
10    was a pervasively evil atmosphere.  I think
11    much of the Stern Commission was accurate,
12    but much of it was inaccurate.  The people
13    that came to evaluate didn't a significant
14    amount of time.  They didn't work the blocks.
15    So it wasn't as bad in some ways, but I'm not
16    going to lie and say that there was nothing
17    there.
18  Q   Do you believe that a piece of the Stern
19    Commission report was not accurate?
20        MS. HARVEY:  Objection.
21        MS. CAULO:  Objection.
22  A   I just answered that there was some accuracy
23    to it.  To say that there was a pervasive
24    code of silence, my opinion when I came on
```

237

```
 1        training, received a makeup academy training
 2        that would give them that basis, and we spend
 3        a tremendous amount of effort educating
 4        officers that it's critical to document, tell
 5        the truth, be a professional.
 6             So in conjunction with aggressive
 7        investigation and aggressive discipline for
 8        failure to, I believe there is a change
 9        occurring.
10   Q    Is it your understanding that retaliation
11        against employees who report other employees
12        misconduct that that was part of the code of
13        silence?
14   A    That would be an essential element to a code
15        of silence.
16             MR. SCHUMACHER:  Could I have five
17        minutes?  I might be done.
18             (Whereupon, a brief recess was held.)
19             MR. SCHUMACHER:  Just a couple of
20        clean-up questions, and then I'll send you on
21        your way.
22        BY MR. SCHUMACHER:
23   Q    The interview that took place between the SID
24        investigators and Mrs. Porter, the first one
```

239

```
 1   Q    What is your understanding what took place
 2        with respect to that topic?
 3   A    Just if she contacted the FBI.  I believe she
 4        knew Krista Snyder, talked to Krista Snyder.
 5   Q    Why would SID want to know whether or not
 6        Mrs. Porter had contacted Miss Snyder?
 7   A    My opinion it was curiosity on the part of
 8        Investigator Dacey and Aleman.  They knew
 9        that the FBI had been contacted, and it
10        wasn't self-evident from whom.
11             She had mentioned in a previous
12        interview, she meaning Porter, that Rene had
13        had some contact with the Federal Government.
14        She brought up the wire on her own on the
15        22nd, so I think it was curiosity.
16             It wasn't a major part of their
17        investigation.  They weren't ordered to do
18        it.  I just think it's curiosity to close out
19        a loop, as you're doing today, and clearly,
20        it was an interesting issue, particularly
21        since what the FBI was coming back to us with
22        didn't match up with what was in the file.
23   Q    Do you recall the SID investigators then
24        report to you with regard to their
```

238

```
 1        on May 22nd, do you know who was present at
 2        that interview?
 3   A    I don't have firsthand knowledge.
 4   Q    You don't know if anyone was there besides
 5        the investigators and Mrs. Porter?
 6   A    I don't.
 7   Q    How about the second interview, the May 25th
 8        interview?
 9   A    I don't.
10             MS. HARVEY:  You mean May 29th.
11             MR. SCHUMACHER:  I think it was May 26th
12        actually, because there were three
13        interviews.
14   Q    You don't remember who was present at those
15        interviews either?
16   A    I don't.
17   Q    Are you aware at the second interview between
18        the SID and Mrs. Porter she was confronted
19        with whether or not she had contacted the FBI
20        concerning the Rosario allegations?
21             MS. CAULO:  Objection.
22   A    I'm not sure if she was confronted.
23   Q    Was that topic discussed?
24   A    Yes, it was in the report.
```

240

```
 1        conversation with Mrs. Porter?
 2   A    If you're asking did they come running to me
 3        and saying we got her, we got her?  No.  I
 4        don't recall them coming to me on it.  I know
 5        it's in the report.  So exactly when I would
 6        have known, I don't recall.  It would have
 7        been shortly thereafter.
 8   Q    So you recall that shortly after that
 9        interview you learned of what Mrs. Porter
10        told the SID investigators that day?
11   A    Correct.
12   Q    With respect to her communications with the
13        FBI?
14   A    Yes.  The case was almost due to be resolved.
15        When they wrapped it up, I reviewed it on
16        June 2nd.  So only a few days later, they
17        were closing it up.  In between the 29th and
18        June 2nd, I would have read that report and
19        talked to them.
20   Q    Did you, in turn, tell either Miss Keeley or
21        Sheriff Cabral anything concerning
22        Mrs. Porter's communications with the FBI?
23   A    Again, I don't recall doing so, but I may
24        have.
```

# EXHIBIT C

**Page 1**

VOL: I
PAGES: 1-202
EXHIBITS: 1-6

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * *
SHEILA J. PORTER,              *
              Plaintiff        *
         -vs-                  *   Civil Action
ANDREA CABRAL; SUFFOLK COUNTY  *   No. 04-11935-DPW
SHERIFF'S DEPARTMENT; SUFFOLK  *
COUNTY and CORRECTIONAL MEDICAL*
SERVICES, INC.,                *
              Defendants       *
* * * * * * * * * * * * * * * *
```

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

DEPOSITION OF ELIZABETH KEELEY, ESQUIRE, a witness called on behalf of the Plaintiff, in the above-captioned matter, said deposition being taken pursuant to the Federal Rules of Civil Procedure, before Patricia M. McLaughlin, a Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, on Wednesday, May 11, 2005, commencing at 10:08 a.m.

McLAUGHLIN & ASSOCIATES COURT REPORTERS
92 DEVIR STREET, SUITE 304
MALDEN, MASSACHUSETTS 02148
781.321.8922
WWW.E-STENOGRAPHER.COM

**Page 3**

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ELIZABETH KEELEY, ESQUIRE | | | | |
| By Mr. Schumacher | 5 | | | |

**Page 2**

APPEARANCES:

DAVID S. SCHUMACHER, ESQUIRE

GOODWIN PROCTER LLP

Exchange Place

Boston, Massachusetts 02109

    On behalf of the Plaintiff

ELLEN CAULO, ESQUIRE

GENERAL COUNSEL

Suffolk County Sheriff's Department

200 Nashua Street

Boston, Massachusetts 02114

    On behalf of the Defendants,

    Andrea Cabral, Suffolk County

    Sheriff's Department and Suffolk

    County

ALEXANDRA B. HARVEY, ESQUIRE

ADLER, COHEN, HARVEY, WAKEMAN & GUERGUEZIAN

230 Congress Street

Boston, Massachusetts 02110

    On behalf of the Defendant,

    Correctional Medical Services, Inc.

**Page 4**

| No. | Exhibit | Page |
|---|---|---|
| 1 | Policy S220 | 78 |
| 2 | Case Summary, dated June 4, 2003 | 112 |
| 3 | Memorandum dated May 29, 2003 | 115 |
| 4 | List of S220 Violations | 143 |
| 5 | Policy S220, revised April, 2005 | 154 |
| 6 | Press Statement | 177 |

17

and I also was told that someone from SID was
speaking with the FBI to get their assistance
in trying to put him somewhere else or have
him be sent somewhere else.

Q   What were the concerns that led Suffolk
employees to believe that he should be
transferred?

MS. CAULO: Objection. Asked and
answered. You may answer.

A   My impression was that someone who was known
as an informant in a correctional facility,
their personal safety could not be assured.
It's like being a snitch. I understood that
he was fairly vocal about his working with
the FBI. So his personal protection would be
a concern.

Q   Were you involved in the efforts to get him
transferred?

A   No.

Q   Who was involved in the efforts to get him
transferred?

A   Exactly, I don't know. I know that Viktor
Theiss spoke to me that he -- and I recall
hearing Stan Wotjonski's name being mentioned

18

as people that were making calls.

Q   So that was reported, but you weren't
directly involved in facilitating getting him
transferred?

A   Correct.

Q   Were any special procedures put in place for
Rene Rosario given his status as a federal
informant?

A   Yes.

Q   What were those?

A   At some point I had a conversation with then
Superintendent Pat Bradley. After I had
heard that Rene Rosario had complained that a
Captain Scoby had threatened him and that he
was -- that he had threatened him. So this
was perhaps a few days after I first learned
of Rene Rosario's presence in the facility.

I spoke with Superintendent Bradley, and
we talked about precautions that we could
take until Rene Rosario was moved. We agreed
that his movements would be videotaped and
there would always be two officers present
with him and their movements and conversation
with him would be videotaped and that

19

1   Captain Scoby would not have any interaction
2   or any reason to be anywhere near Rene
3   Rosario.
4   Q   Did that, in fact, happen?
5   A   It's my understanding that, yes, at some
6   point the videotaping took place.
7   Q   How long did Rene Rosario remain in the
8   facility until he was transferred from that
9   meeting on approximately?
10  A   Well, I don't recall when that conversation
11  took place, but I believe he was moved out
12  around June 11th. So it would have been a
13  week or more, I think.
14  Q   What was the purpose of the recommendations
15  or actions that you took?
16  MS. CAULO: Objection. Asked and
17  answered.
18  Q   You can answer.
19  A   The one about videotaping him?
20  Q   Yes.
21  A   To protect both Rene Rosario and the officers
22  from any concerns about how he was treated or
23  any actions by the officers or Rene Rosario.
24  Q   At some point did you learn that Mr. Rosario

20

1   had made certain allegations of mistreatment
2   by officers in May, 2003?
3   A   Yes.
4   Q   When did you learn of these allegations?
5   A   I don't recall the exact date.
6   Q   Approximately?
7   A   Well, it was after I learned that he was back
8   in the facility, and I would say
9   approximately a week or so after -- well,
10  maybe not a week. Less than a week, but more
11  than, say, a day or two. So maybe between
12  three and five days after learning he was
13  back in the facility, I learned that there
14  had been allegations made by Rene Rosario.
15  Q   How did you learn of these allegations?
16  A   From Viktor Theiss.
17  Q   Was it a meeting that you had with
18  Mr. Theiss?
19  A   I don't recall, no.
20  Q   What did you understand his allegations to
21  be, Mr. Rosario's allegations?
22  A   That a correctional officer or officers --
23  I'm not entirely sure -- had assaulted him.
24  Q   And you had mentioned earlier that he alleged

49

A    What she had expected? I don't recall
     anything.
Q    Did she tell you that she had requested a
     report from Miss Porter?
A    My memory is that the report was requested by
     SID. There may have been a request made by
     Mary Ellen, but I understood this report
     being filed in the context of the SID
     investigation.
Q    When you say the report was requested by SID,
     which person would have requested the report?
A    Whoever was conducting the investigation
     for -- and I don't know which person would
     have asked for the report. I just assumed
     that we had asked for the report, we, SID;
     someone in SID had asked for the report.
Q    Do you have personal knowledge that SID
     requested a report from Mrs. Porter?
A    Do I?
Q    Yes.
A    No.
Q    Do you have personal knowledge -- and I
     apologize if this has been asked already --
     whether or not Miss Mastrorilli requested a

50

     report from Mrs. Porter?
A    Not that I recall.
Q    You know that a report was requested, and you
     believe that it was SID that requested that
     report; is that fair to say?
A    Yes, at some point I also understood that
     Mary Ellen was also looking for the report.
     I thought she was just trying to get the
     report. I didn't know that she was
     specifically involved with asking for the
     report.
Q    Did Viktor Theiss ever tell you that SID had
     requested a report from Miss Porter?
A    I don't have a memory of that, no.
Q    Did Viktor Theiss ever tell you that he
     specifically had requested a report from
     Mrs. Porter?
     MR. SCHUMACHER: Why don't we take a
     five-minute break.
     (Thereupon, a brief recess was held.)
Q    Continuing your conversation with
     Sheriff Cabral, I believe you testified that
     you described for the Sheriff the facts and the

51

1    circumstances of Miss Porter's involvement in
2    the Rosario matter as you understood them; is
3    that correct?
4  A  Correct.
5  Q  What did you relay to her? What were the
6     facts and circumstances as you understood
7     them at that point?
8  A  I understood that Nurse Porter had made
9     observations of Rene Rosario while he was in
10    the infirmary and had reported something
11    about that encounter to the FIB but that she
12    had failed to document the medical file; that
13    she had not timely filed a report as required
14    and requested; that the report contained
15    information about injuries that were
16    inconsistent with what other medical
17    personnel had described and what other people
18    involved in the investigation had described
19    were visible on Rene Rosario. That's what I
20    recall talking to the Sheriff about
21    specifically about the investigation.
22        I'm trying to think if there is anything
23    else. I don't remember whether or not -- I
24    don't remember right now whether or not I

52

1    also spoke to the Sheriff at that time about
2    information that I had learned towards the
3    end of the investigation. It was actually
4    the last bit of information that I heard, but
5    in my mind was significant, and that was that
6    Rene Rosario had in his conversations with
7    people, officers, maybe investigators -- but
8    I think it was officers -- not only talked
9    about his being an informant for the FBI but
10   spoke of Nurse Porter. I recall hearing
11   something to the effect that he spoke
12   publicly to people about her cooperation with
13   the FBI; that she had either wired him or
14   that she was wired on occasion or she was
15   cooperating with the FBI.
16       It was that piece of information that
17   was significant to me in terms of bringing
18   the subject of barment to the Sheriff's
19   attention.
20 Q  So your purpose in relating these facts and
21    circumstances to Sheriff Cabral was based on
22    this last piece of information that you
23    described?
24       MS. CAULO: Objection.

53

A    No, that's why I'm saying I'm not sure that I
spoke to the Sheriff about it. I just know
that, when it came to my attention, that that
information came to my attention about what
Rene Rosario was saying, even though I knew
at that point he was not a credible reporter
and I didn't know that what he was saying was
true, but that if it was heard by people,
that it would put Nurse Porter's personal
safety at issue.

Because I don't recall when the
conversation with the Sheriff -- whether she
initiated the discussion about Nurse Porter
or I did, in my memory what sort of advanced
the decision-making process as to what to do,
that piece of information was important.

Q    So you don't recall whether you initially
brought up Nurse Porter during this
conversation or whether are the Sheriff did?

A    I don't. I honestly don't.

Q    When the topic came up, just to be clear,
what was the purpose for discussing Nurse
Practitioner Porter at that time?

A    Because of the serious nature of the

---

54

violations to decide what action would be
taken.

Q    I believe you testified before that you had
an opinion about what action should be taken;
is that right?

A    Yes.

Q    What was your opinion?

A    My opinion was that we should bar her from
the facility.

Q    And you related that to Sheriff Cabral?

A    Yes.

Q    Did you tell her what that opinion was based
[illegible]

[The following lines are obscured/illegible]
...it was based on what I had just
...the concerns that a nurse would
...a medical file; that that was
...egious; that not documenting
...enteous with what you hear
...ificant, particularly in
...an investigation into
...isconduct or
...al abuse.
...Sheriff Cabral
...involvement

---

55

1        in the Rosario matter?

2            MS. CAULO: Objection.

3    A    I don't know when she became aware. I know

4        that in that conversation she had recently

5        had conversation with Viktor Theiss, and I

6        don't know to what extent Nurse Porter came

7        up in that conversation. But she seemed to

8        be aware of what I was discussing.

9    Q    What did Sheriff Cabral say in response to

10       your opinion?

11   A    I recall at one point she asked me, well, how

12       does that happen; if we are to bar her, how

13       does that happen.

14   Q    What did you say in response?

15   A    My memory is I said that we notify the

16       individual and then a written notice is given

17       to the shift commander.

18   Q    Did she say anything else with regard to

19       Miss Porter at this time?

20   A    I recall that she said that she should be

21       barred.

22   Q    Did she explain why she thought that she

23       should be barred?

24   A    I don't recall what she said. I know we

---

56

1        discussed it, and she articulated her

2        feelings about it. But I don't remember what

3        she said.

4    Q    Was it your understanding that it was your

5        responsibility to carry out the barring?

6    A    Yes.

7    Q    What steps did you take to put that into

8        effect?

9    A    I called Deputy Superintendent Mary Ellen

10       Mastrorilli.

11   Q    Why did you call Miss Mastrorilli?

12   A    Because she would have been the person in the

13       chain of command who would have had oversight

14       over medical. She was in charge of medical

15       at the time. So the CMS employees or

16       contractors would be under her supervision.

17   Q    Did you call Miss Mastrorilli?

18   A    Yes, that is my memory, yes, that I called

19       her and told her that the decision had been

20       made to bar Sheila Porter.

21   Q    How soon did that call take place after your

22       meeting with Sheriff Cabral?

23   A    I don't think it was too much -- I mean, if

24       the conversation with Sheriff Cabral happened

---

61

called Mary Ellen Mastrorilli back.

Q    What transpired during your conversation with Miss Powers?

        MS. CAULO: Objection. Attorney client.

Q    The purpose of your conversation with Miss Powers, was she relating legal advice to you at that time?

        MS. CAULO: Objection.

A    Yes.

Q    After you looked at S220, did you contact Miss Mastrorilli again?

A    Yes, I had it open in front of me. My memory is I picked up the phone, and I called Mary Ellen. And I told her the reasons that she could give or share with Sheila Porter.

Q    What were those reasons?

A    The reasons, as I recall, were she was -- you can tell her she's being barred for violations of S220. I remember that I was flipping through S220 and Section C, which has to do with -- confidential communications was first, so I may have mentioned that first; that she had communicated confidential inmate information outside the department. I

62

flipped through some more pages, and I remember telling her her failure to file a timely report, her failure to document a medical file. And I remember that -- again, I'm not sure of the order, but it was failure to document a medical file, failure to file a timely report.

    I may have mentioned that her failure to file a report -- my memory is that I said this: That failure to file a report interfered with an ongoing investigation; that her report was inconsistent with other reports of what people claim to have seen in terms of injuries to Rene Rosario, so that it was not a credible report.

    I remember hesitating, because I wasn't sure whether I wanted to say this, but I remember pausing. And I said, "And you can share with her that because Rene Rosario has been talking about his role as an informant and he has mentioned her name in the context of cooperating with the FBI, that the department could not assure her personal safety."

63

Q    These were all factors that you related to Miss Mastrorilli during this conversation?

A    Yes, that's my memory of what I said to her.

Q    Did you instruct her to relate this information to Mrs. Porter as the reasons for her barring?

A    I don't think I said "now tell her exactly what I just told you," but she asked me what the reasons were that she could give and that's what I told her.

Q    And these are all included in the reasons that could be related to Miss Porter?

A    Correct.

Q    Do you know if Miss Mastrorilli, in fact, did relay this information to Mrs. Porter?

A    I don't know what she said to her.

Q    Did you have any follow-up conversations with Miss Mastrorilli?

A    I recall having one.

Q    What happened during that follow-up conversation?

A    It was maybe a week or two later. It was after the meeting at the U.S. Attorney's Office. I know that. I asked her,

64

"Mary Ellen, did you write down the reasons that I gave you?" She said no. That was the one and only conversation I have had with Mary Ellen Mastrorilli about this since.

Q    Did you talk about anything else during this final conversation other than whether she documented the reasons that you had provided for her?

A    I don't recall, but I think that was the extent of the conversation.

Q    If I have this right, I've counted four communications with Miss Mastrorilli on or after June 10th. The first was when you called her to tell her to bar Sheila Porter?

A    Yes.

Q    The second was when Miss Mastrorilli called you back to say that Miss Porter wanted to know the reasons why she was barred, and you said you'd get back to her?

A    Correct.

Q    The third was when you called her back after speaking with General Counsel and reviewing S220.

        MS. CAULO: I object. I'm sorry.

129

practice and overall conduct of a person who
is in a trusted position, a medical position,
in a correctional facility, you need to be
able to rely and trust completely in that
person's judgment, the quality of care they
perform. So it wasn't just S220.

Q   Where do you get your understanding of good
medical conduct from?

A   My experience as an attorney, as a
prosecutor, reviewing medical records and
having to present cases in which the
treatment and diagnosis of an individual is
critical to establishing causation.

Q   You don't personally have a medical
background?

A   No, I said that already.

Q   With regard to whether or not Mrs. Porter was
required to report her observations in
Mr. Rosario's medical file, did you consult
any medical or nursing guidelines to
determine if that was required?

A   No, I didn't.

Q   Did you consult with any of CMS's materials
to determine whether or not that was

130

required?

A   When you say that was required, that means to
make notation in a patient's medical file?

Q   Correct.

A   No.

Q   It was based on what your understanding was
of good medical conduct; is that right?

        MS. CAULO: Objection.

A   It was based on the totality of the
circumstances and common sense and
expectation that in a correctional facility,
when inmates allege that they have been
abused and claim to have injuries, that those
need to be documented, not only in a medical
file, but reported immediately. This wasn't
somebody complaining of a toothache. The
accusations that he made were serious, and we
were investigating them. We needed to rely
on everyone's ability to do their job.

Q   A final reason I believe you testified of why
you believe Mrs. Porter should be barred was
because Mr. Rosario had been telling people
that Sheila Porter had cooperated with the
FBI; is that right? Did I get that right?

131

1        MS. CAULO: Objection to the term,
2   reason.
3   A   As I've indicated, it was an additional piece
4       of information that I had that I felt was
5       significant, in that it concerned the
6       department's ability to provide personal
7       safety for Nurse Porter. I didn't know the
8       specifics of what Rene Rosario said, only
9       that I learned that he had said he had been
10      very open about himself being an informant;
11      he was proud of that; he expected something
12      because of it; and that he had spoken
13      publicly about Sheila Porter and her
14      involvement with him and his being wired.
15          Again, as I said before, I don't recall
16      the specifics, but something about either her
17      working with the FBI. Not knowing whether
18      that was true or not, a rumor like that in a
19      correctional facility is extremely
20      problematic.
21  Q   When you say Mr. Rosario was publicly telling
22      people this, what do you mean?
23  A   My understanding -- I heard this from Viktor
24      Theiss -- was that Rene Rosario was talking

132

1       to people during either interviews or any
2       encounters people would be having, staff,
3       correctional officers, whomever was having
4       dealings with him; that he spoke openly about
5       his involvement with the FBI.
6   Q   As well as Mrs. Porter's, correct?
7   A   At some point, yes. I don't know that he did
8       that all along, but at some point -- as I
9       said, it was towards the end of the
10      investigation that I learned.
11  Q   Because of that, you believed that
12      Mrs. Porter's safety might be endangered if
13      people within the corrections environment
14      knew that?
15  A   I thought so, yes.
16  Q   And was this something that you discussed
17      with Sheriff Cabral during your meeting?
18  A   Again, I don't have -- I don't know if I
19      mentioned that or not. My memory is I know
20      that was a factor in my mind. It was a fact.
21      I can't be sure that I shared it with her.
22  Q   But you did share it with Miss Mastrorilli?
23  A   Yes.
24  Q   Would you have been likely to tell