UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>Plaintiff,<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, and SUFFOLK COUNTY<br><br>Defendants. | Civil Action No.04-11935-DPW |

### PLAINTIFF SHEILA PORTER'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S RELATIONSHIP WITH THE FBI

Evidence that Sheila Porter has cooperated with the FBI since 1999 is relevant and properly admissible as to both Mrs. Porter's Section 1983 claim and her defamation claim.

First, evidence that Mrs. Porter had an on-going cooperative relationship with the FBI is necessary to provide context to the jury. In the absence of such evidence, the jury will wonder why Mrs. Porter contacted the FBI upon hearing Rene Rosario's allegations of abuse. Mrs. Porter's on-going cooperative relationship with the FBI explains why Mrs. Porter reported Mr. Rosario's allegations to the FBI. If the jury is not told that Mrs. Porter had an on-going cooperative relationship with the FBI that pre-dated the Cabral administration and only hears evidence that Mrs. Porter "out of the blue" reported Mr. Rosario's abuse to the FBI, they might conclude that Mrs. Porter had an improper motive for reporting, such as a personal vendetta against the defendants, or as Sheriff Cabral already has publicly stated, her own secret and improper agenda. On the other hand, evidence that Mrs. Porter had an on-going cooperative relationship with the FBI explains why Mrs. Porter asked others not to report Mr. Rosario's

LIBA/1663536.1

allegations to SID while she reported to the FBI. Mrs. Porter sought to avoid revealing her long-term cooperation to the new members of SID for fear of retaliation, while at the same time making sure Mr. Rosario's claims of abuse were pointed out to the SCSD.

Moreover, Mrs. Porter's cooperation with the FBI fills in other gaps in the narrative. First, it explains why Steve Jacobs guessed that Mrs. Porter was the cooperator that Christa Snyder identified to Stan Wotjonski and why SID focused its investigation on Mrs. Porter's cooperation. Mary Ellen Mastrorilli had a different view of the policy's application to Mrs. Porter, testifying that, SCSD policy required barring when an individual spoke to an outside agency without prior authorization from SID, but that someone with an on-going relationship with a law enforcement agency was authorized to speak to the outside agency. *See* Deposition of Mary Ellen Mastrorilli sworn to on June 27, 2005, 38:1-19; 84:20-85:9 (Exh. A).

The fact that Mrs. Porter cooperated with the FBI for four years also is relevant to her damages on her Section 1983 claim. Mrs. Porter's testimony will show that she took great pride in, and drew much self-esteem from, the fact that she was helping inmates by cooperating with FBI to fight abuse in the prisons. She viewed this cooperation as part of her duty as a nurse to help protect those in her care. When the defendants barred Mrs. Porter, not only did this strip Mrs. Porter of her job, they also deprived her of the ability to fulfill this duty help protect the inmates, compounding her pain and suffering.[1]

The fact that Mrs. Porter cooperated with the FBI for approximately four years before she was barred also is relevant to her defamation claim. Sheriff Cabral stated that Mrs. Porter was "not a whistleblower." *See* SCSD Press Statement (Exh. B) **get**. As part of her defamation claim, Mrs. Porter has to show that this statement was false. *See Ravnikar v. Bogojavlensky*, 438

---

[1] That defendants did not know of the on-going nature of the relationship does not undermine its relevance for damages purposes because of the egg-shell skull rule. That is, defendants take the plaintiffs they injure as they find

Mass. 627 (2003). That Mrs. Porter had a long-standing cooperative relationship with the FBI proves the falsity of this statement.

Finally, defendants argue that the probative value of this evidence is outweighed by its undue prejudicial effect under Rule 403. The prejudice to defendants, if any, that Mrs. Porter had a history of cooperating with the FBI is minimal. Defendants do not at all make clear what prejudice they may suffer from evidence of Mrs. Porter's long-standing communications with the FBI about topics different from their custom of retaliation. In any event, to the extent there is prejudice, a limiting instruction can cure such prejudice.

## CONCLUSION

WHEREFORE: Defendants' motion in limine to exclude evidence of plaintiff's relationship with the FBI should be denied.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

/s/ Joseph F. Savage, Jr.
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: January 2, 2006

---

them, even if they are not aware of unique circumstances that compound damages.