UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHEILA PORTER

        Plaintiff,

    v.

ANDREA CABRAL, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, and SUFFOLK
COUNTY

        Defendants.

Civil Action No.04-11935-DPW

**PLAINTIFF SHEILA PORTER'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DISCIPLINE IMPOSED UPON
DEPARTMENT EMPLOYEES AND BARMENTS OF NONEMPLOYEES**

Evidence of how Sheriff Cabral disciplined individuals who engaged in conduct that was

similar to, or worse than, the conduct that purportedly lead to Ms. Porter's baring is highly

probative of the true reason that Sheriff Cabral barred Ms. Porter. *See Kauffman v. Puerto Rico

Telephone Co.*, 841 F.2d 1169, 1172 (1st Cir. 1988) (holding that evidence of disparate treatment

of similarly situated individuals, though not dispositive, is relevant to a Section 1983 retaliation

claim).[1] Under *Mt. Healthy*, once Ms. Porter shows that a substantial or motivating reason for

her barring was the exercise of her First Amendment rights, the burden shifts to defendants to

prove that they would have taken the same adverse action even absent the protected activity. *See

Mt. Healthy City Sch. Dist. Bd. of Edu. v. Doyle*, 429 U.S. 274, 287 (1977). Ms. Porter expects

that defendants will attempt to satisfy this burden by pointing to purported reporting errors by

Ms. Porter.

---

[1] Pursuant to this Court's initial ruling, Ms. Porter will not seek to introduce evidence of any discipline that occurred
under prior administrations.

1

In response, Ms. Porter will point to evidence that other individuals who committed reporting errors similar to Ms. Porter's purported errors, but did not engage in First Amendment activity, received far less severe discipline. In addressing the hypothetical situation, raised by the second step of *Mt. Healthy*, of where the defendants would had to decide to permanently bar Ms. Porter even absent her engaging in First Amendment activity, real world evidence of how the Defendants actually treated individuals who engaged in similar purported reporting errors but did not engage in First Amendment activity is extremely probative evidence. Moreover, there is evidence that individuals who engaged in far worse conduct than Ms. Porter received far less severe discipline. Such a discrepancy further suggests that the reason for Ms. Porter's unusually harsh treatment was her First Amendment activity.

As the attached charts, which Ms. Porter intends to introduce, show, thirteen individuals—two contract workers and eleven employees—have been disciplined for reporting errors. (Attached Exh. A, bates nos. 1063-1078, 1589-1597, 1728, 1744, 1702, 1684, 1666-1668, 1674, 1704-1705, 1694-1695, 1767-1768, 1739-1740, and 1750. Of these disciplined employees, all but one received either temporary suspensions, temporary barrings, or written warnings.[2] Indeed, one disciplined contract worker (bates nos. 1063-1078), is very similar to Ms. Porter, except for two relevant differences: she did not engage in First Amendment activity and she was not permanently barred. Rather she received only a three day barring.[3] This is

---

[2] The one other individual who was barred (bates nos. 1589-1597) engaged in substantially more serious misconduct than Ms. Porter. Defendants' accurse Ms. Porter of failing to properly report her encounter with Mr. Rosario, however the physician's assistant who was barred lied in her report. Defendants have never accused Ms. Porter of lying.

[3] Defendants argue that this nurse is not similarly situated because Ms. Porter's report was untimely and backdated, and on the wrong paper. However, the misconduct of the nurse temporarily barred on February 9, 2005, was substantially more egregious—she failed to document a medical encounter at all, and was untruthful during the subsequent investigation. It also should be noted that, contrary to the assertion by defendants, their treatment of this nurse demonstrates that a discipline short of permanent barring was available and employed.

extremely strong evidence that the real reason for Ms. Porter's barring was her First Amendment speech.

Similarly, it is apparent that several employees received lesser punishment for far more serious misconduct. For example, an employee was only given a written warning on January 5 and January 8, 2004 (bates no. 1751), for his involvement in an altercation that lead to injuries, and his subsequent misleading reporting of that incident.[4] A reasonable inference that the jury could draw from this evidence that individuals, who engaged in more severe conduct than Ms. Porter but do not engage in First Amendment activity, received less severe discipline than Ms. Porter is that the cause for the particular harshness of Ms. Porter's discipline was her First Amendment activity.

Defendants argue that, even if evidence of the barring of contract workers is relevant, evidence of discipline taken against employees should not be admitted because such individuals are not similarly situated to Ms. Porter. Defendants claim that, because they faced the prospect of showing "just cause" for any discipline taken against employees, they did not discipline employees under the same circumstances as contract workers. The problem with this argument is that it confuses the fact that there was discipline at all, with the extent of that discipline. Presumably, the "just cause" standard applied to all discipline, not just termination. Therefore, even if the defendants took some disciplinary action short of termination, they faced the prospect of the disciplined employee arbitration under the just cause standard. But Ms. Porter does not claim that no disciplinary action was taken against those who engaged in reporting errors. Rather, she claims that the discipline imposed on others who engaged in reporting violations was significantly less severe. Thus, any deterrence to disciplining an employee for fear of arbitrating

---

[4] It cannot seriously be argued that these incidences were less serious than Ms. Porter's purported offenses, but any such argument should be decided by the jury.

under the just cause standard is not relevant—cause would have to be shown to either bar the employee or to impose less severe discipline.

Moreover, as discussed at greater length in Ms. Porter's initial opposition, while it may be true that there was no contractual obligation to show cause before barring Ms. Porter, once she shows that her First Amendment speech was a substantial or motivating factor in that barring, *Mt. Healthy* requires that defendants make such a showing of cause. In any event, even if defendants were correct, which they are not, at a minimum, Ms. Porter should be permitted to introduce evidence as to the contract workers who have been disciplined.

It should be noted precisely what evidence Ms. Porter seeks to introduce. In addition to the attached charts, Ms. Porter will introduce the actual disciplinary letters issued by defendants. (Attached as Exh. B). During discovery, Ms. Porter requested "[a]ny and all documents concerning other individuals who have engaged in activities similar to those activities engaged in by Mrs. Porter, and who were not terminated and/or barred from the HOC . . . ." Plaintiff's First Request for the Production of Documents to Defendants Andrea Cabral, Suffolk County Sheriff's Department, and Suffolk County, Request No. 29 (Exh. C). The only documents produced were disciplinary letters, and a spreadsheet describing the discipline. Ms. Porter is not aware that any of the disciplined individuals identified above actually brought arbitrations, and even if they did, reference to such a fact would be precluded by defendants' failure to disclose documents from any arbitration it during discovery. Thus, there is no need for inquiry into whether the discipline was appropriate or not.

## CONCLUSION

WHEREFORE: Defendants' motion to exclude evidence of discipline imposed upon department employees and barment of nonemployees should be denied.

5

Respectfully submitted,

SHEILA PORTER

By her attorneys,

*/s/ Joseph F. Savage, Jr.*
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Dated: January 4, 2006
LIBA/1663562.1