# EXHIBIT B
# Part 1 of 2

# EXHIBIT B

**Suffolk County Sheriff's Department**
**Custody Assessment and**
**Program Services Division**
**20 Bradston Street**
**Boston, MA 02118**
**617-635-1000 x6502**

# Memo

**To:**    Front Lobby

**From:** Mary Ellen Mastrorilli, Deputy Superintendent

**Date:** 2/26/2003

**Re:**    Barred from Entering the Facility

---

CMS employee Nurse Chuck Theall is no longer allowed into the facility. If
he attempts to enter, please consider his actions trespassing and follow
standing operating procedures governing such circumstances. Thank you.

CC:    Special Sheriff Bradley
       Deputy Supt. Lockhart
       SID
       Shift Commanders
       Anne Rabbit, Assistant Health Services Director

000762



*F/le*

# Suffolk County Sheriff's Department



**ANDREA J. CABRAL**
**SHERIFF**

|  |  |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**To:**    Mary Ellen Mastrorilli, Deputy Superintendent

**From:**  Vincent A. Morrison, Assistant Deputy Superintendent

**Date:**  February 26, 2003

**Re:**    Nurse Chuck Theall

Mam,

On Tuesday, February 25, 2003, at 1510 hours, I did report to the front lobby to interview nurse Chuck Theall. I then introduced myself, and summoned nurse Theall to an area over by the lockers where there were no people. I informed Mr. Theall that I had heard that he had been in possession of a "stun gun" inside the Institution, up in the Infirmary to be exact. I then asked him if he had brought a "stun gun" into the Institution. His answer was "no". I then asked him if he owned a "stun gun". His reply was "yes I do". I then asked him if he was using a locker in the front lobby, and he informed that he was using one. I asked him if he minded opening his locker for me, and he stated he didn't mind and opened it. There was no "stun gun" in there. I then advised Mr. Theall that I was taking him at his word that he had not introduced a "stun gun" into the Institution, but that this matter would be further investigated. Mr. Theall was then authorized by me to report to work in Medical.

Respectfully submitted,

*Vincent A. Morrison*

Cc: Viktor Theiss

000763

## INTEROFFICE MEMORANDUM

**TO:**       SECURITY PERSONNEL

**FROM:**    ADS JULIE WHITE  *Julie White*

**SUBJECT:** NURSE ANNE RABBITT

**DATE:**    2/11/2005

**CC:**      SUPERINTENDENT GERARD HORGAN, DEPUTY SUPERINTENDENT STEVE JACOBS, AND
             DEPUTY SUPERINTENDENT GERRRY WALSH

---

Please be advised that Nurse Anne Rabbitt is barred from the Suffolk County House of Correction until further notice.

001063



# Suffolk County Sheriff's Department



**ANDREA J. CABRAL**
SHERIFF

**Jail**
200 Nashua Street
Boston, MA 02114
(617) 635-1100

**House of Correction**
20 Bradston Street
Boston, MA 02118
(617) 635-1000

March 8, 2005

**To:**     Front Lobby
Central Control

**From:**   Gerald Walsh, Deputy Superintendent

**Date:**   March 8th, 2005

**Subj:**   Barred from Entrance

Effective immediately and until further notice, Anne Rabbitt is not allowed to enter the facility.
Thank you for your attention to this matter.

cc:  Elizabeth Keeley, Chief of Staff
Gerard J. Horgan, Superintendent
Steve Jacobs, Deputy Superintendent
Shift Commanders

001064



# Suffolk County Sheriff's Department



|  |  |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**

February 16, 2005

John Hewit-Morey
Health Service Administrator
Correction Medical Services
South Bay House of Correction

Dear HSA Hewitt-Morey,

This letter serves as notice that RN Anne Rabbitt was barred from the Suffolk County House of Correction for three days for her actions on February 9, 2005 and for being disingenuous during the course of an internal investigation thereafter.

On that date, Nurse Rabbitt, against standard practice, housed an inmate in the medical unit and failed to notify the medical director. Nurse Rabbitt also failed to document any information related to her decision and interaction with the inmate. During the course of the investigation, Nurse Rabbitt was not truthful in her statements about her attempts to contact the medical director, nor did she properly explain her failure to contact the HSA. She was given repeated opportunities to correctly report her actions. She failed to do so. Her failure to accurately report her actions caused a continuation of an investigation that resulted in a disruption to the operation of the facility.

Nurse Rabbitt was barred from the facility February 14-16, 2005.

Any future unprofessional behavior such as this will result in her being permanently banned from the Suffolk County House of Correction.

Sincerely,

*Gerald Walsh*

Gerald Walsh
Deputy Superintendent

cc:    Elizabeth Keeley, Chief of Staff
       Gerard Horgan, Superintendent
       Steve Jacobs, Deputy Superintendent
       Julie White, Assistant Deputy Superintendent

001065

To:     File
From:   G.Walsh
Date:   2/11/04
Re:     Anne Rabbitt

**Issue**

On Friday, February 11, 2005, ADS Julie White spoke with me about allegations made by custody staff about the behavior of RN Anne Rabbitt. ADS White stated that an officer informed her that RN Rabbitt was overly involved with inmate ███████ when he came back from the Brook House. ADS White stated that she witnessed RN Rabbitt meet with Lt Charlie Walsh and CO McLaughlin for over twenty minutes about Inmate ███████. ADS White expressed her concern because she reported that she had previously spoke to RN Rabbitt about inappropriate contact with Inmate ███████. She also stated the RN Rabbitt has been under investigation for similar behavior. Lt. Walsh had removed Inmate ███████ from the Brook House on Wednesday evening. Inmate ███████ was under investigation for attempting to purchase drugs at the OCC.

ADS White also stated that Inmate ███████ was housed in the medical unit without the proper procedure being followed.

**Investigation**

I requested that Deputy Superintendent Steve Jacobs join us in my office. Deputy Jacobs and I spoke with CO McLaughlin via the telephone concerning his meeting with RN Rabbitt. He stated that RN Rabbitt sought him out in his office to inquire about Inmate ███████. CO McLaughlin stated that RN Rabbitt spoke with LT Walsh.

I called Lt. Walsh to inquire if he had spoke to RN Rabbitt. He stated that he did. I asked what was it about. Lt Walsh stated that they spoke for 5 minutes and it was about Inmate ███████'s meds.

I called H SA John Hewitt-Morey and asked him to join us in my office. I asked HSA Hewitt-Morey to explain how an inmate gets housed in the medical unit. He stated that the Doctor is the only one who can approve an inmate to be housed in the medical unit. If a nurse thinks that an inmate warrants housing in the infirmary they have to speak with the Doctor. They are to page the Doctor when he is offsite. If they cannot reach the Doctor, they are to page the HSA.

I requested a copy off Inmate ███████'s medical records. HSA Morey explained that there is not a notation in the medical record indicating who moved Inmate ███████ to the infirmary, nor is there a reference to the doctor approving the move.

Nurse Betty O'Reilly was the booking nurse on Feb. 9, 2005. I spoke with her in my office along with Deputy Jacobs, ADS White, and H SA Hewitt-Morey. I asked her about Inmate ███████. She stated that he requested to speak with Nurse Rabbitt during the medical intake. She stated that Nurse Rabbitt came to the booking room and spoke

with Inmate ▇▇▇▇. Nurse O'Reilly stated that although the conversation took place in her presence she did not recall what the conversation was about. She thought it was about why he was back at the HOC. I asked Nurse O'Reilly if she sent Inmate ▇▇▇▇ to the infirmary and she stated that she did not. She did state that Nurse Craig Meekins called her later in the evening and asked why Inmate ▇▇▇▇ was in the infirmary. She stated that she told Nurse Meekins she did not know why Inmate ▇▇▇▇ was housed in the infirmary. I asked Nurse O'Reilly if she thought that Inmate ▇▇▇▇ needed to be housed in the infirmary and she stated that she did not think he did.

We called Nurse Meekins to my office. I asked him if he knew why inmate ▇▇▇▇ was in the infirmary and he stated that he had no idea and that there was nothing in the chart.

Deputy Jacobs and I called Lt Walsh. We asked if he placed Inmate ▇▇▇▇ in the infirmary. He stated he did not. He stated that RN Rabbitt told him she was placing Inmate ▇▇▇▇ in the infirmary because of his high blood pressure. He stated he told her to do what you have to do, he (Lt. Walsh) could not make medical calls.

I asked HS A Hewitt-Morey to request a report from RN Rabbitt. In her report she stated that she placed Inmate ▇▇▇▇ in the infirmary. She stated to Superintendent Horgan that she had tried to reach Dr. Silvignoli and he did not return her page.

Deputy Jacobs and I spoke with Dr. Michaud via the telephone. Dr. Michaud was on duty at the time Inmate ▇▇▇▇ entered the infirmary. He stated that RN Rabbitt spoke with him about Inmate ▇▇▇▇'s medication. He stated that she did not mention his housing and that Inmate ▇▇▇▇ was already in the infirmary when she spoke with him.

HSA Hewitt-Morey spoke with Dr. Silvignoli about Inmate ▇▇▇▇. Dr. Silvignoli stated that he did not receive a page from RN Rabbitt about Inmate ▇▇▇▇.

I called RN Rabbitt in my office in the presence of HS A Hewitt-Morey. I asked her about her statement to Superintendent Horgan. She stated that she paged Dr. Silvignoli and he did not get back to her. I informed her that Dr. Silvignoli stated that he did not receive a page from her. She insisted that she paged him. I asked her which phone she called him from. She stated she paged him from x2272. I asked her if she was sure. She stated that she was sure.

On February 14, 2005, I called Brian Onessimo and requested he run the phone record from x2272 for the date in question. He did and Dr. Sivignoli's phone number was not on the record.

I went to HSA Hewitt-Morey's office and called RN Rabbitt again, hoping she would be more truthful. In speaking with RN Rabbitt, I informed her that I ran the phone record from x2272. I gave her a chance to make the record clear. She insisted that she paged Dr. Silvignoli. I asked if she could have mistaken the phone extension. She stated that she did not.

I called Brain Onessimo back and had him run both Dr. Silvignoli's numbers (1-800-957-1017 and 1-781-727-5865) for the whole institution. His number came up twice. It was called from the booking room med station (x2145) at 18:25 and 22:35. I asked HSA Hewitt-Morey for RN Rabbitt's time sheet for Feb. 9th. The time sheet indicates that RN Rabbitt left work at 5:45. I went to the booking room and spoke with Nurse O'Reilly. She stated that she made those calls to Dr. Silvignoli concerning other inmates.

On Wednesday, February 16, 2005, Deputy Jacobs and I interviewed Inmate ███ in SID. Inmate ████ was concerned about his return to the HOC from the Brook House and a recent drug test that he failed. He is very intelligent, well spoken, and had great attention to detail. He remembered the content and the name of the person he spoke to in every conversation he had concerning his return from the Brook House. He mentioned Lt. Walsh, Donnie Lewis, Nurse O'Reilly, CO McLaughlin, Nurse Meekins, Major Defazio, Lt. Julius, and CO Shea. The only person he did not mention was RN Rabbitt. We gave him numerous chances to mention her name. He did not, until we mentioned that she stated she spoke with him. He stated that he spoke with her about his blood pressure. He stated that he did not know why he was put in medical. He stated that he knew his medical condition and he felt it did not warrant being housed in the infirmary.

## Conclusion

There was no evidence of inappropriate contact involving Inmate ████ and RN Rabiitt.

However, I feel she was overly involved with this inmate when he came back from the Brook House. Lt. Walsh brought back his medication. She did not need to meet with him about anything else. She also should not go to the booking room just because an inmate requests to see her. If she is going to get involved medically the she should document her actions in his chart. She moved the inmate to the infirmary and did not follow the regular CMS practice. She did not page the doctor nor did she call the HSA. She lied to the department about this. She was given three opportunities to set the record straight and did not do so. (Her report and two conversations with me) She did not document any of her involvement in the medical charts. Her action caused Deputy Jacobs and I investigate this matter more than it warranted.

I recommend a three-day barring and that she be put on notice that any more of this type of behavior will result in a permanent ban.

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 1 of 5

TO: _Spec Sheriff Guard Hargon_

FROM: _Anna Rabbitt_ Dept Supt Walsh
John Hunt Nancy

DATE: _2/11/05_

SUBJECT: _____

on 2/9 I was called down
to the Booking area by nurse
Betty O'Reilly re ▓▓▓▓▓▓▓
and his complaints about his
inmates. I told me ▓▓▓▓▓▓
that he would have to see
the nurse practioner in the
morning. at all times nurse
Betty O'Reilly was with me. I
ashed if he was committed
back to BCHOC or what was
going on, as it was probably
4:30pm and I needed to get
his meds. Betty O'Reilly told
me that Lt. Walsh had brought
his meds back & left them
in the infirmary. I then left
the Booking area and went
to speak to Lt Walsh in his

001069

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 2 of 5

TO: _____

FROM: _____

DATE: _____

SUBJECT: _____

office with Deputy Mc Laughlin
I asked Lt. Walsh what the
status with Mr. ▇▇▇▇ was,
as he was very angry down
in Booking and when Betty
and his fingerstick it was
283 or around that. I also told
told Lt. Walsh that Mr. ▇▇▇▇
has a history of high blood pressure
and should we put him in
the MHU for the night. as I
didn't want to interfer with
any security issues. Lt. Walsh
agreed and I called officer
Laughlin and told him that Mr.
▇▇▇▇ was to be put in the
MHU.

On 2/10 at approx 9pm I
received a page from

001070

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 3 of 5

TO: _____

FROM: _____

DATE: _____

SUBJECT: _____

Nurse Jen Butler stating that Mr ████ had been giving her a hard time re: the need for his TB shot. She stated that Mr ████ stated he tested positive and would take the TB injection. I told Jenifer not to worry to put him in for a CXR for the am.

On 3/11/05 at approx 8:30 AM/9am I called Lt Walsh and told him what had happened the night before and that Mr ████ needed a CXR. Lt Walsh told me to go ahead with the chest x-ray and he would be in, in approx 45 minutes I then went to Officer Pete Daly and asked if Mr ████ could be brought down. Mr ████ came

001071

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 4 of 5

TO: _____

FROM: _____

DATE: _____

SUBJECT: _____

down from 162. & sat In
front of the appeccs panel. I
asked Mr ████ why he had
given the nurse Jim Butler a
hard time as he knew he had
to get a T.B shot that it was
the protocol for all Inmates, that
we were not singling him
out. I then turned around and
continued ordering meds for
the Half Way House. Appeal 10 min
later Lt Walsh came to me and
stated that Mr ████ would
be staying here till monday
and he would be going to C.W.P.
I turned to nurse Karen Naughton
and asked if she would
transfer Mr. ████ meds to

001072

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 5 of 5

TO: _____

FROM: _____

DATE: _____

SUBJECT: _____

alone or Spoke to Mr. ███████
without a witness

Anne Ranisstin

001073

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page _1_ of _2_

TO: _____JOHN HEWITT - MERCY HSA_____

FROM: _____CRAIG D MCELLISON_____

DATE: _____2/14/05_____

SUBJECT: _____███████████_____

ON 2/9/05 AT APPROXIMATELY 5²⁵PM, INMATE ████ ████ WAS ADMITTED TO THE INFIRMARY AFTER BEING RETURNED TO HELLMAR CUSTODY FROM THE BROOK HOUSE.

WHEN I SAW I/M ████ , I CALLED THE BOOKING NURSE, BETTY O'REILLY RN, TO FIND OUT WHAT HIS STATUS WAS. SHE STATED THAT I/M ████ DURING HIS INTERVIEW, STARTED BECOMING VERY DEMANDING REGARDING MEDICAL NEEDS AND THAT HE WAS ADAMANTLY COMPLAINING ABOUT BEING RETURNED TO SCHOC.

NURSE O'REILLY THEN TOLD ME, THAT SHE HAD TOLD I/M ████ THAT THERE WAS NOTHING SPECIAL THAT SHE COULD DO REGARDING I/M ████ 'S MEDICAL ISSUES AND WHAT SHE WOULD DO IS GET HIS MEDICATION STARTED AND HIS INTERVIEW COMPLETED. NURSE O'REILLY TOLD ME THAT THE INMATE THEN REQUESTED TO SEE ANNE RABBETT DON. NURSE O'REILLY THEN NOTIFIED ANNE RABBETT, WHO THEN CAME TO BOOKING. RN ANNE RABBETT THEN CAME TO BOOKING TO ADDRESS I/M ████ 001074

AFTER I GOT OFF THE TELEPHONE WITH NURSE O'REILLY,

# SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page 2 of 2

TO: JOHN HOWITT - MEDICAL HSA

FROM: CRAIG N. ROGERS LPN

DATE: 2/14/05

SUBJECT: ███████████████████

HER WHY THE INMATE WAS IN MEDICAL. SHE STATED IT WAS
A JOINT CUSTODY/MEDICAL DECISION. SHE STATED THAT HE WOULD
BE THERE ONLY UNTIL THE FOLLOWING DAY.

LATER IN THE EVENING MAJOR DEFAZIO CAME INTO
THE INFIRMARY. HE AND I DISCUSSED I/M ██████ AND
HE INQUIRED IF THERE WAS ENOUGH SPACE IN THE INFIRMARY
TO HOUSE ██████ OVERNIGHT? HE WENT ON TO SAY THAT IF
THERE WASN'T ENOUGH ROOM, HE WOULD MOVE HER NOW. I
TOLD MAJOR DEFAZIO THAT THERE WAS MORE THAN ENOUGH
ROOM AND THAT IT WAS OK WITH ME IF I/M ██████ WAS
THERE OVERNIGHT. I/M ██████ WAS ADMITTED IN CELL # 12.
——————— END OF REPORT ———————

001075

## SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page ____ of ____

TO: John Morey-Hewitt

FROM: Betty O'Reilly

DATE: 2/14/05

SUBJECT: I/m ▓▓▓▓▓                                        page I

On Feb 9, 05 this nurse was working booking when I/m ▓▓▓▓
came in as a return from Brook House. I/m ▓▓▓▓ was
in holding cell across from booking room, he was yelling
to me about his sneakers/bottom bunk slips I went to
the window of cell and asked I/m ▓▓▓▓ to stop
yelling to me he would get his turn speaking to me.
An officer came in and stated I/m ▓▓▓▓ would be
going to seg. When I/m ▓▓▓▓ came in to nurses
room I wrote the information about seg on the Housing
sheet I/m ▓▓▓▓ started to bombard me with
questions about permission slips for sneakers/bottom bunk
I told I/m ▓▓▓▓ to look around at posted
walls no permission slip are given at intakes
they would be given at physicals I/m ▓▓▓▓ then started
about how this return was "bullshit" he was
set up by ( ) I tried doing intake I/m      00107₆
( ▓▓▓▓ ) would answer a question then continue
getting upset about being here and his sneakers

## SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page_____ of_____

TO: John Morey-Hewitt

FROM: Betty O'Reilly

DATE: 2/14/05

SUBJECT: I/m ███████                                    page II

I wasn't sure how to handle this situation
So I called my supervisor Anne Rabbit. Explained
the situation. Nurse Rabbit came down spoke
with I/m ███████ about permission slips
and his return. Nurse Rabbit before
leaving instructed me to continue with the
intake. Finishing intake I sent I/m
███████ back to his waiting cell and asked
to send the next I/m in. Nurse Craig Mekins
called booking later and asked why I
sent I/m ███████ to infirmary I
Stated I did not and I had know
idea why he was there.



# Suffolk County Sheriff's Department



| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**

**To:** *Deputy Superintendent Gerald Walsh*
**From:** *Lieutenant Charles D. Walsh-Field Supervision Unit*
**Date:** *February 14, 2005*
**Subject:** *RTHC Inmate* ▉▉▉▉ *#* ▉▉▉*/Nurse Anne Rabbitt*
*(Per your request)*

*Deputy Superintendent Gerald Walsh:*

  *On Wednesday February 09, 2005 Deputy Joseph McLaughlin and I returned inmate* ▉▉▉▉ *#* ▉▉▉ *from the Brooke House to the Suffolk County House of Correction at 03:50PM. Inmate* ▉▉▉*'s medication was also transported; I notified, Nurse Betty O'Reilly (in Booking) that the medication was here and would be turned into Medical in the Infirmary.*

  *At approximately 5:00PM, while Deputy McLaughlin and I were writing reports relative to the RTHC, Nurse Anne Rabbitt appeared at my officer Door Unit 121 area #12. I motioned for her to enter; she advised me that inmate* ▉▉▉ *has high blood pressure and may need to be admitted to the Infirmary. I advised her that I had returned all his medication from the Brooke House and turned it over to Medical; I further advised her that Medical takes precedence, stating, "if you need to admit him, do what you have to do". At this point Nurse Rabbit left the office area. Our conversation lasted approximately five (5) minutes.*

*Respectfully submitted,*

*Lt Charles D Walsh '76*

*Lieutenant Charles D. Walsh #76*
*Field Supervision Unit*

001078

03/02/2013 17:40 FAX                                                  ☑001/001



# Suffolk County Sheriff's Department



**ANDREA J. CABRAL**
SHERIFF

| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

April 29th, 2005

**To:**     Front Lobby
            Central Control

**From:**   Gerald Walsh, Deputy Superintendent

**Date:**   April 29th, 2005

**Subj:**   Barred from Entrance

---

Effective immediately Nurse Stacy Watson is not allowed to enter the facility.
Thank you for your attention to this matter.

cc:  Elizabeth Keeley, Chief of Staff
     Gerard J. Horgan, Superintendent
     Steve Jacobs, Deputy Superintendent
     Julie White, ADS
     Shift Commanders

001137

To: Gerry Walsh, Deputy Superintendent.

From: Michael Powers, Captain

Date: April 27, 2005

Re: LPN Stacey Watson

Sir,

On Wednesday April 27, 2005 I was informed by Sgt. Bernis that Officer Peter Daly assigned to the clinic area, witnessed LPN Stacey Watson pass contraband to inmate ███████ #██████. Please refer to the reports submitted by staff.

Respectfully Submitted

Michael Powers, Captain #4

001138

TO: CAPTAIN POWERS 7-3 SHIFT COMMANDER
FROM: LT. DOWD SERT SUPERVISOR
DATE: 04-27-05
RE: INMATE ███████ # ████

      SIR, ON WEDNESDAY 04-27-05, AT APPROXIMATELY
8:00A.M. I DID RECEIVE A PHONE CALL FROM THE INFIRMARY SUPERVISOR
SGT.BEMIS WHO DID INFORM ME THAT HE RECEIVED INFORMATION THAT
INMATE ██████████ # ████ 42-44 MAY HAVE RECEIVED
CONTRABAND FROM SOMEONE EMPLOYED WITH THE MEDICAL STAFF.
INMATE ████ IS A DETAIL WORKER ASSIGNED TO CLEAN THE
INFIRMARY.

      AT APPROXIMATELY 8:40A.M. INMATE ████ DID LEAVE
THE INFIRMARY AND WALKED BACK TO BUILDING FOUR. WHEN INMATE
████ DID ARRIVE AT THE COURTYARD TRAP I DID APPROACH HIM AND
ORDERED HIM TO PRODUCE HIS IDENTIFICATION CARD AND TO TURN
AROUND AND PLACE HIS HANDS BEHIND HIS BACK. INMATE ████ WAS
SECURED IN HANDCUFFS BY LT. DOWD AND WAS ESCORTED TO THE
DINING HALL AREA IN BUILDING FOUR BY SERT 3 SGT.HEALY, OFFICER
CREAMER AND LT.DOWD.

      INMATE ████ WAS SEARCHED BY SGT. HEALY AND
OFFICER CREAMER AND WAS FOUND TO BE IN POSSESSION OF 1
CIGARETTE. WHEN QUESTIONED ON WHERE HE GOT THE CIGARETTE,
INMATE ████ DID STATE THAT HE FOUND IT AT THE BOTTOM OF THE
INFIRMARY STAIRS THAT LEAD TO BUILDING THREE YARD. INMATE ████
WAS ALSO FOUND BY LT. JULIUS TO BE IN POSSESSION OF 1 STORE
BOUGHT BOOK. THESE ITEMS WERE CONFISCATED AND SECURED IN YOUR
OFFICE. INMATE ████ WAS ESCORTED TO 141-03 AND SECURED IN CELL 3
WITHOUT FURTHER INCIDENT. INMATE ████ DID SUBMIT TO A URINE
TEST ALL RESULTS ARE NEGATIVE. INMATE ████ NOTIFIED OF RESULTS.

LT.DOWD
04-27-05

001139

SUFFOLK COUNTY SHERIFFS DEPARTMENT
SUFFOLK COUNTY HOUSE OF CORRECTION
INCIDENT REPORT

TO: CAPT. M. POWERS

FROM: LT. O. JULIUS

DATE: 27 APRIL 2005

SUBJECT: I/M █████████ #█████

      SIR, ON WEDNESDAY 27 APRIL 2005 AT APPROX. 8:40AM I LT.
O. JULIUS WORKING AS THE BUILDING #03 SUPERVISOR WAS STANDING IN
THE B-3 YARD MONITORING I/M MOVEMENT WHEN I WAS APPROACHED
BY SERT SUPERVISOR LT. W. DOWD. LT. DOWD REQUESTED MY
ASSISTANCE IN THE SEARCH OF AN I/M.

LT. DOWD INFORMED ME HE HAD RECEIVED INFORMATION FROM THE
INFIRMARY SUPERVISOR SGT. J. BEMIS IN REGARDS TO AN INFIRMARY
DETAIL I/M █████████ #██████ 42-44 POSSIBLY RECEIVING SOME TYPE
OF CONTRABAND FROM A NURSE WHILE ON HIS DETAIL IN THE
INFIRMARY. HE FURTHER STATED THAT THE I/M WAS RETURNING TO HIS
UNIT AND HE WOULD BE STOPPING HIM AT THE PEDESTRIAN TRAP.

AT THIS TIME I/M █████ DID ENTER THE TRAP AREA AND I ALONG WITH
LT. DOWD DID STOP AND QUESTION I/M █████. FOR SECURITY REASONS
LT. DOWD DID PLACE I/M █████ IN RESTRAINTS. AS THIS WAS OCCURING I
DID OBSERVE A PAPERBACK BOOK IN THE POSSESSION OF I/M █████ AND
TOOK IT FROM HIM. HE WAS THEN SECURED IN RESTRAINTS WITHOUT
ANY RESISTANCE FROM HIM.

UPON INSPECTION OF THE BOOK I OBSERVED IT IN WHAT APPEARED TO
BE BRAND NEW STORE BOUGHT CONDITION, WITH A TWELVE (12) DOLLAR
STICKER PRICE ON THE COVER AND TITLED "AROUND THE WAY GIRLS".
UPON LOOKING INSIDE I DID OBSERVE TWO (2) ANTI-THEFT TAGS ONE
ATTATCHED TO A PAGE SOMEWHERE IN THE MIDDLE OF THE BOOK AND
THE OTHER ONE ON THE INSIDE OF THE BACK COVER.

WHEN QUESTIONED BY ME IN REGARDS AS TO HOW HE (I/M █████) CAME
INTO POSSESSION OF THIS BOOK HE INFORMED ME HE HAD TAKEN FROM
THE INFIRMARY TELEVISION ROOM. I/M █████ WAS THEN ESCORTED TO
THE B-4 DINNING HALL WHERE HE WAS STRIPPED SEARCHED BY SERT #03
OFFICERS CPL. T. HEALY AND C/O J. CREAMER IN THE PRESENCE OF LT
DOWD AND I. DURING THIS SEARCH THEY DID DISCOVER ONE (1)

NEWPORT CIGARETTE IN ONE OF THE SOCKS OF I/M ▮▮▮. THIS
CONTRABAND ALONG WITH THE BOOK WERE PLACED IN AN EVIDENCE
BAG AND TURNED INTO THE WATCHCOMMANDER CAPT. M. POWERS.

UPON FURTHER INVESTIGATION I CONTACTED AND WAS INFORMED BY
INFIMARY OFFICER C/O P. DALY THAT EARLIER HE HAD OBSERVED
PRISON HEALTH SERVICES NURSE STACY WATSON IN EXAM ROOM #04
HAND WHAT APPEARED TO BE A PAPERBACK BOOK TO I/M ▮▮▮, WHO
UPON RECEIPT OF THIS BOOK PLACED IT UNDER HIS UNIFORM SHIRT,
EXITED THE EXAM ROOM WRAPPED THE BOOK IN WHAT APPEARED TO BE
A PLASTIC TRASH BAG AND STORED IT ON THE CLEANING CART.  OFFICER
DALY MOMENTS LATER WENT AND SEARCHED THE CLEANING CART BUT
DID NOT FIND THAT OR ANY OTHER BOOK.  HE THEN RELAYED THIS
INFORMATION TO SGT. BEMIS WHO THEN CONTACTED LT. DOWD HENCE
THE SEARCH AND DISCOVERY OF THIS CONTRABAND.

LT. OWEN F. JULIUS

#74

001141



# Suffolk County Sheriff's Department

**Jail**
200 Nashua Street
Boston, MA 02114
(617) 635-1100

**House of Correction**
20 Bradston Street
Boston, MA 02118
(617) 635-1000

**ANDREA J. CABRAL**
**SHERIFF**

To : SgT. Bemis

From : PeTer Daly

SubjecT: ███████ ( ██████ )

Sir,

ON Wednesday April 27th, 2005 AT Approx 8:10 am While Assigned To The Infirmary, IIm ████████ ( ██████ ) From UniT 4-2, was in Exam 4 Doing His DeTail, AT that Time Nurse STacy WATson was in the Room sitting at the Desk doing Her Paper work. I observed IIm ███ Begin Talking To Nurse WATson and while Talking, Nurse WATson Passed what Appeared To be A Book To IIm ████████, IIm ██████ aT That Time wrapped The Book in A PlasTic Bag and walked ouT of The Room down The Corridor and Placed The PlasTic Bag on The Cleaning Cart and LefT iT There. When His DeTail was Completed He wheeled The Cart inTo The Storage Closet. SgT. Bemis was NoTified.

001142

Respectfully SubmiTTed



# Suffolk County Sheriff's Department



| | |
|---|---|
| **Jail**<br>200 Nashua Street<br>Boston, MA 02114<br>(617) 635-1100 | **House of Correction**<br>20 Bradston Street<br>Boston, MA 02118<br>(617) 635-1000 |

ANDREA J. CABRAL
SHERIFF

1 OF 2

TO: CAPT. M. POWERS

FROM: SGT J. BEMIS

DATE: APRIL 27, 05

SUBJECT: INMATE ███████
         # ██████



SIR,

    AT APPROX 8:20 AM, ABOVE DATE, C.O. PETER DALY INFORMED ME THAT, SEVERAL MINUTES EARLIER, HE OBSERVED NURSE STACY WATSON PASS INMATE ████ A BOOK. THIS EXCHANGE TOOK PLACE IN EXAM ROOM #4. OFFICER DALY MONITORED INMATE ████'S ACTIONS IMMEDIATLY THEREAFTER, AND OBSERVED INMATE ████ PLACE THE BOOK ON HIS CLEANING CART. C.O. DALY NOTIFIED ME AT THIS TIME, AND AS NOT TO AROUSE SUSPICION, WE ALLOWED THE INMATE TO COMPLETE HIS ASSIGNED DETAIL. AFTER HIS CLEANING CART WAS PUT AWAY AND HIS DETAIL WAS COMPLETE, HE REPORTED TO ME TO STATE THAT HE WAS RETURNING TO BLDG #4. THROUGH LT. DOWD. I PRE-ARRANGED THAT



## Suffolk County Sheriff's Department



**Jail**
200 Nashua Street
Boston, MA 02114
(617) 635-1100

**House of Correction**
20 Bradston Street
Boston, MA 02118
(617) 635-1000

ANDREA J. CABRAL
SHERIFF

2 of 2

INMATE ▮▮▮ GOT INTERCEPTED AT THE COURTYARD TRAP AND SEARCHED FOR CONTRABAND. AS A RESULT, INMATE ▮▮▮ WAS FOUND TO BE IN POSSESSION OF A BOOK AND A CIGARETTE. THE BOOK BEING STORE BOUGHT AND NOT BELONGING TO THE INSTITUTION. INMATE ▮▮▮ WAS THEN ESCORTED, VIA SERT, TO A SEGREGATION UNIT.

RESPECTFULLY,

G.E. ~~~ #351

001144



## Suffolk County Sheriff's Department

|  |  |
|---|---|
| Jail | House of Correction |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF



TO: LT. DOWD

FROM: SERGEANT T. HEALY

RE: I/m ▆▆▆▆▆▆
(# ▆▆▆▆ )

DATE: 4/27/05

Sir,

Per your request, my partner (Deputy Creamer) and I were called over to the courtyard trap where I/m ▆▆▆▆▆▆ was already handcuffed and awaiting us to strip search him. We brought him into the building & Dining Hall and proceeded to strip search him. While during the strip search we found one Newport light cigarette and a brand new book. I/m stated that he found the book in the Dayroom of the infirmary and the cigarette was found by the Dumpster by the infirmary stairs. I/m was then escorted to the Segregation Unit (1-4-2 #3) without further incident.

Respectfully Submitted,

Thomas A. Healy

001145



# Suffolk County Sheriff's Department



| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF



To LT B. Dowd
From c/o J. Creamer
Date 4/27/05

Sir at approxamcily 8:40am myself and Sgt T. Healy were ordered by you to strip Im ▇▇▇▇. upon conducting the strip search inmate ▇▇▇ was found in possesion of one Newport Light cisagretto and also one new book. Inmate ▇▇▇ was placed in hand restrianis and removed from the Bld. y Dining Hall and placed in unit 1.4.1 cell 3 without further incident.

Respectfuly Submitted

c/o J. Creamer #442

001140



Page __1__ of __1__

## Suffolk County Sheriff's Department
### Disciplinary Report

D- Report #: _____

Inmate's Name: ████████████████

Booking #: ██████████

*Name (Please Print)*

Date of Offense: __04__ / __27__ /200 __5__   Time of Incident : __8:45__ (AM) or PM   Incident Location : __Courtyard Trap__

*(circle one)*

Disciplinary Code Violation(s): __5D, 7B, 8C__

**Description of Offense**   H.O.C. ☒   Jail ☐

ON 4-27-05 AT Approximately 8:45 A.M. SERT *3 T. HEALY, JOHN CREAMER, G. DOWN
DID CONDUCT A STRIP SEARCH OF INMATE ████████ & ██████ IN THE B-4
DINING HALL. INMATE ████ WAS FOUND TO BE IN POSSESSION OF 1 STORE BOUGHT
BOOK 1 CIGARETTE HIDDEN ON HIS PERSON. INMATE ██████ STATED TO SGT.
HEALY AND C.O. CREAMER THAT HE FOUND THE BOOK IN THE INFIRMARY DAY-
ROOM AND THAT HE #2 DID FIND THE CIGARETTE AT THE BOTTOM OF THE
INFIRMARY STAIRS LEADING TO THE BUILDING THREE YARD. INMATE ████
WAS MOVED TO 141-03 WITHOUT FURTHER INCIDENT.

*~Use a second sheet if additional space is needed~*

Reporting Staff: __William Dowd__

*Signature*

Reporting Staff: __William__   __Dowd__   Position: __LIEUTENANT__

*Please Print*   *First Name*   *Last Name*

Time: __9:45__ (AM) or PM   Report Date: __4__/__27__/200__5__

*(circle one)*

### Supervisor's Preliminary Investigation

☐ Resolved informally, no further action necessary.
*(Check One)*

  ☐ Loss of recreation: AM/PM  24  48  72  hours
*(Circle one)*

  ☐ Restricted movement:  24  48  72  hours
*(Circle one)*

  ☐ Informal discipline ends: _____

☒ Hearing Requested

  ☒ Inmate placed on AA/LIPH status: __141-03__

REVIEWED BY

Supervisor's Signature __H. William Dowd__   __4__/__27__/200__5__

Shift Commander's Initials __AM__   __/__/200__

Disciplinary Officer's Signature _____   __/__/200__

001147

Page _1_ of _2_



## Suffolk County Sheriff's Department
## Disciplinary Report

D- Report #: _____

Inmate's Name: ████████

Booking #: ████████

Date of Offense: 4/27/2005   Time of Incident: 8:40 AM or PM (circle one)   Incident Location: PEDESTRIAN TRAP

Disciplinary Code Violation(s): 3C, 7B, 8C

### Description of Offense    H.O.C. ☒    Jail ☐

SIR ON WEDNESDAY 27 APRIL 2005 AT
APPROX 8:40AM I Lt. O. Julius LOOKING
AS THE BUILDING # 03 SUPV. WAS
APPROACHED BY SGT SUPERVISOR
Lt. W. DOWD WHO REQUESTED MY
ASSISTANCE IN THE SEARCH OF AN
I/M ████████ # 52-44
AS Lt. DOWD WAS PLACING I/M ████████
IN HANDCUFFS PRIOR TO THE SEARCH
I OBSERVED A PAPERBACK BOOK IN
HIS HAND AND TOOK IT FROM HIM
THE BOOK WAS TITLED "AROUND THE WAY
GIRLS" AND HAD A STICKER PRICE OF
$12 (TWELVE) DOLLARS. INSIDE WERE TWO
ANTI-THEFT TAGS. WHEN QUESTIONED BY
ME HOW HE CAME INTO POSSESSION OF
THIS BOOK HE STATED THAT HE HAD

*~Use a second sheet if additional space is needed~*

Reporting Staff: _____ (Signature)

Reporting Staff: Owen _____ Julius   Position: LT.
Please Print    First Name    Last Name

Time: 9:37 AM or PM (circle one)   Report Date: 4/27/2005

### Supervisor's Preliminary Investigation

| | REVIEWED BY |
|---|---|
| ☐ Resolved informally | |
| ☐ Sanction _____ | _____ 4/27/2005 |
| | Supervisor's Signature |
| ☐ Informal Discipline ends: ____ | _____ 4/27/2005 |
| | Shift Commander's Initials |
| _____ (INMATE SIGNATURE) ___/___/___ (DATE) | |
| ☐ Formal Hearing Requested | _____ /200 |
| ☐ Remain in unit: ____ | Disciplinary Officer's Signature |
| ☒ Moved to unit: 141-03 | |

001140



Page 2 of 2

## Suffolk County Sheriff's Department
### Disciplinary Report

D- Report #: _JC25.1143_

Inmate's Name: ▬▬▬▬▬▬▬▬▬▬    Booking #: ▬▬▬▬▬▬

Name (Please Print)

Date of Offense: 4 / 27 /200 5 Time of Incident 8 45 (AM or PM) Incident Location: PEDESTRIAN TRAP

(circle one)

Disciplinary Code Violation(s): 3C, 7B, 8C

| Description of Offense | H.O.C. ☒ | Jail ☐ |

TAKEN IT FROM THE T.V. ROOM IN
THE INFIRMARY NOTE: THE BOOK
APPEARED TO BE BRAND NEW STORE
BOUGHT

*~Use a second sheet if additional space is needed~*

Reporting Staff: _____
Signature

Reporting Staff: ___OWEN_____ _____ Position: LT.
Please Print        First Name        Last Name

Time: 9:37 (AM or PM)        Report Date: 4 27 /200 5
(circle one)

### Supervisor's Preliminary Investigation

| | REVIEWED BY |
|---|---|
| ☐ Resolved informally | |
| ☐ Sanction _____ | _____ 4/27 /200 5 |
| | Supervisor's Signature |
| ☐ Informal Discipline ends: _____ | _____ 4, 27 /200 5 |
| _____ __/__ | Shift Commander's Initials |
| (INMATE SIGNATURE) (DATE) | |
| ☐ Formal Hearing Requested | |
| ☐ Remain in unit: _____ | _____ __/__ /200 __ |
| ☒ Moved to unit: 141-03 | Disciplinary Officer's Signature |

001149

## SUFFOLK COUNTY SHERIFF'S DEPARTMENT
## INCIDENT REPORT

Page _1_ of _1_

TO: _John Hewit-Morey_

FROM: _Stacy Watson_

DATE: _4-27-05_

SUBJECT: _____

I Stacy Watson know Mr. ███████ as a friend from the outside. I have never given him anything and I'm not sure what they are looking for. Other than the newspaper. That I put in the trash. I do understand that there are rules to be followed and I have seen officers give there newpaper to I/m's. I however throw my paper away. EOR

_Stacy Watson_

_Officer's Signature_

001150

X-7187

**Superintendent's Office**

# Memo

**To:**   Central Control
       Back Gate

**From:**  Superintendent Eugene Sumpter

**Date:**  5/13/05

**Re:**   Barred From Facility

Please be advised that effective immediately, Robert O'Rourke, P.A. is barred from the facility until further notice.

rpt

1

001589





# *Suffolk County Sheriff's Department*

| | |
|---|---|
| Jail | House of Correction |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

ANDREA J. CABRAL
SHERIFF

May 13, 2005

HAND DELIVERED 5/13/05

Robert O'Rourke
Nashua Street Jail

Dear Mr. O'Rourke:

Please be advised that effective this date, your contract to perform services to the Suffolk County Sheriff's Department as a physician assistant are hereby suspended without pay until further notice. During a taped interview with Investigators Brian Dacey and Neville Arthur today, you stated that you received a phone call from Officer Glenn Brewington asking for report outlining the loss of a tooth. You admitted that you added "traumatic tooth loss" to Glenn Brewington's medical file and did not write the date when you added this information. You also stated that you did not actually observe the "traumatic loss of tooth" when you examined Glenn Brewington on October 15, 2003, nor did he complain of a loss of a tooth during the examination on that date. You admitted that had the officer complained about a loss of tooth you would have noted that in the medical record.

Your conduct in altering a medical file and not dating the additional entry violates the standards of care required of all medical providers, specific rules of the medical department at the Jail, Department policies and the trust that this Department placed in you as a physician assistant. The investigation into this matter is continuing and you will be notified when a final decision has been made about the future of your contract with the Suffolk County Sheriff's Department. Until then, you are suspended without pay and are not to enter the Nashua Street Jail.

Sincerely,

*Eugene Sumpter*

Eugene Sumpter
Superintendent

Cc: Anthony Domagala
Michael Harris

001590



# Suffolk County Sheriff's Department



Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

DREA J. CABRAL
SHERIFF

May 31, 2005

Robert O'Rourke
P.O. Box 156
Truro, MA 02666

Dear Mr. O'Rourke:

Please be advised that after a thorough investigation into the circumstances of your treatment of Officer Glenn Brewington and altering his original medical file, it has been determined that your service contract with the Suffolk County Sheriff's Department to work as a physician's assistant must be terminated. This was not an easy decision to reach but was the only one appropriate given the serious breach of medical ethics that you committed.

Your actions in altering a medical file to add the diagnosis of "traumatic loss of tooth" to indicate that this entry was made at the time of your medical examination eighteen months earlier violates the standards of care required of all medical providers, Department policies and the trust that this Department placed in you as a physician's assistant. Your error in judgment can not be explained or excused. Your current contract for services is terminated and will not be renewed in FY06.

Sincerely,

Elizabeth Keeley
Chief of Staff

EK/af
Cc: HSA Anthony Domagala
    Superintendent Eugene Sumpter
    Superintendent Michael Harris

001391

# CASE SUMMARY

**TO:**      Jail Officer Glenn Brewington, Jr. File

**FROM:**    Senior Investigator Brian Dacey

**DATE:**    July 11, 2004

---

## A.    SYNOPSIS:

On Wednesday, May 4, 2005, ADS Neville Arthur and I were notified by Superintendent Eugene Sumpter and Deputy Superintendent Cliff Carney that they had interviewed Sergeant Paul Morad and he admitted that he had falsified a report alleging that on October 15, 2003 he observed Officer Glenn Brewington holding a tooth in his hand following an inmate on inmate altercation where Brewington assisted with separating the combatants. We were informed that Officer Glenn Brewington had filed a worker's compensation claim with the department seeking payment to repair damage to his dental work allegedly caused during the altercation. An investigation was initiated to determine whether Officer Brewington had suffered damage to his dental work as a result of the incident on October 15, 2003.

---

## B.    PERSONS INTERVIEWED:

1.  **Officer Glenn Brewington:** Assigned to SERT on October 15, 2003. Assisted 63 unit officer Paul Green with separating inmates who were fighting. Pulled Inmate Meeks away from altercation. Brewington slipped and fell backwards with Meeks landing on top of him. Claims Meeks's head hit him in the mouth, which caused his permanent bridge to be knocked from his mouth. Claims Officers Paul Green and Barry Durham and Sergeant Paul Morad witnessed the loss of his dental work. Claims he informed Dr. Robert O'Rourke of the loss of his bridge. Did not know whether he informed his primary care physician of the loss of his bridge. Could not recall when he first saw a dentist following the incident. Claims he was dazed following the incident and that was the reason that he did not include the loss of his dental work in any of the reports he authored on October 15, 2003. Acknowledged that he had the bridge with him when he wrote his reports, but misplaced it once he left the Nashua Street Jail when he drove himself to his primary care physician to receive sutures for the laceration to his upper lip. Asked Officers Paul Green and Barry

Durham and Sergeant Paul Morad to author "affidavits" about witnessing the loss of his bridge. Contacted Dr. O'Rourke and told him that he forgot to include that he had traumatic loss of tooth in his medical record. Claims that Dr. O'Rourke remembered him and the loss of tooth and then changed the medical record to reflect the loss of tooth.

2. **Sergeant Paul Morad:** Contacted by Officer Brewington in the summer of 2004. Asked to write a report about his involvement surrounding an inmate altercation in the 63 unit, which resulted in Brewington losing a tooth. Brewington informed him that he had been present during the altercation. Brewington informed him that he had lost a tooth during the incident and needed a report to send to his insurance company because they were refusing to pay to replace the tooth. Brewington gave him the information to include in the report, because Morad could not remember responding to the incident. Does remember Brewington in the medical department bleeding from his lip and holding a tooth in his hand, but could not recall when that was. Stated that the tooth he saw appeared to be a regular tooth, not some type of dental work. Recalls having a conversation with Brewington about Dr. O'Rourke's refusal to suture his lip and telling Brewington to get a second opinion.

3. **Corporal John Barry:** After reviewing his report that he authored on October 15, 2003, he vaguely recalled the incident. Assigned to SERT on October 15, 2003. Responded to 63 unit following inmate altercation. Recalls seeing Brewington bleeding from lip, but was not sure whether it was following this incident. Does not recall Officer Brewington complaining about losing a tooth ever at work. Was not approached by Brewington to author any subsequent reports.

4. **Officer John Barnes:** Did not file a report following the incident. Other officers included in their reports that Barnes responded to the altercation and escorted an inmate to medical following the incident. Knows that Brewington has been complaining about a missing tooth for over a year. Does not know the details of how he lost the tooth, but Brewington attributes it to an inmate incident. Brewington approached Barnes when he was JOEASC union president about how to get his tooth replaced because he did not have dental insurance at the time. Barnes recalls asking if he had filled out an accident report, but could not recall Brewington's answer.

5. **Lieutenant Jose Gomez:** Assigned as 6th floor supervisor on October 15, 2003. Responded to 63 unit for inmates fighting. Observed Officers Paul Green and Glenn Brewington in the 63 unit following the incident and each had been injured, Brewington's lip was cut and Green had injured his hand. Brewington did not complain of any other injuries. Brewington approached him in 2004 and asked for a copy of Gomez's report from the incident. Brewington wanted to learn whether Lt. Gomez indicated in his report that Brewington had lost a tooth as a result of the incident. He told Brewington that if he had been told about the tooth loss, he would have included that in his report.

6. **Dr. Robert O'Rourke:** 2-3 weeks prior to our interviewing him, he received a telephone call from Officer Brewington telling him that the Superintendent needed him to write a report stating that Officer Brewington lost a tooth as a result of an October 15, 2003 inmate altercation. Stated he added "traumatic tooth loss" to Brewington's medical record giving the officer the benefit of the doubt that he had lost a tooth on that date but could not remember that. He acknowledged that the addition to the medical record was false because he never observed a loss of tooth when he performed his examination and Brewington never complained to him that he lost a tooth on October 15, 2003.

7. **Officer Paul Green:** Assigned to the 63 unit on October 15, 2003. Recalled four inmates involved in a fight. Remembers Officer Brewington responding to the unit to assist with separating the inmates. Following the fight, Brewington told him that he lost his tooth and saw him searching for something on the floor. He observed a cut to Brewington's lip and a gap where his front tooth should be. He knows that it was not a natural tooth that Brewington lost because he has seen him remove a false tooth from that same location well before this incident. Brewington asked him to write a subsequent report on May 4, 2005 stating that he witnessed the tooth loss. He acknowledged that his report was false because the way it was written suggests that he actually witnessed the loss of tooth, not that he was told by Brewington that he lost a tooth.

8. **Officer Barry Durham:** Assigned to SERT on October 15, 2003 and responded to the 63 unit to assist with an inmate altercation. Did not observe any inmate falling on top of Brewington. Following the incident, observed Brewington with a cut to his lip. Did not observe any other injuries to Brewington nor did he complain about any other injuries. Does not recall seeing Brewington searching on the floor for anything following the

incident. A day or two following the incident, Brewington told him that he lost his dental bridge during the incident. A few weeks prior to our interview, Brewington approached him asking for a subsequent report that he witnessed the loss of the dental bridge. Officer Durham declined to write any other reports.

9. **Dr. William Lee:** Brewington's former dentist. Last treated Brewington on June 25, 2003 when he permanently attached a one-tooth bridge (left front tooth) by a chemical bonding agent to two of Brewington's natural teeth. The bridge is not removable. Was not aware of Brewington's current dental issues. Brewington recently requested copies of his medical records from his office. Brewington mentioned to Dr. Lee's secretary that he lost his bridge at work. Brewington's account was sent to a collection agency in August of 2003 for non-payment. His account is still in arrears.

## C.    EVIDENCE / ITEMS RECOVERED:

1. Incident Report by Lieutenant Jose Gomez (10/15/03)
2. Incident Report by Sergeant Walter Carney (10/15/03)
3. Incident Report by Officer Barry Durham (10/15/03)
4. Incident Report by Officer Paul Darcy (10/15/03) (2 pgs)
5. Incident Report by Corporal John Barry (10/15/03)
6. Use of Force Report by Corporal John Barry (2pgs)
7. Use of Force Report by Officer Glenn Brewington (2pgs)
8. Use of Force Report by Officer Barry Durham (2pgs)
9. Use of Force Report by Officer Paul Darcy (2 pgs)
10. Medical Observation Following Use of Force Report by Nurse McGinnis for Anthony Parrish
11. Medical Observation Following Use of Force Report by Nurse McGinnis for Jason Meeks
12. Medical Observation Following Use of Force Report by Nurse McGinnis for Theodore Freeman
13. Medical Observation Following Use of Force Report by Nurse McGinnis for Aderito Barbosa
14. Disciplinary Report for Anthony Parish by Officer Paul Green
15. Disciplinary Report for Jason Meeks by Officer Paul Green
16. Disciplinary Report for Theodore Freeman by Officer Paul Green
17. Disciplinary Report for Aderito Barbosa by Officer Paul Green
18. Incident Report by Officer Glenn Brewington (10/15/03)
19. Accident Report by Officer Glenn Brewington (10/15/03)
20. Copy of Medical Progress Notes dated 10/15/03 regarding treatment of Glenn Brewington by Dr. Robert O'Rourke (1 page)

21. Accident Report Witness Statement by Officer Barry Durham regarding Officer Glenn Brewington (10/15/03)
22. Incident Report by Sergeant Paul Morad (10/15/03)
23. Incident Report by Sergeant Paul Morad (5/4/05) Subject: Falsified Report (2 pgs)
24. Incident Report by Officer Paul Green (5/4/05)
25. Copy of altered Medical Progress Notes by Dr. Robert O'Rourke (1page)
26. Copy of Officer Glenn Brewington's EPersonnel File (4 pgs)
27. Copy of Brewington's work history from 10/1/03 to 11/1/03 (2 pgs)
28. Copy of Glenn Brewington's medical record dated 10/15/03 for treatment of lip laceration (1 page) provided by Officer Brewington
29. Manila envelope containing 1 radiological film and dental records for Glenn Brewington from office of Drs. Stiller and Zybler dated 8/31/04 to 5/2/05 (2pgs) provided by Officer Brewington
30. Manila envelope containing 2 authorization to release records and dental records for Glenn Brewington from office of Dr. William Lee dated 9/7/00 to 11/8/04 (11 pgs)

## D.    CONCLUSION:

According to my conversation with Dr. William Lee and a review of the medical records from his office, on June 25, 2003 Dr. Lee permanently affixed a dental bridge (consisting of the left front tooth) to two of Officer Brewington's natural teeth.

On October 15, 2003, an inmate on inmate altercation occurred in the 63 unit. Officer Brewington, assigned to SERT, responded to assist with separating the combatants. He claims that the dental bridge was knocked from his mouth when he restrained an inmate during the altercation.

Officer Brewington failed to document the loss of his dental bridge in any of the reports he completed on October 15, 2003. He did include in both his incident report and in his accident report that he received a laceration to his lip, but failed to include the damage to his dental bridge. During his interview, he admitted to having the bridge in his possession when he authored his reports, but misplaced it once he left the building.

On October 15, 2003, following the incident, SCSD medical staff member Dr. Robert O'Rourke evaluated Officer Brewington's lip laceration. There is no notation of any damage to dental work on Brewington's medical progress note completed by Dr. O'Rourke. During his interview, Dr. O'Rourke stated that he received a telephone call from Officer Brewington sometime in April of 2005 requesting that he author a report indicating that Brewington lost a tooth resulting from the incident on October 15, 2003. Dr. O'Rourke stated that he added "traumatic tooth loss" on the medical

progress note, when he spoke with Brewington on the telephone in April 2005. He acknowledged that he did not date the medical progress note when he added "traumatic tooth loss". He took the officer's word that he lost a tooth during the incident, even though he did not observe a loss of tooth or any damaged dental work on the date of the incident when he treated Brewington and Brewington never complained to him that he lost a tooth that day.

Following the evaluation by Dr. O'Rourke, Officer Brewington drove himself to his primary care physician's office at Harvard Community Health Center where he received sutures for the laceration to his lip. Officer Brewington could not recall if he told the doctor who sutured his lip that his dental bridge had been knocked out of his mouth. There is no notation of any damaged dental work or tooth loss in Brewington's medical record from Harvard Community Health Center.

Officer Brewington could not recall when he next saw a dentist following the October 15, 2003 incident. According to the dental records requested by investigators and received from Officer Brewington, he did not seek treatment from a dentist until August of 2004. Officer Brewington attributes the delay in seeking treatment to the lack of dental insurance coverage by the department. Although this may be partially true, if the damage to the bridge was the result of an inmate altercation, a worker's compensation claim filed in a timely manner and documented properly would have covered the expense of replacing the tooth.

It is suspect that Officer Brewington did not include the damage to his dental work in any of the reports he wrote and did not report it to any medical staff who treated him on the date of incident. It is also suspect that he did not seek dental treatment until 10 months after the incident date. Although the three witnesses who claim that Brewington told them he suffered damage to his bridge on or about October 15, 2003, no one included it in their reports from that date. Two officers authored subsequent reports much later at the request of Brewington and the third officer did not include anything in his accident witness report authored on October 15, 2003 and refused to author any subsequent reports when approached and asked by Brewington.

Based upon a review of the documents and the interviews with witnesses, there is insufficient evidence to support Officer Brewington's claim that his dental bridge was damaged as a result of the incident on October 15, 2003. End of report.




# Suffolk County Sheriff's Department

**ANDREA J. CABRAL**
SHERIFF

| | |
|---|---|
| Jail | House of Correction |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

January 22, 2004

-- Via Hand Delivery --



### NOTICE OF TWENTY-DAY SUSPENSION

Dear ████████

On December 31, 2003 you were suspended without pay and notified that a disciplinary hearing had been scheduled for January 9, 2004. Subsequently, the Department advised your J.O.E.A.S.C. representative that we would not conduct a disciplinary hearing and no objection was made, therefore the discipline imposed is based upon the Departments investigation into the incident that formed the basis for the charges against you.

You are hereby suspended without pay for a period of twenty working days as a result of your actions relative to the October 7, 2003 incident in the 4-2 Unit at the Nashua Street Jail. After considering all information gathered during this investigation, including your written report and taped interview with the Sheriff's Investigation Division, the Department has determined that you submitted a false, misleading or inaccurate report in violation of Suffolk County Sheriff's Department Policy S-220 § II(O), and that your actions were unbecoming an officer, in violation of Suffolk County Sheriff's Department Policy S-220 § II(N)(1).

Your actions were egregious, as they may have led to an erroneous discipline and possible criminal charges against a detainee. Please note that any future policy violations of this nature will result in the imposition of more severe disciplinary action, up to and including your termination. Please be advised that your suspension will conclude on January 28, 2004. If you have any questions, please contact your Shift Commander.

Sincerely,

*Eugene Sumpter*

Eugene Sumpter
Superintendent

cc: Elizabeth Keeley, Chief of Staff
Cliff Carney, Deputy Superintendent
Michael Harris, Director of Employee Relations
Richard Tranfaglia, Director of Personnel ✓
John Barnes, J.O.E.A.S.C
Stephen Pfaff, Esq.



# Suffolk County Sheriff's Department



**Jail**
200 Nashua Street
Boston, MA 02114
(617) 635-1100

**House of Correction**
20 Bradston Street
Boston, MA 02118
(617) 635-1000

**ANDREA J. CABRAL**
**SHERIFF**

**HAND DELIVERED**

December 31, 2003



## NOTICE OF SUSPENSION AND DISCIPLINARY HEARING

Dear ▮▮▮▮▮▮▮:

You are hereby suspended without pay effective immediately and ordered to be present at a departmental disciplinary hearing to decide whether or not there is just cause for discipline as a result of your actions on or about October 7th and December 4th, 2003. The specification of charges is attached hereto and incorporated herein by reference.

This hearing will be held on **Friday January 9, 2004 at 10:00 AM** in the Sheriff's conference room at the Nashua St. Jail.

You may have union representation at this hearing.

Copies of c.135 of the Acts of 1960 and M.G.L. c.31, §§41-45 are attached.

Sincerely,

*Eugene Sumpter*

Eugene Sumpter
Superintendent

cc:  Elizabeth Keeley, Chief of Staff
Cliff Carney, Deputy Superintendent
Anne Powers, Esq., General Counsel
Richard Tranfaglia, Director of Personnel ✓
John Barnes, J.O.E.A.S.C
Michael Harris, Employee Relations
Enclosure

001667

December 31, 2003

## SPECIFICATION OF CHARGES

On October 7, 2003, you reported in writing to have witnessed two separate assaults on detainee ██████████ in the 4-2 Unit.  A subsequent department investigation to determine whether or not criminal charges should be filed against any of the detainees involved in the assaults produced evidence disputing certain aspects of your report, specifically the allegations you and you alone made that detainee ████████ was kicked in the head by detainee ████. ████████  On December 4, 2003, you agreed to be interviewed by investigators from SID, where you gave a taped statement and provided contradictory and different information concerning the allegations against detainee ████████.  As a result of the department's investigation into this incident the following charges are brought against you.

1.  Submissions of a misleading, incorrect or false report in violation of policy S-220, Section II, paragraph O.

2.  Conduct unbecoming an officer in violation of policy S-220, Section II, paragraph N (1)

001668



# Suffolk County Sheriff's Department



|  |  |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
**SHERIFF**

February 1, 2005



## *ONE-DAY SUSPENSION*

Dear ████████████:

This letter will serve as notice of a one-day suspension for your actions on Friday, January 28, 2005.

On that date, you were assigned to the back gate. You discovered that there was a missing canister of OC in the morning. You failed to report this potentially serious security breach for several hours. During my interview with you, you admitted that you gave the keys to other Officers to remove firearms and other equipment. Your actions were in violation of the following Department policies:

- S220 – Neglect/ Dereliction of Duty
- S501 – The person securing the weapon must keep the key to the weapon's locker in his possession.
- S501 - Officers shall immediately report any....security or safety problem discovered.
- S502 - Whenever a key is issued to an employee, the security of that key shall be the responsibility of said employee.

Further instances of this type of policy violation will lead to more severe discipline up to and including termination.

Sincerely,

Steve Jacobs
Deputy Superintendent

cc:    Elizabeth Keeley, Chief of Staff
        Gerard Horgan, Superintendent
        Michael Harris, Superintendent
        Personnel File
        Michael Simpson, President Local 419

001670

I have read this letter and understand that it will be a part of my permanent personnel file.

2. 3. 06
Date

Steve Jacobs
Deputy Superintendent

cc:    Elizabeth Keeley, Chief of Staff
       Gerard Horgan, Superintendent
       Major Vincent Morrison
       Personnel File



# Suffolk County Sheriff's Department

| | |
|---|---|
| **Jail** | **House of Correction** |
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |



**ANDREA J. CABRAL**
**SHERIFF**

December 19, 2003



### Notice of Written Warning

Dear ███████████:

   On November 21, 2003 you violated department policy by failing to submit a detailed report as directed by your department manager. This report was to be relative to your receipt of a dangerous weapon, and failing to notify security immediately upon receipt of information that an inmate was in fear of his health and turning over a weapon to you . Additionally you failed to follow the chain of command.

   You have been an employee for many years as such you are aware of the need to submit reports as directed and following the chain of command.

   I trust this discipline will be sufficient and I expect that further violations of these policies on your part will be avoided. Further violations of this nature will result in the imposition of more severe disciplinary sanctions against you, up to and including termination of your employment.

Sincerely,

Joseph Travis
Director of Social Services

I hereby acknowledge receipt of this warning notice.

███████████████     12-14-03

Employees signature       Date

Cc: Richard Tranfaglia, Director of Personell
     Maryellen Mastrorilli, Deputy Superintendent of Program Services



# *Suffolk County Sheriff's Department*

**ANDREA J. CABRAL**
**SHERIFF**

| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

January 12, 2004



## NOTICE OF SUSPENSION / DISCIPLINARY HEARING

Dear ▇▇▇▇▇▇▇▇▇:

Please be advised that you are suspended without pay effective immediately for your actions on November 26, 2003. A disciplinary hearing will be held to determine if additional discipline is warranted. The hearing has been scheduled for Thursday, January 23rd, 2004 at 11:00 am at the Suffolk County House of Correction in the 5th floor conference room in building 1. You are hereby ordered to attend this hearing and are entitled to union representation. You are being charged with violation of your post orders and of Department Policies S220 and S501, specifically:

1. Neglect of dereliction of duty
2. Unauthorized Absence from Post
3. Improper Conduct that negatively reflects upon the Department
4. Failing to provide supervision of inmates
5. Failing to inspect a post and report a safety problem
6. Failing to report a health related situation
7. Failing to routinely and purposefully patrol and inspect each area to which you were assigned
8. Failing to report and correct matters related to officer duties, unit procedures and safety/security concerns.

Sincerely,

*Gerard J. Horgan*

Gerard J. Horgan
Superintendent

cc: Elizabeth Keeley, Chief of Staff
    Marie Lockhart, Deputy Superintendent of Operations
    Vincent Morrison, Operations
    William Dowd, President of Local 419
    Richard Tranfaglia, Director of Personnel

001676



## Suffolk County Sheriff's Department



**ANDREA J. CABRAL**
**SHERIFF**

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

February 6, 2004



### NOTICE OF HEARING DECISION

Dear ▮▮▮▮▮▮:

On January 23, 2004, the Department held a disciplinary hearing to determine whether there was just cause to discipline you for several alleged violations of Department policy S-220 arising out of the events of November 25-26, 2003. The hearing officer found just cause to discipline you for several of the charges against you.

Your failure to routinely patrol your building throughout your shift on November 26, 2003, and to ensure that unit officers were performing assigned tasks properly and completely, constituted neglect of duty in violation II-Z-2. As an experienced supervisor, you should know the need for diligent rounds, especially in the special housing management units and even more so on the 11-7 shift. Further, your failure to inform your immediate superior of your actions and to obtain specific approval created a "supervision gap" in the tower that further reduced any possibility of averting the tragedy that occurred.

Accordingly, you will be suspended without pay you for 45 days; you will therefore not return to work until 10:45 PM on **February 26, 2004**. However, as future violations of this nature will result in discipline up to and including termination, you are directed to contact Dep. Supt. Michelman who will arrange a training session to address these deficiencies.

Sincerely,

Gerard J. Horgan
Superintendent
House of Correction

cc:     A. Powers, General Counsel
        R. Tranfaglia, Director of Personnel
        M. Harris, Director of Employee Relations
        Chris McCray, Local 419
        Stephen Pfaff, Esq.

**001677**



## *Suffolk County Sheriff's Department*



| Jail | House of Correction |
|------|---------------------|
| 200 Nashua Street | 20 Bradston Street |
| Boston, MA 02114 | Boston, MA 02118 |
| (617) 635-1100 | (617) 635-1000 |

**ANDREA J. CABRAL**
SHERIFF

April 22, 2003



## <u>NOTICE OF ADMINISTRATIVE LEAVE WITHOUT PAY AND DISCIPLINARY HEARING</u>

Dear ▮▮▮▮▮▮ :

Please be advised that you are placed on administrative leave without pay, effective immediately, pending a Departmental disciplinary hearing. The purpose of this hearing will be to determine whether there is just cause for discipline up to and including your termination from the position of Jail Officer with the Suffolk County Sheriff's Department.

Based on your testimony at U.S. District Court on March 17, 2003, you are being charged with violating Department Policy S220: failure to report violations of department rules, regulations or policies; filing false report(s); failure to take remedial actions; conduct unbecoming an officer; and, interfering with an investigation.

The Disciplinary Hearing has been scheduled for **Friday, May 2, 2003 at 9:00 a.m.** in the 3.5 Conference Room at the Suffolk County Jail. You are ordered to attend the hearing and are entitled to union representation.

Sincerely,

Gerard J. Horgan
Superintendent

cc:    Elizabeth Keeley, Esq., Chief of Staff
Anne Powers, Esq., General Counsel
Michael Harris, Director of Employee Relations
Eugene Sumpter, Deputy Superintendent
Susan Grimes, Assistant Director of Personnel
John Barnes, President JOEASC

FROM:    CAPTAIN CHARLES SCOBY

TO:    ████████

DATE:    MARCH 18,2003

RE:    MAINTAINING UNIT LOG BOOK

## WRITTEN WARNING

On MONDAY MARCH 18,03 , you were found to be in violation of the Department's policy regarding S220

Specifically, your violation was UNIFORMED EMPLOYEES ARE REQUIRED TO MAINTAIN UNIT LOG BOOKS AND RECORD ALL EVENTS THAT OCCUR ON THEIR SHIFT.

I am issuing this written warning for violation of this policy. Continued violation of this policy will be dealt with more severity, up to and including your termination as an employee of the Suffolk County Sheriff's Department.

_____
Supervisor

_____
Shift Commander

I acknowledge receipt of this warning.

████████    Date: 3-20-03

Note: Give original to employee, and send copies to the Superintendent and Director of Personnel.

001684

## AGREEMENT BETWEEN THE SUFFOLK COUNTY SHERIFF'S DEPARTMENT (Department) , THE JAIL OFFICERS AND EMPLOYEES ASSOCIATION (JOEASC) AND ████████████████ (Employee)

1. ████████████ acknowledges that he violated Department Policy S220 by not keeping a logbook up to date and by playing video games while on duty on May 3, 2003. The employee acknowledges that this behavior is conduct unbecoming an officer, neglect or dereliction of duty and in violation of S220 for engaging in amusement that interferes with the performance of duties.

2. The employee agrees to serve a three (3) day suspension for violating Department Policy S220.

3. The employee, JOEASC and the Department agree that he shall serve the three day suspension without pay on May 24, 25    June 7, 2003.

4. The Department, JOEASC and the employee agree that the terms of this agreement shall not subject to the grievance procedure, arbitration, mediation or any other challenge in any forum except as to the enforcement of its terms.

5. This agreement shall not serve a precedent between the parties.

6. All parties to this agreement have entered into it voluntarily, without duress and of their own free will.

For the Department

_Gerard J. Horgan_
Gerard J. Horgan, Superintendent

For the Association

_John M. Grennon_
John Grennon, Vice President
JOEASC

For the Employee

████████████████████████

Dated: 22 May 03