UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA J. PORTER,<br>    *Plaintiff*<br><br>v.<br><br>ANDREA J. CABRAL; SUFFOLK COUNTY SHERIFF'S DEPARTMENT; and<br>SUFFOLK COUNTY,<br>    *Defendant* | DOCKET NO.<br><br>**04-11935-DPW** |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
STATEMENTS OF CHRISTA SNYDER AND MAUREEN ROBINISON.**

**I.    Introduction**

The Defendants Suffolk County, through its Sheriff's Department, and Sheriff Andrea J. Cabral respectfully decline to stipulate and move, *in limine*, to exclude any statement of fact that purports to describe the nature or specific content of FBI Agent Christa Snyder's conversations with Sheila Porter relative to her observations of and conversations with Rene Rosario on or about May 20, 2003.  The Defendants further move to exclude any statement of fact as to the frequency of the Plaintiff's communications with Agent Snyder and Agent Robinson for the period of early 2000 to the present, described the Agent's affidavits.

As reasons therefore, the Defendants state that any statement of fact derived from Agent Snyder's affidavit and/or her "302" reports contains inadmissible and prejudicial hearsay to which no exception properly applies.  Further, there is credible evidence of

1

Agent Snyder's and Robinson's possible bias in favor of the Plaintiff. The Defendants have a right to cross-examine them to elicit evidence of any bias, to test the accuracy of their recollection and determine whether the contacts with Sheila Porter or any SID investigators were properly documented in accordance with FBI policy. Finally, the information provided by Agents Snyder and Robinson relative to the frequency of their contacts with Sheila Porter in the three years prior to her barring is insufficiently vague and irrelevant to the extent that it details an unspecified number of contacts for the two and one-half year period that preceded Sheriff Cabral's appointment.

The Defendants filed a separate action brought under the Administrative Procedures Act, to depose FBI Agent Christa Snyder. Should that motion be denied, the Defendants should be allowed to subpoena Agent Snyder for trial.

## II.     Factual Disputes

Defendants object to the Plaintiff's proposed stipulation relative to the following facts.

1. May 21, 2003 FBI Agent Synder's Contact With SID Investigator Stan Wojtkonski

On May 20, 2003, the Plaintiff contacted FBI Agent Christa Snyder and provided her with some information relative to former Suffolk County House of Correction inmate Rene Rosario. Agent Snyder relayed that information to SID Investigator Stan Wojtkonski during an unrelated encounter on May 21, 2003. There is a significant dispute between the parties as to what the Plaintiff told Agent Snyder. The Defendants are entitled to the opportunity to cross-examine her on these matters and therefore cannot agree to stipulate as to what she would testify to. The Defendants further object to the introduction of any statement of fact that leaves these matters unexplored.

2

2.  Investigator Wojtkonski's Report

Stan Wojtkonski's report of the encounter was documented and filed on May 23, 2003. At the time of his encounter with Agent Snyder, he was attending First Responder Training and he would testify that he immediately reported the conversation to Superintendent Viktor Theiss. Agent Snyder told him a "member of [the Department's] medical staff" had contacted her the night before. The medical staff member reported being present when someone named "Beth" conducted a physical examination of an inmate. The medical staff member reported seeing bruises on the inmate's "neck, chest, and under his arm" that were, in the staff member's opinion, "not consistent with self-inflicted wounds." According to Wojtkonski's report, Agent Snyder declined to specifically identify the medical staff member, but did tell Investigator Wojtkonski that the person's identity could be ascertained if investigators interviewed medical staff.

Investigator Wojtkonski would testify that, at the time of his conversation with Snyder, he was unaware that SID had been contacted by a corrections officer regarding Rene Rosario and was already investigating his allegations. He would testify that he was not the assigned investigator and did not learn of SID's involvement until he subsequently reported his conversation with Agent Snyder to Superintendent Viktor Theiss.

3.  Angent Snyder's Report

The copy of Agent Snyder's 302 report provided to the Defendants is silent as to when it was dictated. It was not transcribed until June 16, 2003, nearly a month after the encounter - the same day that Sheriff Cabral, Elizabeth Keeley and Viktor Theiss met

3

with representatives of the US Attorney's Office and the FBI and discussed Sheila Porter's barring.

Agent Snyder's report states that she told Wojtkonski that she had information relative to a possible assault on inmate Rene Rosario and that she told him to check the medical records for information. Agent Snyder indicates that she repeated this statement after Wojtkonski asked her if the information had come from "the medical department at the [House of Correction.]" Agent Snyder's report indicates that Investigator Wojtkonki told her that SID was already looking into the matter. Agent Snyder's report is devoid of any details indicating that she told Wojtkonski the alleged location of inmate's bruises or how the person who provided the information came to be in possession of it.

4.  May 23, 2003 - FBI Agent Synder's Contact With SID Investigator Stan Wojtkonski

On May 23, 2003, Agent Snyder contacted Investigator Wojtkonski to follow up on their May 21 conversation. Both parties wrote reports documenting that contact. Agent Snyder's report raises significant questions as to when the report was written, her state of mind with regard to the disclosure of Sheila Porter's identity and her possible bias in favor of Sheila Porter. The Defendants are entitled to the opportunity to cross-examine her on these matters and therefore cannot agree to stipulate as to what she would testify to. The Defendants further object to the introduction of any statement of fact that leaves these matters unexplored.

5.  Investigator Wojtkonski's Report

Investigator Wojtkonski's report was written and filed on the same day he spoke to Agent Snyder. It is three paragraphs long and notes both the date and the time of his conversation. It was during this conversation that Investigator Wojtkonski informed

4

Agent Snyder that SID had been investigating Rosario's allegations for "the past several days." He told her that the evidence, including photographs taken of Rosario on May 22, 2003, did not seem to correspond to his allegations. He also told her that witness interviews were ongoing and that he expected the investigation to yield results the following week.

Wojtkonski then spoke to Snyder about the fact that no medical staff person had submitted a report to SID regarding injuries incurred by Rene Rosario. He raised the issue of a medical staff member's failure to report Rosario's allegations to SID. Agent Snyder responded that she had told the medical staff person that she would report the matter to SID. Investigator Wojtkonski told Snyder that such indirect reporting was a problem because SID would never be able to interview a witness whose identity was only known to the FBI. Wojtkonski specifically informed Snyder "no staff member would ever be hindered from speaking to an outside law enforcement agency, but speaking with an outside agency does not absolve a staff member of his or her responsibility to report incidents directly to the Sheriff's Department and SID."

Agent Snyder told Wojtkonski "if confidential sources contacted her regarding other matters, she would make sure to inform them to also report the incident directly to the Sheriff's Department."

6.  Agent Snyder's Report

The redacted copy of Agent Snyder's 302 report provided to the Defendants documents both her conversation with Investigator Wojtkonski on May 23, 2003 and a subsequent conversation with a confidential source (believed to be Sheila Porter) on May 29, 2003. Though this conversation with Wojtkonski occurred 2 days after her May 21

5

conversation with him, the report is dated June 2, 2003, fourteen days before Agent Snyder's report of her May 21 conversation with Investigator Wojtkonski was transcribed.

Agent Snyder's report states the following:

On approximately 05/23/2003, I spoke to (redacted) on the telephone, and (redacted) stated that SID believed they knew the identity of the source who provided the information. (Redacted) then identified (redacted) as the individual. (Redacted) then stated that it could be a problem because the individual did not report the alleged assault to Suffolk County Sheriff's Department (sic.) I told (redacted) that it was not appropriate for SID to attempt to determine who the source was, (sic) and that the source was informed that I would report the information to SID. (Redacted) then stated that he did not think it would be a problem in the end. The identity of the source was neither confirmed nor denied by me.

Agent Snyder's report makes no mention of Wojtkonski's comments regarding the inconsistency between what was reported by the confidential source and the evidence regarding Rosario's injuries. Agent Snyder's report does not mention Investigator Wojtkonski's statement that no individual would ever be hindered from reporting to an outside agency, but must also report the matter internally.

Agent Snyder's report also documents contact with the confidential source (Sheila Porter) on May 29, 2003. Porter apparently contacted Snyder to report that SID investigators had interviewed her. The report is comprised of one paragraph. In addition to noting the place and date of the interview, the report states:

…In a poorly veiled attempt to mislead the source, the investigators asked source "Why did you notify Christa?" Individual stated, "Why, did I say Christa was notified." Individual was very surprised at their line of questioning. This was a ploy by SID to deceive individual in the hopes that individual would identify oneself as a source for the FBI…"

**III.    Argument**

6

The statements of FBI special agent Christa Snyder and Maureen Robinson should be excluded from evidence because (1) the statements are based upon her 302 report which lacks reliability, (2) the statements are hearsay for which there is no exception, and (3) the statements are prejudicial to the Defendants and based upon bias of the FBI, (4) the Defendants will not be able to cross-examine the witness' statement.

### A.  The Statements of Christa Snyder Are Based Upon Her 302 Report Which Lacks Reliability.

There is a significant dispute between what Agent Snyder reports she told Investigator Wojtkonski on May 21, 2003 and what he reports he was told by her. That dispute has to do with the accuracy of the information Sheila Porter provided to Christa Snyder and is highly relevant to Porter's credibility and her assertion that she accurately reported Rosario's allegations. It is unclear whether the conclusions and opinions as to the SID investigators' behavior and motivations contained in Agent Snyder's report of her May 29 conversation with Sheila Porter are Agent Snyder's or Sheila Porter's. Agent Snyder does not quote the source or preface these conclusions and opinions by using the words, "individual believes" or some other phrase that would clearly distinguish these opinions from her own. Sheila Porter was Agent Snyder's source from "early 2000 until the time of her dismissal from the HOC." Agent Snyder told Sheila Porter "to meet all her work-related reporting requirements." (See Affidavit of Christa Snyder.) In this case, Sheila Porter did not meet her work-related reporting requirements. She did not report the information regarding Rene Rosario to SID, did not document her encounter with him in the medical record and did not submit a confidential report in a timely manner as requested by a Deputy Superintendent.

7

**B.     The Statements Are Hearsay Without Exception And Not An Admission Of By Party-Opponent.**

The statements of Christa Snyder are not removed from hearsay through Fed.R.Evid. 801(d)(2)(D), and are not excepted from hearsay through Fed.R.Evid. 804(b)(3).  As such, these statements should be excluded from evidence.

    1.     The Statements are Not Admission by a Party-Opponent Pursuant to Fed.R.Evid. 801(d)(2)(D).

The Plaintiff cannot claim that the Testimony of Christa Snyder, for which they are seeking to be introduced into evidence by stipulation, is removed from hearsay as an Admission by Party-Opponent.  Rule 801(d) provides in part:

> A statement is not hearsay if…[t]he statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship…

It is clear that the testimony of Agent Snyder does not contain any statements that satisfy this rule.  The Plaintiff appears to argue that portions of Snyder's testimony include statements made by Stan Wojtkonski are admission by the Defendants.  This erroneous conclusion appears to be premised upon the incorrect assumption that (1) Mr. Wojtkonski's statement was made within the scope of his employment, and (2) that the statement of Mr. Wojtkonski itself qualifies as an admission under the rule.

As a preliminary matter, Mr. Wojtkonski's statements that "*they* already looked into the matter" and "the *Sheriff's Investigative Division* believed that *they* knew the identity of the source who provided the information to Agent Snyder" are totem-pole hearsay (emphasis added). These alleged statements by Wojtkonski are not his own but

8

rather statements of someone else. Further, the alleged statements by Wojtkonski fail to identify the declarant, thus making it impossible to tell whether the statements were made within the scope of employment. An out-of-court statement is not an admission if the declarant is unidentified and it cannot be determined if the declarant fits into the party-opponent definition. Vazquez v. Lopez-Rosario, 134 F.3d 28, 34 (1st Cir. 1998). Since these statements by Wojtkonski fail to identify the declarant, they cannot be admitted.

Further, Mr. Wojtkonski himself was not acting within the scope of his employment when he allegedly made these statements to Agent Snyder. Mr. Wojtkonski was not the SID officer that was investigating the Rosario allegations. Therefore, since he was not charged by his employer with any responsibility related to the Rosario investigation, he is unable to make an admission against their interest. It is clear that the first requirement of an admission by party-opponent is not satisfied because there are two levels of hearsay, and neither declarant satisfies the requirements of the rule; Wojtkonski was not acting within the scope of his employment, and his statement was a rehash of an unidentified source.

Finally, the statement itself is not an admission, thus it is not removed from hearsay. " [A]n admission (a) must be made directly or indirectly by a party to the action and (b) must be contrary to that party's position at the time of trial". Butler v. Southern Pacific Company, 431 F.2d 77, 80 (5th Cir. 1970). "An admission is a voluntary acknowledgement made by a party of the existence of the truth of certain facts which are inconsistent with his claims in an action". Vockie v. General Motors Corporation, 66 F.R.D. 57, 60 (E.D.Penn. 1975).

      2.      The Statements are Not Statements Against Interest Pursuant to Fed.R.Evid. 804(b)(3).

The Plaintiff cannot argue that the Snyder testimony concerning the statements of Wojtkonski are exceptions to hearsay pursuant to Fed.R.Evid. 804(b)(3), because the Rule only applied when the declarant is unavailable. In the case at bar, Agent Snyder is not exempted from testifying on the basis of a privilege. Further, the testimony of Agent Snyder contains hearsay in and of itself. Therefore, even if the testimony of Snyder was excepted from hearsay under Rule 804, which it should not be, the exception does not cover the statements of hearsay within her testimony. Essentially, Rule 804 would not open the door for the Plaintiff to introduce other forms of hearsay. The statements of Mr. Wojtkonski are hearsay within hearsay for which Rule 804 provides no exception. Hearsay within hearsay can only be excluded from the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. Fed.R.Evid. 805. Even if Rule 804 provided such an exception to the Wojtkonski statements, which it does not, it would still not be excepted from hearsay because the alleged statements were not against Wojtkonski's own interest. The rule provides in relevant part:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed.R.Evid. 804(b)(3). Mr. Wojtkonski's statements could not be construed as possibly subjecting him to criminal or civil penalty. The alleged statements are statements of an unknown party. Further, Mr. Wojtkonski was not part of the SID investigation into the

Rosario allegations. There was no statement or action by Wojtkonski that could have resulted in his personal liability. It is clear that this hearsay exception does not include an agency provision. Accordingly, this exception does not apply and the statements should be excluded from evidence.

C. **The Testimony of Christa Snyder and Maureen Robinson Should be Excluded Pursuant to Rule 403.**

Investigator Wojtkonski would testify that Agent Snyder did suggest to him that he could ascertain the identity of her confidential source by interviewing every member of the medical staff. It is reasonable that she would be concerned about that mistake, concerned that Sheila Porter had not followed her instruction to meet her work-related reporting requirements and biased in favor of mitigating the consequences of both. The Defendants are entitled to cross-examine Christa Snyder on these issues and have their full context, for all relevant purposes, put before the jury.

D. **The Defendants Should Be Allowed To Cross Examine Witnesses Against Them.**

The Plaintiff should not be permitted to use portions of the testimony of Christa Snyder and Maureen Robinson since it would patently unfair without an allowance of cross-examination by the Defendants. "[C]ourts sometimes insist that an individual forego protection that he does not wish to give up, in order to avoid unfairness to others, such as adversaries in litigation who might suffer harm were a factfinder to be misled, say, by a partial disclosure of relevant information. Thus the "rule of completeness" provides for "the right of the opponent, against whom the utterance is offered, to put the remainder in evidence on cross-examination or as part of his case…subject to the general

11

principles of relevancy""". Irons v. Federal Bureau of Investigation, 880 F.2d 1446, 1453 (1st Cir. 1989).

### IV.  Conclusion

For the reasons as listed above, Defendants request that the Court exclude Plaintiff's proposed stipulations relative to Agents Snyder and Robinson and require that they be subject to cross examination if any statements of them are to be presented to the jury.

                                        Respectfully submitted
                                        Andrea Cabral, Suffolk County Sheriff's
                                        Department and Suffolk County,
                                        By their attorney,

Date: January 9, 2006                  /s/ Ellen M. Caulo
                                        Ellen M. Caulo
                                        BBO# 545250
                                        Deputy General Counsel
                                        Suffolk County Sheriff's Department
                                        200 Nashua Street
                                        Boston, MA 02114
                                        (617) 961-6681