UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER<br><br>    Plaintiff,<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, and SUFFOLK COUNTY<br><br>    Defendant. | Civil Action No.04-11935-DPW |

### SHEILA PORTER'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA SERVED ON WALTER B. PRINCE

Plaintiff Sheila Porter ("Mrs. Porter") submits this Memorandum In Opposition to the Motion To Quash Subpoena Served on Walter B. Prince ("Motion to Quash"), and requests that this Court deny the Motion to Quash and uphold the subpoena requiring Walter B. Prince ("Mr. Prince") to testify at the trial of this matter. The statements of a party's agent, here, Mr. Prince, need only be related to a matter within the scope of the agency to be admitted against the party pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. Mr. Prince is an agent of Defendants Andrea Cabral ("Sheriff Cabral"), the Suffolk County Sheriff's Department ("SCSD"), and Suffolk County (collectively, "Defendants"). Mr. Prince's trial testimony as an agent of Defendants became necessary and relevant as a result of Mr. Prince's public statements on material issues in this case. Mr. Prince's Motion to Quash acknowledges the relevance of his testimony. In fact, Mr. Prince, as Defendants' agent, has made public statements going directly to Mrs. Porter's proof of motive in this case. Mr. Prince's statements are precisely the type of

statements deemed non-hearsay and admissible as evidence pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence.

## FACTUAL BACKGROUND

Mr. Prince has been the attorney for over two years for Andrea Cabral and the Suffolk County Sheriff's Department in connection with the federal government's investigation into the barring of Mrs. Porter. Deposition of Andrea Cabral 33:18-24, 34:1-20, 68:11-16, May 9, 2005; 253:14-24, 254:1-24, 255:1-24, 256:1-24, 269:2-15, cited excerpts attached hereto as Exhibit A ("Cabral Dep."); Letter from John T. McNeil to Walter Prince, dated Sept. 28, 2005, attached hereto as Exhibit B; Letter from Walter B. Prince to John T. McNeil, dated Oct. 7, 2005, attached hereto as Exhibit C. The full scope and terms of Mr. Prince's agency can presumably be developed on *voir dire*. He has worked on Defendants' behalf with the federal government, the media, and in connection with this civil lawsuit.

Mr. Prince filed a Notice of Appearance dated November 28, 2005 in the instant lawsuit on behalf of Defendants as well as Elizabeth Keeley and Viktor Theiss, top officials at the SCSD. Notice of Appearance, attached hereto as Exhibit D. The Affidavit of Attorney Walter B. Prince ("Prince Affidavit") submitted in support of the Motion to Quash affirms his representation of Defendants (though the affidavit is incomplete in its failure also to affirm his civil representation of Defendants, no matter how limited). Notably, Mr. Prince does not and cannot claim that his representation concluded some time ago. Thus, Mr. Prince was, and is, Defendants' agent for the purposes of the rules of evidence.

Mr. Prince has made a number of public statements relating to material issues in this case. Recently – and, notably, four days after filing his Notice of Appearance – Mr. Prince was quoted extensively by Peter Gelzinis ("Mr. Gelzinis") in a column appearing in the December 2,

2005 edition of the *Boston Herald*. Peter Gelzinis, <u>Plenty Behind U.S. Attorney's Battle vs. Sheriff</u>, Boston Herald, Dec. 2, 2005, at 6 ("Gelzinis Article") a copy of which is attached hereto as Exhibit E. Mr. Gelzinis reported Mr. Prince's statements as follows:

> "For two years, I believe (the federal government) tried to leverage (Sheriff Cabral) in a way they never would've dared to do with any other sheriff. And it was done under threat of indictment to suit their own agenda," Prince said.
>
> That "agenda," according to Prince, was to have Cabral step back and allow the FBI to cultivate an informant network in her jail.
>
> "There is simply no way on God's green earth that *we* could surrender control of the jail to the FBI," Prince said. "What they were looking to do, essentially, was run the jail. That's what this case is really all about in my opinion."

Gelzinis Article (emphasis added).[1] Neither the Motion to Quash nor the Prince Affidavit dispute the accuracy of the above-referenced statements. Mr. Prince made these statements as a result of his agency relationship with Defendants. <u>See</u> Prince Aff. ¶ 3.

Mr. Prince does not and cannot claim that all statements he made to the press are simply his own opinion. Indeed, upon receipt of the declination letter from the United States Attorney's Office, he held a televised press conference at which Sheriff Cabral was also present and spoke. It would seem that the press conference was the start of a deliberate plan to have Mr. Prince spread Sheriff Cabral's position, resulting not just in the press conference coverage, but also in the Gelzinis Article followed by a similar article in the *Boston Phoenix*.

## ARGUMENT

Mr. Prince's statements are relevant to motive. Mr. Prince's statements about "cultivating an informant network" and that "[t]here is simply no way on God's green earth that we could surrender control of the jail to the FBI[,]" Gelzinis Article, are relevant to determining

---

[1] In light of the Court's rulings relating to a grand jury investigation, Mrs. Porter seeks only to offer the second and third paragraphs of this article.

3

why Defendants barred Mrs. Porter. See FED. R. EVID. 401. Mr. Prince was speaking for Defendants when he said that "we" could not surrender control of the jail to the F.B.I., a statement that only has meaning as applied to the barring of an F.B.I. informant in the jail two years ago. What Mr. Prince said is in essence what Mrs. Porter alleges – Defendants barred her, because she assisted the F.B.I. in being in Defendants' jail and was part of an incipient informant network. Mr. Prince's Motion to Quash does not contest the factual relevance of Mr. Prince's statements, but instead tries to characterize their relevance as "slight." Motion to Quash 4.

Moreover, Mr. Prince was simply summarizing a fact that has emerged repeatedly during this lawsuit: that the SCSD and the F.B.I. have engaged in a long-running feud dating back at least to the beginning of Sheriff Cabral's administration. For example, in approximately November 2002, the F.B.I. placed a recording device on inmate Renee Rosario as part of a criminal investigation. Sheriff Cabral testified that the SCSD was not sufficiently "in the loop" with respect to this operation, which was upsetting to the SCSD. Cabral Dep. 46-47. In addition, Sheriff Cabral testified about a heated dispute between the SCSD and federal law enforcement officials concerning the U.S. Attorney's submission of a target letter to an SCSD corrections officer who had been cooperating with SID in a drug investigation. Cabral Dep. 266-68. Thus, it is apparent that Sheriff Cabral and other top SCSD policymakers have long had the view that the F.B.I. was trying to wrest the jail from the sheriff. In making his comments to Mr. Gelzinis, Mr. Prince was not saying anything new. He was simply repeating Sheriff Cabral's long-held view with his own typical flair and panache.

Not only are Mr. Prince's statements relevant, they also are admissible non-hearsay evidence as admissions of a party-opponent pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. Rule 801(d)(2)(D) "excludes from the hearsay rule statements offered against a

party and made 'by the party's agent or servant concerning a matter within the scope of the agency or employment,...during the existence of the relationship." Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 72 (1st Cir. 2001) (quoting Rule 801(d)(2)(D)). "To qualify as nonhearsay under Rule 801(d)(2)(D)...'it need only be shown that the statement be related to a matter within the scope of the agency.'" Larch, 272 F.3d at 72 (internal citation omitted).[2] The scope of Mr. Prince's agency was to represent Defendants as to the subject matter of this case. The statements relate directly to that.

The law also does not permit Mr. Prince to erect an artificial protective barrier between his statements and Defendants. The argument that an agent's statements are personal opinion or otherwise non-attributable to a party already has been rejected in this circuit where the statements relate to a matter within the scope of the agency or employment relationship. In Larch v. Mansfield Municipal Electric Department, 272 F.3d 63, 65 (1st Cir. 2001), a former town manager was fired in retaliation for the manager's refusal to hire a friend of a Mansfield Electric Department commissioner. The defendants attempted to dodge responsibility for a series of damaging statements by claiming that the statements were made outside the scope of the declarant's employment, id. at 72, just as Mr. Prince now claims that his statements were outside the scope of his employment. In Larch, a deceased commissioner had expressed his opinion that "'we are the town fathers and people should do what we tell them to do,' and that 'he would kick [Larch's] ass out of town and...make life miserable for the department.'" Id. Following a jury verdict for the town manager, the First Circuit upheld the district court's

---

[2] See also Noviello v. City of Boston, 398 F.3d 76, 81, 85 (1st Cir. 2005) (ruling statements made by supervisors relating to plaintiff's reports of harassment admissible pursuant to Rule 801(d)(2)(D) against municipal defendant); Pierce v. Sears, Roebuck & Co., 2005 WL 226224, at *3 (D. Me. Jan. 31, 2005) (ruling statements by company manager relating to employee's suitability for training admissible against defendant both to illustrate employee's understanding and as 801(d)(2)(D) admission of party-opponent).

5

admitting these statements pursuant to Rule 801(d)(2)(D). Id. at 72-73. "While [the commissioner's] job description obviously did not include making life miserable for the Electric Department," the court wrote, "the statements were related to a matter within the scope of his employment...[and] [t]he district court properly admitted [the commissioner's] statements as nonhearsay under Rule 801(d)(2)(D)." Id.[3] Here, Mr. Prince's job description did include talking to the press and others about Defendants' motivation.[4] In any event, Mr. Prince's statements unquestionably "relate" directly to a matter within the scope of his representation of Defendants in the federal criminal investigation and in connection with this civil lawsuit. His statements are, therefore, not hearsay.

Finally, allowing Mr. Prince to testify will not implicate in any manner any attorney-client privilege. It is not "driving a wedge between Mr. Prince and his client[.]" Motion to Quash 4. Mrs. Porter seeks to have Mr. Prince testify to his relevant public statements, not anything he said to or heard from his clients.

---

[3] See also White v. Honeywell, Inc., 141 F.3d 1270, 1276 (8th Cir. 1998) (affirming finding that supervisor's racial slur was 801(d)(2)(D) admission of party-opponent against employer where slur related to matter within scope of employment and that district court abused its discretion when it then excluded the slur on Rule 403 basis); Valdizan v. Rivera-Hernandez, 376 F. Supp. 2d 161, 168-69 (D.P.R. 2005) (ruling statements made by non-party human resources director that related to reasons for firing employee 801(d)(2)(D) vicarious admissions by defendant's agent against defendant in plaintiff's claim for violation of First Amendment rights).

[4] Mr. Prince's statements also are non-hearsay admissions of a party-opponent pursuant to Rule 801(d)(2)(B), because Defendants presumably read Mr. Prince's statements in the Gelzinis Article and did not disavow them. See, e.g., Zucco v. Kane, 439 Mass. 503, 508 (2003) (affirming admissibility of adoptive admission based on inferring party's assent to statements); see also Phipps v. Comprehensive Cmty. Dev., 2005 WL 287413, at *13-*14 (S.D.N.Y. Feb. 4, 2005) (noting that "'any ambiguities and questions surrounding a party's actions and silence with regard to adoptive admissions should be for the jury to assess'" following an initial evidentiary determination) (internal citation omitted). Even if Mr. Prince expressed his own opinion in the Gelzinis Article, Defendants have adopted it as their own by their silence.

6

## CONCLUSION

For the foregoing reasons, Mrs. Porter respectfully requests that this Court deny the Motion To Quash Subpoena Served On Attorney Walter B. Prince and enforce the subpoena requiring Mr. Prince to testify at the trial of this matter to his relevant public statements.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

/s/ Joseph F. Savage, Jr.
Joseph F. Savage Jr. (BBO #443030)
David S. Schumacher (BBO #647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: January 9, 2006

LIBA/1664985.1