# Exhibit B

---

**Page 1**

```
                                    VOL:  I
                                    PAGES: 1-201
                                    EXHIBITS: 1-7


             UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS


 * * * * * * * * * * * * * *
 SHEILA J. PORTER,            *
               Plaintiff      *
         -vs-                 *  Civil Action
 ANDREA CABRAL; SUFFOLK COUNTY*  No. 04-11935-DEW
 SHERIFF'S DEPARTMENT; SUFFOLK*
 COUNTY and CORRECTIONAL MEDICAL*
 SERVICES, INC.,              *
               Defendants     *
 * * * * * * * * * * * * * *




      DEPOSITION OF ANDREA CABRAL, ESQUIRE, a witness
 called on behalf of the Plaintiff, in the
 above-captioned matter, said deposition being
 taken pursuant to the Federal Rules of
 Civil Procedure, before Patricia M.
 McLaughlin, a Certified Shorthand Reporter and
 Notary Public in and for the Commonwealth of
 Massachusetts, at the offices of Goodwin Procter
 LLP, Exchange Place, Boston, Massachusetts, on
 Friday, May 6, 2005, commencing at 9:40 a.m.



             McLAUGHLIN & ASSOCIATES COURT REPORTERS
                 92 DEVIR STREET, SUITE 304
                 MALDEN, MASSACHUSETTS  02148
                        781.321.8922
                    WWW.E-STENOGRAPHER.COM
```

---

**Page 2**

```
 APPEARANCES:

 JOSEPH F. SAVAGE, JR., ESQUIRE
         and
 DAVID S. SCHUMACHER, ESQUIRE
 GOODWIN PROCTER LLP
 Exchange Place
 Boston, Massachusetts  02109
      On behalf of the Plaintiff
 ELLEN CAULO, ESQUIRE
 GENERAL COUNSEL
 Suffolk County Sheriff's Department
 200 Nashua Street
 Boston, Massachusetts  02114
      On behalf of the Defendants,
      Andrea Cabral, Suffolk County
      Sheriff's Department and Suffolk
      County
 ALEXANDRA B. HARVEY, ESQUIRE
 ADLER, COHEN, HARVEY, WAKEMAN & GUEKGUEZIAN
 230 Congress Street
 Boston, Massachusetts  02110
      On behalf of the Defendant,
      Correctional Medical Services, Inc.
```

---

**Page 3**

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ANDREA CABRAL, ESQUIRE | | | | |
| By Mr. Savage | 8 | | | |

---

**Page 4**

| No. | Exhibit | Page |
|---|---|---|
| 1 | S220 Policy | 37 |
| 2 | Memorandum dated November 5, 2004 | 109 |
| 3 | Press Statement | 132 |
| 4 | Answers to Interrogatories | 157 |
| 5 | Memorandum dated May 23, 2003 | 174 |
| 6 | Letter dated July 22, 2003 | 198 |
| 7 | Letter dated July 23, 2003 | 198 |

**41**

```
 1        contained in S220 if it's contained anywhere?
 2    A   If it's contained anywhere, yes.
 3    Q   And you indicated to us that there has now
 4        been a modification of S220 that addresses
 5        that issue differently?
 6    A   That clarifies that issue, yes.
 7    Q   And again, what needed to be clarified was
 8        what?  What is not clear here that is now
 9        clear in your view under the new
10        soon-to-be-issued policy?
11    A   Well, I start by saying that I don't believe
12        that the previous policy was unclear, but at
13        the suggestion of AUSA Huggard, we agreed to
14        add language that indicates that employees
15        are permitted certainly to report -- I
16        believe the words are suspected illegal or
17        criminal activity to outside law enforcement
18        agencies, along with the commensurate
19        responsibility to report them internally.
20    Q   And the entirety of that new policy is
21        consistent with the recommendations, as you
22        understand it, from Mr. Huggard?
23    A   I believe so.
24    Q   He was focused both on the fact that there
```

**42**

```
 1        should be reporting to outside agencies and
 2        also mandatory reporting to internal
 3        investigators as well?
 4            MS. CAULO:  Objection.
 5    A   No, he was focused on reporting to the FBI.
 6    Q   And policy or not policy, I mean you've
 7        always understood, I presume, particularly
 8        given your background, that there is a First
 9        Amendment right to speak, right?
10    A   Yes.
11    Q   And that the First Amendment right would
12        encompass anyone's right to speak to the FBI
13        or to whomever else they wanted?
14    A   I assume so, yes.
15    Q   And I'm just saying obvious stuff here.
16        That's a long well-established right that
17        you're personally completely familiar with,
18        right?
19            MS. CAULO:  Objection.
20    A   I'm familiar with the First Amendment.
21    Q   And you're familiar that that's a right that
22        encompasses a right to speak to outside
23        agencies, including the FBI?
24            MS. CAULO:  Objection.
```

**43**

```
 1    A   Yes, it encompasses the right to speak, and I
 2        assume that would include speaking to anyone
 3        in outside law enforcement.
 4    Q   Do you know an individual, a former inmate or
 5        maybe a present inmate, named Rene Rosario?
 6    A   I know of him.  I don't know him personally.
 7    Q   Have you ever met him?
 8    A   No.
 9    Q   Have you ever seen him?
10    A   No.
11    Q   Do you know when you first came to know of
12        him?
13    A   He was first mentioned to me shortly after I
14        became sheriff, and he was identified to me
15        as an inmate who had worn an electronic
16        recording device inside the institution.
17    Q   Do you remember how long you had been sheriff
18        when you learned that?
19    A   My memory is that it was within the first
20        month or so.
21    Q   Do you remember who you learned that from?
22    A   I believe I learned it from former SID chief,
23        Richie DeMeo.
24    Q   What was the context in which he's bringing
```

**44**

```
 1        this past cooperation of the inmate with the
 2        FBI to your attention?
 3            MS. CAULO:  Objection.
 4            MR. SAVAGE:  What's the basis for the
 5        objection?
 6            MS. CAULO:  Read back the question,
 7        because I thought you said something I wasn't
 8        accepting as a fact that had been
 9        established.
10            MR. SAVAGE:  I just need to hear it so I
11        can fix it.
12            (Reporter read question as recorded.)
13            MS. CAULO:  I wasn't sure that you had
14        established that the answer had previously
15        established that the wearing of the recording
16        device was at the behest of or with of FBI.
17    Q   We'll do it in pieces.  Did I understand you
18        to say that -- is it Officer DeMeo?
19    A   He was the chief of SID.
20    Q   That Chief DeMeo was explaining to you that
21        Inmate Rosario had cooperated by wearing a
22        wire at the request of the FBI?
23    A   I don't recall exactly what he said, but I
24        certainly came away with the understanding
```