Jury tells Cabral to pay damages to ousted nurse - The Boston Globe                Page 1 of 2



THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

## Jury tells Cabral to pay damages to ousted nurse
### Finds rights were violated

The Boston Globe

By Shelley Murphy, Globe Staff | January 20, 2006

A federal jury found yesterday that Suffolk County Sheriff Andrea J. Cabral acted with "callous and reckless disregard" for a nurse practitioner's rights by barring her from the House of Correction in 2003 for talking with the FBI about an inmate's allegation of abuse.

Jurors, who deliberated for nine hours over two days in US District Court, awarded Sheila Porter, 62, of Upton $360,000 in compensatory damages to cover her lost wages and ordered Cabral and the Sheriff's Department to pay $250,000 more in punitive damages.

A juror, who spoke on the condition that he not be named, said last night that jurors believed there was strong evidence that Porter was barred for talking to the FBI, but that many jurors felt that Cabral was pressured into her decision by some of her top staff members.

"I think Andrea Cabral got set up by the people under her," said the juror, adding that jurors had deliberated for hours over how much money to award Porter in punitive damages because some of them felt that the Sheriff's Department was to blame, rather than Cabral personally.

"We didn't want to crucify Andrea, because she's doing a good job," said the juror. But, he added, Cabral should not have barred Porter for life.

Porter, who cried after jurors announced their decision just before 4:30 p.m., said, "I have my reputation back."

Cabral, after huddling briefly with her lawyers and an aide in a small room next to the courtroom, said: "I respect the work of the jury as I respect the work of all juries. I respectfully disagree with the verdict."

The sheriff, who had testified that she barred Porter in June 2003 for failing to immediately document an inmate's allegations of abuse by a correctional officer and not because Porter talked to the FBI, said she will review the case with her lawyers to decide whether to appeal the verdict. She declined to answer questions.

Jurors awarded Porter considerably less than the $2 million her lawyer had said was the maximum amount he felt she was entitled to under the law when he filed the suit two years ago.

But Porter said yesterday that the suit was always about clearing her name, rather than the money, and she was elated when the jurors announced that they agreed that her constitutional rights had been violated. She added that she was OK with whatever they decided on damages.

"I don't have to worry about someone saying I was barred because I didn't do paperwork," said Porter, who has more than 34 years of nursing experience and currently works for UMass Correctional Health Program. "I did what I was supposed to do as a patient advocate and a nurse practitioner."

Her lawyer, Joseph F. Savage Jr., said, "The jury decided that Sheila deserved to be compensated, and the sheriff deserved to be punished."

Kenneth Kaiser, the special agent in charge of the FBI's Boston office, said after the verdict that Porter "did what she thought she had to do."

"I'm really very happy in the end that they found she was trying to do the right thing," he said.

http://www.boston.com/news/local/massachusetts/articles/2006/01/20/jury_tells_cabral_to...    1/20/2006

Jurors awarded Porter $250,000 in punitive damages after answering yes to the question of whether Porter proved that Cabral "acted with a callous and reckless disregard to the plaintiff's federally protected rights" when she barred the nurse practitioner from the House of Correction.

During the seven-day trial, Porter and an FBI agent testified that she was recruited by the FBI in late 1999 to provide information for an investigation into allegations that correctional officers had raped and beaten inmates and were involved in drug dealing under the administration of Sheriff Richard Rouse, who was Cabral's predecessor. Cabral took over as sheriff in November 2002.

Porter told jurors that on May 19, 2003, an inmate who had previously cooperated with the FBI told her he had been assaulted by a correctional officer, showed her bruises, and urged her to call the FBI.

Because she feared for his safety, Porter said, she immediately reported the inmate's allegations to a supervisor, who relayed them to a top Cabral staff member, and called the FBI the next day.

Weeks later, Porter said, she was grilled by internal sheriff's investigators about what she told the FBI. Then, on June 10, 2003, Porter said, a deputy superintendent told her she was barred from the facility "because you spoke to an outside agency."

As a result of her barring, Porter, who worked for a private firm contracted to provide health services to inmates, was fired from the company.

But Cabral testified that Porter's conversations with the FBI had nothing to do with her barring, and the sheriff said she didn't know that Porter was an informant when she made her decision.

The sheriff testified that Porter was barred because she failed to document the inmate's allegations of abuse in his medical record and waited nine days to file a written report about the inmate's assertion, although she had been ordered to file the report immediately.

Porter told jurors that she didn't believe she needed to document the inmate's allegations in his medical records because she had had only a brief encounter with him through his cell door and someone else had conducted his medical exam.

The eight men and four women on the jury, which included a nurse from Brigham and Women's Hospital, unanimously sided with Porter. They found that Porter's call to the FBI about the inmate's allegations of abuse was a "substantial or motivating factor" in Cabral's decision to bar her from the House of Correction. They also found that Cabral failed to prove that Porter would have been barred if she hadn't called the FBI.

The juror said he thought Cabral "avoided a lot of issues" while testifying. He said jurors didn't believe that Porter was barred for failing to file paperwork because, "I think she was letting them all slack off on the paperwork." ∎

© Copyright 2005 The New York Times Company