# Exhibit C

1

VOL: I
PAGES: 1-201
EXHIBITS: 1-7

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * *
SHEILA J. PORTER,                *
                Plaintiff        *
        -vs-                      *   Civil Action
ANDREA CABRAL; SUFFOLK COUNTY     *   No. 04-11935-DPW
SHERIFF'S DEPARTMENT; SUFFOLK     *
COUNTY and CORRECTIONAL MEDICAL   *
SERVICES, INC.,                   *
                Defendants        *
* * * * * * * * * * * * * * *

DEPOSITION OF ANDREA CABRAL, ESQUIRE, a witness
called on behalf of the Plaintiff, in the
above-captioned matter, said deposition being
taken pursuant to the Federal Rules of
Civil Procedure, before Patricia M.
McLaughlin, a Certified Shorthand Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the offices of Goodwin Procter
LLP, Exchange Place, Boston, Massachusetts, on
Friday, May 6, 2005, commencing at 9:40 a.m.

McLAUGHLIN & ASSOCIATES COURT REPORTERS
92 DEVIR STREET, SUITE 304
MALDEN, MASSACHUSETTS  02148
781.321.8922
WWW.E-STENOGRAPHER.COM

2

APPEARANCES:

JOSEPH F. SAVAGE, JR., ESQUIRE

        and

DAVID S. SCHUMACHER, ESQUIRE

GOODWIN PROCTER LLP

Exchange Place

Boston, Massachusetts  02109

        On behalf of the Plaintiff

ELLEN CAULO, ESQUIRE

GENERAL COUNSEL

Suffolk County Sheriff's Department

200 Nashua Street

Boston, Massachusetts  02114

        On behalf of the Defendants,

        Andrea Cabral, Suffolk County

        Sheriff's Department and Suffolk

        County

ALEXANDRA B. HARVEY, ESQUIRE

ADLER, COHEN, HARVEY, WAKEMAN & GUERGUEZIAN

230 Congress Street

Boston, Massachusetts  02110

        On behalf of the Defendant,

        Correctional Medical Services, Inc.

3

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ANDREA CABRAL, ESQUIRE | | | | |
| By Mr. Savage | 8 | | | |

EXCERPT

4

| No. | Exhibit | Page |
|---|---|---|
| 1 | S220 Policy | 37 |
| 2 | Memorandum dated November 5, 2004 | 109 |
| 3 | Press Statement | 132 |
| 4 | Answers to Interrogatories | 157 |
| 5 | Memorandum dated May 23, 2003 | 174 |
| 6 | Letter dated July 22, 2003 | 198 |
| 7 | Letter dated July 23, 2003 | 198 |

**41**

1  contained in S220 if it's contained anywhere?

2 A  If it's contained anywhere, yes.

3 Q  And you indicated to us that there has now

4  been a modification of S220 that addresses

5  that issue differently?

6 A  That clarifies that issue, yes.

7 Q  And again, what needed to be clarified was

8  what?  What is not clear here that is now

9  clear in your view under the new

10  soon-to-be-issued policy?

11 A  Well, I start by saying that I don't believe

12  that the previous policy was unclear, but at

13  the suggestion of AUSA Huggard, we agreed to

14  add language that indicates that employees

15  are permitted certainly to report -- I

16  believe the words are suspected illegal or

17  criminal activity to outside law enforcement

18  agencies, along with the commensurate

19  responsibility to report them internally.

20 Q  And the entirety of that new policy is

21  consistent with the recommendations, as you

22  understand it, from Mr. Huggard?

23 A  I believe so.

24 Q  He was focused both on the fact that there

**42**

1  should be reporting to outside agencies and

2  also mandatory reporting to internal

3  investigators as well?

4  MS. CAULO:  Objection.

5 A  No, he was focused on reporting to the FBI.

6 Q  And policy or not policy, I mean you've

7  always understood, I presume, particularly

8  given your background, that there is a First

9  Amendment right to speak, right?

10 A  Yes.

11 Q  And that the First Amendment right would

12  encompass anyone's right to speak to the FBI

13  or to whomever else they wanted?

14 A  I assume so, yes.

15 Q  And I'm just saying obvious stuff here.

16  That's a long well-established right that

17  you're personally completely familiar with,

18  right?

19  MS. CAULO:  Objection.

20 A  I'm familiar with the First Amendment.

21 Q  And you're familiar that that's a right that

22  encompasses a right to speak to outside

23  agencies, including the FBI?

24  MS. CAULO:  Objection.

**43**

1 A  Yes, it encompasses the right to speak, and I

2  assume that would include speaking to anyone

3  in outside law enforcement.

4 Q  Do you know an individual, a former inmate or

5  maybe a present inmate, named Rene Rosario?

6 A  I know of him.  I don't know him personally.

7 Q  Have you ever met him?

8 A  No.

9 Q  Have you ever seen him?

10 A  No.

11 Q  Do you know when you first came to know of

12  him?

13 A  He was first mentioned to me shortly after I

14  became sheriff, and he was identified to me

15  as an inmate who had worn an electronic

16  recording device inside the institution.

17 Q  Do you remember how long you had been sheriff

18  when you learned that?

19 A  My memory is that it was within the first

20  month or so.

21 Q  Do you remember who you learned that from?

22 A  I believe I learned it from former SID chief,

23  Richie DeMeo.

24 Q  What was the context in which he's bringing

**44**

1  this past cooperation of the inmate with the

2  FBI to your attention?

3  MS. CAULO:  Objection.

4  MR. SAVAGE:  What's the basis for the

5  objection?

6  MS. CAULO:  Read back the question,

7  because I thought you said something I wasn't

8  accepting as a fact that had been

9  established.

10  MR. SAVAGE:  I just need to hear it so I

11  can fix it.

12  (Reporter read question as recorded.)

13  MS. CAULO:  I wasn't sure that you had

14  established that the answer had previously

15  established that the wearing of the recording

16  device was at the behest of or with of FBI.

17 Q  We'll do it in pieces.  Did I understand you

18  to say that -- is it Officer DeMeo?

19 A  He was the chief of SID.

20 Q  That Chief DeMeo was explaining to you that

21  Inmate Rosario had cooperated by wearing a

22  wire at the request of the FBI?

23 A  I don't recall exactly what he said, but I

24  certainly came away with the understanding