31509   329

services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

31509  330

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3022 1/01 *(page 6 of 11 pages)*



31509  331

As 'a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3022  1/01  *(page 7 of 11 pages)*



31509  332

**12.· Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**MASSACHUSETTS**–Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3022 1/01  *(page 8 of 11 pages)*

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



31509  334

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.



31509  335

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          ANDREA J. CABRAL                  -Borrower

_____          _____ (Seal)
                                                                           -Borrower

_____ (Seal)            _____ (Seal)
                     -Borrower                                             -Borrower


Commonwealth of MASSACHUSETTS         )
County of        SUFFOLK              )

   On this      25TH   day of      APRIL                              , 2003   , before me personally
appeared ANDREA J. CABRAL, to me known to be the person(s) described in and who executed the foregoing
instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:

         My Commission Expires on May 18, 2008      _____
    ,                                               Notary Public

                                                    _____
                                                    (Typed or printed name)


MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3022 1/01  *(page 11 of 11 pages)*

Schedule "A"

That certain real estate situated in the City/Town of Jamaica Plain, Suffolk County, the Commonwealth of Massachusetts, being unit number 2 of Carriage Building Condominium, created by Declaration of Condominium dated January 26, 2000, and recorded in the Suffolk County Registry of Deeds in 24629/90.

Together with an undivided 7.72% interest in and to the common areas appurtenant to said Condominium.

However bounded and described, being the same premises conveyed by deed recorded in the Suffolk County Registry of Deeds in Book 24830, Page 140, to which reference is hereby had and made for a more particular and minute description.

Subject to restrictions, if any.
Subject to easements, if any.

Andrea J Cabral
172 Green Street #2
Jamaica Plain, Suffolk County, MA  02130

31509   337

# CONDOMINIUM RIDER

Loan Number 03010207

THIS CONDOMINIUM RIDER is made this ___25TH___ day of _____APRIL_____ ,2003 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to EAGLE NATIONAL BANK (the "Lender") of the same date and covering the
Property described in the Security Instrument and located at:

**172 GREEN ST. #2, JAMAICA PLAIN, MASSACHUSETTS 02130**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
**CARRIAGE BUILDING CONDOMINIUMS**
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code
of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all
dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is
satisfactory to Lender and which provides insurance coverage in the amounts (including deductible
levels), for the periods, and against loss by fire, hazards included within the term "extended
coverage," and any other hazards, including, but not limited to, earthquakes and floods, from
which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the
Periodic Payment to Lender of the yearly premium installments for property insurance on the
Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage
on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage
provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair
following a loss to the Property, whether to the unit or to common elements, any proceeds payable
to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by
the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure
that the Owners Association maintains a public liability insurance policy acceptable in form,
amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
ANDREA J. CABRAL                                    -Borrower

_____ (Seal)
                                                    -Borrower

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140 1/01

(page 2 of 2 pages)

## TAX AND INSURANCE RIDER TO MORTGAGE
### ( TO BE RECORDED WITH MORTGAGE INSTRUMENT )

DATE: **APRIL 25, 2003**

PROPERTY ADDRESS: **172 GREEN ST. #2**
**JAMAICA PLAIN, MASSACHUSETTS 02130**

## MONTHLY PAYMENTS FOR TAXES AND INSURANCE

1.     Borrower(s) Obligations:

Borrower agrees that upon 30 days written notice from Lender, Borrower will pay to Lender all amounts necessary to pay for taxes, hazard insurance, flood insurance, mortgage insurance (if applicable), assessments, leasehold payments or ground rents (if any). I will pay these amounts to Lender unless Lender advises me, in writing, that I do not have to do so or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the note.

Each of my payments will be the sum of the following:

(a)  One-twelfth of the estimated yearly taxes and assessments on the property which under the law may be superior to this Security Instrument; plus
(b)  One-twelfth of the estimated yearly leasehold payments or ground rents on the property, if any; plus
(c)  One-twelfth of the estimated yearly premium for hazard insurance covering the property; plus
(d)  One-twelfth of the estimated yearly premium for mortgage insurance (if any): plus
(e)  One-twelfth of the estimated yearly premium for flood insurance (if required)

Lender may estimate, from time to time, my yearly taxes, assessments, insurance premiums, leasehold payments or ground rents. Lender will use existing assessments, bills, and reasonable estimates of future assessments and bills. The amounts that I pay to Lender for these items under this Rider to the Mortgage will be called the "funds". These may be commingled with the funds of the Lender unless the law requires otherwise.

PAGE 1 OF 2

### ( THIS RIDER MUST BE RECORDED WITH MORTGAGE INSTRUMENT )

31509   340

2.    Lender's Obligations:

Lender will use the funds to pay the above-listed items. Lender will give to me, without charge, an annual accounting of the funds. The accounting must show all additions to and deductions from the funds and the reason for each deduction.

3.    Adjustments:

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Rider to the Mortgage will be too great. If this occurs at a time when I am keeping all of my promises and agreements made with the Security Instrument, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments. There will be excess amounts if, at any time, the sum of the amount of funds which Lender is holding or keeping PLUS the amount of the monthly payments of funds which I still must pay between that time and the due dates of these items is greater than the amount necessary to pay the above-listed items when they are due.

If, when payments of these items are due, Lender has not received enough funds to make these payments, I will pay to Lender whatever additional amount is necessary to pay these items in full. I must pay this additional amount in one or more payments, as Lender may require.

_____ (Seal)
ANDREA J. CABRAL

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

PAGE 2 OF 2

( THIS RIDER MUST BE RECORDED WITH MORTGAGE INSTRUMENT )

31321  146

WHEN RECORDED RETURN TO:

6

ANDREA J CABRAL
172 GREEN ST UNIT 2
JAMAICA PLAIN, MA  02130

Loan No.  685119555

## DISCHARGE OF MORTGAGE

Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, GMAC Mortgage Corporation) holder of a mortgage

from ANDREA J. CABRAL

to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (SOLELY AS NOMINEE FOR LENDER, GMAC MORTGAGE CORPORATION )

dated October 26, 2001

recorded with SUFFOLK County Registry of Deeds

Instrument No. 323, Book 27557, Page 254, Certificate ---, acknowledge satisfaction of the same.

Property Address: 172-178 GREEN STREET UNIT 2, JAMAICA PLAIN

WITNESS their hand and seal this May 14, 2003.

Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, GMAC Mortgage Corporation)

By: _____
Roberta Pettengill, Assistant Secretary

CORPORATE SEAL

STATE OF IOWA
County of  Black Hawk

On May 14, 2003, before me, J. Simon, personally appeared Roberta Pettingill, Assistant Secretary, personally known to me to be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

> J. SIMON
> NOTARIAL SEAL - STATE OF IOWA
> COMMISSION NUMBER 712043
> MY COMMISSION EXPIRES AUG. 16, 2004

Notary's Signature
J. Simon                    08/16/2004
2003-05-02          MIN: 100037506851195553    MERS Telephone: 1-888-679-6377

(Notary's Seal)

05/23/2003 Doc: 0006

**35412  289**

SUFFOLK REGISTRY
~~~~~~~~~ & EXAM ATTEST                    127

2004 SEP -3  AM 8: 44

*Jeremiah M. Rosen*
REGISTER OF DEEDS

Commonwealth of Massachusetts _____ Space Above This Line For Recording Data _____

REFERENCE # 20041957000140     ACCOUNT # 0664-654-0141838-1998

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is 08/02/2004 and the parties, their addresses and tax identification numbers, if required, are as follows:
   MORTGAGOR:
   ANDREA J. CABRAL

150

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgements.
   LENDER: Wells Fargo Bank, N.A.
   P. O. BOX 31557
   BILLINGS, MT 59107

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, upon the statutory condition, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, and mortgages to Lender, with the power of sale and mortgage covenants, the following described property:
   SEE ATTACHED EXHIBIT

09/03/2004 Doc: 0127

BOOK 24830, PAGE 140
TAX ID# 1102272004
The property is located in SUFFOLK                          at 172 GREEN ST UNIT 2
                                    (County)
                                    , JAMAICA PLAIN                , Massachusetts 02130
       (Address)                        (City)                         (ZIP Code)

**After Recording Return To:** Wells Fargo Bank, N.A.
   P. O. BOX 31557          BILLINGS, MT 59107          DOCUMENT MANAGEMENT

MASSACHUSETTS - MORTGAGE
EQI21A (04/2004)

35412  290

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 50,000.00    . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt dated 08/02/2004    , together with all amendments, extensions, modifications or renewals. The maturity date of the Secured Debt is 08/02/2044    .
   B. All future advances from Lender to Borrower under such evidence of debt, whether obligatory or discretionary. All obligatory future advances and advances to cure breaches of covenants contained in the Mortgage are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make an additional or future loans or advances which exceed $ 50,000.00    .
   C. All sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

8. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

9. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

10. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

11. **ASSIGNMENT OF LEASES AND RENTS.** Upon statutory condition, Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender, with mortgage covenants, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument. Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument. Mortgagor agrees that this assignment is effective as to third parties on the recording of this Security Instrument and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender

after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

12. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the property is a unit in a Condominium Project or is part of a Planned Unit Development ("PUD"), Mortgagor agrees to the following:

    A. Obligations. Mortgagor shall perform all of Mortgagor's obligations under the Constituent Documents. The "Constituent Documents" are the: (I) Declaration or any other document which creates the Condominium Projects or PUD and any homeowners association or equivalent entity ("Owners Association"); (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Mortgagor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

    B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project or PUD which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Mortgagor's obligation under Section 19 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Mortgagor shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to Property, whether to the unit or to common elements, any proceeds payable to Mortgagor are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to Mortgagor.

    C. Flood Insurance. Mortgagor agrees to maintain flood insurance for the life of the Secured Debt which is acceptable, as to form, amount and extent of coverage to Lender.

    D. Public Liability Insurance. Mortgagor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

    E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Mortgagor in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 18.

    F. Lender's Prior Consent. Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management by the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    G. Remedies. If Mortgagor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amount disbursed by Lender under this section shall become additional debt of Mortgagor secured by this Security Instrument. Unless Mortgagor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Secured Debt rate and shall be payable, with interest, upon notice from Lender to Mortgagor requesting payment.

13. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

14. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by statutory law if Mortgagor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by statutory law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the statutory power of sale. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

MASSACHUSETTS - MORTGAGE
EQ121 C (04/2004)

35412  292

15. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lenders' rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

16. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

17. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

18. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

19. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise waived in a separate writing, Mortgagor will be required to pay to Lender funds for taxes, assessments, and any required insurance in escrow. Lender will be required to collect and maintain the escrow funds in accordance with all applicable state and federal laws.

20. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

21. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or

35412  293

any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

22. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

23. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

24. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property and relinquishes all other rights in the Property.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

  [N/A] **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

  [N/A] **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

  [N/A] **Additional Terms.**

26. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

  [N/A] Third Party Rider
  [N/A] Leasehold Rider
  [N/A] Other N/A _____

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_____    _____ (Seal)
(Mortgagor) ANDREA J CABRAL                   (Date)

_____    _____ (Seal)
(Mortgagor)                                   (Date)

_____    _____ (Seal)
(Mortgagor)                                   (Date)

_____    _____ (Seal)
(Mortgagor)                                   (Date)

_____    _____ (Seal)
(Mortgagor)                                   (Date)

_____    _____ (Seal)
(Mortgagor)                                   (Date)

35412  294

**Acknowledgement**

A notary shall take the **acknowledgement** of the signature or mark of persons acknowledging for themselves or in any representative capacity by using substantially the following form:     Commonwealth of _Massachusetts_ ), ss.

County of _Suffolk_ ), ss.

On this _5th_ day of _August_, 20_04_, before me, the undersigned notary public, personally appeared _Andrea J. Cabral_ (name of document signer), proved to me through satisfactory evidence of identification, which were _MA. license_, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(as partner for _____, a corporation)

(as _____ for _____, a corporation)

(as attorney in fact for _____, the principal)

(as _____ for _____, (a) (the) _____ )

_Elizabeth O. Keeley_ (official signature and seal of notary)
_attorney_

My commission expires _9/15/09_

**Acknowledgement**

A notary shall take the **acknowledgement** of the signature or mark of persons acknowledging for themselves or in any representative capacity by using substantially the following form:     Commonwealth of _____ ), ss.

County of _____ ), ss.

On this _____ day of _____, 20___, before me, the undersigned notary public, personally appeared _____ (name of document signer), proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(as partner for _____, a corporation)

(as _____ for _____, a corporation)

(as attorney in fact for _____, the principal)

(as _____ for _____, (a) (the) _____ )

_____ (official signature and seal of notary)

My commission expires _____

MASSACHUSETTS - MORTGAGE
EQ121 F (04/2004)

35412   295

# Exhibit A

Reference #: 20041957000140
Acct #: 0654-664-0141838-1998

THE FOLLOWING DESCRIBED PROPERTY IN SUFFOLK COUNTY, MASSACHUSETTS: UNIT 2 (THE 'UNIT'), A UNIT IN THE CONDOMINIUM AT 172-178 GREEN STREET, BOSTON (JAMAICA PLAIN DISTRICT), SUFFOLK COUNTY, MASSACHUSETTS, KNOWN AS THE CARRIAGE BUILDING CONDOMINIUM (THE 'CONDOMINIUM'), CREATED PURSUANT TO AND SUBJECT TO THE PROVISIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 183A BY MASTER DEED DATED JANUARY 13, 2000 AND RECORDED WITH THE SUFFOLK COUNTY REGISTRY OF DEEDS (THE 'REGISTRY') ON JANUARY 26, 2000 IN BOOK 24629 PAGE 90 (HEREINAFTER CALLED THE 'MASTER DEED'). THE POST OFFICE ADDRESS OF THE UNIT IS 172-178 GREEN STREET, JAMAICA PLAIN, MASSACHUSETTS 02130 THE UNIT IS CONVEYED TOGETHER WITH: (A) AN UNDIVIDED 7.72% PERCENTAGE INTEREST APPERTAINING TO THE UNIT IN THE COMMON AREAS AND FACILITIES OF THE CONDOMINIUM AS DESCRIBED IN THE MASTER DEED; (B) THE EXCLUSIVE RIGHT AND EASEMENT TO USE PARKING SPACE 2 AND BASEMENT STORAGE SPACES 2, ALL AS PROVIDED IN THE MASTER DEED, THE LOCATION OF EACH OF WHICH IS SHOWN ON THE PLANS RECORDED WITH THE MASTER DEED (HEREINAFTER CALLED THE 'PLANS'); AND (C) THE BENEFIT OF AND SUBJECT TO ALL EASEMENTS, RIGHTS, RESERVATIONS, RESTRICTIONS, LIMITATIONS, AGREEMENTS AND PROVISIONS CONTAINED IN SAID MASTER DEED, THE DECLARATION OF TRUST CREATING CARRIAGE BUILDING CONDOMINIUM TRUST AND THE RULES AND REGULATIONS CONTAINED THEREIN, RECORDED WITH THE REGISTRY IN BOOK 24629, PAGE 58 (AS THE SAME MAY FROM TIME TO TIME BE AMENDED BY INSTRUMENT DULY FILED WITH SAID REGISTRY), AND SAID INSTRUMENTS AND THE PROVISIONS THEREOF ARE HEREBY INCORPORATED HEREIN BY REFERENCE. ATTACHED HERETO IS A COPY OF A PORTION OF THE PLANS, TO WHICH IS AFFIXED A VERIFIED STATEMENT IN THE FORM PROVIDED FOR IN GENERAL LAWS CHAPTER 183A, SECTION 9, CERTIFYING THAT THE PLAN SHOWS THE UNIT DESIGNATION OF THE UNIT HEREBY CONVEYED AND OF THE IMMEDIATELY ADJOINING UNITS, AND THAT IT FULLY AND ACCURATELY DEPICTS THE LAYOUT OF THE UNIT, ITS LOCATION, DIMENSIONS, APPROXIMATE AREA, MAIN ENTRANCE AND IMMEDIATE COMMON AREA TO WHICH IT HAS ACCESS, AS BUILT. THE UNIT IS INTENDED TO BE USED ONLY FOR 'ARTISTS' MIXED USE' PURPOSES AS THAT TERM IS DEFINED IN THE 'BOSTON ZONING CODE &amp; ENABLING ACT' AS AMENDED THROUGH DECEMBER 13, 1994 (THE 'ZONING LAW') AND FOR ANY SUCH USES ACCESSORY THERETO AS MAY BE PERMITTED FROM TIME TO TIME BY THE ZONING LAW, OTHER APPLICABLE LAWS AND AS SET FORTH IN SAID MASTER DEED AND IS SUBJECT TO THE RESTRICTIONS ON USE SET FORTH IN SECTION 10 OF THE MASTER DEED. THE UNIT IS HEREBY CONVEYED SUBJECT TO AND WITH THE BENEFIT OF, AS THE CASE MAY BE: 1. THE RIGHTS, RESERVATIONS, RESTRICTIONS, ENCUMBRANCES AND APPURTENANCES SET FORTH IN THE MASTER DEED; 2. THE CARRIAGE BUILDING CONDOMINIUM DECLARATION OF TRUST RECORDED WITH THE REGISTRY IN BOOK 24629, PAGE 58; 3. ANY RULES AND REGULATIONS PROMULGATED UNDER SAID CONDOMINIUM DECLARATION OF TRUST; 4. THE OBLIGATION TO PAY THE PROPORTIONATE SHARE ATTRIBUTABLE TO THE UNIT OF THE COMMON EXPENSES; 5. SUCH REAL ESTATE TAXES ATTRIBUTABLE TO THE UNIT FOR THE CURRENT YEAR AS ARE NOT NOW DUE AND PAYABLE; AND 6. RIGHTS OF OTHER UNIT OWNERS TO EXCLUSIVELY USE CERTAIN COMMON AREAS AND FACILITIES, AS SET FORTH IN THE MASTER DEED. FOR GRANTOR'S TITLE, SEE DEED FROM FINANCIAL ASSOCIATES, INC., ET ALS, DATED DECEMBER 19, 1986 AND RECORDED WITH THE REGISTRY IN BOOK 13253, PAGE 334, AND BEING A PORTION OF THE PREMISES CONVEYED THEREBY. FOR GRANTOR'S TITLE, SEE DEED FROM ROBERT R. WILSON, JR., TRUSTEE OF BOSTEK TRUST UNDER DECLARATION OF TRUST DATED DECEMBER 18, 1986, DATED MARCH 27, 2000 AND RECORDED WITH THE REGISTRY IN BOOK 24830, PAGE 140.

EQEXA1 (12/2003)



**City of Boston**
Thomas M. Menino, Mayor

**Residential Energy Saving Tips**

mayor | city council | calendar | e-services | contact

residents
businesses
visitors

## Assessing On-Line



*Ownerships as of January 1, 2005.*

| | |
|---|---|
| **Parcel ID:** | 1102272004 |
| **Address:** | 172 GREEN ST, Boston, MA, 02130 |
| **Property Type:** | Residential/Commercial |
| **Lot Size (sqft):** | 1720 |
| **Owner Name:** | CABRAL ANDREA J |
| **Residential Exemption:** | Yes |
| **Owner Address:** | 172 GREEN ST #2 JAMAICA PLAIN MA 02130 |

| FY2006 | Current Owner(s) | Value History |
|---|---|---|

| | |
|---|---|
| Building value: | $229,500.00 |
| Land Value: | $0.00 |
| FY2006 **Total Assessed Value:** | $229,500.00 |
| FY2006 **Gross Tax:** | $3,675.44 |
| - Residential Exemption : | $1,344.70 |
| - Personal Exemption : | $0.00 |
| FY2006 **Net Tax**\*: | $2,330.74 |

*\* As of January 1st, 2006.*

View the FY2006 **Tax Bill and Payment Information** for this parcel.

Payment questions? Please contact TRAC.

Questions about the property, valuation, ownership? Please click on "CONTACT" on the right.

### Contact

### Assessing Home

Apartment/Lodging Re
Information Requisitio

State Income Tax Ref
Credit

Abatement Procedure

Real Estate Parcel
Consolidation

Assessing On-line

Frequently Asked Que

Facts and Figures

Forms

Letter from the Comm

Make a Property Tax
Payment

Payment Information

Personal Property

Personal Exemptions

How to Apply for Pers
Exemptions

Residential Exemptior

Statutory Exemptions

Human Resources

Useful Contacts

Keyword Search  Comprehensive Search

GO!

© Copyright 2006 City of Boston. All rights reserved. / Privacy & Security