# EXHIBIT 5

Goodwin Procter's Custom Website by Lawyers Weekly                                    Home




Wednesday, May 3, 2006                                                              Lawyers Wee

Our Newspapers | Other Products | Advertise | Help

April 28, 2006

**BREAKING NEWS**

# Lawyer-client calls recorded by sheriff's office

### Defense lawyers concerned 'mistake' more widespread

By David E. Frank
david.frank@lawyersweekly.com

The recent discovery that the Suffolk County Sheriff's Department recorded a year's worth of telephone conversations between a lawyer and her incarcerated client has concerned defense attorneys questioning whether the practice has been more widespread.

The incident came to light in the wake of an e-mail from Boston attorney Chrystal A. Murray warning other defense lawyers to be careful in having phone conversations with clients at the Nashua Street Jail, after she reportedly received discovery in a case that included recorded phone calls she had with her client.

The Sheriff's Department, which admitted the attorney-client recording in Murray's case was a mistake, is reportedly working with legal defense organizations to determine how the error occurred and how to prevent something similar from happening in the future.

But as word of the apparent breach of attorney-client confidentiality spread, some lawyers said they will refrain from discussing sensitive, case-related information over the phone with clients who are incarcerated in Boston and other locations — something that could put a logistical strain on their representation.

#### The e-mail

In the e-mail, which was sent to both private defense attorneys and lawyers from the Committee for Public Counsel Services, Murray explained that she was representing a defendant on an aggravated rape, kidnapping and armed robbery indictment when she received discovery from a prosecutor who had recently been assigned the case.

The discovery included a CD of her client's telephone calls made from the Nashua Street Jail. On the CD were multiple phone conversations that had been recorded between her and her client over the past year, though neither Murray nor her client had consented to the recording of the calls.

Murray told Lawyers Weekly that when she listened to the CD, the first voice she heard was her own, discussing with her client a substantive matter about a witness.

"The prosecutor shouldn't be privy to any conversations I have with my client, even those that aren't about the substance of the case," she said. "I don't think it's appropriate for the prosecution to be able to have a sense of the kind of relationship I have with my client."

Murray added that she filed a motion to impound the CD.

"Needless to say, I was shocked and outraged," Murray wrote in the e-mail. "Obviously we cannot tolerate this situation but until we can correct it, we have to say little or nothing on the phone."

Criminal defense lawyers who received the e-mail agreed that the news would change the substance of their phone conversations with clients being held in jail, and they demanded to know if similar calls were being recorded without their knowledge in other counties.

### The response

Beth L. Eisenberg, an appellate attorney for the CPCS in Boston, confirmed that her office was made aware of the incident shortly after it happened in late March.

In response, the CPCS, in conjunction with the American Civil Liberties Union of Massachusetts and the Massachusetts Correctional Legal Services, has been in contact with the Sheriff's Department to address the problem.

"It's obviously unacceptable whether a person is detained pre-trial in lieu of bail or incarcerated after conviction," she said. "For a defendant not to be able to speak with his or her attorney by phone without the specter of non-consensual monitoring and recording of those conversations directly impacts on the attorney-client relationship."

She added the next step in the process is to sort through all of the facts and attempt to figure out how something like this could happen.

"We're working together to fully investigate the facts and circumstances under which attorney-client phone calls have been monitored or recorded by the Suffolk County Sheriff's Department," she said.

Noting that the Sheriff's Department was aware of the matter, Eisenberg said the scope of the problem remains in question.

"That is to say the number of incidents involved, the frequency of those incidents and the reason why it happened," she said. "Without having fully determined why this happened or how frequently it has happened, it's obviously a situation worthy of concern."

James M. Davin, general counsel for Suffolk County Sheriff Andrea J. Cabral, called the incident an "unfortunate mistake" and noted that steps were taken immediately to ensure that it does not happen again.

He explained that all Massachusetts lawyers' phone numbers are supposed to be stored in a database designed to ensure that calls made to them to are not recorded.

Davin said he did not know why Murray's number was not in the database.

Murray said that she has had the same phone number for 20 years.

"How it happened with this particular attorney, who I understand has been in practice for several years, I don't know," Davin said. "It's possible there was a glitch in the system, but after learning of this incident we manually went in and put a block on her number. Beyond that, we had our vendor give us an up-to-date list of all Massachusetts attorneys."

He added that those measures were taken two weeks ago and that the Sheriff's Department is in the process of seeing what more can be done internally.

"I'm not aware of any other particular incident where attorney calls have been recorded," he said. "Is it possible? Certainly, and in response to this we've taken actions to prevent this from happening again."

### Substantive conversations

Until questions are answered, a number of lawyers indicated that they will refrain from having substantive conversations with clients over the phone.

"My first reaction after reading the e-mail was anger to learn that a defendant's fundamental right to have a privileged conversation with his lawyer was being played with, and I was doubly concerned to know whether the same procedures were being done elsewhere," said Alan Zwirblis, who heads the CPCS' New Bedford office.

The fact that the recordings in Murray's case might have been a mistake was of no consolation, he said.

"The more I hear that phrase that 'something slipped through the crack,' the more it brings to mind a picture of a crack the size of the Grand Canyon," he said. "When things like this happen, it's common to hear that sort of rationale, but the bottom line is that such an explanation is neither good nor sufficient."

Before receiving the e-mail, Boston attorney David R. Yannetti, a former Middlesex County prosecutor, said that he would frequently have substantive conversations with clients about the development of a case.

He noted he now has refrained from doing so, at least until the issue is sorted out with the Sheriff's Department and the District Attorney's Office.

"It just cuts to the core of the attorney-client privilege, and we just can't have that," he said. "Ultimately, this practice is going to be stopped whether it's voluntarily by the participants or involuntarily by the courts."

In the meantime, Yannetti said that defendants in custody are losing out on their constitutionally guaranteed right to have unfettered legal representation.

"The client, by definition, is at the jail by virtue of the fact that he can't make bail," he said. "He is therefore disadvantaged in relation to wealthier clients who can make bail and can freely speak to their attorneys by phone relying on the fact that their conversations can't be taped."

Yannetti added that the decision not to have substantive conversations over the phone takes away one of the two principal methods of communicating between a lawyer and client.

"If this is upheld as a legal practice, then they would be forcing lawyers necessarily to not speak to their clients on the phone about anything substantive at all," he said. "That means you can't update a client about how the case is going and you can't talk strategy with them."

To avoid committing malpractice, Yannetti said that a lawyer would have to go to the jail every time he needed to talk to a client. From a practical standpoint, such a scenario is not possible, he said.

"A lawyer has so much time in the day to devote to all his cases," Yannetti said, "and if he had to go to jail every time he needed to pass along even the smallest bit of information, it would cripple a lawyer's practice."

User Agreement For Subscriber-Only Online Benefits | Help | Our Privacy Policy
Send any questions or comments to comments@lawyersweekly.com

Customer Service: 1-800-451-9998   Technical Support: 1-800-444-5297 ext. 8156
© Copyright 2006 Lawyers Weekly, Inc. All Rights Reserved
DOLAN MEDIA COMPANY

Lawyers Weekly does not use spyware; however, we link to a number of other sites and do not take responsibility for any spyware they may use.

This site is best viewed with Internet Explorer 6 (click here to download) or Netscape 7 or higher (click here to download)

66.181.94.5/5.93
0 milliseconds