UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA J. PORTER,<br>*Plaintiff*<br><br>v.<br><br>ANDREA J. CABRAL; SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT;<br>and<br>SUFFOLK COUNTY,<br>*Defendants* | DOCKET NO.<br>**04-11935-DPW** |

**DEFENDANT'S OPPOSITION TO THE PLAINTIFF'S
MOTION FOR A REAL ESTATE ATTACHMENT**

INTRODUCTION

The instant matter follows a jury verdict on a civil rights claim which awarded punitive damages in the amount of $250,000. The Defendants have filed post-judgment Motions for New Trial and Remittitur which seek to strike or reduce the damage award. Now, prior to disposition on the Defendant's post-judgment Motions, the Plaintiff seeks to place an attachment on the home of Sheriff Andrea Cabral for the sum of the punitive damages. For the reasons stated below, the Defendants request that the Court DENY the Plaintiff's Motion.

## FACTS[1]

1. Sheriff Cabral is financially solvent, gainfully employed and has been a serving the public for over two decades.

2. On November 2, 2004, Andrea J. Cabral was elected to the position of Sheriff of Suffolk County, and she was sworn in to office on January 5, 2005. Sheriff Cabral's term of office as Sheriff continues through January of 2010.

3. The Suffolk County Sheriff's Department employs approximately 1,100 people and has an annual budget of approximately $115,000,000.

4. On April 6, 2000, Sheriff Cabral purchased her home at 172 Green Street, Jamaica Plain, Massachusetts.

5. On April 6, 2000, Sheriff Cabral recorded a Declaration of Homestead with the Suffolk County Registry of Deeds in which she noticed her statutory homestead rights in her home.

6. On September 3, 2004, Sheriff Cabral refinanced the mortgage on her home, and intended to continue claiming her homestead rights in the property.

7. Attorney Ellen Caulo is the attorney of record in the instant action.

8. Between February and May 2006 Attorney Caulo has had a number of substantive conversations and exchanged correspondence with plaintiff's counsel regarding the issues of settlement and attorneys' fees. The bill for attorneys' fees is 35-pages long and contains approximately 293 entries concerning the work of 6 attorneys.

---

[1] See Affidavits of Sheriff Andrea J. Cabral and Ellen M. Caulo filed herewith.

9. The bill did not contain any information to justify the hourly rates of compensation requested for the six attorneys, including rates of $675 and $430 for lead counsel.

10. During those conversations and in her correspondence Attorney Caulo identified numerous areas in counsel's bill for attorneys' fees that she thought were excessive and others that she could not address based on block billing.

11. Specifically, Attorney Caulo informed counsel that the hourly rates charged for lead counsel ($675/$430 respectively) and work performed by other attorneys ($450/$385) were excessive and inconsistent with the prevailing rate in the community for attorneys of comparable skill and experience.

12. Attorney Caulo pointed out to plaintiff's counsel that the bill reflected substantial time billed for non-core work that was not discounted accordingly; substantial hours billed for work on claims that were unsuccessful and/or evidence that was not admitted; and a significant amount of duplication.

13. Attorney Caulo further explained to counsel that the practice of block billing made it extremely difficult to evaluate the reasonableness of the hours spent on the tasks described in the bill.

14. Attorney Caulo informed counsel that once the bill was revised in accordance with the areas discussed and as summarized in her correspondence that she would be able to provide him with a figure that the Defendants believe is reasonable for the time spent on this case.

15. As of the date Plaintiff filed her Motion for Attachment, counsel had refused to make any adjustments to their bill in accordance with Attorney Caulo's suggestions.

## ARGUMENT

The Federal Rules provide that a real estate attachment shall be available under the circumstances and manner provided by the law of the state in which the district court is held. Fed.R.Civ.P. 64. It is well established in the Commonwealth that an attachment is available upon:

> [A] finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

Mass.R.Civ.P. 4.1. In the case at bar, an attachment is not available to the Plaintiff because (1) Sheriffs are *holders of office under the constitution* which triggers statutory security protection for the Plaintiff, (2) the plaintiff has not established a reasonable likelihood of success at recovering the punitive damage award, (3) the property for which the Plaintiff seeks to attach is exempt from attachment, and (4) Sheriff Cabral is solvent, gainfully employed and does not face the threat of creditors or suits from claimants.

A.    The Sheriffs of Massachusetts hold office under the constitution.

It is well established that a plaintiff may not be allowed to attach the property of a defendant who has demonstrated liability insurance available to satisfy the judgment. In the case at bar, Sheriff Cabral holds office under the constitution, which is subject to M.G.L. c. 258.

The office of Sheriff is one of the oldest known to the law, and from earliest time, the Sheriff has been the chief officer for the preservation of the peace in his county. The office originated as an agent of the English King, empowered to enforce decrees. Daniels v. Hanson, 342 A.2d 644 (N.H. 1975), Stowe v. County of Lamoille, 362 A.2d 159 (Vt. 1976). As the principal law enforcement officer, the Sheriff at common law was superior to all other law enforcement authorities. State v. McCarty, 179 P. 309 (Kan. 1919). The law enforcement authority of the Sheriff is clearly established at common law. "He may upon view, without writ of process, commit to prison all persons who break the peace or attempt to break it…[H]e is bound, ex officio, to pursue and take all traitors, murderers, felons, and other misdoers, and commit them to jail for safe custody." South v. Maryland, 18 U.S. 396 (1855). Certainly, the powers of the Sheriff go beyond those delineated by statute.

It is clear that Massachusetts has recognized that the Sheriff has the inherent common law powers of a peace officer. Com v. Howe, 405 Mass. 332 (1989). Additionally, the constitution mandates that the legislature "shall prescribe, by the general laws, for the election of sheriffs". Const. of the Com. of MA Article XIX. The office has been created by the constitution, and it can only be eliminated through constitutional amendment. Also, the mechanism for their election through the people of the several counties is provided in the amendment. Id. Further, the Massachusetts Supreme Judicial Court has recognized the constitutional nexus to the Sheriff in *Commonwealth v. Certain Intoxicating Liquors* where the issue before the Court was whether the appointment of constables was unconstitutional as an interference with the office of Sheriff. In its ruling, the Court held that they saw "no ground to consider the

law which creates the office of state constable as an evasion of the constitutional provision relative to the office of sheriff." Com v. Certain Intoxicating Liquors, 110 Mass. 172 (1872).

It is clear that the Sheriff is a holder of office under the constitution since it is an office created by constitutional mandate that carries with it the common law powers of peacekeeper and jailor. The SJC has even referred to the "constitutional provision relative to the office of sheriff" in the *Certain Intoxicating Liquors* matter. As a result, the Plaintiff is provided with security for her claim by operation of M.G.L. c. 258.[2]

B.  The Plaintiff has not established a reasonable likelihood of success at recovering the punitive damages for which it seeks.

Although the Plaintiff was awarded a jury verdict for punitive damages in the amount of $250,000, the Defendants have filed a Motion for Remittitur of Damages or in the Alternative a New Trial which is still pending before the Court. Without restating the arguments raised in that motion, the Defendants contend that the likelihood of the Plaintiff recovering the full amount of that punitive verdict is in dispute. Certainly there have been numerous instances in the First Circuit and Massachusetts where jury awards of punitive damages have been stricken or reduced significantly. See *Shocking to the Conscience: Robert S. Mantell*, Six Figure Punitive Damages Awards in Employment

---

[2] M.G.L. c. 258, §9 provides "Public employers may indemnify public employees, and the commonwealth shall indemnify persons holding office under the constitution, from personal financial loss, all damages and expenses, including legal fees and costs, if any, in any amount not to exceed $1,000,000 arising out of any claim, action, award, compromise, settlement or judgment by reason of any intentional tort or such act or omission which constitutes a violation of the civil rights of any person under any federal or state law…No such employee or official, other than a person holding office under the constitution acting with the scope of his official duties or employment, shall be indemnified under this section for violation of any such civil rights if he acted in a grossly negligent, willful or malicious manner."

Discrimination Cases, MCLE 2005.[3]  Accordingly, the Defendants submit that it would be premature to allow the Plaintiff's Motion for Attachment for the full amount of the punitive award where there is no certainty that the award will stand.

C.     The Property for Which the Plaintiff Seeks to Attach is Exempt from Attachment.

The Plaintiff cannot attach Sheriff Cabral's home located at 172 Green Street, Jamaica Plain, Massachusetts because it is not subject to attachment under Massachusetts law.  It is clear that the Federal Rules provide that a real estate attachment shall be available only under the circumstances and manner provided by the law of the state in which the district court is held.  Fed.R.Civ.P. 64.  Massachusetts law defines property that is subject to attachment as:

> All real and personal property liable to be taken on execution, except such personal property as, from its nature or situation, has been considered as exempt to the principles of the common law as adopted and practiced in the commonwealth, or which is specifically exempt from execution under section thirty-four of chapter two hundred and thirty-five…

M.G.L. c. 223, § 42.  Property that is exempt from execution under M.G.L. c. 235, § 34 include "[e]states of homestead as defined in chapter one hundred and eighty-eight".  M.G.L. c. 235, § 34.  On April 6, 2000, prior to her taking office as Sheriff, Ms. Cabral recorded a Declaration of Homestead with the Suffolk County Registry of Deeds at Book 24830, Page 162. (amount of Homestead exemption and assessed value of the property)  The Declaration placed notice to the world that she has claimed the subject property as her home and principal residence, and that she has claimed an estate in homestead in such

---

[3] According to statistical data, of the seventy-six cases with awards of punitive damages, the award in forty-four of those cases was in the amount of $100,000 or greater.  Further, of those forty-four cases in which the jury awarded punitive damages of $100,000 or greater, "the amount was cut, limited by a damages cap, or the underlying finding was subject to reversal and/or remand, or the jury verdict was otherwise altered to the plaintiff;s detriment in twenty-five cases." Mantell, Six Figure Punitive Damages Awards in Employment Discrimination Cases, MCLE 2005.

property under M.G.L. c. 188. Although Sheriff Cabral refinanced her home on September 3, 2004, it is clear that the refinancing with a new mortgage does not release a declaration in homestead. Case v. Narrow, 1998 WL 1284201 (2004). Since Sheriff Cabral's home is exempt from attachment through her declaration of homestead, the Plaintiff cannot be permitted an attachment.

D.    The Sheriff is Solvent, Gainfully Employed and Does Not Face Any Threat from Creditors or Suits by Claimants.

The Plaintiff suggests in her Motion that the Defendants are involved in "numerous lawsuits" with the threat of new suits in the near future, which justifies an attachment as the only reasonable course of action. As a preliminary matter, the Plaintiff would be hard-pressed to find any organization that employs over 1000 employees and with a budget of over $115,000,000 that is not involved in litigation at any given time. That reality notwithstanding, there is no evidence of the merits of any of these current or future lawsuits or that any of them involve claims against the Sheriff individually. However, it is curious that the Plaintiff tries to paint a bleak financial picture for the Sheriff's Department, when her attachment is directed at the Sheriff personally.

The compensation of the Sheriff of Suffolk County is governed by statute. Pursuant to M.G. L. c. 37, §17, the Sheriff of Suffolk County shall be paid a sum equivalent to 95 per cent of the salary of an associate justice of the superior court. Accordingly, Sheriff Cabral's salary is approximately $107,000. Furthermore, given that her current term runs through January of 2010, there is no necessity to issue grant an attachment at this point in time, particularly where this Court has yet to rule on the Defendant's Motion for Remittitur. It is clear that the Sheriff is financially sound and any suggestion that the Defendants or the Sheriff are not credit worthy is unfounded.

To the extent that the Plaintiff argues that she must preserve her right to collect on the punitive judgment because the Defendants' "have no interest in settlement, and are instead pursuing a strategy of prolonging this case," (Plainitff's Motion for Attachment ¶ 11), that argument too must fail.  As set forth more fully above, the Defendants have pursued their right to file post judgment motions which are currently pending before this Court.  Further, the Plaintiff's contention that the Defendants have refused to engage in substantive discussions regarding settlement and attorneys' fees is a gross mischaracterization of the facts.  (See Affidavit of Ellen M. Caulo, filed herewith).  Indeed, it has been the Plaintiff's refusal to make any adjustments to their bill in accordance with suggestions made by the Defendants that has resulted in the current impasse.

CONCLUSION

It is clear from the foregoing reasons that the Plaintiff is not entitled to an attachment upon Sheriff Cabral's home. Accordingly, the Defendants respectfully request that this Honorable Court DENY the Plaintiff's Motion for a Real Estate Attachment.

Respectfully Submitted,
For the Defendants
By their Attorney

/s/ Russell T. Homsy
Russell T. Homsy
B.B.O. # 641327
Assistant General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA  02114
Date:   May 24, 2006                (617) 961- 6535