35412  289

SUFFOLK REGISTRY
RECORDING & EXAM ATTEST        127

2004 SEP -3  AM 8:44

*Francis M. Roache*
REGISTER OF DEEDS

_____ Commonwealth of Massachusetts _____          _____ Space Above This Line For Recording Data _____
REFERENCE # 20041957000140    ACCOUNT # 0654-654-0141838-1998

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is 08/02/2004 and the parties, their addresses and tax identification numbers, if required, are as follows:
   MORTGAGOR:
   ANDREA J. CABRAL

   /50

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgements.
   LENDER: Wells Fargo Bank, N.A.
   P. O. BOX 31557
   BILLINGS, MT 59107

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, upon the statutory condition, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells, and mortgages to Lender, with the power of sale and mortgage covenants, the following described property:
   SEE ATTACHED EXHIBIT


09/03/2004 Doc: 0127

BOOK 24830, PAGE 140
TAX ID# 1102272004
The property is located in SUFFOLK                at 172 GREEN ST UNIT 2
                                 (County)
                                            , JAMAICA PLAIN       , Massachusetts 02130
         (Address)                              (City)                      (ZIP Code)

After Recording Return To: Wells Fargo Bank, N.A.
P. O. BOX 31557        BILLINGS, MT 59107        DOCUMENT MANAGEMENT

MASSACHUSETTS - MORTGAGE
EQ121A (04/2004)

35412  290

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 50,000.00    . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt dated 08/02/2004 , together with all amendments, extensions, modifications or renewals. The maturity date of the Secured Debt is 08/02/2044 .
   B. All future advances from Lender to Borrower under such evidence of debt, whether obligatory or discretionary. All obligatory future advances and advances to cure breaches of covenants contained in the Mortgage are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make an additional or future loans or advances which exceed $ 50,000.00   .
   C. All sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

8. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

9. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

10. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

11. **ASSIGNMENT OF LEASES AND RENTS.** Upon statutory condition, Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender, with mortgage covenants, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument. Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument. Mortgagor agrees that this assignment is effective as to third parties on the recording of this Security Instrument and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender

MASSACHUSETTS - MORTGAGE
EQ121 B (04/2004)

35412  291

after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

12. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the property is a unit in a Condominium Project or is part of a Planned Unit Development ("PUD"), Mortgagor agrees to the following:
    A. Obligations. Mortgagor shall perform all of Mortgagor's obligations under the Constituent Documents. The "Constituent Documents" are the: (I) Declaration or any other document which creates the Condominium Projects or PUD and any homeowners association or equivalent entity ("Owners Association"); (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Mortgagor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.
    B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project or PUD which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Mortgagor's obligation under Section 19 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Mortgagor shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to Property, whether to the unit or to common elements, any proceeds payable to Mortgagor are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to Mortgagor.
    C. Flood Insurance. Mortgagor agrees to maintain flood insurance for the life of the Secured Debt which is acceptable, as to form, amount and extent of coverage to Lender.
    D. Public Liability Insurance. Mortgagor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.
    E. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Mortgagor in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 18.
    F. Lender's Prior Consent. Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management by the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.
    G. Remedies. If Mortgagor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amount disbursed by Lender under this section shall become additional debt of Mortgagor secured by this Security Instrument. Unless Mortgagor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Secured Debt rate and shall be payable, with interest, upon notice from Lender to Mortgagor requesting payment.
13. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.
14. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by statutory law if Mortgagor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by statutory law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the statutory power of sale. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

MASSACHUSETTS - MORTGAGE
EQ121 C (04/2004)

35412  292

15. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lenders' rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.
16. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.
17. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.
18. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.
19. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise waived in a separate writing, Mortgagor will be required to pay to Lender funds for taxes, assessments, and any required insurance in escrow. Lender will be required to collect and maintain the escrow funds in accordance with all applicable state and federal laws.
20. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.
21. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or

MASSACHUSETTS - MORTGAGE
EQ121 D (04/2004)

35412   293

any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

22. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

23. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

24. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property and relinquishes all other rights in the Property.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:
    - [N/A] **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
    - [N/A] **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
    - [N/A] **Additional Terms.**

26. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
    - [N/A] Third Party Rider
    - [N/A] Leasehold Rider
    - [N/A] Other N/A

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_____ _____ (Seal)
(Mortgagor) ANDREA J CABRAL      (Date) 8/5/04

_____ _____ (Seal)
(Mortgagor)                       (Date)

_____ _____ (Seal)
(Mortgagor)                       (Date)

_____ _____ (Seal)
(Mortgagor)                       (Date)

_____ _____ (Seal)
(Mortgagor)                       (Date)

_____ _____ (Seal)
(Mortgagor)                       (Date)

MASSACHUSETTS - MORTGAGE
EQ121 E (04/2004)

35412  294

**Acknowledgement**

A notary shall take the **acknowledgement** of the signature or mark of persons acknowledging for themselves or in any representative capacity by using substantially the following form:    Commonwealth of Massachusetts ), ss.

County of Suffolk ), ss.

On this 5th day of August, 2004, before me, the undersigned notary public, personally appeared Andrea J. Cabral _____ (name of document signer), proved to me through satisfactory evidence of identification, which were MA. license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(as partner for _____, a corporation)
(as _____ for _____, a corporation)
(as attorney in fact for _____, the principal)
(as _____ for _____, (a) (the) _____)

Elizabeth O. Keeley (official signature and seal of notary)
attorney
My commission expires 9/15/09

**Acknowledgement**

A notary shall take the **acknowledgement** of the signature or mark of persons acknowledging for themselves or in any representative capacity by using substantially the following form:    Commonwealth of _____ ), ss.

County of _____ ), ss.

On this ____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ (name of document signer), proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(as partner for _____, a corporation)
(as _____ for _____, a corporation)
(as attorney in fact for _____, the principal)
(as _____ for _____, (a) (the) _____)

_____ (official signature and seal of notary)

My commission expires _____

MASSACHUSETTS - MORTGAGE
EQ121 F (04/2004)

35412  295

Exhibit A

Reference #: 20041957000140
Acct #: 0654-654-0141838-1998

THE FOLLOWING DESCRIBED PROPERTY IN SUFFOLK COUNTY, MASSACHUSETTS: UNIT 2 (THE 'UNIT'), A UNIT IN THE CONDOMINIUM AT 172-178 GREEN STREET, BOSTON (JAMAICA PLAIN DISTRICT), SUFFOLK COUNTY, MASSACHUSETTS, KNOWN AS THE CARRIAGE BUILDING CONDOMINIUM (THE 'CONDOMINIUM'), CREATED PURSUANT TO AND SUBJECT TO THE PROVISIONS OF MASSACHUSETTS GENERAL LAWS, CHAPTER 183A BY MASTER DEED DATED JANUARY 13, 2000 AND RECORDED WITH THE SUFFOLK COUNTY REGISTRY OF DEEDS (THE 'REGISTRY') ON JANUARY 26, 2000 IN BOOK 24629 PAGE 90 (HEREINAFTER CALLED THE 'MASTER DEED'). THE POST OFFICE ADDRESS OF THE UNIT IS 172-178 GREEN STREET, JAMAICA PLAIN, MASSACHUSETTS 02130 THE UNIT IS CONVEYED TOGETHER WITH: (A) AN UNDIVIDED 7.72% PERCENTAGE INTEREST APPERTAINING TO THE UNIT IN THE COMMON AREAS AND FACILITIES OF THE CONDOMINIUM AS DESCRIBED IN THE MASTER DEED; (B) THE EXCLUSIVE RIGHT AND EASEMENT TO USE PARKING SPACE 2 AND BASEMENT STORAGE SPACES 2, ALL AS PROVIDED IN THE MASTER DEED, THE LOCATION OF EACH OF WHICH IS SHOWN ON THE PLANS RECORDED WITH THE MASTER DEED (HEREINAFTER CALLED THE 'PLANS'); AND (C) THE BENEFIT OF AND SUBJECT TO ALL EASEMENTS, RIGHTS, RESERVATIONS, RESTRICTIONS, LIMITATIONS, AGREEMENTS AND PROVISIONS CONTAINED IN SAID MASTER DEED, THE DECLARATION OF TRUST CREATING CARRIAGE BUILDING CONDOMINIUM TRUST AND THE RULES AND REGULATIONS CONTAINED THEREIN, RECORDED WITH THE REGISTRY IN BOOK 24629, PAGE 58 (AS THE SAME MAY FROM TIME TO TIME BE AMENDED BY INSTRUMENT DULY FILED WITH SAID REGISTRY), AND SAID INSTRUMENTS AND THE PROVISIONS THEREOF ARE HEREBY INCORPORATED HEREIN BY REFERENCE. ATTACHED HERETO IS A COPY OF A PORTION OF THE PLANS, TO WHICH IS AFFIXED A VERIFIED STATEMENT IN THE FORM PROVIDED FOR IN GENERAL LAWS CHAPTER 183A, SECTION 9, CERTIFYING THAT THE PLAN SHOWS THE UNIT DESIGNATION OF THE UNIT HEREBY CONVEYED AND OF THE IMMEDIATELY ADJOINING UNITS, AND THAT IT FULLY AND ACCURATELY DEPICTS THE LAYOUT OF THE UNIT, ITS LOCATION, DIMENSIONS, APPROXIMATE AREA, MAIN ENTRANCE AND IMMEDIATE COMMON AREA TO WHICH IT HAS ACCESS, AS BUILT. THE UNIT IS INTENDED TO BE USED ONLY FOR 'ARTISTS' MIXED USE' PURPOSES AS THAT TERM IS DEFINED IN THE 'BOSTON ZONING CODE &amp; ENABLING ACT' AS AMENDED THROUGH DECEMBER 13, 1994 (THE 'ZONING LAW') AND FOR ANY SUCH USES ACCESSORY THERETO AS MAY BE PERMITTED FROM TIME TO TIME BY THE ZONING LAW, OTHER APPLICABLE LAWS AND AS SET FORTH IN SAID MASTER DEED AND IS SUBJECT TO THE RESTRICTIONS ON USE SET FORTH IN SECTION 10 OF THE MASTER DEED. THE UNIT IS HEREBY CONVEYED SUBJECT TO AND WITH THE BENEFIT OF, AS THE CASE MAY BE: 1. THE RIGHTS, RESERVATIONS, RESTRICTIONS, ENCUMBRANCES AND APPURTENANCES SET FORTH IN THE MASTER DEED; 2. THE CARRIAGE BUILDING CONDOMINIUM DECLARATION OF TRUST RECORDED WITH THE REGISTRY IN BOOK 24629, PAGE 58; 3. ANY RULES AND REGULATIONS PROMULGATED UNDER SAID CONDOMINIUM DECLARATION OF TRUST; 4. THE OBLIGATION TO PAY THE PROPORTIONATE SHARE ATTRIBUTABLE TO THE UNIT OF THE COMMON EXPENSES; 5. SUCH REAL ESTATE TAXES ATTRIBUTABLE TO THE UNIT FOR THE CURRENT YEAR AS ARE NOT NOW DUE AND PAYABLE; AND 6. RIGHTS OF OTHER UNIT OWNERS TO EXCLUSIVELY USE CERTAIN COMMON AREAS AND FACILITIES, AS SET FORTH IN THE MASTER DEED. FOR GRANTOR'S TITLE, SEE DEED FROM FINANCIAL ASSOCIATES, INC., ET ALS, DATED DECEMBER 19, 1986 AND RECORDED WITH THE REGISTRY IN BOOK 13253, PAGE 334, AND BEING A PORTION OF THE PREMISES CONVEYED THEREBY. FOR GRANTOR'S TITLE, SEE DEED FROM ROBERT R. WILSON, JR., TRUSTEE OF BOSTEK TRUST UNDER DECLARATION OF TRUST DATED DECEMBER 18, 1986, DATED MARCH 27, 2000 AND RECORDED WITH THE REGISTRY IN BOOK 24830, PAGE 140.

EQEXA1 (12/2003)