UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHEILA PORTER

          Plaintiff,

   v.

ANDREA CABRAL, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, and SUFFOLK
COUNTY

          Defendants.

Civil Action No.04-11935-DPW

**PLAINTIFF SHEILA PORTER'S MEMORANDUM
IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES**

Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), Plaintiff Sheila Porter ("Ms.

Porter" or "plaintiff") respectfully submits this Memorandum in Support of her Motion for

Attorneys' Fees.

**INTRODUCTION**

Ms. Porter prevailed at trial on her § 1983 claims against Sheriff Andrea Cabral ("Sheriff

Cabral") and Suffolk County, acting through the Suffolk County Sheriff's Department

("SCSD").  42 U.S.C. § 1988 provides that, as a prevailing plaintiff, Ms. Porter is entitled to

reasonable attorneys' fees and costs.  Plaintiff is attaching to this Memorandum the bill for which

she is seeking attorneys' fees, in addition to a Bill of Costs and numerous affidavits and

materials which demonstrate that the fees requested in the instant motion are measured

reasonably.  Ms. Porter requests $318,781.94 in attorneys' fees and costs for the legal services

provided in this matter.

Anyone who is familiar with this lawsuit can attest that it was not a run-of-the-mill civil rights action.  The Court noted as much at the conclusion of the trial.  This was a hotly-contested case with numerous complexities not found in most § 1983 suits.  One unique feature of this case was the presence of the federal government, which chose to wage protracted discovery battles and engage in motion practice with Ms. Porter instead of voluntarily providing testimony from government witnesses that helped confirm Ms. Porter's allegations.  The litigation was further complicated by the litigation strategy of the Suffolk Defendants throughout this case, including a series of motions seemingly designed to delay this matter from proceeding to trial (such as the Motion to Stay and the Motion to Sever), repeated stonewalling regarding the key issues in the case (resulting in depositions of key SCSD personnel to get at the truth), and a refusal to meet their discovery obligations (resulting in correspondence, phone calls, and motions to compel).[1] Nevertheless, the case proceeded from complaint to trial in 16 months, which included preparation for a seven-day trial in just three weeks over the holidays.  The result was a complete victory: a $610,000 verdict in favor of Ms. Porter.

Ms. Porter requests $287,977 in attorneys' fees for the work performed in this case, $24,304.94 in costs, and $6,500 for the services of in-court electronic trial support, for a total fee request of $318,781.94.  The attorneys' fees Ms. Porter is requesting are contained in the bill attached as Exhibit A.  The Bill of Costs is attached as Exhibit B, and the services performed by

---

[1] These dilatory tactics did not cease with the jury's verdict.  Plaintiff's counsel has diligently attempted to settle the attorneys' fees portion of this case for months, to no avail.  Despite numerous letters and phone calls and plaintiff counsel's submission of multiple versions of the bill (in response to defense counsel's complaint that it was not detailed enough or was otherwise deficient), the Suffolk Defendants did not even provide Ms. Porter with what turned out to be a take-it-or-leave-it counteroffer until June 20th—eighteen weeks after plaintiff's counsel's initial offer and exactly three days before the instant Motion was due.  Defendants' conduct resulted in unnecessary time attempting to meet their demands and get them to negotiate, in addition to preparing this petition.  Nevertheless, plaintiff would still prefer to settle this aspect of the case and welcomes any progress (mediation, informal conference, etc.) to do so.

Mr. Berriman are attached as Exhibit C.  In submitting the instant Motion, counsel for Ms. Porter has exercised careful billing judgment and is requesting compensation for a fraction of the time charges in this case at a deeply discounted hourly rate.  *See* Declaration of Joseph F. Savage, Jr. ("Savage Decl."), ¶¶ 16-28 (attached as Exhibit D); *see also* Declaration of Arthur W. Greenberg ("Greenberg Decl."),  ¶ 2 (attached as Exhibit E).  Counsel thoroughly reviewed all of the time charges recorded to this matter and eliminated all charges spent exclusively on claims that were not successful at trial, as well as duplicative time, even though some or all of these charges are properly compensable.  Apart from the "billing judgment" that lead counsel is required to and did exercise for the purposes of this Motion, the bill submitted does not come close to seeking what it actually cost to pursue the case.  Instead, a greatly reduced—one partner, one associate, one paralegal—approach is adopted.  Counsel also took a number of measures to litigate this case with a maximum amount of efficiency, for instance, frequently consulting with Testa Hurwitz & Thibeault's ("Testa Hurwitz") and Goodwin Procter LLP's ("Goodwin Procter") Labor and Employment practices (time that is not included in the accompanying bill).  The result is a bill that reflects an extraordinarily conservative estimate of the amount of time spent on the litigation at very low hourly rates for the quality of the representation.

## DISCUSSION

### I.    <u>Background Legal Principles</u>

The Civil Rights Attorneys Fees Awards Act of 1976 permits a prevailing party in a civil rights action to recover "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  Awarding fees in favor of prevailing civil rights plaintiffs is "virtually obligatory."  *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 124 (1st Cir. 2004), citing *Gay Officers Action League v.*

*Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001).  The First Circuit has explained the rationale

behind the statute:

> In addition to gaining personally, successful civil rights plaintiffs
> serve the public interest and a fee award is therefore appropriate
> whether or not necessary.  Moreover, so fee assessment in cases of
> this sort is likely to encourage more thoughtful actions by
> governments.  *See Blanchard v. Bergeron*, 489 U.S. 87 (1989)
> ("Plaintiffs who can afford to hire their own lawyers, as well as
> impecunious litigants, may take advantage of [section 1988]).").
> *See also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)
> ("Congress has determined that 'the public as a whole has an
> interest in the vindication of the rights conferred by the statutes
> enumerated in § 1988, over and above the value of a civil rights
> remedy to a particular plaintiff . . .'") (quoting *Hensley*, 461 U.S. at
> 444 n.4) (Brennan, J., concurring in part and dissenting in part)).

*Lipsett v. Blanco*, 975 F.2d 934, 940 n.2 (1st Cir. 1992).  Moreover, as the 7th Circuit has stated,

an important corollary purpose of awarding a fully compensatory fee is to "bring [] home to the

[D]efendant[] the full social costs of [its] unconstitutional conduct, costs that include litigation as

well as the original damages."  *Kirchoff v. Flynn*, 786 F.2d 320,327 (7th Cir. 1986).

There is no question that Ms. Porter is the prevailing party in this lawsuit.  *See Texas*

*State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-93 (1989); *Bogan v. City of*

*Boston*, 2006 WL 1283569, C.A. No. 02-10522-MBB (D. Mass. May 11, 2006) (Bowler, M.J.)

("Plaintiffs clearly fall under the definition of prevailing parties as they received a jury verdict in

their favor against the City and received damages . . . for a section 1983 civil rights claim.")  Ms.

Porter achieved a $610,000 jury verdict on her central claims: federal civil rights violations by

Sheriff Cabral and Suffolk County.  This verdict included a $250,000 punitive damage award

against Sheriff Cabral for wrongful actions.  By any measure, this was a complete victory for

Ms. Porter.  *See Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 338 (1st Cir. 1988) (explaining

that the "preeminent consideration in the fee adjustment process" is the "results obtained,"

meaning a combination of the plaintiff's success claim by claim, the relief actually achieved, and

the societal importance of the right which has been vindicated).  The Supreme Court has held

that "[t]he extent of a plaintiff's success is a crucial factor in determining the proper amount of

an award of attorney's fees under 42 U.S.C. § 1988."  *Hensley*, 461 U.S. at 440, and where "a

plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" that

"encompass[es] all hours reasonably expended on the litigation."  *Id.* at 435.  We do not

understand that defendants are contesting that Ms. Porter is entitled to attorneys' fees and costs

as the prevailing party in this litigation.

## II.    Calculating the Fee Award

The First Circuit applies the lodestar method to determine a reasonable fee.  Under this

approach, the number of hours reasonably expended is multiplied by the applicable hourly

market rate for legal services to arrive at the lodestar figure.  *See Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983); *Grendel's Den, Inc. v. Larkin*, 749 F. 2d 945, 951 (1st Cir. 1984); *Edge v.

Norfolk Financial Corp.*, 2005 WL 2323193 (D. Mass. Aug. 29, 2005) (Woodlock, J.) (applying

lodestar method in Fair Debt Collection Practices Act case).  The First Circuit has explained the

lodestar approach as follows: "the judge calculates the time counsel spent on the case, subtracts

duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community

(taking into account the qualifications, experience, and specialized competence of the attorneys

involved)."  *Gay Officers Action League*, 247 F.3d at 295.  Counsel is expected to exercise

"billing judgment" and "make a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434. After the lodestar

figure is calculated, the court is authorized to adjust this figure upward or downward to account

for unusual circumstances.  *See Coutin*, 124 F.3d at 337.

## A.    Hourly Rates

The applicable hourly rates are based on "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S 886, 896 n. 11 (1984); *Grendel's Den*, 749 F.2d at 955 (same).  The Supreme Court has counseled that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 430, n. 4.  Boston is applicable market for this matter.  *See Alfonso v. Aufiero*, 66 F. Supp.2d 183, 197 (D. Mass. 1999).

Moreover, "the amount of fees under [§ 1988 should] be governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust."  *See* S. Rep. No. 94-1011, 94th Cong. 2d Sess. 6 (1976); *see also Riverside*, 477 U.S. at 575; *Blum*, 465 U.S. at 893-94.  Indeed, the Supreme Court and other courts have indicated that stated that it advances congressional intent when civil rights cases attract skilled private counsel to be paid at market rates.  *See Blum* at 893-96, *Rivera* at 579; *Covington v. District of Columbia*, 57 F.3d 1101, 1108-09 (D.C. Cir. 1995).  Thus, the starting point for the fee award is counsel's standard hourly rate.  This is so because "[i]f he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else.  That other person's willingness to pay establishes the market's valuation of the attorney's services." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).[2]

---

[2]    Counsel's <u>current</u> hourly rate is the applicable rate for all hours expended during the litigation.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute."); *see Lipsett v. Blanco*, 975 F. 2d 934, 942 (applying current rates to entirety of time charged in the litigation).

Ms. Porter bears the burden of providing the Court with evidence that: (1) establishes her lawyers' skills and experience, and (2) informs the Court of the prevailing market rate in the community for attorneys with such qualifications. *See Parker v. Town of Swansea*, 310 F.Supp.2d 376, 388 (D. Mass. 2004), citing *Blum*, 465 U.S. at 895-96 n. 11. Ms. Porter meets this burden by submitting the following materials with this Motion: (1) Savage Declaration (Ex. D), (2) Greenberg Declaration (Ex. E); (3) Declaration of Mark E. Tully (attached as Ex. F); (4) Declaration of Scott Lewis (attached as Ex. G), (5) Declaration of Harvey Schwartz (attached as Ex. H), (6) Declaration of Howard Friedman (attached as Ex. I), (7) 2006 survey from *Massachusetts Lawyers' Weekly* showing the billing rates of other law firms (attached as Ex. J); (8) CourtExpress Legal Billing Reports (attached as Ex. K); (9) a survey from the *National Law Journal* of the 250 largest law firms in America (attached as Ex. L); and (10) a copy of Memorandum and Order on Defendant Blueshift Technologies, Inc.'s Application for Assessment of Attorney's Fees and Costs, *Brooks Automation, Inc. v. Blueshift Technologies, Inc., et al.*, No. 05-3973-BLS2 (Gants, J.) (attached as Ex. M) ("*Blueshift* Order").

Ms. Porter requests an hourly rate of $380 per hour for lead counsel Joseph F. Savage, Jr., $240 per hour for David S. Schumacher and other associates, and $110 per hour for the paralegal who worked on this matter.

1.    <u>Plaintiff is Entitled to Recover Fees at Counsel's Standard Billing Rate.</u>

The hourly rates requested by plaintiff for the foregoing individuals are eminently reasonable. First and foremost, the requested rates are a substantial discount from what Goodwin Procter normally charges. *See* Greenberg Decl., ¶ 2 (Ex. E). Goodwin Procter normally charges clients hundreds of dollars more per hour for the services of these attorneys and staff than plaintiff is requesting here. *Id.* Goodwin Procter's standard rates are in line with those charged

by other large law firms practicing complex federal litigation.  *See* Greenberg Decl., ¶ 5; *see also*

Fortado, Lindsay, "Going Up Still," *National Law Journal*, December 12, 2005, pp. S1-S8 (Ex.

L) (showing that large national law firms charge hourly rates in excess of $700 for partners and

$400 for associates).  Large firms in Boston charge similar rates.  *See* Greenberg Decl., ¶ 5.  For

instance, a recent survey of the 100 largest law firms by *Massachusetts Lawyer's Weekly* reveals

that Goodwin Procter's rates are reasonable, especially considering that most large firms did not

report their rates:

| Firm Name | Partner Rates | Associate Rates | Paralegal rates |
|---|---|---|---|
| Edwards Angell Palmer & Dodge | $375-$650 | $150-$480 | $100-$175 |
| Foley Hoag LLP | $365-$640 | $220-$445 | $100-$205 |
| Holland & Knight | $325-$550 | $205-$550 | $125-$225 |
| Sullivan & Worcester | $400-$650 | $220-$450 | $145-$230 |
| Burns & Levinson | $325-$450 | $185-$330 | $100-$250 |
| Hinckley, Allen & Snyder | $240-$550 | $180-$290 | $100-$225 |
| Robinson & Cole | $310-$490 | $200-$350 | $120-$160 |
| Price, Lobel, Glovsky & Tye | $325-$425 | $185-$300 | $85-$145 |
| DLA Piper, Rudnick, Gray, Cary | $460-$660 | $255-$475 | $135-$245 |
| Murtha Cullina | $220-$455 | $140-$230 | $80-$195 |

*See Massachusetts Lawyer's Weekly, 100 Largest Law Firms in Massachusetts, 2006* (Ex. J).

Moreover, a review of CourtExpress Legal Billing reports indicates that partners at firms such as

McDermott Will & Emery and Wilmer Cutler Pickering Hale & Dorr charge rates in excess of

$600 per hour for partners.  *See* Ex. K.  Finally, the Superior Court recently awarded Goodwin

Procter the full amount of fees it requested, at its standard rates, lauding the firm for the manner

in which the attorneys conducted the litigation.  *See Blueshift* Order (Ex. M).

2.    <u>The Requested Rates are Reasonable for Civil Rights Practitioners.</u>

While Ms. Porter's attorneys are entitled to be compensated at their normal hourly rates, she is only requesting the reduced rates described above.[3] These rates are reasonable even by the standard of "civil rights practitioners" given the quality of the representation, the complexities of this case and the excellent results achieved.

a.    *Ms. Porter's Legal Team*

**Joseph F. Savage, Jr.**

Joseph F. Savage, Jr. was lead counsel for Ms. Porter. *See* Savage Decl., ¶ 3. Mr. Savage has been practicing law for 25 years. After graduating from Harvard College and the University of Virginia School of Law, he was a law clerk for the Hon. A. David Mazzone for the U.S. District Court for the District of Massachusetts. Mr. Savage has tried approximately 50 cases at the Department of Justice and was also a Senior Trial Counsel for the Office of Independent Counsel for the Michael Espy. Since 1996, Mr. Savage has been a partner in private practice, first at Testa, Hurwitz & Thibeault, LLP, and more recently at Goodwin Procter, LLP. Mr. Savage has been recognized as one of the top lawyers in the region and in the country by numerous publications. He has given numerous lectures and has authored more than 50 articles. *Id.*, ¶ 7.

---

[3]    The Court has indicated that it will not compensate Ms. Porter's legal costs at the rate which other clients receiving these services are charged. Thus, the instant fee petition does not include the rates that the marketplace pays for complex commercial litigators in Boston. Ms. Porter presses her objection to the Court's ruling on hourly rates. While it appears that a number of decisions in the First Circuit have adopted the Court's approach, Congress did not intend, and the Supreme Court did not authorize, that victims of discrimination should not be able to choose to retain lawyers at large law firms to litigate their claims. Certainly Congress and the Supreme Court did not intend that those who discriminate benefit by not having to pay as much in legal fees as those who violate contracts or infringe patents. *See* S. Rep. No. 94-1011, 94th Cong. 2d Sess. 6 (1976); *see also Riverside* 477 U.S. at 575. It would seem that a policy of providing reduced rates in civil rights litigation runs contrary to the public policy goal of the fee-shifting provision in civil rights cases. *See, e.g., Covington,* 57 F.3d at 1108-09 (awarding fees at counsel's standard rates).

While Mr. Savage does not have extensive experience trying civil rights cases, he has a wealth of trial experience and expertise in complex civil litigation that translates to this matter. *See id.*, ¶¶ 7-8; *see Laplante v. Pepe*, 307 F. Supp.2d 219, 224 (D. Mass. 2004) (Gertner, J.) (lack of attorney's civil rights experience was "more than matched by [his] overall trial expertise"). Moreover, Mr. Savage has been active in civil rights litigation and activities, representing another plaintiff in a § 1983 case pending in the District of Massachusetts and serving as the chairman of the New England Innocence Project, as the former chair of the Federal Bar Association Criminal Justice Section, as the former co-chair of the Boston Bar Association Section on Individual Rights and Responsibilities, and as a member of the Steering Committee of the Boston Bar Association Criminal Justice Section. *See* Savage Decl., ¶ 7.

### Jennifer Goddard

Throughout the case, Mr. Savage was assisted by an associate who managed the case on a day-to-day basis. The associate at Testa Hurwitz was Jennifer Goddard. *See* Savage Decl., ¶ 10. Ms. Goddard graduated *summa cum laude* from Brandeis University in 1990. She graduated *magna cum laude* from Boston University School of Law in 1995, where she was a member of the *Boston University Law Review.* She practiced in the employment group at Testa Hurwitz from 1995 to 2005, where she regularly advised Human Resources Directors, CEOs, CFOs and in-house counsel regarding all employment matters. Ms. Goddard, who was elected to the partnership at Testa Hurwitz in 1995, was recognized as an "up-and-coming" employment attorney by *Chambers USA:  A Guide to America's Leading Business Lawyers.*

### David S. Schumacher

At Goodwin Procter, David Schumacher was that associate that handled the case on a day-to-day basis. *See* Savage Decl., ¶ 11. Mr. Schumacher also second-chaired the trial. Mr.

Schumacher graduated *magna cum laude* from Syracuse University in 1993.  *See* Tully Decl., ¶ 4.  He attended the University of Virginia School of Law, graduating in 2000, where he was on the editorial board of the *Journal of Law and Politics* and was a semifinalist in the William Minor Lile Moot Court competition.  Mr. Schumacher has been an associate at Goodwin Procter since 2000.  At Goodwin Procter, Mr. Schumacher has worked on a number of complex civil and criminal matters.  He has been involved in three trials at Goodwin Procter, serving as second chair in a criminal trial in the District of Massachusetts.  Mr. Schumacher was a Special Assistant District Attorney for Middlesex County in 2004, where he conducted 10 jury trials.

### Anita B. Bapooji

When Mr. Schumacher was unavailable at the height of discovery, Anita B. Bapooji worked on the case.  Ms. Bapooji received her B.A. from Queens University in 1994 and her J.D. from the University of Toronto Law School in 1997.  *See* Tully Decl., ¶ 5.  Ms. Bapooji joined Testa Hurwitz in 1997 and Goodwin Procter in 2005, where she concentrates on general corporate and commercial litigation.  She co-chaired the Business Litigation Section of the Boston Bar Association from 2003-2005 and was selected as a "Massachusetts Rising Star" by *Boston Magazine* in 2005.

### James R. Sweet

James R. Sweet conducted research and drafting at various points during the case.  Mr. Sweet graduated *magna cum laude* from Georgetown University in 1997.  *See* Tully Decl, ¶ 6.  He attended the Stanford University Law School, graduating in 2000, where he was the Executive Editor of the *Stanford Law Review* and was awarded the Order of the Coif.   Mr. Sweet was a law clerk for the Honorable Nina Gershon for the U.S. District Court for the Eastern

District of New York and Jane Roth for the Third Circuit Court of Appeals.  At Goodwin
Procter, Mr. Sweet has been involved in a number of complex civil litigation matters.

### Andrea N. Boivin

Andrea N. Boivin is a paralegal at Goodwin Procter who assisted in trial preparation.
Ms. Boivin graduated from the University of New Hampshire in 1987 and received her J.D. from
the New England School of Law in 1990.  *See* Tully Decl., ¶ 7.  From 1997 through 2005 Ms.
Boivin was a Senior Litigation Paralegal at Testa, Hurwitz.  Since 2005 she has been a Senior
Litigation Paralegal and Goodwin Procter.  She has responsible for the case management of
complex cases such as securities class actions, SEC investigations and general commercial and
patent litigations.  Ms. Boivin was responsible for managing at trial all exhibits, documents,
depositions, and electronic databases for trial preparation and use at trial.[4]

  b.  *The Requested Rates are Reasonable for a Civil Rights Case*

Scott P. Lewis, Harvey A. Schwartz and Howard Friedman are all civil rights
practitioners who have received fee awards in civil rights cases and are knowledgeable about
civil rights practice in the Boston area.  Each have submitted declarations attesting that the
requested rates are reasonable for this case, taking into consideration counsel's experience and
reputation and the complexities involved in this matter.  *See* Lewis Decl. (Ex. G); Schwartz Decl.
(Ex. H); Friedman Decl. (Ex. I).

The requested rates mirror those recently awarded by this court in another civil rights
case last year, adjusted for inflation.  *See* Memorandum and Order, *Change the Climate, Inc. v.
MBTA, et al.*, C.A. No. 00-10973-REK (June 8, 2005) (Keeton, J.) (awarding fees at the rate of
$350 per hour to lead counsel and $225 for an associate) (attached as Ex. N).  *Change the*

---

[4] Ms. Porter is not requesting compensation for any paralegal time prior to trial.

*Climate* was not an anomaly; the requested rates are in line with other fee awards in this district in recent years.  As far back as <u>eight years ago</u> this Court calculated that fees for civil rights practitioners in Boston ranged up to $325 per hour, *see Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (Saris, J.), and <u>ten years ago</u> this Court awarded fees of $300 per hour to a civil rights attorney for work performed in 1991 and 1993.  *See Morgan v. Gittens*, 915 F. Supp. 457 (D. Mass. 1996) (Garrity, J.).  *See also Paul Lopes v. Town of Mattapoisett*, C.A. No. 00-CV-11970-WGY (Young, J.) (awarding fees to Harvey Schwartz at rate of $330 per hour) (*see* Schwartz Decl., ¶ 5); *Laplante v. Pepe*, 307 F. Supp. 2d 219 (D. Mass. 2004) (Gertner, J.) (awarding fees up to $300 per hour to Palmer & Dodge counsel in civil rights litigation).[5]

In short, given the credentials and experience of plaintiff's counsel, the complexities of this litigation, and the quality of the representation in this case, the hourly rates requested—deeply discounted from Goodwin Procter's standard rates—are more than reasonable.

### B.    Hours Reasonably Expended

The Court next must determine the number of hours reasonably expended on this litigation.  *See Hensley*, 461 U.S. at 433.  Counsel's billing records are reviewed and any hours that were duplicative, unproductive, excessive, or otherwise unnecessary are subtracted.  *See Grendel's Den*, 749 F.2d at 950.  The billing records should be contemporaneously recorded and should document the amount of time each lawyer spent on the matter, along with a description of the work performed.  *Id.* at 952.  Any reduction in the actual hours spent must be explained.  *See Coutin v. Young & Rubicam Puerto Rico, Inc.* 124 F.3d 331, 337 (1st Cir. 1997) (court has "a burden to spell out the whys and wherefores" when documented time is reduced).

---

[5]    The most recent fee award in a civil rights case appears to be *Bogan v. City of Boston*, 2006 WL 1283569, C.A. No. 02-10522-MBB (D. Mass. May 11, 2006) (Bowler, M.J.), where lead counsel was awarded his requested rate of $300 per hour in a civil rights case that involved a jury verdict of $30,000.

The bill reflecting the time for which plaintiff is seeking compensation in this matter is attached as Exhibit A. Plaintiff requests compensation for 1,023.10 hours of work in this case. The hours break down as follows:

| Individual | Hours |
|---|---|
| Joe Savage | 344.60 |
| David Schumacher | 515.50 |
| Jennifer Goddard | 23.40 |
| Anita Bapooji | 39.80 |
| James Sweet | 55.10 |
| Andrea Boivin | 44.70 |
| **Total** | **1,023.10** |

Importantly, the bill represents a fraction of the time actually spent by Goodwin Procter attorneys and staff on this case. *See* Savage Decl., ¶ 25. Counsel has exercised billing judgment in eliminating numerous time entries altogether and significantly paring down time entries on most of the remaining entries. *Id.*, ¶¶ 25-29. The bill omits entirely the work performed by a number of attorneys who billed time to this matter. Few charges are listed for internal and external meetings, phone calls and other activities that are not considered "core" legal work.[6] The bill has been cut to the bone to reflect only the most critical activities performed in this case.

---

[6] Some courts in this Circuit have distinguished between "core" and "non-core" work in a § 1983 fee petition. *See, e.g., Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 (1st Cir. 1993) ("core work includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders. Non-core work consists of less demanding tasks, including letter writing and telephone conversations.") This distinction has never been required by the First Circuit, *see Domegan v. Ponte*, 972 F.2d 401, 424 (1st Cir. 1992), and the clear trend in this District is to not apply it. For instance, after careful analysis, Chief Judge Young found that the core/non-core distinction was unnecessary given the presumption that the lodestar calculation is a reasonable fee. *See Sys. Mgmt. v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001). *See also Change the Climate, Inc.*, 2005 WL 3735100, *3 (rejecting core/non-core distinction); *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 217-218 (D. Mass. 2004) (Young, C.J.) (same); *Homier Distributing Co. v. City of New Bedford*, 2002 WL 1586996, *2 (D. Mass. July 18, 2002) (O'Toole, J.) (same). *But see LaPlante v. Pepe*, 307 F. Supp. 2d 219, 225 (D. Mass. 2004) (Gertner, J.) (applying core/non-core distinction without explanation), *Chestnut v. Coyle*, 2004 WL 438788, *3 n.4 (D. Mass. Mar. 9, 2004) (Zobel, J.) (applying a non-core rate to purely clerical work). Given the clear trend, and considering the pared-down bill that has been submitted here, the Court should not discount "non-core" work, if any, contained in the bill.

      1.    <u>The Bill is Reasonable Considering the Unique Features of This Case and Defendants' Conduct.</u>

Until trial, there was rarely more than a single partner and a single associate working on the case. *See* Savage Decl., 12. Lead counsel delegated to associates most of the tasks on the case, including primary responsibility for drafting, communications with the client and opposing counsel, and most of the depositions. *Id.*, ¶ 10. Moreover, while it is permissible to award fees for "catch-up work was necessary to litigate an unfamiliar area of law," *see LaPlante*, 307 F. Supp. 2d at 222, the bill reflects no time charges for "getting up to speed" on civil rights law, and plaintiff's counsel consulted with Goodwin Procter's Labor and Employment Department to litigate the case more efficiently—charges not included in the bill. *See* Savage Decl., ¶ 11. It is noteworthy that a number of attorneys appeared for the SCSD and Sheriff Cabral throughout this case, including Ellen Caulo, James Davin, Walter Prince, Page Scott Reed and Russell Homsy.

While plaintiff's counsel zealously litigated this case, it was done so in a succinct and economical fashion. Plaintiffs took a reasonable number of depositions (10) and served only two sets of document requests and one set of requests for admissions on defendants (the latter aimed at narrowing the issues for trial). *See* Savage Decl., ¶ 17. Plaintiff's counsel litigated this case expeditiously, seeking only two brief extensions: five additional weeks to complete discovery and two additional weeks to respond to the motions for summary judgment. No experts were used. Counsel prepared the case for trial in approximately three weeks. All told, the case proceeded from complaint to trial in only sixteen months.

On the other hand, Ms. Porter was met with resistance by the Suffolk Defendants at every turn. Defendants should not be heard to complain about the number of hours expended on this litigation, as they truly have no one to blame but themselves. From the outset Defendants dug in and fought Ms. Porter, even in the face of overwhelming evidence of that her civil rights had

been violated. *Id.*, ¶ 16. *See City of Riverside*, 477 U.S. 581, n. 11 ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Gay Officers*, 247 F.3d at 298 ("After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field.").  Defendants' scorched-earth litigation tactics resulted in plaintiff's counsel expending tremendous effort (1) responding to motions to dismiss, (2) engaging in extensive discovery; (3) filing motions to compel compliance with basic discovery obligations; (4) opposing motions for summary judgment; (5) submitting numerous pretrial submissions; (6) opposing a 44-page Motion for a New Trial; and, of course (7) filing the instant Motion.[7] Defendants compounded these problems by attempting to delay the resolution of this case with motions to stay and motions to bifurcate; and filing frivolous and harassing motions, such as the motion to compel Ms. Porter to reveal the identities of the individuals whom she had provided information about.  Defendants perhaps were entitled to litigate the case in this fashion, but plaintiff's counsel should not be penalized for the efforts to respond to these tactics.

This case was more complex than most civil rights actions due to the additional litigation with the federal government.  *See* Savage Decl., ¶ 21.  Ms. Porter sought information she was entitled to receive from the federal government to help confirm (1) her role as an informant with the FBI, and (2) that Sheriff Cabral made certain admissions about the reasons why Ms. Porter was barred in the presence of federal government officials.  The Department of Justice refused to voluntarily provide this information, which resulted in protracted "*Touhy*" litigation which was not resolved until the eve of trial, when the DOJ finally produced witnesses to confirm these

---

[7]    Worse, defendants' version of events changed throughout the litigation, which required exhaustive depositions, up until the eve of trial, as well as additional discovery requests.

basic facts.  In addition, Ms. Porter requested and received grand jury excerpts to lend support to her claims.  The DOJ <u>and</u> the Suffolk Defendants opposed these efforts.  Ms. Porter is entitled to have her lawyers compensated for this, and, in the end, of course, plaintiff counsel's efforts in this respect were successful, yielding key testimony which was used at trial.

Thus, this was not a run-of-the-mill civil rights case, and the unique complexities involved justify compensation for far more hours than are requested in the instant Motion.

> 2.    <u>All of the Time Charges Relate to a Common Core of Facts or for Related Legal Theories.</u>

Plaintiff is only requesting compensation for time related to the claims that prevailed at trial.  Of course, a prevailing plaintiff under § 1988 is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a common core of facts or related legal theories.  The Supreme Court has explained this principle as follows:

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole . . . Such a lawsuit cannot be viewed as a series of discrete claims.  Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.   In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley*, 461 U.S. at 435; *see also See Krewson v. Finn*, 107 F.3d 84, 85 (1st Cir. 1997) ("Attempts to allocate hours between claims may be unwarranted where an action involves related legal theories applied to a common core of facts").

This case involved the barring of Sheila Porter from the House of Corrections and her termination from Correctional Medical Services, Inc.[8] While summary judgment was awarded to the Suffolk Defendants on a few of plaintiff's claims, all of these claims stemmed from the same common core of facts. The Massachusetts Civil Rights Act claim and the breach of contract claim, for instance, were based on the same facts that gave rise to the § 1983 claim. Arguably the defamation claim stood on separate footing, although the statements at issue were read at trial and the jury may well have taken to them into account in awarding punitive damages against Sheriff Cabral. Nevertheless, counsel has omitted from the bill charges that <u>solely</u> relate to the defamation claim and others not litigated at trial.[9] In addition, as mentioned above, counsel has significantly reduced time charges spent on the victorious § 1983 claims.

3.   <u>There is Little "Duplication" in the Bill, and Any "Duplicative" Entries<br>are Justified.</u>

Counsel has carefully scrutinized the bill to ensure that unreasonably duplicative charges are not included. Of course, "the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing." *Gay Officers,* 247 F.3d at 298 (1st Cir. 2001). Indeed, duplication of work should only be discounted if the duplication was unreasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990). The only areas in the bill that are arguably duplicative are the presence of two attorneys at Sheriff Cabral's deposition and at trial. The Cabral deposition was obviously a major event in the case that required extensive preparation. As for the presence of two attorneys at trial, this was hardly unreasonable for this case; indeed, the Suffolk Defendants also had two attorneys at trial.

---

[8]   No time charges are included for claims related to CMS.

[9]   The bill also does not include any time spent solely on the Whistleblower Act claim.

Finally, the court is authorized to adjust the lodestar figure upward or downward to account for unusual circumstances in a case. *See Coutin*, 124 F.3d at 337. Ms. Porter is entitled to an upward enhancement in the lodestar figure based on the quality of the representation, the complexity of this case, and the excellent results achieved. Rather than request an enhancement, however, Ms. Porter is submitting an extremely reasonable bill setting forth the absolute minimum of time properly recoverable in this case.

In short, plaintiff's counsel has exercised billing judgment in cutting out hundreds of thousands of dollars from the bill. What remains are non-duplicative, core time charges that are eminently reasonable for a hard-fought, non-routine case.

## III.    COSTS

Counsel's "reasonable and necessary costs and expenses may be awarded to a prevailing party pursuant to 42 U.S.C. § 1988." *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983). A Bill of Costs in the amount of $24,304.94 is attached as Exhibit C. Again, counsel has eliminated numerous costs that are properly recoverable. *See* Savage Decl., ¶ 29. For instance, no costs for legal research database charges, delivery service, travel, faxes or postage are included, even though they are recoverable. *See Alfonso v. Aufiero*, 66 F. Supp.2d 183, 201 (D. Mass. 1999). What is left are basic costs that are routinely awarded in civil rights actions. These costs are largely self-explanatory and are further explained in the Savage Declaration. *See* ¶ 29.

## IV.    LITIGATION TECHNOLOGY

Finally, Ms. Porter requests compensation for the time expended by Jim Berriman, a Senior Counsel at Goodwin Procter and the Executive Manager of Litigation Technology at the firm. Mr. Berriman was the individual who prepared and presented evidence electronically at trial. Defendants agreed to use this service. Even if Ms. Porter lost at trial, she would be entitled

to reimbursement of half of this service. Because she prevailed, Ms. Porter is requesting that all of Mr. Berriman's in-court time be compensated.

Counsel has conservatively estimated that Mr. Berriman worked 26 hours at the trial. *See* Ex. C; *see* Savage Decl., ¶ 30. This does not include time charges for any time spent outside of court. Plaintiff requests that Mr. Berriman be compensated at the rate of $250 per hour. This is substantially less than the rate that Goodwin Procter charges for Mr. Berriman's services, and it reflects the going rate charged for trial services provided by electronic litigation support consultants such as Trial Graphix. *Id.* Thus, Ms. Porter requests compensation for $6,500 of Mr. Berriman's time.

## CONCLUSION

The final breakdown of fees and costs breaks down as follows:

| Individual | Requested "Civil Rights" Rate | Requested Reduced Hours | Total |
|---|---|---|---|
| Joe Savage | $380 | 344.60 | $130,948 |
| David Schumacher | $240 | 515.50 | $123,720 |
| Jennifer Goddard | $240 | 23.40 | $5,616 |
| Anita Bapooji | $240 | 39.80 | $9,552 |
| James Sweet | $240 | 55.10 | $13,224 |
| Andrea Boivin | $110 | 44.70 | $4,917 |
| **Total** | | **1,023.10** | **$287,977** |
| | | | |
| Bill of Costs | | | $24,304.94 |
| | | | |
| Jim Berriman | $250 | 26 | $6,500 |
| | | | |
| | | **Grand Total:** | **$318,781.94** |

Respectfully submitted,

SHEILA PORTER

By her attorneys,

*/s/ Joseph F. Savage, Jr.*
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Dated: June 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served electronically via the electronic filing system on counsel for all parties on this 23rd day of June, 2006.

*/s/ David S. Schumacher*
David S. Schumacher

LIBA/1668906.1

21