# EXHIBIT L

# THE NATIONAL Law JOURNAL

## IN FOCUS

MONDAY, DECEMBER 12, 2005

S1-S8

# BILLING





# Going up still

### Firms continue to raise hourly billing rates, and there are some notable figures at the high end.

**By Lindsay Fortado**
STAFF REPORTER

IT'S A GOOD TIME to be a lawyer.

Billing rates for law firm attorneys jumped last year, with partners and associates raking in more dollars per hour than ever before. And at least one partner now charges $1,000, the first four-figure hourly rate reported to *The National Law Journal.*

This year, 116 law firms responded to questions about billing rates included as part of the NLJ's 2005 survey of the nation's 250 largest law firms. (The survey is sent to about 300 firms, therefore some firms included in this survey are not among the NLJ 250.) Of those 116 responding firms, 102 also supplied answers to those questions in the 2004 survey.

The 2005 results indicate that most firms raised their rates for both partners and associates at both the high and low ends of their ranges. Seventy-nine of the 102 firms that responded in both 2004 and 2005 raised their highest rates for partner this year, while 10 reduced theirs and 13 kept them the same. Seventy-six firms raised their lowest rates for partners, while 10 decreased them and 16 kept them the same.

As for associates, 82 firms raised their highest rates, 15 decreased them and five maintained them. Seventy-four raised their lowest rates, eight decreased them and 20 kept them the same.



At Venable, the partner high is up to $1,000. Just as remarkable, Dorsey & Whitney reported an associate high of $835—more than most partners make.

"You have to look behind that [rate] to what those people do," said Ward Bower, a principal at the legal consulting firm Altman Weil in Philadelphia. "It might be that there's something unique that there's a high demand for."

The partner charging up to $1,000 an hour at Venable is Benjamin Civiletti, the firm chairman and a 70-year-old partner in the firm's Baltimore office who was the U.S. attorney general under President Jimmy Carter. He specializes in internal investigations and corporate defense.

"That's a rate that he charges for the most extraordinary work," explained James Shea, the managing partner of Washington-based Venable, of the $1,000 rate. Shea said it was doubtful that Civiletti is the only partner at a major U.S. firm who charges $1,000.

Civiletti raised his highest hourly rate from $810 in 2004 to $1,000 this year. Shea said the firm raises its rates based on the development of certain practice areas, and a demand for certain types of work.

"None of that surprises or shocks me," Bower said of the $1,000 rate. "How many Ben Civilettis are there in the country? With his expertise and his contacts, his Rolodex alone must be one of the most impressive in the country.

"Big-ticket litigation, hostile takeovers, internal investigation, the top people in those areas are billing at the highest rates," he continued. "Those are bet-the-company types of work. [Companies] want the best, and they're willing to pay for the best.

"If you look at a multinational corporation, they're used to paying that much at London law firms," Bower said. "They're charging six, seven hundred pounds, and when you convert the pound, those lawyers are



charging over $1,000." He added, "It's interesting to note that with all the talk of resistance to increase, the numbers still continue to go up."

Bower also pointed out that many large firms offer discounted rates, so the highs may be misleading because few clients are actually billed that high.

The partner high last year was at Reed Smith, which reported having a partner who charged $875 per hour. A firm spokesman had said the partner worked in London, and the high rate was a result of the exchange rate.

This year, Dorsey & Whitney's highest associate billing rate of $835 is notable, given that the highest partner rate at the firm is $876.75, slightly higher than the highest reported rate last year. (The firm would not disclose which associate billed at that rate.) The highest rate for an associate reported last year was $550 at Palo Alto, Calif.-based Cooley Godward.

The high rates at Dorsey for partners and associates this year represent the billing rates in the tax litigation group in the United Kingdom. The group specializes in complex litigation, which bills at a high rate, and is additionally bumped up by the exchange rate, said Larry Splett, a firm spokesman. Dorsey did not report any rates last year. The firm increased its rates by around 3%, Splett said.

"What it amounts to is most likely firms paying attention to market-based pricing, what the market is willing and able to pay," Bower said. This is a contrast to previous years, when firms have traditionally set pricing based on the seniority of

SEE 'BILLING RATES' PAGE S7

ILLUSTRATION BY STEPHEN SCHILDBACH

THE NATIONAL LAW JOURNAL (WWW.NLJ.COM)    Monday, December 12, 2005

# Firm-by-firm sampling of billing rates nationwide

The National Law Journal asked the respondents to its 2005 survey of the nation's 250 largest law firms to provide a range of hourly billing rates for partners and associates. The firms that supplied this information—including some firms that are not in the NLJ 250—are listed below in alphabetical order. This year we also asked firms to provide average and median billing rates; several firms provided this information as well. The number after a firm's name indicates the total number of attorneys at the firm. The city listed below the name of a firm is the location of its principal or largest office. Unless otherwise indicated, the rates provided are firmwide rates; an asterisk indicates rates at the principal or largest office only.

## A B C

**Adams and Reese (300)**
(New Orleans)
Partners $205-$385 (average $279) (median $275)
Associates $155-$235 (average $185) (median $180)
Firmwide (average $247) (median $240)

**Andrews Kurth (405)**
(Houston)
Partners $350-$695 (average $464) (median $450)
Associates $180-$400 (average $272) (median $258)
Firmwide (average $377) (median $380)

**Arent Fox (274)**
(Washington)
Partners $350-$580
Associates $195-$395

**Armstrong Teasdale (246)**
(St. Louis)
Partners $235-$400
Associates $135-$260

**Baker, Donelson, Bearman, Caldwell & Berkowitz (435)**
(Memphis, Tenn.)
Partners $200-$525
Associates $120-$290

**Ballard Spahr Andrews & Ingersoll (452)**
(Philadelphia)
Partners $330-$655
Associates $165-$360

**Bass, Berry & Sims (182)**
(Nashville, Tenn.)
Partners $220-$475
Associates $140-$235

**Bell, Boyd & Lloyd (253)**
(Chicago)
Partners $310-$650
Associates $215-$350

**Blank Rome (481)**
(Philadelphia)
Partners $320-$700
Associates $195-$430

**Bond, Schoeneck & King (192)**
(Syracuse, N.Y.)
Partners $200-$425
Associates $140-$305

**Bricker Eckler Bison & Lions (153)**
(Chicago)
Partners $350-$600 (average $449) (median $440)
Associates $190-$365 (average $270) (median $250)
Firmwide (average $355) (median $350)

**Brown Raysman Millstein Felder & Steiner (253)**
(New York)
Partners $315-$690 (average $452) (average $296)
Associates $190-$400 (average $296)
Firmwide (average $351)

**Brown Rudnick Berlack Israels (194)**
(Boston)
Partners $475-$790*
Associates $260-$460*

**Bryan Cave (730)**
(St. Louis)
Partners $300-$695 (average $423)
Associates $145-$430 (average $269)
Firmwide (average $316)

**Buchanan Ingersoll (404)**
(Pittsburgh)
Partners $240-$750
Associates $150-$400

**Buckingham, Doolittle & Burroughs (148)**
(Akron, Ohio)
Partners $175-$315 (average $225) (median $225)
Associates $125-$225 (average $156) (median $150)
Firmwide (average $175) (median $185)

**Bullivant Houser Bailey (176)**
(Portland, Ore.)
Partners $170-$500 (average $275) (median $265)
Associates $150-$300 (average $195) (median $195)
Firmwide (average $225) (median $220)

**Burr & Forman (181)**
(Birmingham, Ala.)
Partners $200-$395 (average $312) (median $310)
Associates $160-$275 (average $201) (median $190)
Firmwide (average $208) (median $190)

**Butzel Long (215)**
(Detroit)
Partners $225-$500
Associates $160-$300

**Carlton Fields (225)**
(Tampa, Fla.)
Partners $245-$520 (average $368) (median $370)
Associates $175-$300 (average $226) (median $220)
Firmwide (average $284) (median $290)

**Cooley Godward (421)**
(Palo Alto, Calif.)
Partners $395-$700 (average $515) (median $350)
Associates $215-$550 (average $350)
Firmwide (average $404)

**Covington & Burling (531)**
(Washington)
Partners $420-$720
Associates $190-$440

**Cozen O'Connor (507)**
(Philadelphia)
Partners $105-$700 (average $292) (median $250)
Associates $75-$395 (average $181) (median $177)
Firmwide (average $249)



She's a partner in the world's largest private antitrust practice group.

Jacqueline I. Grise
Partner, Howrey LLP
New England School of Law Class of 1995

**Jacqueline Grise** has relied on her New England School of Law education throughout her meteoric rise from staff attorney to partner at Howrey, where she is a member of the world's largest antitrust practice group. Having counseled numerous Fortune 500 clients on antitrust matters in multi-billion dollar acquisitions around the world, Ms. Grise continues to enjoy both the business and legal challenges of counseling high-profile clients in a broad range of industries.

 New England School of Law

*Inspired Learning*

154 Stuart Street, Boston, MA 02116 • (617) 422-7210    admin@admin.nesl.edu • www.nesl.edu

ABA accredited    Member of the Association of American Law Schools

## Increase your billing 14.6%
without increasing your rates, clients or workload?

**What do over 250,000 people who love Abacus know that you don't?** On average, they increased their billables by 14.6% by switching to Abacus.

**How?** Simple. Here are the three ways they converted unbillable and unbilled time to revenue:

1) Automatic tracking of every billable minute

2) Elimination of duplicate entry, checking, and error corrections required by using multiple systems

3) Increased efficiency by never having to hunt for information that's now just a keystroke away

Now is the best time of year to switch to fully integrated time, billing, accounting and practice management software. You won't have to re-enter all your current data. Let us show you how.

Abacus is the only law practice management software with a 100-day 100% money back guarantee. For free shipping, purchase by December 30, 2005 and mention priority code PN543.

Don't miss out. Call toll-free today. You'll be glad you did.

 ABACUS

**800-726-3339**
www.abacuslaw.com/nlj

**Curtis, Mallet-Prevost, Colt & Mosle (198)**
(New York)
Partners $340-$675 (average $553)
(median $593)
Associates $160-$470 (average $340)
(median $348)
Firmwide (average $432) (median $450)

# D E F

**Davis Wright Tremaine (386)**
(Seattle)
Partners $250-$625 (average $374)
(median $370)
Associates $155-$350 (average $242)
(median $230)
Firmwide (average $330) (median $330)

**Day, Berry & Howard (216)**
(Hartford, Conn.)
Partners $320-$565 (average $425)
(median $420)
Associates $190-$395 (average $284)
(median $290)
Firmwide (average $355) (median $350)

**Dickinson Wright (200)**
(Detroit)
Partners $275-$490
Associates $155-$245

**Dickstein Shapiro Morin & Oshinsky (353)**
(Washington)
Partners $400-$675
Associates $210-$390

**Dinsmore & Shohl (284)**
(Cincinnati)
Partners $205-$420 (average $304)
(median $295)
Associates $130-$250 (average $180)
(median $165)
Firmwide (average $226) (median $215)

**DLA Piper Rudnick Gray Gary (3,308)**
(Chicago)
Partners $345-$800 (average $497)
(median $495)
Associates $200-$500 (average $336)
(median $340)
Firmwide (average $383) (median $395)

**Dorsey & Whitney (633)**
(Minneapolis)
Partners $200-$876.75 (average $416.19) (median $418.61)
Associates $145-$835 (average $272.18)
(median $265)
Firmwide (average $343.84) (median $346.39)

**Drinker Biddle & Reath (413)**
(Philadelphia)
Partners $325-$600 (average $402)
Associates $175-$360 (average $270)

**Duane Morris (615)**
(Philadelphia)
Partners $295-$665
Associates $125-$400

**Dykema Gossett (334)**
(Detroit)
Partners $250-$550
Associates $165-$280

**Edwards & Angell (344)** (Boston)
Partners $325-$600 (average $451.15)
(median $450)
Associates $115-$400 (average $253)
(media $250)
Firmwide (average $350.50) (median $347.50)

**Epstein Becker & Green (382)**
(New York)
Partners $275-$600 (average $436.89)
(median $420)
Associates $140-$390 (average $267.11)
(median $280)
Firmwide (average $300.31)

**Foerstel & Hunt (346)**
(Mountain View, Calif.)
Partners $450-$725 (average $540)
(median $540)
Associates $235-$440 (average $345)
(median $385)

**Fowler White Boggs Banker (294)**
(Tampa, Fla.)
Partners $250-$415
Associates $150-$250

**Fredrikson & Byron (195)**
(Minneapolis)
Partners $250-$515
Associates $145-$240

**Frost Brown Todd (386)**
(Louisville, Ky.)
Partners $190-$410 (average $279)
(median $275)
Associates $135-$260 (average $180)
(median $180)
Firmwide (average $208)

# G H I

**Gardere Wynne Sewell (306)**
(Dallas)
Partners $315-$625 (average $414)
(median $415)
Associates $170-$380 (average $250)
(median $255)
Firmwide (average $347) (median $345)

**Gibbons, Del Deo, Dolan, Griffinger & Vecchione (188)** (Newark, N.J.)
Partners $300-$660 (average $397)
(median $380)
Associates $160-$340 (average $233)
(median $245)

**Gordon & Rees (298)**
(San Francisco)
Partners $140-$450
Associates $125-$325

**Greenberg Traurig (1,482)**
(Miami)
Partners $250-$750 (average $437)
(median $450)
Associates $140-$455 (average $279)
(median $275)
Firmwide (average $364) (median $375)

**Harris Beach (190)**
(Rochester, N.Y.)
Partners $200-$350
Associates $135-$235

**Haynes and Boone (440)**
(Dallas)
Partners $330-$750
Associates $140-$410

**Hodgson Russ (221)**
(Buffalo, N.Y.)
Partners $220-$595 (average $304)
Associates $130-$290 (average $188)
Firmwide (average $249)

**Hogan & Hartson (1,012)**
(Washington)
Partners $250-$750
Associates $130-$475

**Holland & Knight (1,224)**
(New York)
Partners $260-$700 (average $419)
(median $410)
Associates $155-$475 (average $252)
(median $245)
Firmwide (average $358) (median $365)

**Holme Roberts & Owen (218)**
(Denver)
Partners $250-$565 (average $375)
(median $350)
Associates $185-$395 (average $250)
(median $240)
Firmwide (average $322) (median $325)

SEE 'NATIONWIDE' PAGE S4



## Diverse by design.

For many, the bringing together of different elements into one perfect composition is the essence of good design. At Littler Mendelson, such an approach is an integral part of our practice. It takes diverse talents, ideas and perspectives to solve the problems posed by today's varied and multicultural workplaces. To learn more about Littler Mendelson, our practice, and our commitment to diversity, please visit us online at www.littler.com.



Littler's rankings in The Vault Guide to the Top 100 Law Firms 2006 Edition:

*1 Diversity With Respect to Women
*3 Best in Diversity
*12 Diversity With Respect to Minorities
*15 Diversity With Respect to Gays & Lesbians

## LITTLER MENDELSON, P.C.

### 400 Attorneys + 29 National Offices = One Integrated Solution

www.littler.com

Employment and Class Action Litigation : Unfair Competition and Trade Secrets : Employee Benefits : Labor Management Relations : HR Risk Management and Corporate Compliance : Workplace Safety

THE NATIONAL LAW JOURNAL/WWW.NLJ.COM    Monday, December 12, 2005

# Billing rates set by law firms across the country

'NATIONWIDE' FROM PAGE 53

**Husch & Eppenberger (382)**
(St. Louis)
Partners $185-$390 (average $267)
(median $260)
Associates $125-$230 (average $161)
(median $155)
Firmwide (average $223) (median $220)

## JKL

**Jackson Lewis (375)**
(White Plains, N.Y.)
Partners $265-$500
Associates $185-$395

**Jenkens & Gilchrist (282)**
(Dallas)
Partners $315-$580 (average $411)
Associates $195-$370 (average $266)

**Jenner & Block (443)**
(Chicago)
Partners $410-$750 (average $496)
(median $475)
Associates $215-$390 (average $290)
(median $275)

**Jones, Walker, Waechter, Poitevent, Carrère & Denègre (215)**
(New Orleans)
Partners $190-$425
Associates $130-$200

**Kelley Drye & Warren (321)**
(New York)
Partners $375-$730
Associates $200-$450

**Kramer Levin Naftalis & Frankel (325)**
(New York)
Partners $530-$775 (average $598)
(median $590)
Associates $275-$520 (average $422)
(median $440)
Firmwide (average $427) (median $440)

**Lane Powell (172)** (Seattle)
Partners $275-$440 (average $338)
(median $330)
Associates $190-$350 (average $232)
(median $233)
Firmwide (average $307) (median $310)

**Lewis, Rice & Fingersh (172)**
(St. Louis)
Partners $215-$395
Associates $140-$285

**Littler Mendelson (635)**
(San Francisco)
Partners $240-$550
Associates $165-$375

**Locke Liddell & Sapp (384)** (Houston)
Partners $340-$795 (average $432)
(median $425)
Associates $150-$370 (average $237)
(median $230)
Firmwide (average $347) (median $360)

**Loeb & Loeb (298)** (Los Angeles)
Partners $375-$775
Associates $200-$425

**Lord, Bissell & Brook (298)**
(Chicago)
Partners $285-$645 (average $448)
(median $430)
Associates $200-$350 (average $256)
(median $255)
Firmwide (average $363) (median $365)

## MNO

**Manatt, Phelps & Phillips (301)**
(Los Angeles)
Partners $475-$710 (average $563)
(median $530)
Associates $295-$440 (average $314)
(median $355)
Firmwide (average $439) (median $443)

**Marshall, Dennehey, Warner, Coleman & Goggin (388)** (Philadelphia)
Partners $140-$275
Associates $130-$230

**McCarter & English (375)**
(Newark, N.J.)
Partners $270-$600
Associates $175-$360

**McGuireWoods (808)**
(Richmond, Va.)
Partners $260-$675
Associates $180-$375

**McKenna Long & Aldridge (382)**
(Washington)
Partners $290-$575
Associates $175-$385

**Michael Best & Friedrich (208)**
(Milwaukee)
Partners $195-$500
Associates $160-$290

**Miles & Stockbridge (204)**
(Baltimore)
Partners $280-$450 (average $328)
Associates $180-$350 (average $216)

**Miller & Martin (187)**
(Chattanooga, Tenn.)
Partners $220-$395 (average $305)
(median $310)
Associates $140-$285 (average $190)
(median $180)
Firmwide (average $270) (median $285)

**Miller, Canfield, Paddock and Stone (350)**
(Detroit)
Partners $275-$540
Associates $145-$290

**Montgomery, McCracken, Walker & Rhoads (138)** (Philadelphia)
Partners $300-$550 (average $406)
Associates $190-$295 (average $227)

**Morris, Manning & Martin (170)**
(Atlanta)
Partners $330-$495
Associates $175-$325

**Nelson Mullins Riley & Scarborough (348)**
(Columbia, S.C.)
Partners $215-$600
Associates $150-$325

**Ogletree, Deakins, Nash, Smoak & Stewart (280)** (Greenville, S.C.)
Partners $230-$500 (average $308)
(median $305)
Associates $150-$300 (average $231)
(median $235)
Firmwide (average $251) (median $260)

## PQR

**Parker Poe Adams & Bernstein (174)**
(Charlotte, N.C.)
Partners $170-$450
Associates $130-$260

**Patton Boggs (406)** (Washington)
Partners $275-$800 (average $421)
(median $537)
Associates $190-$380 (average $272)
(median $285)
Firmwide (average $343) (median $495)

**Pepper Hamilton (431)** (Philadelphia)
Partners $285-$650
Associates $180-$370

**Perkins Coie (585)** (Seattle)
Partners $205-$600
Associates $160-$440

**Phelps Dunbar (248)** (New Orleans)
Partners $160-$450 (average $214.87)
(median $230)
Associates $125-$200 (average $151.86)
(median $155)
Firmwide (average $153.23) (median $185)

**Phillips Lytle (170)** (Buffalo, N.Y.)
Partners $210-$395 (average $280)
(median $275)
Associates $145-$295 (average $190)
(median $185)
Firmwide (average $195) (median $185)

**Pitney Hardin (178)** (Florham Park, N.J.)
Partners $350-$595
Associates $190-$345

**Polsinelli Shalton Welte Suelthaus (228)**
(Kansas City, Mo.)
Partners $200-$500
Associates $140-$250

**Powell Goldstein (297)** (Atlanta)
Partners $290-$550 (average $404)
(median $405)
Associates $165-$335 (average $235)
(median $230)
Firmwide (average $304) (median $295)

**Preston Gates & Ellis (423)** (Seattle)
Partners $190-$595
Associates $95-$372

**Quarles & Brady (412)** (Milwaukee)
Partners $240-$500 (average $335.57)
(median $335)
Associates $180-$300 (average $217)
(median $215)
Firmwide (average $298.56) (median $305)

**Reed Smith (996)** (Pittsburgh)
Partners $280-$675 (average $425)
(median $412)
Associates $185-$435 (average $255)
(median $245)
Firmwide (average $346) (median $338)

**Robinson & Cole (225)**
(Hartford, Conn.)
Partners $260-$525 (average $376)
(median $380)
Associates $160-$450 (average $241)
(median $230)
Firmwide (average $278) (median $240)

## Help Provide Legal Relief for the Gulf Coast

Equal Justice Works, in partnership with ALM, the Association of Corporate Counsel (ACC) and the JEHT Foundation, announces the Hurricane Legal Assistance Initiative.

Through this program, Equal Justice Works is sending a team of up to 15 experienced public interest lawyers for two years to the areas hardest hit by hurricanes Katrina and Rita in Louisiana, Mississippi, Texas and Alabama. The Hurricane Legal Assistance Initiative will provide critical representation to hurricane victims who face homelessness, consumer fraud, lack of health care, and other personal tragedies.

The JEHT Foundation has pledged $1 million in matching funds over the next two years. Already, ACC, Greenberg Traurig, LLP, and Latham & Watkins LLP have each committed $75,000, all of which will be matched by JEHT.

**You Can Help Too.**

An additional $775,000 is needed to fully fund this initiative. It will take many contributions of varying sizes and from various sources to make this initiative successful. We hope you will help.

To contribute to the Hurricane Legal Assistance Initiative, please contact John Dyess at jdyess@equaljusticeworks.org, or 202-466-3686 x115.

*Progress reports, including the names of generous firms and individuals, will be published in The National Law Journal and other ALM publications.

ALM    ACC Association of Corporate Counsel    EQUAL JUSTICE WORKS

Reetzel & Andress (192)
(Akron, Ohio)
Partners $190-$375 (average $238)
(median $250)
Associates $105-$230 (average $168)
(median $190)
Firmwide (average $214) (median $235)

Rutan & Tucker (145)
(Costa Mesa, Calif.)
Partners $285-$500
Associates $190-$325

## S T U

Saul Ewing (245)
(Philadelphia)
Partners $270-$625 (average $379)
(median $375)
Associates $165-$300 (average $215)
(median $205)
Firmwide (average $316) (median $325)

Schnader Harrison (193)
(Philadelphia)
Partners $270-$700
Associates $145-$315

Shook, Hardy & Bacon (493)
(Kansas City, Mo.)
Partners $220-$627 (average $327)
(median $315)
Associates $160-$387 (average $200)
(median $190)

Shumaker, Loop & Kendrick (164)
(Toledo, Ohio)
Partners $215-$435 (average $280)
(median $280)
Associates $150-$330 (average $195)
(median $185)
Firmwide (average $260) (median $270)

Sills Cummis Epstein & Gross (164)
(Newark, N.J.)
Partners $300-$575
Associates $175-$350

Smith, Gambrel & Russell (198)
(Atlanta)
Partners $265-$515
Associates $155-$300

Stinson Morrison Hecker (321)
(Kansas City, Mo.)
Partners $225-$425 (average $292)
(median $295)
Associates $140-$230 (average $171)
(median $165)
Firmwide (average $210) (median $270)

Stoel Rives (344)
(Portland, Ore.)
Partners $250-$450 (average $349)
(median $350)
Associates $160-$300 (average $225)
(median $215)
Firmwide (average $301) (median $300)

Strasburger & Price (181)
(Dallas)
Partners $215-$485 (average $348)
(median $350)
Associates $185-$280 (average $213)
(median $205)
Firmwide (average $299) (median $290)

Sutherland Asbill & Brennan (429) (Atlanta)
Partners $395-$740 (average $457)
(median $450)
Associates $210-$450 (average $257)
(median $250)
Firmwide (average $347) (median $315)

Swidler Berlin (135)
(Washington)
Partners $385-$660 (average $502)
(median $502)
Associates $215-$400 (average $322)
(median $330)
Firmwide (average $402) (median $402)

Thompson & Knight (396)
(Dallas)
Partners $300-$625 (average $420)
(median $425)
Associates $185-$365 (average $228)
(median $225)
Firmwide (average $306) (median $260)

Thompson Coburn (296)
(St. Louis)
Partners $280-$450
Associates $150-$275

Thompson Hine (376)
(Cleveland)
Partners $195-$610 (average $396)
(median $390)
Associates $160-$400 (average $235)
(median $210)
Firmwide (average $337) (median $305)

Ulmer & Berne (174)
(Cleveland)
Partners $230-$410 (average $302)
Associates $150-$270 (average $192)
Firmwide (average $214)

## V W X Y Z

Venable (441)
(Washington)
Partners $285-$1,000 (average $430)
Associates $200-$440 (average $286)

White & Case (1,863) (New York)
Partners $560-$830* (average $590)
Associates $290-$555* (average $362)
Firmwide (average $381)

Wiggin & Dana (148) (New Haven, Conn.)
Partners $260-$475
Associates $170-$355

Wiley Rein & Fielding (253) (Washington)
Partners $325-$660 (average $425)
(median $425)
Associates $205-$335 (average $240)
(median $240)
Firmwide (average $333) (median $350)

Williams Mullen (233) (Richmond, Va.)
Partners $225-$550
Associates $150-$250

Winstead Sechrest & Minick (304) (Dallas)
Partners $300-$600
Associates $180-$350

Womble Carlyle Sandridge & Rice (535)
(Winston-Salem, N.C.)
Partners $240-$525 (average $365)
(median $365)
Associates $165-$325 (average $225)
(median $220)
Firmwide (average $315) (median $325)



Partners should be true partners

haynesboone
Setting precedent.

THE NATIONAL LAW JOURNAL/WWW.NLJ.COM   Monday, December 12, 2005

# Alternatives to the billable hour offered by law firms

*Below is a sampling of firms that provided information about the alternative billing methods they use most often. We asked firms to differentiate between variations on the billable hour (discounted hourly rates and blended hourly rates) and true alternatives to the billable hour. The percentages denote estimated portions of the firms' revenues obtained through each category. They are followed by the billing methods that the firms use within those categories.*

**Arent Fox.** Variations: less than 5%—discounted rate, blended rate. Alternatives: less than 5%—fixed or flat fee, contingency fee, hybrid fee.

**Armstrong Teasdale.** Variations: 18%—discounted rate, blended rate. Alternatives: 20%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Barr & Forman.** Variations: 25%—discounted rate, blended rate. Alternatives: 10%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Bryan Cave.** Variations: 20%—discounted rate, blended rate, premium rate based on type of work, rate by category. Alternatives: 10%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Covington & Burling.** Variations: 20%—discounted rate, blended rate. Alternatives: 5%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Day, Berry & Howard.** Variations—77.3%—discounted rate, blended rate. Alternatives: 22.7%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Dorsey & Whitney.** Variations: 5%—discounted rate, blended rate. Alternatives: 15%—fixed or flat fee, contingency fee, hybrid fee.

**Dykema Gossett.** Variations 85%—discounted rate, blended rate. Alternatives: 15%—fixed or flat fee, contingency fee, hybrid fee.

**Foster White Boggs Banker.** Variations: 10%—discounted rate, blended rate. Alternatives: 5%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Baker Roberts & Owen.** Variations: 10%—discounted rate, blended rate. Alternatives: 3%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Jenner & Block.** Variations: 42%—discounted rate, blended rate. Alternatives: 2%—fixed or flat fee, contingency fee, hybrid fee.

**Lewis, Rice & Fingersh.** Variations: 35%—discounted rate, blended rate. Alternatives: less than 5%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Loeb & Loeb.** Variations: 15%—discounted rate, blended rate. Alternatives: 15%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Luce, Forward, Hamilton & Scripps.** Variations: 5%—discounted rate, blended rate. Alternatives: 5%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**McKenna Long & Aldridge.** Variations. 20%—discounted rate, blended rate. Alternatives: 20%—fixed or flat fee, contingency fee, hybrid fee.

**Morris, Manning & Martin.** Variations: 15%—discounted rate, blended rate. Alternatives: 2%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Orrick, Herrington & Sutcliffe.** Variations: 5%—discounted rate, blended rate. Alternatives: 5%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Patton Boggs.** Variations: 10%—discounted rate, blended rate. Alternatives: 4%—fixed or flat fee, contingency fee, hybrid fee.

**Powell Goldstein.** Variations: 2%—discounted rate, blended rate. Alternatives: 13%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Robinson & Cole.** Variations: 15%—discounted rate, blended rate. Alternatives: 20%—fixed or flat fee, contingency fee, hybrid fee.

**Ulmer & Berne.** Variations: 10%—discounted rate, blended rate. Alternatives: 8%—fixed or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

**Womble Carlyle Sandridge & Rice.** Variations 25%—discounted rate, blended rate. Alternatives: less than 5% or flat fee, contingency fee, hybrid fee, retrospective fee based on value.

# Billing rates for junior to senior associates

*The following is a sampling of hourly rates charged by law firms that establish billing rates based on associate class. The name of each law firm is followed by its number of attorneys, as reported in the most recent NLJ 250, and the location of its principal or largest office.*

**Ballard Spahr Andrews & Ingersoll (452) (Philadelphia)**

| | | | |
|---|---|---|---|
| 1st | $200 | 5th | $260 |
| 2d | $215 | 6th | $275 |
| 3d | $230 | 7th | $290 |
| 4th | $245 | 8th | $300 |

**Blank Rome (487) (Philadelphia)**

| | | | |
|---|---|---|---|
| 1st | $195-$215 | 5th | $250-$280 |
| 2d | $210-$230 | 6th | $260-$300 |
| 3d | $225-$250 | 7th | $270-$315 |
| 4th | $240-$265 | 8th | $280-$325 |

**Brown Raysman Millstein Felder & Steiner (253) (New York)**

| | | | |
|---|---|---|---|
| 1st | $230 | 5th | $330 |
| 2d | $245 | 6th | $360 |
| 3d | $285 | 7th | $375 |
| 4th | $315 | 8th | $395 |

**Curtis, Mallet-Prevost, Colt & Mosle (196) (New York)**

| | | | |
|---|---|---|---|
| 1st | $225 | 5th | $365 |
| 2d | $260 | 6th | $400 |
| 3d | $295 | 7th | $435 |
| 4th | $330 | 8th | $470 |

**Davis Wright Tremaine (385) (Seattle)**

| | | | |
|---|---|---|---|
| 1st | $180 | 5th | $245 |
| 2d | $200 | 6th | $255 |
| 3d | $215 | 7th | $275 |
| 4th | $230 | 8th | $285 |

**Day, Berry & Howard (218) (Hartford, Conn.)**

| | | | |
|---|---|---|---|
| 1st | $190-$220 | 5th | $260-$345 |
| 2d | $210-$260 | 6th | $280-$365 |
| 3d | $235-$295 | 7th | $300-$390 |
| 4th | $250-$320 | 8th | $310-$410 |

**Dickstein Shapiro Morin & Oshinsky (353) (Washington)**

| | | | |
|---|---|---|---|
| 1st | $210-$235 | 5th | $320-$350 |
| 2d | $255-$285 | 6th | $320-$350 |
| 3d | $285-$320 | 7th | $330-$390 |
| 4th | $285-$320 | 8th | $350-$390 |

**Dinsmore & Shohl (294) (Cincinnati)**

| | | | |
|---|---|---|---|
| 1st | $140 | 5th | $190 |
| 2d | $150 | 6th | $200 |
| 3d | $160 | 7th | $210 |
| 4th | $175 | 8th | $220 |

**DLA Piper Rudnick Gray Cary (1,150) (Chicago)**

| | | | |
|---|---|---|---|
| 1st | $220 | 5th | $328 |
| 2d | $238 | 6th | $351 |
| 3d | $267 | 7th | $371 |
| 4th | $298 | 8th | $388 |

**Dorsey & Whitney (635) (Minneapolis)**

| | | | |
|---|---|---|---|
| 1st | $185 | 5th | $270 |
| 2d | $215 | 6th | $285 |
| 3d | $230 | 7th | $305 |
| 4th | $250 | | |

**Drinker Biddle & Reath (413) (Philadelphia)**

| | | | |
|---|---|---|---|
| 1st | $195 | 5th | $270 |
| 2d | $215 | 6th | $285 |
| 3d | $230 | 7th | $290 |
| 4th | $250 | 8th | $315 |

**Fenwick & West (246) (Mountain View, Calif.)**

| | | | |
|---|---|---|---|
| 1st | $235 | 5th | $385 |
| 2d | $275 | 6th | $410 |
| 3d | $310 | 7th | $425 |
| 4th | $345 | 8th | $440 |

**Gardere Wynne Sewell (306) (Dallas)**

| | | | |
|---|---|---|---|
| 1st | $170 | 5th | $255 |
| 2d | $185 | 6th | $270 |
| 3d | $210 | 7th | $285 |
| 4th | $235 | 8th | $300 |

**Jenkens & Gilchrist (382) (Dallas)**

| | | | |
|---|---|---|---|
| 1st | $180 | 5th | $260 |
| 2d | $205 | 6th | $275 |
| 3d | $225 | 7th | $300 |
| 4th | $245 | 8th | $310 |

**Jenner & Block (442) (Chicago)**

| | | | |
|---|---|---|---|
| 1st | $215 | 5th | $310 |
| 2d | $215 | 6th | $340 |
| 3d | $235 | 7th | $370 |
| 4th | $275 | 8th | $390 |

**Kelley Drye & Warren (321) (New York)**

| | | | |
|---|---|---|---|
| 1st | $235 | 5th | $335 |
| 2d | $260 | 6th | $355 |
| 3d | $285 | 7th | $375 |
| 4th | $315 | 8th | $395 |

**Kramer Levin Naftalis & Frankel (329) (New York)**

| | | | |
|---|---|---|---|
| 1st | $275 | 5th | $440 |
| 2d | $340 | 6th | $460 |
| 3d | $380 | 7th | $480 |
| 4th | $410 | 8th | $495 |

**Lewis, Rice & Fingersh (172) (St. Louis)**

| | | | |
|---|---|---|---|
| 1st | $150 | 5th | $260 |
| 2d | $180 | 6th | $270 |
| 3d | $205 | 7th | $275 |
| 4th | $230 | 8th | $285 |



**PRACTICE MANAGER**
Extend Your Vision

**Often Imitated.
Never Duplicated.**

We Defined The Legal Information Management System

With over 20 years of experience providing solutions that facilitate collaboration, control and compliance, we help savvy legal professionals efficiently manage their workload. Let us show you how we can help you.

One Solution. One Company. Extend Your Vision.

PMGSoftware.com
888.PMG.3232 - 888.764.3232

**Locke Liddell & Sapp (384) (Houston)**

| | | | |
|---|---|---|---|
| 1st | $150 | 5th | $250 |
| 2d | $180 | 6th | $270 |
| 3d | $210 | 7th | $290 |
| 4th | $230 | 8th | $300 |

**Miles & Stockbridge (204) (Baltimore)**

| | | | |
|---|---|---|---|
| 1st | $180 | 5th | $225 |
| 2d | $190 | 6th | $240 |
| 3d | $200 | 7th | $255 |
| 4th | $210 | 8th | $265 |

**Montgomery, McCracken, Walker & Rhoads (136) (Philadelphia)**

| | | | |
|---|---|---|---|
| 1st | $190 | 5th | $230 |
| 2d | $200 | 6th | $245 |
| 3d | $205 | 7th | $255 |
| 4th | $215 | 8th | $265-$295 |

**Morris, Manning & Martin (170) (Atlanta)**

| | | | |
|---|---|---|---|
| 1st | $175 | 5th | $285 |
| 2d | $215 | 6th | $300 |
| 3d | $255 | 7th | $310-$315 |
| 4th | $265 | 8th | $325 |

**Ogletree, Deakins, Nash, Smoak & Stewart (290) (Greenville, S.C.)**

| | | | |
|---|---|---|---|
| 1st | $190 | 5th | $245 |
| 2d | $210 | 6th | $260 |
| 3d | $225 | 7th | $270 |
| 4th | $235 | 8th | $285 |

**Orrick, Herrington & Sutcliffe (744) (New York)**

| | | | |
|---|---|---|---|
| 1st | $235 | 5th | $410 |
| 2d | $310 | 6th | $435 |
| 3d | $355 | 7th | $455 |
| 4th | $385 | 8th | $465 |

**Patton Boggs (408) (Washington)**

| | | | |
|---|---|---|---|
| 1st | $210 | 5th | $300 |
| 2d | $225 | 6th | $315 |
| 3d | $240 | 7th | $335 |
| 4th | $270 | 8th | $360 |

**Phillips Lytle (170) (Buffalo, N.Y.)**

| | | | |
|---|---|---|---|
| 1st | $145 | 5th | $175 |
| 2d | $150 | 6th | $185 |
| 3d | $155 | 7th | $195 |
| 4th | $165 | 8th | $210 |

**Pitney Hardin (178) (Florham Park, N.J.)**

| | | | |
|---|---|---|---|
| 1st | $190-$195 | 5th | $250-$275 |
| 2d | $195-$210 | 6th | $275-$300 |
| 3d | $210-$235 | 7th | $260-$315 |
| 4th | $235-$250 | 8th | $300-$330 |

**Robinson & Cole (223) (Hartford, Conn.)**

| | | | |
|---|---|---|---|
| 1st | $160-$200 | 5th | $200-$240 |
| 2d | $170-$210 | 6th | $210-$250 |
| 3d | $180-$220 | 7th | $220-$260 |
| 4th | $190-$230 | 8th | $240-$270 |

**Shumaker, Loop & Kendrick (184) (Toledo, Ohio)**

| | | | |
|---|---|---|---|
| 1st | $150 | 5th | $180 |
| 2d | $165 | 6th | $190 |
| 3d | $170 | 7th | $195 |
| 4th | $175 | 8th | $200 |

**Swidler Berlin (138) (Washington)**

| | | | |
|---|---|---|---|
| 1st | $215 | 5th | $300 |
| 2d | $235 | 6th | $330 |
| 3d | $255 | 7th | $355 |
| 4th | $275 | 8th | $375 |

**Thompson Hine (376) (Cleveland)**

| | | | |
|---|---|---|---|
| 1st | $188 | 5th | $223 |
| 2d | $189 | 6th | $258 |
| 3d | $205 | 7th | $259 |
| 4th | $205 | 8th | $269 |

**White & Case (1,863) (New York)**

| | | | |
|---|---|---|---|
| 1st | $290 | 5th | $495 |
| 2d | $360 | 6th | $505 |
| 3d | $435 | 7th | $520 |
| 4th | $475 | 8th | $530 |

**Wiley Rein & Fielding (253) (Washington)**

| | | | |
|---|---|---|---|
| 1st | $205 | 5th | $295 |
| 2d | $230 | 6th | $310 |
| 3d | $255 | 7th | $325 |
| 4th | $275 | 8th | $335 |

# Billing rates generally keep climbing

'BILLING RATES' FROM PAGE S1

an attorney rather than his or her expertise, he said.

"The biggest problem is not client acceptance [of the high rates], it is acceptance within the firm, because it probably goes against the hierarchy," Bower said.

The lowest associate billing rate reported this year was $75 at Philadelphia-based Cozen O'Connor, in comparison with $90 last year at Akron, Ohio-based Buckingham, Doolittle & Burroughs. The lowest partner billing rate was $105, also at Cozen O'Connor. Last year it was $135 at Philadelphia-based Marshall, Dennehey, Warner, Coleman & Goggin.

However, that's not to say that Cozen O'Connor is always a bargain. Its rates for partners ranged up to $700, and its rates for associates go up to $395.

Cooley Godward was one firm that did not raise its highest rates, but its lowest rates for partners increased from $375 to $395 per hour and those for associates rose from $205 to $215.

## Widening ranges

Some firms that raised their highest rates also dropped their lowest rates, increasing the range of billing rates available.

"The ranges are going to continue to grow," Bower said. "You'll see a lot of pressure on the low end, whereas for the important or strategic work, the rates will also be high, but justifiable."

This was the first year in which the NLJ asked firms to provide average and median (middle number) billing rates for partners and associates. Firms were also asked to provide firmwide averages and medians. These rates provide a clearer idea of what a typical lawyer at a given firm charges. More than half the responding firms provided this information.

Of those firms, Orrick, Herrington & Sutcliffe boasted the highest firmwide billing average: $451. Washington-based Patton Boggs reported the highest firmwide median: $495. New York's Kramer Levin Naftalis & Frankel reported both the highest average and the highest median rates for partners, $598 and $590, respectively. ■



**Tabs3™**
Reliable billing software.

## A BILLING PARTNER YOU CAN RELY ON

**Reliable, Proven Billing Software**
Tabs3 Billing Software has been helping law firms get their bills out accurately and on time for more than 25 years. Tabs3 is the only billing software recognized in 2006 by the three major legal industry awards from TechnoLawyer, Law Technology News®, and Law Office Computing; 95% of Tabs3 users would recommend it to your firm; and it has a 98% support satisfaction rating. Imagine what it could do for your firm!

**Easy to Use, Powerful and Fully Integrated**
Tabs3's intuitive design makes it easy for everyone in your firm to enter their time. It also is powerful enough to let you bill the way you want to. Tabs3 gives you unlimited billing rates per matter, lets you design your own bills and statements, and allows you to reprint or rebill statements at any time. Tabs3 integrates with its own financial and e-billing software. It also comes with a free copy of PracticeMaster – practice management software that helps you create group and firm-wide calendars, track all contacts, and check for conflicts of interest.

## ORDER A FREE TRIAL NOW
www.Tabs3.com/nlj


Law Technology News
Award: Time and Billing
Under 50 Attorneys


TechnoLawyer Award
Winner: Favorite
Time-Billing Solution


Law Office Computing
Award Finalist:
Time and Billing

# EXHIBIT M

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
                                        SUPERIOR COURT
                                        CIVIL ACTION
                                        NO. 05-3973-BLS2

## BROOKS AUTOMATION, INC.,
### Plaintiff

### vs.

## BLUESHIFT TECHNOLOGIES, INC. and PETER VAN DER MEULEN,
### Defendants

## MEMORANDUM AND ORDER ON DEFENDANT BLUESHIFT TECHNOLOGIES, INC.'S APPLICATION FOR ASSESSMENT OF ATTORNEY'S FEES AND COSTS

On January 17, 2006, this Court found in favor of the defendant Blueshift Technologies, Inc. ("Blueshift") on its counterclaim under G.L. c. 93A and awarded Blueshift actual damages of $209,300, which it trebled to $627,900, plus reasonable attorney's fees and costs. Findings of Fact, Conclusions of Law and Order on Blueshift Technologies, Inc.'s Application for Relief Under G.L. 93A ("Chapter 93A Decision") at 20-21. Blueshift has now applied for its attorney's fees and costs, seeking an award of $873,830.50 in attorney's fees and $88,222.25 in costs, for a total of $962,052.75. The plaintiff Brooks Automation, Inc. ("Brooks") opposes the application, contending that the amount sought is unreasonably high under the circumstances of this case. After hearing, having considered the fee application and the opposition, and the applicable law, this Court hereby finds that the reasonable attorney's fees and costs that Blueshift incurred in prevailing on its Chapter 93A claim total $848,830.50 in attorney's fees and $88,222.25 in costs, for a total of $937,052.75, and orders that the judgment be amended to provide for the award of these attorney's fees and costs.

Under G.L. c. 93A, § 11, if a Court, as here, finds that the counterclaim defendant has

1

committed unfair and deceptive acts in violation of G.L. c. 93A, § 2, the counterclaim plaintiff "shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." G.L. c. 93A, § 11. "While the amount of a reasonable attorney's fee is largely discretionary, the judge ... should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Linthicum v. Archambault, 379 Mass. 381,388-389 (1979). See also Heller v. Silverbranch Construction Corp., 376 Mass. 621, 628-629 (1978). "No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required." Berman v. Linnane, 434 Mass. 301, 303 (2001). In making its determination, the Court is not required to review each individual item in the legal bill, but can consider the bill as a whole. Id.

In finding a Chapter 93A violation, this Court essentially found that Brooks' complaint in this action was frivolous, that is, it did not have reasonable factual support under the legal standard adopted by the court, and did not have reasonable factual support under any legal standard that had an arguable basis in law. See Chapter 93A Decision at 13-14. This court also found that Brooks, when it filed suit, acted prematurely, with reckless disregard as to whether there was any reasonable factual support for the allegations in the complaint, because it was concerned about Blueshift's developing relationship with Applied Materials, Inc., a major customer it had worked hard to cultivate, and wanted to disrupt that relationship. Id. This Court concluded:

This Court has carefully considered whether the filing of this action with reckless

2

disregard as to whether there was any reasonable factual support for these allegations, motivated by the desire to interfere with Blueshift's developing contractual relationship with Applied Materials, constitutes an unfair and deceptive act or practice in trade or commerce, in violation of G.L. c. 93A. This Court finds that such reckless disregard, when motivated by the desire to interfere with a competitor's prospective contractual relationship with a coveted customer, is not only sufficient to constitute an unfair and deceptive act or practice in trade or commerce but is also sufficient to constitute a wilful violation of Chapter 93A.

Id. at 17.

This Court is mindful that Blueshift would not have been awarded attorney's fees if it had simply prevailed on its common law counterclaim of tortious interference with contractual relations, and that the award of attorney's fees must be focused on the prosecution of its Chapter 93A counterclaim, from which the entitlement to attorney's fees is derived. See Miller v. Risk Management Foundation of the Harvard Medical Institutions, Inc., 36 Mass. App. Ct. 411, 421 (1994). Yet, where, as here, a single chain of events gives rise to both the common law and the Chapter 93A claim, the Court need not attempt to apportion the legal effort between the two claims. Hanover Insurance Company v. Sutton, 46 Mass. App. Ct. 153, 177 (1999). This Court is also acutely aware that the essence of the Chapter 93A violation here is that Brooks sought to severely, perhaps fatally, injure a budding competitor in its business by recklessly filing a lawsuit that, by its nature, imperiled the continued existence of Blueshift. Pragmatically, justice cannot be served when a Chapter 93A violation is found in these circumstances unless Blueshift is awarded all the reasonable attorney's fees and costs it incurred in having to defend itself from this frivolous lawsuit. Therefore, this Court finds that the appropriate measure of reasonable attorney's fees and costs for this Chapter 93A violation is the entirety of the reasonable attorney's fees and costs that Blueshift incurred in defending itself against the allegations in Brooks'

3

complaint and in prosecuting its counterclaim.

In determining what constitutes an award of <u>reasonable</u> attorney's fees and costs, this Court has considered each of the so-called <u>Linthicum</u> factors set forth above, which I will address separately:

## The Nature of the Case and the Issues Presented

This Court recognizes that the factual issues presented in this case were extremely difficult. The legal issues were not intrinsically difficult, but they were made more difficult to address because of the problems Brooks had in articulating its legal position in a concise and timely fashion. In short, because Brooks could not until the eve of trial articulate precisely what Blueshift and Peter van der Meulen ("van der Meulen") had done that constituted a breach of his restrictive covenant or a theft of trade secrets, Blueshift was faced with essentially a "moving target" of allegations, each of which it had to rebut, both factually and legally..

This Court also recognizes, as it noted earlier, that the future of Blueshift likely depended on the outcome of this litigation. From the point of view of a fledgling corporation like Blueshift, this was a life or death case, and it required a commitment of time from able, experienced attorneys commensurate with the stakes.

Finally, this Court also recognizes that the trial of this case took place roughly two months after the complaint was filed, at Blueshift's request, based on its argument, ultimately borne out at trial, that the lawsuit was frivolous and needed to be resolved quickly, because Blueshift would have immense difficulty attracting necessary venture capital and new customers if the fate of the company hedged on a pending lawsuit. In essence, Blueshift convinced the Court that, if the trial was scheduled in the usual fashion, Blueshift would lose in its competitive

4

forum even if it prevailed in the legal forum, because there would be nothing or little left of the company by the time it was vindicated at trial.  The fast-track which this case was placed on effectively meant that it required an enormous amount of attorney time and effort in a concentrated period.

## The Time and Labor Required

While this Court believes that expediting the trial actually reduced the amount of attorney's fees expended, largely because there are only so many hours that even attorneys can work in that short a period of time, it credits the statements of Blueshift's lead attorney, Mark Tully, that he, associate Neil Smith, and paralegal Robin van der Meulen (no relation to Peter van der Meulen) devoted the vast majority of their time during this two month period to this litigation, and that other attorneys were needed to assist them in various matters and consult with them on numerous legal and factual issues.  This Court also credits the affidavit of attorney Tully and attorney Hosp that the time asserted as being devoted to this litigation was actually devoted to this litigation and was reasonably necessary to its success.

## The Amount of Damages Involved

The statutory directive that reasonable attorney's fees be awarded "irrespective of the amount in controversy" means that the prevailing party is entitled to reasonable attorney's fees even if the money award is purely nominal.  See Raymer v. Bay State National Bank, 384 Mass. 310, 319-320 (1981) (awarding "modest attorneys' fees" in the amount of $4,500 on money judgment of $1).  Yet, the inclusion of the amount of damages involved among the Linthicum factors indicates that what is reasonable may depend, at least in part, on the amount of damages involved and the result obtained.  Linthicum v. Archambault, 379 Mass. at 388-389.  As Judge

5

Patti Saris wrote, "While [the phrase, 'irrespective of the amount in controversy'] means the amount in controversy is not controlling, I have never heard of determining a reasonable fee without paying some regard to what was involved. The legislature, for example, cannot be thought to have intended that, simply because a plaintiff has a legitimate, but modest, Chapter 93A claim counsel could proceed as though conducting a multimillion dollar class action." Morse v. Mutual Federal S. & L. Ass'n of Whitman, 536 F. Supp. 1271, 1283 (D. Mass. 1982).

Here, the amount awarded on the Chapter 93 claim – $209,300, trebled to $627,900 – was the amount claimed. If one were to look at this amount in isolation, one could properly question the reasonableness of an application seeking roughly $960,000 in attorney's fees and costs when the potential damage award, trebled, was roughly one-third less than that. However, as discussed earlier, this Chapter 93A claim cannot justly be viewed in isolation, since the defense and defeat of Brooks' claims in its complaint was necessary to the successful prosecution of Blueshift's Chapter 93A claim, and a victory for Brooks would have been a devastating, perhaps deadly, blow to Blueshift's corporate future. Since the fate of a corporation, and the livelihood of its employees, was at risk, this Court finds that the amount of damages involved was immense, involving many millions of dollars.

**The Result Obtained**

The ultimate result obtained by Blueshift in this litigation was a complete victory on every count in the complaint and counterclaim. Not only did Blueshift defeat Brooks' claims, it proved them to be frivolous and Brooks to have been reckless in filing them.

**The Experience, Reputation, and Ability of the Attorneys**

The performance of Goodwin Procter in this litigation was first-rate in every respect.

6

Attorney Tully did a superb job in trying the case to the jury and in arguing the many motions. The written work submitted was top-notch. Even the audio-visual displays and the manner in which they were presented to the jury were well done. In short, this was an extraordinarily well-litigated case by able attorneys, paralegals, and staff in a highly regarded law firm.

## The Usual Price Charged for Similar Services by Other Attorneys in the Same Area

This Court credits the affidavit of Paula Alvary, a consultant to law firms whose professional experience gives her access to the billing rates charged by many large national law firms with Boston offices, that the billing rates charged by the Goodwin Procter partners who billed in this litigation for their work on behalf of Blueshift were roughly just above the average for large national firms in the Boston market, and the billing rates for associates were slightly below this average. She found that, during the pertinent time period, about fifty percent of similarly experienced partners in other firms had rates lower than the Goodwin Procter partners and about thirty percent of similarly experienced partners in other firms had rates higher than the Goodwin Procter partners. She also found that two of the three associate class years who billed on this matter at Goodwin Procter were lower than the billing rates for comparable associate class years at other large national firms in the Boston market.

Brooks challenges the comparison used by Alvary, noting that she focused only on large, national law firms. Implicit in this criticism is that Blueshift could have successfully litigated this case with a smaller, local firm. To be sure, there are certainly able, smaller, purely local law firms that could have represented Blueshift in this action, perhaps at a lower price. Yet, it would have been difficult for a small law firm to devote the quantity of resources needed to be devoted in a short time frame to obtain the result that Goodwin Procter was able to produce for Blueshift.

Here, as noted earlier, success at trial after a protracted litigation would have yielded, at best, a Pyrrhic victory for Blueshift, since the new corporation may not, by that time, have been financially viable. Moreover, also as noted earlier, for Blueshift, the entire future of the corporation rested on the result, so it was reasonable to seek out the most able, most experienced law firm to represent it in this action. Therefore, this Court does not believe it fair to limit the attorney's fees due to Blueshift to the billing rate charged by smaller local firms, since most such firms would not have been able to produce for Blueshift the same result produced here by Goodwin Procter. Indeed, this Court also observes that it rings hollow for Brooks to complain about Blueshift's retention of a large, national firm to represent it in this action when Brooks, which had much less at stake in terms of its corporate survival, chose to retain its own large, national firm to prosecute this action. Although the Court specifically invited such a submission, Brooks' law firm has not provided an affidavit indicating that its own billing rates were below that charged by Goodwin Procter or that it litigated this case for less than Goodwin Procter.

### The Amount of Awards in Similar Cases

Brooks has informed this Court of at least two other cases decided by extraordinarily able Superior Court judges in which the amount of attorney's fees sought by the prevailing party in a Chapter 93A action were considerably reduced by the Court. This Court gives little weight to these other cases because this Court knows too little of the circumstances that led those able judges to conclude that the attorney's fees sought were excessive. Certainly, in some cases, the number of attorneys and staff who billed time in this case on behalf of Blueshift – ten attorneys, a senior litigation technology specialist, a paralegal, and a case assistant – would be excessive or inefficient, but this Court does not find that it was here. To be sure, the billing rates charged by

8

all the attorneys and paralegals are large, but they are roughly the median charged among

comparable large firms with Boston offices, and therefore reflect approximately the "going-rate"

in the large firm attorney market. To characterize these attorney's fees as "unreasonable" simply

because they are expensive would be a moral judgment, not a market judgment. By analogy, it

may seem crazy that a utility infielder in major league baseball earns $1.5 million per year while

a Superior Court judge earns $112,000, but that does not mean it would be unreasonable for a

baseball team to pay that amount. Indeed, an arbitrator may justly find that the ballplayer is

"entitled" to that amount if his salary is determined by arbitration. The $600 per hour billed by

attorney Tully is certainly a great deal of money, but it is comparable to that billed by other

lawyers in Boston of his ability and experience.

**Blueshift's Motion for Summary Judgment**

While this Court finds that the amount of attorney's fees and costs sought by Blueshift is

generally fair and reasonable, it will reduce the amount sought for the time invested in preparing

and filing Blueshift's motion for summary judgment. Blueshift spent roughly $75,000 in

preparing its motion for summary judgment on the eve of trial, when it reasonably should have

recognized that the Court, in view of the greatly expedited trial schedule, would not be able in

advance of trial to resolve that motion in Blueshift's favor. While exact calculations are not

reasonably possible, this Court estimates that roughly $50,000 of the time and effort invested in

preparing that motion would have been invested anyway to address various legal and factual

issues that foreseeably were to arise at trial, so this Court does not believe that the entirety of that

$75,000 was billed for unreasonably wasted effort. It will, however, reduce Blueshift's fee

award by $25,000 to reflect that portion of this work which probably was unreasonably wasted

effort.

## **ORDER**

For the reasons stated above, after hearing, having considered the fee application and the opposition, and the applicable law, this Court hereby **FINDS** that the reasonable attorney's fees and costs that Blueshift incurred in prevailing on its Chapter 93A claim total $848,830.50 in attorney's fees and $88,222.25 in costs, for a total of $937,052.75, and **ORDERS** that the judgment be amended to provide for the award of these attorney's fees and costs.

Ralph D. Gants
Justice of the Superior Court

DATED: March 30, 2006

# EXHIBIT N

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **CHANGE THE CLIMATE, INC.** | ) | |
| **Plaintiff,** | ) | C.A. No. 00-10973-REK |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MASSACHUSETTS BAY** | ) | |
| **TRANSPORTATION AUTHORITY** | ) | |
| **(MBTA); MICHAEL H. MULHERN,** | ) | |
| **General Manager of the MBTA, in his** | ) | |
| **Official capacity,** | ) | |
| **Defendants** | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

### Plaintiff is the prevailing party in this case

The plaintiff as the "prevailing party" in this litigation is entitled to attorney's

fees under 42 U.S.C. § 1988. A prevailing plaintiff "should ordinarily recover an

attorney's fee unless special circumstances would render such an award unjust."

*Newman v. Piggie Park Enters.*, 390 U.S. 400, 401 (1968). The First Circuit Court

of Appeals noted that "awards in favor of prevailing civil rights plaintiffs are

virtually obligatory. See *Stanton v. S. Berkshire Reg'l Sch. Dist., 197 F.3d 574, 576*

*(1st Cir. 1999)* (explaining that the Supreme Court has interpreted section 1988 to

require fees in favor of prevailing civil rights plaintiffs 'save for rare cases'); *Casa*

*Marie Hogar Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994)*

(noting that prevailing civil rights plaintiffs are presumptively entitled to fee awards)." *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 293 (1st Cir. 2001). This case exemplifies the reasons for enacting the Civil Rights Attorneys Fees Act: so that important constitutional cases will be attractive to experienced counsel, as discussed in *Lipsett v. Blanco*, 975 F.2d 934, 940 n. 2 (1st Cir. 1992):

> In addition to gaining personally, successful civil rights plaintiffs serve the public interest and a fee award is therefore appropriate whether or not necessary. Moreover, some fee assessment in cases of this sort is likely to encourage more thoughtful actions by governments. *See Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 944 (1989) ( "Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of [section 1988]."). *See also City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686 (1986) ("Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff....' ") (quoting *Hensley*, 461 U.S. at 444 n. 4, 103 S.Ct. at 1945 n. 4 (Brennan, J., concurring in part and dissenting in part)).

Plaintiff is clearly the "prevailing party" in this action. A prevailing party is one who "has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the [plaintiff] sought in bringing suit'...." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92, 109 S.Ct. 1486, 1493 (1989). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought

to promote in the fee statute." *Id.* at 792-93, 109 S.Ct. at 1493. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992).

By all these measures, the plaintiff "prevailed" in this action. The *raison d'etre* for this law suit was the MBTA's refusal to post the plaintiff's three advertisements. As a result of the First Circuit's decision declaring that MBTA's refusal to violate the plaintiff's First Amendment rights, the MBTA is now compelled to post the ads. The parties are in the process of arranging for the ads to be posted. The incidental relief the plaintiff sought – reformation of the MBTA's advertising policies – was also achieved. This Court found the policy in effect at the time of the ad rejection did not comply with the First Amendment. This Court ordered the creation of an advertising advisory board, which the MBTA convened and, as a result, new, clearer advertising guidelines have been implemented. From the plaintiff's viewpoint, this long and hard-fought litigation has been a complete success.

No reduction in the fee award should be made because the plaintiff was unsuccessful on an alternate legal theory, that the MBTA's advertising space was a public forum, since both the successful and unsuccessful legal theories arose from

- 3 -

the same core events and success on the unsuccessful theory would not have

entitled the plaintiff to any additional damages. *Wagenmann v. Adams*, 829 F.2d

196, 225 (1st Cir.1987) (ruling that the suit at issue could not be viewed as a series

of discrete claims for purposes of fee award under § 1988 where "[a]ll of the triable

issues arose out of a short, visibly linked series of events"). It is not the number of

counts on which plaintiff prevailed, but the overall nature of its victory that entitles

it to a fee award. If the plaintiff's results are excellent, as they were in the present

case, no reduction in fees is warranted simply because plaintiff did not prevail on

each and every contention. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). *See*

*Pressley v. Haeger*, 977 F.2d 295 (7th Cir. 1992) (*Hensley* permits the Court to

award fees for losing arguments in support of prevailing claims, but not for losing

claims).

Applying those formulas, the plaintiff clearly prevailed. The plaintiff

proposed alternative arguments for why its ads should be posted: that the MBTA's

refusal was viewpoint based and/or that the ad space was a public forum. The

plaintiff prevailed on one argument, not the other. Both arguments led to the same

result, however: the placement of the ads. That equates with a complete practical

victory. "[T]he extent of a plaintiff's success in a civil rights suit is a practical

question, involving a qualitative, as well as quantitative, judgment." *Aubin v.*

*Fudala*, 782 F.2d 287, 290 (1st Cir. 1986). As the Supreme Court observed, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so...." *City of Riverside v. Rivera*, 477 U.S. 561, 577, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986).

The plaintiff's success in the present case was virtually complete. Change the Climate's goal, getting the ads expressing the organization's views about marijuana reform posted on the MBTA, was achieved. In *Coutin v. Young & Rubicam P.R.*, 124 F.3d 331 (1st Cir. 1998), the First Circuit noted that "the Supreme Court has identified results obtained as a preeminent consideration in the fee-adjustment process. But the term 'results obtained' has a variety of meanings. It can refer to a plaintiff's success claim by claim, or to the relief actually achieved, or to the societal importance of the right which has been vindicated, or to all of these measures in combination. We think that the last meaning is the best choice, and that, as a consequence, all three types of 'results' potentially bear upon the amount of an ensuing fee award." *Id.*, 124 F3d at 338 (internal citation omitted). By that standard, the plaintiff's victory was complete:

- Change the Climate succeeded in compelling the MBTA to post its ads,

- Change the Climate succeeded in having the Court declare that the MBTA advertising guidelines in effect when the ads were initially rejected were unconstitutionally vague, and
- Change the Climate succeeded in compelling the MBTA to institute new, more clear advertising guidelines, all to the public's benefit

The plaintiff's success entitles it to a full measure of attorneys fees.

### Calculation of the amount of attorneys fees

Attorney's fees are determined based on the "lodestar" method. *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331 (1st Cir. 1997). Under this method the court determines a reasonable hourly rate and the amount of time that was reasonably necessary to litigate the case. The product of the hourly rate times the number of hours is the lodestar fee, which is presumed to be reasonable. After the lodestar fee is determined the court may adjust the fee based on specific circumstances. Plaintiff does not request any such adjustment.

### Hourly rates

The hourly rate for an attorney's fees award should be based on the **current** prevailing market rates in the community, which means "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n. 11 (1984).

Even though work was performed at some time in the past, the Supreme Court has

held that current rates should be used for all time spent on a case.

> Clearly, compensation received several years after the
> services were rendered – as it frequently is in complex
> civil rights litigation – is not equivalent to the same dollar
> amount received reasonably promptly as the legal services
> are performed, as would normally be the case with private
> billings. We agree, therefore,  that an appropriate
> adjustment for delay in payment – whether by the
> application of current rather than historic hourly rates or
> otherwise – is within the contemplation of the statute.

*Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989). The practice in the First Circuit

is to apply current rates to the entirety of the time spent on a case. *See Lipsett v.*

*Blanco*, 975 F.2d 934, 942 (1992).

Plaintiff requests an hourly rate of $350.00 for lead counsel Harvey A.

Schwartz and Sarah Wunsch. Plaintiff requests the rate of $225.00 per hour for

services of Attorney Kimberly Scheckner and Laurie Frankl, associates in the office

of Rodgers, Powers & Schwartz. Mr. Schwartz and Ms. Wunsch are two of the

most experienced civil rights and First Amendment attorneys in Massachusetts and,

by any standard, are at the peak of their profession. These rates are conservative in

light of this Court's experience. For example, just a year ago in *In re Indian*

*Motorcycle Litig.*, 307 B.R. 7 (D. Mass. 2004), C.A. No. 02-11522-REK, this Court

awarded legal fees to Attorney Rudolph Pierce at $510 per hour and to his

associate, an attorney for just four years, at $275 per hour, finding that such rates were "reasonable." *Id.*, 307 B.R. at 17. See Exhibit D to Schwartz affidavit.

Plaintiff offers a wealth of information concerning current billing rates of senior litigators such as Mr. Schwartz and Ms. Wunsch, attached to their affidavits. Arguably, the most compelling evidence of prevailing market rates is the hourly rates charged by opposing counsel to the MBTA in the present case. The Massachusetts Appeals Court called such a direct comparison between the parties' billing practices "highly relevant." *Mulhern v Roach*, 20 Mass App Ct 322 (1985). In fact, if anything were to differentiate the defendants' counsel's rates from "market rates," it would be the assumption that the government would be provided a discount from market rates charged to commercial clients. The plaintiff has served a request for production of legal bills paid by the MBTA in this case. Early on in the case, in October 2001, Joseph White of Change the Climate had filed a public records request for this same information, which the MBTA provided, in abbreviated form, in February 2002. These records are attached as Exhibit B to Mr. Schwartz' affidavit.

The MBTA's senior counsel in this case at the time were Robert Bertsche and James Aloisi (Mr. Aloisi continues to represent the defendant). Mr. Bertsche was admitted in 1989. Mr. Aloisi was admitted in December 1978.  In comparison,

- 8 -

Mr. Schwartz was admitted to the Massachusetts bar in December 1978, just seven days after Mr. Aloisi. Ms. Wunsch was also admitted in 1978. Nonetheless, even though Mr. Aloisi, Mr. Schwartz and Ms. Wunsch have similar experience, plaintiff's counsel seek compensation at $350 per hour now, while the MBTA paid Mr. Aloisi at $450 per hour three years ago. Mr. Bertsche, with far less experience than plaintiff's counsel, was paid at $375 per hour by the MBTA in 2002. Exhibit B to Schwartz affidavit. Presumably, both men's hourly rates have increased in the past three years. This is powerful evidence that the rates sought by plaintiff's counsel are reasonable in light of prevailing hourly rates in Boston.

Other evidence of current market rates charged to a public entity comes from Exhibit E, attached to Mr. Schwartz' affidavit. This is a contract between the Boston firm of Ropes & Gray and the City of Somerville for representation in a First Amendment suit in this Court, beginning in December 2002. This document was obtained through a public records request in that case. In that 2002 contract, Ropes & Gray charges up to $530 per hour for partners and up to $350 per hour for associates. *See Visiting Nurse Association of North Shore, Inc.* No. 94-10123-NG (Judge Gertner, drawing on her own "experience in the labor and reimbursement field; [and the fact that she was] quite familiar with the record and work of the two lead partners in the case," approved fee awards to two partners at Ropes & Gray

(John Mason and Richard Ward) for work performed in **1994** in the amounts of **$345 and $320 per hour**, respectively, *Id.*, slip op. at 10.)

Further evidence of current market rates for legal fees comes from Exhibit D to Mr. Schwartz' affidavit. This Exhibit is the Supplemental Affidavit of Rudolph F. Pierce, Esq. in Support of Michael Mandelman's Motion for Award of Attorney's Fees, Costs and Expenses submitted to this Court in *In re Indian Motorcycle Litigation*, C.A. No. 02-11522-REK in January 2004. Mr. Pierce also represents the MBTA in the present case. In his affidavit, Mr. Pierce states that he has been a member of the Massachusetts bar for over thirty years. He states that "based on his experience and the prevailing rates charged by those with commensurate experience in the City of Boston, Rudolph F. Pierce's rate is $510.00 per hour." Para. 6. Mr. Pierce further states in his affidavit that the "prevailing rate" for his associate, who had been admitted to the Massachusetts bar for just four years, is $280.00 per hour. Para. 7. Based on that affidavit, this Court ruled that the hourly rates charged by Mr. Pierce and his associate "are reasonable" and this Court allowed those fees. *In re Indian Motorcycle Litig.*, 307 B.R. 7, 17 (D. Mass. 2004) (Keeton, J.)

In another civil rights case in which Goulston & Storrs, the MBTA's present counsel, represented the prevailing plaintiff, the firm sought a fee award for

- 10 -

attorney Neil V. McKittrick at his then billing rate. Judge Woodlock reduced that requested hourly rate to $325 per hour in 2003 for Mr. McKittrick, who at the time had been admitted to the bar for fifteen years.

These examples show that the hourly rates sought by plaintiff's counsel are consistent with the Boston market and also that hourly rates in Boston have increased dramatically in recent years. Mr. Schwartz, for example, has a history of steadily increasing hourly rates approved in fee awards in civil rights cases, as shown by the following chart of cases in the United States District Court for the District of Massachusetts.

| Year | Case | Hourly rate |
|------|------|-------------|
| 2002 | *Lopes v. Matapoisset* | $330 |
| 2000 | *Wilson v. McClure* | $250 |
| 1998 | *Nationalist Movement v. Boston,* | $250 |
| 1996 | *Janet Scott-Harris v. City of Fall River* | $250 |
| 1994 | *Mendoza v. Union St. Bus Co.* | $225 |
| 1987 | *Miller v. Town of Hull* | $200 |

Based on this history, an increase to $350 per hour is reasonable and consistent.

Massachusetts state and federal courts have routinely awarded attorneys fees calculated at the hourly rates requested for senior, highly experienced trial counsel.

- This court awarded legal fees of up to **$300 per hour** for work performed in **1998** in *United Companies Lending Corporation v. Sargeant*, 32 F. Supp. 2d 21, 23 (D. Mass. 1999)(Young, J.), agreeing with the defendants' acknowledgment that such rates "are not out of line with other law firms of comparable quality and size in Boston, Massachusetts during the relevant time periods. ..."; *accord Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (Saris, J.) (calculating rates for Boston civil rights attorneys **between 1996 and 1998** to range from $ 140 to **$325 per hour** depending on experience, skill, and reputation)

- Similarly, Judge Saris awarded attorneys fees at **$325 per hour** in *Arthur D. Little International, Inc. v. Dooyang Corporation*, No. 94-11875-PBS, **1998** WL 84581, 9 (D.Mass.), noting, "The lead counsel, a 1984 law school graduate and litigation partner, billed at $260 an hour in 1994; this **increased to $325 an hour in 1996.** The other billing attorney is a junior partner who graduated from law school in 1989. His hourly rate increased from $170 an hour to his current rate of $275 an hour." (Emphasis added). The Court specifically found those hourly rates to be "reasonable."

- The Massachusetts Superior Court found similar hourly rates to be "reasonable." In *Office One, Inc., et al. v. Lopez, et al.* (Lawyers Weekly No.

12-005-98)(Cowin, J.) (Norfolk) (Civil Action No. 96-2519), Judge Cowin

noted that "lead defense counsel, Hill & Barlow attorney Michael Greco, a

partner, charged $335 per hour prior to 9/1/97 when his billing rate rose to

**$350 per hour**. Robert Bertsche, an eighth year associate, charged $230 per

hour prior to 9/1/97 when his billing rate rose to $250 per hour. Robert

Schwartz, a third year associate, charged $160 per hour prior to 9/1/97 when

his billing rate rose to $180 per hour. This Court finds these hourly rates to be

fair and reasonable."

- In *Swain v. Kamalsky*, (Lawyers Weekly No. 12-366-96)(Suffolk Civil

  Action No. 91-6193-C), Judge Cratsley found that "fair compensation" in a

  medical malpractice case in **1996** (on a quantum meruit claim) was **$300 per**

  **hour.**

- In **1996** in *McMillan v. Massachusetts Society for the Prevention of Cruelty*

  *to Animals*, Civil Action No. 92-11178-RGS (Lawyers Weekly No. 02-266-

  96), Judge Stearns awarded Attorney Dahlia Rudavsky an hourly billing rate

  of **$285**, noting, "I find reasonable and commensurate with the rates charged

  in the Boston market by attorneys with similar experience, reputation and

  skill."

- As far back as **1990** in *Ackerley Communications of Massachusetts, Inc. v. City of Somerville*, 901 F.2d 170, 172 (1990), the First Circuit awarded attorneys fees at a rate of **$275 per hour**, stating "[W]e do take note that some major firms in Boston are reported to have billing rates for senior partners at significantly higher levels."

- In *Morgan v. Gittens*, 915 F. Supp. 457 (D. Mass. 1996), civil rights attorney Thomas Atkins was awarded fees at **$300 per hour** for work performed in **1991 and 1993.**

Finally in regard to hourly rates, the affidavit of Attorney Howard Freedman, attached to Ms. Wunsch's affidavit, includes the 2004 Annual Law Firm Survey published by Massachusetts Lawyers Weekly. Top Boston law firms report their billing rates for partners with an average low rate of $319 and an average high rate of $520. Obviously, the $350 rate requested by Mr. Schwartz and Ms. Wunsch, both of whom have sufficient experience to be among senior partners, falls barely above the bottom range for Boston law firm partners' hourly rates[1].

---

[1] Following Judge Young's lead in *Sys. Mgmt. v. Loiselle*, 154 F. Supp. 2d 195 (D. Mass., 2001), the practice of awarding fees at different rates based on "core" and "non-core" work has been largely abandoned in the District Court. Judge Young criticized the practice and acknowledged his error in making such distinctions in prior cases. He said "the paucity of the intellectual underpinnings of this distinction has become apparent." 154 F. Supp. at 209.

In light of all of this information, the plaintiff suggests that the hourly billing rates requested are reasonable and reflective of the low end of the prevailing market rates in Boston for attorneys of comparable experience and reputation.[3]

This court should award attorneys fees at the hourly rates requested.

## Hours

The MBTA contested this case at every step, from the question of whether the MBTA had even rejected the plaintiff's ads in the first place through discovery, extensive summary judgment proceedings, trial, and more than a year of post-trial proceedings requiring extensive briefing and hearings, all before the full appeals to the First Circuit. As the First Circuit noted in *Gay Officers*, 247 F.3d at 298, "After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field. Cf. *City of Riverside, 477 U.S. at 581 n.11* ('The government

---

[3]Defendant certainly can not suggest that plaintiff's counsel are entitled to a lesser hourly fee solely because Mr. Schwartz is a partner in a specialty civil rights and employment discrimination law firm and Ms. Wunsch is employed by the ACLU of Massachusetts. In none of the decisions discussing the factors to be considered in setting fees does the court discuss the number of partners or the altitude of one's office as a relevant factor. The standard is the "prevailing rate in the community for **comparably qualified** attorneys," *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir.1988)(emphasis added), not for comparably sized law firms. Absent relevant and admissible evidence, the court should not rely on any supposition that per capita overhead or expenses are any less at smaller firms than at larger firms with offices in the same downtown Boston area. Further, while Rodgers, Powers & Schwartz is a smaller firm, it is comparable in size and experience to the employment groups of most large law firms. A finding that large firm lawyers are entitled to fee awards at higher hourly rates than equally experienced and successful smaller firm attorneys, simply because they practice in large firms, has no place in the judicial system.

cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.')"

The plaintiff staffed this case conservatively, with at most three attorneys working on the case at any one time, including Mr. Schwartz, Ms. Wunsch and a single associate from Mr. Schwartz' office. Work was distributed liberally to law students, clerks and legal interns as appropriate. The plaintiff has served a request for production of all legal bills received by the MBTA from its attorneys in this case. Even without having seen those bills, plaintiff confidently predicts that plaintiff's attorneys worked this case far more efficiently, using fewer people and less time, than did the defendants' counsel.

## CONCLUSION

For the foregoing reasons, this Court should award the full amount of attorneys fees and costs requested, with post judgment interest.

Respectfully submitted,

CHANGE THE CLIMATE, plaintiff
By its attorneys,

/s/  Harvey A. Schwartz
Harvey A. Schwartz, BBO. # 448080
Laurie Frankl, BBO #647181
RODGERS, POWERS &
SCHWARTZ
18 Tremont Street

Boston, MA 02108
(617) 742-7010

Sarah Wunsch BBO # 548767
ACLU FDN. OF MASSACHUSETTS
99 Chauncy Street, Suite 310
Boston, MA 02111
(617) 482-3170 ext. 323

Date:  February 28, 2005