## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA PORTER, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 04-11935-DPW |
| ANDREA CABRAL, SUFFOLK | ) |
| COUNTY SHERIFF'S DEPARTMENT, | ) |
| SUFFOLK COUNTY, and | ) |
| Defendants | ) |
| | ) |

## DEFENDANTS' ANDREA CABRAL, SUFFOLK COUNTY SHERIFF'S DEPARTMENT AND SUFFOLK COUNTY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

## I.    INTRODUCTION

The Plaintiff is a former contract nurse practitioner employed by Correctional Medical Services, Inc. ("CMS") at the Suffolk County House of Correction ("HOC"). CMS was the company that provided medical care for the inmates incarcerated at the HOC in 2003. The contract negotiated between Suffolk County and CMS provided that the Suffolk County Sheriff's Department ("SCSD") had the authority to bar any employee of CMS from the HOC. Barring is the standard mechanism for removing contract workers and volunteers from working at the HOC.

On June 10, 2003 Sheriff Cabral decided to revoke the Plaintiff's security clearance and bar her from the HOC because of her failure to document her observations of an inmate's physical injuries in his medical record, after he alleged he had been assaulted by an officer, and her failure to provide a confidential report concerning her encounter with the inmate in a timely manner as requested. In September 2004 the Plaintiff filed a ten count Complaint alleging that

she was illegally barred from the HOC in retaliation for reporting the inmate's allegations of abuse to the FBI.

The Court denied the Defendants' partial Motion to Dismiss without prejudice and gave the Plaintiff leave to amend her complaint. The Plaintiff filed an Amended Complaint in December 2004 and, despite the Court's admonition that she narrow her claims, added another count alleging tortious interference with advantageous relations. The Amended Complaint contained eleven counts, nine of which were against the Suffolk Defendants: Count I (Violation of 42 U.S.C., § 1983); Count II (Violation of State Whistleblower Statute, c. 149, § 185); Count III (Breach of Contract); Count V (Breach of Contract); Count VI (Termination in Violation of Public Policy)[1]; Count VII (Violation of Massachusetts Civil Rights Act, c. 12,§§ 11H and 11I); Count IX (Defamation); Count X (Intentional Infliction of Emotional Distress); and Count XI (Tortious Interference with Advantageous Relations).

The Plaintiff voluntarily dismissed Count VII (Violation of Massachusetts Civil Rights) **after** the Defendants filed for Summary Judgment as to all counts in the Amended Complaint. Thereafter, the Court granted the Defendants' Motion for Summary Judgment as to five of the remaining seven counts: Count II (Violation of State Whistleblower Statute); Count III (Breach of Contract); Count V (Breach of Contract); Count IX (Defamation) and Count X (Intentional Infliction of Emotional Distress).[2]

After a jury trial the Court entered judgment for the Plaintiff on the two remaining claims: Count I, alleging a violation of § 1983, and Count XI alleging tortious interference with

_____

[1] Upon the Suffolk Defendants' Motion to Dismiss Plaintiff's Amended Complaint, the Plaintiff voluntarily dismissed Count VI (Termination in Violation of Public Policy) as to the Suffolk Defendants.
[2] The Court granted Co-Defendant CMS's Motion for Summary Judgment and dismissed them entirely from the case.

advantageous relations.[3]   The jury awarded the Plaintiff $360,000 in compensatory damages and $250,000 in punitive damages against Defendant Sheriff Cabral.  The Defendants timely filed Motions for New Trial and Remittitur of Damages and a hearing is currently scheduled for August 17, 2006, on those motions.[4]

Contrary to Plaintiff's counsel's characterization, this was a straightforward civil rights action that the Plaintiff chose to over litigate from the issuance of the initial demand letter to the filing of her Amended Complaint.  Indeed, the Plaintiff voluntarily dismissed two of the nine counts (Termination in Violation of Public Policy and Mass. Civil Rights) against the Defendants prior to the summary judgment hearing.  During the summary judgment hearing the Court repeatedly emphasized that the core of the case from his perspective was whether the Plaintiff's communication with the FBI was a substantial motivating factor in her barring. (Summary Judgment Hearing, December 15, 2005, pg. 23, lines 11-14; pg. 30, lines 19-22; p. 60, lines 1-5; p. 82, lines 9-24; pg. 101, lines 22- 25; pg. 102, lines 1-3, Exhibit A).  Accordingly, the Court granted the Defendants' Motion for Summary Judgment on five of the remaining seven counts. The Court repeated his assessment of the case during the charging conference, noting, "this is garden variety, I think, a First Amendment case." (Jury Trial, Day Six, pg. 117, lines 19-20). Additionally, the Court further narrowed the focus of the case during the pre-trial hearing when he granted the Defendants' Motion in Limine excluding any evidence of the Code of Silence, the Stern Commission report and any evidence in support of a theory of liability based on deliberate indifference.

---

[3] The Court noted that Count XI was essentially duplicative of and a common law version of the §1983 claim. (Summary Judgment Hearing, December 15, 2005, pg. 82, lines 18-21; pg. 87, lines 18-22, attached as Exhibit A). Plaintiff's counsel agreed with that assessment. (Summary Judgment Hearing, p. 82, lines 23-25, Exhibit A)

[4] Accordingly, the Defendants reserve the right to amend and refile this opposition in the event that any relief granted would have an impact on Plaintiff's attorneys fees petition.

The presence of the FBI and the United States Attorney's Office, while a unique feature of the case, hardly presented the kind of complexities justifying the excessive hours billed and rates requested by Plaintiff's counsel. This is particularly true given lead counsel's extensive prior experience as a former Assistant United States Attorney and familiarity with the FBI, rules governing grand jury secrecy and the Touhy regulations. Further, as the Court noted during the summary judgment hearing, "this strikes me – apart from all of the very interesting stuff that people want to do more discovery on, this strikes me as a pretty core kind of case…but it's really a question of whether or not a 1st Amendment violation was a significant factor in this, a motivating factor." (Summary Judgment Hearing, December 15, 2005, pg. 101, lines 22-25; pg. 102, lines 1-3, Exhibit A).

Counsel for the Plaintiff has submitted a Motion for Attorneys fees requesting attorneys fees in the amount of $287,000 (representing the work of one partner, four associates and one paralegal) $24,304.94 in costs and $6,500 for electronic litigation support at trial, for a total fee request of $318,781.94. The Defendants do not dispute that for purposes of 42 U.S.C. § 1988(b), the Plaintiff is the prevailing party in this matter and therefore entitled to an award of **reasonable** attorneys fees. However, for the reasons set forth more fully below, the Defendants object to the Plaintiff's request because the Plaintiff seeks fees for attorney and paralegal hours which were (1) unnecessary, unproductive, duplicative and excessive; (2) spent on unsuccessful motions, claims or contentions; (3) spent on non-core and clerical tasks; and (4) not properly documented. Further, the hourly rates sought by Plaintiff's counsel are grossly excessive and not consistent with the "prevailing hourly rate in Boston for attorneys of comparable skill, experience and reputation." Mogilevsky v. Bally Total Fitness Corporation, 311 F.Supp. 2d 212, 216 (D.Mass 2004). Accordingly, the Defendants contend that the Plaintiff's request be significantly reduced.

## II.    **ARGUMENT**

Pursuant to 42 U.S.C., § 1988(b), "the court, in its discretion, may award the prevailing party [in a §1983 civil rights suit], …a reasonable attorney's fee as part of the costs" to which a prevailing party is ordinarily entitled to under Fed.R.Civ.P.54(d).  42 U.S.C., §1988(b); Parker v. Town of Swansea, et al., 310 F.Supp. 2d 376, 387 (D.Mass 2004).  However, the mere fact that the Plaintiff was the "prevailing part[y] does not mean that [she] can recover for all the time spent in this litigation", particularly in light of the fact that she was successful on only two of the nine claims that she brought against the Defendants.  Alfonso v. Aufiero, 66 F.Supp. 2d, 183, 191 (D.Mass 1999) (internal citations and quotation omitted); Parker v. Town of Swansea, supra at 387.  An award of attorney's fees should not result in a "windfall" for the prevailing party.  Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).

To calculate a reasonable fee award the First Circuit has adopted the lodestar approach, which requires the Court to determine the number of hours reasonably spent on the litigation and multiply that figure by a reasonable hourly rate.  Parker v. Town of Swansea, supra at 387; Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001); Alfonso v. Aufiero, 66 F. Supp.2d 183, 192 (D.Mass 1999).  "In implementing this lodestar approach, the judge first calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Parker v. Town of Swansea, 310 F.Supp.2d at 387, quoting Gay Officers Action League, 247 F.3d at 295.  Once the lodestar figure has been determined it represents a presumptively reasonable fee, which may be adjusted upward or downward based upon factors present in the particular case.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

**A.  The Hourly Rates Requested By Plaintiff Are Excessive And Do Not Conform To The Prevailing Rates For Civil Rights Practitioners In The Community.**

The Court should significantly reduce the hourly rates requested by the Plaintiff for all of the attorneys and paralegal staff because they far exceed the reasonable hourly rates for comparable services in this area.  While it is within the Court's discretion to award the Plaintiff reasonable attorneys' fees, she is not entitled to an award of a premium fee.

In Blum v. Stenson, 465 U.S. 886, 895-96 n. 11, the Supreme Court held that an award of attorneys' fees should be predicated upon the prevailing market rates in the relevant legal community.

> The critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate.  And the rates charged in private representations may afford relevant comparisons.  In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates.  To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate.

Blum, 465 U.S. at 895-96 n.11.  "[T]he legislative history to §1988 fees suggests the purpose of fixing a reasonable hourly rate is to arrive at amounts that are adequate to attract competent counsel, but which do not produce windfalls to attorneys." Change the Climate, Inc. v. MBTA, 2005 WL 3735100, *4, citing LaPlante v. Pepe, 307 F. Supp. 2d 219, 225 (D.Mass 2004).

In calculating a reasonable hourly rate, the Court must consider the prevailing hourly rate in Boston for civil rights practitioners of comparable skill, experience, and reputation, taking into account the attorney's qualifications, experience and specialized competence. *See* Bogan v. City of Boston, 2006 WL 1283569 (D.Mass.) *4; Parker v. Town of Swansea, 310 F.Supp at

388; <u>Martinez v. Hodgson</u>, 265 F.Supp. 2d 135, 142 (D.Mass 2003). The Court must also

consider other factors "such as the type of work performed, who performed it, the expertise that

it required, and when it was undertaken." <u>Grendel's Den, Inc</u>., 749 F.2d at 950-51 (1st Cir. 1984).

The prevalent practice in the First Circuit is to adjust the lodestar calculation by distinguishing

between "core" legal work (work requiring the skill and expertise of an attorney) and "non-core"

work (less demanding tasks such as telephone calls, scheduling, letter writing that could be

performed by non-lawyers), and billing non-core work at two-thirds of the reasonable hourly rate

charged for the core work of that attorney. *See* <u>Bogan</u> <u>v. City of Boston</u>, 2006 WL 1283569 *7

(D.Mass.2006)  (Bowler, M.J.); <u>Parker v. Town of Swansea</u>, 310 F. Supp. 2d 376, 391 (D. Mass.

2004) (Dein, M.J.); <u>La Plante v. Pepe</u>, 307 F. Supp. 2d 219, 225 (D.Mass. 2004) (Gertner, J.);

<u>Alfonso v. Aufiero</u>, 66 F.Supp. 2d 183, 196 (D. Mass. 1999) (Saris, J.); <u>McLaughlin by

McLaughlin v. Boston School Committee</u>, 976 F. Supp. 53 (D.Mass. 1997) (Garrity, J.);

<u>Brewster v. Dukakis</u>, 3 F.3d 488, 492 n.4 (1st Cir. 1993).  *But see* <u>Change The Climate, Inc.</u>,

2005 WL 3735100, *3 (D.Mass.) (Keeton, J.) (rejecting core/non-core distinction); <u>Mogilevsky

v. Bally Total Fitness Corporation</u>, 311 F.Supp.2d 212, 217-218 (D.Mass. 2004) (Young, J.)

(rejecting core/non-core distinction, but recognizing that a court must not permit an attorney to

recover his standard hourly rate for work appropriate for a less experienced lawyer or a paralegal

or secretary); <u>Systems Mgt. v. Loiselle</u>, 154 F.Supp. 2d 195, 209 (D.Mass.2001) (Young, J.).

It is the Plaintiff's burden to provide the Court with affidavits and other evidence: (1)

establishing her attorneys' skills and experience, and (2) informing the Court of the prevailing

market rate in the community for attorneys with such qualifications.  See <u>Parker v. Town of

Swansea</u>, 310 F.Supp.2d at 388, citing <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  It is well

settled that "the Court should not accept attorney submissions at face value but rather should

assign more realistic rates to time spent." <u>Parker v. Town of Swansea</u>, supra at 388 (internal

quotations and citations omitted).   Here, the Plaintiff's submissions do not justify the hourly

rates of $380 for lead counsel, Joseph F. Savage, Jr., $240 per hour for David S. Schumacher and

other associates, and $110 per hour for the paralegal, requested in this litigation.[5]

Attorney Savage's extensive experience in criminal and civil litigation does not justify

the $380 hourly rate claimed in this litigation.   While the Plaintiff concedes that Mr. Savage does

not have "extensive experience trying civil rights cases" (Plaintiff's Memorandum at p. 10), the

reality is that Mr. Savage concentrates his practice in white collar crime, governmental

investigations, and commercial litigation.   (*See* Goodwin Procter Attorney Directory, Joseph F.

Savage, Jr., attached as Ex. B).   From the Plaintiff's own submissions it appears that prior to this

litigation, Mr. Savage had never represented a plaintiff in a civil rights case.   In fact, during the

course of this litigation Mr. Savage delegated key legal issues to less experienced associates.   For

example, Mr. Sweet drafted the § 1983 portion of the Plaintiff's Opposition to Defendants'

Motion for Summary Judgment and prepared a research memorandum and talking points for Mr.

Savage in preparation for the summary judgment hearing (Plaintiff's Ex. A, pgs. 19, 21). At trial

Mr. Savage asked Mr. Sweet to address the Court regarding the special verdict slip. (Transcript

of Jury Trial, Day 6, January 17, 2006, pg. 102).   However, Mr. Savage seeks to be compensated

at a rate ($380) that far exceeds the upper range of fees only recently awarded to the foremost

civil rights practitioners in this area.  *See* <u>Change the Climate, Inc</u>., 2005 WL 3735100 (hourly

---

[5] That the requested rates represent a "substantial discount" from the billing rates routinely charged by Goodwin Procter and other Boston law firms of comparable size, (see Plaintiff's Ex. E, Declaration of Arthur W. Greenberg; Plaintiff's Ex. I, Declaration of Howard Friedman; Plaintiff's Ex. J, 2006 survey from *Massachusetts Lawyers' Weekly* showing billing rates of other law firms), should not factor in this Court's determination of what constitutes a reasonable hourly rate for the legal services provided here. "Billing rates are just that - - an initial demand for payment.  They may well not reflect the actual 'yield' from the bills sent out." <u>McDonough v. City of Quincy</u>, 353 F.Supp.2d 179, 187 (D.Mass.2005).  Further, there is no indication of the nature of the legal services provided at those rates, nor the relevant qualifications and expertise of the firms and the lawyers involved.  The relevant legal community in this case is the hourly rate for civil rights practitioners in the City of Boston.  See <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n. 11 (1984); <u>Alfonso v. Aufiero</u>, 66 F. Supp.2d 183, 197 (D.Mass. 1999).

rate of $350 awarded to Sara Wunsch, Esq. and Harvey Schwartz, Esq. both of whom had over twenty years experience as civil rights practitioners); see also Guckenberger v. Boston University, 8 F.Supp. 91, 106 (D.Mass. 1998) (hourly rate of $325 for core time awarded to elite civil rights attorney with 36 years litigation experience, focusing on disability law).  Indeed, Howard Friedman, whose affidavit is attached in support of the Plaintiff's motion and whom Judge Young described as "one of the foremost practitioners in this field [of civil rights litigation] and, indeed, is sought out to teach the bar concerning these issues", only commanded an hourly rate of $240 for core work in Zurakowski v. D'Olyey, 46 F.Supp.2d 87, 89 n.2 (D.Mass. 1999).

The Defendants contend that an hourly rate of $225 is both reasonable for the services rendered by Mr. Savage and in keeping with the prevailing rates awarded to civil rights practitioners in Boston, given Mr. Savage's minimal experience in civil rights litigation but rather lengthy experience in civil and criminal litigation.  *See* McDonough v. City of Quincy, 353 F.Supp. at 187-88 ($200 hourly rate awarded to attorney with over eleven years experience in the relevant field; $150/hour for assisting counsel and $50/hour for legal assistant); Dixon v. International Brotherhood of Police Officers, 2006 WL 1677305, *10 (D.Mass) (Young, J.) (awarding $250 hourly rate for attorney with ten years relevant employment law experience); Martinez v. Hodgson, et al., 265 F.Supp. 2d 135 (D.Mass.2003) (awarding plaintiff's attorney $225/hour in civil rights case under §1988; Parker v. Town of Swansea, 310 F.Supp. at 390-91 ($180/hour awarded to lead counsel for core work and $130/hour for non-core work); Martino v. MBTA, 230 F.Supp.2d 195, 205 (D.Mass. 2002) (awarding $200/hour for civil rights attorney); Systems Management, Inc., 154 F.Supp. 2d at 210 (awarding $235/hourly rate for attorney with twenty-four years experience and $200 hourly rate for attorney with eleven years experience);

Ciulla v. Rigny, 89 F.Supp. 2d 97, 104 (D. Mass. 2000) ($200/hourly rate awarded to civil rights attorney); Alfonso v. Aufiero, 66 F.Supp. 2d at 197 ($250/hour typical hourly rate for senior private civil rights attorneys in Boston); LaPlante v. Pepe, 307 F.Supp.2d 219, 224 (D.Mass. 2004) ($300/hour for litigation partner and $275/hour for senior litigation associate based upon their overall trial expertise).

The rates requested for the associates who worked on this case should also be similarly reduced. Jennifer Goddard was the associate who managed the case while it was at the firm of Testa Hurwitz. Although it appears that Ms. Goddard had ten years of experience in employment law during her tenure at Testa Hurwitz, there is no evidence that she had any experience in civil rights litigation. Moreover, her core work in this case was limited to over drafting demand letters (*see* Correspondence to Sheriff Andrea Cabral, dated July 14, 2003, attached as Ex.C), the original Complaint, and Amended Complaint and drafting and arguing the Plaintiff's Opposition to the Defendants' Motion to Dismiss. Accordingly, an hourly rate of $150 is a reasonable hourly rate for Ms. Goddard. *See* LaPlante v. Pepe, 307 F.Supp.2d at 224 (hourly rates of $150 and $120 for two associates whose experience did not counterbalance lack of expertise in the field).

Attorney Schumacher was responsible for the day to day handling of this case at Goodwin Procter and, although he was second chair at trial, his trial responsibilities were limited to the presentation of the testimony of the Plaintiff's husband and daughter and the severely circumscribed testimony of FBI Agent Snyder. He has been an associate at Goodwin Procter since 2000, where his practice focuses on litigation in the area of white collar crime, commercial disputes and securities. (*See* Goodwin Procter Attorney Directory, David S. Schumacher, attached as Ex. D). Mr. Schumacher has no demonstrated experience in the area of civil rights

litigation or employment law and his relevant trial experience is extremely limited. Accordingly, an hourly rate of $125 is a reasonable hourly rate for Mr. Schumacher. *Id.*

The Plaintiff seeks compensation for work performed by Anita Bapooji. Although Ms.Bapooji has been practicing law since 1997, she has neither experience in the area of civil rights or employment law nor any demonstrated expertise relevant to this case. At Goodwin Procter she concentrates in general corporate and commercial litigation. (*See* Goodwin Procter Attorney Directory, Anita Bapooji Ryan, attached as Ex. E). Accordingly, an hourly rate of $125 is a reasonable hourly rate for Ms. Bapooji.[6] *Id.*

The Plaintiff also seeks compensation for research and writing performed by James Sweet. Mr. Sweet has no demonstrated experience in the area of civil rights or employment law. Additionally Mr. Sweet has only been practicing law at Goodwin Procter since 2003. (*See* Goodwin Procter Attorney Directory, James R. Sweet, attached as Ex. F). Accordingly, an hourly rate of $125 is a reasonable hourly rate for Mr. Sweet. *Id*

Finally, the Plaintiff requests an hourly rate of $110 for paralegal work performed by Andrea Boivan[7]. Ms. Boivan's contribution to this litigation consisted primarily of making copies of exhibits, editing exhibit lists, placing stickers on exhibits, creating copies of juror notebooks that were not used at trial, supervising the transportation of materials from court to the firm and assisting Mr. Berriman with electronic document issues at trial. (*See* Plaintiff's Ex. A, pgs. 24-28). Although Ms. Boivan has a law degree, given the non-legal and clerical nature of the work she performed, a reasonable rate for her services is $50/hour. *See* <u>Dixon</u>, 2006 WL

---

[6] As will be discussed more fully below, it is the Defendants' contention that the hours billed by Ms. Bapooji should be stricken in their entirety because they are duplicative, excessive and in support of unsuccessful claims or evidence not utilized. However, should the Court determine that some or all of Ms. Bapooji's time is compensable, the hourly rate should be $125.
[7] As will be discussed more fully below, the hours billed for Ms. Boivan's work are excessive and the Defendants seek a substantial reduction in the total amount billed.

16777305 *11 (D.Mass) (awarding $60 for paralegal work); <u>McDonough</u>, 353 F.Supp.2d at 187

($50/hour);

**B. The Hours Claimed By Plaintiff's Counsel Are Grossly Excessive, Duplicative, Involve Unsuccessful Claims And Non-Core Work And Are Not Sufficiently Documented.**

The Plaintiff requests compensation for 1,023.10 hours of work on this case claiming that

the bill reflects only the "most critical activities performed in this case" and a mere "fraction of

the time" actually spent on the case by Goodwin Procter.  Given that the Plaintiff's complaint

was over pled and the case excessively staffed from the commencement of the action through

trial, it is not surprising that the bill submitted represents only a "fraction of the time" spent on

the case by Goodwin Procter.  However, the decisions made by Goodwin Procter regarding

staffing and allocation of resources are not sufficient to meet the Plaintiff's burden to

demonstrate that the hours claimed were reasonably expended on the litigation.  <u>Hensley v.

Eckerhart</u>, 461 U.S. 424, 433 (1983).

This Court has the discretion to reduce the number of hours requested by the Plaintiff if

the documentation is inadequate, or if the work was "excessive, redundant or otherwise

unnecessary." Id. at 433-34; <u>Grendel's Den, Inc.</u> 749 F.2d at 950 (hours which are duplicative,

unproductive, excessive, or otherwise unnecessary should be subtracted from the total number of

hours billed).  In making its determination, the Court "has a right-indeed, a duty-to see whether

counsel substantially exceeded the bounds of reasonable effort." <u>Mogilevsky</u>, 311 F.Supp.2d at

218, <u>quoting Guckenberger v. Boston University</u>, 8 F.Supp.2d 91, 99-100 (D.Mass.1998)

(internal citations and quotations omitted).  "[T]he law firm's bill need not be swallowed whole

by the client's litigation adversary just because it *is* the law firm's bill." <u>Mogilevsky</u>, 311

F.Supp.2d at 218 quoting <u>United States v. Metropolitan District Commission</u>, 847 F.2d 12, 17

12

(1st Cir.1988) (emphasis in original).  "Nor need the district judge feel handcuffed by counsel's submission of time records, no matter how elaborate.  Rather, the judge must draw on his own experience and wisdom in deciding whether the time spent on each phase was in excess of a reasonable amount." Id. (internal quotations and citations omitted).

Scrutiny of the Plaintiff's bill reveals substantial time billed for non-core legal work such as telephone calls, letter writing, conferences with co- counsel and others and drafting deposition notices and subpoenas; significant hours for work on claims that were ultimately unsuccessful, e.g. defamation, whistleblower, breach of contract and Mass. Civil Rights, or evidence that was not produced, e.g. medical testimony and report of Dr. Clemente; and a significant amount of duplication with regard to attorney appearances at depositions and hearings and considerable overlap in the work of the various attorneys.  Finally, the block billing employed by Plaintiff's counsel makes it extremely difficult to evaluate the reasonableness of the hours spent on the tasks described without a breakdown of the time spent on each task.[8] This is further complicated by entries that lack detail and precision regarding the specific work performed. Accordingly, this Court should exercise its discretion and significantly reduce the number of hours claimed by the Plaintiff.

### Hours Claimed By Attorney Savage

The Plaintiff claims a total of 344.60 hours of work on this litigation by Attorney Savage. Because Attorney Savage's time request (1) involves time spent prior to filing the complaint; (2) involves time spent on unsuccessful claims and evidence not utilized or ruled inadmissible; (3) is

---

[8] The majority of the entries on the Plaintiff's Billing Summary ( Plaintiff's Ex. A, e.g., entries: 5/4/05 (Savage); 5/5/05 (Savage); 5/16/05 (Schumacher); 5/19/05 (Schumacher); 6/8/05 (Bapooji); 6/22/05 (Bapooji); 12/21/05 (Sweet); 12/29/05 (Sweet);  1/9/06 (Boivan); 1/8/06 (Boivan) ascribe one hourly figure to multiple tasks without specifying the time actually spent on each task.  Given that it is the Plaintiff's burden to establish that the hours requested were reasonably expended on performing tasks  necessary to the litigation, the Court should exercise its discretion in making appropriated reductions in instances of block billing.

not sufficiently documented; (4) is excessive and/or duplicative, this Court should significantly reduce the number of hours requested. Further, the bill reflects time spent on non-core work, which should be billed at two-thirds of the reasonable hourly rate for Mr. Savage.

The Plaintiff's complaint was not filed until September 2004, however the billing entries reflect time for work conducted prior to that date reviewing demand letters and conferring with attorneys in the Testa Labor Department. (Plaintiff's Ex. B, p.1, entries: 6/17/03; 7/2/03; 7/14/03). The Court should deduct 2 hours of Attorney Savage's time for hours spent prior to the filing of the complaint. *See* Bogan v. City of Boston, 2006 WL 1283569 *6 (D.Mass.); Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001).

The Plaintiff was successful on only two of the nine claims that she filed against the Defendants, however the bill reflects time spent litigating those unsuccessful claims. Specifically, Attorney Savage spent approximately 11.2 hours preparing for and attending the summary judgment hearing, however the Plaintiff prevailed on only two of the remaining seven claims. Time spent during the deposition of Sheriff Cabral focused on the Plaintiff's unsuccessful claims of defamation. Additionally, during the deposition of the Plaintiff which took place over two days, the Defendants questioned the Plaintiff extensively concerning her ultimately unsuccessful claims for Breach of Contract, Violation of the Whistleblower Statute, Violation of Massachusetts Civil Rights, and Defamation. (*See* Affidavit of Ellen M. Caulo, attached as Ex. H).

Although all of the Plaintiff's claims arose out of a common core set of facts, those facts only supported two valid legal claims. Generally, "if unsuccessful claims are unconnected to, and easily severable from the successful claims, hours spent on them not be compensable…If, however, substantially related to the successful claims, either because they share a common core

set of facts or are based upon related legal theories, hours spent on them will be recoverable."
Parker v. Swansea, supra at 394, quoting Martinez v. Hodgson, supra at 141. *See* Coutin v.
Young & Rubicam P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997)("Attorneys' fees normally should
not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable
claims.") Here, the legal theories underlying the Plaintiff's Breach of Contract, Whistleblower,
Massachusetts Civil Rights, and Defamation claims were completely unrelated to and severable
from her successful §1983 claim.  Contrary to the Plaintiff's assertion, the "relevant
interconnectedness must be more than factual" in order for the unsuccessful claims to be
compensable. Sorenson v. H & R Block, Inc., 2005 WL 2323196 *6 (D.Mass.) (Woodlock, J.)
Accordingly, the Court should deduct 18 hours of Attorney Savage's time spent on unsuccessful
claims.

Similarly, the bill reflects entries for hours spent on evidence that was deemed
inadmissible by the Court or not utilized by the Plaintiffs.  Specifically, time spent pursuing
other theories of §1983 liability (Code of Silence) and the admissibility of the current version of
S220 should be deducted from Attorney Savage's time. (Plaintiff's Ex. A, entries: 5/18/05;
5/19/05).  The bill also reflects time billed for reviewing a report regarding Dr. Singletary
(Plaintiff's Ex. A, entry: 3/17/05) and the voir dire of Walter Prince (Plaintiff's Ex. A, entry:
1/9/06) neither of which was utilized at trial.  Accordingly 3.2 hours should be deducted from
Attorney Savage's time.

The Court should also deduct 1.1 hours for unnecessary work: reviewing Co-Defendant
CMS' Motion for Judgment on the Pleadings (Plaintiff's Ex. A, entry: 11/2/04), reviewing the
Amended Complaint, as only one additional claim was added (Plaintiff's Ex. A., entry: 11/3/04),
and sending emails regarding staff changes at the Sheriff's Department and the Plaintiff's Public

Records request (Plaintiff's Ex. A., pg. 31, entries: 4/12/06; 4/24/06; 5/1/06). Finally, the Court should deduct two hours of duplicative time spent reviewing the Defendant's Motion to Stay and preparing for and attending the hearing on same, as Attorney Schumacher billed for the same work.

The bill also reflects extensive time for trial preparation and trial time for both Mr. Savage and Mr. Schumacher. Although the trial proceeded on a four hour per day schedule, Plaintiff's counsel have billed in excess of 10 hours on most trial days, without any specification of the tasks performed after trial had ended for the day. The entries simply state: trial and trial preparation. (Plaintiff's Ex. A., pgs.26-28). Given the absence of any specific accounting regarding the tasks performed by both Attorney Savage and Attorney Schumacher after each day of trial was concluded, the Court should strike 47 hours from the time requested for Attorney Savage. "It is well settled that in the context of §1988 fee petitions 'the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.'" Parker v. Swansea, supra at 392, quoting, Grendel's Den, Inc., 749 F.2d at 952; see also Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). The Defendants further request that the Court subtract 5 hours for time spent awaiting the verdict on January 18 and 19, 2006. Counsel was free to work on matters for other clients during that time. See Alfonso v. Aufiero, 66 F.Supp.2d at 193.

The bill reflects 5.5 hours of non-core time spent on reviewing correspondence, subpoenas, sending emails and conferencing with co-counsel. This time should be billed at two-thirds of the reasonable hourly rate designated for Mr. Savage. Bogan v. City of Boston, 2006 WL 1283569 *7; Parker v. Swansea, supra at 391. Similarly, approximately 5.8 hours are billed for time spent researching and/or reviewing the fee petition. Typically, "time spent preparing fee

petitions is also considered non-core because it involves 'little more than documenting what a lawyer did and why he or she did it.'" Alfonso v. Aufiero, 66 F.Supp at 196, quoting Brewster v. Dukakis, 3 Fd. 3d 488, 494 (1st Cir. 1993) (internal quotations and citations omitted). This work should be billed at two-thirds of the reasonable hourly rate for Mr. Savage.

In sum, the Court should deduct 76.3 hours from the total number of hours requested for Attorney Savage. Additionally, the Court should compensate 11.3 hours of non-core time at two-thirds of the reasonable hourly rate for Attorney Savage.

### Hours Claimed By Attorney Goddard

The Plaintiff claims a total of 23.40 hours of work on this litigation by Attorney Goddard. Although the Plaintiff's complaint was not filed until September 2004, billing entries for Ms. Goddard reflect time for work conducted prior to that date conferring with counsel and drafting demand letters. (Plaintiff's Ex. A, entries: 6/24/03; 6/25/03; 6/26/03; 7/14/03; 7/30/03). The Court should deduct 4 hours of Attorney Goddard's time for hours spent prior to the filing of the complaint. See Bogan v. City of Boston, 2006 WL 1283569 *6 (D.Mass.); Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 296 (1st Cir. 2001).

The bill reflects 5 hours of non-core time spent communicating with opposing counsel regarding scheduling issues, sending emails and conferring with co-counsel. This time should be billed at two-thirds of the reasonable hourly rate for Ms. Goddard. Bogan v. City of Boston, 2006 WL 1283569 *7; Parker v. Swansea, supra at 391.

In sum, the Court should deduct 4 hours from the total number of hours requested for Attorney Goddard and compensate 5 hours of non-core time at two-thirds of the reasonable hourly rate for Ms. Goddard.

## Hours Claimed By Attorney Schumacher

The Plaintiff claims a total of 515.50 hours of work on this litigation by Attorney Schumacher.  Because Attorney Schumacher's time request (1) involves time spent on unsuccessful claims and evidence not utilized or ruled inadmissible; (2) is not sufficiently documented; and (3) is excessive and/or duplicative, this Court should significantly reduce the number of hours requested.  Further, the bill reflects time spent on non-core work and work on the fee petition, which should be billed at two-thirds of the reasonable hourly rate for Mr. Schumacher.

The Plaintiff was successful on only two of the nine claims that she filed against the Defendants, however the bill reflects significant time spent by Attorney Schumacher on unsuccessful claims.  Mr. Schumacher took the depositions of Elizabeth Keeley, Gerard Horgan, and Steve Tompkins.  Significant portions of the Horgan deposition were focused on the Plaintiff's employment status for purposes of her unsuccessful breach of contract and whistleblower claims, and the revisions to S220, which the Court ruled was inadmissible at trial. Similarly, significant portions of the Keeley deposition were focused on the revisions to S220, which the Court ruled inadmissible, and the unsuccessful defamation claim.  Finally, the Plaintiff chose to depose Communications Director Steve Tompkins, who had no involvement in the barring of the Plaintiff, solely for the purpose of her unsuccessful defamation claim.  (*See* Affidavit of Ellen M. Caulo, Ex. G). (Plaintiff's Ex. A, entries: 5/9/05; 5/10/05; 5/11/05; 5/12/05; 5/13/05; 6/17/05; 6/28/05; 7/27/05).  Approximately 13 hours are charged for the Plaintiff's largely unsuccessful opposition to summary judgment. (Plaintiff's Ex. A, entries: 11/2/05; 11/8/05; 12/15/05). Additionally, the bill reflects work spent on evidence ruled inadmissible (Code of Silence; S220 violations by other employees) and unsuccessful motions in limine.

(Plaintiff's Ex. A, entries: 7/1/05; 12/29/05).  Accordingly the Court should delete 40 hours of time spent on unsuccessful claims from the time billed for Attorney Schumacher.  *See* Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 339 (1st Cir. 1997)("Attorneys' fees normally should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims.")

This Court should also deduct 1.5 hours for time spent by Attorney Schumacher on evidence not utilized by the Plaintiff (Report on Dr. Singletary and conference with former Sheriff Rouse).  (Plaintiff's Ex. A, entries: 3/15/05; 3/31/05).  Similarly the 5.5 hours spent pursuing the Plaintiff's public record request for purposes of the fee petition (which was never utilized) and her unsuccessful motion for attachment should be deducted from the hours claimed for Attorney Schumacher. (Plaintiff's Ex. A, entries: 3/9/06; 4/14/06; 4/24/06; 4/26/06; 5/1/06).

This Court should also deduct 40 hours from the hours requested for Attorney Schumacher for work that was duplicative.  Specifically, the Plaintiff claims hours for Attorney Schumacher's preparation for and attendance at depositions that he did not take, i.e. Cabral, Porter, Leone and reopened deposition of Viktor Theiss. (Plaintiff's Ex. A, entries: 5/4/05; 5/5/05; 5/16/05; 5/26/05; 1/6/06). Attorney Savage took the depositions of Sheriff Cabral, Gerry Leone and Viktor Theiss and he defended the Plaintiff's deposition.  The Plaintiff has billed for that time and Mr. Savage's preparation for those depositions.  The Plaintiff does not establish why she should also be compensated for Attorney Schumacher's time.

Similarly, the Plaintiff seeks fees for the time spent by Attorney Schumacher attending court hearings conducted by Attorney Savage, i.e. summary judgment and voir dire of Walter Prince, as well as his attendance at a meetings with witnesses also attended by and billed for by Attorney Savage. (Plaintiff's Ex. A, entries: 12/15/05; 1/3/06; 1/9/06).  Nor should the Plaintiff

be compensated for work done by Attorney Schumacher on jury instructions and the Plaintiff's APA petition that was duplicative of the work of Attorney Savage and Attorney Sweet.

As stated above, the bill also reflects extensive time for trial preparation and trial time for both Mr. Savage and Mr. Schumacher, without any specification of the tasks performed after trial had ended for the day. The entries simply state: trial and trial preparation. (Plaintiff's Ex. A., pgs.26-28).  Given the absence of any documentation regarding the specific tasks performed by both Attorney Savage and Attorney Schumacher after each day of trial, the Court should strike 42 hours from the time requested for Attorney Schumacher.  *See* Parker v. Swansea, supra at 392; Grendel's Den, Inc., 749 F.2d at 952; Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). The Defendants further request that the Court subtract 5 hours for time spent awaiting the verdict on January 18 and 19, 2006.  Counsel was free to work on matters for other clients during that time.  *See* Alfonso v. Aufiero, 66 F.Supp.2d at 193.

The bill reflects 15.8 hours of non-core time spent by Attorney Schumacher writing letters, reviewing correspondence, drafting deposition notices and subpoenas, attending to scheduling issues, telephone calls with opposing counsel and conferencing with co-counsel.  This time should be billed at two-thirds of the reasonable hourly rate identified for Mr. Schumacher. *See* Bogan v. City of Boston, 2006 WL 1283569 *7; Parker v. Swansea, supra at 391.  Similarly, approximately 42 hours are billed for time spent researching and/or reviewing the fee petition. This work should be billed at two-thirds of the reasonable hourly rate designated for Mr. Schumacher.  *See* Alfonso v. Aufiero, supra at 196; Brewster v. Dukakis, supra at 494.

In sum, the Court should deduct 134 hours from the total number of hours requested for Attorney Schumacher and compensate 57 hours of non-core time and work on the fee petition at two-thirds of the reasonable hourly rate for Mr. Schumacher.

### Hours Claimed By Attorney Bapooji

The Plaintiff claims a total of 39.80 hours of work on this litigation by Attorney Bapooji. The Plaintiff contends that Attorney Bapooji's assistance was necessary because Attorney Schumacher was unavailable during the height of discovery.  However, close inspection of the billing records indicates that Attorney Bapooji was billing for the same time period as Attorney Schumacher.  (Plaintiff's Ex. A, pgs. 13-17).  In fact, Attorney Schumacher appeared at the deposition of Richard Dimeo taken by Attorney Bapooji on June 22, 2005 (Deposition of Richard Dimeo, p. 43, lines 22-24, attached as Ex. G).

Moreover, the vast majority of the time spent by Attorney Bapooji in this case concerned evidence that was neither produced nor utilized or subsequently ruled inadmissible by the Court. The deposition of Mr. Dimeo, who was not even employed by the Suffolk County Sheriff's Department when the Plaintiff was barred, focused exclusively on the Code of Silence and the Stern Commission.  (See Deposition of Richard DiMeo, Ex. G).  The Plaintiff did not rely on this testimony in her Summary Judgment Opposition and the Court ruled that evidence of the Code of Silence and the Stern Commission were inadmissible at trial.  Further, Attorney Bapooji spent an excessive amount of time pursuing personnel records from the Suffolk County District Attorney's Office that were never produced, and drafting a report from Dr. Clemente, the Plaintiff's physician, which was never utilized.  Those hours should not be compensated. (Plaintiff's Ex. A, entries: 6/17/05; 6/20/05; 6/21/05; 6/22/05; 6/24/05; 6/28/05; 6/30/05; 7/5/05). *See* Parker v. Swansea, supra at 392 (time spent on tasks unnecessary to the presentation of the case or unproductive should be deducted); Alfonso v. Aufiero, supra at 193.

The balance of the hours billed for Attorney Bapooji reflect non-core and clerical tasks such as attending to scheduling matters, drafting cover letters, deposition notices and subpoenas,

reviewing correspondence, communications with opposing counsel regarding discovery, arranging for the delivery of records and updating the Plaintiff on the status of the case. (Plaintiff's Ex. A., pgs. 10-18).  *See* <u>Bogan v. City of Boston</u>, 2006 WL 1283569 *7; <u>Parker v. Swansea</u>, supra at 391.

The Defendants contend that the Plaintiff should not be compensated for any hours billed for Attorney Bapooji because her assistance was unnecessary and the work done was completely unproductive and in support of unsuccessful theories of liability.  However, should the Court determine that some of Ms. Bapooji' non-core time is compensable, it should be billed at two-thirds of her reasonable hourly rate. *See* <u>Bogan v. City of Boston</u>, 2006 WL 1283569 *7; <u>Parker v. Swansea</u>, supra at 391.

### Hours Claimed For Attorney Sweet

The Plaintiff claims a total of 55.10 hours of work on this litigation by Attorney Sweet. The Defendants contend that approximately 6.6 hours of Attorney Sweet's time were spent on unsuccessful claims, inadmissible theories of liability and failed motions in limine.  (*See* Plaintiff's Ex. A, entries: 12/13/05; 12/20/05; 12/21/05; and 12/29/05).  The bill also reflects some level of duplication with the work of Attorney Schumacher regarding reviewing and preparing exhibits for trial. (*See* Plaintiff's Ex. A, entry: 1/6/06).  Accordingly this Court should reduce Attorney Sweet's billable hours by 7.6.

### Hours Claimed For Paralegal Boivan

The Plaintiff claims a total of 44.70 hours of work on this litigation by Paralegal Andrea Boivan.  A close examination of the bill reveals that Ms. Boivan's work consisted primarily of making copies of exhibits, editing exhibit lists, placing stickers on exhibits, creating copies of juror notebooks that were not used at trial, supervising the transportation of materials

from court to the firm and assisting Mr. Berriman with electronic document issues at trial. (*See* Plaintiff's Ex. A, pgs. 24-28). It is the Defendants' contention that the hours attributed to Ms. Boivan are excessive given the tasks described. This is particularly true given the fact that the trial notebooks were never utilized at trial, there is no indication that the boxes of materials that were transported back and forth to the court each day were ever used or were necessary in the trial of this case, and the level of duplication between the work of Mr. Berriman and trial preparation by Attorney Schumacher. Accordingly, the Defendants contend that 22 hours should be deducted from the total hours attributed to Ms. Boivan.

## **Hours Spent On The Plaintiff's Opposition To Motion For New Trial**

The Plaintiff claims a total of approximately 45.25 hours of work by one partner and two associates (Savage, Schumacher and Sweet) reviewing, researching and drafting her Opposition To Defendants' Motion For New Trial and Remittitur. (*See* Plaintiff's Ex. A, entries: 1/22/06; 1/23/06; 1/27/06 (Savage); 2/2/06 (Savage); 2/2/06 (Sweet); 2/3/06 (Schumacher, Savage & Sweet); 2/6/06; 2/8/06; 2/9/06 (Schumacher & Sweet); 2/11/06; 2/13/06 (Schumacher & Sweet); 2/15/06 (Schumacher & Sweet); 2/16/06; 5/22/06; 5/23/06; 5/24/06; 5/30/06; 5/31/06; 6/8/06; 6/9/06; 6/10/06; 6/12/06). The grounds for the Defendants' motion were straightforward and did not involve complex or novel issues of law to warrant the excessive amount of time spent in preparing the Plaintiff's response. Nor did it warrant the work of two associates and one partner. Accordingly, the Defendants request than the Court substantially reduce the number of hours requested by the Plaintiff for work related to her Opposition to the Motion for New Trial and Remittitur.

### C. THE COSTS REQUESTED BY THE PLAINTIFF ARE EXCESSIVE AND NOT SUFFICENTLY DOCUMENTED

The Plaintiff requests $24,304.94 in costs associated with the litigation of her lawsuit.

$14,664.39 of that figure is identified generally as "fees and disbursements for printing" without

any specificity regarding what that figure actually represents.  Given the lack of documentation,

this Court should exercise its discretion to deny or reduce significantly the fees requested for

printing.  Additionally,  the Plaintiff claims $8,464.55 in fees for the court reporter and

transcripts.  These fees necessarily involve costs associated with the Plaintiff's unsuccessful

claims that were legally distinct and unrelated to the §1983 claim. (*See* Affidavit of Ellen M.

Caulo, Ex. G).  Therefore the Court should reduce the costs requested for court reporters and

transcripts.

### D. THE COSTS REQUESTED BY THE PLAINTIFF FOR LITIGATION TECHNOLOGY ARE EXCESSIVE.

The Plaintiff requests $6,500 for the services of James Berriman who prepared and

presented the evidence electronically at trial.  The hourly rate ($250) proposed by the Plaintiff

for Mr. Berriman's services is grossly excessive and not justified by the Plaintiff's submissions.[9]

The Defendants' suggest that a more reasonable hourly rate for his services would be $75.

Further, the Plaintiff's Billing Summary and Charges for Mr. Berriman (Exhibits A & C) reveal

a level of overlap and duplication in the work of Ms. Boivan and Mr. Berriman, specifically with

respect to the transportation of materials to and from the court and electronic document issues.

(See Exhibit A, entries:1/9/06; 1/7/06; 1/11/06; and Ex. C, entries: 1/9/06; 1/11/06).  This Court

should reduce the fees sought for Mr. Berriman accordingly.  Finally, the Court should scrutinize

---

[9] What Goodwin Procter bills its clients for Mr. Berriman's services or what private electronic litigation support consultants bill their clients for similar work is not determinative of this Court's assessment of a reasonable fee. Further the Plaintiff has not established the necessity of utilizing a Senior Counsel and the Executive Manager of Litigation Technology, Mr. Berriman, to present the electronic evidence rather than some more junior employee in Goodwin Procter's Technology Department.

the manner in which the Plaintiff chose to present her case using the electronic technology to determine if it was reasonable or necessary and therefore whether those costs should be born by the Defendants.

### CONCLUSION

For all the reasons stated above, the Defendants respectfully request that this Court exercise its discretion and award only those fees and costs reasonably expended on the litigation and consistent with the prevailing rates in Boston for civil rights litigation.

Respectfully submitted,
For the Defendants,

/s/ Ellen M. Caulo
Ellen M. Caulo BBO #545250
Deputy General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
(617) 961-6681

July 21, 2006