```
 1                  UNITED STATES DISTRICT COURT
 2                    DISTRICT OF MASSACHUSETTS
 3        * * * * * * * * * * * * * * *
                                      *
 4        SHEILA J. PORTER             *
                   Plaintiff           *
 5                                     *
              VERSUS                   *   CA-04-11935-DPW
 6                                     *
          ANDREA CABRAL                *
 7                 Defendant           *
                                       *
 8        * * * * * * * * * * * * * * *

 9           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10                UNITED STATES DISTRICT COURT JUDGE
11                            HEARING
12                       DECEMBER 15, 2005
13     APPEARANCES:
14          JOSEPH F. SAVAGE, JR., ESQ., Goodwin, Procter,
            Exchange Place, Boston, Massachusetts  02109,
15          on behalf of the Plaintiff

16          DAVID S. SCHUMACHER, ESQ., Gadsby, Hannah, LLP,
            225 Franklin Street, Boston, Massachusetts 02110,
17          on behalf of the Plaintiff

18          ELLEN CAULO, ESQ., Suffolk County Sheriff's
            Department, 200 Nashua Street, Boston,
19          Massachusetts  02114, on behalf of the Suffolk
            County Sheriff's Department, Defendant
20
            PAIGE A. SCOTT REED, ESQ., Prince, Lobel,
21          Glovsky & Tye, LLP, 585 Commercial Street,
            Boston, Massachusetts 02109, on behalf of the
22          Suffolk County Sheriff's Department, Defendant

23          ALEXANDRA B. HARVEY, ESQ., Adler, Cohen, Harvey,
            Wakeman & Guekguezian, LLP, 75 Federal Street,
24          10th Floor, Boston, Massachusetts  02110, on
            behalf of Correctional Medical Services (CMS),
25          Inc., Defendant
```

```
                                                                          2

 1     APPEARANCES (Continued):

 2          ANTON P. GIEDT, ESQ. AND JOHN T. McNEIL, ESQ.,
            Assistant United States Attorneys, United States
 3          Attorney's Office, 1 Courthouse Way, Suite 9200,
            Boston, Massachusetts  02210, on behalf of the
 4          FBI and United States Attorney's Office,
            Respondents
 5

 6

 7

 8

 9

10

11

12

13
                                    Courtroom No.  22 - 7th Floor
14                                  1 Courthouse Way
                                    Boston, Massachusetts 02210
15                                  2:35 P.M. - 4:40 P.M.

16

17

18

19          Pamela R. Owens - Official Court Reporter
             John Joseph Moakley District Courthouse
20              1 Courthouse Way - Suite 3200
                 Boston, Massachusetts  02210
21

22

23     Method of Reporting:   Computer-Aided Transcription

24

25
```

23

1    mean?  What are you --
2            MS. CAULO:  WEll, it gets around again to the
3    credibility of --
4            THE COURT:  Oh, yeah.  Well, everything gets
5    around to the credibility.  I suppose we could start
6    with depositions of her kindergarten teacher.  The real
7    issues is whether or not it's something that I'm going
8    to permit you to muck around in.  And, so, it's got to
9    be in some fashion relevant to the case and material to
10   the case.
11           Now, the case, as I understand it, is whether
12   or not a substantial motivating factor for the barment
13   of Ms. Porter was her cooperation with the FBI.  That's
14   the core of it.  How does this affect that?
15           MS. CAULO:  Well, in terms of the analysis
16   that that is going to undertake, part of that analysis,
17   I would suggest, is the balancing of the competing
18   interests of the 1st Amendment right to speak.
19           THE COURT:  No.  This is relevance to the
20   case.
21           MS. CAULO:  Well, what's relevant to the case
22   here --
23           THE COURT:  You know, whether she was giving
24   the FBI good information, bad information, inconsistent
25   information, or anything in between, the core of the

30

1   barring, again for the purposes of impeachment and
2   whether or not she --
3           THE COURT:  Well, do you have a basis for
4   believing that it's inconsistent with something that she
5   said in her memo to file or otherwise?
6           MR. SCHUMACHER:  Your Honor, not beyond what
7   we've already talked about today, the fact that her
8   Chief of Staff gave different reasons at that meeting
9   and indeed if the Sheriff sat by while her Chief of
10  Staff gave reasons that were inconsistent with what her
11  reasons were for the barring, then it would be an
12  adopted admission, Your Honor, and we didn't disagree.
13          MR. SAVAGE:  Can I speak to him?
14          THE COURT:  Yes.
15          MR. SCHUMACHER:  In addition, Your Honor, in
16  the correspondence, Mr. Sullivan indicated that Ms.
17  Cabral mischaracterized actually what transpired at that
18  meeting.  That letter is Exhibit 12 to the opposition.
19          THE COURT:  So this becomes a case about
20  meetings that are had and inconsistencies in the
21  meetings as opposed to what transpired or what the cause
22  of the debarment was or barment.
23          MR. SCHUMACHER:  I don't think so, Your Honor.
24  We're certainly focused on the latter, on what was the
25  reason for the barment.  And we obviously can't get

60

```
 1    CMS to be kept in this case any longer.  The contract
 2    claims are attenuated.  The effort to draw them into
 3    civil rights claims, it seems to me, are inappropriate.
 4    The core of the case, as I've indicated, is a 1983 1st
 5    Amendment case.  That's what it's all about.
 6           I will hear some argument with respect to the
 7    defamation claim.  I do think that the intentional
 8    interference with contractual relationships stays in
 9    here.  That's a private version of the 1983 case against
10    the defendant.  But I don't see that CMS can be kept in
11    here on the basis of the submission that they have
12    made here.  Do I think that it's beyond the bounds of
13    pleading for purposes of Rule 11?  No.  I think it is
14    possible to conceive of the legal theories in the
15    fashion that the plaintiff did.  And I gave some thought
16    because, as I said, it was pressing the envelope to
17    leaving CMS in this case to perhaps develop the law more
18    clearly.  But I don't think that it is appropriate when
19    the law seems to me so clear and the sufficiency of the
20    evidence adduced so inadequate to permit the case to go
21    forward against CMS.  And, so, for those reasons, I'm
22    going to dismiss as to CMS and grant the motion for
23    summary judgment.
24           Now, for purposes of this discussion, I want
25    to understand what the Sheriff's office view is of this.
```

82

```
 1              THE COURT:  Best left unexplored at this
 2   point.
 3              MS. CAULO:  I think things are complicated
 4   enough here.
 5              THE COURT:  But isn't that it?
 6              MS. CAULO:  Yes.
 7              THE COURT:  All right.  Let me be clear.  I
 8   mean, I said ahead of time.
 9              As far as I'm concerned, there is a genuine
10   issue of material fact with respect to the reasons why
11   Sheriff Cabral barred Ms. Porter.  And one reading could
12   be one that we all agree is a constitutional violation.
13   Whether or not the jury is going to agree about that is
14   another matter, not something I'm making a determination
15   about.  I'm simply making an inquiry whether or not
16   there is enough to go forward.  And I find that there
17   is.
18              Now, with respect to the question of
19   intentional interference with contractual relations, is
20   there anything else to be said about that?  It's simply
21   a common law version of 1983 in this context, isn't it?
22   Once I've found that there's sufficient evidence to go
23   forward on 1983, it's enough to go forward on that,
24   isn't it?
25              MS. CAULO:  I think not.  There's no contract
```

87

1    that will necessarily result in Ms. Porter's termination
2    of that relationship.
3        THE COURT:  Okay.  But just so I'm clear, is
4    there case law somewhere that says that one can
5    interfere with an at-will employee's relationship at
6    will?  Is there some case law that says something like
7    that?  I'm not aware of it.
8        MS. CAULO:  I'm not aware of it.
9        THE COURT:  Okay.  Do you want to be heard on
10   this, Mr. Savage?
11       MR. SAVAGE:  Well, Your Honor, only to cite
12   their own brief, that this is all about advantageous
13   relationships -- there's no requirement in the contract
14   -- and that the relationship here was the one of "For
15   nine years, I have come to the House of Correction
16   and now you've barred me and that has disrupted an
17   advantageous relationship."
18       THE COURT:  Now, you'll agree with me that if
19   there is no other evidence that is adduced as to this,
20   then what would be adduced as to the 1983, that is
21   essentially duplicative of 1983, maybe different
22   damages, but --
23       MR. SAVAGE:  I think that -- for the purposes
24   of today, without reflecting on it anymore, I think
25   that's right.

```
                                                                    100
   1              Mr. Savage, if you want to --
   2              MR. SAVAGE:  I just wondered if the Court had
   3    addressed the whistleblower statute.
   4              THE COURT:  Wrong employer here.  I mean, I've
   5    read the articles.  Yes.
   6              MR. SAVAGE:  Okay.
   7              THE COURT:  I understand the --
   8              MR. SAVAGE:  If I could just --
   9              THE COURT:  -- briefings, I should say.
  10              MR. SAVAGE:  -- clarify one thing that Ms.
  11    Caulo said.  If the Court hasn't recently, if you look
  12    at that Boston Globe Magazine article --
  13              THE COURT:  I'm going to go back and look at
  14    it.
  15              MR. SAVAGE:  The Porter thing is mentioned
  16    seriatim in the group of things that are referred to as
  17    a group.  That's how it's --
  18              THE COURT:  Right.  As I said, I'm uncertain
  19    about it.  I'm not yet -- I haven't come to rest on my
  20    view about it.  I'll look at it some more.
  21              How long a trial?  How long a trial?
  22              MR. SAVAGE:  Eight days.  Does that sound
  23    right?  We haven't talked about it, Your Honor.  I don't
  24    know.  I mean, obviously, with some versions of what you
  25    said today, this might be an afternoon.
```

101

```
 1             THE COURT:  Right.  No, I don't think -- well,
 2     I wouldn't mind that, but I don't think that's --
 3             MR. SAVAGE:  That's my best estimate as we sit
 4     here.
 5             THE COURT:  Okay.  When?
 6             MR. SAVAGE:  When?  Shortly after the Court
 7     rules, we'll --
 8             THE COURT:  The Court has ruled on the basic
 9     parts of this.
10             MR. SAVAGE:  All right.  We're good to go.
11             THE COURT:  January?
12             MR. SAVAGE:  Fine.  Well, I got one.  I assume
13     Judge Saris is going to enter an order continuing my
14     trial that's set for January 9th in front of her
15     tomorrow.  So I'll know that.  But then I could -- I'm
16     ready to go January 9th because I think I will not be in
17     front of Judge Saris on that day.
18             THE COURT:  Okay.
19             MS. CAULO:  I suppose it depends on when in
20     January, Your Honor.
21             THE COURT:  Well, January 9th or the 16th,
22     either one.  I mean, this strikes me -- apart from all
23     of the very interesting stuff that people want to do
24     more discovery on, this strikes me as a pretty core kind
25     of case.  I'll think about the defamation, but it's
```

102

1   really a question of whether or not a 1st Amendment
2   violation was a significant factor in this, a motivating
3   factor.
4           MS. CAULO: I would certainly need to discuss
5   with my clients and the witnesses their availability.
6   Having said that, you know --
7           THE COURT: Look, I have time now to do this.
8   A case just fell through. I'm not -- this isn't a test
9   of manhood or womanhood to see if you can rise to the
10  occasion and try it in a short time. But I've got the
11  time and I'm prepared to do it.
12          So, I suggest that you consult with your
13  clients and check about your witnesses in this case.
14  But I'm prepared to try it starting on the 9th. I
15  understand that there's a potential supervening issue
16  with Judge Saris' case, but I have a sense that that
17  might be moved here without knowing anything else.
18          All right.
19          MR. SAVAGE: Thank you, Your Honor.
20          THE COURT: So you'll get back to Ms. Rynne.
21  I think by Monday, I want to know. And if it's not
22  possible, I want it to be very specific why it isn't
23  possible to do that. But I will not put anything else
24  in for the 9th and the 16th as a result.
25          MS. CAULO: For either of those two days?