# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

SHEILA PORTER

        Plaintiff,

   v.

ANDREA CABRAL, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, and SUFFOLK
COUNTY

        Defendants.

---

Civil Action No.04-11935-DPW

## PLAINTIFF SHEILA PORTER'S REPLY BRIEF IN FURTHER SUPPORT OF HER MOTION FOR ATTORNEYS' FEES

Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), Plaintiff Sheila Porter ("Ms. Porter" or "plaintiff") respectfully submits this Reply Brief in Further Support of her Motion for Attorneys' Fees.

### INTRODUCTION

After achieving a total victory at trial against Andrea Cabral and the Suffolk County Sheriff's Department ("SCSD"), Ms. Porter submitted a Motion for Attorneys' Fees ("Motion") that was measured, reasonable, and squarely within the text and spirit of 42 U.S.C. § 1988, attorneys' fees jurisprudence in the First Circuit, and the instructions of this Court. Ms. Porter did not request that her attorneys be compensated at the rates Goodwin Procter charges, but instead requested rates that are consistent with what has been awarded in other civil rights cases in this District and elsewhere. Morever, the detailed bill submitted by counsel pared down the hours actually worked in this case to the bone, eliminating hundreds of hours for time that could in any way be construed as spent on unsuccessful counts, duplication, or "non-core" activities.

Indeed, defendants concede that lead counsel efficiently litigated this case, for example, by delegating legal research to junior associates.[1]

Defendants' response was predictable. After denying for a year and a half what was obvious to the world, including the jury—that Sheriff Cabral barred Ms. Porter from the Suffolk County House of Corrections ("HOC") because she reported allegations of inmate abuse to the FBI—defendants now complain about the manner in which this case was litigated and request that the Court make massive reductions to the fee request. By submitting an Opposition that would deny plaintiff's counsel a reasonable attorneys' fee for prevailing at trial, defendants take precisely the approach that this Court warned against. Worse, in sharp contrast to the detailed bill submitted by plaintiff, defendants claim that hundreds of hours should be arbitrarily slashed from the bill without identifying the actual time charges they claim are objectionable. Nor do defendants propose a figure that they believe is an appropriate attorneys' fee.

When defendants' math is computed (something they did not do for the Court), it becomes apparent that they request that 265 hours be cut altogether from the bill and that an additional 70 hours be categorized as "non-core" time. Multiplying the hours that remain by the rates defendants claim is appropriate, the result is a fee award of approximately $96,000. This plainly is an unfair and unreasonable fee award. Defendants' suggested reductions should be rejected and the reasonable figure requested by Ms. Porter should be awarded, subject to a few small adjustments described below.

---

[1]    *See* Opposition to Motion for Attorneys' Fees ("Opposition"), at 8.

# DISCUSSION[2]

## I.    The Requested Rates Are Reasonable.

Defendants claim that Ms. Porter's counsel should be compensated at the rates ranging

from $225 an hour for lead counsel to $50 for the paralegal who worked on this case.  These

rates are far below at the rates commanded by "civil rights practitioners" in Boston[3] and have

been for a long time.  *See Change the Climate, Inc. v. MBTA, et al.*, C.A. No. 00-10973-REK

(June 8, 2005) (Keeton, J.) (awarding fees at the rate of $350 per hour to lead counsel and $225

for an associate);[4] *Laplante v. Pepe*, 307 F. Supp. 2d 219 (D. Mass. 2004) (Gertner, J.) ($300);

*Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (Saris, J.) ($325/hr);

*Morgan v. Gittens*, 915 F. Supp. 457 (D. Mass. 1996) (Garrity, J.) ($300/hr).  Indeed, in May this

Court (Bowler, M.J.) awarded attorneys' fees in a civil rights action at rates of $300 for lead

counsel <u>who did not even attend trial</u> and $200 for the associate who spent the most time on the

case, noting that a rate of between $200-$210 for attorneys with "three and four years of

experience" is reasonable.  *Bogan v. City of Boston*, No. 02-105220MBB, 2006 WL 1283569, *5

(D. Mass. May 11, 2006) (Bowler, M.J.).  If $300 per hour is appropriate for not attending trial,

---

[2]    The Opposition should be disregarded since it is filed in violation of the Local Rules of this Court.  *See* L.R.
7.1(B)(4) (***"Memoranda supporting or opposing allowance of motions shall not, without leave of court,
exceed twenty (20) pages, double-spaced."***) (emphasis in original).  No leave of Court was sought or given
here.

[3]    As described in the Motion, Ms. Porter does not concede that the applicable hourly rate is that of "civil rights
practitioners."  Defendants cite *Blum v. Stenson*, 465 U.S 886,895-96, n. 11 (1984) for this proposition, but, in
fact, *Blum* says no such thing.  What *Blum* says is that the rate to be applied is the rate "prevailing in the
community for similar services by lawyers of reasonably comparable skill, experience and reputation," and it
goes on to quote the congressional history of 42 U.S.C. § 1988 instructing that "the amount of fees under [§
1988 should] <u>be governed by the same standards which prevail in other types of equally complex federal
litigation, such as antitrust.</u>"  *See* S. Rep. No. 94-1011, 94th Cong. 2d Sess. 6 (1976) (emphasis added).  *See
Blum* at 893-94; *see also Riverside*, 477 U.S. at 575; *Covington v. District of Columbia*, 57 F.3d 1101, 1108-09
(D.C. Cir. 1995); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).  Thus, the approach suggested
by plaintiffs, and followed by some courts in this circuit, is not authorized by the statute or by the Supreme
Court.  Victims of discrimination should not be discouraged from retaining skilled attorneys at large law firms
to validate their claims, nor should civil rights violators escape the costs of this conduct by an artificial ceiling
on fees awarded to plaintiffs.

[4]    Attached as Ex. N to Motion.

then $385 per hour for lead counsel here, who conducted the majority of the trial and has 25 years of trial experience, is surely appropriate.

The rates requested by Ms. Porter are further supported by the Declaration of Wendy A. Kaplan (attached hereto as Ex. 1). Ms. Kaplan, an experienced and well-known employment discrimination and civil rights practitioner, recently was awarded attorneys' fees at the rate of $350 for herself and $250 for associates in two separate discrimination cases. Consistent with the Declarations of Howard Friedman, Harvey Schwartz and Scott Lewis that were submitted with the Motion, Ms. Kaplan believes that both the requested rates and the requested hours are reasonable for this case.

## II.    The Amount of Hours Requested Are Reasonable.

Defendants also request that the Court make wholesale reductions to the amount of hours requested by Ms. Porter. Defendants' suggested reductions are unreasonable and completely arbitrary. As an initial matter, defendants request that approximately 265 hours be eliminated from the bill and approximately 70 additional hours be classified as "non-core." How defendants arrive at the majority of these calculations is a mystery, because they have not identified, by billing entry, most of the challenged charges. For example, defendants purport to identify areas that they find objectionable, such as time spent by Mr. Schumacher pursuing unsuccessful claims, and then arbitrarily conclude that 40 of those hours should be omitted from the bill, failing to identify where those 40 hours come from.[5] Without showing their work, defendants' arguments should be given no weight at all.[6]

---

[5]    *See* Opposition at 18-19.

[6]    Defendants' failure to provide a comprehensive account of the challenged entries is consistent with their failure to provide this information to plaintiff's counsel, who made numerous overtures to the SCSD to settle attorneys' fees. While plaintiff's counsel sent its entire bill to defense counsel to review, the SCSD did not reciprocate with specific complaints. Rather, the SCSD merely objected to many portions of the bill, citing a few examples, without identifying all of the charges that were objectionable.

### A.      Plaintiff Does Not Seek Time Solely Spent on Unsuccessful Claims.

Defendants repeatedly claim that the requested fees should be reduced because Ms.

Porter did not succeed on all of her claims. *See, e.g.*, Motion at 5 ("she was successful on only

two of the nine claims"). On the contrary, Ms. Porter's lawsuit was a complete success. The

heart of this action was that Sheriff Cabral unconstitutionally barred her from the HOC because

Ms. Porter told the FBI about an inmate's allegations of abuse. Ms. Porter prevailed at trial on

precisely this claim.[7] The $610,000 verdict, which included $250,000 in punitive damages, was a

total and complete victory. Moreover, each claim related to the SCSD centered around the

circumstances of Ms. Porter's barring; even the defamatory statements made by Sheriff Cabral—

which were read to the jury at trial—grew directly out of her unconstitutional conduct. It is well-

established that time spent on unsuccessful claims that are related to a common core of facts are

recoverable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Coutin v. Young & Rubicam

Puerto Rico*, 124 F.3d 331, 339 (1st Cir. 1997); *Aubin v. Fudala*, 821 F.2d 45, 46-47 (1987) (time

spent on state tort and federal civil rights claims were recoverable because they were all related

to "a short series of interactions" between plaintiffs and the police). It is only proper to discount

time spent that "would not have been incurred but for the unsuccessful [] claim."

*Photosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 7 (1st Cir. 1993).

Here, Ms. Porter is not requesting fees for any claims related to CMS, and counsel has

carefully omitted from the bill charges related <u>solely</u> to unsuccessful claims, such as research on

the Whistleblower Act count. Moreover, counsel is not requesting compensation for portions of

briefs that were unsuccessful, such as research on unsuccessful claims for the summary judgment

---

[7]     *See* Verdict ("Has the Plaintiff Sheila J. Porter established by a preponderance of the evidence that her
protected speech in relaying inmate Rosario's allegations of abuse to the FBI was a substantial or motivating
factor in Defendant Andrea J. Cabral's decision to bar the Plaintiff from the Suffolk County House of
Correction?" "Yes—unanimous.")

briefing.[8] In short, where, as here, Ms. Porter "obtained excellent results," her lawsuit "cannot be viewed as a series of discrete claims" and her attorneys should "recover a fully compensatory fee." *Hensley* at 435.

### B.    This Was Not a Garden-Variety Civil Rights Case.

Defendants also claim that the requested fees should be reduced because this was a "straightforward civil rights action."[9] While the underlying facts of the dispute were straightforward, this objection is particularly specious because it was the defendants' refusal to admit these basic facts—that Ms. Porter was barred because she spoke to the FBI—that caused so much effort by plaintiff's counsel. The SCSD's reasons for Ms. Porter's barring—which were obvious and known to many people—proved to be an incredibly elusive matter to confirm, with various SCSD employees giving numerous, contradictory reasons for the barring. Indeed, one SCSD employee (Mr. Theiss) admitted at trial that he gave false testimony under oath at his deposition when he was asked these questions. Defendants' claims that this case was "over litigated" ring hollow in light of their own conduct, playing fast and loose with the facts.

Moreover, as Messrs. Schwartz, Friedman, Lewis and Kaplan all state in their declarations, the presence of issues relating to the federal government added considerably complexity and expense to this case. It took extraordinary efforts for Ms. Porter to confirm basic facts from the Office of the United States Attorney and the Federal Bureau of Investigation— such as that Ms. Porter was, in fact, an informant. Ms. Porter should not be penalized because it took motion practice to have basic, but critical, facts confirmed to help prove her case. Similarly, defendants suggest that plaintiff's counsel spent excessive hours attempting to elicit

---

[8]    Moreover, the summary judgment hearing itself focused almost entirely on the § 1983 claim against Sheriff Cabral.

[9]    Opposition at 3.

information from the federal government, but those efforts in the end yielded the testimony of

Gerard Leone, an important witness in the case. Of course, defendants also expended substantial

resources requesting information from the federal government, including several *Touhy* letters,

subpoenas, a Motion to Compel and a separate APA action.

### C.    Defendants' Remaining Arguments Should be Rejected.

A few additional points raised in the Opposition should be addressed.

### 1.    Plaintiff Did Not Include Time Awaiting the Verdict in the Bill.

Defendants incorrectly assert that Ms. Porter is seeking compensation for time spent

"awaiting the verdict."[10] This is incorrect. The time entries for Mr. Savage and Mr. Schumacher

clearly indicate that they are only requesting fees on these days for fully compensable

activities.[11] No time is sought for merely "awaiting the verdict." This mischaracterization of the

bill is indicative of defendants' approach to attorneys' fees.

### 2.    Work Done Prior to the Complaint is Compensable.

Defendants also argue that counsel should not be compensated for work done prior to the

filing of the complaint, citing *Bogan v. City of Boston* and *Gay Officers Action League v.*

*Commonwealth of Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001). Neither case stands for this

proposition. Rather, in both cases counsel was denied fees for work performed prior to the

complaint that was unrelated to the lawsuit. *See Bogan* at * 6 (no compensation for time "spent

dealing with issues that were not related to the civil rights litigation"); *see* Opinion and Order,

---

[10]   Motion at 16, 20.

[11]   *See* Savage entries for 1/18/06 and 1/19/06 (listing 13.1 hours for "trial, trial preparation, finalize closing, prepare for charge conference; jury verdict, jury questions, conference with Ms. Porter, review exhibits." *See* Schumacher entries for 1/18/06 and 1/19/06) (listing 10.7 hours for (trial and trial preparation, prepare exhibits for closing, research for charge conference; research attorneys' fee petition, jury verdict, jury questions."

*Padro, et al.* v. *Puerto Rico*, No. 95-1770 (HL) (D.P.R.), at 12-13 (attached as Ex. 2).[12] Here, the few pre-complaint hours plaintiff seeks compensation for work related directly to the complaint, including conferences with Ms. Porter regarding her claims and attempts to negotiate a resolution with the SCSD short of litigation. Those attempts failed, of course; if the SCSD had taken responsibility for their conduct in June 2003, there would have been no lawsuit nor a Motion for Attorneys' Fees.

    3.    The Time Spent Responding to the Motion for New Trial is Justified.

Defendants take issue with the 45 hours plaintiff's counsel spent on the Motion for New Trial, calling the motion "straightforward."[13] In fact, counsel cut numerous hours spent reviewing and responding to this motion. The motion was 44 pages long and raised numerous grounds for relief. Some of the grounds (the sufficiency of the evidence and improper closing argument claims) required a painstaking review of counsel's notes and the available transcript, particularly because defendants thoroughly misrepresented the testimony and arguments at trial. The other arguments involved complex areas of law such as the Supreme Court's multi-factored test regarding the amount of punitive damages. Finally, some arguments were so meritless that it required extensive research because counsel could not find a single case supporting defendants' position, such as the argument that the verdict should be reversed because counsel misstated the evidence at closing argument. As the Supreme Court has mentioned, defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *See City of Riverside*, 477 U.S. 581, n. 11.

---

[12]    This is the district court opinion on attorneys' fees that was affirmed by the 1st Circuit. Chief Judge LaFitte refused to award compensation for time spent prior to the filing of the complaint that was not related to the successful claim. He found that the pre-complaint hours related solely to unsuccessful claims. *Id.*

[13]    Motion at 23.

4.    There is No Unreasonable Duplication.

Defendants claim that the bill includes unnecessary duplication.  In fact, counsel eliminated virtually all instances of duplication—necessary or otherwise—from the bill.  For instance, it would certainly be reasonable to request compensation for attendance of two attorneys at Sheriff Cabral's and Ms. Porter's depositions.  But Ms. Porter only included 0.2 hours of Mr. Schumacher's attendance at Ms. Porter's deposition and no time at all for attending Sheriff Cabral's deposition.  Rather, fees are sought for Mr. Schumacher's preparation for those depositions, which was significant and is compensable.  Similarly, defendants seek to cut Mr. Schumacher's attendance during the Walter Prince voir dire.  But this occurred on the first day of trial; defendants do not claim that two attorneys at trial was unreasonable, nor could they, because they had two attorneys present during the entire trial as well, including the voir dire.  As for the attendance of two attorneys at the Leone deposition and the second Theiss deposition, both of these occurred three days before trial and were important witnesses in the case.  Only unreasonable duplication of work should be discounted.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990).  It was reasonable to have two attorneys at these key depositions. Moreover, Mr. Theiss second deposition could have been avoided if he told the truth during his first deposition, so Ms. Porter should not be penalized for the time it took to set the record straight.

5.    Plaintiff Should be Compensated for Ms. Bapooji's Time.

In the Opposition, defendants argue that the hours claimed for Anita Bapooji should be rejected altogether.  In fact, Ms. Bapooji served a critical role, managing the litigation on a day-to-day basis while Mr. Schumacher was out of the office for portions of June.[14]  This was one of

---

[14]  Defendants state that Ms. Bapooji's tenure overlapped with Mr. Schumacher's noting that Mr. Schumacher appeared at Mr. DiMeo's deposition.  Ms. Porter never stated otherwise.  Plaintiff is not seeking compensation

the busiest periods of the case, just weeks before the discovery deadline. Ms. Bapooji stopped

working on the case shortly after the discovery deadline passed. Nevertheless, Ms. Porter is only

seeking compensation for a fraction of Ms. Bapooji's efforts, including time spend on written

discovery, taking depositions,[15] and gathering and analyzing Ms. Porter's documentation

regarding damages. All of these charges are fully compensable.

> 6. The Bill Does Not Include "Non-core" Time, and That Distinction Has Been Rejected in this District.

Counsel for Ms. Porter eliminated the vast majority of time entries spent on what has

previously been referred to as "non-core" activities, such as travel, office conferences, and the

like. Defendants claim that the bill contains approximately 70 hours of "non-core" time, but,

once again, they do not identify particular time entries that are objectionable.

In any event, defendants overplay their hand in arguing that "the prevalent practice in the

First Circuit" is to distinguish between "core" and "non-core" work. The First Circuit has never

required courts to carve "non-core" time out of attorney's bills. *See Change the Climate v.

MBTA*, No. 00-10973-REK, 2005 WL 3735100, *3 (D. Mass. June 8, 2005). There is a split in

this District as to whether courts should distinguish between "core" and "non-core" time, and if

there is a trend, it is to reject the distinction.[16] Plaintiff submits that such a distinction is illogical

and unworkable; in any event, the amount of "non-core" time contained in the bill is de-minimis.

---

for Mr. Schumacher's attendance at the DiMeo deposition; indeed, there is no time charge at all for Mr. Schumacher on June 22, 2005. This is another example of counsel exercising billing judgment, only requesting fees for the most critical activities in the case.

[15] Defendants claim that Ms. Bapooji's deposition of Rich DiMeo should not be compensated. While Mr. DiMeo was not a trial witness, his deposition was still a fully compensable activity. Mr. DiMeo was the head of the Sheriff's Investigation Division when Sheriff Cabral started at the SCSD. As such, he was likely to and did have information about a number of relevant issues. For instance, Mr. DiMeo testified that he was aware that Ms. Porter was cooperating with the FBI while he was at the SCSD.

[16] *See Dixon v. Int'l Brotherhood of Police Officers*, No. 01-11806-WGY; 2006 WL 1677305 (June 19, 2006) (Young, C.J.) (refusing to distinguish between "core" and "noncore" time because "once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a

### III.    Adjustments to the Bill

Finally, a few minor adjustments have been made to the bill to respond to certain of defendants' concerns.  First, plaintiff agrees that counsel should not be compensated for the time spent regarding the Motion for Attachment; thus, the 2.80 hours entry for Mr. Schumacher on April 26, 2006 is eliminated.  A substituted copy of the bill is attached to the Declaration of David S. Schumacher ("Schumacher Decl."), attached hereto as Ex. 3.

Second, defendants claim that fully 89 hours of counsel's time should be cut altogether, claiming that the entries for "trial and trial preparation" are insufficiently detailed.  While there is no justification for such an extreme request, out of an abundance of caution counsel has provided more detail on the "trial preparation" entries.  The time spent at "trial" is self-explanatory.

Finally, defendants complain that the printing charge on the bill of costs is not itemized. Counsel has now provided a detailed itemization of the copying costs.  *See* Schumacher Decl., (Ex. 3).  The copying costs correspond to particular dates, although it is impossible to determine precisely what was copied on that day.  Ms. Porter is amenable to a 10% reduction in the copying charges to account for unsuccessful claims, which would reduce the fees and disbursements for printing to $13,197.95.  It should be noted, however, that plaintiff is not requesting copying or printing fees from Testa Hurwitz, nor is she seeking costs for compensable items such as travel, postage and faxes.

---

presumptively correct result and that "additional tinkering merely serves to double count some factors"); *Change the Climate, Inc. v. MBTA*, 2005 WL 3735100, *3) (Keeton, J.) (same, claiming that distinction is "unrealistic and potentially inaccurate"); *See Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 217-218 (D. Mass. 2004) (Young, C.J.) (same); *Homier Distributing Co. v. City of New Bedford*, 2002 WL 1586996, *2 (D. Mass. July 18, 2002) (O'Toole, J.) (same); *Sys. Mgmt. v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001) (Young, C.J.) (same); *but see Bogan*, 2006 WL 1283569, *7 (reducing "non-core" charges by 1/3); *Parker v. Town of Swansea*, 310 F.Supp.2d 376 (D.Mass. 2004) (Dein, M.J.) (applying distinction); *LaPlante v. Pepe*, 307 F. Supp. 2d 219, 225 (D. Mass. 2004) (Gertner, J.) (same); *Chestnut v. Coyle*, 2004 WL 438788, *3 n.4 (D. Mass. Mar. 9, 2004) (Zobel, J.) (applying a non-core rate to purely clerical work).

## CONCLUSION

Ms. Porter achieved a total victory at trial and is entitled to reasonable attorneys' fees. Counsel attempted to settle this issue with defendants, but their efforts were not met with serious negotiations. The bill submitted by counsel is lean and extremely reasonable, as are the requested rates. Ms. Porter requests that she be awarded $287,305 in attorneys' fees and $22,838.50 in costs, and defendants' attempt to suggest a number of less than $100,000 should be rejected.

Respectfully submitted,

SHEILA PORTER

By her attorneys,

/s/ Joseph F. Savage, Jr.
Joseph F. Savage Jr. (BBO # 443030)
David S. Schumacher (BBO # 647917)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

Dated: August 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served electronically via the electronic filing system on counsel for all parties on this 7th day of August, 2006.

/s/ David S. Schumacher
David S. Schumacher

LIBA/1720519.1

12