Clerk ... fice
I SD( Mass.
Date  1-6-05
By
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHEILA PORTER,<br>          Plaintiff<br><br>v.<br><br>ANDREA CABRAL, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>SUFFOLK COUNTY, and<br>CORRECTIONAL MEDICAL<br>SERVICES, INC.,<br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-11935-DPW |

## MOTION TO QUASH SUPBOENA SERVED ON ATTORNEY WALTER B. PRINCE

On January 4, 2005, Sheila Porter served Attorney Walter B. Prince ("Prince") with a subpoena to testify at trial about matters concerning his client, the Suffolk County Sheriff's Department (the "Department"). Because that subpoena threatens to drive a wedge between Prince and his client and because the testimony sought by the subpoena is neither relevant nor admissible, the subpoena should be quashed.

### FACTUAL BACKGROUND

On, December 2, 2005, Peter Gelzinis published an article in the *Boston Herald* titled "Plenty Behind U. S. Attorney's Battle vs. Sherif." In it he describes Prince's views on the motive behind the federal prosecutor's efforts to indict Sheriff Andrea Cabral. Gelzinis quotes Prince as saying: "For two years, I believe (the federal government) tried to leverage (Sheriff Cabral) in a way they never would've dared to do with any other sheriff. And it was done under threat of indictment to suit their own agenda." Gelzinis goes on to write:

> That "agenda" according to Prince, was to have Cabral step back and allow the FBI to cultivate an informant network in her jail.

> "There is simply no way on God's green earth that we could surrender control of the jail to the FBI," Prince said. "What they were looking to do, essentially, was run the jail. That's what this case is really all about in my opinion."

In a pull-quote at the top of the article, Gelzinis repeats the quote – "What they were looking to do, essentially, was run the jail" – over a tag-line that reads, "Walter Prince on the FBI."

Sheila Porter now inappropriately seeks to impute Walter Prince's opinion to Sheriff Cabral and the Suffolk County Sheriff's Department. In a January 2 letter to Ellen Caulo, the sheriff and department's attorney, Sheila Porter's counsel wrote, "In order to streamline the trial and avoid calling Mr. Prince to the stand, we propose a stipulation regarding his statements to the Boston Herald." The stipulation Porter proposed includes the false assertion that "Prince stated that Sheriff Cabral believes" three facts: (1) that "the FBI has an agenda to have the Sheriff step back and allow the FBI to cultivate an informant network in her jail," (2) that "there is simply no way on God's green earth that she could surrender control of the jail to the FBI," and (3) that "what the FBI was looking to do, essentially, was run the jail." The stipulation also incorrectly states that Prince was acting in his capacity as counsel for Sheriff Andrea Cabral and the Suffolk County Sheriff's Department when he made the mischaracterized statements. The stipulation makes no distinction between what Prince may believe today and what Sheriff Cabral believed at the critical moment when she decided to bar Sheila Porter.

Walter Prince has confirmed by affidavit, however, that in talking about possible motives for the federal investigation with Gelzinis, he was stating his own personal opinions, that what he described were the motives that he ascribes to federal prosecutors, that he did not form these opinions until after federal prosecutors had spent considerable time investigating and threatening to indict Sheriff Cabral, and that he was not involved in the decision to bar Sheila Porter.

The stipulation thus seeks to twist a statement about Walter Prince's view of the federal investigation into a statement about Sheriff Andrea Cabral's and the Suffolk County Sheriff's Department's state of mind, to turn Prince's view of the U. S. Attorney's Office's agenda into a view about the FBI, and to transform a statement about events in 2004 and 2005 into a statement about events preceding Sheila Porter's barring. Porter will presumably seek to elicit similar testimony from Prince if she is allowed to force him to testify at trial.

2

## ARGUMENT

The subpoena Porter served on Prince should be quashed because it seeks irrelevant, inadmissible hearsay and because requiring Prince to testify on matters concerning his client threatens to disrupt that attorney-client relationship. In order to survive a motion to quash, the proponent of a subpoena ad testificandum must be able to show that the testimony sought is relevant, admissible, and material. *Stern v. United States District Court for the District of Massachusetts*, 214 F.3d 4, 17 (1st Cir. 2000. A subpoena for which the proponent cannot make this showing is "unreasonable or oppressive" and may be quashed or modified by the court. *United States v. Nixon*, 418 U.S. 683 (1974). The subpoena Porter served on Prince fails each of these three tests.

The Prince subpoena seeks testimony that is neither relevant nor material. The thoughts and opinions Prince discussed with Gelzinis were not formed until long after Sheila Porter was barred. The events that led Prince to form those thoughts and opinions – namely the U.S. Attorney's Office's long criminal investigation into the decision to bar Sheila Porter and federal prosecutors' threat to indict Sheriff Andrea Cabral – had yet to occur when the decision was made to bar Sheila Porter. Those thoughts and opinions therefore have no tendency to show what reasons may have led to Sheila Porter's barring.

The statements Prince made to Gelzinis are also inadmissible. Sheila Porter will presumably argue that these statements are statements of an agent under Federal Rule of Evidence 801(d)(2)(D). In order to be admissible under that rule, however, the statements must have been made by the agent of a party speaking on a subject matter within the scope of their authorization. *Weston-Smith v. Cooley Dickinson Hospital, Inc.*, 282 F.3d 60 (1st Cir. 2002). Prince, however, clearly explained to Gelzinis that he was stating his own personal opinions, not the views of the Sheriff or the Department. By explicitly limiting the subject matter of the discussion to his own personal thoughts and opinions, Prince stepped outside the role of agent for the Department. His statements, therefore, cannot be attributed to the Department or the Sheriff for purposes of Rule 801(d)(2)(D).

The fact that Prince is the Department's attorney only heightens the need for the court protection. Requiring an attorney to testify on subject matters concerning his client threatens to drive a wedge between the attorney and the client. Circuit courts have repeatedly recognized the significant burden that subpoenas requiring such testimony impose on both attorney and client. *See, e.g., United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *United States v. Lombard*, 72 F.3d 170, 189 n. 25 (1st Cir. 1995); *United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990).

Given the slight relevance of the testimony sought and its inadmissibility, the Court should be loath to impose such a heavy burden on Walter Prince and his clients.

Respectfully submitted,

Paige Scott Reed, BBO# 637905
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Date: 1/5/06

4